**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CYPRESS HOLDINGS, III, L.P., individually and derivatively on behalf of SPORT-BLX, INC.<br><br>                    Plaintiff,<br><br>      v.<br><br>GEORGE HALL, JOSEPH DEPERIO, SPORT-BLX, INC. and GLASSBRIDGE ENTERPRISES, INC.<br><br>                    Defendants. | Case No. 22-CV-01243 (LGS)<br><br><br>**Jury Trial Demanded** |

## FIRST AMENDED COMPLAINT

Plaintiff Cypress Holdings, III, L.P. ("Plaintiff" or "Cypress"), by way of Complaint against Defendants George Hall, Joseph DePerio, Sport-BLX and GlassBridge Enterprises, Inc. (collectively, "Defendants"), alleges as follows.

## JURISDICTION AND VENUE

1.      This is a civil action brought pursuant to Section 10(b) of the Securities Exchange Act of 1934, Rule 10(b)-5, codified at CFR 240.10b-5, and other state laws, to redress fraudulent and other wrongful conduct by Defendants in connection with Plaintiff's investments in Sport-BLX, Inc.

2.      The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 28 U.S.C. § 1391.

4.       Plaintiff is entitled to a jury trial.

## THE PARTIES

5.    Cypress is a Delaware limited partnership, having a principal place of business located at 494 Sycamore Avenue, Shrewsbury, New Jersey.

6.    Michael Salerno ("Salerno") is the managing partner of Cypress.

7.    Defendant Sport-BLX, Inc. ("Sport-BLX") is a Delaware corporation, having its principal place of business at 510 Madison Avenue, 9th Floor, New York, New York, 10022.

8.    Defendant GlassBridge Enterprises, Inc. ("GlassBridge") is a Delaware corporation, having its principal offices located at 411 East 57th Street, Suite 1-A, New York, New York, 10022.

9.    Defendant George Hall ("Hall") is the executive chairman and CEO of Sport-BLX, Inc. and is or was the beneficial holder of approximately 31.1% of the outstanding common stock of GlassBridge.

10.    Defendant Joseph DePerio ("DePerio") is the president of Sport-BLX and is a member of the Board of Directors of GlassBridge, owning approximately 2.47% of the outstanding common stock of that entity.

## PLAINTIFF'S STANDING

11.    Cypress brings this action, in part, on behalf of Sport-BLX to enforce Sport-BLX's rights.

12.    At all times relevant to this lawsuit, Cypress was, and remains a shareholder in Sport-BLX.

13.    Demand upon Hall and/or DePerio, as the officers in charge of Sport-BLX, to bring this action on behalf of the entity would be futile, as Hall and DePerio exercise control of all decisions of Sport-BLX.

2

14.     Moreover, Hall and DePerio are neither disinterested nor independent with respect to the conduct relevant to this action and the challenged transactions and occurrences outlined herein are not the product of valid exercises of Hall or DePerio's business judgment.  Rather, the challenged transactions and occurrences are *ultra vires* of Hall's and DePerio's duties and authories as the officers in charge of Sport-BLX, and are directly related to Hall's and DePerio's exclusive control of Sport-BLX.

15.     Furthermore, Cypress brings this action, in part, to vindicate rights and redress injuries that belong exclusively to Cypress, because Cypress has sustained injuries that have not been sustained by the other shareholders of Sport-BLX.

## FACTUAL ALLEGATIONS

16.     Sport-BLX was formulated by Hall and DePerio (collectively, the "Founders") in an effort to create a "new economy" in sports.  Towards this end, the Founders seek to "tokenize" sport assets, such as racehorses and professional athletes, dividing such assets into tradeable, fungible units to be purchased and traded by fans and investors.

17.     In this regard, the stated mission of Sport-BLX is to create a block chain platform to improve the dynamics of investing in sport assets.

