

April 14, 2022

Hon. Lorna Gail Schofield
United States District Court, Southern District of New York
500 Pearl Street, New York, New York 10007
<u>By Electronic Filing.</u>

  Re: Case No. 22-cv-01243, <u>Cypress Holdings, III, L.P. v Sport-BLX, Inc., et al</u>.

Dear Judge Schofield:

  Along with Wylie Stecklow, my firm represents Defendants Sport-BLX Inc. (for convenience, "SportBLX"), George Hall, and Joseph DePerio (for convenience, "Defendants") in the case above. Under the Court's Individual Rules, Section III.C.2, we submit this pre-motion letter to inform the Court we intend to move to dismiss the complaint in whole. For briefing, we propose the following schedule: Moving papers due May 13; Opposition papers due June 13; Reply papers due June 29.

  This is Plaintiff's second attempt at a complaint. While it was previously a RICO-centric complaint, Plaintiff has now abandoned RICO altogether. That said, as before, it remains at its heart, a (doomed) contract[1] claim that shuns any direct contract theory. And as before, that does not work. Again, Defendants note that three pages is not enough to completely detail the faults of nine scattered claims. That said, they can be grouped into three categories: (1) a Federal securities/10b claim (Count I); (2) fraud and fiduciary breach-type claims (Counts III, IV, V, and IX); and (3) quasi-contract and contract adjacent claims (Counts II, VI, and VII[2]). And this letter gives an overview of why all of those kinds of claims fail to meet any pleading standard — let alone the heightened standard Fed. R. Civ. P. 9(b) sets for most of the theories Plaintiff chooses.

  The gist of the story Plaintiff tells is this: Cypress — an entity managed by Michael Salerno — invested in SportBLX. SportBLX initially had a particular business plan and described that plan in descriptive materials which enumerated (i) what the company would spend on technology, legal, marketing, and other expenses; (ii) potential sources of revenue from trading and fund management; (iii) and the management team that would run the day-to-day operations. Cypress reviewed certain PowerPoints, diligence materials, FAQs, and decided to invest and purchased approximately 7% of the company's shares pursuant to two agreements, and a board seat for Salerno pursuant to a third agreement.

  At some point after investing, Cypress decided it wanted to challenge the previously disclosed expenses, and later as management modified the business plan, Salerno was not happy.[3] He also was

---

[1] There are three contracts at issue (and identified within the four corners of the Complaint): two stock-purchase agreements (*see* Dkt. 16 (First Amended Complaint, or "FAC") ¶¶ 39-40) and a three-page side letter setting out agreements about a "Right of First Offer," "Board Composition," and "Anti-Dilution Protection[s]" (*see* FAC ¶ 41; quotes from side letter). Given the Court's Practices, Defendants do not attach the agreements, but will happily file them if the Court believes having them would be useful before briefing.
[2] Plaintiff also asserts a tortious interference claim against Defendant GlassBridge, who we do not represent.
[3] While not necessarily disputable for the purposes of a motion to dismiss, the ***reason*** that plan changed was because the initial plan required approval FINRA. FINRA approval would have required the full disclosure

disappointed that management was unable to raise capital for a fund which it had hoped to raise. That said, it is hard to see from the pleading what *legal hook* Plaintiff intends to hang that discontent on. Plaintiff seems to claim that funds from the Founder's Round of investment were misallocated. As set out below, SportBLX spent more than the total Founder's Round investment on the kinds of expenditures Plaintiff asserts it was required to. The Plaintiff refers to the plan to create a sports investment fund, yet pleads no facts or legal theory, identifying how it was harmed by a fund that never existed. The plaintiff refers to the third agreement as a so-called "side-letter," in which Hall and DePerio agreed to personally vote in favor of appointing Salerno to the SportBLX Board. At the relevant vote, exactly as promised, Hall and DePerio voted in favor of Salerno. The FAC fails to allege any direct breach of this third agreement. Ultimately, the rest of the shareholders did not vote for Salerno and his term on the Board expired. The complaint refers to the fact that at some point shortly before that vote, Hall and DePerio had sold a number of their shares. The FAC does not claim that the contract prohibited this sale (as it did not), and additionally fails to identify a causal relationship between that independent transaction, and any alleged damages. In short, Plaintiff alleges no legal theory by which defendants acted inappropriately.

### I.  Plaintiff's securities claim fails.

Plaintiff's 10b claim fails to allege the basic, required elements — particularly the who, what, when, where, and how Plaintiff claims it was defrauded, as required by Fed. R. Civ. P. 9(b). *See Williams v Affinion Group, LLC*, 889 F3d 116, 124 (2d Cir 2018). Among other things, a 10b claim requires a material misrepresentation, scienter, loss, and loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). But Plaintiff fails to allege any of these.

