

May 13, 2022

Hon. Lorna Gail Schofield
United States District Court, Southern District of New York
500 Pearl Street, New York, New York 10007

<u>By Electronic Filing.</u>

      Re:    Case No. 22-cv-01243, <u>Cypress Holdings, III, L.P. v Sport-BLX, Inc., et al</u>.

Dear Judge Schofield:

      Along with Wylie Stecklow, my firm represents Defendants Sport-BLX, George Hall, and Joseph DePerio in the case above. I write for two reasons.

      First, with apologies that we did not reach this conclusion sooner, as we have prepared for the motion to dismiss and worked with GlassBridge's counsel, we have come to the conclusion that the conflict that forms the basis for GlassBridge's disqualification motion extends to the other Defendants as well — and therefore we write under the Court's Individual Practice III(A)(1) to request a conference as we wish to join the contemplated disqualification motion.[1]

      Second, as we have prepared, we have encountered some (non-binding) authority that suggests that "[a] district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 654 (6th Cir. 2013). Given that, along with the magnitude of the conflict, and the motion's "potential to change the proceedings entirely," we would ask that the Court stay the briefing schedule on the motion to dismiss. That way, no one can object to the ultimate result on the motion to dismiss on the basis of taint once it is decided. We have consulted with counsel for both Plaintiff and GlassBridge, and all parties consent to our request that the motion to disqualify be heard first, and that briefing on the motion to dismiss be stayed.

      As for the schedule, we are prepared to follow the currently-set schedule for the disqualification motion. *See* Dkt. No. 23 (motion by May 24, opposition by June 21, reply by June 30).

## DISCUSSION

### I. Fox Rothschild Has a Serious Conflict of Interest, and Previously Promised Mr. Gross Would Cease Representing Cypress.

      The general conflict of interest is set out well in GlassBridge's previous letter. *See* Dkt. No. 19 at 1-2. Essentially, GlassBridge spent nearly a million dollars on Fox Rothschild's services during the same time the firm was apparently preparing to file the current complaint. GlassBridge was also a significant owner of Sport-BLX. Indeed, email correspondence from that time (attached as **Exhibit**

---

[1] Understanding, of course, that this "us too" motion will not be meaningfully different than GlassBridge's — and we will also coordinate to avoid duplication of arguments.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York  ·  11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com

**1**), shows that the firm appears to have directed an investigation of why Mr. Gross was "being copied on [antagonistic] e-mails" from Plaintiff, and ultimately put Defendants' concerns to bed by stating, unambiguously, that "Marc Gross confirmed this afternoon that he is NOT representing Michael Salerno on this matter and referred Mr. Salerno to other legal counsel." Ex. 1 at 1 (capitalization in original).

The thread began with Defendant DePerio communicating with partner Pam Thein at Fox Rothschild, expressing serious concern that Cypress made threats about "'potential claims' to be asserted under law" — the *very same claims made here*. Ex. 1 at 13; *compare* **Exhibit 2**[2] ("In this regard, apparently Sport-BLX had entered into a lease for certain commercial office space, expending approximately $500,000 per annum for occupancy for less than five (5) employees") *with* Dkt. No. 2-1 ¶ 23 (verbatim the same, except without the "(5)"). At that time, at least, Fox Rothschild appeared to grasp the seriousness of threatening to sue a current client. The firm's response was unambiguous: "I am pleased to report that our law firm is withdrawing from representation of Cypress in the Sports-BLX matter. I am sorry you were put in the position of having to contact us." Ex. 1 at 10.

But, as this Court knows by the filing of the pending suit, that was not the end of the affair. Even after Fox Rothschild "withdr[ew]," apparently Mr. Gross continued providing counsel "antagonistic to" GlassBridge, DePerio, Sport-BLX, and Hall. Ex. 1 at 7, 3 ("Salerno is being extremely antagonistic to mundane matters at hand and appears to continue to get legal advice from your firm" after receiving an email cc'ing Mr. Gross). That resulted in Fox Rothschild's general counsel getting involved, and repeated assurances to DePerio that "we were told Mark withdrew from that matter." *Id.* at 4-5. The response was clear: on behalf of the firm, Ms. Thein told Defendants "I am as disappointed and surprised by all this as you are" and "I spoke with another attorney in our general counsel's office who said she would handle this right away." Ex. 1 at 2. *That* was what resulted in final, clear comment: "Marc Gross confirmed this afternoon that he is NOT representing Michael Salerno on this matter and referred Mr. Salerno to other legal counsel." *Id.* at 1.

