**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------  X

CYPRESS HOLDINGS, III, L.P., individually and
derivatively on behalf of SPORT-BLX, INC.,

                Plaintiff,

                -against-

GEORGE HALL, JOSEPH DEPERIO, SPORT-
BLX, INC. and GLASSBRIDGE ENTERPRISES,
INC.,

                Defendants.

------------------------------------------------------------  X

: Case No. 22-cv-01243 (LGS)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GLASSBRIDGE ENTERPRISES INC.'S MOTION TO DISQUALIFY FOX ROTHSCHILD LLP

LOEB & LOEB LLP
Christian D. Carbone
Danielle C. Quinn
345 Park Avenue
New York, New York 10154
(212) 407-4000

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS ......................................................................................................2

      A.      Fox Rothschild Represented GlassBridge on Two Different Matters and Gained Information Concerning GlassBridge's Investments in Sport-BLX.......................................................................................................................2

      B.      GlassBridge Alerted Fox Rothschild to the Cypress Conflict in 2019 ...................4

      C.      The Allegations in This Lawsuit Concern GlassBridge's Sport-BLX Assets ..................................................................................................................4

LEGAL STANDARDS ...........................................................................................................5

CYPRESS'S COUNSEL FOX ROTHSCHILD SHOULD BE DISQUALIFIED.........................6

      A.      Fox Rothschild's Prior Representations on Substantially Related Matters .................................................................................................................7

      B.      GlassBridge Has Zero Reason To Believe That Its Confidential Information Was Not Accessible at Fox Rothschild.............................................10

CONCLUSION......................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cinema 5, Ltd. v. Cinerama, Inc.*,
  528 F.2d 1384 (2d Cir. 1976)..................................................................6

*First NBC Bank v. Murex, LLC*,
  259 F. Supp. 3d 38 (S.D.N.Y. 2017) ...........................................6, 7, 8, 9

*Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005)................................................................5, 6, 7

*Hull v. Celanese Corp.*,
  513 F.2d 568 (2d Cir. 1975)....................................................................5

*Ullrich v. Hearst Corp.*,
  809 F. Supp. 229 (S.D.N.Y. 1992) .........................................................9

*United States Football League v. Nat'l Football League*,
  605 F. Supp. 1448 (S.D.N.Y. 1985) ........................................................5

*United States v. Prevezon Holdings Ltd.*,
  839 F.3d 227 (2d Cir. 2016)................................................................6, 7

*Universal City Studios, Inc. v. Reimerdes*,
  98 F. Supp. 2d 449 (S.D.N.Y. 2000) ......................................................6

**Other Authorities**

N.Y. Rules of Prof'l Conduct 1.9(a) ..............................................................6

Defendant GlassBridge Enterprises, Inc. ("GlassBridge") respectfully submits this memorandum of law in support of GlassBridge's motion to disqualify Fox Rothschild LLP ("Fox Rothschild") from representing Plaintiff Cypress Holdings, III, L.P. ("Cypress") in this litigation.

## PRELIMINARY STATEMENT

GlassBridge is being forced to defend itself in a lawsuit brought by its former law firm Fox Rothschild based on the very confidences that it provided Fox Rothschild during at least two prior representations.  GlassBridge provided Fox Rothschild information regarding GlassBridge's valuation and assessments of its Sport-BLX, Inc. ("Sport-BLX") investment so that Fox Rothschild could advocate on its behalf to include those assets in a proposed settlement agreement, and, independently, so Fox Rothschild could assist GlassBridge in lowering its premiums for its Directors and Officers insurance policy.  During both of these representations, counsel for Fox Rothschild received detailed information about GlassBridge's viewpoints on its investments in Sport-BLX.

