UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
:
CYPRESS HOLDINGS, III, L.P., individually and :
derivatively on behalf of SPORT-BLX, INC., :
: Case No. 22-cv-01243 (LGS)
Plaintiff, :
:
-against- :
: **DECLARATION OF**
GEORGE HALL, JOSEPH DEPERIO, SPORT- : **DANIEL STRAUSS IN SUPPORT**
BLX, INC. and GLASSBRIDGE ENTERPRISES, : **OF GLASSBRIDGE ENTERPRISES**
INC., : **INC.'S MOTION TO DISQUALIFY**
:
Defendants. :
:
------------------------------------------------------------ X

I, Daniel Strauss, declare and state as follows:

1. I am the Chief Executive Officer of GlassBridge Enterprises, Inc. ("GlassBridge"), and previously served as Chief Operating Officer of GlassBridge from March 2017 through December 2019. Unless otherwise indicated, I have personal knowledge of the facts contained herein and, if called as a witness, I could and would testify competently thereto. As GlassBridge's Chief Executive Officer, my day-to-day responsibilities include executive level decision-making for all of GlassBridge's business investments, financial reporting, and operations.

2. As set forth below and in the accompanying memorandum of law, GlassBridge is being forced to defend itself in a lawsuit brought by its former counsel Fox Rothschild LLP ("Fox Rothschild") based on the same issues for which it sought Fox Rothschild's advice for several years. If this were not enough, Fox Rothschild's representation of Cypress Holdings, III, L.P. ("Cypress") is particularly egregious given that substantially similar claims advanced in this lawsuit were previously advanced by Mr. Marc Gross of Fox Rothschild, on behalf of Cypress, at the same time Fox Rothschild was actively representing GlassBridge on matters pertaining to its Sport-BLX assets and its Directors & Officers insurance policy ("D&O Policy"). Aware of the

conflict, GlassBridge was assured by its lawyers at Fox Rothschild that Mr. Gross would not be representing Cypress in matters adverse to GlassBridge.  Nevertheless, GlassBridge was – after the payment of substantially more legal fees – unilaterally informed that Fox Rothschild was disengaging GlassBridge as a client in or around November 2021.  Two months after Fox Rothschild disengaged GlassBridge as a client, Cypress (represented by Mr. Gross) sued GlassBridge setting forth extremely serious allegations under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act, the New Jersey RICO statute, and Civil Conspiracy, concerning GlassBridge's investments in Sport-BLX.  Given that GlassBridge's former counsel is now accusing GlassBridge of committing "unlawful conduct" in connection with its business relationship with Cypress and Sport-BLX during the same time when we at GlassBridge were relying on their advice and counsel, and given Fox Rothschild's prior assurances to GlassBridge addressing this same conflict of interest, GlassBridge is rightly concerned that Fox Rothschild has and may use privileged and highly confidential information provided in confidence to its counsel against GlassBridge in this lawsuit.

## GLASSBRIDGE'S ATTORNEY-CLIENT RELATIONSHIP WITH FOX ROTHSCHILD CONCERNING ITS SPORT-BLX ASSETS

3. My role at GlassBridge began in or about March 2017, shortly after GlassBridge had completed a wind down of its former business activities.  Myself and a new management team were brought in to restructure GlassBridge's business.  As part of GlassBridge's new management's plan to address certain pension liabilities, Fox Rothschild was retained to represent GlassBridge.  The Pension Benefit Guaranty Corporation ("PBGC") had informed GlassBridge that it was considering foreclosing on GlassBridge to recover defaulted pension obligations, which would have resulted in the depletion of all of GlassBridge's assets.  In response, in or around March 2019, we along with our counsel at Fox Rothschild began negotiating with the PBGC.

4. Ms. Pamela Thein, a partner at Fox Rothschild, advised GlassBridge on a potential settlement offer with the PBGC. One of GlassBridge's proposals was to offer the PBGC money and interests in GlassBridge's investments to pay off its pension liabilities. As part of GlassBridge's efforts to negotiate with the PBGC, we at GlassBridge told Fox Rothschild about GlassBridge's various assets, including GlassBridge's Sport-BLX assets.

5. Myself and others at GlassBridge relayed to Ms. Thein and other attorneys at Fox Rothschild our thoughts and ideas about Sport-BLX's value, GlassBridge's expectations for its investment in Sport-BLX, including investment upside, as well as our thoughts and opinions on Sport-BLX's shortcomings. GlassBridge provided materials to its attorneys at Fox Rothschild. This information was provided to Fox Rothschild so that Ms. Thein could evaluate and advocate to the PBGC that it should accept GlassBridge's offer.

