**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

CYPRESS HOLDINGS, III, L.P., *individually and
derivatively on behalf of SPORT-BLX, INC,*

*Plaintiff,*

v.

GEORGE HALL, JOSEPH DE PERIO, SPORT-BLX,
INC. *and* GLASSBRIDGE ENTERPRISES, INC.

*Defendants.*

Case No. 22-CV-01243 (LGS)

---

**DEFENDANTS GEORGE HALL, JOSEPH DE PERIO, AND SPORT-BLX, INC'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY
FOX ROTHSCHILD FROM REPRESENTING PLAINTIFF**

---

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
remy@femmelaw.com

Wylie M. Stecklow, Esq.
**WYLIE STECKLOW P.L.L.C.**
Carnegie Hall Tower
152 West 57th St, 8th Floor
New York, New York 10019

*Attorneys for Defendants George Hall, Joseph
De Perio, and Sport-BLX, Inc.*

May 31, 2022

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................................iii

PRELIMINARY STATEMENT.......................................................................................................1

FACTUAL STATEMENT ...............................................................................................................2

ARGUMENT....................................................................................................................................3

    I.    Fox Rothschild May Not Represent Plaintiff Because it Has Unwaivable and Unwaived

Former and Current Conflicts...........................................................................................................3

    II.    Fox Rothschild Should Be Disqualified Because a Partner and the Firm's General Counsel

Committed Not to Represent Cypress...............................................................................................4

        A.    Fox Rothschild's broken promise to withdraw and cease representing Cypress and

Salerno is enforceable......................................................................................................................5

        B.    The appearance of impropriety where a firm's general counsel promises not to do

something, and the firm then does, to a client's great disadvantage, is too great to ignore...........6

    III.    Given the Claims Made, Because (At Least) Pamela Thein's Testimony Will Be Adverse to

Cypress, Disqualification Is Required. ............................................................................................8

CONCLUSION...............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
   722 F.2d 988 (2d Cir. 1983) ............................................................................................7

*Allegaert v. Perot*,
   434 F. Supp. 790 (S.D.N.Y. 1977) ..................................................................................7

*Analytica, Inc. v NPD Rsch., Inc.*,
   708 F2d 1263 (7th Cir 1983) ...........................................................................................7

*Arthur Lipper Corp. v. SEC*,
   547 F.2d 171 (2d Cir. 1976) .......................................................................................9, 10

*Bd. of Educ. v Nyquist*,
   590 F2d 1241 (2d Cir 1979) .............................................................................................6

*Bennett Silvershein Assoc. v Furman*,
   776 F Supp 800 (SDNY 1991) .........................................................................................6

*Blue Cross & Blue Shield of New Jersey, Inc. v Philip Morris, Inc.*,
   53 F Supp 2d 338 (EDNY 1999) ...............................................................................*passim*

*Clinard v Blackwood*,
   46 SW3d 177 (Tenn 2001) ...............................................................................................7

*Evans v. Artek Sys. Corp.*,
   715 F.2d 788 (2d Cir. 1983) .............................................................................................4

*Fields-D'Arpino v Rest. Assoc., Inc.*,
   39 F Supp 2d 412 (SDNY 1999) ......................................................................................6

*Gerffert Co. v Dean*,
   2011 US Dist LEXIS 15530 (EDNY Feb. 16, 2011)....................................................4, 5

*Glueck v. Jonathan Logan, Inc.*,
   653 F.2d 746 (2d Cir. 1981) .............................................................................................3

*Heelan v Lockwood*,
   143 AD2d 881 (2d Dept 1988) ................................................................................. 5, 6, 7

*Heringer v. Haskell*,
   536 N.W.2d 362 (N.D. 1995) ...........................................................................................7

*Home Care Indus. v Murray*,
154 F Supp 2d 861 (DNJ 2001) ................................................................7

*Intl. Elecs. Corp. v Flanzer*,
527 F2d 1288 (2d Cir 1975) .....................................................................6

*Kala v. Aluminum Smelting & Ref. Co.*,
81 Ohio St. 3d 1 (OH 1998) ....................................................................7

