# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

CYPRESS HOLDINGS, III, L.P.

               Plaintiff,

    v.

GEORGE HALL, JOSEPH DEPERIO and
SPORT-BLX, INC., and GLASSBRIDGE
ENTERPRISES, INC.

               Defendants.

Case No. 22-CV-01243 (LGS)

---

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISQUALIFY FOX ROTHSCHILD AS COUNSEL FOR PLAINTIFF CYPRESS HOLDINGS, III, L.P.**

---

MARC J. GROSS, Esq.
**FOX ROTHSCHILD LLP**
101 Park Ave, 17th Floor
New York, New York 10178
Tel: 212-878-7900
Fax: 212-692-0940

Of counsel:

    Marc J. Gross, Esq.

On the Brief:

    Marc J. Gross, Esq.
    Jordan B. Kaplan, Esq.

135038852.2

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 3

      A.      Fox Previously Negotiated Issues Relating to a Pension Plan on GlassBridge's Behalf ...................................................................................... 3

      B.      Fox Withdraws its Prior Representation of Cypress Based Upon a Conflict Between Then-Current Clients ............................................................................ 4

      C.      Fox Ceases Performing Work for GlassBridge in April 2020 and Formally Terminates the Relationship in November 2021 ................................................ 5

      D.      Cypress Commenced This Lawsuit Against Defendants ....................................... 6

LEGAL ARGUMENT ........................................................................................................ 8

POINT I -- DEFENDANTS' MOTIONS SHOULD BE DENIED BECAUSE FOX'S PRIOR REPRESENTATION OF GLASSBRIDGE DOES NOT CONFLICT WITH ITS CURRENT REPRESENTATION OF CYPRESS ........................................................ 8

      A.      Defendants' Motion to Disqualify Should be Denied Because They Cannot Establish a "Substantial Relationship" Between this Litigation and Fox's Prior Representation of GlassBridge ................................................................... 10

      B.      Defendants' Motion to Disqualify Should be Denied Because They Cannot Demonstrate that Fox Had Access to Any Relevant Privileged Information ....... 12

      C.      Defendants' Motion Should be Denied Because the Alleged "Appearance of Impropriety" is a Fabrication of Defendants' Own Making ................................. 13

POINT II -- DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE FOX DID NOT ENTER INTO A CONTRACT CONCERNING ITS FUTURE REPRESENTATIONS OF CYPRESS ............................................................................ 15

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I. Credit Corp. v. Providence Washington Ins. Co.*,
    1997 WL 231127 (S.D.N.Y. May 7, 1997) ........................................................9

*Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*,
    53 F. Supp. 2d 338 (E.D.N.Y. 1999) ........................................................13, 16, 17

*Board of Ed. Of City of New York v. Nyquist*,
    590 F.2d 1241 (2d Cir. 1979)........................................................................13

*Cheng v. GAF Corp.*,
    631 F.2d 1052 (2d Cir. 1980)........................................................................8

*Cleverly Limited v. Anthony Sicari Apparel Group Industries, Inc.*,
    2003 WL 161317 (S.D.N.Y. Jan. 23, 2003) ........................................................10

*Correspondent Servs. Corp. v. J.V.W. Inv., Ltd.*,
    2000 WL 1174980 (S.D.N.Y. Aug. 18, 2000)........................................................8

*Cresswell v. Sullivan & Cromwell*,
    922 F.2d 60 (2d Cir. 1990)........................................................................8

*D.R.T., Inc. v. Universal City Studios, Inc.*,
    2003 WL 1948798 (S.D.N.Y. Apr. 24, 2003)........................................................8, 9

*Decora Inc. v. DW Wallcovering, Inc.*,
    899 F. Supp. 132 (S.D.N.Y.1995)........................................................................8

*Evans v. Artek Sys. Corp.*,
    715 F.2d 788 (2d Cir.1983)........................................................................9

*First Trust Nat'l Assoc. v. Moses & Singer*,
    2000 WL 1093054 (S.D.N.Y. Aug. 4, 2000) ........................................................8

*Gleason v. Zocco*,
    941 F. Supp. 32 (S.D.N.Y. 1996)........................................................................13

*Gov't of India v. Cook Indus., Inc.*,
    569 F.2d 737 (2d Cir. 1978)........................................................................9, 10

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005)........................................................................8

*Kowalchuk v. Stroup*,
    61 A.D. 3d 118 (1st Dep't 2009) ........................................................................15

*Kubin v. Miller,*
  801 F. Supp. 1101 (S.D.N.Y.1992)............................................................................9

