**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

CYPRESS HOLDINGS, III, L.P., *individually and derivatively on behalf of SPORT-BLX, INC*,

*Plaintiff*,

v.

GEORGE HALL, JOSEPH DE PERIO, SPORT-BLX, INC. *and* GLASSBRIDGE ENTERPRISES, INC.

*Defendants*.

Case No. 22-CV-01243 (LGS)

**DEFENDANTS GEORGE HALL, JOSEPH DE PERIO, AND SPORT-BLX, INC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISQUALIFY**

J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
remy@femmelaw.com

Wylie M. Stecklow, Esq.
**WYLIE STECKLOW P.L.L.C.**
Carnegie Hall Tower
152 West 57th St, 8th Floor
New York, New York 10019

*Attorneys for Defendants George Hall, Joseph De Perio, and Sport-BLX, Inc.*

June 28, 2022

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................................ii

TABLE OF AUTHORITIES ....................................................................................................iii

PRELIMINARY STATEMENT................................................................................................1

FACTUAL CORRECTIONS .....................................................................................................1

ARGUMENT................................................................................................................................2

    I.    Plaintiff Concedes Marc Gross and Pamela Thein are Necessary Witnesses that Should Be Disqualified Under the Attorney-Witness Rule. ......................................................................2

    II.    Plaintiff Fails to Seriously Address the Connection Between Fox's Broken Promise and the Appearance of Impropriety. ...............................................................................................3

    III.    Plaintiff Cannot Assert Prejudice While Denying this is the Same Suit Gross Threatened in 2019 .........................................................................................................................................5

CONCLUSION............................................................................................................................6

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blue Cross & Blue Shield of New Jersey, Inc. v Philip Morris, Inc.*,
  53 F Supp 2d 338 (EDNY 1999) ...................................................................................... 4

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
  47 F.3d 39 (2d Cir. 1995) .................................................................................................. 4

*Doe v. Intercontinental Hotels Grp., PLC*,
  193 A.D.3d 410 (1st Dep't 2021) ...................................................................................... 1

*Fields D'Arpino v Rest. Assoc., Inc.*,
  39 F Supp 2d 412 (SDNY 1999) ....................................................................................... 3

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  218 F. Supp. 2d 369 (S.D.N.Y.2002) ................................................................................ 3

*Gallagher v. N.Y. State Bd. of Elections*,
  477 F. Supp. 3d 19 (S.D.N.Y. 2020) ............................................................................. 2, 5

*Heelan v Lockwood*,
  143 AD2d 881 (2d Dept 1988) ...................................................................................... 4, 5

*Rubin v. Rubin*,
  72 A.D.2d 536 (1st Dep't 1979) ........................................................................................ 1

*In re UBS AG Sec. Litig.*,
  No. 07 Civ. 11225, 2012 U.S. Dist. LEXIS 141449, 2012 WL 4471265 (S.D.N.Y. Sept.28, 2012) .................................................................................................................... 3

## PRELIMINARY STATEMENT

Plaintiffs' opposition (Dkt. No. 36, "Opp.") is most notable for what it is missing. Despite having access to many people with actual knowledge of the events at issue — Cypress's principal, Michael Salerno; Fox Rothschild partner Pamela Thein; Fox Rothschild partner and primary author of the opposition, Marc Gross — Plaintiff opted instead to submit a know-nothing declaration from Fox's general counsel. Beyond getting basic facts wrong,[1] that approach leaves Plaintiff without a meaningful factual response to (arguably) the most critical question in this motion: Why did Cypress apparently keep getting legal advice from Gross even after Fox's general counsel made clear that the firm "withdrew from representing Cypress" (Dkt. No. 37 ¶ 37)? On that, there are two people — Salerno and Gross — who *could* offer a definitive explanation. Plaintiff's failure to submit a declaration from either, or both, of these fact witnesses — who are both certainly under their control — is not only telling, but leaves a deafening silence.[2]

Beyond that, Plaintiff's arguments — to the extent they are not addressed in GlassBridge's Reply (or for that matter, in the opening papers) — fail for many reasons, discussed below.

## FACTUAL CORRECTIONS

Plaintiff's choice to only submit a know-nothing declaration from Fox's general counsel means, unfortunately, that there are basic factual mistakes that need correcting. To begin with, when GlassBridge was negotiating with the PBGC, it had long since invested a million dollars in Sport-BLX. *Compare* Dkt. No. 37 ¶ 6; *with* Dkt. No. 28 ¶¶ 3-11 *and* De Perio Reply Ex. 1. Beyond that, Plaintiff repeats factual claims it has already withdrawn when shown otherwise. For example, Plaintiff repeats its claim that Sport-BLX had "fewer than five (5) employees." Dkt. No. 36 at 4.

