```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
CYPRESS HOLDINGS, III, LP,                                    :
                              Plaintiff,                      :
                                                              :       22 Civ. 1243 (LGS)
               -against-                                      :
                                                              :       OPINION AND ORDER
SPORT-BLX, INC., ET AL.,                                      :
                              Defendants.                     :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Cypress Holdings, III, LP ("Cypress") brings this action against Defendants Sport-BLX, Inc. ("Sport-BLX"), GlassBridge Enterprises, Inc. ("GlassBridge"), George Hall, and Joseph DePerio alleging securities fraud, breach of the implied covenant of good faith and fair dealing, fraud in the inducement, negligent misrepresentation, tortious interference with contract, unjust enrichment, and breach of fiduciary duty. The latter two claims are asserted both directly and derivatively on behalf of Sport-BLX. Defendants move to dismiss to disqualify Fox Rothschild LLP as counsel for Plaintiff. For the reasons stated below, the motion is granted.

I. **BACKGROUND**

The following facts are taken from the allegations of the Amended Complaint that are relevant to the disqualification motion and from affidavits and exhibits submitted with the parties' briefing. The facts are either undisputed or presented in the light most favorable to Cypress as the non-moving party and are assumed to be true only for purposes of this motion.

Sport-BLX is a company that was formed by Hall and DePerio originally for the purpose of creating a "new economy" in sports by "tokenizing" sports assets and creating a blockchain platform to improve the dynamics of investing in those assets. Plaintiff Cypress is an investment company. Non-party Michael Salerno is the managing partner of Cypress. On February 28,

2019, Cypress purchased almost 8,000 shares of Sport-BLX common stock. GlassBridge is an asset management company. Hall is or was the beneficial holder of approximately 31.1% of the outstanding common stock of GlassBridge. DePerio is or was the beneficial holder of approximately 2.47% of the outstanding common stock of GlassBridge and a member of the GlassBridge Board of Directors. On December 12, 2019, GlassBridge acquired 37,924 shares of Sport-BLX common stock from Hall and 17,076 shares from DePerio, bringing the total stake of GlassBridge in Sport-BLX to a controlling 50.7%.

Cypress alleges that Hall and DePerio used the sale to GlassBridge both to evade their promise to vote their shares in favor of electing a Cypress representative as a Sport-BLX director, and to reap windfall profits by manipulating the stock price. Cypress alleges that Sport-BLX, through Hall and DePerio, sought to exclude Cypress from the Sport-BLX board because Cypress and Salerno had raised certain objections. In particular, Cypress alleges that Hall and DePerio had represented to Cypress that its entire "founder's round" of investment would be used on technology development and associated legal and marketing costs, but instead overpaid a company owned by Hall and DePerio for office space. Cypress also alleges that Hall told Salerno that Sport-BLX would be affiliated with a sports asset investment fund that would provide revenue to Sport-BLX, but that after Cypress invested it was told that there would be no such affiliation. Cypress alleges that Sport-BLX abandoned its original business plan, which is now instead being pursued by subsidiaries of GlassBridge using Sport-BLX assets.

Cypress is represented in this case by the law firm Fox Rothschild LLP ("Fox"), including by Marc J. Gross. Beginning in August 2018, Fox commenced representing GlassBridge in negotiations with the Pension Benefit Guaranty Corporation ("PBGC") concerning the GlassBridge defined benefits plan. As part of the negotiation process, the PBGC

examined certain GlassBridge assets that could be offered as collateral to ensure that GlassBridge could meet its financial obligations to the pension plan.  Fox provided information to the PBGC on behalf of GlassBridge concerning what Fox characterizes as "GlassBridge's analysis as to the anticipated valued of its [then-]planned investment in Sport-BLX."

