**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| CYPRESS HOLDINGS, III, L.P., individually and derivatively on behalf of SPORT-BLX, INC., | Case No. 22-cv-01243 (LGS) |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| GEORGE HALL, JOSEPH DE PERIO, DANIEL STRAUSS, FRANCIS RUCHALSKI, CESAR BAEZ, CHRISTOPHER JOHNSON, SPORT-BLX, INC., SPORT-BLX SECURITIES, INC., CLINTON GROUP INC., and GLASSBRIDGE ENTERPRISES, INC., | |
| Defendants. | |

## [PROPOSED] SECOND AMENDED COMPLAINT

Plaintiff Cypress Holdings, III, L.P. ("Plaintiff" or "Cypress"), individually and derivatively on behalf of Sport-BLX, Inc. ("Sport-BLX"), by way of Second Amended Complaint against Defendants George Hall ("Hall"), Joseph De Perio ("De Perio"), Daniel Strauss ("Strauss"), Francis Ruchalski ("Ruchalski"), Cesar Baez ("Baez"), Christopher Johnson ("Johnson"), Sport-BLX, Sport-BLX Securities, Inc. ("S-BLX Securities"), Clinton Group Inc. ("Clinton Group"), and GlassBridge Enterprises, Inc. ("GlassBridge") (collectively, "Defendants"), alleges as follows:

### INTRODUCTION

1. Plaintiff brings this civil action pursuant to Section 10(b) of the Securities Exchange Act of 1934, Rule 10(b)-5, codified at 17 C.F.R. § 240.10b-5, and for various violations of state law, including fraudulent inducement, breach of contract, breach of fiduciary duty, shareholder oppression, unjust enrichment, and tortious interference with contract, to redress

Defendants' fraudulent and other wrongful conduct in connection with Plaintiff's investments in Sport-BLX.

2.      Defendants' fraudulent and unlawful conduct occurred over multiple stages.  First, Defendants Hall and De Perio (the "Founders") induced Cypress to invest in their newly formed venture, Sport-BLX, through a series of fraudulent misrepresentations—both orally and in writing—concerning, among other things: (i) the use of its investment proceeds; (ii) Sport-BLX's business plan, including its purported ability to generate additional revenue through advisory, investment and management fees; and (iii) a promised seat, for a Cypress representative, on the Board of Sport-BLX.

3.      Second, when Cypress discovered that many of these material representations were untrue, and voiced its objections, Defendants devised a plan to circumvent their obligation to provide Cypress its promised seat on the Board.  Defendants did so through the Founders' sale of their controlling interests of Sport-BLX stock to another entity they owned and controlled, Defendant GlassBridge, at a price and value significantly above anything at which they ever indicated the stock to be worth. After transferring their controlling interests in Sport-BLX to GlassBridge through this self-interested transaction, the Founders used GlassBridge to deprive Cypress of its seat on the Board.

4.      Not surprisingly, immediately following the sale of stock to GlassBridge, (which was effectuated the very last day GlassBridge could be deemed a shareholder of record and eligible to vote at Sport-BLX's Board meeting), Defendants directed GlassBridge to vote its shares so as to eliminate Cypress' promised seat on the Board. As a result, Defendants were able to deny Cypress information to which it would otherwise have access and/or a means to effectively voice its objections as a member of the Sport-BLX Board.

5.      Third, Defendants used GlassBridge to create new entities, including Defendant S-BLX Securities, that they owned and controlled to engage in the same line of business as Sport-BLX; namely, the use of a sports-based alternative asset trading platform to monetize and trade such assets. In doing so, Defendants usurped the business opportunities that were the subject of Sport-BLX's business plan, and that Defendants represented to Cypress would be pursued by Sport-BLX.

6.      Fourth, and finally, Defendants engaged in a series of self-interested transactions that had the effect of siphoning off Sport-BLX's remaining value and assets to S-BLX Securities, FinTech Debt Corp. ("FinTech"), and, upon information and belief, I Got It Holdings Corp. d/b/a Metabilia ("Metabilia"), leaving Sport-BLX an empty shell unable to conduct business. Meanwhile, as a result of the above-described conduct and transactions, S-BLX Securities and Metabilia are now engaging in the lines of business for which Sport-BLX was supposedly created.

## JURISDICTION AND VENUE

7.      The Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper pursuant to 28 U.S.C. § 1391 in that Defendants are located in this District and/or many of the acts complained of occurred here.

9.      Plaintiff is entitled to a jury trial.

## THE PARTIES

10.      Cypress is a limited partnership organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 494 Sycamore Avenue, Shrewsbury, New Jersey, 07702.

11.      Michael Salerno ("Salerno") is the managing partner of Cypress.

12.     Defendant Sport-BLX is a corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 510 Madison Avenue, 9th Floor, New York, New York, 10022.  Sport-BLX was created in 2018 for the stated purpose of using an alternative trading platform to monetize and trade sports-based assets.

13.     Defendant GlassBridge is a corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 18 East 50th Street, 7th Floor, New York, New York, 10022.

14.     Defendant Hall is the Executive Chairman and Chief Executive Officer ("CEO") of Sport-BLX and is, or was, the beneficial holder of approximately 31.1% of the outstanding common stock of GlassBridge. Defendant Hall is also the sole owner and shareholder of Clinton Group.

15.     Defendant De Perio is the President of Sport-BLX and a member of the Board of Directors of GlassBridge, owning approximately 2.47% of the outstanding common stock of that entity. Defendant De Perio is also the CEO of Metabilia and has served as a Senior Portfolio Manager of Clinton Group for over ten years.

16.     Defendant Baez is a member of the Board of Directors of Sport-BLX and a member of Sport-BLX's Related Parties Committee. As a member of that Committee, it was Baez's duty to ensure that any self-interested transactions engaged in by the Founders or their affiliates were in the best interests of the company.

17.     Defendant Johnson is a member of the Board of Directors of Sport-BLX and a member of Sport-BLX's Related Parties Committee. As a member of that Committee, it was Johnson's duty to ensure that any self-interested transactions engaged in by the Founders or their affiliates were in the best interests of the company.

18.     Defendant Clinton Group is a private corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 510 Madison Avenue, 9th Floor, New York, New York, 10022. Clinton Group is wholly owned by George Hall.

19.     Defendant S-BLX Securities is a private corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located at 411 East 57th Street, Suite 1A, New York, New York, 10022. Defendants Hall and De Perio are the majority shareholders of S-BLX Securities, owning over 90% of the outstanding common stock. According to its public filings, S-BLX Securities is in the business of using a sports-based alternative asset trading program to market investors buying and selling such assets.

20.     Defendant Strauss is the CEO of GlassBridge, a previous Portfolio Manager at Clinton Group, a member of the Board of Directors of Adara Enterprises Corp. ("Adara") and a member of the Board of Directors of Sport-BLX. Defendant Strauss owns approximately 2.5% of the outstanding shares in GlassBridge. Defendant Strauss became an employee of GlassBridge via an Amended Services Agreement between GlassBridge and Clinton Group, through George Hall, signed on December 15, 2019.

21.     Defendant Ruchalski is the Chief Financial Officer ("CFO") of Clinton Group, Sports-BLX and GlassBridge. He is a member of the Board of Directors of Clinton Group and Sport-BLX. Like Defendant Strauss, Defendant Ruchalski became an employee of GlassBridge via the December 15, 2019, Amended Services Agreement with Clinton Group.

**PLAINTIFF'S STANDING**

22.     Cypress brings this action, in part, on behalf of Sport-BLX to enforce Sport-BLX's rights.

23.     At all times relevant to this lawsuit, Cypress was and remains a shareholder of Sport-BLX.

24.     Demand upon Hall and/or De Perio, as the officers in charge of Sport-BLX, to bring this action on behalf of the entity would be futile, as Hall and De Perio exercise control over all decisions of Sport-BLX and its Board.

25.     Moreover, Hall and De Perio are neither disinterested nor independent (as is also the case with Defendants Strauss, Ruchalski, Baez and Johnson, who are members of the Sport-BLX Board), with respect to the conduct relevant to this action. Moreover, the challenged transactions and occurrences outlined herein are not the product of valid exercises of Hall's, De Perio's, Strauss', Ruchalski's, Baez's or Johnson's business judgment. Rather, the challenged transactions and occurrences are *ultra vires* of Hall's and De Perio's duties and authorities as the officers in charge of Sport-BLX and are directly related to Hall's and De Perio's exclusive control over Sport-BLX and its Board, including Strauss, Ruchalski, Baez and Johnson.

