# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
212-880-9410

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

September 27, 2023

**BY ECF**
The Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS)

Dear Judge Schofield:

    We represent Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc. ("Sport-BLX Securities"), Clinton Group, Inc. ("Clinton Group"), George Hall, Cesar Baez, and Christopher Johnson (together the "Sport-BLX Parties") in the above-referenced action. We submit this pre-motion letter pursuant to Section III(A)(1) of Your Honor's Individual Rules and Procedures in anticipation of filing a motion pursuant to Fed.R.Civ.P. 56 seeking summary judgment on the claims brought by Cypress Holdings, III, L.P. ("Cypress") against the Sport-BLX Parties in the Second Amended Complaint ("SAC"). Defendant Joseph De Perio joins this letter with respect to the claims against him in the SAC.

    The gravamen of the SAC is that the individual and corporate defendants (in different combinations) did essentially two things wrong: first, they allegedly misled Cypress, a sophisticated investor, into investing into Sport-BLX, a start-up company, through promises to perform certain acts in the future; and, second, they allegedly unfairly deprived Cypress and Sport-BLX of money and assets. As fact discovery has demonstrated, these claims (styled as 11 direct and eight derivative causes of action) lack a basis in fact and law.

    Cypress's claims against the Sport-BLX Parties fall into three groups: (1) alleged fraudulent or negligent misrepresentations about future acts that supposedly induced Cypress to invest in Sport-BLX (the "Misrepresentation Claims") (SAC Counts 1, 3 and 4); (2) claims of depriving Sport-BLX of money or property that are styled as direct claims but actually are derivative in nature because they allege harm to Sport-BLX (SAC Counts 2, 5, 6, 9, 10 and 19); and (3) derivative claims based on harm purportedly done to Sport-BLX which substantially overlap with the allegations in the wrongly-styled direct claims (SAC Counts 7, 11, 12, 13, 16, 17 and 18). Summary judgment should be granted because all of the claims lack merit.

Hon. Lorna G. Schofield
September 27, 2023
Page 2

*Misrepresentation Claims.* Cypress has brought claims for violation of Section 10(b) of the Securities and Exchange Act (Count 1), state law fraudulent inducement (Count 3), and state law negligent misrepresentation (Count 4).  Cypress contends that it was falsely promised that, in the future, (1) its "Founders' Round" investment would exclusively be used for technology development, associated legal expenses, and marketing – not for rent; (2) Hall and De Perio would vote their shares for Michael Salerno (Cypress's manager) to have a seat on the board of directors under terms set forth in a contract; and (3) Sport-BLX would serve as the manager of a fund that would invest in sports-related assets, from which Sport-BLX would receive substantial fee revenue.

Cypress's Section 10(b) claim is untimely.  A plaintiff must bring this claim "not later than the earlier of (i) 2 years after the discovery of the facts constituting the violation; or (ii) 5 years after such violation." 28 U.S.C. § 1658(b).  The two-year statute of limitations begins to run when "a reasonably diligent plaintiff would have discovered the facts constituting the violation."  *Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-CV-7436 (LJL), 2022 WL 3100562, at *5 (S.D.N.Y. Aug. 3, 2022).  Here, Cypress was aware of its claims by December 2019 at the latest.  Throughout 2019, Cypress alleged misrepresentations by Hall, De Perio, and others.  In June 2019, a lawyer for Cypress sent a demand letter alleging self-dealing and dishonesty regarding a claimed sports-related fund.  Because Cypress was aware of its claims by December 2019, the Section 10(b) cause of action, filed more than two years later (in January 2022), is untimely.

