# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
212-880-9410

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

October 5, 2023

**BY ECF**
The Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS)

Dear Judge Schofield:

      We represent Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc. ("Sport-BLX Securities"), Clinton Group, Inc. ("Clinton Group"), George Hall, Cesar Baez, and Christopher Johnson (collectively, the "Sport-BLX Parties") in the above-referenced action. We submit this pre-motion letter pursuant to Section III(A)(1) of Your Honor's Individual Rules and Procedures in opposition to Cypress Holdings, III, L.P.'s ("Cypress") pre-motion conference letter seeking leave to file a motion for partial summary judgment on certain claims in the Second Amended Complaint ("SAC"). Defendant Joseph De Perio joins this letter.

      Cypress's arguments for partial summary judgment are specious. Cypress mischaracterizes the record, as described below, and fails to account for the contracts that govern the parties' relationship. Based on incorrect facts, Cypress tries to conjure up breaches of non-existent fiduciary duties, contrary to controlling law. Cypress also persists in failing to acknowledge impermissible conflicts between its direct and derivative claims. *See* ECF No. 141.[1]

      ***Counts Five, Thirteen, Sixteen – Breach of Fiduciary Duty***. Only now has Cypress stated the purported basis for its direct and derivative breach of fiduciary duty claims against Hall and De Perio (Counts Five and Thirteen), as these Counts in the SAC merely incorporate by reference over 100 earlier paragraphs. *See* ECF 140 n.13. For these Counts, Cypress contends that Hall and De Perio misused Sport-BLX resources by (1) causing Sport-BLX to enter into a "lease agreement" with the Clinton Group (a registered investment advisor owned by Hall) without advising Cypress that the sublease "was

---

[1] The Sport-BLX Parties intend to move for summary judgment on each of the claims discussed herein. *See* ECF No. 140.

Hon. Lorna G. Schofield
October 5, 2023
Page 2

unlawful or that Clinton Group had become delinquent on and stopped making its rental payments on its lease"; and (2) devising a plan to circumvent their obligation to provide Cypress with a board seat pursuant to a contractual "Side Agreement" between Sport-BLX and Cypress.

**Rent.** The present contention confirms that Cypress has abandoned the claims about rent in the SAC (*i.e.*, that rent was excessive, and that it took away from technology spending, *see* SAC ¶¶55-60). *See* ECF No. 140 at 6. Cypress's latest theory is legally and factually unsound. *First*, contrary to Cypress's factual assertion, Clinton Group *did not enter into a sublease with Sport-BLX*. Sport-BLX was incubated within Clinton Group and allowed to use a substantial portion of Clinton Group's office space in return for payments to Clinton Group disclosed to Cypress prior to its investment. *Second*, Clinton Group did not stop paying rent, or violate the overlease with its landlord by allowing Sport-BLX to make use of its space. The overlease permitted Clinton Group to let an affiliate use its space. Clinton Group's relationship with its landlord does not, under any circumstances, amount to a breach of fiduciary duties to Sport-BLX shareholders, and, in all events, Cypress lacks standing to make a claim based on a contract to which it was not a party. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir 2009). *Third*, while Cypress tries to twist this into a direct claim (based on a purported failure to disclose information to Cypress), it is really derivative in nature as it alleges misconduct by company officers supposedly harmful to the company and all shareholders. Because the claim is not based on a right unique to Cypress, it is not a proper basis for the direct claim in Count Five.

**Board Seat.** In its Side Agreement with Sport-BLX, Cypress added a provision under which Hall and De Perio agreed to vote their shares in favor of a board seat for Salerno under certain circumstances. Hall and De Perio voted their shares as required, and Cypress has not claimed a breach of contract. Realizing it has no contract claim, Cypress has attempted to manufacture a breach of fiduciary duty claim, but that attempt fails. *First*, such a claim is contrary to controlling Delaware law, which holds that a fiduciary duty claim is not viable when it is based on a right that is "expressly addressed by contract." *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010). *Second*, Cypress has failed to assert, much less establish, any viable theory of damages proximately caused by loss of a board seat. *Third*, Cypress's theory rests on an incorrect and disputed view of the facts. Cypress contends that Hall and De Perio sold their shares to GlassBridge for the purpose of depriving Salerno of a board seat. That theory is contradicted by evidence showing that Hall and De Perio, who were permitted to sell their shares to GlassBridge, sold their shares to mitigate the negative effect of a demand note held by GlassBridge, and because a larger GlassBridge stake in Sport-BLX had other benefits for Sport-BLX having nothing to do with Salerno's board seat. To the extent GlassBridge acquired voting control of Sport-BLX shares and decided to vote for a slate of directors that did not include Salerno, GlassBridge's actions were entirely reasonable and appropriate, particularly given that Salerno had refused to vote for GlassBridge representatives serving on the Sport-BLX board.[2]

