UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX,
INC.,

　　　　　　　　　　Plaintiff,

　　　v.

GEORGE HALL, JOSEPH DE PERIO,
DANIEL STRAUSS, FRANCIS
RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX,
INC., SPORT-BLX SECURITIES, INC.,
CLINTON GROUP INC., and
GLASSBRIDGE ENTERPRISES, INC.,

　　　　　　　　　　Defendants.

——————————————————————— x

Civil Action No. 1:22-cv-1243-LGS

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS DERIVATIVE CLAIMS PURSUANT
## TO FEDERAL RULE OF CIVIL PROCEDURE 23.1

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600
(212) 856-9494 (fax)

*Attorneys for Defendants Sport-BLX, Inc.,
Sport-BLX Securities, Inc., Clinton Group,
Inc., George Hall, Cesar Baez, and
Christopher Johnson*

COLE SCHOTZ P.C.
25 Main Street
Court Plaza North
Hackensack, New Jersey 07601
(201) 525-6305
(201) 678-6305 (fax)

*Attorneys for Defendant Joseph De Perio*

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendants GlassBridge
Enterprises, Inc., Daniel Strauss,
and Francis Ruchalski*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................ 3

   I.   Sport-BLX's Formation and Inability to Obtain a Broker-Dealer License ...................... 3

   II.  Cypress's Lawsuit ................................................................................................ 6

   III. Sport-BLX's Capital Structure ........................................................................... 9

ARGUMENT ...................................................................................................................... 9

   I.   The Governing Legal Test ...................................................................................... 9

   II.  Cypress Has Impermissible Conflicts of Interest ...................................................... 11

     A.  Cypress May Not Act on Sport-BLX's Behalf and Simultaneously Seek Damages from the Company ........................................................................................... 11

     B.  Cypress May Not Pursue the Same Damages Through Its Direct and Derivative Claims ................................................................................................................ 13

     C.  Cypress's Requested Relief Disqualifies It from Serving as a Shareholder Representative ................................................................................................... 16

   III. Cypress Is an Inadequate Shareholder Representative Under the Multi-Factor Balancing Test ................................................................................................................... 17

     A.  Economic antagonisms between the representative and class ...................................... 17

     B.  Other litigation pending between the plaintiff and the defendants ................................ 18

     C.  The relative magnitude of the plaintiff's personal interest in matters beyond the scope of the derivative action, as compared to its interest in the derivative action ................ 20

     D.  The plaintiff's vindictiveness towards the defendants .................................................. 22

     E.  The degree of support the plaintiff receives from the other shareholders that he or she purports to represent.................................................................................................. 23

CONCLUSION.................................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Argiropoulos v. Kopp,*
   2007 WL 954747 (D. Md. Mar. 26, 2007) ........................................................................ 14, 16

*Baliga on behalf of Link Motion Inc. v. Link Motion Inc.,*
   2021 WL 2137613 (S.D.N.Y. May 26, 2021) .......................................................................... 15

*Blum v. Morgan Guaranty Tr. Co of N.Y.,*
   539 F.2d 1388 (5th Cir. 1976) ........................................................................................ 18, 19

*Brickman v. Tyco Toys, Inc.,*
   731 F. Supp. 101 (S.D.N.Y. 1990) ......................................................................................... 12

*Bryant v. Mattel, Inc.,*
   2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ......................................................................... 20

*Caan v. Kane-Miller Corp.,*
   1974 U.S. Dist. LEXIS 13019 (S.D.N.Y. Dec. 18, 1974) ...................................................... 12

*Cohen v. Beneficial Indus. Loan Corp.,*
   337 U.S. 541 (1949) ................................................................................................................ 9

*Eshelman v. Orthoclear Holdings, Inc.,*
   2009 WL 506864 (N.D. Cal. Feb. 27, 2009) ......................................................................... 16

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,*
   2010 WL 5248815 (S.D.N.Y. Dec. 14, 2010) ....................................................................... 12

*JFURTI, LLC v. Singal*
   2018 WL 6332907 (S.D.N.Y. Nov. 12, 2018) .................................................................. 10, 21

*Kamerman v. Steinberg,*
   113 F.R.D. 511 (S.D.N.Y. 1986) ........................................................................................... 15

*Meimaris v. Hudner,*
   1995 WL 413164 (S.D.N.Y. 1995) ........................................................................................ 23

*Petersen v. Federated Dev. Co.,*
   416 F. Supp. 466 (S.D.N.Y. 1976) ........................................................................................ 12

*Priestley v. Comrie,*
   2007 WL 4208592 (S.D.N.Y. Nov. 27, 2007) ....................................................................... 11

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012) ................................................................. 11

*Rothenberg v. Sec. Mgmt. Co.*,
  667 F.2d 958 (11th Cir. 1982) ...................................................................... 18, 19

*Ryan v. Aetna Life Ins. Co.*,
  765 F. Supp. 133 (S.D.N.Y. 1991) ................................................................. 10, 12

*ShoreGood Water Co., Inc. v. U.S. Bottling Co.*,
  2009 WL 2461689 (D. Md. Aug. 10, 2009) ........................................................ 21

*Smith v. Ayres*,
  977 F.3d (5th Cir. 1992) ............................................................................. 22, 23

*St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*,
  2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) ........................................................ 10

*Tatintsian v. Vorotyntsev*,
  2018 WL 2324998 (S.D.N.Y. May 22, 2018) ...................................................... 15

*Tuscano v. Tuscano*,
  403 F. Supp. 2d 214 (E.D.N.Y. 2005) ............................................................... 12

*Wall St. Sys., Inc. v. Lemence*,
  2005 WL 292744 (S.D.N.Y. Feb. 8, 2005) .................................................... 10, 12

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
  2013 WL 12203024 (C.D. Cal. Apr. 4, 2013) ................................... 14, 19, 20, 21

## **Rules**

Fed. R. Civ. P. 23.1(a) ......................................................................................... 9

## **Other Authority**

7C Wright & Miller, Federal Practice and Procedure § 1833 (3d ed. Updated Apr. 2023) ......... 17

Defendants Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc. ("Sport-BLX Securities"), Clinton Group, Inc. ("Clinton Group"), George Hall, Cesar Baez, and Christopher Johnson (collectively, the "Sport-BLX Parties"), together with Defendant GlassBridge Enterprises, Inc. ("GlassBridge"), Francis Ruchalski, and Daniel Strauss (collectively, the "GlassBridge Parties"), and Joseph De Perio (all together, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the derivative claims in plaintiff Cypress Holdings, III, L.P.'s ("Cypress") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 23.1 ("Rule 23.1").

