# EXHIBIT C

UNITED STATES DISTRICT COURT?
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX,
INC.,

                    Plaintiff,

     -V-                 Civil Action No.:
                         1:22-cv-1243-LGS
GEORGE HALL, JOSEPH DE PERIO, DANIEL
STRAUSS, FRANCIS RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX INC.,
SPORT-BLX SECURITIES, INC., CLINTON GROUP
INC., AND GLASSBRIDGE ENTERPRISES INC.,
                         Defendants.
-----------------------------------------X
SPORT-BLX, INC., individually and
derivatively on behalf of its shareholders,

                    Plaintiff,

     -V-                 Case No.:
                         1:22-cv-8111-LGS
MICHAEL M. SALERNO, CYPRESS HOLDINGS, III,
L.P.,

                    Defendants.
-----------------------------------------X
                    DATE: May 1, 2023
                    TIME: 9:43  A.M.


          EXAMINATION BEFORE TRIAL of the
Defendant, Michael Salerno, taken by Mr.
Sack, pursuant to Order, held at the
offices of Hindy Freilich, a Notary Public
of the State of New York.



1

2          Q.     That's another conversation you

3     secretly recorded?

4          A.     That I recorded of Joe De Perio

5     and I talking about the wiring

6     instructions.

7          Q.     When did you do that?

8          A.     Before the wire was sent.

9          Q.     So you started recording Joe De

10    Perio within a week of your investing in

11    the company, you started recording?

12         A.     I think there is one, yes.

13         Q.     No, no.  Not I think there is

14    one.  Did you secretly -- did you start to

15    secretly record conversations within

16    approximately a week of making your

17    investment in this company?

18         A.     Yes, it's very possible.

19         Q.     Why?

20         A.     Because at that point, I was

21    already concerned about the investment

22    being made.  And if I didn't do it, that

23    they were going to hold me up with a

24    contract dispute.

25         Q.     Within one week you were



Page 274

1
2    secretly recording your new business
3    partners, that's what you're saying?
4              MR. PEARLSON:  Objection to
5         form.
6         Q.    You already distrusted them?
7         A.    I had a concern.
8         Q.    What was your concern?
9         A.    That they were -- if I didn't
10   make the investment, they would come after
11   me for breach of contract.
12        Q.    Didn't Mr. De Perio e-mail you
13   one week after your investment and say we
14   don't want your money, Mr. Salerno.  We
15   don't want your money.  Didn't he e-mail
16   that to you?
17        A.    Paraphrasing it.  But after my
18   conversation with Mr. Hall, I understood it
19   as they were using that as a tactic to come
20   after me.
21        Q.    What?  What tactic?  They said
22   they don't want your money.  These are the
23   people you're accusing of fraudulently
24   inducing you, who said don't invest,
25   Mr. Salerno.  That's what they said, don't



```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x
CYPRESS HOLDINGS, III, L.P.,
individually and derivatively on
behalf of SPORT-BLX, INC.,
            Plaintiff,      Civil Action No.:
                           22-cv-01243(LGS)
      -against-
GEORGE HALL, JOSEPH DE PERIO,
DANIEL STRAUSS, FRANCIS RUCHALSKI,
CESAR BAEZ, CHRISTOPHER JOHNSON,
SPORT-BLX, INC., SPORT-BLX SECURITIES,
INC., CLINTON GROUP INC., and
GLASSBRIDGE ENTERPRISES, INC.,

            Defendants.

- - - - - - - - - - - - - - - - - - - - x

SPORT-BLX, INC., individually and
derivatively on behalf of its
shareholders,

            Plaintiff,      Case No.:
                           22-cv-08111(LGS)
      -against-

MICHAEL M. SALERNO and CYPRESS
HOLDINGS, III, L.P.,
            Defendants.
- - - - - - - - - - - - - - - - - - - - x
(Caption continued on the following page.)
```

(Caption continued on the following page.)

