# EXHIBIT J



**CHIESA SHAHINIAN & GIANTOMASI PC**

11 Times Square, 34th Floor, New York, NY 10036
csglaw.com

A. ROSS PEARLSON
Member

rpearlson@csglaw.com

O  973.530.2100      F  973.325.1501

**BY E-MAIL**

August 25, 2023

Jonathan S. Sack
Morvillo Abramowitz Grand Iason & Anello P.C.
565 Fifth Avenue
New York, New York 10017

      Re:   *Cypress Holdings, III, L.P. v. Hall, et al.*, Docket No. 22-cv-01243 (LGS)
                *Sport-BLX, Inc. v. Salerno, et al.*, Docket No. 22-cv-08111 (LGS)

Dear Jonathan,

     As you know, this firm represents Plaintiff Cypress Holdings, III, L.P. ("Cypress") in the action entitled *Cypress Holdings, III, L.P. v. Hall, et al.*, Docket No. 22-cv-01243 (LGS) (the "Cypress Action"). This firm also represents Defendants Michael M. Salerno ("Mr. Salerno") and Cypress (collectively, the "Cypress Parties") in the related action entitled *Sport-BLX, Inc. v. Salerno, et al.*, Docket No. 22-cv-08111 (LGS) (the "Sport-BLX Action") (collectively, with the Cypress Action, the "Actions"). On October 13, 2022, the Hon. Lorna G. Schofield, U.S.D.J. ordered that the Actions be "coordinated for purposes of discovery." (Cypress Docket, ECF No. 56; Sport-BLX Docket, ECF No. 11). In accordance with the Order entered in these Actions by Judge Schofield on August 21, 2023 (Cypress Docket, ECF No. 124; Sport-BLX Docket, ECF No. 63), the Cypress Parties submit this letter setting forth their "supplemental response to Interrogatory No. 13[.]" which was initially served on the Cypress Parties by Sport-BLX, Inc. ("Sport-BLX") and George Hall ("Mr. Hall) on November 7, 2022.

     **13.**    **For each cause of action asserted in Your complaint, state with specificity each category of damages alleged, the computation of each category of damages alleged, the basis for each category of damages alleged, and identify all Documents upon which You rely to support any claim by You for damages.**

     **RESPONSE**: The Cypress Parties object to this Interrogatory to the extent that it requests information protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or other applicable privilege. Subject to and without waiving this objection or the General Objections set forth in the Cypress Parties' December 7, 2022 Responses and Objections to Sport-BLX, Inc.'s and George Hall's First Set of Interrogatories, the Cypress Parties state the following:

NEW JERSEY    NEW YORK

August 25, 2023
Page 2

**Common Factual Basis for Damages Alleged in Each Count of the Second Amended Complaint**

On February 28, 2019, after negotiations between Mr. Hall and Joseph De Perio ("Mr. De Perio") (collectively, the "Founders"), on the one hand, and Mr. Salerno, on the other, Cypress entered into two Common Stock Purchase Agreements with Sport-BLX for the purchase of Sport-BLX common stock. In the first Agreement, Cypress purchased 5,263 shares of Sport-BLX stock at a price of $95.00 per share (the "Founders' Round Price"). In the second Agreement, Cypress purchased an additional 2,497 shares of Sport-BLX stock at a price of $200.18 per share (the "Second Round Price"), bringing its total investment in Sport-BLX to $1 million. On that same date, Sport-BLX and Cypress also executed a Side Letter Agreement (the "Side Letter Agreement") wherein Sport-BLX and the Founders represented that, as long as Cypress continued to hold in the aggregate at least 2.5% of the capital stock of Sport-BLX, the Founders would vote their capital stock (constituting approximately 83% of the outstanding stock at the time) in favor of a Cypress representative being elected to the Board of Directors. The Side Letter Agreement also contained anti-dilution protection tag-along rights, among other material provisions, concerning Cypress' purchase of Sport-BLX stock.

