**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CYPRESS HOLDINGS, III, L.P., individually and derivatively on behalf of SPORT-BLX, INC., | Civil Action No. 1:22-cv-1243-LGS |
| Plaintiff, | |
| v. | |
| GEORGE HALL, JOSEPH DE PERIO, DANIEL STRAUSS, FRANCIS RUCHALSKI, CESAR BAEZ, CHRISTOPHER JOHNSON, SPORT-BLX, INC., SPORT-BLX SECURITIES, INC., CLINTON GROUP INC., and GLASSBRIDGE ENTERPRISES, INC., | |
| Defendants. | |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS DERIVATIVE CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23.1

ALEXANDER M. DUDELSON, ESQ.
26 Court Street – Suite 2306
Brooklyn, New York 11242
(718) 855-5100
(718) 624-9552 FAX

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..ii

PRELIMINARY STATEMENT……………………………………………………….1

FACTUAL AND PROCEDURAL BACKGROUND……………………………………2

ARGUMENT……………………………………………………………………….8

  I.  LEGAL STANDARD………………………………………………………8

  II.  CYPRESS DOES NOT HAVE ACTUAL CONFLICTS PREVENTING IT FROM
      ADEQUATELY REPRESENTING SHAREHOLDER INTERESTS. …………...……11

    A.  Cypress May Act On Behalf Of Sport-BLX And Simultaneously
       Seek Damages From The Company………………………………………………..11

    B.  Cypress Is Not Pursuing The Same Damages Through
       Its Direct And Derivative Claims………………………………………………..12

    C.  Cypress Requested Relief Does Not Disqualify It From
       Serving As A Shareholder Representative…………………………………………13

  III.  CYPRESS IS THE ONLY ADEQUATE SHAREHOLDER
      REPRESENTATIVE TO ADVOCATE FOR SPORT-BLX, INC. ……………………14

    A.  There Are No Economic Antagonisms Between Cypress'
       Direct And Derivative Claims…………………………………………………14

    B.  The Other Litigation Pending Between Plaintiff And
       Defendants Do Not Create A Conflict…………………………………………15

    C.  Cypress Does Not Have A Substantially Greater Economic
       Stake In Its Direct Claims………………………………………………………16

    D.  Plaintiff Has Not Shown Vindictiveness Towards Defendants………………………16

    E.  The Degree Of Support From Other Shareholders
       Is Not Applicable In This Action…………………………………………………17

CONCLUSION………………………………………………………………………18

# TABLE OF AUTHORITES

## Cases

*Abrams v. Life Med. Techs., Inc.*,
135 F. Supp. 3d 185, 194 (S.D.N.Y. 2015)……………………………….8, 9, 10, 11

*Argiropoulos v. Kopp,* 2
007 WL 954747 (D. Md. Mar. 26, 2007)………………………………………..14

*Blum v. Morgan Guaranty Trust Co. of New York*,
539 F.2d 1388 (5th Cir. 1976)…………………………………………………15

*Brickman v. Tyco Toys, Inc.,,*
731 F. Supp. 101 (S.D.N.Y. 1990)………………………………………………..12

*Cohen v. Bloch*,
507 F. Supp. 321, 324 (S.D.N.Y. 1980)…………………………………………14

*Cords-Auth v. Crunk, LLC*.,
815 F. Supp. 2d 778, 794 (S.D.N.Y. 2011)………………………………………11

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736, 753 (S.D.N.Y. 2004)……………………………………9, 14

*Eshelman v. Orthoclear Holdings, Inc.,*
2009 WL 506864 (N.D. Cal. Feb. 27, 2009)……………………………………14

*Hawkins on behalf of MedApproach, LP v. MedApproach Holdings, Inc*.,
2020 WL 4349813 (S.D.N.Y. July 29, 2020)…………………………………….9

*Hodnett v. Medical Partners Opportunity Master Fund II-A, L.P*.,
2022 WL 4072935 (S.D.N.Y. September 2, 2022)………………………………9

*in re JPMorgan Chase & Co. S'holder Derivative Litig.*,
2008 WL 4298588 (S.D.N.Y. Sept. 19, 2008)…………………………………10

*JFURTI, LLC v. Singal*,
2018 WL 6332907 (S.D.N.Y. Nov. 12, 2018)………………………….…14, 15

*Kane Assocs. v. Clifford*,
80 F.R.D. 402 (S.D.N.Y. 1978)……………………………………….……11

*Rothenberg v. Sec. Mgmt. Co*. Inc.,
667 F. 2d 958 (11th Cir. 1982)………………………………………………….15

*Ryan v. Aetna Life Ins. Co*.,
765 F. Supp. 133, 136 (S.D.N.Y. 1991)…………………………………………10

