UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x

CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX,
INC.,

                           Plaintiff,

      v.

GEORGE HALL, JOSEPH DE PERIO,
DANIEL STRAUSS, FRANCIS
RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX,
INC., SPORT-BLX SECURITIES, INC.,
CLINTON GROUP INC., and
GLASSBRIDGE ENTERPRISES, INC.,

                          Defendants.
———————————————————————— x

Civil Action No. 1:22-cv-1243-LGS

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS DERIVATIVE CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23.1

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600
(212) 856-9494 (fax)

*Attorneys for Defendants Sport-BLX, Inc.,
Sport-BLX Securities, Inc., Clinton Group,
Inc., George Hall, Cesar Baez, and
Christopher Johnson*

COLE SCHOTZ P.C.
25 Main Street
Court Plaza North
Hackensack, New Jersey 07601
(201) 525-6305
(201) 678-6305 (fax)

*Attorneys for Defendant Joseph De Perio*

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendants GlassBridge
Enterprises, Inc., Daniel Strauss,
and Francis Ruchalski*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I.    Cypress Has Not Meaningfully Addressed, Let Alone Reconciled, its Impermissible Conflicts of Interest ................................................................................................ 2

        A.    Cypress Has Offered No Explanation of How it Can Properly Seek Damages on Behalf of, and From, Sport-BLX at the Same Time .................................................................. 2

        B.    Cypress's Direct and Derivative Claims Are in Conflict With Each Other Because They Compete for the Same Fixed Quantum of Damages .......................................... 6

        C.    Cypress Intends to Lose Standing and Leave Shareholders Without a Representative on the Eve of Trial ................................................................................................... 9

    II.    Cypress Is an Inadequate Shareholder Representative Under the Multi-Factor Balancing Test ............................................................................................................... 11

CONCLUSION ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*Abrams v. Life Med. Techs., Inc.*,
   135 F. Supp. 3d 185 (S.D.N.Y. 2015) .................................................................................... 3

*Argiropoulos v. Kopp*,
   2007 WL 954747 (D. Md. Mar. 26, 2007) ........................................................................ 9, 10

*Blum v. Morgan Guaranty Tr. Co of N.Y.*,
   539 F.2d 1388 (5th Cir. 1976) ............................................................................................. 12

*Cords-Auth v. Crunk, LLC.*,
   815 F. Supp. 2d 778 (S.D.N.Y. 2011) ................................................................................... 4

*Daventree Ltd. v. Republic of Azerbaijan*,
   349 F. Supp. 2d 736 (S.D.N.Y. 2004) ................................................................................... 3

*Eshelman v. Orthoclear Holdings, Inc.*,
   2009 WL 506864 (N.D. Cal. Feb. 27, 2009) ....................................................................... 10

*Hawkins on behalf of MedApproach, LP v. MedApproach Holdings, Inc.*,
   2020 WL 4349813 (S.D.N.Y. July 29, 2020) ....................................................................... 4

*Hodnett v. Medical Partners Opportunity Master Fund II-A, L.P.*,
   2022 WL 4072935 (S.D.N.Y. September 2, 2022) ............................................................ 4, 5

*Int'l Bhd. of Elec. Workers Loc. 98 Pension Fund v. Hann*,
   2008 WL 11515992 (S.D.N.Y. June 10, 2008) ................................................................... 11

*JFURTI, LLC v. Singal*,
   2018 WL 6332907 (S.D.N.Y. Nov. 12, 2018) ............................................................... 10, 12

*Kane Assocs. v. Clifford*,
   80 F.R.D. 402 (E.D.N.Y. 1978) ............................................................................................ 4

*Renz v. Beeman*,
   963 F.2d 1521 (2d Cir. 1992) ............................................................................................. 11

*Renz by Renz v. Carota*,
   1991 WL 165677 (N.D.N.Y. Aug. 26, 1991) ..................................................................... 11

*Rothenberg v. Sec. Mgmt. Co.*,
   667 F.2d 958 (11th Cir. 1982) ............................................................................................. 12

*Ryan v. Aetna Life Ins. Co.*,
   765 F. Supp. 133 (S.D.N.Y. 1991) .................................................................................. 3, 4, 5

*Tatintsian v. Vorotyntsev*,
   2018 WL 2324998 (S.D.N.Y. May 22, 2018) .................................................................. 4, 5, 9

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
   2013 WL 12203024 (C.D. Cal. Apr. 4, 2013) ........................................................................ 4, 9

