# Morvillo Abramowitz Grand Iason & Anello PC

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
212-880-9410

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938- 2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE. JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

July 30, 2024

**BY ECF**
The Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS)

Dear Judge Schofield:

  We represent Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc., Clinton Group, Inc., George Hall, Cesar Baez, and Christopher Johnson in the above-referenced action. We submit this letter on behalf of all Defendants in reply to Cypress Holdings, III, L.P.'s ("Cypress") July 24, 2024 response (ECF No. 178) to the Court's Order dated July 1, 2024. ECF No. 174.

  **I.** **The Bylaws' Indemnification Provisions Add Yet Another Source of Conflict**

  Based on Sport-BLX's Certificate of Incorporation and Bylaws, the individual Defendants, as officers and directors of Sport-BLX, are entitled to indemnification for the direct claims (for damages and expenses) and the derivative claims (for expenses) alleged in Cypress's Second Amended Complaint (the "SAC"). Sport-BLX's substantial indemnity obligations create yet another source of conflict that violates Rule 23.1's requirement that a shareholder representative "fairly and adequately represent the interests of shareholders . . . who are similarly situated in enforcing the right of the corporation." Fed. R. Civ. P. 23.1(a).

  *Tatintsian v. Vorotyntsev*, No. 1:16-CV-7203-GHW, 2018 WL 2324998, at *3 (S.D.N.Y. May 22, 2018), a case relied upon by the Defendants in their moving papers, is directly on point. There, the Court found that an "actual conflict" existed because, although the plaintiff had not brought direct claims against the company itself, it had brought direct claims against an officer and director who was entitled to mandatory indemnification from the company.[1] Because the officer and director "must be indemnified pursuant to these bylaws," the Court found that

---

[1] Unlike the plaintiff in *Tatintsian*, who had named the company only as a "nominal defendant," Cypress has also sued Sport-BLX directly and seeks damages from it. *Id*.

Morvillo Abramowitz Grand Iason & Anello PC

Hon. Lorna G. Schofield
July 30, 2024
Page 2

"recovery for the direct and derivative claims could ultimately come from the same pool of money," and that an actual conflict therefore existed between the plaintiff's direct and derivative claims. *Id.*

The rule described in *Tatintsian* is directly applicable here. Sport-BLX must pay expenses and/or damages to the individual Defendants arising from this lawsuit due to its mandatory indemnity obligations to them, as specified in Sport-BLX's Bylaws. These indemnity obligations thus constitute yet another source of conflict (Defendants' motion papers identified multiple) through which Cypress's self-serving direct claims do not align with the best interests of Sport-BLX's other shareholders. *See* Mem. of Law pp. 11-16.[2] Not only that, but Sport-BLX's indemnity obligations also add additional liabilities to Sport-BLX's already debt-heavy balance sheet. As discussed in Defendants' motion papers, Sport-BLX's debt obligations must be paid before any derivative recovery can be provided to the shareholders, and even then, Cypress's recovery would only reflect its small minority, five percent stake in the company. Cypress's direct claims, on the other hand, face no such limitation, are substantially more valuable, and therefore will always be favored by Cypress. *See* Mem. of Law pp. 9, 18, 19.

Cypress's attempt to nullify this conflict based on the bad-faith exception in the Bylaws is unpersuasive. That is because, even if this Court were to enter judgment against the individual Defendants on any of Cypress's claims, that in and of itself would not relieve the company of its indemnity obligations. Indeed, the Bylaws specifically provide that the "termination of any [direct] action . . . by judgment . . . shall *not of itself, create a presumption* that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation." *See* ECF No. 175, Exhibit B at SPORTBLX0055439 (emphasis added).[3] Multiple Cypress claims do not require a showing of bad faith (or a substantially similar standard) on the part of the Defendants. For example, Cypress could be successful on its unjust enrichment and negligent misrepresentation claims without establishing the Defendants acted in bad faith or anything close to that standard.

Accordingly, even if Cypress were successful on its direct claims, there would still need to be a factual finding that each of the individual Defendants "did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation" for indemnity to be denied. That finding is highly unlikely to be made by the company (*see* Art. 5, Sec. 3) or this Court in light of the record developed during discovery,

---

[2] "Mem. of Law" is a reference to the Defendants' Memorandum of Law in Support of their Motion to Dismiss the Derivative Claims under Rule 23.1, ECF No. 160. "Cypress Opp." is a reference to Plaintiff's opposition to Defendants' Rule 23.1 Motion to Dismiss, ECF No. 165. "Defendants' Reply" is a reference to Defendants' reply brief in support of their Rule 23.1 Motion to Dismiss, ECF No. 171. "Dec." and "Ex." are references to declarations and exhibits submitted with those filings.