18.     Prior to Cypress making an investment in Sport-BLX, Hall and DePerio individually, and on behalf of Sport-BLX, made a number of written promises to Cypress – sent to Cypress at its business address in New Jersey – concerning the business model of Sport BLX and how it would use funds invested by Cypress.  These written promises were set forth in materials including documents titled: (1) Sport-BLX Frequently Asked Diligence Questions, (2) Sports Asset Investment Fund and, (3) Sport-BLX Investment Fund Opportunity, as well as

3

untitled PowerPoint "Decks" prepared by Hall, DePerio and Sport-BLX and provided to Plaintiff as part of a due diligence process.

19.     At the time that the Founders sought to induce Cypress to invest in Sport-BLX, the Founders owned and controlled the majority of the outstanding shares.

20.     In connection with their solicitation of Cypress to provide funding to Sport-BLX through an investment in its common stock, the Founders made clear to Cypress that the Sport-BLX platform would improve the dynamics of investing in sport assets through lower minimums, lower fees, and greater transparency.

21.     So as to induce Cypress' investment, the Founders provided their business plan and represented their present intention to utilize a Cypress investment, so as to be able to present a successful proof of concept.

22.     The Founders repeatedly represented to Plaintiff that all of the proceeds raised through their first "founders' round" of financing would be used solely for technology development, associated legal expenses, and marketing.

23.     Hall hosted a meeting in his home in Rumson, New Jersey in January, 2019.  At the meeting, Hall told Salerno that if Cypress invested in Sport-BLX, the funds would be used solely for technology.  This representation regarding the use of its funds was material to Cypress and (along with the other representations described below) ultimately induced it to invest in Sport-BLX.

24.     During that same meeting, Hall promised Salerno that if Cypress invested in Sport-BLX, it would have a seat on the Board of Directors of Sport-BLX.

25.     During that same meeting, Hall also represented to Salerno that Sport-BLX had an affiliation with a sport asset investment fund (the "Fund") which would invest in athlete contracts,

that Sport-BLX would serve as the Fund Manager, and that the Fund would produce a revenue stream for Sport-BLX.

26.     During a follow-up meeting in January, 2019, at Hall's office at 510 Madison Avenue, 9th Floor, New York, New York, Hall and DePerio again represented to Salerno that Sport-BLX would be affiliated with, and generate fees from, the Fund.

27.     Hall repeated this same representation to Salerno at another meeting at Edie's Luncheonette in Little Silver, NJ, and also during telephone conversations in January, 2019.

28.     DePerio made these same representations to Salerno, concerning how Sport-BLX would work with and benefit from the Fund, at Char Steakhouse in Red Bank, New Jersey, in January, 2019.

29.     On February 14, 2019, DePerio wrote an email to Salerno that stated "I attach our investment fund deck for sports" and attached a PowerPoint Deck, dated February 8, 2019, which provided a further description of the Fund.

30.     The Founders later repeated these representations regarding the Fund in a document titled Sports Asset Investment Fund which they provided to Cypress.

31.     Each of the representations (detailed above) that Hall and DePerio made to Salerno about the Fund were material to Cypress' decision to invest in Sport-BLX because they established a viable business model and the existence of a future revenue stream.

32.     In January, 2019 both Hall and DePerio again verbally represented to Salerno that if Cypress invested funds in Sport-BLX it would have a seat on the Board of Directors.

33.     On February 1, 2019 DePerio sent an email to Salerno providing access to a data room which contained various PowerPoint "Decks".  One of the Decks stated that the investment funds would be used to invest in technology.

132422655.2

34.     The Founders also made this representation in another written document titled Frequently Asked Diligence Questions, which they sent to Salerno before February 28, 2019.  That document represents in part that "all of the proceeds raised through the currently contemplated Founder's Round (described below) will be used  solely for technology development, associated legal expenses and marketing."

35.     In his February 1, 2019 email, DePerio also confirmed "Board appointment at closing" which the parties understood to mean that once Cypress invested in Sport-BLX it would have a seat on the Board of Directors.

36.     The Founders also provided Cypress with a road map of their marketplace launch for Sport-BLX, setting forth an April 2019 launch followed by a marketing blitz and growth and scaling in June of 2019.