On misrepresentation, it's not clear what Plaintiff believes was misrepresented. For example, Plaintiff says that "Hall and DePerio falsely represented that the [Founder's Round] investment would be used solely for technology development, associated legal expenses and marketing." FAC ¶ 74. But documents within the four corners of the complaint show that more than the total Founder's Round was spent on those things. Nor does Plaintiff plausibly allege the required details of the (entirely imagined) "Fund" (FAC ¶¶ 25-31) consistent with Rule 9(b). On scienter, Plaintiff only alleges bare legal conclusions. On loss, Plaintiff seems to even allege that during the same time frame, Defendants' actions ***increased*** the share value from Plaintiff's purchase price.[4] *Compare* FAC ¶¶ 39-40 *with* ¶ 57. On causation, Plaintiff alleges no connection between any (non-)misrepresentation and any (non-)loss. In short, "[e]ach of the figures plaintiff cites and relies on was included in the original" disclosures. *Steed Fin. LDC v Nomura Sec. Intl., Inc.*, 2004 US Dist LEXIS 18580, at *25 (SDNY Sep. 13, 2004). The contract "provides that Plaintiff "is relying solely on [its] own counsel and not on any statements or representations of [SportBLX.]" Stock Purchase Agreements ¶ H. So no reliance on some other promise ***would*** be actionable. *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1033 (2d Cir. 1993).

Plaintiff's 10b claims are also stale. The statute of limitations is relevantly "2 years after the discovery of the facts constituting the violation." 28 USCS § 1658(b)(1). Cypress takes great pains to emphasize it has repeatedly raised ***all*** the objections it raises now throughout 2019. *See, e.g.* FAC ¶¶

---

of Cypress's ownership and investors — and Cypress refused to make that disclosure. So, the change in business plan was necessary, due to the conduct of Cypress, and to avoid a total wipeout of all investment.

[4] Put differently, Plaintiff's theory is not that Defendants manipulated the stock value *per se*. It's that Defendants refused to offer to buy him out at the stock's actual value. Even if there were non-conclusory fact allegations to support that theory (there are none), it does not sound in 10b.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com

46, 48, 51-52.  In fact, Plaintiff emphasizes that "[t]here is no question that Cypress objected to the manner in which the Founders had utilized Cypress' investment proceeds."  FAC ¶ 52.  All of this happened in 2019 — at the latest in December.  FAC ¶¶ 55-59.  Cypress filed suit on January 11, 2022 — more than two years after "Cypress objected" and raised its various grievances.  Thus (and for other reasons), the claims fail.

### II.  Plaintiffs' other claims fail too.

Plaintiff's other claims also fail.  Plaintiff claims unjust enrichment in Counts VI and VII.  But the "presence of a valid contract which covers the dispute at issue" — which Plaintiff specifically alleges and attempts to recover because of (*see* FAC ¶¶ 96-100) — "makes recovery under quasi-contractual theories unavailable."  *Endeavor Cap. Holdings Group, LLC v Umami Sustainable Seafood, Inc.*, 2014 US Dist LEXIS 111574, at *15 (SDNY Aug. 6, 2014).  Plaintiff pleads there is a contract, requiring dismissal of its two quasi-contract claims.

To the extent Plaintiff's theory of fraud and misrepresentation, and so on (Counts III, IV, V, and IX) turns on its claim that a large rent was a surprise, those claims border on bad faith.  For that rent, the pre-agreement disclosures Plaintiff reviewed as part of its diligence included the information they now claim they didn't have.  Plaintiff reviewed the diligence, and decided to invest (and as it alleges, raised concerns and apparently got over them before investing).  So too for any claim about the allocation of money:  Plaintiff knows, from the extensive disclosures it has received and referenced in the complaint, that more than the *total* Founder's Round in money has been spent on the kinds of things it wanted the Founder's Round spent on.  And so too as well for the Fund-based allegations: the business had a business plan, that it could not follow (because of Plaintiff, *see* note **Error! Bookmark not defined.**).  In addressing that problem, SportBLX had to pivot to a new business plan (as nearly *all* start-ups do at some point or another) — which it did, as Plaintiff concedes, with significant success.  FAC ¶ 57.  None of that is fraud, misleading, or improper in any other way.

The fraud claims run into other problems.  Generally speaking, between sophisticated business entities, there is no claim for fraud when all cards are on the table — each entity relies on its own diligence and counsel.  So too when a contract specifically disclaims any reliance on outside representations. Given that, Plaintiff needs to win under the contract.  But it doesn't even *try* to do so.  And that unpled breach of contract claim "cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform."  *IOTEX Communs., Inc. v Defries*, 1998 Del. Ch. LEXIS 236, at *17 (Ch. Dec. 21, 1998).  The contracts Plaintiff incorporates are very clear in the obligations they do and don't create.  And Plaintiff specifically pleads that Defendants fulfilled all of their obligations under the contracts.  That should (and does) end the case.

Relatedly, Plaintiff also likely lacks standing to assert any claim based on its dissatisfaction with the Board election.  Article III's "traceability" requirement means Plaintiff must plead and ultimately "demonstrate a causal nexus between the defendant's conduct and the injury."  *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013).  But Plaintiff pleads that independent shareholders decided — on their own — to vote for someone other than Salerno.  Article III requires any injury to be "traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *NRDC, Inc. v United States FDA*, 710 F3d 71, 84 2d Cir 2013) (cleaned up), *quoting Lujan v Defenders of Wildlife*, 504 US 555, 560 (1992).  And here, Plaintiff alleges that an "independent action of some third part[ies]" has broken that causal chain.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com

In summary, all of Plaintiff's claims should be dismissed. Thus, Defendants intend to move to dismiss and ask the Court to set the schedule above for a motion. We thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____

J. Remy Green
   *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All counsel of record by ECF.

Page 4 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t: (929) 888.9480  ·  f: (929) 888.9457  ·  FemmeLaw.com