Rather than a single canon, then, this implicates (at least) two: there is a clear conflict, but also, Fox Rothschild as a firm made repeated representations to *all* Defendants that Mr. Gross had fully withdrawn and would no longer be acting adverse to them. That was false. Yet, in reliance on that representation, they spent some two-hundred thousand more dollars on Fox Rothschild's services. Putting aside whether there even is a conflict (there is), making such false assurances itself creates an appearance of impropriety — and such appearances are, standing alone, sufficient to warrant disqualification.

Additionally, the conflict extends beyond just GlassBridge. For one thing, Fox Rothschild's promises were made to Mr. DePerio personally. But more importantly, a significant feature in the advice Fox Rothschild gave to GlassBridge was in part related to the company's ownership of a significant portion of Sport-BLX. While the non-GlassBridge Defendants will expand more in their motion papers, as they have gathered records of the relevant time, it has become very clear that Fox Rothschild's counsel covered *all* Defendants here.

---

[2] Exhibit 2 is the letter attached to the initial email in the thread attached as Exhibit 1. Curiously, the letter is not actually on Fox Rothschild letterhead, but names Mr. Gross as a "Partner" in an unidentified firm, and appears to follow Fox Rothschild's file numbering system.

Page 2 of 4

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com

## II. The Court Should Decide the Disqualification Motion and Stay Anything Else.

In addition to joining the motion, the non-GlassBridge Defendants believe the Court ought to stay the motion to dismiss schedule — particularly in light of the fact that Fox Rothschild previously acknowledged there was at least an appearance problem in representing Cypress. A number of Courts of Appeals have cautioned that "[a] district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely." *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 654 (6th Cir. 2013). In fact, the D.C. Circuit has reversed a grant of summary judgment for failure to *first* "decide the motion to disqualify before ruling on any dispositive motion." *Grimes v District of Columbia*, 794 F3d 83, 95 (D.C. Cir. 2015). It explained:

> "For the very reasons that the ethics rules forbid lawyers to enter into representations that create conflicts of interest or the appearance thereof, a district court must promptly address allegations of conflict. … For example, if counsel has a conflict from previously representing the party seeking disqualification, there is a risk that confidential information could be used in preparing or defending [a dispositive] motion[.] Resolving asserted conflicts before deciding substantive motions assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel."

*Id.* at 90 (cleaned up, alterations indicated), *citing Bowers,* at 654. Other courts reach similar conclusions — and as requested here, stay motions to dismiss pending a disqualification motion. *See, e.g., Fierro v Gallucci*, 2007 US Dist LEXIS 89296, at *22 (EDNY Dec. 4, 2007) ("the Court … believes that this disqualification issue should be resolved prior to having oral argument and addressing the motion to dismiss"); *Barnett v Tennessee Dept. of Children's Servs.*, 2017 US Dist LEXIS 114889, at *3 (ED Tenn July 24, 2017) ("Defendants' Motion to Stay Plaintiffs' Deadline to Respond to Defendants' Motion to Dismiss is hereby GRANTED. The Court will issue a briefing schedule after the Motion to Disqualify is adjudicated.") (citation omitted).

Thus, the non-GlassBridge Defendants ask for a conference to discuss their proposed motion to disqualify, and ask that the Court stay the schedule on the motion to dismiss until this conflict issue can be resolved. This application is made on consent of all parties including co-defendant GlassBridge and Plaintiff (at least as to the request to stay the motion to dismiss briefing). We thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____
J. Remy Green
    *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216

Page 3 of 4

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com

Ridgewood, New York 11385

cc:
All counsel of record by ECF.

Page 4 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com