There is no doubt that Fox Rothschild had an improper, concurrent client conflict in 2019 when the law firm represented both Cypress and GlassBridge.  That conflict was purportedly cured promptly, resulting in Mr. Marc Gross disengaging Cypress as a client – or at least that is what GlassBridge was told.  Trusting this representation, GlassBridge went on to pay Fox Rothschild's legal fees through mid-2020, and continued to retain Fox Rothschild as its counsel until November 2021, when GlassBridge was unilaterally informed by Fox Rothschild that its representation of GlassBridge had ended.  This was not a coincidence.  Two months after Fox Rothschild disengaged GlassBridge as a client, Cypress, by its Fox Rothschild attorney Mr. Gross, filed a complaint in New York state court asserting extremely serious (although baseless) claims that GlassBridge's purchases and sale of its Sport-BLX shares – at a time when GlassBridge was relying on Fox

Rothschild's legal advice – were somehow the basis for federal Racketeering Influenced and Corrupt Organization ("RICO") Act claims, civil conspiracy and related claims of wrongful conduct.   Plaintiff's   Amended Complaint continues to assert (untrue) allegations that GlassBridge's "wrongful conduct" somehow deprived Cypress of its seat on the Sport-BLX Board of Directors, and that GlassBridge improperly profited from its relationship with Cypress and Sport-BLX.

Putting aside, for purposes of this motion only, that Cypress's claims are legally and factually baseless, GlassBridge should not be forced to fire its former counsel on a matter so closely related to its prior representations.  All of the allegations in Cypress's Amended Complaint concern the same information that GlassBridge told its counsel, and concern GlassBridge's conduct during the same time period that GlassBridge was represented by Fox Rothschild, such that there is a very real risk that GlassBridge's confidences were accessible to others at Fox Rothschild and will be used against GlassBridge in this litigation.  Despite specific requests prior to the instant motion, Fox Rothschild has done nothing to show that GlassBridge's confidences were protected at the law firm, particularly given that Fox Rothschild was not even aware of its client conflict until raised by Mr. De Perio in July 2019 – months into both prior representations.

## STATEMENT OF FACTS

### A.    Fox Rothschild Represented GlassBridge on Two Different Matters and Gained Information Concerning GlassBridge's Investments in Sport-BLX

In effort to resolve pension obligations incurred before a restructuring in 2017, GlassBridge sought counsel from Fox Rothschild to assist it in reaching a settlement of its liabilities with the Pension Benefit Guaranty Corporation ("PBGC").  (Strauss Decl.[1] ¶ 3.)  After GlassBridge made

---

[1] Declaration of Daniel Strauss submitted in support of GlassBridge's motion to disqualify Fox Rothschild ("Strauss Decl.").  All exhibits cited herein are exhibits to the Strauss Declaration.

its initial investment in Sport-BLX, GlassBridge and its Fox Rothschild counsel, Pamela Thein, proposed to the PBGC a transfer of GlassBridge's interests in certain assets – including the Sport-BLX assets – to resolve its pension obligations.  (*Id.* ¶ 4.)  To make this proposal, GlassBridge had conversations with Ms. Thein to explain GlassBridge's Sport-BLX investment, including GlassBridge's thoughts and ideas about Sport-BLX's value, GlassBridge's expectations for its investment in Sport-BLX, including investment upside, as well as its thoughts and opinions on Sport-BLX's shortcomings.  (*Id.* ¶ 5.)  GlassBridge also provided materials to Fox Rothschild concerning Sport-BLX.  (*Id.*)  GlassBridge had to provide this information so that Ms. Thein could advocate to the PBGC for it to accept the Sport-BLX assets as part of a settlement.  (*Id.* ¶¶ 5-6.)

In or about April 2019, GlassBridge retained other attorneys at Fox Rothschild, Mark Schneebeck and Archana Nath, to assist GlassBridge in negotiating its Directors & Officers insurance policy, after GlassBridge was informed of substantial premium hikes due to its pension liabilities and its investment in Sport-BLX.  (*Id*. ¶¶ 8-9.)  Fox Rothschild worked on behalf of GlassBridge to negotiate this insurance policy by explaining both the pension litigation and the intricacies of Sport-BLX's business to the insurance company.  (*Id.* ¶¶ 8-10.)  To negotiate on GlassBridge's behalf, GlassBridge disclosed information to Fox Rothschild attorneys concerning GlassBridge's directors and officers, specifically GlassBridge's management and investment decision-making process as was necessary to procure the appropriate insurance coverage, which included GlassBridge's Sport-BLX investment decisions.  (*Id.*)  In addition, GlassBridge explained to Fox Rothschild, and ultimately its insurance company, Sport-BLX's business model, potential upside for the investment, and any risks associated with Sport-BLX's business.  (*Id*. ¶ 10.)