6. Ms. Thein's role was to convince the PBGC that GlassBridge, in assigning its interests in Sport-BLX (among other interests) to the PBGC, was a valuable monetary offer that should resolve GlassBridge's pension liabilities. Upon information and belief, Ms. Thein went so far as to draft a proposed settlement agreement that included the Sport-BLX assets. There is no doubt that Ms. Thein, as our counsel, was deeply entrenched in GlassBridge's valuation of its Sport-BLX assets.

7. I am prepared to provide additional information about what I told and provided to my counsel at Fox Rothschild to the Court in camera.

## GLASSBRIDGE'S ATTORNEY-CLIENT RELATIONSHIP WITH FOX ROTHSCHILD CONCERNING ITS DIRECTORS AND OFFICERS POLICY

8. In or about April 2019, Fox Rothschild partners Mark P. Schneebeck and Archana Nath represented GlassBridge in connection with its D&O Policy. This representation involved, among other things, review of the D&O Policy underwriting, review of GlassBridge's pension

liabilities, GlassBridge's understanding of the intricacies of the Sport-BLX business, as well as negotiating insurance coverage for potential claims brought against GlassBridge.

9. One of the reasons that GlassBridge retained Fox Rothschild to assist it with procuring its D&O Policy was because GlassBridge's insurance company expressed that it intended to increase GlassBridge's cost of insurance coverage due to its pension liabilities, and because of GlassBridge's investment in Sport-BLX. Upon information and belief, the insurance company believed that sports-related investments were riskier than other kinds of investments. Also upon information and belief, GlassBridge's D&O Policy significantly increased because of its investment in Sport-BLX and the PBGC.

10. During this representation, I, on behalf of GlassBridge, disclosed information to Fox Rothschild attorneys concerning GlassBridge's directors and officers, and specifically GlassBridge's management and investment decision-making process as was necessary to procure the appropriate insurance coverage. This included GlassBridge's Sport-BLX investment decisions. In addition, we were required to explain to Fox Rothschild, and ultimately our insurance company, Sport-BLX's business model, potential upside for the investment, and any risks associated with Sport-BLX's business. These conversations concerned, among other things, confidential non-public information describing Sport-BLX's platform for monetizing athletes and sport teams as investment assets. Given this, Fox Rothschild received confidential and privileged information as to the inner-workings of GlassBridge's D&O Policy, specifically as it relates to GlassBridge's investment in Sport-BLX.

11. I am prepared to provide additional information about what I told and provided to my counsel at Fox Rothschild to the Court in camera.

### THIS LAWSUIT DIRECTLY PERTAINS TO INFORMATION GLASSBRIDGE TOLD AND PROVIDED TO FOX ROTHSCHILD

12. Upon learning about this lawsuit, it became apparent to me that Cypress's lawsuit was similar in sum and substance to a prior pre-suit communication Sport-BLX received from Cypress in June 2019, wherein Cypress was then also represented by Mr. Gross of Fox Rothschild. A true and correct copy of this 2019 email correspondence and letter are attached hereto as **Exhibits A** and **B**, respectively.

13. While GlassBridge was represented by Fox Rothschild, Sport-BLX received a letter from Mr. Salerno and Cypress, dated June 2019, wherein Mr. Gross of Fox Rothschild, on behalf of Mr. Salerno and Cypress, notified George Hall and Sport-BLX of potential claims in connection with Cypress's investment in Sport-BLX. At this time, GlassBridge was an investor in Sport-BLX – a fact that Fox Rothschild was clearly aware of because of its existing representation of GlassBridge. Given GlassBridge's investment in Sport-BLX and the effect any potential lawsuit would have on GlassBridge, GlassBridge was forwarded this communication by Joseph De Perio, who held management roles at both Sport-BLX (President) and GlassBridge (Executive Chairman).

14. After the correspondence from Mr. Gross, setting forth numerous unsubstantiated statements and purported legal claims, on July 10, 2019, we informed our then-counsel Ms. Thein of Fox Rothschild how distressing it was that Sport-BLX received such correspondence from our own lawyers. At that time, we wished to continue our representation with Ms. Thein, because we had a good working relationship on the PBGC matter. Ms. Thein immediately agreed to look into the Cypress letter issue.