*Kassis v. Teacher's Ins. & Annuity Ass'n*,
695 N.Y.S.2d 515, 717 N.E.2d 674 (1999) .............................................7

*Lamborn v. Dittmer*,
873 F.2d 522 (2d Cir. 1989) ....................................................................9

*Obeid v. La Mack*,
2015 U.S. Dist. LEXIS 154546 (S.D.N.Y. Nov. 9, 2015) ......................4

*Paramount Communs. v. Donaghy*,
858 F. Supp. 391 (S.D.N.Y. 1994) ..........................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. MDL 05-1720 (JG) (JO), 2006 U.S. Dist. LEXIS 109062 (E.D.N.Y. Aug. 7, 2006) ........................................................................................................7

*Post-Confirmation Comm. of Unsecured Creditors v. Feld Grp., Inc. (In re I Successor Corp.)*,
321 B.R. 640 (Bankr. S.D.N.Y. 2005) .....................................................7

*Ramada Franchise Sys. v. Hotel of Gainesville Assocs.*,
988 F. Supp. 1460 (N.D. Ga. 1997) .........................................................4

*Rosman v. Shapiro*,
653 F. Supp. 1441 (S.D.N.Y. 1987) .....................................................6, 7

*SEC v. Harwyn Indus. Corp.*,
326 F. Supp. 943 (S.D.N.Y. 1971) ..........................................................8

*SEC v. Manor Nursing Ctrs., Inc.*,
458 F.2d 1082 (2d Cir. 1972) ...............................................................8, 9

*SEC v. Prince*,
942 F. Supp. 2d 108 (D.D.C. 2013) .........................................................8

*Yaretsky v. Blum*,
525 F. Supp. 24 (S.D.N.Y. 1981) ............................................................7

**Statutes**

15 Pa. C.S. § 8431(1) ....................................................................................5

28 USCS § 1658(b)(1) ................................................................................................................10

N.Y. Partnership L. § 20 ............................................................................................................5

**Other Authorities**

Geoffrey C. Hazard, Jr., *The Future of Legal Ethics*, 100 Yale L. J. 1239, 1240 (1991) .............................1

Ivan Moreno, *Fox Rothschild Faces New DQ Bid In Athlete Startup Case* (May 17, 2022) .........................2

William Shakespeare, <u>Hamlet</u> ..................................................................................................1

## PRELIMINARY STATEMENT[1]

The legal profession is not always held in high esteem.  The sentiment that lawyers' primary tools are tricks, and make their money not by ethics and reason, but wordsmithing and deception is not a new or even modern one.  *See, e.g.,* William Shakespeare, <u>Hamlet</u>, Act V, Sc. 1, l. 91 ("There's another. Why may not that be the skull of / a lawyer? Where be his quiddits now? His quillets? / His / cases? His tenures, and his tricks?"); Geoffrey C. Hazard, Jr., *The Future of Legal Ethics*, 100 Yale L. J. 1239, 1240 (1991) ('the public, and perhaps the profession itself, seem increasingly convinced that lawyers are simply a plague on society").  But more often than the profession gets credit for, we are better than that.  Motions like this one are thankfully scarce.

That said, there is little question this motion represents such a low.  The story, such as it is, is almost hard to believe:  a major firm's partner, while his firm was representing a client, threatened to sue that client.  He was told to stop — and did not.  So, the general counsel intervened — and he still did not stop.  So, apparently some further intervention took place, and the partner went quiet for two years.  Relying on that representation, the client paid several hundred thousand more dollars in fees.  But then the firm dumped the client, picked back up the adverse client, and filed this suit within two months.  And to cap it all off, the partner doing this has gone to the press, acting offended his firm's (forced-to-be-former) client might object to all of this.

The facts call to mind a colorful illustration offered by the late Judge Weinstein, imagining "a hypothetical conversation between co-workers":

> "Worker 1: Have you been following that lawsuit Blue Cross is bringing against the tobacco companies?
>
> Worker 2: Yes.

---

[1] Given the limited space, significant overlap in arguments, and in the interest of avoiding repetition, Defendants Hall, De Perio, and Sport-BLX ask the Court to treat this memorandum as if it also contains the facts and arguments contained in their co-Defendant, GlassBridge's motion as well.  Given that, they also suggest the Court read this memorandum second.