*Lamborn v. Dittmer,*
  873 F.2d 522 (2d Cir. 1989)..................................................................................8

*Mark Bruce Int'l Inc. v. Blank Rome LLP,*
  60 A.D.3d 550 (1st Dep't 2009) ............................................................................15

*Unique Sports Generation, Inc. v. LGH–III, LLC,*
  2005 WL 2414452 (S.D.N.Y. Sept. 30, 2005)..........................................................8

*USFL v. National Football League,*
  605 F. Supp. 1448 (S.D.N.Y. 1985)......................................................................10

**Other Authorities**

22 N.Y. Jur. 2d, Contracts §9............................................................................15

Rule of Professional Conduct 1.6 (b).........................................................................3

## PRELIMINARY STATEMENT

Undeniably, defendants GlassBridge Enterprises, Inc. ("GlassBridge"), George Hall ("Hall"), Joseph De Perio ("De Perio") and Sport-BLX, Inc.'s ("Sport-BLX") (collectively, "Defendants") motion to disqualify Fox Rothschild LLP ("Fox") as counsel for plaintiff Cypress Holdings III L.P. ("Cypress") was brought for tactical purposes, to cause delay, impose unnecessary expenses, and interfere with Cypress' attorney-client relationship.   When the underlying facts are examined, however, it is clear that *no* conflict prohibits Fox's representation of Cypress in this litigation.

Prior to the commencement of this lawsuit, Fox represented GlassBridge in connection with entirely unrelated negotiations concerning a pension plan.   During those negotiations, GlassBridge advised Fox that it "planned" on investing in Sport-BLX.   GlassBridge even requested that Fox share information concerning the "planned" investment in Sport-BLX with third parties. Certainly, in view of this request, there is no basis to claim that Fox was somehow in possession of confidential information.   Moreover, Fox neither performed due diligence for GlassBridge in connection with GlassBridge's "planned" transaction, nor did it represent GlassBridge when the transaction was ultimately consummated.   Thus, with respect to Fox's representation of GlassBridge, it is clear that Fox did *not* receive any confidential information concerning GlassBridge's investment in Sport-BLX, nor did it provide any counsel relating to that investment. Critically, as Fox's relationship with GlassBridge formally terminated in November 2021 – more than a year after Fox last performed work for GlassBridge – it is undisputed that Fox did *not* represent GlassBridge in connection with its securities manipulation, tortious interference with contract, and unlawful conduct that is the subject of Cypress' Amended Complaint.

Indeed, Defendants ignore the narrow scope of Fox's prior representation of GlassBridge, in a transparent attempt to gain a tactical advantage in this litigation.   While they attempt to weave

tall tales to manufacture an appearance of impropriety, their allegations lack substance.  In reality, the undisputed facts demonstrate that Fox's prior representation of GlassBridge is wholly unrelated to the facts at issue here, such that Defendants cannot meet the "substantial relationship" test required to disqualify counsel.  On that basis alone, Defendants' motions should be denied.

Also without merit is Defendants' argument that Fox entered into an agreement with GlassBridge, which barred Fox's future representation of Cypress.  To that end, the documents upon which Defendants rely – e-mails exchanged between De Perio and Fox attorneys – clearly demonstrate the *absence* of an enforceable agreement, as the alleged "consideration" that serves as the basis for Defendants' arguments is not found *anywhere* in those e-mails.  Stated differently, the "agreement" upon which Defendants rely does not exist.

For these reasons, along with those set forth at length below, the Court should reject Defendants' transparent tactics to interfere in Cypress' attorney/client relationship and deny their motions to disqualify Fox as Cypress' counsel.

135038852.2

## STATEMENT OF FACTS[1]

**A.  Fox Previously Negotiated Issues Relating to a Pension Plan on GlassBridge's Behalf**

Beginning in August 2018, Fox commenced representing GlassBridge in matters relating to: (i) negotiations concerning a defined benefits plan; and (ii) litigation relating to severance packages of former employees of GlassBridge's predecessor in interest[2].