---

[1] These often don't even make sense: for example, Fox General Counsel Paradise says all that was discussed with the PBGC was a "planned" investment in Sport-BLX. Dkt. No. 37 ¶ 6. Not so — and, in fact, a *planned* investment is worthless. And obviously, the PBGC would have taken the million dollars as collateral directly if GlassBridge had not yet invested. Attorneys Gross and Thein (to Salerno and GlassBridge respectively), having both provided legal advice on facts around the investment, likely both know this fact very well — and submitting a declaration from someone without personal knowledge is telling.

[2] Such silence is routinely found to concede the underlying facts — especially since "an affidavit by an attorney without personal knowledge of the facts has no probative value and should be disregarded." *Rubin v. Rubin*, 72 A.D.2d 536, 537 (1st Dep't 1979); *see also, Doe v. Intercontinental Hotels Grp., PLC*, 193 A.D.3d 410, 410 (1st Dep't 2021).

1

But Plaintiff withdrew that assertion after Defendants sent a letter attaching payroll records — which, of course, Plaintiff had access to the entire time. Green Dec. ¶¶ 3-7; Ex. 1. Further, Plaintiff relegates to a footnote its assertion that "Cypress' later election to copy Marc J. Gross" in *many* emails over months after Fox's supposed withdrawal was "apparently an inadvertent error by Cypress." Dkt. No. 36 at 5 n. 5. But that (non-)explanation does not account for how it kept happening or why the "cc'ing … coincided" with Salerno "[saying] he required ongoing consultation with his counsel before addressing a number of matters." *See* Dkt. No. 31-1 at 5. Without so much as a bare denial from either Salerno or Gross, that circumstantial evidence is sufficient for the Court to conclude the fact that Salerno kept seeking and receiving advice from Fox during that period.

These basic factual errors and omissions, among others, mean the Court can safely disregard the factual disputes Plaintiff tries (and fails) to raise.

## ARGUMENT

### I. Plaintiff Concedes Marc Gross and Pamela Thein are Necessary Witnesses that Should Be Disqualified Under the Attorney-Witness Rule.

As briefed, there is a fairly simple path through this motion. Defendants argued disqualification is required here because Gross and Thein are likely witnesses under the advocate-witness rule. *See* Dkt. No. 30 at 8-10 (as paginated). Plaintiff's response was silence. Indeed, no variation on the phrase "attorney-witness," "advocate-witness," the word "witness," or anything similar even appears in their memo. *See generally*, Dkt. No. 36. This was not for want of pages — Plaintiff had a full three pages left over. *See* Dkt. No. 25. Thus, the well-settled rule that Plaintiff's "failure to respond to [Defendants'] substantial argument can be taken as a concession" applies. *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 48 n.4 (S.D.N.Y. 2020). That is, since Plaintiff does "not cite — much less distinguish —" any of the cases in Point III of the Sport-BLX Defendants' motion, they concede those cases apply and govern. *Id.; see also, In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 U.S. Dist. LEXIS 141449, 2012 WL 4471265, at *11 (S.D.N.Y. Sept.28, 2012) (a party "concedes through silence" any arguments it fails to address); *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392-93 & n.116

2

(S.D.N.Y.2002) (similar).

This is no mere technicality. Take Gross, for example. All appearances suggest Gross was the one giving Salerno the legal advice to refuse to disclose Cypress's investors (and thus thwart FINRA approval and the initial business plan): Salerno emailed De Perio and Hall, cc'ing Gross, suggesting he'd receiving some legal guidance that Sport-BLX "d[id] not have a right to this information at this time." Dkt. No. 31-1 at 7-8; *see also,* Dkt. No. 30 at 10. That email lead to an August 16 email to Fox — more than a month after the firm supposedly withdrew — stating Salerno's "refusal to cooperate in ordinary course is damaging to advancing our process with FINRA," stating, "it appears he continues to get advice from Fox Rothchild to our detriment." Dkt. No. 31-1 at 7-8. Or put more simply, Salerno told the GlassBridge team he was talking to a lawyer, then immediately emailed them cc'ing *Fox* — not some other firm.

With Plaintiffs concession on the advocate-witness rule, nothing is left to decide: with its silence, Plaintiff admits Fox should be disqualified.

## II. Plaintiff Fails to Seriously Address the Connection Between Fox's Broken Promise and the Appearance of Impropriety.