On June 10, 2019, Gross, as counsel for Cypress and Salerno, sent a demand letter to Hall as Executive Chairman of Sport-BLX.  The letter asserted potential claims based on Sport-BLX's alleged misrepresentations about its affiliation with the sports assets management fund and its excessive rent arrangement, both discussed above.  On July 10, 2019, DePerio, acting as Chairman of GlassBridge, emailed GlassBridge's lawyers from Fox, advising them that he and Hall controlled Sport-BLX and that he considered the threatened claims by Fox on behalf of Cypress against Sport-BLX to be "distressing."  DePerio noted that the claims concerned matters to which Fox apparently had been privy as they were "diligenced and discussed in advance of the investment and recorded in our data room."  DePerio sent a follow-up email the same day advising Fox that GlassBridge "is a shareholder of Sport-BLX as well."  The next day, Pamela Thein of Fox responded, stating that Fox "is withdrawing" from representing Cypress against Sport-BLX.  In August and September 2019, DePerio and Thein exchanged numerous emails about the fact that Salerno was continuing to send emails antagonistic to Sport-BLX on which Marc Gross of Fox was copied.  On September 3, 2019, Thein confirmed that Gross had withdrawn from representing Cypress and had referred Salerno to other counsel.

Fox continued to represent GlassBridge, providing services in late September 2019, January 2020 and May 2020.  Fox sent its last bill to GlassBridge in May 2020 and sent a formal resignation letter to GlassBridge on November 9, 2021.  Fox, and specifically Gross, initiated this lawsuit on behalf of Cypress and against GlassBridge and others on January 11, 2022.

II.     STANDARD

Courts may disqualify attorneys to "preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (internal quotation marks omitted); *accord Gogo Apparel, Inc. v. True Destiny, LLC*, No. 19 Civ. 5693, 2020 WL 5578336, at *1 (S.D.N.Y. Sept. 17, 2020).  While district courts have the discretion to disqualify an attorney, they "must 'be solicitous of a client's right freely to choose his counsel -- a right which of course must be balanced against the need to maintain the highest standards of the profession.'" *Prevezon*, 839 F.3d at 241; *accord TAL Props. of Pomona, LLC v. Village of Pomona*, No. 19 Civ. 6838, 2020 WL 7773575, at *1 (S.D.N.Y. Dec. 30, 2020).

Courts in this Circuit show "considerable reluctance to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice," "disqualification motions are often interposed for tactical reasons" and "even when made in the best of faith" they "inevitably cause delay."  *Bd. of Educ. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *accord Heard v. Statue Cruises LLC*, No. 16 Civ. 1079, 2020 WL 1285456, at *5 (S.D.N.Y. Mar. 18, 2020).  At the same time, "any doubt should be resolved in favor of disqualification." *Network Apps, LLC v. AT&T Mobility LLC*, No. 21 Civ. 718, 2022 WL 1119331, at *6 (S.D.N.Y. Apr. 14, 2022) (internal quotation marks omitted); *see Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)).  "In the end, after careful analysis, a motion to disqualify is 'committed to the sound discretion of the district court." *Network Apps*, 2022 WL 1119331, at *6; *see Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994).

"[D]isqualification has been ordered only in essentially two kinds of cases," including "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d

4

759, 764-65 (2d Cir. 1990) (alterations omitted); *accord Guangcheng Chen v. Matsu Fusion Rest. Inc.*, No. 19 Civ. 11895, 2020 WL 6135764, at *1 (S.D.N.Y. Oct. 16, 2020). Where there is a purported conflict with a former client, disqualification is warranted where:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client.

*Prevezon,* 839 F.3d at 239 (internal quotation marks omitted). "A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." *Id.*; *accord Guangcheng Chen*, 2020 WL 6135764, at *2. "The substantial relationship test removes the need for courts to make direct inquiry into whether confidential information was actually transmitted." *Prevezon*, 839 F.3d at 241. Instead:

> The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*Id.*; *accord Network Apps*, 2022 WL 1119331, at *10. "An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005). That presumption is rebuttable unless "the same individual lawyer participated in the prior and current representation." *Prevezon*, 839 F.3d at 240. The "moving defendants bear the heavy burden of proving facts required for disqualification." *Evans v. Artek Sys. Corp.* 715 F.2d 788, 794 (2d Cir. 1983); *accord Guangcheng Chen*, 2020 WL 6135764, at *3. However, once the movants prove a "substantial relationship," they do not also bear the burden to "identify confidences [movants] had shared with [their] counsel." *Prevezon*, 839 F.3d at 241.