26.     Cypress also brings this action, in part, to vindicate rights and redress injuries that belong exclusively to Cypress, because Cypress has sustained injuries resulting from the Defendants' conduct that have not been sustained by the other shareholders of Sport-BLX.

## **FACTUAL ALLEGATIONS**

27.     Sport-BLX was formed by the Founders (*i.e.*, Hall and De Perio) in an effort to create a "new economy" in sports on November 20, 2018. Towards this end, the Founders purportedly sought to use Sport-BLX and its newly created technology to "tokenize" sport assets, such as racehorses and professional athletes in name, image and likeness, dividing such assets into tradeable, fungible units to be purchased and traded by fans and investors.

28.     As a result, the stated mission of Sport-BLX—as emphasized throughout its marketing materials—was to create a block chain platform to improve the dynamics of and create a marketplace for investing in sports-based assets. For example, in its marketing materials, Sport-BLX advertised itself as "[a] platform that enables enthusiasts and investors to invest in the sports they love through fractional ownership and trading in unique sport asserts[.]"

29.     Prior to Cypress making an investment in Sport-BLX, Hall and De Perio individually, and on behalf of Sport-BLX, made a number of written promises to Cypress—sent to Cypress at its business address in New Jersey—concerning the business model of Sport-BLX and how the funds invested by Cypress would be used.  These written promises were contained in materials provided to Cypress prior to its investment, including documents titled: (1) Sport-BLX Frequently Asked Diligence Questions, (2) Sports Asset Investment Fund, and (3) Sport-BLX Investment Fund Opportunity, as well as untitled PowerPoint "Decks" prepared by Hall, De Perio and Sport-BLX and provided to Plaintiff as part of a due diligence process.

30.     At the time the Founders sought to induce Cypress to invest in Sport-BLX, the Founders owned and controlled the majority of the outstanding shares of the company, and the representations contained in the above-referenced materials were made to Cypress specifically to obtain its investment.

31.     For example, in connection with their solicitation of Cypress to provide funding to Sport-BLX through an investment in its common stock, the Founders represented to Cypress that the Sport-BLX platform would improve the dynamics of investing in sport assets through lower minimums, lower fees, and greater transparency.

32.     Further, and to induce Cypress' investment, the Founders provided their business plan and represented how they would utilize Cypress' investment, so as to be able to present Cypress with a successful proof of concept.

33.     The Founders repeatedly represented to Plaintiff—orally and in writing—that all of the proceeds raised through their first "Founders' Round" of financing would be used solely for technology development, associated legal expenses and marketing.

34.     Hall hosted a meeting in his home in Rumson, New Jersey in January, 2019.  At the meeting, Hall told Salerno that, if Cypress invested in Sport-BLX, the funds would be used solely for technology and to develop the company's trading platform. The Founders' representation regarding the use of Cypress' funds was material to and (along with the other representations described below) relied upon by Cypress in its decision to invest in Sport-BLX.

35.     During that same meeting, Hall promised Salerno that if Cypress invested in Sport-BLX, the Founders (who held controlling interests in Sport-BLX at the time) would vote for Cypress to have a representative seat on Sport-BLX's Board of Directors. As Sport-BLX was a private corporation that was owned and controlled by the Founders, this representation was also a direct and material inducement for Cypress to invest in Sport-BLX.

36.     During that same meeting, Hall also represented to Salerno that Sport-BLX had an affiliation with a sports asset investment fund (the "Fund"), and that Sport-BLX would serve as the Fund Manager of the Fund. It was further represented that the investments in the Fund would generate an additional revenue stream for Sport-BLX through various fees, including referral fees, success fees, management fees and advisory fees, among others. Hall specifically represented to Cypress during the meeting that Sport-BLX would retain sole ownership of the additional fees and revenue generated by any investments in Sport-BLX conducted by the Fund.

8

37.     During a follow-up meeting in January, 2019, at Hall's office at 510 Madison Avenue, 9th Floor, New York, New York, Hall and De Perio once again represented to Salerno that Sport-BLX would be affiliated with, and generate fees from, investments in Sport-BLX through the Fund.

38.     Hall repeated this same representation to Salerno at another meeting at Edie's Luncheonette in Little Silver, New Jersey, and also during telephone conversations in January, 2019.

39.     De Perio made these same representations to Salerno, concerning how Sport-BLX would work with and benefit from the Fund, at Char Steakhouse in Red Bank, New Jersey, in January, 2019.

40.     On February 14, 2019, De Perio wrote an email to Salerno that stated, "I attach our investment fund deck for sports" and attached a PowerPoint Deck, dated February 8, 2019, which provided a further description of the Fund. As reflected in that document, and represented to Cypress, Sport-BLX was to receive a 2% on-going management fee, a 20% share in the profits of any transaction for which Sport-BLX raised capital, and an approximate 20% success fee.

41.     The Founders later repeated these same representations regarding the Fund and the revenues it would purportedly generate on behalf of Sport-BLX in a written document titled Sports Asset Investment Fund which was provided to Cypress in connection with its investment decision.

42.     Each of the representations (detailed above) that Hall and De Perio made to Salerno about the Fund were material to Cypress' decision to invest in Sport-BLX because they established a viable business model and the existence of a future revenue stream for the company.  Sport-BLX, through Hall and De Perio, made such representations to Cypress with the intent that they would be relied upon by Cypress in its investment decision.

43.     In January, 2019 both Hall and De Perio again verbally represented to Salerno that if Cypress invested funds in Sport-BLX, Cypress would have a seat on the Board of Directors.  At the time, Hall and De Perio collectively maintained a controlling interest in Sport-BLX and, therefore, had the ability to appoint a Cypress representative to the Board.

44.     On February 1, 2019 De Perio sent an email to Salerno providing access to a data room which contained various PowerPoint "Decks".  One of the Decks stated that the investment funds would be used by Sport-BLX solely to invest in technology.

45.     The Founders also made this representation in another written document titled Frequently Asked Diligence Questions, which they sent to Salerno before February 28, 2019.  That document represents, in part, that "[a]ll of the proceeds raised through the currently contemplated Founder's Round (described below) will be used solely for technology development, associated legal expenses and marketing."

46.     In a January 29, 2019 email sent to Salerno, De Perio also confirmed "Board appointment at closing" which the parties understood to mean that once Cypress invested in Sport-BLX, it would have a seat on the Board of Directors.

47.     The Founders also provided Cypress with a road map of their marketplace launch for Sport-BLX, setting forth an April 2019 launch followed by a marketing blitz and growth and scaling in June of 2019.

48.     There is no doubt that, in connection with their sales strategy of Sport-BLX stock and in the representations made to induce Cypress' investment, the Founders utilized sharp practices.  Indeed, in an effort to elevate a perception of exclusivity, Hall and De Perio affirmatively represented to Cypress' Managing Partner (Salerno) that an investment in Sport-

BLX was not for everyone, and that they were focused on finding "strategic investors[,]" such as Cypress, who would assist with the Sport-BLX launch.

49.     On February 28, 2019, based upon the above-described representations and other information it received from the Founders and Sport-BLX, Cypress, on the one hand, and Sport-BLX, Hall and De Perio on the other, entered into several agreements concerning the purchase by Cypress of certain shares of common stock in Sport-BLX.

50.     The first agreement was a written Common Stock Purchase Agreement dated February 28, 2019 for Cypress' purchase of 5,263 shares of common stock in Sport-BLX at a price of $95 per share (the "Founders Agreement").

51.     Additionally, there was another Common Stock Purchase Agreement, also entered on February 28, 2019, setting forth Cypress' purchase of an additional 2,497 shares of Sport-BLX common stock at a price of $200.18 per share (the "Second Agreement").

52.     In addition to the Founders Agreement and the Second Agreement, there was a third agreement between the parties with respect to Cypress' purchase of its shares in Sport-BLX; namely, on February 28, 2019, Cypress, Sport-BLX and the Founders executed another agreement (the "Third Agreement") governing certain other terms in the parties' arrangement with respect to the sale of Sport-BLX shares to Cypress.