Turning to the merits, Cypress has failed to put forward a cognizable claim of damages, and cannot establish causation between the alleged misrepresentations and damages.  Cypress does not seek rescission and has no damages expert.  In its response to Sport-BLX's damages interrogatory, Cypress contends (without legal support) that out-of-pocket damages for the alleged misrepresentations consist of "the difference between the value of the consideration it paid for its Sport-BLX stock ($1,000,000.00) *and the value of that stock at the time of trial*."  (Emphasis added.)  This theory fails to account for the myriad intervening acts unrelated to the alleged misrepresentations, and the theory is contrary to the established measure of out-of-pocket damages:  "the difference between the price paid for the security and its true value absent the fraud *on the date of the transaction*."  *Panos v. Island Gem Enterprises, Ltd., N.V.*, 880 F. Supp. 169, 176 (S.D.N.Y. 1995) (emphasis added).  Cypress has not put forward any basis on which to conclude that the value of Sport-BLX at the time of purchase was less than what Cypress paid as a result of the alleged misrepresentations.

Next, Cypress cannot establish *scienter*.  Because the alleged misrepresentations relate to purported promises to perform in the future, Cypress must come forward with evidence that "at the time the promise was made, the speaker had no intention of keeping it." *MicroStrategy Inc. v. Acacia Rsch. Corp.*, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010).  Fact discovery was complete in July, and no evidence has been (or can be) put forward to establish that, *at the time the alleged misrepresentations were made*, Hall, De Perio or Sport-BLX did not intend to perform the alleged promised acts.  No contemporaneous emails, no testimony, and no other form of evidence

2

Hon. Lorna G. Schofield
September 27, 2023
Page 3

establishes or even suggests such intent – not even the hours of recordings secretly made by Salerno beginning three days after Cypress's investment.[1]

      Cypress's misrepresentation claims are also defeated by a contract integration clause. In the Stock Purchase Agreements ("SPAs"), signed by Cypress in February 2019, which Cypress negotiated with the aid of counsel, Cypress agreed that any representations "regarding the subject matter of this Agreement" were superseded by the SPAs."[2] The SPAs contain seller representations that Cypress reviewed with its counsel, modified, and then expanded during negotiations, but Cypress did not include the representations it now claims to have relied upon. Under Delaware and federal law, an integration clause that clearly disclaims reliance and was negotiated by counsel for sophisticated parties, like the clause and parties here, precludes a claim of reliance on purported extra-contractual misrepresentations.[3] *See, e.g., MidCap Funding X Tr. v. Graebel Companies, Inc.*, No. CV 2018-0312-MTZ, 2020 WL 2095899, at *19 (Del. Ch. Apr. 30, 2020) ("Delaware's enforcement of clear anti-reliance provisions is implemented in a long line of cases"); *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 120 (S.D.N.Y. 2010) (plaintiff's reliance unreasonable *as a matter of law* where clear integration clause was negotiated between sophisticated parties). Simply put, "a party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim." *Black Horse Cap., LP v. Xstelos Holdings, Inc.*, No. CIV.A. 8642-VCP, 2014 WL 5025926, at *24 (Del. Ch. Sept. 30, 2014).[4]

      Finally, Cypress cannot establish the representations at issue were false:

- *Sport-BLX board seat*: Hall and De Perio abided by the terms of the agreement with Cypress; they voted their shares in favor of Salerno's board position. No false statement was made.[5]

---

[1] "Negligent misrepresentation, however, 'cannot lie where the underlying representations take the form of promises [to perform in the future]' because promissory fraud requires an intentional or knowing act. That is because the promise to honor an agreement is only a misrepresentation if the promisor knows at the time of the promise that he will ultimately breach; such a misrepresentation cannot occur unknowingly or negligently." *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, at *14 (Del. Ch. Dec. 8, 2009). Cypress's negligent misrepresentation claim (Count 4) is therefore foreclosed.

[2] The integration clause of the SPAs reads as follows: "This Agreement, including all exhibits hereto, represents the entire agreement between the parties with respect to the purchase of the Shares by the Purchaser and **supersedes and replaces any and all prior written or oral agreements regarding the subject matter of this Agreement** including, but not limited to, any representations made during any interviews, relocation discussions or negotiations whether written or oral." (Emphasis added.)