**Baez and Johnson.** Count Sixteen alleges breach of fiduciary duty against Johnson and Baez, two members of Sport-BLX's Related Party Transaction Committee ("RPTC"), for "approv[ing]" the rent payments discussed above. Johnson and Baez, however, became members of the Sport-BLX board and the RPTC just weeks before Sport-BLX ceased using Clinton Group's space; they did not consider –

---

[2] Cypress refers to a "secret" spreadsheet regarding the number of shares needed to vote Salerno off the board. The document was not a secret and does not support Cypress's claims.

let alone approve – any rent payments to Clinton Group before the issue was mooted entirely only a few weeks later.[3] Cypress's motion should be denied as to this claim as well.

*Count Nineteen – Minority Shareholder Oppression.* This count rests on the following allegations: (1) improper rent payments (addressed above); (2) a claimed breach of the stock purchase agreements' ("SPAs") "tag-along" provision; (3) loss of a board seat (addressed above); and (4) the sale of Sport-BLX's trading platform for allegedly below fair market value to Sport-BLX Securities in 2021.[4] This claim also fails.

*First*, Delaware does not recognize a cause of action for minority shareholder oppression. *See Nightingale & Assocs., LLC v. Hopkins*, No. CIV. 07-4239 (FSH), 2008 WL 4848765, at *6 (D.N.J. Nov. 5, 2008). Sport-BLX is a Delaware corporation, the SPAs between Cypress and Sport-BLX are expressly governed by Delaware law, and Cypress's contentions go to the fiduciary obligations of officers and directors of Sport-BLX. Under these circumstances, Delaware law governs Cypress's oppression claim and compels dismissal. *Second*, though styled a direct claim, Count Nineteen clearly asserts derivative claims insofar as it alleges Sport-BLX made improper rent payments and sold its technology at below fair market value; the harm, if any, would be to Sport-BLX in the first instance, not Cypress. *Third*, as to Cypress's contractual "tag-along" rights, the SPAs are clear that the tag-along provision is triggered only in the event Hall and De Perio sold shares of Sport-BLX's common stock representing *more than 50% of the aggregate number of shares outstanding*. It is undisputed that no such transaction occurred, and thus the contract was not breached. Cypress (once again) attempts to manufacture a breach of fiduciary duty claim based on a contractual provision that it drafted, and which was not violated – but Delaware law forecloses such a claim. *See Nemec*, 991 A.2d at 1129.[5] *Fourth*, regarding the technology transfer, summary judgment cannot properly be granted because substantial evidence demonstrates that the technology was sold for fair market value. *See* ECF No. 140 at 6.

*Count Two – Covenant of Good Faith and Fair Dealing.* This claim rests on Salerno's loss of a board seat and claimed breach of the "tag-along" provision. It fails because of Cypress's incorrect and disputed view of the facts, as described above, and because the implied covenant of good faith and fair dealing "will not infer language that contradicts a clear exercise of an express contractual right." *Bos. Consulting Grp., Inc. v. GameStop Corp.*, No. CV 22-363-CJB, 2023 WL 2683629, at *13 (D. Del. Mar. 29, 2023). Here, the SPAs specifically contemplate that Hall and De Perio may sell their Sport-BLX shares notwithstanding the tag-along provision that Cypress added to the SPAs. Nor can Cypress prove any damages from its loss of a board seat. *See* ECF 140 n.6.

---

[3] The SAC also claims that Baez and Johnson wrongly approved the technology sale to Sport-BLX Securities for below fair market value. This claim too is factually wrong: Baez left the Sport-BLX Board before the transaction was decided upon; Johnson, for his part, reviewed the transaction and found it to be beneficial for Sport-BLX given the company's inability to support and otherwise monetize the technology platform.

[4] The tag-along rights provision allowed Cypress to participate in the founders' sale of their shares, under specific circumstances, and pursuant to a formula, set forth in the Side Agreement.

[5] Cypress references a conversation at a board meeting in which Hall talked in passing about other shareholders taking part in a sale of the company if he sold all of his shares. That was a gratuitous comment, without any consideration exchanged with Cypress or any other shareholder, and not relevant to the subsequent transaction with GlassBridge. When asked at his deposition how he relied on Hall's purported statement to his detriment, Salerno could provide nothing of substance.

Hon. Lorna G. Schofield
October 5, 2023
Page 4

                                            Respectfully submitted,

                                            */s/ Jonathan S. Sack*

                                            Jonathan S. Sack

cc: Counsel of record (by ECF)