## PRELIMINARY STATEMENT

In 2019 Cypress invested $1 million and became a minority shareholder of Sport-BLX. Cypress now asserts 19 causes of action based on that investment. Eight causes of action, brought against nine defendants, are styled as derivative claims brought on behalf of Sport-BLX. The remaining 11 causes of action are direct claims which seek damages for Cypress — not for Sport-BLX or any other shareholders. Cypress's derivative claims should be dismissed because they suffer from pervasive and impermissible conflicts of interest, and because Cypress does not adequately represent other minority shareholders under Rule 23.1.

Cypress's interest conflicts with the interests of similarly situated shareholders in three distinct and compelling ways. First, in four of its direct claims, Cypress seeks to recover money from Sport-BLX and is thus adverse to Sport-BLX, but in its derivative claims Cypress purports to be acting on behalf of and for the benefit of Sport-BLX. Cypress thus seeks to harm the very company it claims it wants to benefit. Courts have consistently dismissed derivative claims that suffer from this fundamental conflict of interest.

Second, Cypress's overlapping direct and derivative claims seek damages for the same alleged instances of misconduct. Cypress's direct and derivative claims thus put Cypress in

direct competition with Sport-BLX for the same alleged damages.  A given sum of damages can be recovered only once, yet Cypress argues that it is entitled to these damages both for itself and for Sport-BLX.  That is an inherent contradiction and an impermissible conflict that Cypress cannot resolve or just ignore.

Third, for one of its direct claims, Count 19 (shareholder oppression), Cypress seeks a buyout of its Sport-BLX stock, which creates an impermissible conflict of interest because a proper shareholder representative must always have standing to pursue derivative claims. Because a grant of Cypress's requested relief would cause Cypress to lose its status as a Sport-BLX shareholder, Cypress would lose standing to sue in a derivative capacity.

Lastly, Cypress cannot satisfy the test applied in this District to determine whether a shareholder "fairly and adequately" represents similarly situated shareholders under Rule 23.1. Cypress does not meet any of the five criteria considered by courts.  On top of the fundamental "economic antagonisms" already described, Cypress is not an adequate representative of other minority shareholders in light of Sport-BLX's own claims of fraud and breach of fiduciary duty against Cypress and its managing partner Michael Salerno — which puts Cypress in a totally different position from other minority shareholders — and given the absence of economic value in the derivative claims because of Sport-BLX's capital structure and substantial outstanding liabilities.

In short, Cypress is pursuing derivative claims not because they have genuine economic value to other minority shareholders but rather to serve Cypress's separate economic and litigation interests, as further confirmed by various acts of vindictiveness toward the Defendants, and the utter lack of support from any other Sport-BLX shareholder for this wasteful and improvident litigation.

For these reasons, Cypress's eight derivative claims should be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

I.   **Sport-BLX's Formation and Inability to Obtain a Broker-Dealer License**

Sport-BLX, a Delaware company, was formed in 2018 to pursue a unique business idea. Founded by George Hall and Joseph De Perio, financial industry professionals, Sport-BLX would be a FINRA-registered online marketplace for sports-related securitized assets.  It would allow investors to own tradeable units in, for example, the revenue streams from professional athlete contracts, professional sports teams, and other sports assets.  Sport-BLX raised money from equity investors in late 2018 and 2019.  *See Sport-BLX, Inc. v. Salerno*, et al., No. 1:22-cv-08111 (LGS), ECF No. 40, Sport-BLX Amended Complaint (hereafter "Sport-BLX AC"), ¶¶2, 20–21.

In early 2019, Michael Salerno, a sophisticated investor, expressed interest in investing in Sport-BLX.  *Id.* ¶22.  He personally reviewed materials in a data room provided by Sport-BLX. *Id.* ¶23.  Salerno (per his request) invested $500,000 at a favorable "Founders' Round" price of $95 per share, with another $500,000 to be invested at a price of about $200 per share.  *Id.* ¶26. Salerno wished to join Sport-BLX's board of directors, and, given the amount of his investment, Hall and De Perio agreed to vote their shares for him to serve as a director pursuant to a side agreement (the "Side Agreement") executed together with two Stock Purchase Agreements (the "SPAs").  *Id.* ¶27.

In February 2019, multiple drafts of the SPAs negotiated over several weeks by Salerno (and his counsel) stated that the purchaser would be "Michael M. Salerno."  *See, e.g.*, Sack Declaration ("Dec."), Exhibit ("Ex.") A at SPORTBLX0148257.  However, about one hour before signing the agreements and agreeing to invest $1 million, Salerno wrote that his lawyer had not "update[d]" the agreements to provide that his "holding company" (Cypress) would be

3

the investor, and Salerno signed the SPAs on behalf of Cypress.  Sack Dec., Ex. B at

SPORTBLX00018535.  Following consummation of the transaction on February 28, Cypress

funded the $1 million investment about two weeks later — on March 12, 2019.  Sport-BLX AC

¶33.

Salerno's relationship with Sport-BLX became acrimonious soon after Cypress's

investment.  None of the following facts are in dispute:

- *within three days* of Cypress's investment, Salerno began secretly recording conversations with Hall and De Perio and Sport-BLX board meetings — a fact learned only in discovery, *see* Sack Dec., Ex. C, Salerno Deposition ("Dep.") Day 1 p. 273;[1]

- *within one month* of Cypress's investment, Salerno accused Hall of "self-dealing" in connection with payments to Clinton Group (a company owned by Hall), for the use of office space and equipment — payments included in financial projections in the data room made available to Salerno before he invested, *see* Sack Dec., Ex. D at SPORTBLX00018153;

- *within two months* of Cypress's investment, Salerno suggested that Cypress's shares be bought out, and a short time later said that he was "willing to sell [his] position" for $2 million, that is, doubling his money, *see* Sack Dec., Ex. E at CLINTON00010568, SPORTBLX00048150; and

- *within three months* of Cypress's investment, Salerno began to threaten litigation and had a lawyer (later disqualified by the Court because of a conflict of interest) send a letter describing at least two separate claims against Hall, *see* Sack Dec., Ex. F at SPORTBLX00015719.