MAGNA LEGAL SERVICES
320 West 37th Street, 12th Floor
New York, New York 10018
(866) 624-6221



Page 2

1

2          Videotaped deposition of MICHAEL
           SALERNO, taken pursuant to subpoena, was
3          held at MORVILLO ABRAMOWITZ GRAND IASON
           & ANELLO, 565 Fifth Avenue, commencing
4          June 7, 2023, 9:56 a.m., before Leslie
           Fagin, a Stenographic Court Reporter and
5          Notary Public in the State of New York.

6

7

8

9

10                    - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Page 44

```
 1              M. Salerno
 2  your niece and nephew?                    10:48:36
 3      A.   That's right.                    10:48:40
 4      Q.   Why wouldn't you want to -- what 10:48:41
 5  would be the problem in your mind with, if 10:48:45
 6  you had to, conveying that you were the    10:48:49
 7  trustee of that trust and your niece and   10:48:51
 8  nephew were beneficiaries?                 10:48:55
 9      A.   My concern was that Mr. Hall and  10:48:58
10  Mr. De Perio would do exactly what they have 10:49:00
11  done to date, is start harassing all the   10:49:04
12  people on this list and then look for ways to 10:49:09
13  punitively cause harm and damage to me by  10:49:11
14  just knowing that I'm affiliated with this. 10:49:15
15      Q.   So you thought in August of 2019, 10:49:19
16  when you refused to provide that information, 10:49:22
17  you thought Joe De Perio and George Hall   10:49:25
18  would harass people?                       10:49:28
19      A.   I thought they were capable of it 10:49:29
20  and I didn't see why they needed to know it. 10:49:33
21  There is no reason why someone would need to 10:49:39
22  know the details of my family's trusts.    10:49:42
23      Q.   But they didn't ask you for the   10:49:48
24  details of your family trust, did they?    10:49:50
25      A.   When I say details, I should have 10:49:53
```



Page 45

                        M. Salerno
1
2    been more clear.  They don't need to know any    10:49:56
3    trust exists.  Why would they -- is George       10:49:58
4    going to allow me to see all the trusts he        10:50:04
5    has and Mr. De Perio's, no, it's irrelevant.      10:50:07
6        Q.   Mr. Salerno, you chose to become a       10:50:15
7    shareholder of Sport-BLX, correct?                10:50:18
8        A.   Yes.                                      10:50:19
9        Q.   You chose to become a director of        10:50:20
10   Sport-BLX?                                         10:50:22
11       A.   Yes, but I did not choose to             10:50:22
12   provide information that was not required for     10:50:26
13   the investment.                                    10:50:29
14       Q.   You understood that Sport-BLX            10:50:30
15   applied for a broker/dealer license so that      10:50:43
16   it could generate revenue for Sport-BLX,          10:50:46
17   correct?                                           10:50:49
18       A.   Yes.                                      10:50:56
19       Q.   And you knew that Sport-BLX              10:50:57
20   intended to get a broker/dealer license to        10:51:06
21   trade sport-related assets when you invested,     10:51:09
22   correct?                                           10:51:12
23       A.   Yes, using the definition of trade      10:51:13
24   that you provided earlier.                         10:51:16
25       Q.   So didn't you understand that you       10:51:18



Page 64

```
 1                  M. Salerno
 2       Q.   You disagreed with the need to get    11:14:52
 3  a broker/dealer license?                        11:14:54
 4       A.   I disagreed with the need to get a    11:14:56
 5  broker/dealer license, yes.                     11:15:01
 6       Q.   You disagreed with the manner in      11:15:03
 7  which they were pursuing a broker/dealer        11:15:07
 8  license, correct?                               11:15:10
 9       A.   That's actually a better way to say   11:15:11
10  it than what I previously just said, yes.       11:15:13
11       Q.   Did anyone else on the board agree    11:15:15
12  with your position?                             11:15:22
13       A.   No, they were all patsies to Mr.      11:15:24
14  Hall.                                           11:15:27
15       Q.   Did anyone else on the board agree    11:15:27
16  with your position?                             11:15:29
17       A.   No, they were all patsies --          11:15:30
18            MR. PEARLSON:  What position are we    11:15:33
19       talking about here.                        11:15:34
20       Q.   Let me try that again.                11:15:35
21            Did anyone on the board agree with    11:15:37
22  your position that the management was going     11:15:38
23  about getting a broker/dealer's license in a    11:15:41
24  way it should not?                              11:15:46
25       A.   I'm sorry, can you rephrase the       11:15:49
```