As alleged in the Second Amended Complaint ("SAC"), Mr. Hall and Mr. De Perio induced Cypress to make its investment in Sport-BLX through a series of fraudulent misrepresentations—both orally and in writing—concerning, among other things: (i) the use of its investment proceeds; (ii) Sport-BLX's business plan, including its purported ability to generate additional revenue through a relationship with a sports asset management fund that would result in Sport-BLX's receipt of advisory, investment and management fees; and, as described above, (iii) a promised seat, for a Cypress representative, on the Sport-BLX Board. The material misrepresentations and promises made by Mr. Hall and Mr. De Perio to get Cypress to invest were knowingly false when made.

For instance, despite their representation that "[a]ll of the proceeds raised through the . . . Founders' Round . . . [w]ould be used for technology development, associated legal expenses and marketing[,]" the Founders caused Sport-BLX to utilize such funds for operating expenses and excessive rent for office space. With respect to the latter, the Founders caused Sport-BLX to enter into a purported lease agreement for commercial office space with Clinton Group, Inc. ("Clinton Group"), an entity owned solely by Mr. Hall, whereby Sport-BLX paid to Clinton Group approximately $500,000 per annum in "rent" to utilize the space then-leased by Clinton Group. The Founders failed to inform Cypress prior to its investment, or ever, that Clinton Group's Sublease Agreement with its overtenant, World Gold Trust Services LLC ("World Gold"), specifically forbade Clinton Group from subletting or permitting others to use the space without World Gold's consent and that such consent was never sought or received. Moreover, the Founders further failed to inform Cypress that, as alleged by World Gold in a subsequently filed lawsuit, Clinton Group became delinquent in its rent payments to World Gold in November 2018 and stopped making those payments altogether in June 2019. During this same time, however, Sport-BLX continued to make monthly "rent" payments to Clinton Group (constituting over half of the total rent owed) for its illegal use and occupancy of a portion of the space.

August 25, 2023
Page 3

   When Mr. Salerno discovered that many of these material representations were untrue, and voiced his objections, Defendants devised a plan to circumvent their obligation to provide Cypress its promised seat on the Board. Mr. Salerno was told by the Founders via e-mail, and during a Board Meeting, that they would "go around him[.]" Defendants did so through the Founders' sale of their controlling interests of Sport-BLX stock to another entity they controlled, Defendant GlassBridge Enterprises, Inc. ("GlassBridge"), at a price of $355.00 per share. More specifically, on December 9, 2019, during a meeting of the Sport-BLX Board, Mr. Hall and Mr. De Perio represented that Sport-BLX had been marketed to numerous investors and that they were unable to identify any investor who had interest in Sport-BLX stock. Accordingly, the Founders represented to Cypress and the Sport-BLX Board that the fair value of Sport-BLX at the time was only $50 per share (which they later raised to $60 per share). Mr. Hall further represented at this same meeting that he would not discuss a sale of his personal shares in Sport-BLX and that such a sale would not help the company or raise capital. At the same time, however, the Founders were telling the Board that Sport-BLX needed to implement a capital plan to sell company shares in order to give Sport-BLX's management the flexibility to raise additional much-needed capital.