*Sweet v. Bermingham*,
65 F.R.D. 551, 554 (S.D.N.Y. 1975)……………………………………………9

*Tatintsian v. Vorotyntsev*,
2018 WL 2324998 (S.D.N.Y. May 22, 2018)………………………………..8, 10

*Urdan v. WR Capital Partners, LLC*,
C.A. No. 2018-0343-JTL (Del. Ch. Aug. 19, 2019)………………………………13

<u>Rules</u>

Fed. R. Civ. P. 23.1(a)................................................................ 9

## <u>PRELIMINARY STATEMENT</u>

This cases arises out of Cypress Holdings, III, L.P. ("Cypress") direct and derivative claims against defendants for violations of Section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5, as codified at 17 C.F.R. § 240.10b-5, and for various violations of state law, including fraudulent inducement, breach of contract, breach of fiduciary duty, shareholder oppression, unjust enrichment, and tortious interference with contract, to redress defendants' fraudulent and other wrongful conduct in connection with Cypress' investment in Sport-BLX Inc. ("Sport-BLX").

Plaintiff's derivative claims are based on defendants' self-serving transactions and the siphoning of Sport-BLX assets into other entities controlled by defendants.  As a result of defendants' misdeeds, the shares of Sport-BLX equity investors are worthless while the individual defendants have pocketed over five million dollars.  Plaintiff's direct claims are based on additional rights that the other minority shareholders in Sport-BLX do not possess, originating from a Side Agreement between the parties and representations made to induce Cypress's investment.

 Defendants move to dismiss plaintiff's derivative claims based on supposed conflicts of interests and Cypress purported inability to adequately represent other minority shareholders under Rule 23.1.  Defendants motion should be denied in its entirety because they have not and cannot show that Cypress has disqualifying conflicts of interest.  Further, Cypress is the only adequate shareholder with the incentive and means to effectively pursue the interests of the remaining minority shareholders.

First, contrary to defendants' unsupported contention, there is no per se rule prohibiting Cypress from suing Sport-BLX directly and suing others derivatively on behalf of Sport-BLX as

a shareholder representative.   These positions are not inherently incompatible, nor do they present an irreconcilable conflict.   Second, Cypress is not seeking double recovery on its direct and derivative claims. However, Cypress *does* have *additional* claims that other shareholders do not have, pursuant to, among other things, the Side Letter Agreement granting Cypress tag-along rights and a seat to Cypress' representative, Michael Salerno, on the Sport-BLX Board.  Third, Cypress has standing to bring its derivative claims as it was a shareholder at the time of defendants' misdeeds and continues to be a shareholder.

Lastly, Cypress is the only shareholder that can fairly and adequately represent the remaining minority shareholders under Rule 23.1.  Apart from defendants, Cypress is the largest shareholder with a significant stake in the outcome of its derivative claims.  Cypress is the only shareholder with the incentive and means to pursue this action.  As movant concedes in his memorandum of law, Cypress has aggressively pursued its prosecution of this action.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 2019, after negotiations between defendants George Hall ("Hall") and Joseph De Perio ("De Perio") (collectively, the "Founders"), and Michael Salerno ("Salerno"), Cypress entered into two Common Stock Purchase Agreements with Sport-BLX, Inc. ("Sport-BLX") for the purchase of Sport-BLX common stock. *See* Dudelson Declaration ("Dec"), Exhibit ("Ex") A.  In the first Agreement, Cypress purchased 5,263 shares of Sport-BLX stock at a price of $95.00 per share (the "Founders' Round Price"). *See Id*. at SPORTBLX00028990.  In the second Agreement, Cypress purchased an additional 2,497 shares of Sport-BLX stock at a price of $200.18 per share (the "Second Round Price"), bringing its total investment in Sport-BLX to $1 million.  *See Id*. at SPORTBLX00028976.  On that same date, Sport-BLX and Cypress also executed a Side Letter Agreement (the "Side Letter Agreement") wherein Sport-

2

BLX and the Founders represented that, as long as Cypress continued to hold in the aggregate at least 2.5% of the capital stock of Sport-BLX, the Founders would vote their capital stock (constituting approximately 83% of the outstanding stock at the time) in favor of a Cypress representative being elected to the Board of Directors. *See* Dudelson Dec. Ex B.  The Side Letter Agreement also contained anti-dilution protection tag-along rights, among other material provisions, concerning Cypress' purchase of Sport-BLX stock.  *See Id.*

As alleged in the Second Amended Complaint ("SAC"), defendants Hall and Perio induced Cypress to make its investment in Sport-BLX through a series of fraudulent misrepresentations—both orally and in writing—concerning, among other things: (i) the use of its investment proceeds; (ii) Sport-BLX's business plan, including its purported ability to generate additional revenue through a relationship with a sports asset management fund that would result in Sport-BLX's receipt of advisory, investment and management fees; and, as described above, (iii) a promised seat, for a Cypress representative, on the Sport-BLX Board. The material misrepresentations and promises made by Hall and De Perio to get Cypress to invest were knowingly false when made.  See Second Amended Complaint, ECF No. 80, (hereafter "SAC").