**PRELIMINARY STATEMENT**

Cypress's opposition fails to rebut the three fatal and irreconcilable conflicts that render Cypress an inadequate shareholder representative under Rule 23.1. *First,* Cypress seeks to recover money from Sport-BLX and is thus adverse to Sport-BLX, but in its derivative claims Cypress purports to be acting on behalf of and for the benefit of Sport-BLX. *Second*, Cypress's overlapping direct and derivative claims seek damages for the same alleged instances of misconduct, putting Cypress's direct claims in direct competition with Sport-BLX for the same alleged damages. *Third*, Cypress's requested relief for one of its claims (Count 19) would result in a loss of its shareholder status, thereby creating an impermissible conflict of interest because a proper shareholder representative must always have standing to pursue derivative claims.

Cypress's opposition attempts to address these conflicts by selectively quoting several distinguishable (and often inapplicable, or even contrary) legal decisions and by misrepresenting the allegations of its own complaint.

1. Cypress provides no credible explanation of how it can seek money damages from Sport-BLX, and yet, at the same time, purport to act on Sport-BLX's and its shareholders' behalf. The caselaw upon which it relies simply does not support its position.

2. Cypress fails to explain how its overlapping direct and derivative claims are not in competition with one another when they both seek to recover the same fixed quantum of damages. Rather than acknowledging this conflict, Cypress pretends that its Second Amended Complaint ("SAC") and other filings contain no overlapping direct and derivative claims, but even a cursory review of these filings proves this assertion to be false, and Cypress cannot constructively amend its complaint and erase these claims to survive this motion.

3. Cypress misstates the law in arguing that its shareholder oppression claim (Count 19), which seeks rescissionary relief, does not destroy its standing. Cypress ignores that it has sought leave of this Court to move for summary judgment on Count 19 which, if granted, would result in shareholders being left without a representative. This is but one more example of Cypress and its managing partner, Michael Salerno, putting their own interests before those of Sport-BLX and its shareholders.

Cypress's remaining arguments regarding the five-factor balancing test largely follow this same pattern of misconstruing or outright misstating facts, applying inapplicable law, and generally failing to engage in any meaningful way with Defendants' arguments.

Realizing that it has no substantive legal response to Defendants' arguments, Cypress devotes most of its opposition to its fact section. These "facts" are not only irrelevant to the present Rule 23.1 motion; they also grossly misstate the record developed in discovery. The record evidence shows that from virtually the very moment Cypress invested in early 2019, it has sought to pursue its own interest, and the interest of its managing partner (Salerno), at the expense of Sport-BLX, including by secretly recording conversations with the Defendants; seeking an absurd buyout that would have quickly doubled Cypress's money; and later blocking execution of the company's business plan. Far from harming Sport-BLX, Hall's and De Perio's sale of shares to GlassBridge in December 2019 benefited Sport-BLX and was consistent with the express contractual terms Cypress negotiated for in the controlling agreements. GlassBridge's decision to propose a slate of directors without Salerno, which virtually all Sport-BLX shareholders supported, was totally proper and not actionable.

For the reasons set forth below and in Defendants' moving brief, Defendants' motion should be granted in full.

## ARGUMENT

I. **Cypress Has Not Meaningfully Addressed, Let Alone Reconciled, its Impermissible Conflicts of Interest**

   A. **Cypress Has Offered No Explanation of How it Can Properly Seek Damages on Behalf of, and From, Sport-BLX at the Same Time**

Cypress has done nothing to explain, or even suggest, how its direct claims against Sport-BLX for money damages do not conflict with its derivative claims brought purportedly on Sport-BLX's behalf. In lieu of a meaningful explanation, Cypress repeatedly states that the Second

2

Circuit has not expressed a "per se rule" against simultaneously pursuing both direct and derivative claims. *See, e.g.*, Cypress Opp. pp. 1–2.

But the absence of a *per se* rule does not save Cypress's derivative claims because the rule that does apply strongly disfavors the conflicts generated by Cypress's claims. As stated in our moving brief, "a strict standard [applies] in scrutinizing simultaneous direct and derivative actions for signs of conflict." *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 135 (S.D.N.Y. 1991). Cypress does not attempt to address the multitude of cases in the Southern and Eastern Districts of New York which dismiss derivative claims because of a conflict in this precise situation. *See* Defendants' Mem. pp. 11–12 (collecting cases).

Instead, Cypress cites several inapposite cases, Cypress Opp. pp. 8–12, none of which support allowing Cypress's derivative claims.

*Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 753 (S.D.N.Y. 2004), did not involve allegations of competing direct and derivative claims, nor did the plaintiff sue the same company it was purporting to act on behalf of derivatively; thus the "strict standard" used to assess such claims was inapplicable.

*Abrams v. Life Med. Techs., Inc.*, 135 F. Supp. 3d 185, 194 (S.D.N.Y. 2015), allowed the direct and derivative claims to go forward because "no obvious factual nexus link[ed] the securities fraud and mismanagement claims that might impair plaintiffs from vigorously pursuing both." *Id.* But the same cannot be said for Cypress's claims in this action. Cypress acknowledges that its direct and derivative claims are grounded in the same facts (Cypress Opp. pp. 12–13); and this extensive factual overlap gives rise to numerous conflicts of interest, including Cypress seeking recovery from (i) the same fixed amount of alleged damages, which may be recovered only once, in both direct and derivative claims, and (ii) the same defendants in

both direct and derivative claims. *See* Defs.' Mem. pp. 13–16. Because the extensive factual overlap causes Cypress's direct and derivative claims to compete for the same pool of claimed damages, and any direct recovery would result in a correspondingly lower derivative recovery, *Abrams* is inapposite and Cypress's derivative claims should be dismissed. *See, e.g.*, *Tatintsian v. Vorotyntsev*, No. 1:16-CV-7203-GHW, 2018 WL 2324998, at *3 (S.D.N.Y. May 22, 2018); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 2013 WL 12203024, at *12 (C.D. Cal. Apr. 4, 2013).[1]

Cypress's reliance on *Cords-Auth v. Crunk, LLC.*, 815 F. Supp. 2d 778, 794 (S.D.N.Y. 2011) and *Kane Assocs. v. Clifford*, 80 F.R.D. 402, 407–08 (E.D.N.Y. 1978), fares no better. In those cases, a company had been sold and dissolved, and the plaintiff no longer had an equity interest in the company. These courts allowed both sets of claims to go forward based on a well-recognized exception to the strict rule against competing direct and derivative claims. This exception was explained in *Tatintsian*, 2018 WL 2324998, at *3. There, the court stated that where a plaintiff's direct claims have the potential to reduce any derivative recovery — as in this case — "*both types of claims can only survive in one action if specific circumstances exist*." *Id.* (emphasis added). One such circumstance is where the company has been dissolved or no longer exists, because in that "specific" situation, the "plaintiff no longer has an equity interest in the corporation that he is suing, so his direct and derivative claims do not present a conflict of interest." *Id.*[2] *Tatintsian* noted, however, that this rationale has not been extended to merely

---

[1] Another case relied on by Cypress, *Hawkins on behalf of MedApproach, LP v. MedApproach Holdings, Inc.*, 2020 WL 4349813, *8 (S.D.N.Y. July 29, 2020), is distinguishable for the same reason as *Abrams*. There, the court found no conflict because the plaintiff's "individual claims" arose "out of different transactions from the derivative ones," which made the case distinguishable from *Ryan v. Aetna Life Ins Co.*, 765 F. Supp. at 135–36. Unlike *Hawkins*, Cypress's claims arise from the very same transactions, and so *Ryan* applies.

[2] The other circumstance discussed in *Tatintsian* is where the plaintiffs and defendants are the only shareholders of the company, an exception that is also not applicable here. *Tatintsian*, 2018 WL 2324998, at *3. *Hodnett v.*

4

financially distressed companies or those on the brink of collapse. *Id.* Here, Sport-BLX has suffered financially due to Cypress's misconduct, but Cypress remains a shareholder, and the company has not been dissolved; in fact, Hall is eager to rebuild the company once this litigation with Cypress and Salerno ends, as Cypress knows from Hall's deposition testimony.

Cypress relies on *Tatintsian*, 2018 WL 2324998, at *3, and *Ryan*, 765 F. Supp. at 136, for the proposition that when a conflict is only hypothetical, the court may postpone the issue and allow both sets of claims to go forward and use the court's "'powers to fashion a proper remedy'" if a conflict arises. Cypress Opp. p. 10. But, in fact, these cases rejected that position and held that "***early intervention [is] the more prudent, and, ultimately, the more efficient course***." *Ryan*, 765 F. Supp. at 136 (emphasis added); *see Tatintsian*, 2018 WL 2324998, at *3.

Contrary to Cypress's argument, this Court should follow *Tatintsian* and *Ryan* and intervene now. Discovery has been completed in this action, and the parties are nearing the summary judgment stage, with trial shortly thereafter. Given the present advanced stage of these proceedings, Cypress has offered no sound basis to delay an adjudication of adequacy under Rule 23.1. Nor should a jury be required to decide numerous derivative claims, as Cypress seems to suggest, only for such claims to be subsequently dismissed because Cypress is an improper shareholder representative under Rule 23.1.