[3] Indemnity for expenses would still be possible even were an individual Defendant found liable for a derivative claim but would require Court approval.

Morvillo Abramowitz Grand Iason & Anello PC

Hon. Lorna G. Schofield
July 30, 2024
Page 3

which, if anything, demonstrates that Cypress and Salerno acted in bad faith and consistently put their own interests before that of Sport-BLX and its shareholders. *See* ECF No. 175, Exhibit B at SPORTBLX0055440-41.

## II. Multiple Direct Claims Are In Fact Derivative

In addition to the direct claims referenced by the Court (Counts 6, 9, 10, and 15), there are other purportedly direct claims brought by Cypress that are in fact derivative, specifically Counts 5 and 19. Though styled as direct claims, all these counts are actually derivative claims in disguise because they allege, and depend on, financial injury to Sport-BLX in the first instance; the only alleged injuries to Cypress are by virtue of alleged injuries to Sport-BLX. *See, e.g.*, SAC Count 6 (Unjust Enrichment) ¶145 ("[Hall and De Perio] were unjustly enriched to Cypress' detriment when they purposefully created entities and used them to siphon money and business opportunities out of Sport-BLX").

Under Delaware law, to determine whether a claim is direct or derivative, the relevant inquiry focuses on "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). In other words, the plaintiff must be able to establish that he or she can prevail "without showing an injury to the corporation." *Id.* at 1036. For Cypress's purported direct claims, Cypress has not alleged an injury that Cypress suffered separate and apart from the alleged injury to Sport-BLX and its shareholders.

In its response to the Court's Order, Cypress purports to rely on three contractual rights that it claims belong exclusively to it, and not to Sport-BLX or its stockholders: a grant of a board seat, tag-along rights, and anti-dilution rights. Cypress argues that because its claims are based on these contractual rights that belong exclusively to it, *Tooley* does not apply, and its claims must be treated as direct even "if it cannot demonstrate injury without showing injury to the corporation." ECF No. 178 at 2 (citing *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 122 (2d Cir. 2022)).

Cypress's argument fails on its face. Cypress's own descriptions of Counts 6, 9, 10, and 15 demonstrate that these claims have nothing to do with these claimed contractual rights. For example, for Count 6 (Unjust Enrichment), Cypress all but concedes that the claim is derivative when it says it "is based on the Founders and entities they control *siphoning Sport-BLX assets and business opportunities*" and frustrating Sport-BLX's business plan. ECF No. 178 at 3 (emphasis added). Fundamentally, that is a claim alleging harm to Sport-BLX, such that any damages would belong to Sport-BLX, not Cypress; and Cypress's response makes no mention of any contractual provision it believes was breached. The same is true for Counts 9 (Tortious Interference with Contract against Clinton Group), 10 (Tortious Interference with Contract against Sport-BLX Securities, Inc.), and 15 (Breach of Fiduciary Duty against Strauss and

Morvillo Abramowitz Grand Iason & Anello PC

Hon. Lorna G. Schofield
July 30, 2024
Page 4

Ruchalski).  For each of those claims, Cypress fails to identify any nexus to the unique contractual rights on which it purports to rely—the right to a board seat, tag-along rights, and anti-dilution rights.[4]  In sum, Cypress's own descriptions make clear (1) that *Tooley* is fully applicable and (2) that its claims are derivative under *Tooley*'s analysis because the claims allege, and depend on, financial injury to Sport-BLX in the first instance; the only alleged injuries to Cypress are by virtue of alleged injuries to Sport-BLX.  *See El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016) (claims of corporate overpayment "are normally treated as causing harm solely to the corporation and, thus, are regarded as derivative").

Contrary to Cypress's assertion, the Second Circuit's decision in *Miller v. Brightstar Asia* confirms the derivative nature of Cypress's claims.  The *Miller* plaintiff complained that the defendant caused the company to provide services to an entity they controlled at a below market price; Cypress similarly complains that Defendants caused Sport-BLX to sell its trading platform software at a below market price.  The Second Circuit in *Miller* correctly recognized that a claim "predicated on an injury to" the corporation is a derivative claim under Delaware law.  43 F.4th at 123 (holding claim based on duty created by conflicted-transactions provision of shareholders agreement was derivative).  The result should be the same here.