37.      There is no doubt, that in connection with their sales strategy of Sport-BLX stock and in the representations made to induce Cypress' investment, the Founders utilized sharp practices.  Indeed, in an effort to elevate a perception of exclusivity, Hall and DePerio affirmatively represented to Cypress' managing partner (Salerno) that an investment in Sport-BLX was not for everyone, and that they were focused on finding "strategic investors", who would assist with the Sport-BLX launch.

38.     On February 28, 2019, based upon the information it received from the Founders and Sport-BLX, including the foregoing representations, Cypress on the one hand, and Sport-BLX, Hall and DePerio on the other, entered into several agreements concerning the purchase by Cypress of certain shares of common stock in Sport-BLX.

6

132422655.2

39.     Towards this end, the terms of a written Common Stock Purchase Agreement set forth Cypress' purchase of 5,263 shares of common stock in Sport-BLX at a price of $95 per share (the "Founder Agreement").

40.     Additionally, there was another Common Stock Purchase Agreement, also entered on February 28, 2019, setting forth Cypress' purchase of an additional 2,497 shares of Sport-BLX common stock at a price of $200.18 per share (the "Second Agreement").

41.     Neither the Founder Agreement, nor the Second Agreement constituted the entire agreement between the parties with respect to Cypress' purchase of shares in Sport-BLX.  Indeed, Cypress, Sport-BLX and the Founders also executed, on February 28, 2019, another agreement (the "Agreement") governing certain other terms in the parties' arrangement with respect to the sale of Sport-BLX shares to Cypress.

42.     In the Agreement, Sport-BLX and the Founders represented that, as long as Cypress continued to hold in the aggregate at least 2.5% of the capital stock of Sport-BLX, the Founders agreed to vote their capital stock in Sport-BLX in favor of a Cypress representative being elected to the Board of Directors.  This covenant in the Agreement was a material provision and a critical piece in Cypress' willingness to invest in Sport-BLX.  Indeed, having a "seat at the table" and being a part of the Sport-BLX governing body through a guaranteed Board Seat was a material inducement for Cypress' investment.  The Agreement also contained anti-dilution protection, among other material provisions, concerning Cypress' purchase of Sport-BLX stock.

43.     Unfortunately, the representations and promises made by Hall and DePerio turned out to be knowingly false when made.

44.     In fact, despite their representations that the proceeds raised through a sale of shares would be used solely for technology development, associated legal expenses and marketing, the

7

Founders caused Sport-BLX to utilize such funds for operating expenses, excessive rent for office space and overhead.

45.     In this regard, apparently Sport-BLX had entered into a lease for certain commercial office space, expending approximately $500,000 per annum.

46.     Cypress raised the high rent as an issue in connection with its duty as a Board Member, advising that the rental rate seemed excessively high, and it expressed that the arrangement with Sport-BLX's landlord was also suspect.  Indeed, the landlord was an entity, Clinton Group, Inc. ("Clinton Group"), to which the Founders owned a 100% equity interest.

47.     Thus, the arrangement between Sport-BLX and its landlord seemed to be a sweetheart deal to siphon money out of Sport-BLX and into the coffers of the Founders.

48.     Moreover, as further evidence of the suspect nature of the "lease arrangement", although the Founders unilaterally determined to utilize investors' monies to support the excessive rent, at no time had Hall or DePerio provided a copy of the written lease to any other Board Member, including Cypress, despite repeated demand.

49.     By causing a diversion of capital to ordinary overhead, the Founders prevented Sport-BLX from pursuing its business plan or mission statement and handicapped it from obtaining revenue or raising additional capital.

50.     Further, although the Founders had made promises and representations concerning the Fund and its affiliation with Sport-BLX, Hall advised Cypress, only after receipt of Cypress' $1.0 million investment, that the Fund was unrelated to Sport-BLX and would not be a source of revenue.

51.     Surprisingly, by late fall of 2019, and without ever advising or involving Cypress of "changes", Hall advised for the first time that Sport-BLX had become a technology company,

8

looking to get contracts to provide technology services to anyone it can.  Towards this end, Hall admitted on at least one occasion that the Sport-BLX business plan changed, that it is not clear that its business concept will work, and that he does not know if there will be "proof of concept".