Fox Rothschild was retained as counsel since at least 2016, and GlassBridge provided these confidences to Fox Rothschild in and around March 2019 through May 2020.  (*Id*. ¶¶ 3, 22.)

**B.      GlassBridge Alerted Fox Rothschild to the Cypress Conflict in 2019**

In or around June 2019, GlassBridge received a demand letter from Fox Rothschild claiming that another client, Cypress, intended to sue Sport-BLX, which would have directly affected GlassBridge's interests in Sport-BLX.  (*Id*. ¶ 13, Exs. A, B.)  On July 10, 2019, Joseph De Perio, co-founder of Sport-BLX and then-Executive Chairman of GlassBridge, informed Ms. Thein of the conflict between GlassBridge's interests and Cypress's interests in the Sport-BLX assets.  (*Id.* ¶¶ 12-13, Ex. A.)  A series of exchanges between GlassBridge and Ms. Thein ensued, wherein GlassBridge was repeatedly assured that Fox Rothschild would not represent Cypress in litigation against GlassBridge's interests.  (*See id.* ¶¶ 15-21, Ex. A.)  After almost two months of back-and-forth between GlassBridge and its counsel, on September 3, 2019, GlassBridge was explicitly assured that Mr. Gross was no longer representing Cypress in a lawsuit concerning Sport-BLX.  (*Id.* ¶¶ 12-22, Ex. A.)

**C.      The Allegations in This Lawsuit Concern GlassBridge's Sport-BLX Assets**

On January 11, 2022, Cypress filed a Complaint against GlassBridge and co-Defendants Sport-BLX, George Hall, and Joseph De Perio (collectively, "Co-Defendants"), in New York Supreme Court, New York County, asserting federal and state RICO claims against GlassBridge.  (*Id.* ¶ 24, Ex. E.)  Co-Defendants removed Cypress's Complaint to this Court.  (ECF Doc. No. 2.[2])  On March 4, 2022, all defendants filed pre-motion letters seeking to move to dismiss Cypress's Complaint, and on April 7, 2022, Cypress filed its Amended Complaint.  (Ex. G.)  Both Cypress's Complaint and Amended Complaint alleged that GlassBridge, through its purchases of Sport-BLX stock during 2019, wrongfully deprived Cypress of a position on the Sport-BLX Board of Directors

---

[2] A true and correct copy of Cypress's original complaint filed on the ECF docket as Doc. No. 2-1 is attached to the Strauss Declaration as Exhibit F.

and caused GlassBridge to improperly profit off its relationship with Cypress and Sport-BLX. (*See, e.g.*, Ex. F ¶¶ 31, 35-40; Ex. G ¶¶ 53-62, 66, 130-32.)

On March 25, 2022, after having conducted a preliminary investigation, GlassBridge's counsel wrote to Mr. Gross stating that it believed Fox Rothschild was conflicted from representing Cypress.  (Strauss Decl. ¶ 26, Ex. H.)  GlassBridge requested that Mr. Gross provide Fox Rothschild's position on the conflict by April 1, 2022, so that GlassBridge could determine what action, if any, was required.  (*Id.*)  Fox Rothschild did not respond to GlassBridge's letter.  (Strauss Decl. ¶ 26.)  Accordingly, GlassBridge filed a request for a pre-motion conference to move to disqualify Fox Rothschild, along with a request to move to dismiss Cypress's Amended Complaint on April 14, 2022.  (ECF Doc. No. 19.)

## LEGAL STANDARDS

The federal courts' authority to disqualify attorneys is derived from the courts' "inherent power to 'preserve the . . . adversarial process'," *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005), with any doubt to be resolved in favor of disqualification, especially where there is a potential to taint the proceedings, *see Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).  Disqualification has been warranted where one side's counsel is permitted to remain in the case when (1) the challenged law firm is concurrently representing adverse interests calling into question the attorneys' interests; or (2) when the law firm's successive representation of adverse interests raises the possibility the attorney "will improperly use confidences gained in the prior representation to the detriment of his former client." *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (citations omitted).