15. On July 11, 2019, Ms. Thein informed us that Fox Rothschild was withdrawing from the representation of Cypress, and apologized that we were "put in the position of having to

contact" Fox Rothschild, and that GlassBridge was an important relationship to the firm. After receipt of this communication, GlassBridge was satisfied that Fox Rothschild was no longer representing Cypress in a matter adverse to GlassBridge's interests, as we were expressly told. Fox Rothschild continued to represent GlassBridge in connection with its Sport-BLX assets and the PBGC matter.

16. A month later, on August 16, 2019, Mr. Gross from Fox Rothschild was copied on an email communication wherein Mr. Michael Salerno (of Cypress) and George Hall (of Sport-BLX), discussed certain FINRA disclosures related to Sport-BLX. That same day Mr. De Perio forwarded the email communication with Mr. Gross, Mr. Hall, and Mr. Salerno to Ms. Thein, myself, and Mark Schneebeck, Archana Nath, and Steven Meyer, our other lawyers at Fox Rothschild. Mr. De Perio, co-founder of Sport-BLX and then-Chairman of the Board of Directors for GlassBridge, explained to our counsel why Sport-BLX needed certain FINRA information from Mr. Salerno, as well as Mr. De Perio's impression that Mr. Salerno had violated the terms of Sport-BLX's and Mr. Salerno's agreement – a defense that will be raised in this lawsuit by GlassBridge.

17. As to Fox Rothschild's representation of Cypress in matters concerning Sport-BLX, Mr. De Perio explained to Ms. Thein: "I thought this was resolved in our last email exchange, but it appears he continues to get advice from Fox Rothschild to our detriment." Upon information and belief, Fox Rothschild had not informed Mr. Salerno that it was no longer representing him or Cypress, and Mr. Gross was providing advice to Cypress that was adverse to the interests of GlassBridge.

18. Ms. Thein responded the same day, August 16, 2019, stating that she was told Mr. Gross withdrew from representing Cypress, and that she was reaching out to someone internally

at Fox Rothschild, presumably someone in Fox Rothschild's General Counsel's office, to determine why Mr. Gross was copied on the email from Mr. Salerno to Mr. Hall concerning Sport-BLX. At this point, we believed that Ms. Thein agreed that Fox Rothschild could not represent both GlassBridge and Cypress at the same time. GlassBridge would have never agreed to such concurrent representation.

19. On August 20, 2019, before Ms. Thein responded to Mr. De Perio's request, Mr. De Perio informed her that there was yet again another communication from Mr. Salerno to Mr. Hall, copying Mr. Gross. That same day, Ms. Thein responded that Fox Rothschild's General Counsel was out of the office, did not get back to Ms. Thein for a few days, and that the firm was unable to get in touch with Mr. Gross because he was also on vacation, and suggested that maybe Mr. Salerno copied Mr. Gross by mistake. First, we at GlassBridge found it hard to believe that a partner at a law firm such as Fox Rothschild would not at a minimum monitor his email while out of the office. Second, we at GlassBridge did not believe it was a mistake. Joseph De Perio informed Ms. Thein as much, explaining that the "[(i)] cc'ing happened a number of times in the past week and (ii) Mr. Salerno mentioned in person at our board meeting last week that he required ongoing consultation with his counsel before addressing a number of matters, which coincided with the cc'ing on emails." Mr. De Perio explained that he expected Fox Rothschild to "direct[] Marc Gross not to advise going forward or cooperate on transferring the file to another firm." Ms. Thein apologized, and at this point GlassBridge believed that Ms. Thein and Fox Rothschild's General Counsel's office were handling Fox Rothschild's Cypress conflict with Mr. Gross.

20. On September 3, 2019, without having heard back from Ms. Thein, Mr. De Perio informed Ms. Thein, Mr. Schneebeck, and Ms. Nath that Mr. Gross was *still* being copied on communications to GlassBridge that were directly adverse to GlassBridge's interests. Specifically,

the email that GlassBridge received from Mr. Salerno accused Sport-BLX of having misrepresented the Sport-BLX Board of Directors meeting minutes.  In no uncertain terms, Mr. De Perio stated "[Mr.] Salerno is being extremely antagonistic to mundane matters at hand and appears to continue to get legal advice from your firm."  At this point, GlassBridge had informed Fox Rothschild of a clear conflict for months and Fox Rothschild had done nothing to stop Mr. Gross from representing Mr. Salerno and Cypress in matters directly adverse to GlassBridge.  Ms. Thein responded, apologized, and explained she was not aware why Mr. Gross was copied on the email exchanges, and expressed she was in contact with Fox Rothschild's General Counsel's office, who would be handling the issue immediately.  We believed that Ms. Thein and Fox Rothschild's General Counsel's office continued to agree that there was a conflict, and would cease representing Cypress.