Worker 1: Did you hear what those lawyers did?

Worker 2: No, what?

Worker 1: This law firm that used to work for our Blue Cross actually switched sides! Now it's representing the tobacco companies. Can you believe the judge let those lawyers get away with that one?

Worker 2: What do you expect? No loyalty. Of course the judges don't stop them! Don't forget, they used to be lawyers too."

*Blue Cross & Blue Shield of New Jersey, Inc. v Philip Morris, Inc.*, 53 F Supp 2d 338, 346 (EDNY 1999). While the facts are somewhat different — shareholders instead of insurance plan holders, and so on — Judge Weinstein's dialogue would barely require a change to describe this case.  And so, for the reasons discussed here and in GlassBridge's motion, Defendants ask the Court to disqualify Fox Rothschild from representing Plaintiff.

## FACTUAL STATEMENT

As set out in GlassBridge's simultaneous motion, in short, "[t]here is no doubt that Fox Rothschild had an improper, concurrent client conflict in 2019 when the law firm represented both Cypress and GlassBridge."  Dkt. No. 27 ("GlassBridge MOL") at 1-5 (as paginated).  Fox Rothschild promised that Gross had, with finality, discharged Cypress and Michael Salerno (the "Discharge Agreement").  But some two years later, Fox Rothschild fired GlassBridge, and immediately Gross filed a suit on behalf of his supposedly discharged and supposedly former client.

During the discussions that led to the Discharge Agreement, it was clear to Joseph De Perio based on the emails and contemporaneous phone calls — and, he believes, to Fox Rothschild partner Pamela Thein and the firm's general counsel as well — that (1) there was a conflict (De Perio Dec. ¶¶ 45, 40-42); (2) Gross was acting without broader firm approval (*id.* ¶ 44)[2]; and (3) there was a firm agreement that Fox Rothschild would permanently withdraw from representing

---

[2] *But see*, Ivan Moreno, *Fox Rothschild Faces New DQ Bid In Athlete Startup Case*, LAW360 (May 17, 2022) ("Asked if he had the support of Fox Rothschild, Gross didn't hesitate. [He said,] 'A hundred percent.'").

Salerno and Cypress.  *Id.* ¶¶ 43-46; Hall Dec. ¶¶ 40-41.  Indeed, but for the Discharge Agreement, GlassBridge would have ceased using Fox Rothschild's services.  De Perio Dec. ¶ 46; Strauss Dec. ¶¶ 23-24; Hall Dec. ¶¶ 39-40.

In filing this suit, Fox Rothschild violated the Discharge Agreement in letter and in spirit. The suit it brought is the same one Gross threatened in 2019.  Hall Dec. ¶¶ 42-45; *compare* ECF No. 2-1 ¶ 23 *with* De Perio Ex. 2 at 1.  The parties agreed — without temporal limitation (*see Blue Cross*, 53 F Supp 2d at 343 (discussed below)) — that Fox Rothschild would no longer represent Plaintiff. Hall Dec. ¶¶ 41; De Perio Dec. ¶¶ 44-46; De Perio Ex. 1.  And yet, Fox Rothschild has appeared — and opposed the motion without any real explanation beyond a claim that "the eight month span between the time that Fox Rothschild last performed work for GlassBridge and the commencement of this litigation does not *per se* preclude Fox Rothschild from representing Cypress in this action." ECF No. 22 at 6.

## ARGUMENT

### I.   Fox Rothschild May Not Represent Plaintiff Because it Has Unwaivable and Unwaived Former and Current Conflicts.

As explained in GlassBridge's motion, there is an unwaivable — and in any event, unwaived — conflict for Fox Rothschild.  *See* GlassBridge MOL at 6-10.  Indeed, Fox Rothschild makes no claim there was any kind of wall or any other measure to protect GlassBridge's confidences.  Those conflicts extend to Hall, De Perio, and Sport-BLX itself as well.  The Discharge Agreement, if it meant *nothing* else, meant that everyone agreed that if Fox Rothschild filed the suit Gross threatened in 2019, it would be ethically "confus[ing]," "disappoint[ing]," "surpris[ing]," and require (1) an apology, (2) "withdr[a]w[al]," and (3) the attention of the firm's general counsel.  De Perio Ex. 1 at 1-5.