With respect to the negotiations concerning a defined benefits plan, Fox negotiated a settlement on behalf of GlassBridge, with Pension Benefit Guaranty Corporation ("PBGC").  As part of the negotiation process, PBGC examined certain assets owned by GlassBridge that could be offered as collateral, to ensure that GlassBridge - which was potentially financially responsible for the pension plan - would be able to satisfy any financial shortcomings that could arise in connection with the administration of the pension plan.  (*See* Declaration of Tom Paradise, Esq. ("Paradise Dec.") at ¶4)

In the course of negotiations with PBGC, GlassBridge authorized Fox to disclose that GlassBridge had a "pending" investment in Sport-BLX.  As confirmed by Defendants, Fox was explicitly authorized to share information concerning GlassBridge's intent to invest in Sport-BLX with PBGC. (*See* ECF No. 28 at ¶10). Indeed, there can be no question that GlassBridge authorized

---

[1] The facts set forth in the supporting certifications of counsel that relate to Fox's prior representation of GlassBridge are limited to the facts reasonably necessary to defend against the allegations asserted in Defendants' motions, as is permitted by the Rules of Professional Conduct.. *See* Rule of Professional Conduct 1.6 (b).

[2] Indisputably, the lawsuits where Fox represented GlassBridge bear *no relationship whatsoever* to the facts at issue in this case or to Sport-BLX, generally.  Instead, those lawsuits – which were filed in 2017 and 2018 – alleged claims against GlassBridge in connection with severance packages paid to former employees of GlassBridge and its predecessor in interest, Imation Corp. (*See* Paradise Dec. at Exs. A and B).

135038852.2

Fox to share with PBGC the underlying financial information that supported GlassBridge's claim, so as to show that the anticipated investment in Sport-BLX would serve as sufficient collateral for the underlying pension plan.  (*See* ECF No. 28 at ¶10).

It is important to note that Fox *did not* provide GlassBridge with advice to influence GlassBridge's decision to invest in Sport-BLX.  (*See* Paradise Dec. at ¶7).  Rather, independent of Fox's involvement in the negotiations with PBGC, GlassBridge conducted its own due diligence in connection with its decision to invest in Sport-BLX[3].  (*Id.*).  Thus, as it pertains to GlassBridge's investment in Sport-BLX, Fox acted solely as a messenger, delivering information from GlassBridge to PBGC concerning GlassBridge's analysis as to the anticipated value of its "planned" investment in Sport-BLX.  (*See* Paradise Dec. at ¶6).

## B.    Fox Withdraws its Prior Representation of Cypress Based Upon a Conflict Between Then-Current Clients

On June 10, 2019, Fox transmitted a demand letter, on behalf of Cypress, to Sport-BLX, concerning: (i) Sport-BLX's "partnership interest" in an investment fund that was intended to generate income; and (ii) Sport-BLX's excessive spending on a lease for an occupancy for fewer than five (5) employees.  (*See* ECF No. 28-2).

On July 10, 2019, one month after Fox sent its demand letter to Sport-BLX, De Perio wrote an e-mail to several Fox attorneys, advising of his receipt of the June 10, 2019 demand letter to Sport-BLX.  (*See* ECF No. 28-1 at p. 15).  In his e-mail, De Perio advised Fox of a connection between GlassBridge and Sport-BLX: that in addition to their affiliation with GlassBridge, Hall and De Perio are also the President and Executive Chairman of Sport-BLX.  (*See* ECF No. 28-1 at

---

[3] If GlassBridge engaged an independent accounting firm to evaluate GlassBridge's anticipated investment in Sport-BLX, Fox is not aware of such an engagement.

p. 15).  In a subsequent e-mail sent an hour later, De Perio wrote, "It's also worth mentioning that GlassBridge is a shareholder of Sport-BLX as well."  (*See* ECF No. 28-1 at p. 13) [4].

On July 11, 2019, without any further communications, negotiations with, or promises from GlassBridge, Fox withdrew from representing Cypress in connection with the claims raised in the June 10, 2019 letter.  (*See* ECF No. 28-1 at p. 12).  Indisputably, Fox's unilateral decision to withdraw as Cypress' counsel in 2019 was not based upon any promise made by GlassBridge or pursuant to a separate contract between the parties.  Instead, Fox unilaterally withdrew its representation when, in July 2019, it was advised of a conflict between two then-current clients.  (*See* Paradise Dec. at ¶11).  Upon Fox's withdrawal as counsel, Cypress was represented by the law firm Wilentz, Goldman & Spitzer [5].  (*Id.* at Ex. C).  Indeed, Defendants were well aware of Wilentz's service as counsel for Cypress, in that Defendants were in receipt of correspondence from Wilentz, written on Cypress' behalf.  (*Id.* at Ex. D).