In minimizing the importance of Fox's promise to stop representing Cypress, Fox makes a technical legal argument: because "the alleged 'consideration' that serves as the basis for Defendants' arguments is not found *anywhere* in those e-mails," they say, no contract was formed. Dkt. No. 36 at 2. This argument runs into three problems — one factual, one legal, and one where Plaintiff misses the forest for the tress. Putting those together, and given the technical nature of the argument, "[Plaintiff's] argument, in essence, is that [Fox] never promised [Defendants] … that it would not represent the [plaintiff] if litigation ensued" in a way that could bind that firm. *Fields D'Arpino v Rest. Assoc., Inc.*, 39 F Supp 2d 412, 416 (SDNY 1999). "Under the circumstances … that distinction rings hollow." *Id.*

*First*, there is someone who knows exactly what Thein understood and meant when she wrote the email and agreed Fox would withdraw: Pamela Thein. Defendants themselves are clear

3

they understood there to be consideration promised.  *See* Dkt. No. 31 ¶ 46 ("Ms. Thein's representations at the end of the that email chain induced us to continue to use Fox Rothschild's services…"); Dkt. No. ¶ 40 ("so that GlassBridge continued to use Fox Rothschild's services, the firm agreed specifically that it would stop representing Cypress and Salerno…").  So, if Plaintiff wants to challenge the contract, the question is whether all parties understood the exchange to include — that is, whether the parties' minds met on the various elements of a contract.  Dkt. No. 36 at 16.  Defendants' testimony, under oath, sets out that they understood each element to be present, including consideration.  Plaintiff offers no contrary understanding from Thein or anyone else with personal knowledge.  So there was a binding contract, as a matter of undisputed facts.

  *Second*, a binding contract as such is unnecessary.  Rather, even if the Court looks past Ms. Thein's failure to deny Defendants' uniform understanding of consideration, the fact pattern here easily satisfies the elements of promissory estoppel (as a quasi-contract substitute):  "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of the reliance."  *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (cleaned up).  Thus, arising as it does from the Court's equity jurisdiction, that promissory estoppel theory of Fox's undisputedly broken promise works just as well as the written contracts in *Blue Cross & Blue Shield of New Jersey, Inc. v Philip Morris, Inc.*, 53 F Supp 2d 338, 346 (EDNY 1999) and *Heelan v Lockwood*, 143 AD2d 881, 884 (2d Dept 1988).

  *Finally*, Plaintiff fails entirely to make the connection between Fox's broken promise and the appearance of impropriety — despite that being the heart of Defendants' argument on that point.  As the Second Department has explained, where a lawyer has "represented that his involvement would be limited" in some way, a "subsequent acceptance of employment" that violates that promise creates "an appearance of impropriety which necessitates [] withdrawal from the case."

4

*Heelan v Lockwood*, 143 AD2d 881, 884 (2d Dept 1988).³  This makes policy sense:  Clients should be able to rely on the promises of their attorneys, period.  Consider the implications of Plaintiff's argument otherwise.  Plaintiff seems to be suggesting that, rather than relying on Thein's clear promise (with no temporal limitation) that Fox was "NOT representing Michael Salerno on this matter" (Dkt. No. 31-1), they should have sought advice from *another* lawyer about whether that promise was binding.  And, for that matter, Plaintiff seems to say Fox had no duty to make sure Defendants — then Fox clients — understood the firm's promise was not binding.  Rather, Fox — as attorneys knowing the elements of a contract — may make an unenforceable promise and sit silent until it turns coat and sues its former client.  If that is not an appearance of impropriety, it is hard to say what is.

### III. Plaintiff Cannot Assert Prejudice While Denying this is the Same One Gross Threatened in 2019.

As Plaintiff rightly states, disqualification motions are generally disfavored because they "impinge on a party's right to employ the counsel of its choice."  Dkt. No. 36 at 8 (alterations adopted).  But in avoiding dealing with the fact that because Gross threatened exactly this suit in 2019 (*see* Dkt. No. 31-2) this is a "hot potato" case (as GlassBridge explains), Plaintiff misses that it is asserting two contradictory views of the world.  Put simply, one of two things *must* be true:⁴

1) This is the same matter as when Fox threatened this suit — making this a current client conflict with a per se disqualification rule; or
2) This is a different matter, and Plaintiff's first choice of counsel for this matter was Wilentz (*see* Paradise Ex. D) — meaning Plaintiff suffers little prejudice from disqualification of Fox and Marc Gross.

Plaintiff cannot have it both ways:  Either what happened in 2019 is unrelated to this suit, or it is the very same case.  And in either event, disqualification still makes sense.

---

³ Plaintiff fails to cite or distinguish *Heelan*, conceding this point.  *See Gallagher*, 477 F. Supp. 3d at 48 n.4.
⁴ For their part, Defendants accept the obvious:  the suit that Gross filed is the same one he threatened.

5

## **CONCLUSION**

For the reasons above, and explained in the moving papers, Defendants ask the Court to grant their motion and co-Defendant GlassBridge's motion, and disqualify Fox Rothschild from representing Plaintiff — and, if appropriate, grant further relief.

Respectfully submitted,

/s/
_____
J. Remy Green
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

Wylie M. Stecklow, Esq.
**WYLIE STECKLOW P.L.L.C.**
Carnegie Hall Tower
152 West 57th St, 8th Floor
New York, New York 10019