5

### III. DISCUSSION

Fox is disqualified as counsel for Cypress in this litigation because Fox previously represented GlassBridge in a substantially related matter and is assumed as a matter of law to have had access to relevant privileged information in the course of that representation. *See Prevezon*, 839 F.3d at 241. Fox has not rebutted the presumption that information shared by GlassBridge with its Fox lawyers was shared within the firm, including with Cypress's Fox lawyers, such that the conflict is imputed to the firm. *Id.* at 240.

In a declaration submitted on behalf of Fox, Fox concedes that it represented GlassBridge in negotiations about its pension plan with the PBGC; that Fox's representation involved examination by the PBGC of GlassBridge assets, including its investment in Sport-BLX; and that Fox relayed information on the Sport-BLX investment to the PBGC. Fox denies that it conducted due diligence on Sport-BLX or provided advice to GlassBridge to influence its decision to invest in Sport-BLX. Fox claims that it "acted solely as a messenger, delivering information from GlassBridge to the PBGC." Fox offers no other characterizations of its representation or the information it received from GlassBridge about Sport-BLX, nor does Fox offer any assurance or explanation that such information has been and would continue to be walled off from the Fox attorneys representing Cypress today, such as Gross.

Defendants' and Fox's description of the representation are not inconsistent. A declaration submitted on behalf of GlassBridge states that "GlassBridge relayed to . . . Fox Rothschild our thoughts and ideas about Sport-BLX's value, GlassBridge's expectations for its investment in Sport-BLX, including investment upside, as well as our thoughts and opinions on Sport-BLX's shortcomings" and "provided materials to its attorneys at Fox Rothschild . . . so that Ms. Thein could evaluate and advocate to the PBGC that it should accept GlassBridge's

6

offer."  The declaration of Defendant Hall states that, "based on what information [Ms. Thein] had access to -- and as . . . emails between GlassBridge, the PBGC, and Fox Rothschild representatives dating from between March 5, 2019 and March 15, 2019 would demonstrate -- she was aware of the significant value that GlassBridge and the PBGC put on the potential enterprise value of Sport-BLX's business model."

Cypress's allegations in the instant litigation are broader than the scope of Fox's prior representation of GlassBridge in the PBGC negotiations, but the matters are "substantially related" because "facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation."  *See Prevezon*, 839 F.3d at 239.  The "problem" in the PBGC negotiation was GlassBridge's apparent lack of assets.  *See id.*  The value GlassBridge assigned to Sport-BLX was "pertinent" there, and it is "relevant" here.  *See id.*  "'[T]he relevant inquiry is not limited to whether there are common legal claims or theories between the representations, but extends to whether there are common factual issues that are material to the adjudication of the prior and current representations.'"  *Network Apps*, 2022 WL 1119331, at *7.

Cypress expressly concedes that GlassBridge's evaluation of Sport-BLX is relevant in this case when it asserts:  "Indisputably, such information concerning GlassBridge's analysis of Sport-BLX will be the subject of discovery in this litigation."  Although Fox's access to discoverable information is not necessarily disqualifying, Fox's access to confidential information means "knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue . . . and innumerable other uses."  *Prevezon*, 839 F.3d at 238 (internal quotation marks omitted).

Cypress's claims are not limited to discrete issues that can be neatly separated from Fox's prior representation.  Cypress "appear[s] to put at issue [GlassBridge's] state of mind, its good

7

faith, its compliance efforts and history, and its corporate culture," and "confidential materials . . . shared with [Fox] bear on these subjects." *First NBC Bank v. Murex*, *LLC*, 259 F. Supp. 3d 38, 72 (S.D.N.Y. 2017). "The Court cannot foresee the direction that trial in this case may take," but "there is a real risk that trial here would be tainted" if Fox continues representing Cypress. *Id.* How GlassBridge valued Sport-BLX's business is relevant to whether changes in Sport-BLX's business model are signs of fraud, or just changes in a young start-up's business model. GlassBridge's growth expectations are relevant to whether Sport-BLX's lease was a sweetheart deal to divert investor funds, or just room to grow. The basis of GlassBridge's investment decisions is relevant to whether the investment was a sham to permit Hall and DePerio to kick Cypress off the board, or just bad timing for Cypress. And the valuation of Sport-BLX is relevant to whether the purchase of Hall and DePerio's stock at $355 per share, and the sale back two years later at a lower price, represents manipulation of the share price or fair value.