53.     In the Third Agreement, Sport-BLX and the Founders represented that, as long as Cypress continued to hold in the aggregate at least 2.5% of the capital stock of Sport-BLX, the Founders agreed to vote their capital stock in Sport-BLX in favor of a Cypress representative being elected to the Board of Directors.  This covenant in the Agreement was a material provision and a critical piece in Cypress' willingness to invest in Sport-BLX.  Indeed, having a "seat at the table" and being a part of Sport-BLX's governing body through what was represented by the Founders

to be a guaranteed Board Seat was a material inducement for Cypress' investment.  The Third Agreement also contained anti-dilution protection tag-along rights, among other material provisions, concerning Cypress' purchase of Sport-BLX stock.

54.     The above-described material representations and promises made by Hall and De Perio to get Cypress to invest in Sport-BLX were knowingly false when made.

55.     In fact, despite their representations that the proceeds raised through a sale of shares would be used solely for technology development, associated legal expenses and marketing, the Founders caused Sport-BLX, through a series of self-interested transactions with an entity they wholly owned, to utilize such funds for operating expenses, excessive rent for office space and overhead unrelated to Sport-BLX.

56.     In this regard, the Founders caused Sport-BLX to enter into a purported lease for certain commercial office space, expending approximately $500,000 per annum in "rent," a sum that bore no relation whatsoever to the actual space needed or actually used by Sport-BLX.  The lease agreement for the payment of "rent" between Sport-BLX and Clinton Group, an entity owned solely by Defendant Hall, existed and was entered into well before Cypress made its investment.

57.     Following its investment, Cypress raised the excessive "rent" charged by Clinton Group in connection with the exercise of its duty as a Board Member, advising the Founders and other Board members that the rental rate seemed excessively high, and it expressed that the sweetheart arrangement with Sport-BLX's landlord, Clinton Group, an entity in which Hall owned a 100% equity interest, was highly suspect.

58.     The arrangement between Sport-BLX and Clinton Group, for $500,000 per year in "rent," was intended to and did serve as a means to siphon money out of Sport-BLX for the benefit of Defendant Hall to the detriment of the other shareholders.

59.     As further evidence of the suspect nature of the "lease arrangement," although the Founders unilaterally determined to utilize investors' monies (including Cypress' investment) to pay excessive "rent" to Clinton Group, at no time did Hall or De Perio provide a copy of the written lease between Sport-BLX and Clinton Group to any Board Member, including Cypress, despite repeated demands.

60.     By diverting capital from ordinary overhead to Clinton Group, the Founders breached their representations to Cypress and prevented Sport-BLX from pursuing its business plan or mission statement as represented.  That relationship also handicapped Sport-BLX in obtaining revenue or raising additional capital.

61.     Defendants Hall and De Perio, together with Defendants Ruchalski and Strauss, also used Clinton Group to circumvent their obligation to Sport-BLX by orchestrating investments in Sport-BLX through GlassBridge, another entity they owned and controlled.  One such investor was Orix PTP Holdings, LLC ("Orix").

62.     Defendants Hall and De Perio facilitated a Sport-BLX investment by Orix in GlassBridge, resulting in a success fee to Clinton Group, an entity over which Defendants had exclusive control while, at the same time circumventing their duty to use Sport-BLX to generate success, management, and advisory fees for such transactions through the Fund as promised (the "Orix Transaction").

63.     As a direct result of the Orix Transaction, Defendants Hall and De Perio through entities they created and controlled—GlassBridge and Clinton Group—willfully prevented Sport-BLX from realizing revenues—specifically, management and advisory fees—they represented to Cypress would be paid to Sport-BLX.

64. Although the Founders had made promises and representations concerning the Fund and its affiliation with Sport-BLX to Cypress to induce its investment, it was only after Cypress' $1.0 million investment that Hall advised Cypress that, contrary to his prior representations, the Fund was unrelated to Sport-BLX and would not be a source of fee revenue to the company.

65. In the late fall of 2019, and without ever advising or involving Cypress (or its representative on the Board) of any "changes," Hall announced for the first time that Sport-BLX had become a technology company, looking to obtain contracts to provide technology services to anyone that it could. As Hall admitted on at least one occasion, this was a significant departure from Sport-BLX's business plan as represented to Cypress prior to its investment, that it was not clear its business concept would work, and that he did not know if there would be "proof of concept."

66. Cypress voiced numerous objections to the manner in which the Founders had utilized Cypress' investment proceeds and the way in which the Founders managed the business of Sport-BLX, including the sweetheart "rent" deal with Clinton Group and the dramatic change in the company's business plan.

67. In an effort to silence Cypress, and remove its representative from the Board, the Founders constructed a subterfuge by which they divested themselves of their controlling ownership interests in Sport-BLX to another related entity they controlled, GlassBridge (the "GlassBridge Transfer") so as to avoid their obligations under the Third Agreement to vote in favor of Cypress' representative as a Board Member.

68. With the Founders no longer directly owning a controlling interest in Sport-BLX, Defendants utilized their positions as owners and officers of GlassBridge to cause GlassBridge to

vote its newly acquired 50.7% controlling shares in Sport-BLX in a manner so as to remove Cypress as a Board Member of Sport-BLX.  Thus, the Founders, acting in bad faith, were able to circumvent their obligations to Cypress under the Third Agreement to vote in favor of Cypress as a Board Member and silence it as an objector.

69.    On November 26, 2019, at a Board Meeting, Defendant Hall stated that if he decided to sell his personal shares, if the same was ever in the best interest of the company, he would offer all shareholders tagalong rights as part of the transaction.

70.    On or about December 9, 2019, and immediately prior to the GlassBridge Transfer, the Founders offered to purchase the Cypress shares at a drastically undervalued sum, which they represented to Cypress was a fair price. The Founders' initial offer for Cypress' shares was at $50 per share, which they later raised to $60 per share, which they claimed to be fair value.  Cypress declined to sell its shares.

71.    Also, on or about December 9, 2019, Defendants Hall, De Perio, Ruchalski and Strauss represented to Cypress, in connection with the offer, that Sport-BLX had been marketed to numerous investors and that they were unable to identify any investor who had interest in Sport-BLX equity at any valuation, which is what they believed justified the offer of $60 per share.

72.    On the same date, Hall represented that he would not discuss a sale of his personal shares, acknowledging that a sale of his shares of Sport-BLX would not help the company or raise capital.

73.    Yet, despite such representations, on December 12, 2019, the Founders arranged for a sale of their personal shares in Sport-BLX to GlassBridge, at a value of $355 per share, far above what they had justified to Cypress days earlier. Specifically, GlassBridge purchased 37,924 shares from Defendant Hall in exchange for cash value of $1,346,302.00 and a note for

$12,116,718.00, and 37,924 shares from Defendant De Perio in exchange for cash value of $1,346,302.00 and a note for $12,116,718.00.

74.     Importantly, the sale came just one day prior to the shareholder record date of December 13, 2019, the date by which an investor must be a shareholder to vote in the election of the Board.

75.     By selling their own shares, rather than those of the company, at a significantly higher price than they offered Cypress, the Founders reaped a windfall for themselves rather than raising additional capital for Sport-BLX.

76.     As indicated above, the sale of the Founders' shares to GlassBridge took place one day prior to the shareholder record date for Sport-BLX of December 13, 2019, the date by which an investor must be a shareholder to vote in the election of the Board.

77.     As described above, GlassBridge used its recently purchased controlling interest in Sport-BLX to vote Cypress' designated representative, Michael Salerno, off the Board.

78.     Salerno was told by the Founders via email on July 20, 2019, and during a Board meeting on August 14, 2019, that they would "go around him"—*i.e.*, remove him from the Board by any means necessary—after Cypress rejected the Founders' offer to buy out Cypress' shares. The above conduct illustrates that is exactly what they did.

79.     As a result of Hall's and De Perio's dereliction of their fiduciary duties to Sport-BLX, Sport-BLX was deprived of significant funds that would have been used in their business operations and would have been used to support the platform that was described in the Sport-BLX marketing materials provided to Cypress.

80.     After Hall and De Perio sold their shares in Sport-BLX, they, together with Defendants Strauss, Ruchalski, Johnson, and Baez, caused GlassBridge to formulate other entities,

affiliated with GlassBridge and bearing, in some part, the Sport-BLX name. Defendants then utilized these entities to misappropriate Sport-BLX's goodwill and intellectual property that would have been needed by Sport-BLX to pursue the same or substantially similar investment opportunities.

81.     One such entity was S-BLX Securities, which was incorporated in Delaware on April 1, 2020 to create a marketplace for the buying and selling of sports assets, which was precisely the same mission as Sport-BLX and what the Founders told Cypress the company was going to do. S-BLX Securities described itself on the crowdfunding website Wefunder.com as "a revolutionary financial technology company which has developed a marketplace for a wide variety of investments including, but not limited to sports assets." *SportBLX Securities, Inc. FAQ* WEFUNDER.COM (last visited Jan. 16, 2023), *available at* https://wefunder.com/sportblx/faq. It further described how "[f]ans and investors can buy securities representing revenue share interests in players, equity interests in teams, or other asserts."

82.     GlassBridge's pursuit and misappropriation of Sport-BLX's tokenized purchase and sale of sports assets is further evidenced by Defendants' involvement in Metabilia, a private company whose mission—to form a market for the purchase and sale of sports assets—is similar to that of Sport-BLX. Metabilia was originally founded as I Got It Holdings Corp. on October 20, 2020. De Perio was named Chairman of I Got It Holdings Corp. from the onset. Prior to that date, I Got It Holdings Corp.'s predecessors developed an online marketplace/auction platform designed to bid and buy in real-time unique memorabilia, experiences and digital collectibles. The company's platform allowed fans to auction their experiences, merchandise and memorabilia exclusively at the venues they were attending. In the Spring of 2022, however, under De Perio's

leadership, I Got It Holdings Corp. changed its name to Metabilia, moved its domicile to Delaware, and started pursuing a different business plan with a new platform.

83.     The new Metabilia platform mirrors the platform previously intended to be used by Sport-BLX. On its website, Metabilia represents that "[f]or items marked as tradable on the Metabilia platform, owners have the right to re-sell the item on the Marketplace feature of the Metabilia platform. Owners of these collectibles have the right to resell their assets and can do so by viewing their asserts in the My Items section of the platform and selecting 'Offer for Sale.'". *Metabilia FAQ*, Metabilia.io (last visited Jan. 16, 2023), *available at* https://metabilia.io/platforms/igi/faq. In switching business models, Metabilia essentially took over the Sport-BLX trading platform model and replaced Sport-BLX as the premier marketplace to buy and sell sports assets.

84.     In short, rather than pursuing the Sport-BLX business as previously defined and represented, Defendants, via GlassBridge's now controlling interest in Sport-BLX, caused Sport-BLX to forego its original stated mission and purpose.  Indeed, Defendants, through GlassBridge and the entities it created, owns and controls, including S-BLX Securities and, upon information and belief, Metabilia, are now pursuing the tokenized concept regarding the sale and exchange of "sport assets" for fans and investors.  Through these entities, Defendants have effectively usurped Sport-BLX's assets, business plan and opportunities.

85.     On December 30, 2021, GlassBridge divested itself of all of its Sport-BLX stock through a sale of that stock back to the Founders through FinTech, another private entity which the Founders wholly own and control. Specifically, GlassBridge sold the entirety of its shares in Sport-BLX to Fintech for $137,038.00. This sale of the Founders' Sport-BLX stock back to the Founders was at a significant loss to GlassBridge and approved by the GlassBridge Board.

18

GlassBridge's sale of the entirety of its Sport-BLX stock was not discoverable until the release of its public filings for the year ended December 31, 2021, which was released on or about March 31, 2022.

86.     GlassBridge's sale back to the Founders of its controlling interest in Sport-BLX at a price significantly lower than the price per share upon which the GlassBridge Transfer occurred not only enabled the Founders to essentially reverse the GlassBridge Transfer, but also to reap a substantial windfall through their manipulation of the stock price.

87.     At or about the same time that they were depriving Cypress of the fruits and intended benefits of its investment in Sport-BLX, the Founders also breached their fiduciary duties to Sport-BLX by engaging in a series of self-interested transactions to strip Sport-BLX of its assets and transfer its business to other entities, including S-BLX Securities and, upon information and belief, Metabilia.

88.     As the final phase of their scheme, Defendants orchestrated the transfer of control of Sport-BLX's proprietary trading platform to companies they own and control.  According to its public filings, Defendants caused Sport-BLX to enter into a Subscription Agreement with S-BLX Securities (93.6% of which is owned by Hall and De Perio) to utilize Sport-BLX's proprietary sports-based alternative asset trading platform to issue sports-related securities which could be traded by its investors.  According to its filing, S-BLX Securities paid an upfront subscription fee of $150,000 and a monthly fee of $100,000 (to be increased to $137,500) for its use of Sport-BLX's trading platform.

89.     Despite having a Subscription Agreement in place that resulted in payments of $100,000 or more per month, on December 21, 2021, Sport-BLX sold its most valuable asset, the code for its proprietary trading platform, to S-BLX Securities for a total of $225,000. Given that

S-BLX Securities is a private company, the sale of the code was not discoverable until the release of GlassBridge's public filings for the year ended December 31, 2022, which was released on or about March 31, 2022.

90.     Upon information and belief, Defendants have arranged for another of their affiliates, Metabilia, to use Sport-BLX's technology and platform (now owned by S-BLX Securities) and other confidential information concerning Sport-BLX's business plan, in whole or in part, to conduct business in the same sports-based assets marketplace for which Sport-BLX was intended.  As a result of the above-described transactions, Sport-BLX is little more than a shell, without any assets and lacking the ability to conduct any meaningful business.

91.     Each of the foregoing self-interested transactions described above were approved by the members of Sport-BLX's Board, including Defendant Strauss and Ruchalski, and Baez and Johnson as members of the Related Parties Committee, even though these transactions were not in the best interests of Sport-BLX or its shareholders.

92.     Unquestionably, through the above-described conduct, the Defendants and Sport-BLX have acted unlawfully to deprive Cypress of the fruits and the intended benefits of its investment in Sport-BLX.  As a direct and proximate result of the foregoing, Cypress has been deprived in its entirety of the benefit of its bargain with Sport-BLX and the Founders and, therefore, brings this action for injunctive and monetary relief.

## COUNT ONE
### Violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5
### (17 C.F.R. § 240.10b-5) – Against Hall, De Perio and Sport-BLX

93.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

94.     This is a claim for damages against George Hall, Joseph De Perio and Sport-BLX for violating Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.

95.     Hall and De Perio, individually and on behalf of Sport-BLX, made material misrepresentations and omissions to induce Plaintiff to invest in securities (*i.e.*, Sport-BLX stock) causing Plaintiff to suffer substantial injury and damages.

96.     Pursuant to 17 C.F.R. § 240.10b-5, it is "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

97.     To state a claim for violation of the Securities Exchange Act § 10(b), a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Charles Schwab Corporation v. Bank of America Corporation*, 883 F.3d 68, 92 (2d Cir. 2018); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (internal quotation marks omitted).

98.     Scienter is "'a mental state embracing intent to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-194 (1976).

99.     Hall and De Perio, individually and on behalf of Sport-BLX, induced Plaintiff to invest in Sport-BLX stock by making material misrepresentations and omissions about how the investment would be used.  Specifically, Hall and De Perio falsely represented that the investment would be used solely for technology development, associated legal expenses and marketing.  This false representation was made by Hall during a meeting at his home in Rumson, New Jersey, in materials that were provided to Salerno on February 1, 2019 (via an emailed link), and in Frequently Asked Diligence Questions prepared by Hall, De Perio and Sport-BLX.

100.     When they made this false representation, Hall, De Perio and Sport-BLX had a motive to deceive Cypress in order to obtain a $1 million investment.

101.     Hall, De Perio and Sport-BLX knew this representation was false at the time it was made, as evidenced by the fact that they used the investment for other purposes immediately after receipt of the funds, including to make "rent" payments to Clinton Group.

102.     Hall, De Perio and Sport-BLX made this false representation for the purpose of inducing Cypress to reasonably rely on the representation and purchase shares of Sport-BLX, so that the investment proceeds could be put into entities controlled by the Founders or otherwise used for their benefit.

103.     Hall and De Perio, individually and on behalf of Sport-BLX, also induced Plaintiff to invest in Sport-BLX stock by falsely representing that Plaintiff would obtain a seat on the Board of Directors and would keep that seat so long as it continued to hold in the aggregate at least 2.5% of the capital stock of Sport-BLX.  This false representation was made by Hall during the meeting

at his house in Rumson, New Jersey, was repeated by Hall and De Perio in January, 2019 and is set forth in the Third Agreement.

104.    When they made this false representation, Hall, De Perio and Sport-BLX had a motive to deceive Cypress in order to obtain a $1 million investment from Cypress.

105.    Hall, De Perio and Sport-BLX knew at the time that this representation was false, as evidenced by the fact that soon after they received the investment funds, they took steps to deny Cypress a continued seat on the board through entities which they owned and controlled.

106.    Hall and De Perio, individually and on behalf of Sport-BLX, also induced Plaintiff to invest in Sport-BLX stock by falsely representing that Sport-BLX would own and serve as the Fund Manager for investments made in Sport-BLX through the affiliated Fund, and from which they represented Sport-BLX would receive a revenue stream in the form of various fees.  Hall made this false representation to Salerno during a meeting at his home in Rumson, New Jersey, at a meeting at Edie's Luncheonette in Little Silver, New Jersey and during telephone calls in January, 2019.

107.    Hall and De Perio made this same false representation at Hall's office at 510 Madison Avenue, 9th Floor, New York, New York.

108.    On February 14, 2019, De Perio wrote an email to Salerno that stated, "I attach our investment fund deck for sports" and attached a PowerPoint Deck, dated February 8, 2019, which provided a further description of the Fund and its ability to generate fees on behalf of Sport-BLX.

109.    The Founders later repeated these representations regarding the Fund in a document titled Sports Asset Investment Fund which they provided to Cypress.

110.    When they made this false representation, Hall, De Perio and Sport-BLX had a motive to deceive Cypress in order to obtain a $1 million investment from Cypress.

111.    Hall, De Perio and Sport-BLX knew at the time that this representation was false, as evidenced by the fact that they later feigned ignorance when Salerno asked about the Fund and ultimately admitted that the Fund was not affiliated with Sport-BLX and that Sport-BLX would not receive any revenue from the Fund for acting as the Fund Manager.

112.    Hall, De Perio and Sport-BLX made this materially false representation for the purpose of inducing Cypress to reasonably rely on the representation and purchase shares of Sport-BLX.

113.    Plaintiff reasonably relied on each of these misrepresentations in deciding to invest in Sport-BLX.

114.    Plaintiff would not have invested in Sport-BLX but for the above-described misrepresentations.

115.    Hall, De Perio and Sport-BLX had superior information about Sport-BLX and its business plans and Plaintiff relied on Hall, De Perio and Sport-BLX to make truthful representations about Sport-BLX.

116.    Plaintiff suffered monetary damages as the result of the misrepresentations made by Hall and De Perio, including the amounts Plaintiff invested in Sport-BLX and loss of anticipated revenue.

117.    Hall and De Perio acted with scienter, as each had the motive and opportunity to engage in this scheme, because of their domination and control over Sport-BLX.

118.    This unlawful conduct was undertaken in connection with the purchase and sale of Sport-BLX securities.

119.    By virtue of the foregoing, Defendants violated Exchange Act Section 10(b) and Rule 10b-5, and, as a direct and proximate result of Defendants' wrongful conduct, Cypress has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against George Hall, Joseph De Perio and Sport-BLX, Inc., jointly and severally, and provide the following relief:

a)  Compensatory damages, incidental damages, and consequential damages;

b)  Costs, interest, and reasonable attorneys' fees,

c)  Prejudgment and post-judgment interest; and

d)  Such other relief as the Court deems just and equitable.

## COUNT TWO
## Breach of the Covenant of Good Faith and Fair Dealing – Against Hall, De Perio and Sport-BLX

120.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

121.    As a party to a contractual relationship, the Founders and Sport-BLX owed Cypress an implied duty of good faith and fair dealing.

122.    The implied duty of good faith and fair dealing provides that each party to a contractual relationship will not do anything that will deprive the other parties of the benefits of their bargain, and a breach of this duty gives rise to an action for damages.

123.    The Founders and Sport-BLX precluded Cypress from realizing the full benefit of its bargain under the Founders Agreement, the Second Agreement and the Third Agreement by engaging in the GlassBridge Transfer so as to circumvent, in bad faith, the requirement in the Third Agreement that requires the Founders to vote in favor of Cypress for it to hold a Sport-BLX Board

Seat, and by otherwise utilizing GlassBridge and other entities they owned and controlled to strip Sport-BLX of its assets and pursue Sport-BLX's business opportunities.

124.    As a result of the Founders' and Sport-BLX's breach of the implied covenant of good faith and fair dealing, Cypress has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against George Hall, Joseph De Perio and Sport-BLX, Inc., jointly and severally and provide the following relief:

a)  Compensatory damages, incidental damages, and consequential damages;

b)  Costs, interest, and reasonable attorneys' fees,

c)  Prejudgment and post-judgment interest; and

d)  Such other relief as the Court deems just and equitable.

## COUNT THREE
### Fraud in the Inducement – Against Hall, De Perio and Sport-BLX

125.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

126.    Hall, De Perio and Sport-BLX willfully, intentionally, and maliciously deceived and defrauded Cypress.

127.    With full knowledge of the falsity of their representations when made, among other material misrepresentations and omissions, the Founders and Sport-BLX purposefully and intentionally made misrepresentations to Cypress concerning the use of Cypress' investment proceeds, board membership and misrepresentations concerning the Fund.

128.    At the time that they made those misrepresentations and omissions, the Founders and Sport-BLX actually knew that they were intentionally misstating relevant information that was

of vital importance to Cypress in connection with its decision to enter into the Founders Agreement, the Second Agreement and the Third Agreement.

129.    The omissions and representations made by the Founders and Sport-BLX are separate and apart from the Founders' and Sport-BLX's obligations under the Founders Agreement, the Second Agreement and the Third Agreement, and relate solely to the Founders' and Sport-BLX's attempts to induce Cypress to enter into the Founders Agreement, the Second Agreement and the Third Agreement.

130.    The Founders and Sport-BLX intended for Cypress to rely upon those misrepresentations and omissions, as a means by which to deceptively and fraudulently induce Cypress to purchase shares of stock in Sport-BLX and enter into the Founders Agreement, the Second Agreement and the Third Agreement, and as a result of the Founders' and Sport-BLX's misrepresentations and omissions, Cypress entered into these agreements and invested approximately $1.0 million in Sport-BLX.

131.    Absent the material misrepresentations and omissions, Cypress would never have entered into the Founders Agreement, the Second Agreement or the Third Agreement, or purchased any shares in Sport-BLX.

132.    As a direct and proximate result of the Founders' and Sport-BLX's misrepresentations and omissions, Cypress has suffered damages.

133.    The Founders' and Sport-BLX's conduct was malicious, intentional and outrageous and warrants the imposition of punitive damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against George Hall, Joseph De Perio and Sport-BLX, Inc., jointly and severally and provide the following relief:

a)      Punitive damages;

b)      Compensatory damages, incidental damages, and consequential damages;

c)      Rescission;

e)      Costs, interest, and reasonable attorneys' fees;

e)      Prejudgment and post-judgment interest; and

f)      Such other relief as the Court deems just and equitable.

## COUNT FOUR
### Negligent Misrepresentation – Against De Perio, Hall and Sport-BLX

134.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

135.    Hall and De Perio negligently or carelessly, made, or permitted, or participated in the making of misrepresentations and/or omissions of material fact to Cypress, *to wit*, information relating to Cypress' investment in Sport-BLX as detailed above.

136.    The Founders knew that Cypress would rely upon the accuracy and truth of the representations and/or omissions of material fact made by the Founders and Sport-BLX.

137.    The Founders and Sport-BLX possessed superior information about Sport-BLX and had a special relationship with Cypress which gave rise to a duty of care to provide Cypress with accurate information concerning its investment.

138.    As a direct, proximate and reasonably foreseeable result of the misrepresentations and/or omissions of material fact of the Founders and Sport-BLX, Cypress has suffered and continues to suffer damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Hall, De Perio and Sport-BLX, jointly and severally, and provide the following relief:

a)      Compensatory damages, incidental damages, and consequential damages;

b)      Costs, interest, and reasonable attorneys' fees;

c)      Prejudgment and post-judgment interest; and

d)      Such other relief as the Court deems just and equitable.

## COUNT FIVE
## Breach of Fiduciary Duty – Against Hall and De Perio

139.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

140.    The Founders, as members of the Sport-BLX Board of Directors and/or as officers or those in control of Sport-BLX owed and owe a fiduciary duty of care and loyalty to Cypress.

141.    By reason of the foregoing unlawful conduct, the Founders have breached their fiduciary duty.

142.    As a direct and proximate result of the Founders' breach of fiduciary duty, Cypress has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Defendants George Hall and Joseph De Perio, jointly and severally, and provide the following relief:

a)      Compensatory damages, incidental damages, and consequential damages;

b)      Costs, interest, and reasonable attorneys' fees;

c)      Prejudgment and post-judgment interest; and

d)      Such other relief as the Court deems just and equitable.

## COUNT SIX
## Unjust Enrichment – Against George Hall, Joseph De Perio, S-BLX Securities, and GlassBridge

143.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

144.    Based upon the foregoing factual allegations, Defendants have been and continue to be unjustly enriched with respect to their unlawful conduct in connection with their business relationship with Cypress.

145.    The Founders were unjustly enriched to Cypress' detriment when they purposefully created entities and used them to siphon money and business opportunities out of Sport-BLX and into those entities over which they exercised complete control.

146.    One such entity was S-BLX Securities. S-BLX Securities was unjustly enriched to Cypress' detriment when they purchased Sport-BLX's proprietary trading platform from Sport-BLX—in a transaction facilitated and approved by Hall and De Perio—at far below fair market value.

147.    GlassBridge, through Hall and De Perio, was unjustly enriched to the detriment of Cypress by facilitating the above-described series of self-interested transactions including forming entities for the sole purpose of siphoning out assets and business opportunities from Sport-BLX into entities over which they exercised complete control.

148.    As a direct and proximate result of Defendants' unjust enrichment, Cypress has suffered and will continue to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Defendants George Hall, Joseph De Perio, S-BLX Securities, and GlassBridge Enterprises, Inc., jointly and severally, and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

**COUNT SEVEN**
**Unjust Enrichment – Against George Hall, Joseph De Perio, and S-BLX Securities**
**Derivatively on Behalf of Sport-BLX**

149.     Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

150.     Based upon the foregoing factual allegations, the above-named Defendants have been and continue to be unjustly enriched with respect to their unlawful conduct in connection with their actions taken in their roles with Sport-BLX.

151.     As a direct and proximate result of Defendants' unjust enrichment, Sport-BLX has suffered and will continue to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX, respectfully requests that this Court enter judgment in favor of Sport-BLX and against Defendants George Hall, Joseph De Perio, and S-BLX Securities, jointly and severally, and provide the following relief:

      a)    Compensatory damages, incidental damages, and consequential damages;

      b)    Costs, interest, and reasonable attorneys' fees;

      c)    Prejudgment and post-judgment interest; and

      d)    Such other relief as the Court deems just and equitable.

**COUNT EIGHT**
**Tortious Interference with Contract – Against GlassBridge**

152.     Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

153.     GlassBridge knew of the Third Agreement, through which Sport-BLX and the Founders represented that, as long as Cypress continued to hold in the aggregate at least 2.5% of the capital stock of Sport-BLX, the Founders agreed to vote their capital stock in Sport-BLX in favor of a Cypress representative being elected to Sport-BLX's Board of Directors.

31

154.     Notwithstanding GlassBridge's knowledge of the Third Agreement, GlassBridge, intentionally, willfully, with malice, and without justification, interfered with the Third Agreement, so as to ensure that Cypress' representative would *not* be elected to the Board of Directors.

155.     GlassBridge's interference was for the purpose of enriching itself, at the expense of Cypress.

156.     As a direct and proximate result of GlassBridge's willful and intentional interference with contractual relations, Cypress has suffered, and continues to suffer, irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P. respectfully requests that this Court enter judgment in its favor and against Defendant GlassBridge Enterprises, Inc., and provide the following relief:

a)     Compensatory damages, incidental damages, and consequential damages;

b)     Costs, interest, and reasonable attorneys' fees;

c)     Prejudgment and post-judgment interest; and

d)     Such other relief as the Court deems just and equitable.

## COUNT NINE
### Tortious Interference with Contract – Against Clinton Group

157.     Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

158.     Clinton Group had knowledge of the Third Agreement between Sport-BLX and the Founders that (1) Cypress' investment would be used solely to develop technology and (2) the Fund would produce a revenue stream for Sport-BLX. This is evidenced by the fact that Defendant George Hall was both a member of the Board of Sport-BLX and the sole owner of Clinton Group.

32

159.    However, instead of Sport-BLX realizing that profit, GlassBridge facilitated an investment by Orix into GlassBridge itself, through Clinton Group, which was the entity that received and accepted a success fee from the transaction.

160.    Additionally, Clinton Group received and accepted an annual "rent" payment of $500,000 from Sport-BLX, contrary to Sport-BLX's and Cypress' agreement that Cypress' investment would be used for technology development.

161.    Notwithstanding Clinton Group's knowledge of the agreement between Cypress and Sport-BLX, Clinton Group, intentionally, willfully, with malice, and without justification, interfered with the agreement so as to ensure that Sport-BLX would not realize any benefit under its Agreement with Cypress.

162.    Clinton Group's interference was for the purpose of enriching itself, Hall, and GlassBridge, at the expense of Cypress.

163.    As a direct and proximate result of Clinton Group's willful and intentional interference with contractual relations. Cypress has suffered, and continues to suffer, irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., respectfully requests that this Court enter judgment in its favor and against Clinton Group, and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

## <u>COUNT TEN</u>
### <u>Tortious Interference with Contract – Against S-BLX Securities</u>

164.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

165.    S-BLX Securities knew that the express business plan of Sport-BLX—Sport-BLX's stated purpose—was to utilize the alternative trading platform to monetize and trade sports-based assets. S-BLX Securities knew of this as it was created by the same people, Defendants Hall and De Perio, who helped create Sport-BLX's business plan.

166.    Notwithstanding S-BLX Securities' knowledge of the agreement, S-BLX Securities intentionally, willfully, with malice, and without justification, interfered with the Agreement, so as to ensure that Sport-BLX could not achieve its stated purpose.

167.    This is evidenced by S-BLX Securities' receipt of the platform at far less than fair market value and the Founders' use of S-BLX Securities as a means of siphoning off Sport-BLX's assets and business opportunities into entities in which the Founders owned and controlled.

168.    This is further evidenced by De Perio using Metabilia to engage in the same or substantially similar business opportunities in the same or substantially similar market which had the effect of diverting business opportunities from Sport-BLX to Metabilia.

**WHEREFORE**, Cypress Holdings, III, L.P., respectfully requests that this Court enter judgment in its favor and against S-BLX Securities and provide the following relief:

   a)    Compensatory damages, incidental damages, and consequential damages;

   b)    Costs, interest, and reasonable attorneys' fees;

   c)    Prejudgment and post-judgment interest; and

   d)    Such other relief as the Court deems just and equitable.

### COUNT ELEVEN
### Unjust Enrichment – Against Clinton Group, Derivatively on behalf of Sport-BLX

169.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

34

170.     Based upon the foregoing factual allegations, Defendant Clinton Group has been and continues to be unjustly enriched with respect to their unlawful conduct in connection with their business relationship with Cypress.

171.     Clinton Group was unjustly enriched when it received excessive "rent" payments from Sport-BLX to the detriment of Sport-BLX as those monies were to be used for technology development of Sport-BLX per Cypress' agreement with Hall and De Perio.

172.     Additionally, Clinton Group was unjustly enriched when it received a success fee resulting from the Orix Transaction to the detriment of Sport-BLX and in contravention of Hall's representation that Sport-BLX would retain sole ownership of fees and revenue generated by investment transactions conducted by the Fund.

173.     As a direct and proximate result of Defendant's unjust enrichment, Cypress has suffered and will continue to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX, respectfully requests that this Court enter judgment in its favor and against Clinton Group, and provide the following relief:

   a)     Compensatory damages, incidental damages, and consequential damages;

   b)     Costs, interest, and reasonable attorneys' fees;

   c)     Prejudgment and post-judgment interest; and

   d)     Such other relief as the Court deems just and equitable.

## COUNT TWELVE
### Aiding and Abetting a Breach of Fiduciary Duty – Against Clinton Group, GlassBridge, and S-BLX Securities

174.     Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

175.    Plaintiff repeats and realleges that the Founders owe and owed to Cypress a fiduciary duty of loyalty in connection with their specifically defined roles as officers of the company.

176.    The fiduciary duty of loyalty "'requires an undivided and unselfish loyalty to [Sport-BLX]' and 'demands that there shall be no conflict between duty and self-interest.'" *Khan v. Mediamorph, Inc.*, 2022 WL 1057037, at \*6 (Sup Ct. N.Y. Cnty Apr. 8, 2022) (citing *City of Fort Meyers Gen. Employees' Pension Fund v. Haley*, 235 A.3d 702, 721 (Del. 2020)).

177.    Defendants Hall and De Perio breached that duty by using other entities to circumvent Sport-BLX from realizing profit under the Agreement, instead funneling those profits into other entities over which Defendants Hall and De Perio exercise significant control.

178.    One such entity was Clinton Group, of which George Hall is the sole owner and shareholder.

179.    Defendant Hall is the authorized agent of Defendant Clinton Group as its sole owner shareholder.

180.    Defendant Hall's facilitation of the Orix Transaction is within the scope of his agency relationship with Defendant Clinton Group.

181.    The Orix Transaction breached Defendant Hall's fiduciary duty of loyalty to Sport-BLX because it funneled success fees to Defendant Clinton Group and away from Sport-BLX, directly circumventing the express purpose of Sport-BLX to generate success fees for such transactions.

182.    Under New York law, courts presumptively impute a corporation's authorized agent's knowledge and actions to the corporation where the agent acts within the scope of his authority. *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010).

183.     As Defendant Clinton Group's authorized agent, Defendant Hall's knowledge that the Orix Transaction violated his fiduciary duty of loyalty to Sport-BLX is presumptively imputed to Defendant Clinton Group.

184.     Thus, Defendant Clinton Group knowingly and willfully participated in that breach by accepting success fees from the Orix Transaction through and facilitated by Defendant Hall. *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir.1987).

185.     Defendant Clinton Group knowingly and willfully participated in that breach by accepting rent payments paid by Sport-BLX from Cypress, also facilitated by Defendant Hall.

186.     Defendant GlassBridge was another such entity used by the Founders to circumvent their fiduciary duties owed to Sport-BLX and Cypress. More specifically, GlassBridge knowingly and willingly participated in the Founders' breach of their duty of loyalty to Sport-BLX by purchasing Hall's and De Perio's shares of Sport-BLX at $355 per share, when Hall, De Perio, Strauss and Ruchalski had represented to Cypress that those shares had a fair market value of only $60 per share.

187.     As the authorized agents of Defendant GlassBridge, the Founders' knowledge of their misrepresentation of Sport-BLX's share price to Cypress is presumptively imputed to Defendant GlassBridge.

188.     The Founders further breached their duty of loyalty to Sport-BLX by facilitating the below-market value sale of Sport-BLX's proprietary trading platform to S-BLX Securities, which is owned and controlled by the Founders.

189.     As the authorized agents of S-BLX Securities, the Founders' knowledge that the purchase price of the Sport-BLX proprietary trading platform was well below market value and

constituted a breach of their duty of loyalty to Sport-BLX is presumptively imputed to S-SLX Securities.

190.    Thus, Defendant S-BLX Securities knowingly and willfully participated in the breach by engaging in a transaction with Sport-BLX for the proprietary trading platform at a price far below market value and even below what had been agreed to as a monthly licensing fee.

191.    Clinton Group, GlassBridge, and S-BLX Securities all knew of the Founders' agreement with Cypress as they are all entities owned and/or controlled by the Founders themselves.

192.    As a result of the breach of fiduciary duty, Cypress has suffered, and continues to suffer, irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., respectfully requests that this Court enter judgment in its favor and against Clinton Group, GlassBridge, and S-BLX Securities, jointly and severally, provide the following relief:

a)     Compensatory damages, incidental damages, and consequential damages;

b)     Costs, interest, and reasonable attorneys' fees;

c)     Prejudgment and post-judgment interest; and

d)     Such other relief as the Court deems just and equitable.

## COUNT THIRTEEN
## Breach of Fiduciary Duty – Against Hall and De Perio, Derivatively on behalf of Sport-BLX

193.    Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

194.    The Founders owe and owed a fiduciary duty to Sport-BLX in connection with their specifically defined roles as officers of the company.

195.    By reason of the foregoing unlawful conduct, the Founders have breached their fiduciary duty.

196.    As a direct and proximate result of the Founders' breach of fiduciary duty, Sport-BLX has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX, respectfully requests that this Court enter judgment in its favor and against Defendants George Hall and Joseph De Perio, jointly and severally, and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

## COUNT FOURTEEN
### Breach of Fiduciary Duty – Against Francis Ruchalski and Daniel Strauss Derivatively on behalf of Sport-BLX

197.    Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

198.    As members of the Board of Directors of Sport-BLX, Defendants Ruchalski and Strauss owe and owed a fiduciary duty of care and loyalty to Sport-BLX.

199.    Defendants Ruchalski and Strauss breached that duty by approving and accepting, by way of their respective positions as CFO of Clinton Group, Sport-BLX, and Glassbridge and a member of the Board of Directors of Sport-BLX (Ruchalski) and as a member of the Board of Sport-BLX (Strauss), a success fee resulting from the Orix Transaction—when—via their

positions as members of the Board of Sport-BLX, they knew that fee was diverted from Sport-BLX by GlassBridge.

200.    Defendants Strauss and Ruchalski also approved the sale of Defendant Hall and De Perio's personal shares in Sport-BLX at $355 per share when they had previously represented to Cypress that fair market value for Sport-BLX equity was only $60 per share.

201.    Defendants Strauss and Ruchalski failed to act in the best interest of Sport-BLX and instead engaged in a series of self-serving transactions, as noted above, in which they essentially put the interests of themselves, and those of Hall and De Perio, over the interest of Sport-BLX.

202.    As a direct and proximate result of Defendant Ruchalski's and Defendant Strauss' breaches of their fiduciary duties of loyalty and care, Sport-BLX has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX, respectfully requests that this Court enter judgment in its favor and against Defendants Francis Ruchalski and Daniel Strauss, jointly and severally, and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

## COUNT FIFTEEN
## Breach of Fiduciary Duty – Against Francis Ruchalski and Daniel Strauss

203.    Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

204.    As members of the Board of Directors of Sport-BLX, Defendants Ruchalski and Strauss owe and owed a fiduciary duty of care and loyalty to Sport-BLX.

205.    Defendants Ruchalski and Strauss breached that duty by approving and accepting, by way of their respective positions as CFO of Clinton Group, Sport-BLX, and Glassbridge and a member of the Board of Directors Sport-BLX (Ruchalski) and as a member of the Board of Sport-BLX (Strauss), a success fee resulting from the Orix Transaction—when—via their positions as members of the Board of Sport-BLX, they knew that fee was diverted from Sport-BLX by GlassBridge.

206.    Defendants Strauss and Ruchalski failed to act in the best interest of Sport-BLX and instead engaged in a series of self-serving transactions which ultimately lead to the receipt of the success fee from the Orix Transaction.

207.    As a direct and proximate result of Defendants Ruchalski's and Strauss' breach of fiduciary duty, Sport-BLX has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., respectfully requests that this Court enter judgment in its favor and against Defendants Francis Ruchalski and Daniel Strauss, jointly and severally, and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

**COUNT SIXTEEN**
**Breach of Fiduciary Duty – Against Christopher Johnson and Cesar Baez Derivatively on behalf of Sport-BLX**

208.    Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

209.    Defendants were appointed as members of the Board on November 22, 2019.

210.    Just four days later, on November 26, 2019, the Related Parties Committee was formed.

211.    Defendants Johnson and Baez were appointed to the Related Parties Committee by the Founders, over Salerno, who also applied to be on the Committee.

212.    Upon information and belief, the Related Parties Committee was established after Cypress first began to raise questions as to the excessive "rent" payments made to Clinton Group.

213.    After the Committee was formed, the Committee, consisting of just Johnson and Baez, approved various transactions including the sale of Sport-BLX's proprietary trading platform to S-BLX Securities.

214.    The Related Parties Committee is a subcommittee of Sport-BLX's Board.

215.    As such, Defendants owe and owed a fiduciary duty of care and loyalty to Sport-BLX.

216.    Defendants Johnson and Baez knowingly breached those duties through their positions as members of Sport-BLX's Related Parties Committee by approving transactions that allowed Hall, De Perio, Strauss and Ruchalski to circumvent their obligations to Sport-BLX

under the Agreement, as evidenced by approval of the S-BLX Securities transfer and subsequent transactions.

217.    Additionally, Cypress raised questions to Johnson and Baez about the excessive "rent" payments. Neither Johnson nor Baez took any affirmative steps to discontinue the payments.

218.    As a direct and proximate result of Defendants Baez's and Johnson's breach of fiduciary duty, Sport-BLX has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., respectfully requests that this Court enter judgment in its favor and against Defendant Christopher Johnson and Cesar Baez, and provide the following relief:

a)    Compensatory damages, incidental damages, and consequential damages;

b)    Costs, interest, and reasonable attorneys' fees;

c)    Prejudgment and post-judgment interest; and

d)    Such other relief as the Court deems just and equitable.

**COUNT SEVENTEEN**
**Usurpation of a Corporate Opportunity – Against George Hall and Joseph De Perio**
**Derivatively on behalf of Sport-BLX**

219.    Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

220.    Cypress repeats and realleges that the Founders, through their positions as members of the Board of Directors of Sport-BLX, owe and owed a fiduciary duty to Sport-BLX.

221.    Upon information and belief, S-BLX Securities—formed April 1, 2020, by the Founders—was formed as a means to siphon off money out of Sport-BLX's assets and business opportunities and into entities over which the Founders exercised complete control. Indeed, the

stated business purpose of S-BLX Securities is to engage in substantially the same business as Sport-BLX, that is the securing and monetizing of sports-based assets through their sale on alternative trading platforms.

222.    On June 5, 2020, S-BLX Securities entered into a Subscription Agreement for the use of Sport-BLX proprietary sports-based asset trading platform under which Sport-BLX received a one-time payment of $150,000 and was set to receive a monthly subscription fee of $100,000 during the first year of the Subscription Agreement. Sport-BLX also was set to receive a fee of $75,000 for each new tradable asset listed on the platform. Sport-BLX was authorized under the Agreement to increase the fee amount up to 5% after the first year.

223.    On December 21, 2021, Sport-BLX sold the platform to S-BLX Securities for a flat fee of $225,000. This transaction was organized, executed, and approved by the Founders, Strauss, Ruchalski and Baez.

224.    Upon information and belief, the flat fee was inadequate consideration for the platform as evidenced by the fact that two monthly payments under the Subscription Agreement almost exceeded the total sale price.

225.    The Founders diverted and exploited use of the platform by effectuating a sale of less than fair market value by way of their position on the Board of Sport-BLX to S-BLX Securities, an entity they maintained an interest in.

226.    Sport-BLX maintained a tangible expectancy in the continued use of the code and would have maintained that expectancy had the Founders not used the sale to misappropriate Sport-BLX's business opportunities into entities over which they controlled.

227.    As a direct and proximate result of the usurpation of this corporate opportunity, Sport-BLX has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX, respectfully requests that this Court enter judgment in its favor and against Defendants George Hall and Joseph De Perio, jointly and severally, and provide the following relief:

        a)     Compensatory damages, incidental damages, and consequential damages;

        b)     Costs, interest, and reasonable attorneys' fees;

        c)     Prejudgment and post-judgment interest; and

        d)     Such other relief as the Court deems just and equitable.

### COUNT EIGHTEEN
### Corporate Waste – Against George Hall, Joseph De Perio, Francis Ruchalski, Daniel Strauss, Cesar Baez, and Christopher Johnson, Derivatively on behalf of Sport-BLX

228.    Cypress, derivatively on behalf of Sport-BLX, incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

229.    Sport-BLX received clearly inadequate consideration for its sale of the Platform to S-BLX Securities.

230.    The consideration was so far below fair-market value because the directors facilitating the sale—the Founders, Francis Ruchalski, Daniel Strauss, Cesar Baez and Christopher Johnson—did so to serve an outside interest, their goal of siphoning assets out of Sport-BLX and putting them into entities over which they exercised full control—their way of "going around" Cypress.

231.    As a direct and proximate result of the corporate waste, Sport-BLX has suffered and continues to suffer irreparable harm and damages.

**WHEREFORE**, Cypress Holdings, III, L.P., derivatively on behalf of Sport-BLX respectfully requests that this Court enter judgment in its favor and against Defendants George

Hall, Joseph De Perio, Daniel Strauss, Francis Ruchalski, Cesar Baez and Christopher Johnson, jointly and severally, and provide the following relief:

a)   Compensatory damages, incidental damages, and consequential damages;

b)   Costs, interest, and reasonable attorneys' fees;

c)   Prejudgment and post-judgment interest; and

d)   Such other relief as the Court deems just and equitable.

## COUNT NINETEEN
### Minority Shareholder Oppression – Against George Hall, Joseph De Perio, and GlassBridge

232.   Cypress incorporates by reference each of the allegations set forth in the preceding paragraphs of this Second Amended Complaint as though they are set forth at length herein.

233.   At all relevant times, Plaintiff was a minority shareholder of Sport-BLX.

234.   Notwithstanding Plaintiff's status as a shareholder, the Defendants have engaged in a systematic pattern of oppressive and unfair behavior towards Plaintiff as set forth in detail above and have stated their intention to continue such oppressive and unfair behavior.

235.   Defendants Hall and De Perio have abused their authority as majority shareholders of Sport-BLX and engaged in acts of oppression toward Cypress and otherwise treated Plaintiff unfairly in Cypress' capacity as a shareholder of Sport-BLX as set forth above.

236.   Defendant GlassBridge also abused its authority as a majority shareholder during the time that it held a controlling (50.7%) interest in Sport-BLX.

237.   Cypress had a reasonable expectation as a shareholder to reap the benefits of Sport-BLX as reflected in its business plan and the Agreements.

238.   Defendants defeated these reasonable expectations by engaging in a series of self-interested transactions which essentially stripped Sport-BLX of its assets and transferred Sport-BLX's business to other entities they owned and controlled.

46

239.    As a result, Defendants Hall and De Perio are currently conducting the business that Sport-BLX should have done through S-BLX Securities and Metabilia—entities which they own and control—and have left Sport-BLX a shell. The same was achieved by using the controlling interest the Founders obtained through GlassBridge's purchase of Hall and De Perio's personal Sport-BLX shares.

240.    Upon information and belief, Defendants have so acted in part, but without limitation, to hinder, delay and for the purpose of further concealment of Defendants willful, wrongful, and illegal siphoning of Cypress' assets and entitlements without limitation to other entities over which Defendants exercise exclusive control.

**WHEREFORE**, Cypress Holdings, III, L.P., respectfully requests that this Court enter judgment in its favor and against Defendants Hall, De Perio and GlassBridge, jointly and severally, and provide the following relief:

    a)    Compensatory damages, incidental damages, and consequential damages;

    b)    Costs, interest, and reasonable attorneys' fees;

    c)    Prejudgment and post-judgment interest; and

    d)    Such other relief as the Court deems just and equitable.


Dated: January _____, 2023



**CHIESA, SHAHINIAN & GIANTOMASI, P.C.**

*Attorneys for Plaintiff Cypress Holdings III, L.P.*


_____