[3] Delaware law governs the state law claims. Sport-BLX is a Delaware corporation, and Sport-BLX and Cypress chose Delaware law to govern the parties' relationship in the SPAs' choice of law provision.

[4] Because the alleged misrepresentations all relate to promises to perform in the future, Delaware law does not require "anti-reliance language," and even a basic integration clause without such language is "sufficient to bar a fraud claim based on expressions of future intent or future promises." *S'holder Representative Servs. LLC v. Albertsons Companies, Inc.*, No. CV 2020-0710-JRS, 2021 WL 2311455, at *12 (Del. Ch. June 7, 2021).

[5] According to the SAC, Hall and De Perio began a campaign to deprive Salerno of a board seat only *after* Cypress invested in February 2019 and started to complain about management's actions. *See* SAC ¶¶ 66, 67, 78. These allegations further undermine any claim of *scienter* or falsity.

3

- *Alleged sports-related fund*: the idea of a fund was no more than a concept or "prospect," accompanied by multiple disclaimers; and Sport-BLX, Hall, and De Perio never raised or managed such a fund. Salerno acknowledged in his deposition testimony that he knew creation of a fund was not certain and certainly not guaranteed. Forward-looking, at best aspirational, statements are not actionable for fraud. *See In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998); *Mooney v. E. I. du Pont de Nemours & Co.*, No. CV N17C-01-374 AML, 2017 WL 5713308, at *6 (Del. Super. Ct. Nov. 28, 2017), *aff'd*, 192 A.3d 557 (Del. 2018).

- *Use of Founders' Round money*: the document on which Salerno purports to rely (a set of FAQs given to him before investing) stated that "the proceeds raised through the currently contemplated Founders' Round . . . will [be] used solely for technology development, associated legal expenses and marketing." On March 12, 2019, Cypress invested $500,000 in the Founders' Round and $500,000 at a post-Founders' Round price. Consistent with the statement in the FAQs, through March 12 Sport-BLX spent money only on technology, marketing, and legal expenses; after March 12, as non-Founders' Round money was raised (from Cypress and others), money was spent on varied expenses, including technology, marketing and legal expenses. By June 30, 2019, Sport-BLX had spent in excess of the amount of the Founders' Round ($2 million) on technology, legal and marketing expenses, and more thereafter. In its damages interrogatory responses, Cypress now contends that in 2019 Sport-BLX spent more than $2 million on technology alone – flatly contradicting Cypress's claims about a misuse of Founders' Round money. The representation was not false.

**Other Direct Claims.** Cypress has brought six claims against the Sport-BLX Parties that rest on alleged injury to Cypress as shareholder of Sport-BLX (SAC Counts 2, 5, 6, 9, 10, 19). Though styled as direct claims, these counts are actually derivative claims in disguise because they allege, and depend on, financial injury to Sport-BLX in the first instance; the only alleged injuries to Cypress are by virtue of alleged injuries to the company. *See, e.g.*, SAC Count Six (Unjust Enrichment) ¶145 ("[Hall and De Perio] were unjustly enriched to Cypress's detriment when they purposefully created entities and *used them to siphon money and business opportunities out of Sport-BLX*") (emphasis added).[6]

Under Delaware law, to determine whether a claim is direct or derivative, the relevant inquiry focuses on "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del.

---

[6] In Count Two, Cypress alleges that Salerno lost a board seat due to Hall's and De Perio's breach of an implied covenant of good faith and fair dealing in December 2019 (when they sold some of their shares to defendant GlassBridge). This claim, resting on a February 2019 agreement, is the only arguably direct claim in this group. The claim lacks merit. First, Cypress has not alleged that Hall or De Perio breached the contract which governs Salerno's right to a board seat. Because an "implied covenant will not infer language that contradicts a clear exercise of an express contractual right," this claim fails. *Bos. Consulting Grp., Inc. v. GameStop Corp.*, No. CV 22-363-CJB, 2023 WL 2683629, at *13 (D. Del. Mar. 29, 2023). Second, Hall and De Perio did not violate Cypress's or Salerno's legal rights; they voted their shares for Salerno as director. Insofar as Hall and De Perio sold some of their shares in December 2019, and GlassBridge did not support Salerno as board member, that was clearly contemplated by the contractual provision in question, which Cypress itself wrote and added to the agreement with the aid of experienced counsel. In any event, Cypress cannot establish damages from its loss of a board seat.

Hon. Lorna G. Schofield
September 27, 2023
Page 5

2004). For Cypress's so-called direct claims, Cypress has not alleged an injury that Cypress suffered that is separate and apart from the alleged injury to Sport-BLX and its shareholders. This conclusion is confirmed by Cypress recycling the same basic allegations (*e.g.*, excessive rent charges) in both its derivative claims (discussed below) and its self-styled direct claims. In some instances, Cypress did little more than change the caption from direct to derivative. *Compare* SAC Count Six (Unjust Enrichment) *with* SAC Count Seven (Derivative Unjust Enrichment). The wrongly styled direct claims lack merit and should be dismissed.[7]

***Derivative Claims.*** The derivative claims, like the wrongly styled direct claims, are based on the following four contentions, none of which has merit.[8]

*First*, Cypress claims that a transaction between an entity named Orix and GlassBridge resulted in a success fee going to Clinton Group that should have gone to Sport-BLX.[9] *See* SAC Direct Counts 9, 15; Derivative Counts 11, 12 and 14. The fee in question related to consulting work that Clinton Group did for GlassBridge pursuant to an agreement entirely separate from Sport-BLX. The fee had nothing to do with sports or Sport-BLX, and the record is devoid of evidence supporting Cypress's contentions. Cypress seems to have abandoned the claim as it does not include the Clinton Group fee as a basis for damages in its response to Sport-BLX's damages interrogatory.

*Second*, Cypress claims that Hall and De Perio "siphon[ed] off" Sport-BLX's assets to benefit a newly founded entity, I Got It Holdings Corp. d/b/a Metabilia ("Metabilia"), which Cypress claimed was engaged in the exact same business as Sport-BLX. *See* SAC Direct Counts 10, 19.[10] Like the claim relating to the fee paid to Clinton Group, this claim also appears to have been abandoned by Cypress as it does not include such "siphon[ing]" as a basis for damages in Cypress's damages interrogatory response. In all events, the claim is meritless: as reflected in voluminous documentation provided to Cypress's counsel prior to the filing of the SAC, Metabilia developed its business plan and the software that it is using long before Sport-BLX was conceived of by Hall and De Perio; and the two companies are not in the same business or otherwise competitors. Nor does the record have any evidence supporting Cypress's Metabilia-related contentions.

---

[7] Count Six, in which Cypress makes a direct claim of unjust enrichment against Hall, De Perio, and others, is legally defective for a separate reason: the relationship between Sport-BLX and Cypress is governed by three contracts; in fact, several of Cypress's claims expressly depend on the existence of valid contracts. *See, e.g.*, Count Two, Breach of the Covenant of Good Faith and Fair Dealing. When, as here, valid contracts govern the parties' relationship, no unjust enrichment claim may lie. *See, e.g., Bakerman v. Sidney Frank Importing Co.*, No. CIV.A. 1844-N, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006) ("When the complaint alleges an express, enforceable contract that controls the parties' relationship, however, a claim for unjust enrichment will be dismissed").

[8] The derivative claims should also be dismissed because Cypress is not a fair and adequate shareholder representative, as explained in our Rule 23.1 pre-motion conference letter.

[9] The Clinton Group was a registered investment adviser owned by George Hall.

[10] Cypress's derivative counts do not allege Metabilia-related claims, but some of these counts are so vaguely worded that Cypress might intend to include such claims. *See* SAC Count 7 (unjust enrichment) and Count 13 (breach of fiduciary duty).

Hon. Lorna G. Schofield
September 27, 2023
Page 6

*Third*, in the SAC, Cypress claims that Sport-BLX made excessive rent payments to Clinton Group, and that the excess rent deprived Sport-BLX of money that should have been spent on technology. *See* SAC Direct Counts 1, 3, 4, and 9; Derivative Counts 11, 12, and 16. Yet Cypress has abandoned these claims as well. In its damages interrogatory response, Cypress no longer seeks damages for excessive rent (or for diverting funds from technology to rent). Rather, Cypress makes new allegations, not in the SAC, that the rent paid to Clinton Group was improper *in toto* because Clinton Group's lease with its landlord, World Gold, forbade subletting without World Gold's consent, and that Clinton Group stopped paying rent to World Gold while simultaneously collecting rent from Sport-BLX.

In addition to not having been properly alleged, this new claim fails for multiple reasons. One, under black-letter law, because Cypress is not a party to the overlease between Clinton Group and World Gold, Cypress has no standing to insert itself into the landlord-tenant relationship; only World Gold may claim that a sublet relationship was improper and seek damages therefrom. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir 2009). Two, Clinton Group allowed Sport-BLX to use some of its space, but Clinton Group did not have a sublease with Sport-BLX. Three, Clinton did not stop paying rent to World Gold; rent was paid either directly out of Clinton Group's accounts or from the security deposit Clinton Group provided when entering the lease. Four, the overlease between World Gold and Clinton Group permitted Clinton Group to have Sport-BLX make use of its space.[11]

*Fourth*, Cypress claims that Sport-BLX sold the technology platform to Sport-BLX Securities, an affiliated entity, in late 2021 for below market value, and that this harmed Sport-BLX.[12] *See* SAC Direct Counts 6, 10 and 19; Derivative Counts 7, 12, 16, 17 and 18. This claim fails for two principal reasons. One, in its damages interrogatory response, Cypress contends that damages should be based on the difference between the cost of building the technology in 2019 and the sale price in late 2021. Yet Cypress has failed to produce any expert testimony supporting this computation of inadequate consideration and injury, and this approach is contrary to the established method of valuing a product's fair market value: "what a willing buyer would pay in cash to a willing seller" on the open market. *United States v. 215.7 Acres of Land, More or Less, Situate in Kent Cnty., State of Del.*, 719 F. Supp. 273, 276 (D. Del. 1989). Moreover, Cypress's damage claim is premised on an incorrect statement of the consideration that was given to Sport-BLX in exchange for the technology. It was $225,000, *plus the cancellation of $1.35 million in debt owed* by Sport-BLX. The record is devoid of evidence that the technology was worth more than the consideration given for it in late 2021; and the Sport-BLX Parties' expert (Dr. Eslamimehr) has determined that it was sold for fair market value.[13]

---

[11] Though Cypress no longer seeks damages for "excessive" rent, we note that the record does not support that claim in the SAC. The money paid by Sport-BLX for use of Clinton Group's space was reasonable and consistent with the business model created by a third-party consultant (and reviewed by Cypress before investing). Nor is there evidence that money was spent on rent to the detriment of technology.

[12] Sport-BLX Securities was founded in 2020 to serve as the broker-dealer that the founders originally envisioned but were prevented from realizing because of Cypress's refusal to provide beneficial owner information in 2019. Sport-BLX Securities licensed technology from Sport-BLX, Inc. After paying substantial fees to Sport-BLX Inc., Sport-BLX Securities bought the platform technology in December 2021.

[13] A number of the derivative claims fail for other reasons. For example, several of the claims allege no particular facts at all, and simply rely wholesale on prior allegations, *see, e.g.*, Counts 5, 7, and 13, whereas others refer to allegations that have

Hon. Lorna G. Schofield
September 27, 2023
Page 7

                                                 Respectfully submitted,

                                                 */s/ Jonathan S. Sack*

                                               Jonathan S. Sack

cc: Counsel of record (by ECF)

---

turned out to be completely unfounded through discovery, *see, e.g.*, Count 16 (claiming that Johnson and Baez wrongly approved rent payments when they joined the board only very shortly before rent payments ceased).