In August 2019, Salerno's hostile conduct reached a critical stage.  After making

substantial progress on its business plan, Sport-BLX was close to finalizing its application for

registration with the Financial Industry Regulatory Authority ("FINRA") as a broker-dealer — a

critical step for the company that was known to Salerno from the start.  FINRA required Sport-

---

[1] In discovery, Cypress produced 23 audio recordings Salerno secretly made of various telephone calls with Hall and De Perio, interviews of prospective board members, and five Sport-BLX board meetings he attended during his tenure as a board member (Salerno attended only half of the board meetings while he was a director).  The recordings produced by Cypress cover the period March 15, 2019 to August 31, 2021, and the recordings were about 12.5 hours in length.

BLX to disclose its beneficial owners.  Sport-BLX AC ¶¶53–67.  When the company asked
Salerno to confirm that he was the sole owner of Cypress (previously described by Salerno as
"my holding company"), he refused to confirm that fact, and refused to provide any information
about the beneficial owners of Cypress, stating that he would not make his "estate plan structure"
public, and that Sport-BLX did "not have a right" to the information.  *See* Sack Dec., Ex. G at
SPORTBLX00050629, SPORTBLX0140204.  He was the only Sport-BLX shareholder who
refused to provide requested information.

Only in discovery — and only after moving for a court order over Salerno's repeated
opposition — did Sport-BLX learn the identities of Cypress's beneficial owners.  *See Sport-BLX,
Inc. v. Salerno*, et al., No. 1:22-cv-08111 (LGS), ECF No. 28.  Cypress was not Salerno's
"holding company."  Cypress was and remains an unregistered investment partnership,
comparable to a hedge fund, which has 18 investors — including a convicted felon — for which
Salerno acted as a manager entitled to management and success fees.  Sport-BLX AC ¶¶4, 30,
60.  Only two of the investors had any family relation to Salerno.  As detailed in Sport-BLX's
lawsuit against Cypress and Salerno, Salerno's refusal to disclose the beneficial owners of
Cypress in 2019 was contrary to the interests of Sport-BLX and was designed to conceal his
prior lie that Cypress was his "holding company."  *See id.* ¶¶4, 30, 59–62.

Salerno's refusal to disclose Cypress's beneficial owners had a devastating impact on
Sport-BLX's business.  *See id.* ¶¶53–67.  It destroyed Sport-BLX's existing business model,
which depended on a FINRA broker-dealer license to earn revenue from the securitization of
sports-related assets, and wasted months of time trying to get Salerno to change his mind and
provide the information the company needed.  *Id.*

Eventually, in late December 2019, Salerno was not reelected to the Sport-BLX board of directors. The vast majority of shareholders voted for a slate of directors that did not include Salerno. Sack Dec., Ex. H at SPORTBLX0266070, SPORTBLX0284469. The votes for Salerno's continuation as a director came from Cypress, which was controlled by Salerno; Hall and De Perio, who were contractually obligated to vote for him pursuant to the Side Agreement; and one investor who held a very small number of Sport-BLX shares (less than one percent). *See id.*[2]

In the end, Salerno's conduct led the company to formulate a new business model, premised on licensing its trading platform, but that model was substantially weaker than the original business model. Salerno's behavior caused significant damage to Sport-BLX by late 2019.[3] *See id.* ¶¶53–67, 74–77.

## II.    Cypress's Lawsuit

On January 11, 2022, Cypress filed a complaint in New York County Supreme Court, which was subsequently removed to this Court. That complaint was against four defendants and contained 10 causes of action, none of which were derivative. Cypress's claims centered on allegations that Sport-BLX and others fraudulently induced Cypress to invest $1 million in Sport-BLX, and allegedly deprived Cypress of rights granted to it pursuant to the SPAs and Side Agreement. As part of that complaint, Cypress also alleged claims under the federal and New Jersey equivalent of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

---

[2] SPORTBLX0266070 and SPORTBLX0284469, annexed to the Sack Declaration as Exhibit H, state the number of shares owned by Sport-BLX shareholders as of the December 2019 annual shareholders meeting and the results of the vote for directors at that annual shareholders meeting. The votes for Salerno total the number of shares held by Hall, De Perio, Cypress, and one other shareholder with 249 shares.

[3] Sport-BLX's expert, Gene B. Phillips of PF2 Securities Evaluations, has estimated that Salerno's conduct caused approximately $29 million in damages to Sport-BLX.

On April 7, 2022, Cypress filed its First Amended Complaint.  *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 17.  In this complaint, Cypress brought nine claims, two of which were derivative — for alleged unjust enrichment and breach of fiduciary duty.  The remaining claims were largely identical to the initial complaint except that Cypress dropped the RICO claims following receipt of a Rule 11 letter from Sport-BLX's counsel.

On January 30, 2023, Cypress filed the SAC.  *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 80.  The SAC was a significant expansion of prior versions, now asserting 19 counts against 10 defendants.  The SAC — filed approximately one year after the action was initiated and apparently in response to Sport-BLX filing its own action against Cypress and Salerno — now included eight derivative claims brought on behalf of Sport-BLX. The new derivative claims allege "siphoning" of assets from Sport-BLX into other entities allegedly controlled by Hall and others.  Alongside the new derivative claims, Cypress continues to assert multiple claims for money damages *against* Sport-BLX (and others) for alleged misrepresentations and an alleged breach of a covenant of good faith and fair dealing, as well as direct claims based on the alleged "siphoning" of assets.   No other shareholder has joined Cypress in bringing derivative claims against Sport-BLX.

The end result is a complaint with multiple direct and derivative claims that address the same alleged misconduct and seek recovery for the same alleged harm.  Cypress has confirmed as much.  In its pre-motion letter seeking summary judgment on certain of its claims, Cypress stated that it seeks to recover both directly and derivatively for breach of fiduciary duty arising from Sport-BLX's alleged improper rental payments to Clinton Group (Counts 5 and 13); and that it seeks to recover both directly and derivatively for breach of fiduciary duty arising from Ruchalski's and Strauss's alleged improper approval of a transaction in which Hall and De Perio

sold Sport-BLX stock to GlassBridge (Counts 14 and 15).[4]  *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 139, at 1–2.

In addition to these claims regarding rent and a sale of shares to GlassBridge, the SAC contains corresponding direct and derivative claims regarding other alleged misconduct.  In SAC Counts 6, 10, and 19 (direct claims) and SAC Counts 7, 12, 16, 17 and 18 (derivative claims), Cypress seeks damages arising from Sport-BLX's alleged sale of technology for less than fair market value.  In SAC Counts 9 and 15 (direct claims) and SAC Counts 11, 12 and 14 (derivative claims), Cypress alleges that Sport-BLX was wrongly deprived of a "success fee" paid to Clinton Group for a transaction between GlassBridge and an entity called Orix — though the success fee claim has apparently been abandoned given that damages for this claim were not included in Cypress's supplemental response to the Sport-BLX Parties' damages interrogatory.[5] *See* Sack Dec., Ex. J, Cypress's Supplemental Response to Sport-BLX's Interrogatory No. 13.

In sum, all of these claims — relating to rent, the sale of stock to GlassBridge, the sale of technology, and the success fee — reflect Cypress's effort to recover both directly and derivatively for the same alleged misconduct.

---

[4] In the SAC, Cypress originally complained of rent being excessive and that excessive rent payments deprived Sport-BLX of money that should have been spent on technology.  Cypress appears to have abandoned this theory and is now asserting that the rent was improper *ab initio* based on the rental agreement between Clinton Group and its landlord.  Cypress's claims ignore, among other things, that Sport-BLX's payments to Clinton Group were beneficial to Sport-BLX in that it received use of fully built-out and equipped space without a security deposit and without the longer-term commitment that a formal lease would have entailed.

[5] In Cypress's summary judgment pre-motion letter, *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 139, at 1–2, Cypress appears to be revising Counts 14 and 15 of the SAC by dropping the success fee allegation and instead focusing on a transaction that Ruchalski and Strauss approved that resulted in Hall and De Perio selling shares of Sport-BLX stock to GlassBridge.  Any such de facto amendment of claims would be improper, and, in any event, the derivative claim against Ruchalski and Strauss should be dismissed under Rule 23.1, for the reasons described below.

### III.     Sport-BLX's Capital Structure

Cypress stands to recover little, if any, money from the derivative claims in light of Sport-BLX's capital structure.  Hall and De Perio own approximately 81 percent of Sport-BLX; Cypress owns approximately five percent.  In addition, as of December 2021, Sport-BLX had substantial liabilities, including owing $2.8 million on an outstanding demand note, with over $560,000 in accrued interest; as well as over $726,000 in accrued unpaid compensation.  *See* Sack Dec., Ex. I at GBE_0008601.  These liabilities have only increased since that time.  These obligations must be paid before shareholders can benefit from any derivative recovery.

Accordingly, even if Cypress were successful on its derivative claims, it is unlikely to receive any monetary compensation; and any compensation it did receive (once Sport-BLX's financial obligations were satisfied) would reflect its small minority, five percent stake in the company.  Cypress's direct claims, on the other hand, face no such limitation and are thus almost certainly to be viewed by Cypress as substantially more valuable.

### ARGUMENT

### I.     The Governing Legal Test

Under Rule 23.1, a plaintiff may not maintain a derivative action "if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders . . . who are similarly situated in enforcing the right of the corporation."  Fed. R. Civ. P. 23.1(a).  That is because "a stockholder who brings suit on a cause of action derived from the corporation assumes a position … of fiduciary character" and "the interests of all in the redress of the wrongs are taken into hands, dependent upon his diligence, wisdom, and integrity."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949).

The "adequacy of representation is a procedural issue governed squarely by Rule 23.1" and courts in this District are "bound by Second Circuit law interpreting and applying Rule

23.1." *JFURTI, LLC v. Singal*, No. 17 CIV. 7206 (CM), 2018 WL 6332907, at *10 (S.D.N.Y.

Nov. 12, 2018).  "Courts in this Circuit have long found that plaintiffs attempting to advance

derivative and direct claims in the same action face an impermissible conflict of interest." *St.

Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, No. 06CIV688SWK, 2006 WL 2849783, at *7

(S.D.N.Y. Oct. 4, 2006).  Accordingly, in assessing the adequacy of such a plaintiff under Rule

23.1, a "strict standard [is applied] in scrutinizing simultaneous direct and derivative actions for

signs of conflict." *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 135 (S.D.N.Y. 1991); *accord

Wall St. Sys., Inc. v. Lemence*, No. 04 CIV. 5299 (JSR), 2005 WL 292744, at *3 (S.D.N.Y. Feb.

8, 2005) ("[A]n individual shareholder has a conflict of interest, and therefore cannot adequately

represent other shareholders, when he simultaneously brings a direct and derivative action . . .

.").

 In addition to the strict standard applied to plaintiffs who bring simultaneous direct and

derivative claims, courts have considered the following factors in determining whether a plaintiff

is an adequate shareholder representative:

1. Economic antagonisms between the representative and class;

2. Other litigation pending between the plaintiff and the defendants;

3. The relative magnitude of the plaintiff's personal interest in matters beyond the scope of the derivative action, as compared to his or her interest in the derivative action;

4. The plaintiff's vindictiveness towards the defendants; and

5. The degree of support the plaintiff receives from the other shareholders that he or she purports to represent.

*JFURTI, LLC*, 2018 WL 6332907, at *11.  Not all of these factors need to be found "to

disqualify a Plaintiff from bringing a derivative suit," and "'often a strong showing of one factor,

which is actually inimical to the class' can serve as grounds for dismissal of a derivative claim."

*Priestley v. Comrie*, No. 07 CV 1361 (HB), 2007 WL 4208592, at *5 (S.D.N.Y. Nov. 27, 2007)

(citations omitted).

In this case, Cypress's derivative claims should be dismissed because Cypress's pursuit

of both direct and derivative claims gives rise to impermissible conflicts of interest, and because

Cypress is not a fair and adequate representative of similarly situated shareholders under the

controlling five-part test.

## II.   Cypress Has Impermissible Conflicts of Interest

The derivative claims in the SAC suffer from three fatal conflicts: (i) Cypress is suing

Sport-BLX at the same time Cypress purports to act on Sport-BLX's behalf; (ii) Cypress's direct

claims directly compete with its derivative claims; and (iii) Cypress's requested relief, if granted,

would result in loss of its shareholder status, and thus, its standing to sue derivatively on behalf

of Sport-BLX.

### A.   Cypress May Not Act on Sport-BLX's Behalf and Simultaneously Seek Damages from the Company

Cypress is both suing Sport-BLX and purporting to sue others on behalf of Sport-BLX as

a derivative shareholder representative.  Cypress has offered no explanation how it can both seek

to take money from Sport-BLX in the form of money damages, and, at the same time, serve in a

fiduciary capacity for the shareholders and attempt to return value to the company.  These

positions are inherently incompatible and present an irreconcilable conflict.

Courts in this District have routinely found a disqualifying conflict in situations like this,

and have either dismissed the derivative claims entirely or required the plaintiff to choose

between its direct and derivative claims.  For example, in *Prime Mover Cap. Partners L.P. v.

Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 692 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16

(2d Cir. 2013), the plaintiffs sued the company alleging that it had committed securities fraud

and sought money damages; yet at the same time, sought to "stand in the shoes of EGT and recover for its benefit against its officers and directors." *Id*. Judge Kaplan found that this presented an impermissible conflict of interest under Rule 23.1 and dismissed the derivative claim. *Id.* Similarly, in *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 CIV 5411 PKC, 2010 WL 5248815, at *2 (S.D.N.Y. Dec. 14, 2010), Judge Castel found that the plaintiff had failed to explain "why the plaintiff may adequately maintain both an individual direct action and a shareholder derivative suit," and stated that the "plaintiff has engaged in the litigation equivalent of riding two horses until the rider determines which is stronger and faster," and dismissed the derivative suit. *Id.* at *3. Cypress has engaged in precisely the same strategy that Judge Castel found repugnant to Rule 23.1.

Other judges in the Southern and Eastern Districts of New York have consistently reached the same conclusion. *See, e.g. Ryan*, 765 F. Supp. at 135–37 (finding conflict based on plaintiff both suing and seeking to act on behalf of corporation); *Brickman v. Tyco Toys, Inc.*, 731 F. Supp. 101, 108 (S.D.N.Y. 1990) (finding "that plaintiff may not at once sue derivatively on behalf of [a corporation], and bring a[n] action against that corporation and its directors"); *Wall St. Sys., Inc.*, 2005 WL 292744, at *3 (same); *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976) (assuming plaintiff was proceeding only directly due to his failure to address "the issue of the propriety of his seeking to recover personally against Federated, and simultaneously, prosecuting a claim on behalf of Federated"); *Caan v. Kane-Miller Corp.,* 71 Civ. 878 (WCC), 1974 U.S. Dist. LEXIS 13019, *7 (S.D.N.Y. Dec. 18, 1974) (holding that plaintiff may not pursue direct and derivative claims simultaneously); *accord Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 223 (E.D.N.Y. 2005) ("Any individual claims raised by a shareholder in a derivative action present an impermissible conflict of interest.").

### B. Cypress May Not Pursue the Same Damages Through Its Direct and Derivative Claims

Cypress's derivative claims are in direct competition with its direct claims for the same pool of damages, thereby creating an impermissible conflict of interest. The SAC's derivative claims and multiple direct claims are based on a common set of transactions that Cypress claims amount to a wrongful siphoning of assets from Sport-BLX. The derivative and direct claims are based on the following:

- Allegedly excessive and/or improper rental payments from Sport-BLX to Clinton Group (*see* SAC Direct Counts 5 and 9; Derivative Counts 11, 12, 13, and 16; and Cypress's pre-motion letter, *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 139, at 1–2);

- The sale of Sport-BLX's proprietary trading platform to Sport-BLX Securities for allegedly less than fair market value (*see* Direct Counts 6, 10 and 19; Derivative Counts 7, 12, 16, 17 and 18);[6]

- Ruchalski's and Strauss's allegedly wrongful approval of GlassBridge's purchase of stock from Hall and De Perio (*see* Derivative Count 14 and Direct Count 15; and Cypress's pre-motion letter, *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 139, at 1–2);

- A success fee paid by GlassBridge to Clinton Group that allegedly should have gone to Sport-BLX (*see* SAC Direct Counts 9, 15; Derivative Counts 11, 12 and 14).[7]

Cypress seeks to recover damages related to these transactions both for itself and on behalf of Sport-BLX.

Assuming that Cypress is successful on any of these claims, it can recover the lost value only once; Cypress may not recover on its own behalf and separately on behalf of Sport-BLX.

---

[6] Cypress has included similar allegations regarding Hall and De Perio siphoning assets to benefit an allegedly newly founded entity, I Got It Holdings Corp. d/b/a Metabilia ("Metabilia") in Direct Counts 10 and 19. Cypress's derivative counts do not allege Metabilia-related claims, but some of these counts are so vaguely worded that Cypress might intend to include such claims. *See* SAC Count 7 (unjust enrichment) and Count 13 (breach of fiduciary duty).

[7] Cypress has apparently abandoned this claim, as noted (*see* p. 8 above and Sack Dec., Ex. J, Cypress's Supplemental Response to Sport-BLX's Interrogatory No. 13).

Cypress's derivative claims would thus pit the company and shareholders directly against Cypress itself for the same quantum of damages.  Moreover, because Cypress is a small minority shareholder in Sport-BLX, Cypress will always be incentivized to prioritize its direct claims, for which it stands to recover a substantially greater amount, over the derivative claims, at the expense of Sport-BLX and other shareholders.

Cypress acknowledges, as it must, that it may not recover the same sum of money twice — once on its direct claims, and again on the derivative claims.  *See Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 149, at 2 ("Cypress is not seeking a double recovery on its direct and derivative claims.").  Yet Cypress does not resolve this conflict or otherwise reconcile its self-interest in maximizing its own recovery with its fiduciary obligation to maximize recovery on behalf of Sport-BLX and shareholders.

When, as here, a plaintiff's own claims directly compete with its derivative claims for the same pool of money, courts have consistently found a conflict.  For example, in *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 2013 WL 12203024, at *12 (C.D. Cal. Apr. 4, 2013), the court found a substantial risk of actual conflict because the "Plaintiff's direct claims are in competition for the same pool of money as its derivative claims, creating the possibility that recovery on the direct claims could reduce recovery on the derivative claims."  *Id.*; *accord Argiropoulos v. Kopp*, 2007 WL 954747, at *7–8 (D. Md. Mar. 26, 2007) (finding plaintiff to be an inadequate representative of a corporation where plaintiff was pursuing an individual suit against the corporation claiming that the corporation "owes him significant amounts of money," while pursuing a simultaneous derivative action, where claims were "competing for the same pool of money").

Similarly, in *Tatintsian v. Vorotyntsev*, No. 1:16-CV-7203-GHW, 2018 WL 2324998, at *3 (S.D.N.Y. May 22, 2018), an actual conflict was found to exist "because any recovery for Tatintsian on the direct claim might reduce the recovery for the company and its shareholders on the derivative claims." *Id.*; *accord Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, No. 18CV11642 (VM) (DF), 2021 WL 2137613, at *7 n.7 (S.D.N.Y. May 26, 2021) ("In most situations where the plaintiff's monetary recovery on a direct claim could result in a reduction of the corporation's potential recovery on the derivative claim, the plaintiff will be found to have an 'actual' (not merely a 'theoretical') conflict, and will be disqualified from pursuing both types of claims in the same action."); *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) (noting that conflicts of interest existed where "recovery in the [direct] action may reduce potential recovery in the derivative action").

Here, the conflict between Cypress's direct and derivative claims is even more substantial. In the cases referenced above, the courts found a conflict because the derivative plaintiff brought direct and derivative claims against the same defendants, or because the derivative plaintiff was suing the company directly and purporting to sue on the company's behalf derivatively. In both instances, the courts found that the direct and derivative claims would compete for the same pool of money, creating a conflict under Rule 23.1. In this case, Cypress's direct and derivative claims seek money from the same parties, and Cypress is suing Sport-BLX directly and purporting to sue derivatively on Sport-BLX's behalf. Even more problematic is the fact that here the direct and derivative claims are competing for the *same fixed amount of damages*, as to which either Cypress or Sport-BLX could recover — not both. In short, if Cypress recovers on its direct claims relating to transactions underlying its derivative claims (*e.g.*, the technology transfer for less than fair market value), such recovery will be at the

expense of Sport-BLX which will be precluded from recovering for the same transactions.  This conflict precludes Cypress from serving as a derivative plaintiff.

### C. Cypress's Requested Relief Disqualifies It from Serving as a Shareholder Representative

In Count 19 of the SAC, Cypress sues Hall, De Perio and GlassBridge for alleged minority shareholder oppression.  In Cypress's Supplemental Response to Interrogatory No. 13, which set out Cypress's claimed damages, Cypress stated that it "*seeks to have its investment bought out* (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) . . . ."  Sack Dec., Ex. J, Cypress's Supplemental Response to Sport-BLX's Interrogatory No. 13 at 11–12 (emphasis added).

In *Argiropoulos*, 2007 WL 954747, at *7–8, the court found that the derivative plaintiff's most notable conflict was that it was suing the corporation to enforce a "promise to have Kopp buy back his shares," which, if successful, meant that "Argiropoulos will have no remaining shares in Club 10, and will have no remaining stake in the corporation."  *Id.*  Because a derivative plaintiff must own stock to have standing to sue, success on Argiropoulos's claim would mean that "he would no longer have standing to bring a derivative suit on behalf of the shareholders of Club 10 because he would no longer be a shareholder."  *Id.*  The court found this conflict impermissible under Rule 23.1, concluding that *"[w]here a party's standing to bring a derivative lawsuit would be extinguished by the success of his individual claims, that party should not be permitted to maintain both suits*," and that "the named derivative plaintiff *must always have standing* to pursue suit."  *Id.* (emphasis added); *accord Eshelman v. Orthoclear Holdings, Inc.*, No. C 07-1429 JSW, 2009 WL 506864, at *9 (N.D. Cal. Feb. 27, 2009) (stating

that, "[i]n addition, Plaintiffs' request for rescission would eliminate their standing as shareholders to pursue derivative claims," and dismissing derivative claims).

The same is true here.  Cypress's readiness to put its own interest over that of other minority shareholders, and over the interest of Sport-BLX as a whole, is quite clear in this litigation, as it was when Salerno made his first buy-out demand in May 2019 (*see* p. 4 above) and when he blocked Sport-BLX's FINRA broker-dealer application later in 2019 (*see* p. 5 above).  But now Cypress purports to act on behalf of other minority shareholders of Sport-BLX. A remedy that results in a buy-out of Cypress's shares would necessarily result in a loss of its shareholder status, and thus its adequacy to represent other shareholders under Rule 23.1.

### III.    Cypress Is an Inadequate Shareholder Representative Under the Multi-Factor Balancing Test

Because Cypress is directly suing Sport-BLX, has alleged direct claims that compete with its derivative claims, and seeks a recovery that would disqualify it from acting as a shareholder representative, the Court has ample basis to conclude that Cypress is an inadequate shareholder representative under Rule 23.1, and need not assess Cypress's adequacy under the balancing test described in *JFURTI, LLC v. Singal*, *supra*.  However, if the Court were to assess Cypress under the balancing test factors, the result would be the same and would only further confirm that Cypress is not an adequate shareholder representative under Rule 23.1.

#### A.  Economic antagonisms between the representative and class

Of the factors to be considered under the balancing test, "[p]erhaps the most important element . . .  is whether plaintiff's interests are antagonistic to those plaintiff is seeking to represent. If there is a conflict of interest, the representation may well be deemed inadequate and the suit dismissed."  *See* 7C Wright & Miller, Federal Practice and Procedure § 1833 (3d ed. Updated Apr. 2023).  For the reasons discussed above, Cypress has significant economic

conflicts with Sport-BLX's other shareholders because Cypress is suing Sport-BLX and yet purports to act on the company's behalf; because Cypress, through its direct claims, is competing with the shareholders for the same pool of damages; and because Cypress's requested relief — a buy-out of Cypress's shares — is wholly inconsistent with it representing other shareholders under Rule 23.1.

This conflict is only exacerbated by Cypress's economic incentives to pursue its direct claims over its derivative claims. As discussed, Hall and De Perio own approximately 81 percent of Sport-BLX; Cypress owns approximately five percent. Moreover, Sport-BLX has significant debt obligations and owes a substantial amount of accrued unpaid compensation. *See* Sack Dec., Ex. I at GBE_0008601. These obligations must be paid before shareholders can benefit from any derivative recovery. Accordingly, even if Cypress was able to recover on any of its derivative claims, little, if anything, would be left for Sport-BLX's shareholders.

### B. Other litigation pending between the plaintiff and the defendants

Unlike any other shareholder of Sport-BLX, Cypress is a defendant in an action brought by Sport-BLX. *See Sport-BLX, Inc. v. Salerno*, No. 1:22-cv-8111 (LGS). In that action, Sport-BLX seeks damages arising from Cypress's and Salerno's interference with Sport-BLX's efforts to obtain a broker-dealer license, and Sport-BLX's damages expert has calculated the company's damages as approximately $29 million.

Courts have long recognized that "outside entanglements," such as other litigation, "render it likely that the representative may disregard the interests of the other class members." *Blum v. Morgan Guaranty Tr. Co of N.Y.*, 539 F.2d 1388, 1390 (5th Cir. 1976). Courts have also recognized that "[a] derivative suit can constitute a particularly effective weapon for purposes of obtaining a favorable settlement in other actions." *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958,

961 n.7 (11th Cir. 1982).   These concerns are particularly apt when, as in this case, the proposed

shareholder representative has a *de minimis* interest in its derivative claims as compared to the

"relative value" of its direct claims and the claims alleged against it.  *Blum*, 539 F.2d at 1390

("The relative value of the subject matters involved is an important consideration in evaluating a

derivative suit instituted by a representative entangled in other litigation with defendant").

Here, Cypress is an approximately five percent shareholder in Sport-BLX.  Cypress and

its managing partner Salerno are facing a potential multi-million-dollar judgment based on the

harm that Cypress and Salerno inflicted on Sport-BLX.  The threat of such a large judgment

creates a host of different considerations and incentives for Cypress unlike any other shareholder

of Sport-BLX.  For example, the derivative claims are subject to misuse as a stalking horse for

Cypress's potentially more valuable direct claims, or as an attempted counter to Sport-BLX's

substantial claims of breach of fiduciary duty and other misconduct against Salerno and Cypress.

These dangers demonstrate just how differently situated, and differently motivated, Cypress is

from other minority shareholders of Sport-BLX.

Further, consider any hypothetical settlement scenario.  A reasonable, unconflicted

shareholder (*i.e.*, one other than Cypress) would settle the derivative claims if approached with

an offer that approximates what the shareholder believes to be the claims' fair value.  Cypress,

on the other hand, if approached with the same offer, would have to consider whether settling the

derivative claims would affect its direct claims or decrease its leverage vis-à-vis defending

against Sport-BLX's affirmative suit.  *See Rothenberg*, 667 F.2d 958, 961 n.7 ("A derivative suit

can constitute a particularly effective weapon for purposes of obtaining a favorable settlement in

other actions."); *see also WPP Luxembourg*, 2013 WL 12203024, at \*12 ("Plaintiff's substantial

interest in its direct claims may prevent it from favorably settling its derivative claims or otherwise acting in the best interests of the other shareholders.").

That Cypress is acting with a significantly different set of incentives from other similarly situated shareholders further demonstrates its inadequacy under Rule 23.1.

> **C.  The relative magnitude of the plaintiff's personal interest in matters beyond the scope of the derivative action, as compared to its interest in the derivative action**

Cypress has a substantially greater economic stake in its direct claims, and its derivative claims may be worth very little, if anything at all, as discussed above, *see* pp. 8–9.  This point, too, is disqualifying under the multi-factor balancing test used by courts to assess whether a shareholder representative is adequate.

*WPP Luxembourg* is instructive on this point.  There, the plaintiff sought $13.4 million on its direct claims and $54 million on the derivative claim to be paid into a constructive trust on the corporation's behalf.  2013 WL 12203024, at *12.  The court recognized that because the plaintiff owned only about four percent of the corporation's stock, the plaintiff "st[ood] to gain substantially more in damages through its direct claims than from any potential increase in the value of its stock through its derivative claims."  *Id.*  As a result, "*there [was] a strong probability that the derivative action could be used as leverage in [the plaintiff's] direct claims*," which exacerbated the risk of there being an actual conflict.  *Id.* (emphasis added).

Given that Cypress has little to no economic incentive to pursue its derivative claims, the Court here should likewise conclude that Cypress added them to the complaint to bolster its direct claims against Hall, Sport-BLX and others, and to provide leverage against Sport-BLX's own claims.  *See Bryant v. Mattel, Inc.*, 2010 WL 3705668, at *25 (C.D. Cal. Aug. 2, 2010) (stating that the plaintiff's "personal interest, expressed through its direct claims against [the

defendant], dwarfs its interest in the derivative claim, as evidenced by the disparity between the amount at issue in the direct counterclaims and the amount at issue in this derivative counterclaim"; "[i]ndeed, an argument can be made . . . that the derivative claim is nothing more than a mechanism to promote the direct claims").

Not only is Cypress financially incentivized to prioritize its direct claims, but its actions over the course of the litigation demonstrate that the direct claims are the "crux" of its case. This action, when initiated, asserted only direct claims relating to Cypress's allegations that it had been fraudulently induced to invest $1 million in Sport-BLX, and that Hall and others had allegedly failed to abide by contracts governing that transaction. Over the next year, Cypress added various derivative claims. Recognizing that any recovery on its derivative claims would be *de minimis*, Cypress, in a transparent attempt to increase its own recovery, included direct claims addressing the same conduct knowing full well that any recovery on its direct claims would preclude shareholders from recovering the same. *See JFURTI*, 2018 WL 6332907, at *11–12 (reviewing plaintiffs' pleadings and litigation history to determine that "they are motivated principally by their own financial interest, which differ from that of their fellow shareholders," and finding plaintiffs to be inadequate representatives under Rule 23.1).

When, as here, the "crux" of the plaintiff's suit is its direct claims, the plaintiff is an inadequate shareholder representative because it will likely be unable to "vigorously and conscientiously" prosecute the derivative suit on behalf of the shareholders. *See WPP Luxembourg*, 2013 WL 12203024, at *12; *accord ShoreGood Water Co., Inc. v. U.S. Bottling Co.*, 2009 WL 2461689 at *6 (D. Md. Aug. 10, 2009) ("[T]he crux of Plaintiff's lawsuit is to recover money allegedly owed—a personal goal focused on an external interest that is at odds with the underlying purpose of a derivative action, which is fiduciary in nature.").

### D.  The plaintiff's vindictiveness towards the defendants

A district court may consider the derivative plaintiff's vindictiveness against the defendants when evaluating whether the plaintiff fairly and adequately represents the interest of similarly-situated shareholders.  *See Smith v. Ayres*, 977 F.3d 946, 949 (5th Cir. 1992).  In general, "[a] plaintiff in a shareholder derivative action owes the corporation his undivided loyalty. The plaintiff must not have ulterior motives and must not be pursuing an external personal agenda."  *Id*.  The record in this case is rife with examples of Salerno's personal animosity towards Hall and others.  For example,

- Salerno began secretly recording phone calls within three days of investing in Sport-BLX, *see* Sack Dec., Ex. C, Salerno Dep. Day 1 p. 273;

- Salerno accused Hall of self-dealing approximately one month after investing in Sport-BLX, *see* Sack Dec., Ex. D at SPORTBLX00018153; and

- Salerno threatened litigation against Hall within three months of investing in Sport-BLX, *see* Sack Dec., Ex. F at SPORTBLX00015719.

Salerno has directed gratuitous *ad hominem* attacks against the Defendants, and has made other statements suggesting that this dispute is deeply personal to him.  For example, during his deposition, Salerno referred to members of Sport-BLX's board as "patsies" of Hall, and described the members of GlassBridge's board, a public company, as "puppet[s]" and "pats[ies]" of Hall. *See* Sack Dec., Ex. C, Salerno Dep. Day 2 pp. 64, 174; Day 4 p. 258. Salerno testified that he was concerned about purchasing software from the Defendants because he thought Hall, De Perio and others would "embed the virus" in the software; that he did not want to disclose Cypress's beneficial owners because he was afraid of "harass[ment]" from Hall and De Perio; and that Sport-BLX professional expenses could have been spent on "masseuses." *Id.* Day 4 p. 313; Day 2 p. 44; Day 3 p. 31.

Moreover, Cypress's approach to this litigation demonstrates a desire to impose substantial economic pain on the Defendants.  Cypress made a $1 million investment in Sport-BLX.  Despite this limited investment, Cypress has insisted on litigating this case without regard for the costs imposed on Sport-BLX, on whose behalf Cypress theoretically has been acting, or on the other Defendants.  To date, there have been 24 days of depositions, and the Sport-BLX Parties have produced over 50,000 documents, totaling more than 319,000 pages, and requiring more than 300 hours of attorney work (likely far more) in responding to Cypress's discovery requests.  The costs the Sport-BLX Parties and other Defendants have been forced to expend litigating this case now far exceed any possible recovery by Cypress.  *See Meimaris v. Hudner,* 1995 WL 413164 (S.D.N.Y. 1995) (finding that "comparison of the costs to plaintiff of this litigation as compared to his limited financial interest in its possible outcome" demonstrated that plaintiff was "using the lawsuit as a tool in the ongoing battle" against the defendants).

In sum, Cypress's litigation tactics suggest that this case is a vindicative attempt by Salerno to punish Hall and the other Defendants for the various wrongs Salerno believes were done to him.  Because Salerno has "an unmistakable personal and professional dispute" with the Defendants, and is seeking to pursue his own agenda through a shareholder derivative action, *Smith*, 977 F.2d at 949, Cypress is not an adequate shareholder representative.

### E. The degree of support the plaintiff receives from the other shareholders that he or she purports to represent.

At his deposition, Salerno acknowledged that he reached out to other shareholders to see if they would join his suit, but none did.  Sack Dec., Ex. C, Salerno Dep. Day 4 pp. 277–78.  This factor also supports Defendants' motion.

The present lack of shareholder support for Salerno and Cypress is no surprise given the circumstances of Salerno's loss of a Sport-BLX board seat in late 2019 — the subject of several

23

of Cypress's claims.  *See, e.g.*, SAC Counts 2 and 8.  Although Hall and De Perio fulfilled their

contractual obligation to vote their shares in favor of Salerno, Cypress claims that Hall and De

Perio still violated the Side Agreement by engaging in a transaction that allegedly led to the loss

of Salerno's board seat.  Yet Salerno lost his board seat not because of Hall and De Perio, but

rather because his continuation on the board was rejected by a majority of Sport-BLX's

shareholders.  Virtually all of the shareholders who voted at a December 2019 shareholder

meeting voted for a slate of directors that did not include Salerno.  The only exceptions were

Cypress itself; Hall and De Perio, who were contractually obligated to vote for him; and one

other shareholder who had a less than one percent interest in Sport-BLX.  *See* Sack Dec., Ex. H

at SPORTBLX0266070, SPORTBLX0284469.  This reinforces the conclusion that Salerno was,

and still is, acting alone in pursuit of his and Cypress's interests, not the interests of Sport-BLX

and its other shareholders.

## CONCLUSION

For the reasons described above, the Court should grant the Defendants' motion under

Rule 23.1 and dismiss Cypress's derivative claims in full.

Dated:  New York, New York
       October 27, 2023

                    MORVILLO ABRAMOWITZ GRAND
                    IASON & ANELLO P.C.

                    By:  *Jonathan S. Sack*
                         Jonathan S. Sack
                         Edward M. Spiro
                         Joseph P. Klemme
                    565 Fifth Avenue
                    New York, NY 10017
                    (212) 856-9600
                    (212) 856-9494 (fax)

                    *Attorneys for Defendants Sport-BLX, Inc., Sport-*

24

*BLX Securities, Inc., Clinton Group, Inc., George Hall, Cesar Baez, and Christopher Johnson*

LOEB & LOEB LLP

By:  /s/ Christian D. Carbone
      Christian D. Carbone
      David A. Forrest
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendants GlassBridge Enterprises, Inc., Daniel Strauss, and Francis Ruchalski*

COLE SCHOTZ P.C.

By:  /s/ David S. Gold
      David S. Gold
25 Main Street
Court Plaza North
Hackensack, New Jersey 07601
(201) 525-6305
(201) 678-6305 (fax)

*Attorneys for Defendant Joseph De Perio*

25