Page 174

```
 1                  M. Salerno
 2      Q.   When did they not vote their shares      15:47:22
 3 in favor of you as a director?                     15:47:25
 4      A.   When I was removed from the board.       15:47:27
 5      Q.   Did they vote their shares in your       15:47:29
 6 favor?                                             15:47:32
 7      A.   They voted the shares that were in       15:47:32
 8 their particular names, but they did not vote      15:47:35
 9 the shares that they indirectly controlled         15:47:38
10 through Glassbridge.                               15:47:40
11      Q.   Whose shares did they control?           15:47:43
12      A.   Glassbridge's.                           15:47:45
13      Q.   What's your basis for saying they        15:47:46
14 controlled Glassbridge's vote?                     15:47:48
15      A.   All of the decisionmakers at             15:47:50
16 Glassbridge reported to George Hall and, in        15:47:56
17 essence, they acted as puppets for George          15:47:59
18 Hall.                                              15:48:05
19      Q.   What is your evidence for that?          15:48:05
20      A.   The actions that they took, they         15:48:06
21 never took an independent action, they always      15:48:08
22 took the action that George Hall told them         15:48:11
23 to.                                                15:48:14
24      Q.   So you don't have any evidence, you      15:48:14
25 are just inferring from actions taken by           15:48:16
```



Page 1

UNITED STATES DISTRICT COURT?
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX,
INC.,

                    Plaintiff,

     -V-                    Civil Action No.:
                            1:22-cv-1243-LGS

GEORGE HALL, JOSEPH DE PERIO, DANIEL
STRAUSS, FRANCIS RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX INC.,
SPORT-BLX SECURITIES, INC., CLINTON GROUP
INC., AND GLASSBRIDGE ENTERPRISES INC.,

                    Defendants.
----------------------------------------X
SPORT-BLX, INC., individually and
derivatively on behalf of its shareholders,

                    Plaintiff,

     -V-                    Case No.:
                            1:22-cv-8111-LGS

MICHAEL M. SALERNO, CYPRESS HOLDINGS, III,
L.P

                    Defendants.
----------------------------------------X
              DATE: July 20, 2023
              TIME: 9:35  A.M.


         VIDEOTAPED EXAMINATION BEFORE
TRIAL of the Defendant, Michael Salerno,
taken by Mr. Sack, pursuant to Order, held
at the offices of Hindy Freilich, a Notary
Public of the State of New York.



Page 31

1

2          Q.    Were you given any information,

3    in your memory, about it, Mr. Salerno?

4          A.    No.  That's why I asked for

5    detail.

6          Q.    Well, did you just ask what are

7    we spending -- what does professional

8    expenses consist of?

9          A.    I did.

10         Q.    And what were you told?

11         A.    I did not get an answer.

12         Q.    What did you think it related

13   to?  Did you have any understanding at all?

14              MR. PEARLSON:  Objection to

15         form.

16              Go ahead.

17         A.    Again, I've answered this.  I

18   asked for detail because professional

19   expenses can be a plethora.  It could be

20   hiring someone to come in, you know, and

21   cook for us, for masseuses, it could be

22   legal, it could be accounting, it could be

23   anything.  That's why I asked for detail.

24         Q.    Did you have any basis to think

25   it was something other than legal?



Page 32

```
 1
 2            MR. PEARLSON:  Objection to
 3      form.
 4       A.    I've answered it the best I
 5   can.
 6       Q.    Do you see there $184,000 in
 7   travel and entertainment?
 8       A.    I do.
 9       Q.    And did you understand that to
10   relate to marketing related expenses?
11       A.    Not necessarily, no.  And I
12   asked for detail to determine what that
13   was, because I was very concerned about
14   that being personal.
15       Q.    And you see there $21,000 in
16   market data.  Did you understand that to
17   relate to marketing expenses?
18       A.    No.  Again, I asked for detail
19   because market data could be stock related.
20       Q.    Well, if it was stock related,
21   then it would relate to the business of the
22   company, wouldn't it?
23            MR. PEARLSON:  Objection to
24      form.
25       A.    Not necessarily, if this was
```



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x
CYPRESS HOLDINGS, III, L.P.,
Individually and derivatively on
Behalf of SPORT-BLX, INC.,

                           Civil Action No.
                           1:22-cv-01243(LGS)
            Plaintiff,
       -against-
GEORGE HALL, JOSEPH DE PERIO,
DANIEL STRAUSS, FRANCIS RUCHALSKI,
CESAR BAEZ, CHRISTOPHER JOHNSON,
SPORT-BLX, INC., SPORT-BLX SECURITIES,
INC., CLINTON GROUP INC., and
GLASSBRIDGE ENTERPRISES, INC.,

            Defendants.
- - - - - - - - - - - - - - - - - - - - x
SPORT-BLX, INC., individually and
derivatively on behalf of its
shareholders,

                           Case No.:
                            22-cv-08111(LGS)

       -against-
MICHAEL M. SALERNO and CYPRESS
HOLDINGS, III, L.P.,

            Defendants.
- - - - - - - - - - - - - - - - - - - - x
                  REMOTE VIDEOTAPED
              DEPOSITION OF MICHAEL SALERNO
               taken remotely via ZOOM
               Shrewsberry, New Jersey
               Tuesday, July 25, 2023
Job Number   1007126



Page 2

1

2

3

4    REPORTED BY:

5              BOBBIE ZELTMAN

             Professional Realtime Court Reporter

6            and Notary for New York and Florida

7

8

9                              July 25, 2023

                               9:32 a.m.

10

11

12           Remote videotaped deposition of MICHAEL

13    SALERNO taken by Plaintiff, pursuant to Notice, taken

14    remotely via ZOOM in Shrewsberry, New Jersey, before

15    BARBARA R. ZELTMAN, a Professional Realtime Court

16    Reporter and Notary Public within and for the State

17    of Florida.

18

19

20

21

22

23

24

25



Page 258

```
1                    MICHAEL SALERNO
2        Q      Do you know he was like your
3    senator from New Jersey for a while, right?
4        A      I'm not a big politics guy, but it
5    doesn't surprise me.
6        Q      So you are unaware that Robert
7    Torricelli was a senator from New Jersey?
8        A      I knew he was a senator.
9        Q      You didn't know he's from New
10   Jersey?
11       A      I was not aware.
12       Q      Are you testifying here today that
13   Robert Torricelli was a patsy or puppet for
14   George Hall?
15       A      I think that all of the parties at
16   GlassBridge, they followed suit and did
17   whatever Mr. Hall told them.
18       Q      So insofar as GlassBridge's board
19   was involved in approving the transactions,
20   say, when GlassBridge bought Mr. Hall and
21   Mr. De Perio DePerio's shares you'd testify
22   today you think Mr. Torricelli is a patsy or
23   puppet for Mr. Hall, too, correct?
24              Have I got your testimony right?
25       A      I think that sounds fair given
```



```
 1                    MICHAEL SALERNO
 2      especially the actions that they've taken in
 3      the short period of time that they've taken
 4      them.
 5          Q    What actions are you aware of the
 6      board of GlassBridge has taken?
 7          A    One example that comes to my mind
 8      is the action they took with regard to the
 9      purchase transaction, which over a matter of
10      what, two or three days, they negotiated,
11      did due diligence, had a full understanding
12      of the board and consummated, and they
13      funded a $15 million transaction.
14               That's not normal.
15          Q    So we're talking about the
16      December '19 acquisition of some of Mr. De
17      Perio and Mr. Hall's shares by GlassBridge,
18      correct?
19          A    I'm not sure the date, but I'm
20      referencing the transaction between
21      GlassBridge, Mr. De Perio and Mr. Hall.
22          Q    And that's the transaction that led
23      to GlassBridge having voting control over
24      the board, right, that led to your removal?
25          A    Yes.
```



Page 277

```
 1                   MICHAEL SALERNO
 2            dated Friday, March 18, 2022, 12:31
 3            p.m., EDT, Bates Numbers
 4            CYPRESS-00000460 through
 5            CYPRESS-00000461, marked for
 6            Identification.)
 7    BY MR. CARBONE:
 8            Q     Mr. Salerno, I'm going to put
 9       before you what we've marked as Salerno 51
10       for Identification, a two-page document
11       bearing Cypress-00000460 through 461.
12                   MR. CARBONE:  Can you zoom in a
13            little there.
14    BY MR. CARBONE:
15            Q     Mr. Salerno, do you recognize this?
16            A     I do.
17            Q     What do you recognize it to be?
18            A     An email that I had sent out.
19            Q     Who did you send it to?
20            A     Shareholders of Sport-BLX.
21            Q     How many?  How many shareholders of
22       Sport-BLX?
23            A     I don't recall.  I don't recall.
24            Q     Did you send it by BCC in the To
25       line?
```



Page 278

```
 1                    MICHAEL SALERNO
 2        A     I must have.
 3        Q     And so you would have in your
 4   possession, like, the date of on the To line
 5   so we know, if I wanted to know who actually
 6   received this potentially right here, right?
 7        A     I would assume yes.  I would think
 8   so.
 9        Q     This includes an article written by
10   I guess Ivan Moreno.
11              Did you ever talk to Mr. Moreno?
12        A     I don't recall speaking to him, but
13   it doesn't mean I didn't.  I just don't
14   recall.  Not ringing a bell.
15        Q     Did any of the plaintiffs join your
16   efforts?
17        A     I'm sorry?
18        Q     Did any of the plaintiffs you
19   reached out to join your efforts during your
20   lawsuit?
21        A     No.
22        Q     Are any of the plaintiffs who you
23   reached out whose names I can't tell from
24   this, are any of them paying for any of the
25   costs of this lawsuit?
```



Page 312

1                    MICHAEL SALERNO
2        GlassBridge acquired shares, they were, in
3        effect, buying the platform, is that what
4        you are saying, Mr. Salerno?
5            A     In effect, yes.  Effectively, by
6        buying the company's shares, you are buying,
7        right, the assets of that company, and the
8        biggest asset of Sport-BLX was its platform.
9            Q     Do you know what's being done with
10       that platform currently?
11           A     Other than it being used by
12       Metabilia?
13           Q     Yeah, other than that, which is
14       your speculation.
15           A     I'm not certain.
16           Q     How much would you pay for it then?
17       If it's worth 55, would you pay, I don't
18       know 47?
19                 MR. PEARLSON:  Objection to
20           form.  Argumentative.
21                 Go ahead.
22           A     I would be so scared to buy
23       anything from Mr. Hall and Mr. De Perio and
24       Mr. Ruchalski and Mr. Strauss and
25       GlassBridge, so I would not be a buyer.



Page 313

1                     MICHAEL SALERNO
2     BY MR. CARBONE:
3          Q     You mean other than the GlassBridge
4     shares you bought in 2021?
5               MR. PEARLSON:  Objection.
6          A     That's not a particular
7     functioning, you know, software that they
8     could embed the virus, I would not trust
9     them.
10              MR. CARBONE:  Move the strike
11         the answer as nonresponsive.
12              I have a lot more I could do.
13         There's a lot of allegations.  There are
14         eight counts against my clients.
15              Given the time constraints we're
16         under, I'm going to pass the baton to
17         my -- to John Sack to take the rest of my
18         time for today.
19              MR. SACKS:  Let's just take
20         five minutes, and we'll rearrange and
21         start right back up.
22              MR. PEARLSON:  Can I ask the
23         videographer how long we've been on
24         the record today?
25                   THE VIDEOGRAPHER:  Do you want