   In a meeting of the GlassBridge Board that took place immediately after the Sport-BLX Board meeting, the management of GlassBridge, including Daniel Strauss ("Mr. Strauss") and Francis Ruchalski ("Mr. Ruchalksi"), "suggested to the [GlassBridge] Board that acquiring ownership in [Sport-BLX] from [Mr. Hall and Mr. De Perio] could be beneficial to the Company." According to the minutes of that meeting, "[i]t would give [GlassBridge] voting control of [Sport-BLX]." Just three days later, on December 12, 2019, despite their misrepresentations to Cypress and the Sport-BLX Board, the Founders consummated the sale of their personal shares in Sport-BLX to GlassBridge at a value of $355.00 per share. Specifically, GlassBridge purchased 37,924 shares from Mr. Hall in exchange for cash value of $1,346,302.00 and a note for $12,116,718.00 and 17,076 shares from Mr. De Perio in exchange for cash value of $606,198.00 and a note for $5,455,782.00. Despite Cypress' tag-along rights (and Mr. Hall stating during a prior Sport-BLX Board Meeting that he would offer all shareholders tag-along rights as part of any sale of his personal shares), no shareholder was offered such right with respect to Mr. Hall's or Mr. De Perio's December 12, 2019 sale of their personal shares to GlassBridge. As alleged in the SAC, by selling their own shares, rather than those of the company, at a significantly higher price, the Founders chose to reap a windfall for themselves rather than raise additional needed capital for Sport-BLX.

   After selling their controlling interest in Sport-BLX to GlassBridge through this self-interested transaction, the Founders (and the other Defendants) used GlassBridge to deprive Cypress of its seat on the Board. Not surprisingly, shortly after the sale of stock to GlassBridge, (which was effectuated the very last day GlassBridge could be deemed a shareholder of record and eligible to vote at Sport-BLX's Annual Shareholders' Meeting), GlassBridge voted its shares so as to eliminate Cypress' promised seat on the Board. As a result, Defendants were able to deny Mr. Salerno and Cypress access to information to effectively voice their objections to their conduct.

   Once Mr. Salerno had been removed from the Sport-BLX Board, the Defendants created new entities, including Defendant Sport-BLX Securities, Inc. ("Sport-BLX Securities"), that they owned and controlled to engage in the same line of business as Sport-BLX; namely, the use of a sport-based

August 25, 2023
Page 4

alternative asset trading platform to monetize and trade such asserts. In doing so, Defendants usurped the business opportunities that were the subject of Sport-BLX's business plan, and that Defendants represented to Cypress would be pursued by Sport-BLX. Relatedly, Defendants engaged in a series of self-interested transactions that had the effect of siphoning off Sport-BLX's remaining value and assets (most notably its proprietary trading platform and code) to Sport-BLX Securities, leaving Sport-BLX an empty shell unable to conduct business. Meanwhile, as a result of the above-described conduct and transactions, Sport-BLX Securities, of which Mr. Hall and Mr. De Perio are the majority owners, now possesses the proprietary trading platform and code that once belonged to Sport-BLX.

In 2021, long after Mr. Salerno's removal from the Sport-BLX Board, GlassBridge divested itself of its controlling interest in Sport-BLX stock (68,519 shares) through a sale to Fintech Debt Corp. ("Fintech"), another private entity the Founders own and control, for a price of $2.00 per share (or $137,038.00 in total). GlassBridge's sale back to the Founders of its controlling interest in Sport-BLX at this bargain basement price ($353.00 per share less than for what it had been purchased) enabled the Founders to regain control of Sport-BLX and reap a substantial windfall for themselves. At the end of the day, based on the series of self-interested transactions described above, Messrs. Hall and De Perio received not only cash payments and interest on their respective December 12, 2019 sales of their personal Sport-BLX stock to GlassBridge, but also, significant closing payments of $2,354,736.00 (Mr. Hall) and $1,060,264.00 (Mr. De Perio) in satisfaction of their respective notes. In addition to the millions in cash they received, the Founders also acquired a controlling interest in Sport-BLX. In another self-dealing transaction designed to strip down Sport-BLX of its assets, Defendants used Sport-BLX Securities to acquire Sport-BLX's proprietary trading platform and code (for which it had paid more than $2 million to develop) for the fire sale price of $225,000.

### Count One – Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 C.F.R. § 240.10b-5)

In Count One of the SAC, Cypress asserts a direct claim against Mr. Hall, Mr. De Perio, and Sport-BLX for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, as codified at 17 C.F.R. § 240.10b-5. "Out of pocket damages are the typical measure of damages awarded in securities fraud cases brought under § 10(b) and Rule 10b–5." *In re Credit Suisse First Boston Corp. Securities Litigation*, 1998 WL 734356, at *12 (S.D.N.Y. Oct. 20, 1998). "They are measured as 'the difference between the purchase price and the true value of the stock.'" *Id.* (citing *In re Crazy Eddie Sec. Litig.*, 948 F.Supp. 1154, 1165 (E.D.N.Y.1996)). See also *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 621 (9th Cir. 1981) ("The general rule allows plaintiffs defrauded in violation of section 10(b) and rule 10b-5 to recover the difference between the value of the consideration they gave and the value of the security they received, plus consequential damages that can be proved with reasonable certainty to have resulted from the fraud."). In Count One, therefore, Cypress seeks to recover the difference between the value of the consideration it paid for its Sport-BLX stock ($1,000,000.00) and the value of that stock at the time of trial, as well as consequential damages that resulted from Defendants' fraud, and prejudgment and post-judgment interest. In support of its damages claim in Count One, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common

August 25, 2023
Page 5

Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, and the transcripts of the depositions in these Actions.

### Count Two – Breach of the Covenant of Good Faith and Fair Dealing

In Count Two of the SAC, Cypress asserts a direct claim for breach of the covenant of good faith and fair dealing against Mr. Hall, Mr. De Perio and Sport-BLX. Based on Defendants' actions described above, and those alleged in the SAC, Cypress seeks compensatory damages in Count Two equating to the value of Cypress' Sport-BLX stock (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) less any remaining value of the acquired stock at the time of trial, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. In support of its damages claim in Count Two, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, and the transcripts of the depositions in these Actions.

### Count Three – Fraud in the Inducement

In Count Three of the SAC, Cypress asserts a direct claim for fraud in the inducement against Mr. Hall, Mr. De Perio and Sport-BLX. "Under New York law, a plaintiff asserting a claim for fraudulent inducement can recover only 'out of pocket' damages." *New York Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F.Supp.3d 216, 235 (S.D.N.Y. 2020) (quoting *Kumiva Grp., LLC v. Garda USA Inc.*, 146 A.D.3d 504, 506 (1st Dep't 2017)). "'[T]he difference between the value of the received consideration and the delivered consideration constitutes "out of pocket" damages.'" *Id.* at 236 (quoting *Kumiva Grp.*, 146 A.D.3d at 506). In Count Three, therefore, Cypress seeks to recover the difference between the value of the consideration it paid for its Sport-BLX stock ($1,000,000.00) and the value of that stock at the time of trial, as well as prejudgment and post-judgment interest and reasonable attorneys' fees.  In support of its damages claim in Count Three, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, and the transcripts of the depositions in these Actions.

August 25, 2023
Page 6

### Count Four – Negligent Representation

In Count Four of the SAC, Cypress asserts a direct claim for negligent misrepresentation against Mr. Hall, Mr. De Perio and Sport-BLX. Under New York law, punitive damages are "available for claims of negligent misrepresentation where 'the defendant's conduct evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Frio Energy Partners, LLC v. Finance Tech. Leverage, LLC*, 2023 WL 4211035, at *20 (S.D.N.Y. June 27, 2023) (quoting *Kemp v. Henry*, 2017 WL 1901433, at *2 (E.D.N.Y. May 6, 2017). "Liability for negligent misrepresentation may be imposed 'only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Amusement Industry, Inc. v. Stern*, 786 F.Supp.2d 758, 778 (S.D.N.Y. 2011) (quoting *Kimmell v. Schaefer,* 89 N.Y.2d 257, 263(1996)). In Count Four, therefore, Cypress seeks to recover both compensatory and punitive damages based on the conduct alleged in the SAC, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. With respect to the former, Cypress seeks to recover the difference between the value of the consideration it paid for its Sport-BLX stock ($1,000,000.00) and the value of that stock at the time of trial. In support of its damages claim in Count Four, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, and the transcripts of the depositions in these Actions.

### Count Five – Breach of Fiduciary Duty

In Count Five of the SAC, Cypress asserts a direct claim for breach of fiduciary duty against Mr. Hall and Mr. De Perio. "Under New York law, '[p]unitive damages are available in cases of breach of fiduciary duty, so long as a very high degree of moral culpability is exhibited.'" *Shulman v. Chaitman LLP*, 392 F.Supp.3d 340, 357 n.7 (S.D.N.Y. 2019) (quoting *Schweizer v. Mulvehill*, 93 F. Supp.2d 376, 400 (S.D.N.Y. 2000)). In Count Five, therefore, Cypress seeks to recover both compensatory and punitive damages based on the conduct alleged in the SAC, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. With respect to the former, Cypress seeks to recover the difference between the value of Cypress' Sport-BLX stock (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) and the value of that stock at the time of trial. In support of its damages claim in Count Five, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, and the transcripts of the depositions in these Actions.

August 25, 2023
Page 7

### Counts Six and Seven – Unjust Enrichment

In Count Six of the SAC, Cypress asserts a direct claim for unjust enrichment against Mr. Hall, Mr. De Perio, Sport-BLX Securities and GlassBridge. In Count Seven, Cypress asserts a derivative claim for unjust enrichment, on behalf of Sport-BLX, against these same Defendants. "[T]he measure of damages for an unjust enrichment claim is restricted to the 'reasonable value' of the benefit conferred upon the defendants." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 489, 534 (S.D.N.Y. 2011). Based on the allegations set forth in the SAC, the Defendants have been and continue to be unjustly enriched to the detriment of Cypress and Sport-BLX. At the very least, the reasonable value of the benefit conferred upon the Defendants is equal to the amount invested by Cypress into Sport-BLX ($1,000,000), the amount of cash payments and interest that the Founders received on their respective December 12, 2019 sales of their personal Sport-BLX stock to GlassBridge, the closing payments that Mr. Hall ($2,354,736.00) and Mr. De Perio ($1,060,264.00) received in satisfaction of their respective notes, and the difference between the amount paid by Sport-BLX to develop its proprietary trading platform and code (which was more than $2 million) and the price of $225,000 which Sport-BLX Securities paid to acquire that proprietary trading platform and code. Cypress further seeks prejudgment and post judgment interest and reasonable attorneys' fees. In support of its damages claims in Counts Six and Seven, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the agreements/communications between Defendants related to the licensing/sale of Sport-BLX's proprietary trading technology/platform, and the transcripts of the depositions in these Actions.

### Counts Eight, Nine, and Ten – Tortious Interference With Contract

In Count Eight of the SAC, Cypress asserts a direct claim for tortious interference with contract against GlassBridge. In Count Nine of the SAC, Cypress asserts a direct claim for tortious interference with contract against Clinton Group. In Count Ten of the SAC, Cypress asserts a direct claim for tortious interference with contract against Sport-BLX Securities. All three of these claims relate to interference by the above-listed entities which prevented Cypress from receiving the benefits of its bargain with Sport-BLX, namely: (1) preventing Cypress from maintaining its seat on Sport-BLX's Board of Directors, pursuant to the Side Letter Agreement; (2) using Cypress' investment solely for the development of technology, in contravention of the express representations made to Cypress; and (3) facilitating the sale of Sport-BLX's proprietary trading platform and code for less than fair-market value in contravention to Sport-BLX's stated business plan and purpose.

"It is well settled that, under New York law, a plaintiff in a tortious interference with contract case is entitled to damages in the amount of the full pecuniary loss of the benefits of the contract, and that 'the elements of damages, including consequential damages, [are] those recognized under the more liberal rules applicable to tort actions.'" *Int'l Minerals & Resources, S.A. v. Pappas*, 96 F.3d 586, 597 (2d Cir. 1996) (quoting *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 197 n. 6 (1980)). Additionally, "'an injured party can recover punitive damages when the tortious

August 25, 2023
Page 8

act complained of involved a wanton or reckless disregard of the plaintiff's rights.'" *Int'l Minerals & Resources, S.A. v. Bomar Resources, Inc.*, 5 F.App'x 5, 9 (2d Cir. 2001) (quoting *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 77 (2d Cir. 1986)). Accordingly, in Counts Eight, Nine and Ten of the SAC, Cypress seeks compensatory damages, consequential damages, and punitive damages, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. With respect to Count Eight, Cypress seeks compensatory damages equating to the value of Cypress' Sport-BLX stock (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) less any remaining value of the acquired stock at the time of trial. With respect to Count Nine, Cypress seeks compensatory damages in an amount not less than its percentage of the $500,000 per annum paid by Sport-BLX to Clinton Group for Sport-BLX's illegal sublease with the Clinton Group, as well as for payments made by Sport-BLX for insurance and employee benefits for non-Sport-BLX entities and employees. With respect to Count Ten, Cypress seeks compensatory damages in an amount not less than its percentage of the difference between the amount paid by Sport-BLX to develop its proprietary trading platform and code (which was more than $2 million) and the price of $225,000 which Sport-BLX Securities paid to acquire that proprietary trading platform and code. In support of its damages claims in Counts Eight, Nine, and Ten, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, the agreements/communications between Defendants related to the licensing/sale of Sport-BLX's proprietary trading technology/platform, and the transcripts of the depositions in these Actions.

### Count Eleven – Unjust Enrichment

In Count Eleven of the SAC, Cypress asserts a derivative claim for unjust enrichment, on behalf of Sport-BLX, against the Clinton Group. "[T]he measure of damages for an unjust enrichment claim is restricted to the 'reasonable value' of the benefit conferred upon the defendants." *Pure Power Boot Camp, Inc.*, 813 F.Supp.2d at 534. Based on the allegations set forth in the SAC, Clinton Group has been and continues to be unjustly enriched to the detriment of Sport-BLX. At the very least, the reasonable value of the benefit conferred upon Clinton Group is equal to an amount not less than $500,000, the per annum sum that was paid by Sport-BLX to the Clinton Group for its illegal use and occupancy of a portion of the space at 510 Madison Avenue, New York, New York, as well as the amounts paid made by Sport-BLX for insurance and employee benefits for non-Sport-BLX entities and employees. Cypress further seeks prejudgment and post judgment interest and reasonable attorneys' fees. In support of its damages claim in Count Eleven, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, documents related to the "rent" payments from Sport-BLX to Clinton Group and the transcripts of the depositions in these Actions.

August 25, 2023
Page 9

### Count Twelve – Aiding and Abetting a Breach of Fiduciary Duty

In Count Twelve of the SAC, Cypress asserts a derivative claim for aiding and abetting a breach of fiduciary duty, on behalf of Sport-BLX, against Clinton Group, GlassBridge and Sport-BLX Securities. "Under New York law, '[p]unitive damages are available in cases of breach of fiduciary duty, so long as a very high degree of moral culpability is exhibited.'" *Shulman*, 392 F.Supp.3d at 357 n.7 (quoting *Schweizer*, 93 F. Supp.2d at 400). Accordingly, in Count Twelve of the SAC, Cypress seeks both compensatory and punitive damages, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. With respect to GlassBridge, Cypress seeks compensatory damages equating to the difference between the value of Sport-BLX's shareholders' stock (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) and the value of that stock at the time of trial. With respect to Clinton Group, Cypress seeks compensatory damages in an amount not less than the $500,000 per annum paid by Sport-BLX to Clinton Group for Sport-BLX's illegal sublease with the Clinton Group, as well as for payments made by Sport-BLX for insurance and employee benefits for non-Sport-BLX entities and employees. With respect to Sport-BLX Securities, Cypress seeks compensatory damages in an amount not less than the difference between the amount paid by Sport-BLX to develop its proprietary trading platform and code (which was more than $2 million) and the price of $225,000 which Sport-BLX Securities paid to acquire that proprietary trading platform and code. In support of its damages claim in Count Twelve, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, the agreements/communications between Defendants related to the licensing/sale of Sport-BLX's proprietary trading technology/platform, documents related to the "rent" payments from Sport-BLX to Clinton Group, and the transcripts of the depositions in these Actions.

### Counts Thirteen and Fourteen – Breach of Fiduciary Duty

In Count Thirteen of the SAC, Cypress asserts a derivative claim for breach of fiduciary duty, on behalf of Sport-BLX, against Mr. Hall and Mr. De Perio. In Count Fourteen of the SAC, Cypress asserts a derivative claim for breach of fiduciary duty, on behalf of Sport-BLX, against Mr. Ruchalski and Mr. Strauss. "Under New York law, '[p]unitive damages are available in cases of breach of fiduciary duty, so long as a very high degree of moral culpability is exhibited.'" *Shulman*, 392 F.Supp.3d at 357 n.7 (quoting *Schweizer*, 93 F. Supp.2d at 400). In Counts Thirteen and Fourteen, therefore, Cypress, on behalf of Sport-BLX, seeks to recover both compensatory and punitive damages based on the conduct alleged in the SAC, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. With respect to the former, Cypress seeks compensatory damages equating to the difference between the value of Sport-BLX's shareholders' stock (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) and the value of that stock at the time of trial. In support of its

August 25, 2023
Page 10

damages claims in Counts Thirteen and Fourteen, Cypress will rely upon the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, the Common Stock Purchase Agreements between Sport-BLX's shareholders and Sport-BLX, and the transcripts of the depositions in these Actions.

### Count Fifteen – Breach of Fiduciary Duty

In Count Fifteen of the SAC, Cypress asserts a direct claim for breach of fiduciary duty against Mr. Ruchalski and Mr. Strauss. "Under New York law, '[p]unitive damages are available in cases of breach of fiduciary duty, so long as a very high degree of moral culpability is exhibited.'" *Shulman*, 392 F.Supp.3d at 357 n.7 (quoting *Schweizer*, 93 F. Supp.2d at 400). In Count Fifteen, therefore, Cypress seeks to recover both compensatory and punitive damages based on the conduct alleged in the SAC, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. With respect to the former, Cypress seeks to recover the difference between the value of Cypress' Sport-BLX stock (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) and the value of that stock at the time of trial. In support of its damages claim in Count Fifteen, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, and the transcripts of the depositions in these Actions.

### Count Sixteen – Breach of Fiduciary Duty

In Count Sixteen of the SAC, Cypress asserts a derivative claim for breach of fiduciary duty, on behalf of Sport-BLX, against Christopher Johnson ("Mr. Johnson") and Cesar Baez ("Mr. Baez"). "Under New York law, '[p]unitive damages are available in cases of breach of fiduciary duty, so long as a very high degree of moral culpability is exhibited.'" *Shulman*, 392 F.Supp.3d at 357 n.7 (quoting *Schweizer*, 93 F. Supp.2d at 400). In Count Sixteen, therefore, Cypress seeks to recover both compensatory and punitive damages based on the conduct alleged in the SAC, as well as prejudgment and post-judgment interest and reasonable attorneys' fees. With respect to the former, Cypress seeks compensatory damages in an amount not less than the difference between the amount paid by Sport-BLX to develop its proprietary trading platform and code (which was more than $2 million) and the price of $225,000 which Sport-BLX Securities paid to acquire that proprietary trading platform and code. In support of its damages claim in Count Sixteen, Cypress will rely upon, in addition to the factual allegations set forth in the SAC and those set forth above, the various minutes from the meetings of the Board of Directors of Sport-BLX, the agreements/communications between Defendants related to the licensing/sale of Sport-BLX's proprietary trading technology/platform to Sport-BLX Securities, and the transcripts of the depositions in these Actions.

August 25, 2023
Page 11

### Count Seventeen – Usurpation of a Corporate Opportunity

In Count Seventeen of the SAC, Cypress asserts a derivative claim for usurpation of a corporate opportunity, on behalf of Sport-BLX, against Mr. Hall and Mr. De Perio A calculation of what the employer would have made of the diverted corporate opportunity is an available measure of damages. *See* Restatement, Agency 2d, § 421A, Comment on Clause [c]. In Count Seventeen, therefore, Cypress, on behalf of Sport-BLX, seeks to recover damages in an amount no less than the difference between the consideration paid to ConsenSys by Sport-BLX to create, develop and produce Sport-BLX's proprietary sports-based asset trading platform, and the licensing and sale of the trading platform to Sport-BLX Securities, as well as prejudgment and post judgment interest and reasonable attorneys' fees. In support of its damages claim in Count Seventeen, Cypress will rely upon the Subscription Agreement, any and all documents depicting the sale of the platform to Sport-BLX Securities, any and all documents depicting the consideration paid to ConsenSys for development of the trading platform, and the transcripts of the depositions in these Actions.

### Count Eighteen – Corporate Waste

In Count Eighteen of the SAC, Cypress asserts a derivative claim for corporate waste, on behalf of Sport-BLX, against Mr. Hall, Mr. De Perio, Mr. Strauss, Mr. Ruchalski, Mr. Baez, and Mr. Johnson. A claim to damages for waste will arise only in the rare, "unconscionable case where directors irrationally squander or give away corporate assets." *In re Firestar Diamond, Inc.*, 634 B.R. 265, 306 (Bankr. S.D.N.Y. 2021) (quoting *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006)). This claim, as alleged in the SAC, is based upon Defendants' irrational and below-fair market value sale of Sport-BLX's proprietary trading platform and code to Sport-BLX Securities. In Count Eighteen, therefore, Cypress, on behalf of Sport-BLX, seeks to recover damages in an amount no less than the difference between the consideration paid to ConsenSys by Sport-BLX to create, develop and produce Sport-BLX's proprietary sports-based asset trading platform, and the licensing and sale of the trading platform to Sport-BLX Securities, as well as prejudgment and post judgment interest and reasonable attorneys' fees. In support of its damages claim in Count Seventeen, Cypress will rely upon the Subscription Agreement, any and all documents depicting the sale of the platform to Sport-BLX Securities, any and all documents depicting the consideration paid to ConsenSys for development of the trading platform, and the transcripts of the depositions in these Actions.

### Count Nineteen – Minority Shareholder Oppression

In Count Nineteen of the SAC, Cypress asserts a direct claim for minority shareholder oppression against Mr. Hall, Mr. De Perio, and GlassBridge. It is well settled that a buy-out of the minority shareholder's interest in the corporation is an available remedy in shareholder oppression cases. *Matter of Kemp & Beatley*, Inc., 64 N.Y.2d 63 (1984). Therefore, in Count Nineteen, Cypress seeks to have its investment bought out (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge), as well as prejudgment and post-judgment interest and reasonable attorneys' fees. In support of its damages claim in Count Nineteen, Cypress will rely upon the Common Stock Purchase Agreements between Cypress, Sport-BLX and the Founders, the Side Letter Agreement, the Common Stock

August 25, 2023
Page 12

Purchase Agreements between GlassBridge and the Founders, the various minutes from the meetings of the Board of Directors of Sport-BLX and GlassBridge, the documents/oral representations given/made to Cypress/Mr. Salerno by the Founders and Sport-BLX to induce Cypress' investment in Sport-BLX, and the transcripts of the depositions in these Actions.

    The Cypress Parties reserve their right to supplement their response to this Interrogatory.

        Sincerely,

        /s/ A. Ross Pearlson
        A. Ross Pearlson
        Member