For instance, despite their representation that "[a]ll of the proceeds raised through the . . . Founders' Round . . . [w]ould be used for technology development, associated legal expenses and marketing[,]" *See* Dudelson Dec. Ex. C,  the Founders caused Sport-BLX to utilize such funds for operating expenses and excessive rent for office space. With respect to the latter, the Founders caused Sport-BLX to enter into a purported sublease for commercial office space with Clinton Group, Inc. ("Clinton Group"), <u>an entity owned solely by defendant Hall</u>, whereby Sport-BLX paid to Clinton Group approximately $500,000.00 per annum in "rent."  The

3

Founders failed to inform Cypress prior to its investment, or ever, that Clinton Group's Sublease Agreement with its overtenant, World Gold, specifically forbade Clinton Group from subletting or permitting others to use the space without World Gold's consent, and that such consent was never sought or received.  Moreover, the Founders further failed to inform Cypress that, as alleged by World Gold in a subsequently filed lawsuit, Clinton Group became delinquent in its rent payments to World Gold in November 2018 and stopped making those payments altogether in June 2019. Nonetheless, Sport-BLX continued to make monthly "rent" payments to Clinton Group (constituting over half of the total rent owed) for its illegal use and occupancy of a portion of the space.  *See* Dudelson Dec. Ex. D

When Mr. Salerno discovered that many of these material representations were untrue, and voiced his objections, defendants devised a plan to circumvent their obligation to provide Cypress its promised seat on the Board. Salerno was told by the Founders via e-mail, and during a Board Meeting, that they would "go around him[.]" *See* Dudelson Dec. Ex. E.  Defendants did so through the Founders' sale of their controlling interests of Sport-BLX stock to another entity that they controlled, defendant GlassBridge Enterprises, Inc. ("GlassBridge"), at a price of $355.00 per share, a value significantly above anything at which they ever indicated the stock to be worth[1].  *See* Dudelson Dec. Ex. F.

More specifically, on December 9, 2019, during a meeting of the Sport-BLX Board, the directors Hall and De Perio represented that Sport-BLX had an urgent need for Capital, which had been marketed to numerous investors and that they were unable to identify any investor who

---

[1] While Defendants claim that this sale of stock was unrelated to Mr. Salerno, Cypress's expert uncovered a "smoking gun," a hidden portion of a spreadsheet produced by Defendants in discovery explicitly considering, in connection with this sale, the amount of shares needed to be transferred to vote Mr. Salerno off of the Board—undisputedly demonstrating Defendants' intention to frustrate Cypress' reasonable expectations of a Board seat through the transaction. *See* Dudelson Dec. Ex. F.

had interest in Sport-BLX stock. *See* Dudelson Dec. Ex G.  Defendants Hall and Deperio did not

disclose their contemplated sale to the other board members or shareholders.  *See Id.* Defendant

Hall stated that Glassbridge would most likely take a conversion of Sport-BLX stock in the

amount of $50.00 per share. Ex. O at 30:45.  The Founders' also made an initial offer for Cypress'

shares at $50.00 per share.  The offer was later raised to $60.00 per share, which they claimed to be

fair value.  Cypress declined to sell its shares.  *See* SAC paragraphs 70 and 71; Ex. O at 58:00, 59:15.

In a meeting of the GlassBridge Board that took place immediately after the Sport-BLX

Board meeting, the Management of GlassBridge, including Mr. Strauss and Mr. Ruchaksi,

"suggested to the [GlassBridge] Board that acquiring ownership in [Sport-BLX] from [Mr. Hall

and Mr. De Perio] could be beneficial to the Company." According to the minutes of that

meeting, "[i]t would give [GlassBridge] voting control of [Sport-BLX]." *See* Dudelson Dec. Ex.

H.  Just three days later, on December 12, 2019, despite their misrepresentations to Cypress and

the Sport-BLX Board, the Founders consummated the sale of their personal shares in Sport-BLX

to GlassBridge at a value of $355.00 per share. Specifically, GlassBridge purchased 37,924

shares from Mr. Hall in exchange for cash value of $1,346,302.00 and a note for $12,116,718.00

and 17,076 shares from Mr. De Perio in exchange for cash value of $606,198.00 and a note for

$5,455,782.00. *See* Dudelson Dec. Ex. I.  Despite Cypress' tag-along rights (and Mr. Hall stating

during a prior Sport-BLX Board Meeting that he would offer all shareholders tag-along rights as

part of any sale of his personal shares), no shareholder was offered such right with respect to Mr.

Hall's December 12, 2019 sale to GlassBridge. As alleged in the SAC, by selling their own

shares, rather than those of the company, at a significantly higher price, the Founders chose to

reap a windfall for themselves rather than raise additional much needed capital for Sport-BLX.

After selling their controlling interest in Sport-BLX to GlassBridge through this self-interested transaction, the Founders (and the other defendants) used GlassBridge to deprive Cypress of its seat on the Board. Not surprisingly, shortly after the sale of stock to GlassBridge, (which was effectuated the very last day GlassBridge could be deemed a shareholder of record and eligible to vote at Sport-BLX's Annual Shareholders' Meeting), GlassBridge voted its shares so as to eliminate Cypress' promised seat on the Board. As a result, defendants were able to deny Mr. Salerno and Cypress access to information to effectively voice their objections to their self-serving conduct.  *See* Dudelson Dec. Ex. J.

Once Mr. Salerno had been removed from the Sport-BLX Board, the defendants created new entities, including defendant Sport-BLX Securities, Inc. ("Sport-BLX Securities"), that they owned and controlled to engage in the same line of business as Sport-BLX; namely, the use of a sport-based alternative asset trading platform to monetize and trade such asserts. In doing so, defendants usurped the business opportunities that were the subject of Sport-BLX's business plan, and that defendants represented to Cypress would be pursued by Sport-BLX.  Relatedly, defendants engaged in a series of self-interested transactions that had the effect of siphoning off Sport-BLX's remaining value and assets (most notably its proprietary trading platform and code) to Sport-BLX Securities, leaving Sport-BLX an empty shell unable to conduct business. Meanwhile, as a result of the above-described conduct and transactions, Sport-BLX Securities, of which Mr. Hall and Mr. De Perio are the majority owners, now possesses the proprietary trading platform and code that once belonged to Sport-BLX.  *See* Dudelson Dec. Ex. K.

In 2021, long after Mr. Salerno's removal from the Sport-BLX Board, GlassBridge divested itself of its controlling interest in Sport-BLX stock (68,519 shares) through a sale to Fintech Debt Corp. ("Fintech"), another private entity the Founders own and control, for a price

of $2.00 per share (or $137,038.00 in total).  GlassBridge's sale back to the Founders of its controlling interest in Sport-BLX at this bargain basement price ($353.00 per share less than for what it had been purchased) enabled the Founders to regain control of Sport-BLX and reap a substantial windfall for themselves. *See* Dudelson Dec. Ex. L. At the end of the day, based on the series of self-interested transactions described above, Messrs. Hall and De Perio received not only cash payments and interest on their respective December 12, 2019 sales of their personal Sport-BLX stock to GlassBridge, but also, significant closing payments of $2,354,736.00 (Mr. Hall) and $1,060,264.00 (Mr. De Perio) in satisfaction of their respective notes. *See* Dudelson Dec. Ex. M.  In addition to the millions in cash they received, the Founders also acquired a controlling interest in Sport-BLX. In another self-dealing transaction designed to strip down Sport-BLX of its assets, defendants used Sport-BLX Securities to acquire Sport-BLX's proprietary trading platform and code (for which it had paid more than $2 million to develop) for the fire sale price of $225,000.  *See* Dudelson Dec. Ex. K

Current Status of Sport-BLX, Inc.

Cypress is a 5.74% shareholder in Sport-BLX; defendants Hall and De Perio (and an affiliated entity) hold a combined interest of 84.75% in Sport-BLX.  *See* ECF No. 141 at 2, n.1. The remaining minority shareholders hold relatively nominal interests.  *See* Dudelson Dec. Ex. N.  As movant correctly notes, Sport-BLX is now an empty shell, essentially insolvent with virtually no assets and over $4,000,000 of debt and unpaid compensation and according to defendant Hall, no path forward.  See Sack Dec. Ex I; See also Dudelson Dec. Ex. K. The equity investors (solicited and induced to invest by defendants) have lost their entire investment consisting of over 4.5 million dollars.   Defendants Hall and Deperio, however, as well as the other entities that they control, have reaped a windfall.

<u>Second Amended Complaint:</u>

The Second Amended Complaint ("SAC") advances nineteen causes of action:

1.   Direct claim against Mr. Hall, Mr. De Perio, and Sport-BLX for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, as codified at 17 C.F.R. § 240.10b-5;

2.   Direct claim for breach of the covenant of good faith and fair dealing against Mr. Hall, Mr. De Perio and Sport-BLX;

3.   Direct claim for fraud in the inducement against Mr. Hall, Mr. De Perio and Sport-BLX;

4.   Direct claim for negligent misrepresentation against Mr. Hall, Mr. De Perio and Sport-BLX;

5.   Direct claim for breach of fiduciary duty against Mr. Hall and Mr. De Perio;

6.   Direct claim for unjust enrichment against Mr. Hall, Mr. De Perio, Sport-BLX Securities and GlassBridge;

7.   Derivative claim for unjust enrichment, on behalf of Sport-BLX, against Mr. Hall, Mr. De Perio, Sport-BLX Securities and GlassBridge;

8.   Direct claim for tortious interference with contract against GlassBridge;

9.   Direct claim for tortious interference with contract against Clinton Group;

10.  Direct claim for tortious interference with contract against Sport-BLX Securities;

11.  Derivative claim for unjust enrichment, on behalf of Sport-BLX, against the Clinton Group;

12.  Derivative claim for breach of fiduciary duty, on behalf of Sport-BLX, against Mr. Hall and Mr. De Perio;

13.  Derivative claim for aiding and abetting a breach of fiduciary duty, on behalf of Sport-BLX, against Clinton Group, GlassBridge and Sport-BLX Securities;

14.  Derivative claim for breach of fiduciary duty, on behalf of Sport-BLX, against Mr. Ruchalski and Mr. Strauss;

15.  Direct claim for breach of fiduciary duty against Mr. Ruchalski and Mr. Strauss;

16.  Derivative claim for breach of fiduciary duty, on behalf of Sport-BLX, against Christopher Johnson ("Mr. Johnson") and Cesar Baez ("Mr. Baez");

17.  Derivative claim for usurpation of a corporate opportunity, on behalf of Sport-BLX, against Mr. Hall and Mr. De Perio;

18.  Derivative claim for corporate waste, on behalf of Sport-BLX, against Mr. Hall, Mr. De Perio, Mr. Strauss, Mr. Ruchalski, Mr. Baez, and Mr. Johnson;

19.  Direct claim for minority shareholder oppression against Mr. Hall, Mr. De Perio, and GlassBridge.

## **ARGUMENT**

## I.   **LEGAL STANDARD**

There is no *per se* rule in the Second Circuit against bringing derivative and direct claims simultaneously. *See Tatintsian v. Vorotyntsev*, 2018 WL 2324998, at *2 (S.D.N.Y. May 22, 2018)

(citing *Abrams v. Life Med. Techs., Inc.*, 135 F. Supp. 3d 185, 194 (S.D.N.Y. 2015). "The general rule is that 'when a derivative plaintiff demonstrates . . . an intent and desire to vigorously prosecute the underlying corporate claim and . . . has engaged competent counsel to assist in that endeavor then, absent either a conflict of interest which goes to the forcefulness of the prosecution or the existence of antagonism between the plaintiff and other shareholders arising from differences of opinion concerning the best method of vindicating the corporate claim, the representation requirement of Rule 23.1 is met. *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 753 (S.D.N.Y. 2004) quoting *Sweet v. Bermingham*, 65 F.R.D. 551, 554 (S.D.N.Y. 1975).

"The burden of demonstrating that plaintiffs would not be able to "render 'fair and adequate representation' rests with" the … defendants." *See Daventree Ltd.*, 349 F. Supp. 2d at 753. Further, "a purely hypothetical dispute will not necessitate dismissal [because a] defendant must show that a serious conflict exists [because] … [acting in the interests of the other shareholders] would harm [plaintiff's] other interests"). *Daventree Ltd.*, 349 F. Supp. 2d at 753 quoting *Sweet,* 65 F.R.D. at 554. Defendants have failed to show that Cypress is not an adequate shareholder representative that is vigorously representing shareholder interests and they have failed to show that Cypress has an <u>actual</u> conflict necessitating dismissal. Movants base their arguments solely on the fact that direct and derivative claims are being brought simultaneously.

Yet, absent a disqualifying conflict, the Second Circuit permits plaintiffs to simultaneously pursue both direct and derivative claims. *See Hodnett v. Medical Partners Opportunity Master Fund II-A, L.P*., 2022 WL 4072935 at 6 (S.D.N.Y. September 2, 2022) (Accordingly, at the pleading stage, the fact that Plaintiffs bring both direct and derivative claims simultaneously is not a basis for dismissal.); *Abrams at* 195 (courts in this Circuit have permitted

9

plaintiffs to pursue derivative claims on behalf of a corporation simultaneously with claims against the same corporation); *Hawkins on behalf of MedApproach, LP v. MedApproach Holdings, Inc*., 2020 WL 4349813 (S.D.N.Y. July 29, 2020) ( "To be an adequate representative, a plaintiff must 'be the one to authorize the suit, and must be sufficiently well informed, diligent, and independent (with the support where necessary of appropriate advisors) to protect the interests of the shareholders and corporation from the potentially competing interests of the attorneys'". *See e.g.*, *in re JPMorgan Chase & Co. S'holder Derivative Litig.*, No. 08 CIV. 974 (DLC), 2008 WL 4298588, at *12 (S.D.N.Y. Sept. 19, 2008)).

When, as here, movant has only shown hypothetical conflicts, the Court can postpone the issue and allow both sets of claims to move forward and then use "their powers to fashion a proper remedy" if a conflict arises.  *See Tatintsian* at 3 quoting *Ryan v. Aetna Life Ins. Co*., 765 F. Supp. 133, 136 (S.D.N.Y. 1991).[2]

Applying these central principles, it is clear that Cypress is the only adequate shareholder representative to represent Sport-BLX's interests.  Apart from defendants Hall and De Perio, Cypress is the largest shareholder in the company and consequently has the largest stake in the outcome of the derivative claims.  The individual ownership interests of the remaining minority shareholders are nominal, with all but one holding less than 1% of Sport-BLX shares individually.   Cypress, conversely, has a substantial stake in the outcome of its derivative claims and has those incentive to pursue its derivative claims.

---

[2] Alternatively, if the Court finds an impermissible conflict in some but not all claims, the Court can allow Plaintiff to pursue the remaining derivative claims or dismiss a particular claim as against some but not all defendants.  *See Abrams* at 185 ("The fifth and sixth causes of action may go forward as derivative claims. Accordingly, the motion to dismiss the fifth and sixth causes of action is denied except that the sixth cause of action, which is a derivative claim on behalf of Life Medical, may not proceed against Life Medical.

As movant concedes in his memorandum of law, plaintiff is vigorously prosecuting this action which so far has comprised 24 days of depositions, the exchange of over 50,000 documents and hundreds of hours of attorney work.  It is not worth the costs and effort for any other minority shareholders with a nominal stake in the outcome to join in the action.  Cypress is the only shareholder with a stake large enough to pursue such litigation and it has diligently done just that.

## II.   CYPRESS DOES NOT HAVE ACTUAL CONFLICTS PREVENTING IT FROM ADEQUATELY REPRESENTING SHAREHOLDER INTERESTS.

Defendants have made only conclusory statements of hypothetical conflicts of interests combined with inaccurate statements of law and a lack of application to the facts in this case: (1) Cypress suing Sport-BLX at the same time as suing others derivatively on Sport-BLX's behalf does not create an automatic conflict; (2) Cypress's direct claims do not compete with its derivative claims; and (3) Cypress has standing as it was a shareholder during the claimed actions, at the time the action was filed and continues to be a shareholder.

### A.   Cypress May Act On Behalf Of Sport-BLX And Simultaneously Seek Damages From The Company.

There is no per se rule prohibiting Cypress from suing Sport-BLX directly and suing others on behalf of a Sport-BLX as derivative shareholder representative.   Contrary to Defendant's unsupported assertion, these positions are not inherently incompatible, nor do they present an irreconcilable conflict.

Indeed, Courts in the Second Circuit have permitted plaintiffs to pursue derivative claims and direct claims against the same corporation simultaneously.  *See Abrams at* 194 ("there is no factual nexus linking the securities fraud and mismanagement claims that might impair plaintiffs from vigorously pursuing both-the former against the corporation and the latter on its behalf.).

11

*See Cords-Auth v. Crunk, LLC.*, 815 F. Supp. 2d 778, 794 (S.D.N.Y. 2011) ("while acknowledging the 'strict standard' that must be applied, the Court finds that Plaintiff has not violated Rule 23.1 by asserting both derivative and direct claims."). *See Kane Assocs. v. Clifford*, 80 F.R.D. 402, 407-408 (S.D.N.Y. 1978) ("The facts, as plaintiffs allege them to be in their verified complaint, show both liability to SNB on the part of its accountants and directors and liability of SNB as well as those defendants to the class.").

**B.      Cypress Is Not Pursuing The Same Damages Through Its Direct And Derivative Claims.**

Contrary to the Sport-BLX Parties' unsupported implication, Cypress is not seeking a double recovery on its direct and derivative claims. The "existence of a conflict is not determined by the extent to which the facts underlying the claims overlap, but instead requires an analysis of whether there is a conflict between the potential recovery for each set of claims. *See Brickman v. Tyco Toys, Inc*. 731 F. Supp. 101 (S.D.N.Y. 1990). Indeed, it is difficult to imagine a situation in which a plaintiff would bring derivative and direct claims in one lawsuit when both sets of claims did not arise from the same set of facts…" *Tatintsian* at 4.

Other than vague and inaccurate allegations that some of Cypress's direct and derivative claims arise from similar sets of facts, movant fails to demonstrate that there is an actual conflict in the recovery of these claims.  While the derivative claims are based on the harms suffered by all of the shareholders based on defendants' improper acts, Cypress's direct claims are based on additional rights that the other shareholders do not possess.

Cypress's direct claims as well as the recovery sought are distinct from the derivative claims based on the Side Letter Agreement, tag along rights, the promise of a board seat, representations by the Founders inducing it to invest.  For example, defendants Hall and De Perio's self-serving

12

sale of their personal shares to GlassBridge at a time when Sport-BLX desperately needed cash constitutes a breach of fiduciary duty as to the company (derivative) claim when instead Sport-BLX could have sold GlassBridge company shares directly.  Defendants' sale of their personal shares was also designed to deny Salerno his seat on the Board of Directors constituting a shareholder oppression (direct) claim as to Cypress for frustrating its "reasonable expectations" under the Side Letter.

Furthermore, Sport-BLX's payments of excessive and illegal rent to defendant Hall's company, the Clinton Group, constitutes both a breach of fiduciary duty (derivative) claim to the company and a violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (direct claim).

## C.    Cypress Requested Relief Does Not Disqualify It From Serving As A Shareholder Representative.

Standing to bring a derivative claims on behalf of a corporation is governed by the law of the state of incorporation.  Delaware law imposes two conditions for derivative standing: first, a contemporaneous ownership requirement, meaning the plaintiff must have been a stockholder at the time of the complained of wrong; and, second, a continuous ownership requirement, meaning the plaintiff must continue to be a stockholder to pursue its claims.  *See Urdan v. WR Capital Partners, LLC*, C.A. No. 2018-0343-JTL (Del. Ch. Aug. 19, 2019).  Cypress satisfies these requirements as it was a shareholder at the time of defendants' wrongdoings, at the time of the filing of the action and continues to be a shareholder.

All derivative claims can potentially lose standing at any time during litigation either through a sale of shares or a merger.  *See Urdan.*  A potential loss of shareholder status in the future is speculative and does not warrant an early dismissal of Cypress's derivative claims.  The

cases cited by movant are neither binding nor applicable as they are not governed by Delaware law.[3]  As discussed above, a hypothetical conflict is not grounds to dismiss a derivative claim. *Daventree Ltd.*, 349 F. Supp. 2d at 753

### III.   CYPRESS IS THE ONLY ADEQUATE SHAREHOLDER REPRESENTAIVE TO ADVOCATE FOR SPORT-BLX, INC.

"An adequate representative must have the capacity to prosecute a derivative suit vigorously and need be free from interests that are antagonistic to the interests of the class." *JFURTI, LLC v. Singal*, 2018 WL 6332907, at *11 (S.D.N.Y. Nov. 12, 2018). "The 'fair and adequate representative' inquiry focuses on the degree of certainty that a derivative plaintiff will vigorously prosecute the corporate claim in the interest of the minority stockholders." *Cohen v. Bloch*, 507 F. Supp. 321, 324 (S.D.N.Y. 1980).

### A.   There Are No Economic Antagonisms Between Cypress' Direct And Derivative Claims

Movant has not demonstrated economic antagonisms between the direct and derivative claims other than their continued conclusory and inaccurate claims of an inherent conflict.  As discussed above, Courts do not hold the mere existence of a simultaneous direct claim against a corporation along with a derivative claim on its behalf to be a per se conflict.  Movant also fails to show how the direct and derivative claims are competing for the same pool of damages. Cypress' claims are based on different and additional rights that the other shareholders do not have pursuant to the Side Agreement and the representations made to induce his investment. Further, Cypress' claims against the different sets of defendants are distinct sets of damages.  For

---

[3] *Agiropolous* was a district Court case from the district of Maryland, involving a Maryland Corporation. *Argiropoulos v. Kopp*, 2007 WL 954747 (D. Md. Mar. 26, 2007); Eshelman was a California District Course Case involving a British Virgin Islands company.  See *Eshelman v. Orthoclear Holdings, Inc.*, 2009 WL 506864 (N.D. Cal. Feb. 27, 2009)

example, Hall and Deperio's sale of their personal shares to GlassBridge at a time when Sport-BLX desperately needed cash constitutes both a breach of fiduciary duty as to the company (derivative) claim and a shareholder oppression (direct) claim as to Cypress for frustrating its "reasonable expectations" under the Side Letter.

Finally, movant makes conclusory allegations regarding Cypress's purported economic incentives to pursue its direct claims it derivative claims. Cypress's percentage ownership interest in Sport-BLX does not equate to a de minimus recovery. Cypress, as the owner of 7,760 shares, has a substantial interest in its recovery on its derivative claims. As movant concedes, Cypress has been aggressively prosecuting their claims.

**B.      The Other Litigation Pending Between Plaintiff And Defendants Do Not Create A Conflict.**

"Outside entanglements" or litigation can be a factor in finding conflicts in derivative litigation when the circumstances make it likely that the representative may disregard the interest of the other shareholders. *See JFURTI.* Unlike the case at bar, in *JFURTI*, plaintiffs had several other actions against defendants making it clear to the Court that the true purpose of the litigation was to collect as a judgment creditor rather than represent the interest of shareholders. In *Blum v. Morgan Guaranty*, the plaintiff was a debtor in default to defendant. The Court concluded that plaintiff purchased shares in the defendant corporation for the purpose of initiating a derivative suit to gain leverage. *See Blum v. Morgan Guaranty Trust Co. of New York*, 539 F.2d 1388 (5th Cir. 1976). In *Rothenberg v. Sec. Mgmt. Co.*, 667 F. 2d 958 (11th Cir. 1982) , the parties had a total of four actions against each other, three of which were brought by plaintiff.

Unlike the plaintiffs in the cases above, plaintiff is not a creditor or debtor of defendants and has not filed any additional lawsuits against them. The only other litigation pending between

the parties is the one action brought by the defendants.  Since defendants knew far in advance that plaintiff was contemplating legal action against them, it is more likely that it is the Sport-BLX defendants who filed their action to gain leverage.

    **C.**    **Cypress Does Not Have A Substantially Greater Economic Stake In Its Direct Claims.**

Once again, other than conclusory statements, movant has not shown that Cypress has a substantially greater economic stake in its direct claims compared to its interest in its derivative claims.  As discussed above, apart from defendants Hall and Deperio, Cypress is the largest shareholder in Sport-BLX, Inc. holding 7,760 shares and consequently has a significant stake in its derivative claims.[4]  The damages that Cypress seeks for its direct and derivative claims are comparable.  Movant provides no basis for their claim that Cypress's potential recovery in its direct claims are substantially greater than its potential recovery in its derivative claims.

    **D.**    **Plaintiff Has Not Shown Vindictiveness Towards Defendants.**

Neither plaintiff nor Salerno has shown vindictiveness toward defendants and the record does show personal animosity.  Certainly, it is plaintiff's position that it has been wronged by defendants and has suffered damages from their wrongful conduct hence the filing of this lawsuit.  Defendants began to siphon funds from Sport-BLX (consisting of plaintiff's investment) into other affiliated entities almost immediately after Cypress's investment (i.e. siphoning funds into defendant Hall's other company by way of excessive rent for an illegal sublease).  Salerno voiced his objections and prudently took action to protect both Sport-BLX Inc. and Cypress's investment into the company.

---

[4] At $355 per share, the price at which Hall and Deperio improperly sold their shares to GlassBridge, and the amount that Cypress is seeking in one of their derivative claims, Cypress stands to recover $2,754,800 plus interest.

Movant claims that Cypress's litigation tactics demonstrate vindictiveness yet alleges nothing more than a diligent prosecution of the action.  Notably, movant now argues that plaintiff is too aggressive in its prosecution of this case, yet at the same time, argues that Cypress will not aggressively pursue its derivative claims.  Defendants cannot have it both ways.  Cypress' conduct throughout this litigation, namely, the aggressive prosecution of its direct and derivative claims, demonstrates that Cypress is the adequate shareholder representative for Sport-BLX.

**E.      The Degree of Support From Other Minority Shareholders Is Not Applicable In This Action As Their Individual Interests Are Nominal.**

Other than the defendants Hall and Deperio, it is Cypress that is the largest shareholder with the most at stake on its derivative claims.  Additionally, the remaining minority shareholders of Sport-BLX have no economic incentive to litigate these issues given their nominal stake in the company and limited potential recovery. Cypress is the only investor who has both the incentive and ability to prosecute the derivative claims against the defendants.

Other than conclusory statements, the Sport-BLX Parties have identified no basis for their contention that Cypress is not a fair and adequate representative of Sport-BLX shareholders, or that Cypress has not and will not continue to vigorously prosecute its derivative claims. Although the Sport-BLX Parties purport to analyze Cypress's ability to adequately represent other minority shareholders as a reason separate and apart from the alleged conflict of interest, the focus of the Sport-BLX Parties' arguments as to the propriety of Cypress serving as a shareholder representative focus on the contention that Cypress's direct claims allegedly render Cypress unfit to serve as a representative of the other shareholders. As set forth above, Cypress's direct claims do not conflict with its derivative claims or detract from its ability to assert derivative claims on behalf of the company.

Separately, the series of self-serving and self-dealing transactions as outlined in

Cypress's Second Amended Complaint only further highlight that Cypress is one of the only

shareholders able to vigorously prosecute the derivative suit and act free from interests that are

antagonistic to those of the other minority shareholders. The Sport-BLX Board of Directors is

comprised almost entirely of defendants (Hall, De Perio, Strauss, Ruchalski, Johnson, Baez, and

GlassBridge) who participated in some manner in the series of transactions that form the basis

for Cypress's Second Amended Complaint.

## <u>CONCLUSION</u>

For the reasons set forth herein, defendants' motion should be denied in its entirety.

Dated:  New York, New York
       December 4, 2023

             <u>/s/ Alexander M. Dudelson</u>
             ALEXANDER M. DUDELSON, ESQ. (AD4809)
             *Attorney for Plaintiff*
             26 Court Street – Suite 2306
             Brooklyn, New York 11242
             (718) 855-5100