Above all, Cypress has not demonstrated that the conflict here is merely hypothetical. As explained previously, Cypress faces three real (*i.e.*, not hypothetical) and irreconcilable conflicts that disqualify it from serving as a shareholder representative, Defs.' Mem. pp. 11–17. If Cypress were to recover, for example, on its direct claims seeking compensation for allegedly

---

*Medical Partners Opportunity Master Fund II-A, L.P.*, 2022 WL 4072935 at *6 (S.D.N.Y. September 2, 2022), another case cited by Cypress, involved this second exception and can thus be distinguished on that basis.

improper rent payments (about $500,000), any derivative recovery would be reduced by that same figure (or however much Cypress is able to recover). Cypress will always opt to pursue its direct claims over its derivative claims, because the derivative claims are inherently less valuable due to Sport-BLX's substantial debt obligations (which must be paid first), and because Cypress's interest in a derivative recovery is limited to about five percent, as opposed to 100 percent of any direct recovery.

In sum, this flagrant conflict of interest is not hypothetical in the least. Cypress's misaligned interests are harming the very Sport-BLX shareholders Cypress purports to represent, as demonstrated by its decision to keep pursuing direct claims that will compete with derivative claims for any recovery, and by pressing its direct shareholder oppression claim (Count 19), even though success on that claim — on which it intends to seek summary judgment — would result in a buyout, eliminate Cypress's shareholder standing, and leave other Sport-BLX shareholders without a representative on the cusp of trial.[3]

### B. Cypress's Direct and Derivative Claims Are in Conflict With Each Other Because They Compete for the Same Fixed Quantum of Damages

By claiming that Cypress's direct and derivative claims do not compete for the same claimed damages, Cypress ignores numerous paragraphs in the SAC and filings Cypress has previously made in this litigation. Cypress cannot pretend these filings no longer exist or attempt to constructively amend its pleading through its opposition to this motion.

In fact, Cypress's claims arise from the same fact pattern, including multiple claims that are amenable to only one recovery, but serve as the basis for multiple direct and derivative claims. For example, in Cypress's supplemental interrogatory response, in which Cypress was

---

[3] *See* Cypress's pre-motion letter, *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 139, at 2–3 (seeking summary judgment on Count 19).

required for each of its claims to "state with specificity each category of damages alleged, the computation of each category of damages alleged, [and] the basis for each category of damages alleged," multiple direct and derivative counts seek a recovery for the difference between what the technology trading platform cost to create and its subsequent sale, which was allegedly for below fair market value, through claims against Sport-BLX Securities:[4]

- *Counts Six and Seven*, *Direct and Derivative Unjust Enrichment*: "[T]he reasonable value of the benefit conferred upon the Defendants is equal to . . . the difference between the amount paid by Sport-BLX to develop its proprietary trading platform and code (which was more than $2 million) and the price of $225,000 which Sport-BLX Securities paid to acquire that proprietary trading platform and code." Sack Dec., Ex. J, Cypress's Supplemental Response to Sport-BLX's Interrogatory No. 13 at 7.[5]

  *Count 10, Direct Tortious Interference with Contract*: "Cypress seeks compensatory damages in an amount not less than its percentage of the difference between the amount paid by Sport-BLX to develop its proprietary trading platform and code (which was more than $2 million) and the price of $225,000 which Sport-BLX Securities paid to acquire that proprietary trading platform and code." *Id.* at 8.[6]

  *Count Twelve*, *Derivative Aiding and Abetting Breach of Fiduciary Duty*: "Cypress seeks compensatory damages in an amount not less than the difference between the amount paid by Sport-BLX to develop its proprietary trading platform and code (which was more than $2 million) and the price of $225,000 which Sport-BLX Securities paid to acquire that proprietary trading platform and code." *Id.* at 9.

---

[4] Sack Dec., Ex. J, Cypress's Supplemental Response to Sport-BLX's Interrogatory No. 13 at 1.

[5] Cypress's response for Counts Six and Seven lists multiple other sums of damages that it is improperly seeking both derivatively and directly, *see, e.g.*, Sack Dec., Ex. J, Cypress's Supplemental Response to Sport-BLX's Interrogatory No. 13 at 7 (seeking Cypress's $1,000,000 investment as both a direct and derivative recovery). These sums, too, can be only recovered once.

[6] For some of the direct counts in the damages interrogatory response, Cypress claims that it is seeking only "its percentage" of the damages sum, but in the same document states that it is seeking the *full sum* derivatively. *Compare* Direct Count 10 *with* Derivative Count 12. Cypress's formulation does not alleviate its conflict. In essence, Cypress is seeking to secure for itself a portion of a sum of damages; yet, at the same time, acknowledging that the *full sum* should go to the company, after which it would be used to pay off the company's debts and other liabilities before any shareholders could recover. By securing its own pro rata share (and thus guaranteeing its own recovery), Cypress would necessarily decrease the amount of damages available for the company, which, due to the company's outstanding obligations that must be paid first, would further decrease the likelihood of any shareholder recovery.

But that fixed sum can be recovered only once, directly or derivatively, not multiple times, and it would go to the company pursuant to a derivative claim, not to an individual shareholder, as Cypress contends in its direct claims.

Likewise, multiple direct and derivative counts seek a recovery for the value lost for Sport-BLX's alleged improper rental payments. This is a discrete sum (about $500,000) that can only be recovered once, yet the value is the subject of multiple direct and derivative claims against Clinton Group:

- *Count Nine, Direct Tortious Interference with Contract*: "Cypress seeks compensatory damages in an amount not less than its percentage of the $500,000 per annum paid by Sport-BLX to Clinton Group for Sport-BLX's illegal sublease with the Clinton Group." *Id*. at 8.

    *Count 11, Derivative Unjust Enrichment*: Cypress seeks "the reasonable value of the benefit conferred upon Clinton Group[, which] is equal to an amount not less than $500,000, the per annum sum that was paid by Sport-BLX to the Clinton Group for its illegal use" of the space. *Id.* at 8.

Consider further Cypress's SAC, which includes a claim for a success fee (though apparently now abandoned) that allegedly should have gone to Sport-BLX but was supposedly diverted, wrongfully, to Clinton Group. *See id.* (not referencing success fee claim). That claim is included in Cypress's SAC Direct Counts 9 and 15, and Derivative Counts 11, 12, and 14. Indeed, the SAC's *only factual basis* for Direct Count 15 is the success fee, which completely undermines Cypress's assertion in its opposition that its direct claims are only based on "the Side Letter Agreement, tag along rights, the promise of a board seat, representations by the Founders inducing it to invest," none of which created obligations relating to a success fee. Cypress Opp. p. 12.[7] Cypress has not explained (because it cannot) how it can recover in damages a success fee for itself, and then recover the same sum again derivatively for Sport-BLX shareholders.

---

[7] The three representations Cypress refers to are that (1) its "Founders' Round" investment would exclusively be used for technology development, associated legal expenses, and marketing; (2) Hall and De Perio would vote their

8

In sum, instead of acknowledging that its direct claims seek some portion of the same fixed amount of damages as its derivative claims, Cypress pretends the conflict does not exist by ignoring numerous paragraphs in the SAC and its past filings in this matter. Nor can Cypress reconcile its position with cases finding a conflict when the direct and derivative claims were competing for the same pool of damages because both sets of claims sought money from the same parties (applicable here), or because the plaintiff was seeking damages from the company while also purporting to act on its behalf (also applicable here). *See, e.g.*, *WPP*, 2013 WL 12203024, at *12; *Tatintsian*, 2018 WL 2324998, at *3; *Argiropoulos v. Kopp*, 2007 WL 954747, at *7–8 (D. Md. Mar. 26, 2007). Because any recovery on Cypress's direct claims would reduce, through multiple avenues, a recovery on its derivative claims, Cypress's conflicts are real (not hypothetical), and its derivative claims should be dismissed.

### C. Cypress Intends to Lose Standing and Leave Shareholders Without a Representative on the Eve of Trial

Cypress's third conflict of interest relates to its direct claim for rescissionary relief as part of its alleged shareholder oppression claim. Cypress responds by asserting that "[a]ll derivative claims can potentially lose standing at any time during litigation either through a sale of shares or a merger." Cypress Opp. p. 13.

This is true, but a non-sequitur. Cypress seeks to eliminate its own shareholder standing in exchange for a buyout of its Sport-BLX shares. Defs.' Mem. pp. 16–17. Should Cypress be

---

shares for Salerno to have a seat on the board of directors under terms set forth in a contract; and (3) Sport-BLX would serve as the manager of a fund that would invest in sports-related assets, from which Sport-BLX would receive substantial fee revenue. None of these alleged misrepresentations is remotely related to Sport-BLX receiving a success fee. Multiple other direct claims in Cypress's SAC also bear no relation to the rights granted to Cypress through the Side Agreement or pursuant to the three alleged representations. For example, Count Six is a direct unjust enrichment claim based in part on the allegedly below market sale of the technology platform. This, too, bears no relation to the rights granted to Cypress under the Side Agreement (tag-along rights and the board seat) or the alleged representations made before Cypress invested. *See also* Count 10 (direct tortious interference claim also based on below market sale of technology platform).

9

successful on its shareholder oppression claim — Cypress has advised the Court that it intends to move for summary judgment on that claim — the shareholders it purports to represent, and the derivative claims that Cypress purports to be pursuing, will be cast aside in exchange for a payout of Cypress's original investment, and on the eve of trial no less.[8]

Cypress has offered nothing to alleviate these concerns; nor has it even attempted to do so. That is because Cypress would rather maintain one (of its 11) direct causes of action than ensure that the shareholders it purports to represent continue to be represented through trial. Cypress's determination to put its own interests ahead of Sport-BLX is as clear now as it was in 2019 when Salerno sought a buyout within two months of his investment, threatened litigation shortly thereafter, and then blocked Sport-BLX's FINRA broker-dealer application — all at the expense of other Sport-BLX shareholders.

Finally, Cypress attempts to distinguish *Argiropoulos*, 2007 WL 954747, at *7–8 and *Eshelman v. Orthoclear Holdings, Inc.*, No. C 07-1429 JSW, 2009 WL 506864, at *9 (N.D. Cal. Feb. 27, 2009), by arguing that they did not apply Delaware law and therefore should not be followed. But Cypress misconstrues those cases. The inquiry as to whether a shareholder is an adequate representative under Rule 23.1 is an issue of federal law, and other federal courts' interpretation of Rule 23.1, is persuasive authority. *See JFURTI, LLC v. Singal*, No. 17 CIV. 7206 (CM), 2018 WL 6332907, at *10–12 (S.D.N.Y. Nov. 12, 2018) (stating that the Rule 23.1 adequacy inquiry is a procedural issue governed by federal law, that there appears to be no material difference "in the way courts in this District and those in the District of Maryland interpret" the rule, and relying on *Argiropoulos*).

---

[8] *See* Cypress's pre-motion letter, *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS), ECF No. 139, at 2–3 (seeking summary judgment on Count 19).

In any event, courts in the Second Circuit have held that a shareholder must maintain standing throughout the duration of the litigation under Rule 23.1 *See, e.g.*, *Int'l Bhd. of Elec. Workers Loc. 98 Pension Fund v. Hann*, No. 06 CIV. 14312 (DAB), 2008 WL 11515992, at *1 (S.D.N.Y. June 10, 2008); *see also Renz by Renz v. Carota*, No. 87-CV-487, 1991 WL 165677, at *3 (N.D.N.Y. Aug. 26, 1991), *aff'd sub nom. Renz v. Beeman*, 963 F.2d 1521 (2d Cir. 1992).

## II. Cypress Is an Inadequate Shareholder Representative Under the Multi-Factor Balancing Test

*Economic Antagonism*.  Cypress largely repeats arguments made earlier in its opposition, refusing to acknowledge that in the SAC and other filings it seeks recovery from the same fixed amount of alleged damages both derivatively and directly, that it seeks damages from the same set of defendants, and that it is both suing Sport-BLX directly and purporting to sue on Sport-BLX's behalf derivatively — three separate ways in which the direct and derivative claims are competing for the same pool of money.  These conflicts between the direct and derivative claims, and thus the conflicts between Cypress and Sport-BLX shareholders, cannot properly be viewed as anything other than quintessential economic antagonism.

Cypress also claims that its 5.74 percent ownership share does not amount to a *de minimis* recovery for its derivative claims.[9]  Cypress Opp. pp. 15, 16.  But that point fails to acknowledge the impact of Sport-BLX's substantial debt obligations, which Cypress does not dispute (*see* Cypress Opp. p. 7), and which would drastically reduce, if not eliminate altogether, the value of any shareholder recovery.  Cypress also refuses to acknowledge the irrefutable fact that it could recover far more for its direct claims for the simple reason that it would receive

---

[9] Cypress claims it would be entitled to $2.7 million pursuant to a derivative claim asserted on behalf of Sport-BLX. Cypress Opp. p. 16 n. 4.  This assertion makes no sense.  Any recovery on the derivative claim would result in a judgment in favor of Sport-BLX, not Cypress, and would have to be used to pay off Sport-BLX's substantial debt obligations before any shareholder could see a recovery.  This claim is also mathematically false:  Cypress's damages sum was calculated by multiplying $355 by its number of shares, but no transaction for $355 ever took place; GlassBridge paid Hall and De Perio $35 per share in cash for their shares, the remainder in a note.

11

100% value for those claims (as opposed to 5.74%). The disparate economic value between Cypress's direct and derivative claims further exacerbates Cypress's irreconcilable conflicts by misaligning Cypress's incentives with those of other Sport-BLX shareholders and causing it to favor its own direct claims over its derivative ones. *See* Defs.' Mem. pp. 9, 18.

      ***Other Litigation Pending Between the Plaintiff and the Defendants.*** Cypress fails to rebut Defendants' arguments regarding the impact of Cypress's direct claims, and Sport-BLX's substantially more valuable claims against Cypress, on the various strategic decisions Cypress has made, and will continue to make, in this litigation. *See* Defs.' Mem. pp. 19–20. Cypress fails to address its exposure to a multi-million-dollar judgment on Sport-BLX's claims, and how that has led Cypress to misuse its worthless derivative claims as a bargaining chip.

      Cypress attempts to distinguish *JFURTI*, 2018 WL 6332907, at *11–12, *Blum v. Morgan Guaranty Tr. Co of N.Y.*, 539 F.2d 1388, 1390 (5th Cir. 1976), and *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 n.7 (11th Cir. 1982), three cases cited by Defendants, by latching onto every factual difference it can find between those cases and this one. Cypress Opp. pp. 15–16. But Cypress's arguments miss the forest for the trees. In each of *JFURTI*, *Blum*, and *Rothenberg*, the court examined the overall relationship between the parties, including other claims and litigation between them, and found that the plaintiff was using the derivative action for an improper purpose or was otherwise an inadequate representative under Rule 23.1.

      The same is true here. *See* Defs.' Mem. pp. 17–24. Salerno has prioritized Cypress's interests in this matter over those of Sport-BLX from the beginning, as demonstrated by his demanding a buyout within two months of Cypress's investment (that would have doubled its money), threatening litigation within three months, and eventually obstructing Sport-BLX's effort to obtain a FINRA broker-dealer license — a fatal blow to Sport-BLX's original business

12

plan. *Id.* at pp. 3–9.  Since commencing this lawsuit, Salerno has continued to prioritize Cypress's interests (represented by its substantially more valuable direct claims) above those of Sport-BLX and its shareholders.  *Id.*  That is why (1) Cypress first sued, and continues to sue, Sport-BLX directly — the company Cypress now purports to represent; (2) Cypress only thought to add the vast majority of its derivative claims a year into the litigation (as an afterthought, essentially) as part of a strategy to gain additional leverage in the face of Sport-BLX's own claims against Cypress and Salerno; and (3) Cypress continues to seek its buyout by pressing its shareholder oppression claim, and its more valuable direct claims, even though the shareholder oppression claim risks leaving all other shareholders without a representative (on the eve of trial).  *Id.* at pp. 3–9, 16–17.

***Cypress's Substantially Greater Economic Stake in its Direct Claims.***  Cypress does not offer a meaningful response to Defendants' argument that Cypress has a substantially greater economic stake in its direct claims.  Cypress refuses to address the two central issues relevant to any derivative recovery:  the impact of Sport-BLX's debt and other liabilities, which must be satisfied before any shareholder recovery; and the irrefutable fact that a five percent interest in a derivative claim recovery is a substantially smaller sum than a 100 percent recovery on Cypress's direct claims.  These conditions combine to make any derivative recovery for Cypress markedly less valuable, if not worthless.

***Salerno's Vindictiveness***.  Cypress does not challenge any of the facts cited by Defendants in support of the proposition that this dispute is deeply personal to Salerno, and that he views this litigation not as a bona fide attempt to recover lost value for shareholders, but as a means to punish Hall and others for wrongs he believes were done to him.[10]

---

[10] Cypress has focused on alleged misconduct regarding Salerno's loss of a board seat.  In its opposition, Cypress claims that it has found a "hidden" "smoking gun" that supports its claims on this issue.  Cypress Opp. p. 4

Furthermore, Cypress takes Defendants' arguments about its litigation tactics, which have involved inflicting maximum economic pain on Defendants, to mean that the Defendants believe Cypress is litigating "too aggressive[ly]." Cypress Opp. p. 17. That could not be further from the truth. During this litigation, the Defendants repeatedly have had to press Cypress (controlled by Salerno), the original plaintiff and initiator of this litigation, to comply with court deadlines and to otherwise keep the case on track towards trial. In response to these efforts, Cypress has only offered further delay tactics, while simultaneously making costly, time-consuming discovery requests on Defendants that are of questionable relevance.

The only rational explanation for these efforts is not that Cypress is "diligently prosecuting" this action, but that Cypress hopes to wear down the Defendants, through excessive time and cost, so that they eventually accede to Salerno's demands. The derivative claims — which substantially expanded the scope of this litigation, including discovery — have been used as a tool in this effort, further demonstrating Cypress's inadequacy under Rule 23.1.

***Degree of Support from Other Shareholders.*** No other Sport-BLX shareholder supports Salerno and Cypress. This was clear when Salerno was first voted off the Sport-BLX board by a majority vote of other shareholders in December 2019; it was clear after Salerno solicited, unsuccessfully, various shareholders to join him in this litigation; and it is clear now in this litigation as Salerno and Cypress continue to prioritize their own claims and their own direct recovery over Sport-BLX and its shareholders. *See* Defs.' Mem. pp. 6, 23–24. Cypress, through this motion, now attempts to mask this lack of support behind vague economic rationalizations,

---

n.1. That document, a capitalization table for Sport-BLX, has been produced by Sport-BLX in discovery in many iterations. It was hardly hidden, much less a smoking gun. The document simply states the ownership of shares at the time of GlassBridge's purchase of shares in December 2019, and the impact of the purchase on a tally of potential votes regarding Salerno's board seat. GlassBridge's interest in the impact of its purchase on company governance was to be expected, and certainly not nefarious.

but those attempts fail. Cypress claims that because of its five percent interest in Sport-BLX, it is the only shareholder "who has both the incentive and the ability to prosecute the derivative claims." Cypress Opp. p 17. Cypress further states that it is "one of the only shareholders able to vigorously prosecute the derivative suit" because the Sport-BLX board of directors includes many defendants in this action. *Id.* at p. 18.

These arguments are wrong. Cypress does not explain why, as a five percent shareholder, it is appreciably more incentivized to bring this action over a 2.9 and 2.3 percent shareholder (actual values of two other shareholders' holdings in Sport-BLX). Sack Dec., Ex. H at SPORTBLX0266070. Nor does Cypress explain how it can speculate over the "ability" — that is, the financial resources to bring suit — of other shareholders, and claim that it is the only shareholder that can afford to maintain the derivative claims. Contrary to Cypress's assertions, many of the stockholders in Sport-BLX are highly accomplished professionals and veteran investors who could afford to bring suit if they thought it was justified; they simply do not, as demonstrated by their voting Salerno off the board and declining his solicitation to join this suit. Nor are these shareholders party to this suit or in any way implicated in Cypress's sprawling allegations.

Finally, Cypress perplexingly claims that because other shareholders have nominal interests, they have declined to join Cypress's suit because it would not be worth the "costs and effort." Cypress Opp. p. 11. It is unclear what "costs and effort" Cypress is referring to because presumably Cypress, as the purported shareholder representative, would continue to pay the legal fees and drive the derivative litigation.

## **CONCLUSION**

For the reasons described above and in Defendants' moving brief, the Court should grant the Defendants' motion under Rule 23.1 and dismiss Cypress's derivative claims in full.

15

Dated: New York, New York
December 15, 2023

        MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

        By: */s/ Jonathan S. Sack*
            Jonathan S. Sack
            Edward M. Spiro
            Joseph P. Klemme
        565 Fifth Avenue
        New York, NY 10017
        (212) 856-9600
        (212) 856-9494 (fax)

        *Attorneys for Defendants Sport-BLX, Inc., Sport-BLX Securities, Inc., Clinton Group, Inc., George Hall, Cesar Baez, and Christopher Johnson*

        LOEB & LOEB LLP

        By: */s/ Christian D. Carbone*
            Christian D. Carbone
            David A. Forrest
        345 Park Avenue
        New York, New York 10154
        (212) 407-4000

        *Attorneys for Defendants GlassBridge Enterprises, Inc., Daniel Strauss, and Francis Ruchalski*

        COLE SCHOTZ P.C.

        By: */s/ David S. Gold*
            David S. Gold
        25 Main Street
        Court Plaza North
        Hackensack, New Jersey 07601
        (201) 525-6305
        (201) 678-6305 (fax)

        *Attorneys for Defendant Joseph De Perio*