Cypress also attempts to show a nexus between its claims and a contractual duty owed exclusively to it with vague references to alleged oral and written representations that it claims induced it to invest, including use of the Founders' Round money for technology development, associated legal expenses, and marketing, and the alleged existence of a fund.  It suggests these representations somehow provide it with independent rights that were breached, resulting in injury to it independent of injury to the company.  Cypress also vaguely references Sport-BLX's business plan being frustrated by the actions of the Defendants.  Cypress's vague references do not demonstrate a nexus between its claims and any contractual obligations owed exclusively to Cypress, which as shown above does not exist, and its arguments fail for a number of reasons.

First, the alleged misrepresentations regarding use of the Founders' Round money and the purported fund do not appear in any contract, and have not been alleged as a basis for any breach of contract claim in the SAC.[5]  These claims thus do not provide Cypress with a contractual right owed exclusively to Cypress upon which it can base direct claims.  Indeed, the

---

[4] Cypress does not address Counts 5 (Breach of Fiduciary Duty against Hall and De Perio) and 19 (Minority Shareholder Oppression).  For each of those claims, however, Cypress has not alleged any nexus to the claimed contractual rights it asserts belong exclusively to Cypress.  For those few counts where Cypress does in fact rely on a contractual obligation, *see* Counts 2 and 8 (alleging claims based on Cypress's loss of a board seat, which is a provision found in the "Third Agreement"), those claims are arguably direct, though Count 2 also contains general siphoning allegations that are derivative in nature.

[5] For Count 9, Cypress incorrectly asserts in its response and the SAC that the "Third Agreement" contains written representations regarding use of Founders' Round money for technology and the existence of a fund.  None of the agreements, including the Third Agreement, contain such representations.  *See* Cypress Opp., Dudelson Dec., Exs. A, B.

Morvillo Abramowitz Grand Iason & Anello PC

Hon. Lorna G. Schofield
July 30, 2024
Page 5

statements at issue—regarding use of Founders' Round money exclusively for technology development, associated legal expenses, and marketing—come from Sport-BLX's "Frequently Asked Diligence Questions," a document that was distributed to all interested investors, not just Cypress, and which did not create any contractual obligations.[6]  See Cypress Opp., Dudelson Dec., Ex. C.

Second, to the extent that Cypress is now saying that Counts 6, 9, 10, and 15 of the SAC rely on its misrepresentation allegations, that makes those counts entirely duplicative of Counts 1, 3, and 4, which are Cypress's fraudulent and negligent misrepresentations claims about future acts that supposedly induced Cypress to invest in Sport-BLX.  Cypress cannot constructively amend the SAC at this late stage, but if it could, these claims would have to be dismissed as duplicative.

Third, general statements regarding Sport-BLX's "business plan" being "frustrat[ed]" or "usurp[ed]" plainly relate to harm to the company as a whole, and Cypress does not even attempt to explain how these statements relate in any way to a contractual or other obligation owed exclusively to Cypress.  See ECF No. 178 at 3.

Finally, Cypress cannot transform these quintessential derivative claims, all of which focus on Sport-BLX's payment of allegedly excessive rent and the alleged siphoning of assets from Sport-BLX, into direct claims through vague references to alleged extra-contractual statements it claims induced it to invest.  Indeed, in Cypress's damages interrogatory response, Cypress essentially acknowledges the derivative nature of some of these counts.  For example, for both Counts 9 and 10, Cypress states that it is seeking "its percentage" of a damages sum that is otherwise owed to the company, which is a derivative recovery, not a direct one.[7]  See Mem. of Law, Sack Dec., Ex. J at 8.

\*     \*     \*

---

[6] As for the fund allegation, there is simply no evidence Cypress, or any other potential investor, was ever promised a fund, nor was there ever one.

[7] As noted in Defendants' motion papers, for several derivative counts, Cypress also says that it is seeking the full sum derivatively in its damages interrogatory response. Compare Direct Count 10 with Derivative Count 12.  This presents a conflict because Cypress is seeking to secure for itself a portion of a sum of damages; yet, at the same time, acknowledging that the full sum should go to the company.  By securing its own pro rata share (and thus guaranteeing its own recovery), Cypress would necessarily decrease the amount of damages available for the company, which, due to the company's outstanding obligations that must be paid first, would further decrease the likelihood of any shareholder recovery.  See Defendants' Reply p. 7 n.6.

Morvillo Abramowitz Grand Iason & Anello PC

Hon. Lorna G. Schofield
July 30, 2024
Page 6

      Accordingly, all of these purportedly direct claims should be treated as derivative claims and dismissed under Rule 23.1 for the reasons stated in Defendants' motion papers.

                                                  Respectfully submitted,

                                                  */s/ Jonathan S. Sack*
                                                  Jonathan S. Sack

cc: Counsel of record (by ECF)