52.     There is no question that Cypress objected to the manner in which the Founders had utilized Cypress' investment proceeds and the way in which the Founders had managed the business of Sport-BLX.

53.     In an effort to silence Cypress as an objector, and remove it as a Board Member, the Founders constructed a subterfuge, where they divested themselves as shareholders in Sport-BLX and arranged a sale of their ownership interests to a related entity, GlassBridge (the "GlassBridge Transfer") so as to avoid their obligation under the Agreement to vote in favor of Cypress as a Board Member.

54.     With the Founders no longer directly owning a controlling interest in Sport-BLX, they utilized their positions as owners and officers of GlassBridge to cause GlassBridge to vote its newly acquired 50.7% controlling shares in Sport-BLX in a manner so as to remove Cypress as a Board Member of Sport-BLX.  Thus, the Founders, in bad faith, were able to circumvent their obligations to Cypress under the Agreement to vote in favor of Cypress as a Board Member.

55.     On or about December 9, 2019, and immediately prior to the GlassBridge Transaction, the Founders offered to purchase the Cypress shares at a drastically undervalued sum, which they had represented to Cypress was the then fair price.  Naturally, under the circumstances of the offer, Cypress declined a sale of its shares.

56.     On that same date, Hall made an affirmative representation that he would not discuss a sale of his shares, acknowledging that a sale of his shares does not help the company or raise capital for the company.

9

132422655.2

57.     On December 12, 2019, and one day prior to the requisite shareholder of record date of December 13, 2019, by which an investor must be a Shareholder to vote in the election of the Board, the Founders arranged for the sale of their shares to GlassBridge and completed the GlassBridge Transfer at a value at or about $355.00 per share, far in excess of their value representation to Cypress.

58.     After Hall and DePerio completed the GlassBridge Transfer, they caused GlassBridge to formulate other entities, affiliated with GlassBridge and bearing, in some part, the Sport-BLX name, and utilizing the Sport-BLX goodwill and intellectual property to pursue the original investment opportunities pitched to Cypress.

59.      In this regard, rather than pursuing the Sport-BLX business as it had previously been defined, GlassBridge utilized its now controlling interest in Sport-BLX to cause Sport-BLX to forgo its original stated mission and purpose.  Indeed, GlassBridge, and not Sport-BLX, is now pursuing the tokenized concept regarding the sale and exchange of "sport assets" for fans and investors through other entities bearing the Sport-BLX name, but where such entities are owned and/or controlled by GlassBridge and not Sport-BLX.

60.     More recently, on December 30, 2021 GlassBridge divested itself of all of its Sport-BLX stock through a sale of that stock back to the Founders, through an entity to which the Founders control.

61.     This recent sale back to the Founders essentially enabled the Founders to void the GlassBridge transfer, but also occurred at a price significantly lower than the price per share upon which the GlassBridge transfer was based, resulting in a substantial windfall to the Founders through their manipulation of the sale price.

132422655.2

62.    Unquestionably, the Founders and Sport-BLX have acted unlawfully to deprive Cypress of the fruits and the intended benefits of its investment in Sport-BLX.  As a direct and proximate result of the foregoing, Cypress has been deprived in its entirety of the benefit of its bargain with Sport-BLX and the Founders, and brings this action to obtain injunctive and monetary relief.

63.    At or about the same time that they were depriving Cypress of the fruits and intended benefits of its investment in Sport-BLX, the Founders also breached their fiduciary duties to Sport-BLX.

64.    In connection with its fund raising efforts, Sport-BLX engaged Hall and DePerio to contact potential investors for the specific purpose of raising money for Sport-BLX by selling shares *owned by Sport-BLX*.  Indeed, Hall and DePerio were specifically tasked with selling shares owned by Sport-BLX – as opposed to shares owned by any other individual or entity – because selling shares owned by Sport-BLX would raise money for the company, whereas shares owned by others would *not* raise money for the company.

65.    Notwithstanding these specific instructions, Hall and DePerio engaged in self-dealing by selling *their own* shares to potential investors, to the detriment of Sport-BLX.

66.    Indeed, on several occasions, potential investors represented to Hall and DePiero that they sought to invest money into Sport-BLX, so as to support company operations and fund company growth.  Rather than sell stock *owned by Sport BLX* – which would have provided Sport-BLX with sufficient capital to be used in its business operations – Hall and DePiero ignored their fiduciary duties to Sport-BLX and sold the potential investor shares of Sport-BLX that Hall and/or DePiero owned *in their individual capacity*.  At least one of these transactions included a lucrative sale of Hall's and/or DePiero's stock to GlassBridge.

11

67.     As a result of Hall and DePiero's dereliction of their fiduciary duties to Sport-BLX, Sport-BLX was deprived of significant funds that would have been used in their business operations and would have been used to support the platform that was described in Sport-BLX's marketing materials. Accordingly, Cypress brings this action, in part, derivatively on behalf of Sport-BLX, to obtain injunctive and monetary relief.

## COUNT ONE
### Violation of Section 10(b) of the 1934 Securities and Exchange Act and Rule 10b-5 (17 C.F.R. § 240.10b-5) – Against Hall, DePerio and Sport-BLX

68.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

69.     This is a claim for damages against George Hall, Joseph DePerio and Sport-BLX for violating Section 10(b) of the 1934 Securities and Exchange Act and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.

70.     Hall and DePerio, individually and on behalf of Sport-BLX, made material misrepresentations and omissions to induce Plaintiff to invest in securities (Sport-BLX stock) causing Plaintiff to suffer substantial injury and damages.

71.     "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 CFR 240.10b-5.

12

72.     To state a claim for violation of the Securities Exchange Act § 10(b), a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Charles Schwab Corporation v. Bank of America Corporation, 883 F.3d 68, 92 (2d Cir. 2018); Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014) (internal quotation marks omitted).

73.     Scienter is "a mental state embracing the intent to deceive, manipulate, or defraud. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007); quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-194 (1976).

74.     Hall and DePerio, individually and on behalf of Sport-BLX, induced Plaintiff to invest in Sport-BLX stock by making material misrepresentations and omissions about how the investment would be used.  Specifically, Hall and DePerio falsely represented that the investment would be used solely for technology development, associated legal expenses and marketing.  This false representation was made by Hall during a meeting at his home in Rumson, New Jersey, in materials that were provided to Salerno on February 1, 2019 via an emailed link and in Frequently Asked Diligence Questions prepared by Hall, DePerio and Sport-BLX.

75.     When they made this false representation, Hall, DePerio and Sport-BLX had a motive to deceive Cypress in order to obtain a $1 million investment.

76.     Hall, Deperio and Sport-BLX knew at the time that this representation was false, as evidenced by the fact that they used the investment for other purposes shortly after receipt of the funds.

77.     Hall, Deperio and Sport-BLX made this false representation for the purpose of inducing Cypress to reasonably rely on the representation and purchase shares of Sport-BLX.

78.     Hall and DePerio, individually and on behalf of Sport-BLX, also induced Plaintiff to invest in Sport-BLX stock by falsely representing that Plaintiff would obtain a seat on the Board of Directors and would keep that seat so long as it continued to hold in the aggregate at least 2.5% of the capital stock of Sport-BLX.  This false representation was made by Hall during the meeting at his house in Rumson, New Jersey, was repeated by Hall and DePerio in January, 2019 and is set forth in the Agreement.

79.     When they made this false representation, Hall, DePerio and Sport-BLX had a motive to deceive Cypress in order to obtain a $1 million investment.

80.     Hall, Deperio and Sport-BLX knew at the time that this representation was false, as evidenced by the fact that soon after they received the investment funds they took steps to deny Cypress a continued seat on the board.

81.      Hall and DePerio, individually and on behalf of Sport-BLX, also induced Plaintiff to invest in Sport-BLX stock by falsely representing that the Fund would have an advantageous affiliation with Sport-BLX, where Sport-BLX would own and serve as the Fund Manager, and from which they represented, Sport-BLX would receive a revenue stream.  Hall made this false representation to Salerno during a meeting at his home in Rumson, New Jersey, at a meeting at Edie's Luncheonette in Little Silver, New Jersey and during telephone calls in January, 2019.

82.     Hall and DePerio made this same false representation at Hall's office at 510 Madison Avenue, 9th Floor, New York, New York,

83.     Hall repeated this same false representation to Salerno at another meeting at Edie's Luncheonette in Little Silver, NJ, and also during telephone conversations in January, 2019.

14

84.    On February 14, 2019, DePerio wrote an email to Salerno that stated "I attach our investment fund deck for sports" and attached a PowerPoint Deck, dated February 8, 2019, which provided a further description of the Fund.

85.    The Founders later repeated these representations regarding the Fund in a document titled Sports Asset Investment Fund which they provided to Cypress.

86.    When they made this false representation, Hall, DePerio and Sport-BLX had a motive to deceive Cypress in order to obtain a $1 million investment.

87.    Hall, Deperio and Sport-BLX knew at the time that this representation was false, as evidenced by the fact that they later feigned ignorance when Salerno asked about the Fund and ultimately admitted that Sport-BLX would not receive any revenue from the Fund.

88.    Hall, Deperio and Sport-BLX made this false representation for the purpose of inducing Cypress to reasonably rely on the representation and purchase shares of Sport-BLX.

89.    Plaintiff reasonably relied on each of these misrepresentations in deciding to invest in Sport-BLX.

90.    Plaintiff would not have invested in Sport-BLX but for the misrepresentations.

91.    Hall, Deperio and Sport-BLX had superior information about Sport-BLX and its business plans and Plaintiff relied on Hall, Deperio and Sport-BLX to make truthful representations about Sport-BLX.

92.    Plaintiff suffered monetary damages as the result of the misrepresentations made by Hall and DePerio, including the amounts Plaintiff invested in Sport-BLX and loss of anticipated revenue.

93.    Hall and DePerio acted with scienter, as each had the motive and opportunity to engage in this scheme, because of their domination and control over Sport-BLX.

132422655.2

94.     This unlawful conduct was undertaken in connection with the purchase and sale of Sport-BLX securities.

95.     By virtue of the foregoing, Defendants violated Exchange Act Section 10(b) and Rule 10b-5, as a direct and proximate result of Defendants' wrongful conduct, Cypress has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against George Hall, Joseph DePerio and Sport-BLX, Inc., jointly and severally, and provide the following relief:

      a)  Compensatory damages, incidental damages, and consequential damages;

      b)  Costs, interest, and reasonable attorneys' fees,

      c)  Prejudgment and post-judgment interest; and

      d)  Such other relief as the Court deems just and equitable.

<u>**COUNT TWO**</u>
<u>**Breach of the Covenant of Good Faith and Fair Dealing – Against Hall, DePerio and Sport-BLX**</u>

96.     Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

97.     As a party to a contractual relationship, the Founders and Sport-BLX owed Cypress an implied duty of good faith and fair dealing.

98.     The implied duty of good faith and fair dealing provides that each party to a contractual relationship will not do anything that will deprive the other parties of the benefits of their bargain, and a breach of this duty gives rise to an action for damages.

16

99.     The Founders and Sport-BLX precluded Cypress from realizing the full benefit of its bargain under the Founders Agreement, the Second Agreement and the Agreement by engaging in the GlassBridge Transfer so as to circumvent, in bad faith, the requirement in the Agreement that requires the Founders to vote in favor of Cypress for it to hold a Sport-BLX Board Seat, and by otherwise utilizing GlassBridge to pursue Sport-BLX business opportunities.

100.    As a result of the Founders' and Sport-BLX's breach of the implied covenant of good faith and fair dealing, Cypress has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against George Hall, Joseph DePerio and Sport-BLX, Inc., jointly and severally and provide the following relief:

    a)  Compensatory damages, incidental damages, and consequential damages;

    b)  Costs, interest, and reasonable attorneys' fees,

    c)  Prejudgment and post-judgment interest; and

    d)  Such other relief as the Court deems just and equitable.

## COUNT THREE
## Fraud in the Inducement – Against Hall, DePerio and Sport-BLX

101.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

102.    Hall, DePerio and Sport-BLX willfully, intentionally, and maliciously deceived and defrauded Cypress.

103.    With full knowledge of the falsity of their representations when made, among other material misrepresentations and omissions, the Founders and Sport-BLX purposefully and

intentionally made misrepresentations to Cypress concerning the use of Cypress' investment proceeds, board membership and misrepresentations concerning the Fund.

104.    At the time that they made those misrepresentations and omissions, the Founders and Sport-BLX actually knew that they were intentionally misstating relevant information that was of vital importance to Cypress in connection with its decision to enter into the Founders Agreement, the Second Agreement and the Agreement.

105.    The omissions and representations made by the Founders and Sport-BLX are separate and apart from the Founders' and Sport-BLX's obligations under the Founders Agreement, the Second Agreement and the Agreement, in that they do not relate to any duty of the Founders and Sport-BLX under the Founders Agreement, the Second Agreement and the Agreement and relate solely to the Founders' and Sport-BLX's attempts to induce Cypress to enter into the Founders Agreement, the Second Agreement and the Agreement.

106.    The Founders and Sport-BLX intended for Cypress to rely upon those misrepresentations and omissions, as a means by which to deceptively and fraudulently induce Cypress to purchase shares of stock in Sport-BLX and enter into the Founders Agreement, the Second Agreement and the Agreement, and as a result of the Founders' and Sport-BLX's misrepresentations and omissions, Cypress entered into the various agreements and invested approximately $1.0 million in Sport-BLX.

107.    Absent the material misrepresentations and omissions, Cypress would never have entered into the Founders Agreement, the Second Agreement and the Agreement, or purchased any shares in Sport-BLX.

108.    As a direct and proximate result of Founders' and Sport-BLX's misrepresentations and omissions, Cypress has suffered damages.

132422655.2

109.    Founders' and Sport-BLX's conduct was malicious, intentional and outrageous and warrants the imposition of punitive damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against George Hall, Joseph DePerio and Sport-BLX, Inc., jointly and severally and provide the following relief:

a)    Punitive damages;

b)    Compensatory damages, incidental damages, and consequential damages;

c)    Rescission;

e)    Costs, interest, and reasonable attorneys' fees;

e)    Prejudgment and post-judgment interest; and

f)    Such other relief as the Court deems just and equitable.

### COUNT FOUR
### Negligent Misrepresentation – Against DePerio, Hall and Sport-BLX

110.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

111.    Hall and DePerio negligently or carelessly, made, or permitted, or participated in the making of misrepresentations and/or omissions of material fact to Cypress, *to wit*, information relating to Cypress' investment in Sport-BLX as detailed above.

112.    The Founders knew that Cypress would rely upon the accuracy and truth of the representations and/or omissions of material fact made by the Founders and Sport-BLX.

113.    The Founders and Sport-BLX possessed superior information about Sport-BLX and had a privity-like relationship with Cypress which gave rise to a duty of care to provide Cypress with accurate information concerning its investment.

132422655.2

114.    As a direct, proximate and reasonably foreseeable result of the misrepresentations and/or omissions of material fact of the Founders and Sport-BLX, Cypress has suffered and continues to suffer damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Hall, DePerio and Sport-BLX, jointly and severally, and provide the following relief:

    a)      Compensatory damages, incidental damages, and consequential damages;

    b)      Costs, interest, and reasonable attorneys' fees;

    c)      Prejudgment and post-judgment interest; and

    d)      Such other relief as the Court deems just and equitable.

## COUNT FIVE
### Breach of Fiduciary Duty – Against Hall and DePerio

115.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

123.   The Founders, as members of the Sport BLX Board of Directors and/or as officers or those in control of Sport BLX owed and owe a fiduciary duty to Cypress.

124.   By reason of the foregoing unlawful conduct, the Founders have breached their fiduciary duty.

125.   As  a direct and proximate result of the Foundress' breach of fiduciary duty, Cypress has suffered and continues to suffer irreparable harm and damages.

20

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Defendants George Hall and Joseph DePerio, jointly and severally, and provide the following relief:

    a)    Compensatory damages, incidental damages, and consequential damages;

    b)    Costs, interest, and reasonable attorneys' fees;

    c)    Prejudgment and post-judgment interest; and

    d)    Such other relief as the Court deems just and equitable.

**COUNT SIX**
**Unjust Enrichment – Against All Defendants**

126.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

127.    Based upon the foregoing factual allegations, all Defendants have been and continue to be unjustly enriched with respect to their unlawful conduct in connection with their business relationship with Cypress.

128.    As a direct and proximate result of Defendants' unjust enrichment, Cypress has suffered and will continue to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Defendants George Hall, Joseph DePerio Sport-BLX, Inc., and GlassBridge Enterprises, Inc., jointly and severally, and provide the following relief:

    a)    Compensatory damages, incidental damages, and consequential damages;

    b)    Costs, interest, and reasonable attorneys' fees;

    c)    Prejudgment and post-judgment interest; and

    d)    Such other relief as the Court deems just and equitable.

132422655.2

## COUNT SEVEN
## Unjust Enrichment – Against All Defendants

126.    Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

127.    Based upon the foregoing factual allegations, all Defendants have been and continue to be unjustly enriched with respect to their unlawful conduct in connection with their actions taken in their roles with Sport-BLX.

128.    As a direct and proximate result of Defendants' unjust enrichment, Sport-BLX has suffered and will continue to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX, respectfully requests that this Court enter judgment in favor of Sport-BLX and against Defendants George Hall, Joseph DePerio Sport-BLX, Inc., and GlassBridge Enterprises, Inc., jointly and severally, and provide the following relief:

   a)     Compensatory damages, incidental damages, and consequential damages;
   b)     Costs, interest, and reasonable attorneys' fees;
   c)     Prejudgment and post-judgment interest; and
   d)     Such other relief as the Court deems just and equitable.

## COUNT EIGHT
## Tortious Interference with Contract – Against GlassBridge

129.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

130.    GlassBridge knew of the Agreement, through which Sport-BLX and the Founders represented that, as long as Cypress continued to hold in the aggregate at least 2.5% of the capital

132422655.2

stock of Sport-BLX, the Founders agreed to vote their capital stock in Sport-BLX in favor of a Cypress representative being elected to the Board of Directors.

131.    Notwithstanding GlassBridge's knowledge of the Agreement, GlassBridge intentionally, willfully, with malice, and without justification, interfered with the Agreement, so as to ensure that Cypress' representative would *not* be elected to the Board of Directors.

132.    GlassBridge's interference was for the purpose of enriching itself, at the expense of Cypress.

133.    As a direct and proximate result of GlassBridge's willful and intentional interference with contractual relations, Cypress has suffered, and continues to suffer, irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Defendant GlassBridge Enterprises, Inc., and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

## COUNT NINE
### Breach of Fiduciary Duty – Against Hall and DePiero, Derivatively on behalf of Sport-BLX

134.    Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Complaint as though they are set forth at length herein.

135.    The Founders owed and owe a fiduciary duty to Sport-BLX in connection with their specifically defined roles as officers of the company.

132422655.2

136.    By reason of the foregoing unlawful conduct, the Founders have breached their fiduciary duty.

137.    As a direct and proximate result of the Foundress' breach of fiduciary duty, Sport-BLX has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX respectfully requests that this Court enter judgment in its favor and against Defendants George Hall and Joseph DePerio, jointly and severally, and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

**FOX ROTHSCHILD LLP**
*Attorney for Plaintiff Cypress Holdings III, L.P.*

By: _____
    MARC J. GROSS

Dated:   April 1, 2022

24

132422655.2