It is prima facie improper for an attorney to simultaneously represent two clients with interests directly adverse, and a concurrent client conflict cannot be avoided by "'firing' the disfavored client, dropping the client like a hot potato, and transforming a continuing relationship to a former relationship by way of client abandonment." *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 453 (S.D.N.Y. 2000); *see Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386-87 (2d Cir. 1976).  But even under the former client standard, an attorney may be disqualified where "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)); *see also* N.Y. Rules of Prof'l Conduct 1.9(a).  Once a substantial relationship has been established, there is a rebuttable presumption that an attorney formerly associated with a firm himself received confidential information transmitted by a client to the firm.  *See Hempstead Video, Inc.*, 409 F.3d at 133.  Where an attorney had access to confidential information, "[d]isqualification is . . . required to avoid the risk that counsel's access to . . . confidential information would, even if inadvertently or unconsciously, affect counsel's conduct of this litigation."  *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 74 (S.D.N.Y. 2017).

## CYPRESS'S COUNSEL FOX ROTHSCHILD SHOULD BE DISQUALIFIED

Fox Rothschild juggled two clients:  it engaged both Cypress and GlassBridge on matters pertaining to their respective investments in Sport-BLX; purportedly disengaged Cypress, later disengaged GlassBridge like a hot potato, and then – knowing full well that it had represented to

6

GlassBridge that it would not represent Cypress in a lawsuit adverse to GlassBridge's interests in Sport-BLX – re-engaged Cypress and brought this lawsuit.  (Strauss Decl. ¶¶ 12-24.)   Fox Rothschild had a concurrent client conflict, and now has former-client conflict.  To be sure, Fox Rothschild obtained sensitive and confidential information during two different representations that are substantially related to the allegations Cypress asserts in this lawsuit, and the presumption that this information was available to Mr. Gross and Mr. Kaplan cannot be rebutted.

### A.  Fox Rothschild's Prior Representations on Substantially Related Matters

Ms. Thein, Mr. Schneebeck, and Ms. Nath represented GlassBridge on two different matters throughout 2019 and 2020, and Fox Rothschild's representation of GlassBridge was not "terminated" until November 2021.  (Strauss Decl. ¶¶ 3-11, Exs. C, D); *see Hempstead Video, Inc.*, 409 F.3d at 134 (requiring affiliation).  Also, during 2019, Fox Rothschild was representing Cypress with respect to its investments in Sport-BLX, and that representation was supposedly terminated in September 2019.  (Ex. A (explaining "Mark[sic] withdrew from that matter").)  Whether evaluated as a concurrent client conflict or a former client conflict, a "substantial relationship" between Fox Rothschild's prior representations and this litigation exists because facts pertinent to GlassBridge's Sport-BLX investment are directly relevant to this litigation.  *See Prevezon Holdings Ltd.*, 839 F.3d at 239 ("A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation.")

In *First NBC Bank v. Murex*, the court considered similar circumstances involving a concurrent client conflict, a disengaged former-client, and a later lawsuit brought against the former-client.  259 F. Supp. 3d 44-52.  In *First NBC Bank*, a firm's Washington D.C. office represented Murex on certain EPA regulatory matters and, around the same time, its Atlanta office advised First NBC Bank on matters related to certain purchases from Murex.  *See id.* at 42-49, 51.

In 2016, while the firm was representing both clients, it learned of the potential client conflict, determined that there was no conflict, but sought a conflict waiver in an abundance of caution.  *Id.* at 49-51.  Murex declined to consent to the conflict.  *Id.* at 50-51.  Five months after the firm's engagement with Murex ended, the firm's Atlanta office sued Murex asserting Murex had set forth a scheme to defraud First NBC Bank.  *Id.* at 52.  The allegations in that complaint alleged that Murex had engaged in a "phony transaction," tortuously interfered with contracts, and violated RICO laws and EPA regulations.  *Id.* at 52-53.  Murex argued that they had provided their counsel confidential information and received strategic advice about how to address the EPA issue, among other things.  *Id.* at 53-54.  The Court held that there was an improper concurrent client representation, that the law firm's accusing its former client Murex of regulatory and legal violations created at a minimum the appearance of disloyalty, *id.* at 68-69, and that the firm gained significant confidential information that could prejudice Murex, thus warranting disqualification. *Id.* at 67-71.

Here, like in *First NBC Bank*, the allegations in the Complaint and Amended Complaint make serious claims sounding in RICO, unjust enrichment, tortious interference, and concern GlassBridge's conduct during the same time period that it was relying on Fox Rothschild's counsel.  The allegations also concern GlassBridge's understanding, valuation, and projections for the Sport-BLX assets that it told its counsel.  (Strauss Decl. ¶¶ 24, 28; *see, e.g.*, Ex. F, Ex. G ¶¶ 53-54, 59-61.)

Moreover, should this litigation proceed, GlassBridge's decision to invest in the Sport-BLX assets, its thinking and valuation of the Sport-BLX assets during 2019 and 2020, its understanding of Sport-BLX as a business, and its projections or expectations of how Sport-BLX's business might evolve will inevitably be a part of this lawsuit.  GlassBridge will need to argue in

its defense that it made its investment decisions irrespective of Cypress's involvement in Sport-BLX, that it did not take the Sport-BLX business concept for itself, and that it did not profit off of its investments in Sport-BLX.  These defenses will implicate the exact kind of information that GlassBridge would have told its counsel during 2019 and 2020 when evaluating its Sport-BLX assets for purposes of the PBGC negotiation and negotiating its insurance policy.  (Strauss Decl. ¶¶ 3-12, 24.); *see First NBC Bank*, 259 F. Supp. 3d at 72 (explaining that given the broad ranging claims, defendant's state of mind, its good faith, its compliance efforts and history and its corporate culture may be part of the defense and were part of the information counsel learned during the prior representation, weighing in favor of disqualification).

Finally, should Cypress be successful in its claims against GlassBridge for unjust enrichment and tortious interference, GlassBridge may well need to file a claim with its insurance carrier under the same policy that Fox Rothschild counsel Mr. Schneebeck and Ms. Nath assisted GlassBridge in procuring.  (Strauss Decl. ¶ 27.)  The information that Mr. Schneebeck and Ms. Nath gained about the nature of potential for coverage for claims related to Sport-BLX, i.e. Cypress's claims in this lawsuit, is extremely prejudicial to GlassBridge's litigation defense and potential settlement strategy.  *See Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992) (Leval, J.) ("Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses.")

For these reasons, the factual underpinnings of both the prior representations and this lawsuit are substantially related, and concern information that GlassBridge provided to its counsel.

**B.  GlassBridge Has Zero Reason To Believe That Its Confidential Information Was Not Accessible at Fox Rothschild**

Fox Rothschild cannot rebut the presumption that GlassBridge's client confidences shared with its counsel were accessible to Cypress's counsel Mr. Gross and Mr. Kaplan.  Prior to GlassBridge's request to this Court to file the instant motion, GlassBridge wrote to Fox Rothschild, explained that based on a preliminary investigation GlassBridge believed that Fox Rothschild had a conflict of interest representing Cypress in this litigation, and asked Fox Rothschild for its position.  (Strauss Decl. ¶ 26, Ex. H.)  That letter went unanswered.  (*Id.*).  Without the necessary information, this motion has again put GlassBridge in the position of safeguarding its confidences at its prior law firm.  Absent any proof from Fox Rothschild as to why it should not be conflicted from representing Cypress, GlassBridge maintains that the presumption that its confidences were shared within Fox Rothschild is unrebutted.

## CONCLUSION

For all the foregoing reasons, GlassBridge respectfully requests that this Court grant GlassBridge's motion to disqualify Fox Rothschild, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      May 31, 2022

                Respectfully Submitted,

                LOEB & LOEB LLP

                By: */s/ Christian D. Carbone*
                    Christian D. Carbone
                    Danielle C. Quinn
                    345 Park Avenue
                    New York, New York 10154
                    (212) 407-4000

                    *Attorneys for Defendant GlassBridge*
                    *Enterprises, Inc.*

22282584.4