21. Later on September 3, 2019, Ms. Thein informed GlassBridge that "Marc Gross confirmed this afternoon that he is NOT representing Michael Salerno on this matter and referred Mr. Salerno to other legal counsel."  Ms. Thein explained that Mr. Gross did not respond promptly because he was on vacation, and that Mr. Gross explained "he was not consulted on this matter."  After this exceedingly frustrating series of events spanning from July 2019 through September 2019 – at the same time GlassBridge was working to resolve its pension liabilities with the PBGC – GlassBridge believed that Fox Rothschild would not represent Mr. Salerno, or Cypress, in matters adverse to GlassBridge, as GlassBridge had been expressly told by Ms. Thein.

22. GlassBridge continued to use Fox Rothschild as counsel, and paid Fox Rothschild legal fees up and until May 14, 2020.  From March 1, 2016, through November 21, 2021, GlassBridge paid Fox Rothschild almost $850,000 in legal fees.  A true and correct copy of GlassBridge's payment register to Fox Rothschild is attached hereto as **Exhibit C.**

23. GlassBridge continued to retain Fox Rothschild as counsel until I was informed via a phone call from Ms. Thein on or about November 5, 2021, that Fox Rothschild's representation of GlassBridge had ended. During this phone call I was not asked to waive any conflicts, nor was I informed that Fox Rothschild intended to represent Cypress and sue GlassBridge alleging purported claims related to Sport-BLX. The call from Fox Rothschild was followed by a letter confirming that Fox Rothschild's representation of GlassBridge had ended. A true and correct copy of the Fox Rothschild disengagement letter is attached hereto as **Exhibit D**.

### THE PRIOR REPRESENTATIONS ARE SUBSTANTIALLY RELATED TO THE ALLEGATIONS IN CYPRESS'S FIRST AND AMENDED COMPLAINT

24. Mr. Gross, on behalf of Cypress, filed a complaint concerning GlassBridge's investment in Sport-BLX assets in New York Supreme Court on January 11, 2022. Cypress's original complaint alleged that GlassBridge was involved in a racketeering scheme with co-defendants to deprive Cypress of its investment in Sport-BLX in violation of the federal RICO and New Jersey RICO laws. These very serious allegations were based on GlassBridge's Sport-BLX assets, and concerned many of the same confidences that I and others at GlassBridge provided our former counsel, Fox Rothschild, during the two prior representations. A true and correct copy of the Complaint that was served on GlassBridge is attached hereto as **Exhibit E**, and a true and correct copy of the Complaint that was removed to federal court is attached hereto as **Exhibit F**.

25. Cypress dropped its federal and state RICO claims against GlassBridge in its Amended Complaint on April 7, 2022. Nonetheless, the factual allegations in the Amended Complaint concern the same information GlassBridge provided to Fox Rothschild. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit G**.

26. On March 25, 2022, GlassBridge wrote to Mr. Gross to inform him that GlassBridge believed that, based on a preliminary investigation, Fox Rothschild had an

unwaivable conflict of interest and requested Fox Rothschild's position on the conflict. Mr. Gross did not respond to GlassBridge's March 25, 2022 letter. A true and correct copy of GlassBridge's March 25, 2022 letter is attached hereto as **Exhibit H**.

27. If Cypress were to prevail on its claims alleged against GlassBridge – which it should not – this will require GlassBridge to file a claim with its insurance carrier for its D&O Policy, the same policy that Fox Rothschild helped GlassBridge procure. Upon information and belief, Cypress and its counsel are using information gained during the prior representations of GlassBridge to bootstrap GlassBridge into this lawsuit and recover under its D&O Policy.

28. Given that Cypress's counsel was also GlassBridge's counsel during the very same time period at issue in this lawsuit, GlassBridge believes that privileged and highly confidential information relating to GlassBridge's operations, investment decision-making process, and GlassBridge's investment in Sport-BLX – the very issues in this lawsuit – will inevitably be used to prejudice GlassBridge in this action. Accordingly, GlassBridge respectfully submits that Fox Rothschild should be disqualified from its purported representation adverse to GlassBridge.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31st day of May 2022.

_____
DANIEL STRAUSS

22216071.7