Situations where a difference between officers, subsidiaries, and a corporation is relevant border on non-existent — at least when all those parties seek the same result.  *See, e.g., Glueck v.*

*Jonathan Logan, Inc.,* 653 F.2d 746, 748-50 (2d Cir. 1981); *Ramada Franchise Sys. v. Hotel of Gainesville Assocs.,* 988 F. Supp. 1460, 1465 (N.D. Ga. 1997) (collecting conceptually related cases).  That is perhaps for obvious reasons:  the ethical rule is framed and phrased such that a firm or lawyer is "disqualified from representing a client in a particular case."  *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir. 1983).  Thus, as long as the corporation, officers, and subsidiaries' interests line up, it doesn't exactly matter the exact parameters of who holds the privilege.  In this context, a "pragmatic approach" (*Ramada,* 988 F. Supp. at 1465) makes some sense:  here, the actual humans speaking to the Fox Rothschild attorneys — the people Fox Rothschild made personal promises to — are the officer-defendants.  *Cf. Obeid v. La Mack,* 2015 U.S. Dist. LEXIS 154546, at *7 (S.D.N.Y. Nov. 9, 2015) (declining disqualification for supposed intra-corporate conflicts on the defendant side of the "v" because of the practical reality that "[u]navoidably, then, any replacement attorney would be chosen by Messrs. La Mack and Massaro, and would be subject to their direction").  Indeed, Plaintiff's own theory is that GlassBridge and its officers exercised *too much* control over Sport-BLX.  *See, e.g.,* ECF No. 16 ¶¶ 53-54.  As a practical matter, then, all of that "point[s] to an 'identity of interest' between" all Defendants "for the limited purpose of determining whether there was a conflict requiring disqualification of [Plaintiff's] counsel."  *Ramada,* 988 F. Supp. at 1465.  So for the reasons explored in the GlassBridge MOL, Fox Rothschild should be disqualified.

## II.    Fox Rothschild Should Be Disqualified Because a Partner and the Firm's General Counsel Committed Not to Represent Cypress.

As explained above, it appears that Fox Rothschild "willfully violated [its] agreement … not to represent one party in litigation against the other."  *Gerffert Co. v Dean,* 2011 US Dist LEXIS 15530, at *31-32 (EDNY Feb. 16, 2011).  That fact, standing alone, requires disqualification for two reasons:  (1) contracts and agreements of that kind can and should be enforced and (2) the violation of such a promise creates an "appearance of impropriety [so] overwhelming" it requires

disqualification even in the "exceedingly unlikely scenario that no privileged information" has been shared with Cypress.  *Id; see also,* Hall Dec. ¶¶ 20; 32 n. 1.

> A.   Fox Rothschild's broken promise to withdraw and cease representing Cypress and Salerno is enforceable.

Fox Rothschild made an enforceable promise:[3]  Marc Gross (and the firm more generally) would stop representing Plaintiff.  It made that promise after Gross sent a litigation threat presenting the same theory of liability here.  And Fox Rothschild received significant consideration — consideration it made a point of saying it "value[d]" and found "important" (De Perio Ex. 1 at 10) — in exchange for that promise.  The agreement was "freely entered into and is clear and unambiguous."  *Blue Cross*, 53 F Supp 2d at 343.  Gross and Fox Rothschild promised "not to advise [Plaintiff] going forward."  De Perio Ex. 1 at 5; *see also, id.* at 1-2 ("Marc Gross confirmed this afternoon that he is NOT representing Michael Salerno on this matter").

Thus, "[t]he firm's … appearance violated both the intent and letter of the [a]greement." *Blue Cross*, 53 F Supp 2d at 343.  "The [a]greement contained no provision for changed circumstances or any time limitation."  *Id.*  So, as a simple matter of contract law, the Court should enforce the Discharge Agreement between De Perio, GlassBridge, Hall, and Fox Rothschild:  "Marc Gross" should "NOT" be "representing Michael Salerno [or Cypress] on this matter."  De Perio Ex. 1 at 1-2.  *See, e.g., Blue Cross*, 53 F Supp 2d at 343; *cf., Heelan v Lockwood*, 143 AD2d 881, 884 (2d Dept 1988) (enforcing a lawyer's agreement not to represent an adverse party because of the improper appearance, rather than as a strict matter of contract law).

---

[3] There is no question that Thein — or for that matter, the firm's general counsel — had authority to bind the firm.  *See, e.g.,* N.Y. Partnership L. § 20.

**B.**       The appearance of impropriety where a firm's general counsel and a partner promise not to do something — and the firm then does — is too great to ignore.

As a baseline rule, the Second Circuit has cautioned that "though there are occasions when it should be applied," the ethical canon on appearances of impropriety "should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules." *Intl. Elecs. Corp. v Flanzer*, 527 F2d 1288, 1295 (2d Cir 1975). This makes sense: "if the only 'appearance of impropriety' is a violation of Canon 4 that has already been found devoid of substance, it would be downright perverse to hold that what has been held not to exist nonetheless 'appears.'" *Bennett Silvershein Assoc. v Furman*, 776 F Supp 800, 806 (SDNY 1991). Thus, it is only in "the rarest cases" that improper appearances alone can support disqualification. *Bd. of Educ. v Nyquist*, 590 F2d 1241, 1247 (2d Cir 1979). The conduct here, however, satisfies that high standard. "In the instant case the appearance of impropriety alone would support disqualification even absent an enforceable contract of disqualification." *Blue Cross & Blue Shield of New Jersey, Inc. v Philip Morris, Inc.*, 53 F Supp 2d 338, 346 (EDNY 1999). *See also, Rosman v. Shapiro*, 653 F. Supp. 1441, 1446 (S.D.N.Y. 1987) ("the obvious appearance of impropriety stemming from Y&Y's representation of Shapiro against its former client, Rosman, is so great that the Court must disqualify Y&Y.").

Courts have consistently found that promises of the kind made here — that "Marc Gross [is] NOT representing Michael Salerno on this matter and referred Mr. Salerno to other legal counsel" — that induce reliance create "an appearance of impropriety which necessitates [] withdrawal from the case." *Heelan v Lockwood*, 143 AD2d 881, 884 (2d Dept 1988) ("counsel admittedly participated in numerous conversations with [petitioner] and represented that his involvement would be limited to settlement negotiations," so "his subsequent acceptance of employment with the respondents after the commencement of litigation" was improper). *Cf. Fields-*

6

*D'Arpino v Rest. Assoc., Inc.*, 39 F Supp 2d 412, 416 (SDNY 1999) ("Defendants' argument, in essence, is that it never promised plaintiff or her counsel that it would not represent the defendants if litigation ensued. Under the circumstances, where the Dornbush firm held itself out to plaintiff and her counsel as a neutral, third-party mediator, that distinction rings hollow.") (discussing *Heelan*).

More generally, the most basic — and the most popularly understood — kind of appearance of impropriety is when a firm switches sides. That is because, at a fundamental level, "switching of sides smacks of the appearance of impropriety." *Home Care Indus. v Murray*, 154 F Supp 2d 861, 870 (DNJ 2001). Thus, over and over, decisions from across the country discussing the appearance of impropriety use side-switching as a touchstone because "[f]or a law firm to represent one client today, and the client's adversary tomorrow in a closely related matter, creates an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public -- or for that matter the bench and bar … [-- and c]lients will not repose confidences in lawyers whom they distrust and will not trust firms that switch sides as nimbly as" Fox Rothschild. *Analytica, Inc. v NPD Rsch., Inc.*, 708 F2d 1263, 1269 (7th Cir 1983).[4] In fact, even in a non-"side-switching" fact pattern, the Second Circuit used attorney "side switching cases" as a touchstone for the appearance of impropriety. *See, e.g., ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 995 (2d Cir. 1983) (in

---

[4] *See also, Post-Confirmation Comm. of Unsecured Creditors v. Feld Grp., Inc. (In re I Successor Corp.)*, 321 B.R. 640, 658 (Bankr. S.D.N.Y. 2005) ("Proskauer did switch sides in this case. Proskauer previously represented Interliant on at least two acquisitions and now Proskauer represents directors and officers adverse to Interliant's successor on claims that directly involve those two transactions"); *Kassis v. Teacher's Ins. & Annuity Ass'n*, 695 N.Y.S.2d 515, 518, 717 N.E.2d 674, 677 (1999) ("'side switching' clearly implicates the policies both of maintaining loyalty to the first client and of protecting that client's confidences"); *Heringer v. Haskell*, 536 N.W.2d 362, 367 (N.D. 1995) ("We believe the 'person on the street' would view a law firm 'switching sides' in the middle of a dispute to be highly objectionable"); *Clinard v Blackwood*, 46 SW3d 177, 188 (Tenn 2001) ("To analogize to baseball, Mr. Davis has not only switched teams, he has switched teams in the middle of the game after learning the signals. That Mr. Davis has been benched by his new team does little to ameliorate the public perception of an unfair game."); *Kala v. Aluminum Smelting & Ref. Co.*, 81 Ohio St. 3d 1, 14 (OH 1998) ("The appearance of impropriety is so strong that nothing that the Duvin firm could have done would have had any effect … This is the classic 'side-switching attorney' case"); *Yaretsky v. Blum*, 525 F. Supp. 24, 30 (S.D.N.Y. 1981); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. MDL 05-1720 (JG) (JO), 2006 U.S. Dist. LEXIS 109062, at *173 (E.D.N.Y. Aug. 7, 2006). *See further, Allegaert v. Perot*, 434 F. Supp. 790, 800 n.14 (S.D.N.Y. 1977) (collecting cases in different contexts); *Rosman*, 653 F. Supp. at 1446 (S.D.N.Y. 1987) ("the well-settled ethical principle is that 'when the interest of clients diverge and become antagonistic, their lawyer must be absolutely impartial between them, which . . . usually means that he may represent none of them.'") (*quoting* Drinker, Legal Ethics 112 (1953)).

a breach of fiduciary duty case, concluding, "[t]hus, although not wholly analogous to the side-switching cases involving attorneys and their former clients, this fact situation creates clear questions of impropriety.").

So, in sum, Fox Rothschild switched sides.  But this isn't the first time they switched sides.  Rather, they were caught doing it years ago — and at that time, acknowledged what happened was a serious violation of their conflict process and represented it was an aberration that would not be repeated.  De Perio Dec. ¶¶ 34-46.  And at that time, it wasn't even switching sides so much as trying to simultaneously play for both sides.  Given that, there is an indelible appearance of impropriety:  if a lawyer states something is improper and promises not to do it, no matter if there is *in fact* an ethical problem, it makes it look to lay audiences like lawyers are happy to change positions on what is ethical if the pay is good enough.  Whatever reputation the profession has for being ethical (*see, e.g., Blue Cross*, 53 F. Supp. at 344-46 (discussing negative public perceptions of attorneys)), it cannot survive that practice.

### III.     Given the Claims Made, Because (At Least) Pamela Thein's Testimony Will Be Adverse to Cypress, Disqualification Is Required.

As a final, free-standing reason the Court should disqualify Fox Rothschild, at a minimum Thein will be a witness in this case.  Plaintiff alleges (wrongly) that serious fraud took place in the development of the Sport-BLX business plan.  Plaintiff's law firm was involved in valuing Sport-BLX, and representing its value to an outside entity (the PBGC).  De Perio Dec. ¶¶ 28-31.  If De Perio and Hall (in their personal capacity as GlassBridge officers) must defend their decisions, it matters quite a bit what their lawyers at the time told them — if they can show they received and relied on advice of their counsel in good faith, that may form a significant part of a scienter defense. *See, e.g., SEC v. Harwyn Indus. Corp.*, 326 F. Supp. 943, 954 (S.D.N.Y. 1971); *SEC v. Prince*, 942 F. Supp. 2d 108, 143 (D.D.C. 2013).  *Cf. also, SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1101 (2d Cir. 1972) ("While good faith reliance on advice of counsel may be a factor to consider in deciding

whether to grant injunctive relief, appellants' proven lack of good faith here precludes them from relying on this argument").

When an attorney (A) "ought" to be called as a witness for their client; or (B) they learn that they "may be called" by an opposing party and "it is apparent" the testimony they would give "is or may be prejudicial" to the client," they should withdraw. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989) (*quoting* D.R. 5-102(A) and (B)). Thus, to prevail on a motion under the attorney-witness rule, a party must show the "witness is necessary, and that this testimony is substantially likely to be prejudicial to" the attorney or firm's current client. *Paramount Communs. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994). Like other motions to disqualify, and for similar reasons, motions under this rule (the "attorney-witness rule") are viewed with "fairly strict scrutiny." *Lambon*, 873 F.2d at 531.

To evaluate whether testimony is "necessary," courts look to "such factors as the significance of the matters, the weight of the testimony, and the availability of other evidence." *Paramount*, 858 F. Supp. at 394, *citing S&S Hotel Ventures L.P. v. 777 S.H. Corp.*, 69 N.Y.2D 437, 515 N.Y.S.2D 735, 508 N.E.2d 647, 651 (N.Y. 1987). And "prejudic[e]" in the relevant sense exists when an attorney's (necessary) testimony is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting that testimony." 858 F. Supp. at 395.

Here, both prongs are met. First, Thein's testimony is necessary to a potential advice of counsel defense. Advice of counsel is not a full defense in the securities fraud context. *See, e.g., Manor Nursing*, 458 F.2d at 1101. Rather, it is only a factor in evaluating the scienter element of a securities fraud claim. And some parties — including the SEC itself — have argued that sometimes even when a full disclosure is made and advice is received and followed, "the conduct was so flagrant a fraud that advice of counsel could never be a defense." *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 181 (2d Cir. 1976). Given that, unless Plaintiff plans to make substantial concessions,

Thein's testimony about how well-grounded her advice about Sport-BLX was — including information about exactly what research she did, how she evaluated the risks and information she was given, and so on — will be necessary as part of Defendants' advice of counsel defense, in order to fully head off any arguments of the kind discussed in *Arthur Lipper*.  Defendants expect that Thein will testify that her work was excellent, and everything about the Sport-BLX business model was — as she told the PBGC — promising, above board, and valuable.  De Perio Dec. ¶¶ 14-15, 29; Strauss Dec. ¶¶ 3-5.  Second, for substantially the same reasons, Thein's testimony will be prejudicial to Plaintiff — and will give Plaintiff every incentive to attack Thein's conclusions.

Past there, it also appears that Gross would likely give necessary testimony prejudicial to Plaintiff.  Gross appears to have been giving Plaintiff advice as early as the beginning of 2019, having threatened a lawsuit in June.  De Perio Ex. 1; Hall Dec. ¶ 20; 31-33.  Plaintiff did an abrupt about face on investing in Sport-BLX, apparently based on a fear of "missing out" — timed exactly in parallel with Fox Rothschild's work with the PBGC on the value of Sport-BLX.  Hall Dec. ¶¶ 15-20.  And at other times, Plaintiff represented it was engaged in "ongoing consultation with [its] counsel" while being difficult around various routine corporate governance issues at Sport-BLX.  De Perio Ex. 1 at 5.  Those representations about consulting counsel "coincided with [] cc'ing [Gross] on emails."  De Perio Ex. 1 at 5.  That strongly suggests Plaintiff in fact consulted Gross about the buyout offer in Hall Exhibit 2 — and that Gross advised against taking it.  Given that Plaintiff knew everything at the time of investment that he complains of now — the information was all in the diligence materials — and that he still refused a buyout of nearly twice his investment, Gross's testimony will likely establish a failure to mitigate defense as well as a statute of limitations defense under 28 USCS § 1658(b)(1).  *Id.* ¶¶ 15-20; 31-34; 32 n.1.

## <u>CONCLUSION</u>

For the reasons above, Defendants ask the Court to grant their motion and co-Defendant GlassBridge's motion, and disqualify Fox Rothschild from representing Plaintiff — and, if appropriate, grant further relief.

Respectfully submitted,

/s/
_____

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

Wylie M. Stecklow, Esq.
**WYLIE STECKLOW P.L.L.C.**
Carnegie Hall Tower
152 West 57th St, 8th Floor
New York, New York 10019