## C.    Fox Ceases Performing Work for GlassBridge in April 2020 and Formally Terminates the Relationship in November 2021

Fox last performed legal services for GlassBridge in April 2020, sending its final invoice for services in May 2020.  (*See* ECF No. 28-3 at p. 4).  On November 9, 2021 – over one year after Fox had last performed legal services for GlassBridge, Fox formally terminated its relationship

---

[4] The tenor of De Perio's subsequent e-mail is telling.  (*See* ECF No. 28-1 at p. 13).  Indeed, had Fox *actually* represented GlassBridge in connection with its purchase of Sport-BLX stock, or with GlassBridge's due diligence of Sport-BLX, it would not have been necessary for De Perio to state that "it's also worth mentioning" GlassBridge's ownership interest in Sport-BLX.  Instead, had Fox represented GlassBridge in connection with its purchase of Sport-BLX stock, the attorneys copied on De Perio's e-mail would have been well aware of GlassBridge's ownership interests, and De Perio's separate e-mail would not have been required.

[5] Cypress' later election to copy Marc J. Gross, Esq. of Fox, on e-mails to Sport-BLX was apparently an inadvertent error by Cypress.  During that time, the law firm of Wilentz, Goldman & Spitzer represented Cypress, and not Fox.

135038852.2

with GlassBridge.  (*See* Paradise Dec. at Ex. E).  In the letter terminating Fox's representation of GlassBridge, Fox wrote:

> Any GlassBridge Enterprises Inc. file will be retained by the firm and destroyed in accordance with our retention policy unless you give us instructions to send some, or all files to you.

(*Id.*).  GlassBridge has not, in response to Fox's letter, asked that any documents be returned to it, or transferred to alternate counsel.  (*See* Paradise Dec. at ¶16).  Indeed, even in the face of the instant lawsuit, where Fox has represented Cypress for nearly half a year before GlassBridge raised its "conflict" issue, GlassBridge has *still* not alleged that Fox possesses privileged information that should be returned, or identified any confidential information that is purportedly in Fox's possession.

## D.   Cypress Commenced This Lawsuit Against Defendants

On January 11, 2022 – almost two years since Fox last performed legal services for GlassBridge - Cypress commenced this lawsuit.  (*See* ECF No. 28-6).  On April 1, 2022, Cypress filed an Amended Complaint.  (*See* ECF No. 16).

As it pertains to GlassBridge, the Amended Complaint includes the following allegations:

- In or about 2019, Hall and De Perio arranged a sale of their ownership interests in Sport-BLX to GlassBridge.  (*See* ECF No. 16 at ¶53).

- After Hall and De Perio sold their interests in Sport-BLX to GlassBridge, GlassBridge became the majority shareholder of Sport-BLX, as it held a 50.7% interest.  (*See* ECF No. 16 at ¶54)[6].

- As the majority shareholder in Sport-BLX, GlassBridge aided Hall and De Perio in their efforts to avoid their obligation under a separate agreement between Hall, De Perio, and Cypress, "to vote in favor of Cypress as a Board Member." (*See* ECF No. 16 at ¶53 and 54).

---

[6] Information concerning the price that GlassBridge paid Hall and De Perio for their interests in Sport-BLX was obtained from GlassBridge's publicly available 10-K filings, and not from any private or confidential information in Fox's possession.

135038852.2

- On or about December 12, 2019, Hall and De Perio sold their interests in Sport-BLX to GlassBridge.  (*See* ECF No. 16 at ¶57).

- After GlassBridge obtained control of the majority of interests in Sport-BLX, "they caused GlassBridge to formulate other entities, affiliated with GlassBridge and bearing, in some part, the Sport-BLX name, and utilizing the Sport-BLX goodwill and intellectual property to pursue the original investment opportunities pitched to Cypress." (*See* ECF No. 16 at ¶58 and 59).

- On December 30, 2021 – over a month after Fox's relationship with GlassBridge terminated – "GlassBridge divested itself of all of its Sport-BLX stock through a sale of that stock back to the Founders" … "at a price significantly lower than the price per share upon which the GlassBridge transfer was based, resulting in a substantial windfall to [Hall and De Perio] through their manipulation of the sale price." (*See* ECF No. 16 at ¶60 and 61).

Indisputably, *nothing* in the Amended Complaint addresses settlement negotiations with the PBGC or whether GlassBridge's investment in Sport-BLX served as sufficient collateral in connection with its agreement with the PBGC.  Instead, the Amended Complaint makes clear that, with respect to GlassBridge's investment in Sport-BLX, Cypress' allegations relate *only* to GlassBridge's conduct *after* it purchased a majority interest in Sport-BLX.

Certainly, Fox's prior representation of GlassBridge bears *no relationship whatsoever* to the facts at issue in this litigation.  In this light, Defendants' argument that the testimony of Fox attorneys is "necessary" in this litigation, is nothing more than a fabricated attempt to create a conflict where none exists.  Clearly, GlassBridge believes that it will – nearly half a year later - obtain a perceived advantage by forbidding Cypress' from being represented by the counsel of its choosing.  Thus, it seeks to unfairly disqualify Fox and prejudice Cypress in the process. Defendants' obvious litigation gamesmanship should be rejected.  Accordingly, the Court should deny Defendants' motions.

7

**LEGAL ARGUMENT**

**POINT I**

**DEFENDANTS' MOTIONS SHOULD BE DENIED BECAUSE FOX'S PRIOR REPRESENTATION OF GLASSBRIDGE DOES NOT CONFLICT WITH ITS CURRENT REPRESENTATION OF CYPRESS**

A motion to disqualify counsel is committed to the discretion of the District Court. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir. 1980). When deciding a motion to disqualify counsel, a court must balance "the need to maintain the highest standards of the profession" against "a client's right freely to choose his counsel." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citations omitted).

In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny. *See Correspondent Servs. Corp. v. J.V.W. Inv., Ltd.*, 2000 WL 1174980 at *14 (S.D.N.Y. Aug. 18, 2000) (*citing Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)); *Decora Inc. v. DW Wallcovering, Inc.*, 899 F. Supp. 132, 135 n. 2 (S.D.N.Y.1995). In this light, Courts are hesitant to grant motions to disqualify because such motions "impinge[ ] on a party's right to employ the counsel of its choice." *Unique Sports Generation, Inc. v. LGH–III, LLC*, 2005 WL 2414452 at *13 (S.D.N.Y. Sept. 30, 2005) (citation and internal quotations omitted); *see also D.R.T., Inc. v. Universal City Studios, Inc.*, 2003 WL 1948798 at *2–*3 (S.D.N.Y. Apr. 24, 2003) ("[M]otions to disqualify counsel are generally disfavored. Courts are reluctant to grant such motions because they are often tactically motivated ... and have an immediate adverse effect on the client by separating him from counsel of his choice[.]" (internal quotation marks and citations omitted)); *First Trust Nat'l Assoc. v. Moses & Singer*, 2000 WL 1093054 at *6 (S.D.N.Y. Aug. 4, 2000) ("Motions to disqualify opposing counsel are viewed with disfavor because they impinge on a party's right to employ the counsel of its

135038852.2

choice."); *A.I. Credit Corp. v. Providence Washington Ins. Co.*, 1997 WL 231127 at *1 (S.D.N.Y. May 7, 1997) ("Motions to disqualify opposing counsel are viewed with disfavor [principally because] disqualification of counsel impinges on a party's right to employ counsel of choice." (citations omitted)).

Finally, courts are also reluctant to grant motions to disqualify because they inevitably result in delay and added expense. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir.1983) (disqualification motions "inevitably cause delay"); D.R.T., Inc. v. Universal City Studios, Inc., supra, 2003 WL 1948798 at *2 (motions to disqualify "cause undue delay [and] add expense"). For all these reasons, "the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel ...." *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y.1992) (*citing Gov't of India v. Cook Indus., Inc*., 569 F.2d 737, 739 (2d Cir. 1978)).

Notwithstanding the high burden imposed upon a party seeking disqualification of adverse counsel, disqualification based upon counsel' prior representation of a now-adverse party is warranted *only* where three conditions are met:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Systems Corp.*, 715 F. 2d 788, 791 (2d Cir. 1983).

While GlassBridge was, admittedly, a former client of Fox (satisfying the first element), Defendants *cannot* establish the second two elements required to disqualify Fox and deprive Cypress of the counsel of its choosing.  Accordingly, Defendants' motion should be denied.

**A.      Defendants' Motion to Disqualify Should be Denied Because They Cannot Establish a "Substantial Relationship" Between this Litigation and Fox's Prior Representation of GlassBridge**

Under New York law, the "substantial relationship" test is met only where "the relationship between issues in the prior and present cases is 'patently' clear[,] ... 'identical' or 'essentially the same.'"  *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 - 740 (2d Cir. 1978).  Where an attorney's representation of a client is general in nature, he may be disqualified from representing an adverse party in later litigation, but only if the later litigation puts at issue the client's entire background. *USFL v. National Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985); *see also Cleverly Limited v. Anthony Sicari Apparel Group Industries, Inc.*, 2003 WL 161317 at \*5 (S.D.N.Y. Jan. 23, 2003). If, on the other hand, the client's background is not at issue, an attorney's knowledge of the client's general business and financial background is not a proper basis for disqualification. *USFL*, 605 F. Supp. at 1460.

Fox's representation of GlassBridge in connection with pension plan negotiations fails to meet the "substantial relationship" test to deprive Cypress of the counsel of its choice in this lawsuit.  In this action, Cypress alleges that GlassBridge – an entity related to defendants Hall and De Perio – aided the co-defendants in their efforts to "avoid their obligation under the Agreement to vote in favor of Cypress as a Board Member." (*See* ECF No. 16 at ¶53 and 54).  Cypress further demonstrates that, after GlassBridge purchased a majority interest in Sport-BLX, "GlassBridge utilized its now controlling interest in Sport-BLX to cause Sport-BLX to forgo its original stated mission and purpose."  (*Id.* at ¶59).  Moreover, the First Amended Complaint states that, on December 30, 2021 – after GlassBridge's relationship with Fox terminated – "GlassBridge divested itself of all its Sport-BLX stock" ... "at a price significantly lower than the price per share upon which the GlassBridge transfer was based, resulting in a substantial windfall to the Founders through their manipulation of the sale price."  (*Id.* at ¶60 and 61).

10

135038852.2

Comparatively, the facts pled in the Amended Complaint are wholly unrelated to Fox's prior representation of GlassBridge.  In its prior representation of GlassBridge, Fox negotiated a settlement with PBGC, relating to the pension plan of GlassBridge's predecessor in interest.  As part of the negotiation process, PBGC examined certain collateral that could be offered by GlassBridge, a party that was potentially financially responsible for the pension plan.  As part of this settlement process, GlassBridge authorized Fox to disclose that GlassBridge had a "pending" investment in Sport-BLX.   Fox neither provided GlassBridge with advice concerning GlassBridge's decision to invest in Sport-BLX, nor did Fox conduct due diligence – or represent GlassBridge in any fashion - in connection with GlassBridge's pending investment in Sport-BLX. Instead, as it pertains to Sport-BLX, Fox acted as a messenger, delivering information from GlassBridge to PBGC.

Notwithstanding Defendants' bluster, the undisputed truth is clear: Fox did not provide GlassBridge with advice concerning its control or investment in of Sport-BLX.  Moreover, it is undisputed that Fox was *wholly disconnected* from GlassBridge's eventual sale of Sport-BLX stock in December 2021, as Fox no longer represented GlassBridge at the time that the referenced sale took place.  Thus, with respect to the facts at issue in this litigation, it is clear that Fox's prior representation has *no relationship* to the facts at issue here.

Defendants attempt to embellish Fox's prior representation of GlassBridge falls flat.  While Fox's prior representation of GlassBridge made counsel aware that GlassBridge was *contemplating* a purchase of Sport-BLX – a transaction that was later consummated – it is clear that no "substantial relationship" links Fox's negotiations with PBGC to GlassBridge's unlawful conduct, securities manipulation, and tortious interference in this case.  Accordingly, Defendants' motion to disqualify Fox and deny Cypress of the counsel of its choice should be denied.

135038852.2

**B.    Defendants' Motion to Disqualify Should be Denied Because They Cannot Demonstrate that Fox Had Access to Any Relevant Privileged Information**

In addition to Defendants' failure to demonstrate that Fox's prior representation of GlassBridge has a "substantial relationship" to the facts at issue here, Defendants also cannot demonstrate that Fox had access to privileged information that is relevant to the facts at issue in this lawsuit. Thus, their quest to disqualify Fox and deny Cypress of the counsel of its choice in this action should be denied.

Indeed, Fox's prior representation of GlassBridge was limited to negotiations with PBGC concerning the pension plan of GlassBridge's predecessor in interest. With respect to GlassBridge's investment in Sport-BLX, the *only* information that GlassBridge provided to Fox was facts and data - *generated by GlassBridge* – intended to show PBGC the perceived value of GlassBridge's planned investment in Sport-BLX. Stated differently, with respect to Sport-BLX, GlassBridge provided information to Fox, with the express intent that Fox would share such information with third parties[7]. In fact, in his declaration, De Perio admits that the information that GlassBridge disclosed to Fox was later disclosed to GlassBridge's insurance company. (*See* ECF No. 28 at ¶10). Thus, by its very nature, the information that GlassBridge provided Fox concerning Sport-BLX was neither privileged, nor confidential.

With respect to GlassBridge's conduct in connection with its majority control of Sport-BLX, Fox did not receive *any* information from GlassBridge, as Fox did not represent GlassBridge on any matters relating to GlassBridge's ownership in Sport-BLX. Moreover, Fox is not in

---

[7] Indisputably, such information concerning GlassBridge's analysis of Sport-BLX will be the subject of discovery in this litigation. Thus, not only would the information previously provided *not* be privileged, but GlassBridge has an *obligation* in this litigation to provide such information to Cypress.

possession of *any* documents relating to GlassBridge's securities manipulation, when GlassBridge sold Sport-BLX stock in December 2021, as Fox did not represent GlassBridge in *any* capacity at that time.

While Fox's representation of GlassBridge in connection with its negotiations with PBGC involved relaying detailed information concerning GlassBridge's general business practices and assets, it is clear that the narrow scope of information provided concerning Sport-BLX was not privileged, and did not require the provision of protected legal advice.  As Defendants cannot establish that Fox is in possession of privileged information concerning GlassBridge's ultimate purchase of Sport-BLX stock, Defendants' motion, which seeks to deprive Cypress of the counsel of its choice, should be denied.

**C.      Defendants' Motion Should be Denied Because the Alleged "Appearance of Impropriety" is a Fabrication of Defendants' Own Making**

Having failed to establish that Fox should be disqualified based upon an *actual* conflict between successive clients, Defendants argue that Fox should be disqualified based upon "the appearance of impropriety."  Certainly, Defendants' argument is without merit.

New York law is clear that the "appearance of impropriety" warrants disqualification in only "the rarest cases."  *See Board of Ed. Of City of New York v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir. 1979); *Gleason v. Zocco*, 941 F. Supp. 32, 35 (S.D.N.Y. 1996).  While the appearance of impropriety may warrant the disqualification of counsel in large lawsuits that attract significant public interests, that is certainly not the case in private disputes, where "it is generally possible to explain ethical issues and questions of conflicts of interest to the litigants."  *See Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*, 53 F. Supp. 2d 338, 347 (E.D.N.Y. 1999).

Certainly, no "appearance of impropriety" exists in this private dispute.  While Fox's prior representation of GlassBridge is wholly unrelated to the facts in the Amended Complaint,

135038852.2

Defendants nonetheless argue that Fox created an appearance of impropriety by "switching sides" in connection with Cypress' claims.  However, Defendants fail to identify – and cannot identify - how Fox "switched sides."  Certainly, Fox's prior representation of GlassBridge – concerning negotiations with PBGC in connection with a pension plan - is *wholly unrelated* to Cypress' instant claim of securities manipulation, tortious interference with contract, and unjust enrichment concerning Sport-BLX.  Indeed, while Fox previously transmitted information concerning GlassBridge's assessment of its investment in Sport-BLX to PBGC, Fox's representation did not require that it "take a side" concerning GlassBridge's later, unlawful conduct.  In fact, when GlassBridge became the majority shareholder in Sport-BLX, Fox did not "take a side" with respect to GlassBridge's securities manipulation.  Indeed, at this point, Fox's representation of GlassBridge had already been terminated.  Thus, unlike the case law upon which Defendants rely – where counsel represented both plaintiff and defendant in lawsuits concerning the *exact same allegations* – here, Fox's prior, unrelated representation of GlassBridge fails to establish the "appearance of impropriety" or the "switching of sides" required to disqualify counsel.

New York law does not support the contention that mere successive representation of parties *per se* creates the "appearance of impropriety."  As such, Defendants' argument – that successive representation, without any additional facts, warrants disqualification of counsel – is wholly without merit.  Accordingly, the Court should deny Defendants' motion, and allow Cypress to proceed in this litigation with the counsel of its choice.

14

**POINT II**

**DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE FOX DID NOT ENTER INTO A CONTRACT CONCERNING ITS FUTURE REPRESENTATIONS OF CYPRESS**

Faced with the reality that established law does *not* support the disqualification of Fox, Defendants resort to the absurd, arguing that a purported contract between Fox and GlassBridge prevents Fox's current representation of Cypress in this litigation.   The flaw in Defendants' argument, however, is that no such agreement exists.

New York law is clear, that an enforceable agreement is established only where a party establishes "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."  *See Kowalchuk v. Stroup*, 61 A.D. 3d 118, 121 (1st Dep't 2009) (*citing* 22 N.Y. Jur. 2d, Contracts §9).  With respect to agreements between counsel and a client, an exchange of e-mails may constitute an enforceable agreement if the writings include all of the agreement's essential terms.  *See e.g. Mark Bruce Int'l Inc. v. Blank Rome LLP*, 60 A.D.3d 550, 551 (1st Dep't 2009) (holding that an exchange of e-mails which did not identify payment terms for counsel's services was "too indefinite to be enforceable).

Undeniably, the e-mail correspondence upon which Defendants rely fails to establish the existence of an agreement between Fox and GlassBridge, relating to Fox's future representations of Cypress.  A basic review of the e-mail chain upon which Defendants rely (ECF No. 28-1) makes clear that no *quid pro quo* was established to support Defendants' argument.  Instead, the facts unequivocally demonstrate that:

- On June 10, 2019, Fox transmitted a demand letter, on behalf of Cypress, to Sport-BLX.  (*See* ECF No. 28-2)

- On July 10, 2019, De Perio, on behalf of GlassBridge, advised Fox that defendants Hall and De Perio, in addition to their affiliation with GlassBridge, are also the President and Executive Chairman of Sport-BLX.  (*See* ECF No. 28-1 at p. 15).

135038852.2

- On July 10, 2019, DePerio wrote to Fox stating that "It's also worth mentioning that GlassBridge is a shareholder of Sport-BLX as well." (*See* ECF No. 28-1 at p. 13).

- On July 11, 2019, without any further communications or promises from GlassBridge – and based upon De Perio's representation concerning the existence of a conflict between two *current* clients – Fox withdrew from representing Cypress in connection with claims concerning Sport-BLX. (*See* ECF No. 28-1 at p. 12).

Contrary to Defendants' arguments, *nothing* in the e-mail exchange between Fox and De Perio established: (i) an offer to enter into a contract; (ii) consideration; (iii) mutual assent to specific contractual terms; or (iv) an intent to be bound by the terms of a specific agreement. Instead, Fox unilaterally withdrew from representing Cypress, due to conflicts identified between *then-current clients*.

Defendants' reliance upon the Eastern District of New York's holding in *Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*, 53 F. Supp. 2d 338 (E.D.N.Y. 1999) is misplaced. In *Blue Cross*, the law firm of Winston & Strawn entered into an explicit, written agreement with the plaintiff concerning Winston & Strawn's future representation of the defendant, Philip Morris, Inc. Specifically, Winston & Strawn agreed that it would *not* appear on behalf of Philip Morris, Inc. in a specific New York lawsuit. In exchange, the plaintiffs agreed that they "will not seek to disqualify Winston & Strawn, or any of its attorneys, from representing Philip Morris Incorporated or participating in the Chicago Action or the Seattle Action based on the fact that Winston & Strawn has performed or is performing work for [the plaintiffs] on various specific matters[.]" *Id.* at 340 – 341. After Winston & Strawn filed a notice of appearance in the New York lawsuit, the plaintiffs moved to disqualify the firm, based upon the written agreement. The court granted the plaintiffs' motion, holding that:

135038852.2

> The Agreement is valid.  It was freely entered into and is clear and unambiguous. Plaintiffs' promise to forego any attempt to disqualify the firm from appearing in the Chicago and Seattle actions was the inducement for the firm's return promise (approved by its client, Philip Morris) not to appear in the New York action. Promising to waive a claim or forego the enforcement of a legal right is valid consideration."

*See Blue Cross and Blue Shield of New Jersey* at 343.

Certainly, the present circumstances are entirely distinguishable from those examined in *Blue Cross.*  In *Blue Cross*, the parties entered into an explicit written agreement, with defined consideration, governing Winston & Strawn's ability to represent Philip Morris, Inc. in certain litigation.  Conversely, no such consideration is present here.  Instead, Fox unilaterally withdrew from representing Cypress due to a then-present conflict between current clients.  (*See* ECF No. 28-1 at p. 12).  Nothing in the parties' e-mails supports the contention that GlassBridge offered any consideration – even the illusionary "promise to make future payments," argued in Defendants' moving brief, is nowhere to be found – in exchange for Fox withdrawing as Cypress' counsel.  Thus, Defendants' argument, that the existence of an enforceable agreement bars Fox's representation of Cypress in this action, is wholly without merit.

As no agreement bars Fox's representation of Cypress in this action, the Court should deny Defendants' motion and Cypress to proceed with Fox as its counsel.

## CONCLUSION

For the reasons set forth herein, the Court should deny Defendants' motions to disqualify Fox Rothschild as Cypress' counsel in this action.

FOX ROTHSCHILD LLP

*Attorneys for plaintiff Cypress Holdings III, L.P.*

By: _____
     MARC J. GROSS

Dated:   June 21, 2022

18