Fox argues that it did not possess any *privileged* information because it was a pure conduit of information -- everything GlassBridge told Fox, Fox told the PBGC, with no filter. The argument is unpersuasive. First, Fox's argument is extremely conclusory with no supporting details or documents. For example, time sheets might have shown de minimis work and consultation reflecting a "mere conduit" role. Instead, after GlassBridge submitted a document apparently listing the dollar amounts by date billed to GlassBridge on all matters between 2016 and 2020, totaling about $850,000, Fox responded with only a general description of the work that is not inconsistent with Defendants', as discussed above. Second, in light of the amounts billed in August 2018 and thereafter (Fox does not state when the work with the PBGC ended), it seems implausible that Fox's role was merely perfunctory. *See First NBC Bank*, 259 F. Supp. 3d at 71 (finding that former counsel might use confidential information against former client even

8

where "[m]uch of Murex's confidential data was also sent to the EPA"). Any lawyer, when given a variety of information by her client about the value of her client's asset, some helpful and some less helpful, would curate that information before providing it to an adversary, not simply copy and paste. *Cf. Gogo Apparel*, 2020 WL 5578336, at *2 (finding a conflict based on inference that "[i]n order to competently represent [the former client] on these issues, a reasonable attorney would be expected to acquire a minimum base of knowledge" that is relevant to the present case). Third, even undertaking this inquiry is in tension with controlling law. As the Second Circuit stated, "The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent." *Prevezon*, 839 F.3d at 241.

Balancing the foregoing concerns against Cypress's right to choose its own counsel does not alter the conclusion that disqualification is warranted. After Fox was forced to withdraw from this matter the first time, Cypress was represented by the law firm Wilentz, Goldman & Spitzer. The Wilentz firm went at least as far in representing Cypress as to send a demand letter to Sport-BLX on Cypress's behalf. Assuming that Fox did in fact withdraw from representing Cypress and Salerno in 2019, and assuming Fox did not re-engage in a representation against GlassBridge before their attorney-client relationship formally ended in late 2021, Cypress will suffer relatively little prejudice from being required to re-engage the Wilentz firm or another firm of its choosing. *Cf. Araujo v. Macaire*, No. 16 Civ. 9934, 2018 WL 4300525, at *5 (S.D.N.Y. Sept. 7, 2018) (discussing the distinguishable situation where "new counsel . . . have to become familiar with the prior comprehensive investigation which is the core of modern complex litigation" and "[t]he client moreover may lose the benefit of its longtime counsel's specialized knowledge of its operations") (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d

737, 739 (2d Cir. 1978)).  While disqualifications of counsel "inevitably cause delay," disqualifying Fox will cause relatively little disruption in this case. *Sanchez v. Hoosac Bank*, No. 12 Civ. 8455, 2014 WL 1326031, at *2 (S.D.N.Y. Mar. 31, 2014).  This case is still at a very early stage, with motions to dismiss yet to be filed and no discovery having taken place.

Because Fox is disqualified based on a conflict with its former client, GlassBridge, the Court does not decide whether disqualification would be appropriate because of a concurrent conflict, the witness-advocate rule or the purported contract between GlassBridge and Fox.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify Fox Rothschild LLP as counsel for Cypress in this litigation is GRANTED.  Defendants' motions for oral argument are DENIED as moot.  Discovery in this action will remain STAYED for thirty days to permit Cypress to secure substitute counsel, and Cypress shall file a status letter in thirty days on their efforts to do so.  The initial pretrial conference scheduled for September 7, 2022, is adjourned to **October 19, 2022, at 4:20 P.M.**, and the parties' deadline to file the joint letter and proposed civil case management plan and scheduling order required in advance of the initial pretrial conference by the Order at Dkt. No. 6 is extended to **October 12, 2022, at 12:00 P.M.**

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 26, 29 and 43.

Dated: August 23, 2022
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE