UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
CYPRESS HOLDINGS, III, L.P.,                                 :
                                      Plaintiff,             :
                                                             :          22 Civ. 1243 (LGS)
                      -against-                               :
                                                             :          **<u>OPINION AND ORDER</u>**
SPORT-BLX, INC., et al.,                                      :
                                      Defendants.            :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Cypress Holdings, III, L.P. ("Cypress") brings this action against Defendants

Sport-BLX, Inc. ("Sport-BLX"), GlassBridge Enterprises, Inc. ("GlassBridge"), Clinton Group,

Inc. ("Clinton Group"), Sport-BLX Securities, Inc. ("S-BLX Securities"), George Hall, Joseph

De Perio, Daniel Strauss, Francis Ruchalski, Cesar Baez and Christopher Johnson, alleging

numerous direct and derivative claims.  Defendants move to dismiss the derivative claims in the

Second Amended Complaint (the "SAC") pursuant to Federal Rule of Civil Procedure 23.1.  For

the reasons stated below, the motion is granted in part and denied in part.

## I.    BACKGROUND

Sport-BLX is a company that was formed by Hall and De Perio originally for the purpose

of creating a "new economy" in sports by "tokenizing" sports assets and establishing a

blockchain platform to improve the dynamics of investing in those assets.  Cypress is an

investment company.  Non-party Michael Salerno is the managing partner of Cypress.  On

February 28, 2019, Cypress purchased 7,760 shares of Sport-BLX common stock, paying

approximately $1 million.  In an agreement entered the same day, Cypress, Sport-BLX, Hall and

De Perio agreed that, so long as Cypress continued to hold at least 2.5% of Sport-BLX stock,

Hall and De Perio would vote their shares in favor of Cypress holding a seat on Sport-BLX's

Board of Directors.  The agreement also contained anti-dilution protections.  Currently, Cypress is the largest minority shareholder with 5.74% of the Sport-BLX common stock.  Defendants Hall, De Perio and an affiliated entity together hold 84.75% of the stock.

The SAC alleges that representations and promises made by Hall and De Perio to induce Cypress's investment were knowingly false when made.  For example, the SAC alleges that despite assurances that proceeds raised through the sale of shares would be used exclusively for technology development, legal expenses and marketing, Hall and De Perio caused Sport-BLX to use those funds for operating expenses and office space rented from an entity owned by Hall and De Perio, Clinton Group.  Hall and De Perio also facilitated investments in Sport-BLX through Clinton Group, resulting in a success fee to Clinton Group.

In the fall of 2019, Hall announced a shift in the Sport-BLX business plan from the plan that had been communicated originally to Cypress.  Hall and De Perio made these changes over Cypress's objections.  Hall and De Perio offered to purchase Cypress's shares at a drastically undervalued sum, which Cypress declined. The SAC alleges that to silence Cypress and to free Hall and De Perio of their obligation to vote their shares in favor of Cypress's seat on the Board of Directors, Hall and De Perio sold their controlling ownership interests in Sport-BLX to another entity they controlled, GlassBridge, reaping a substantial profit.

After Hall and De Perio sold their shares to GlassBridge, GlassBridge voted its majority ownership stake to remove Cypress from the Board of Directors.  Along with Defendants Strauss, Ruchalski, Johnson and Baez, who were each directors of Sport-BLX, Hall and De Perio caused GlassBridge to form other entities affiliated with GlassBridge and bearing, in part, the Sport-BLX name.  The SAC alleges that this conduct misappropriated Sport-BLX's intellectual property and diluted its goodwill among potential investors.  These affiliated entities

competed with Sport-BLX for the same or substantially similar investment opportunities, "effectively usurp[ing] Sport-BLX's assets, business plan and opportunities." On December 30, 2021, GlassBridge divested all of its Sport-BLX shares, at a significant loss, to another entity owned by Hall and De Perio, FinTech. Prior to this, Sport-BLX, under the control of GlassBridge, sold its most valuable asset, the code for its proprietary trading platform, to a GlassBridge-affiliated entity, S-BLX Securities, also a defendant in this action. The SAC alleges that these were self-interested transactions orchestrated by Hall and De Perio and approved by members of Sport-BLX's Board of Directors.

The SAC asserts nineteen causes of action, comprising both direct and derivative claims. The SAC purports to bring eleven direct claims against various Defendants alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, breach of the covenant of good faith and fair dealing, fraud in the inducement, negligent misrepresentation, unjust enrichment, tortious interference with contract and minority shareholder oppression. Four of the direct claims include Sport-BLX among the Defendants. All direct claims seek money damages for Cypress. Eight causes of action are styled as derivative claims brought on behalf of Sport-BLX against various Defendants, for unjust enrichment, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, usurpation of a corporate opportunity and corporate waste.

## II.    DISCUSSION

### A.    Purported Direct Claims

Certain of the claims Cypress purports to bring directly must be brought derivatively because they arise from injury to the corporation, Sport-BLX, and any recovery would flow to the corporation.

A threshold question is choice of law. "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." *Elliott v. Cartagena*, 84 F.4th 481, 496 n.14 (2d Cir. 2023). The forum state is New York. "Under New York [choice of] law [principles], courts look to the law of the state of incorporation in adjudicating . . . whether a claim is direct or derivative." *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 742 n.2 (2d Cir. 2014), *certified question answered*, 118 A.3d 175 (Del. 2015). Because Sport-BLX is a Delaware corporation, Delaware law determines whether a claim is properly direct or derivative. *See generally Halebian v. Berv*, 590 F.3d 195, 211 (2d Cir. 2009) (stating that Rule 23.1 is a "rule of pleading that creates a federal standard" enabling federal courts to evaluate whether a plaintiff has adequately pleaded a claim under substantive state law), *unrelated certified question answered*, 457 Mass. 620 (2010), *and abrogated on other grounds by Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229 (2d Cir. 2015).

To determine whether a claim must be brought directly or derivatively, Delaware courts analyze two factors: "(a) who suffered the alleged harm (the corporation or the stockholders, individually); and (b) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *In re FairPoint Ins. Coverage Appeals*, 311 A.3d 760, 767-68 (Del. 2023), *as revised* (Dec. 19, 2023) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)). For a direct claim, the stockholder's "claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039; *accord*

*Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266 (Del. 2021) (following the holding in *Tooley* and overruling a contrary decision, *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006)).

Cypress as Plaintiff purports to assert eleven direct causes of action, but the following causes of action are incorrectly denominated as direct claims and must be brought derivatively on behalf of Sport-BLX: (1) that Hall, De Perio, GlassBridge and S-BLX Securities were unjustly enriched by siphoning money and business opportunities from Sport-BLX to other entities (Count Six); (2) that Clinton Group tortiously interfered with the contract between Plaintiff, Sport-BLX, Hall and De Perio by accepting money and opportunities at Sport-BLX's expense (Count Nine); (3) that S-BLX Securities tortiously interfered with Sport-BLX's business plan by accepting money and opportunities at Sport-BLX's expense (Count Ten); (4) that Ruchalski and Strauss breached their fiduciary duties of care and loyalty to Sport-BLX by allowing a success fee to be diverted from Sport-BLX and by approving related transactions (Count Fifteen) and (5) that Hall, De Perio and GlassBridge oppressed Cypress as a minority shareholder by stripping Sport-BLX of assets and opportunities (Count Nineteen).

Each of these counts alleges claims predicated on harm to Sport-BLX as a corporation and not to Cypress as a stockholder. Count Six, for example, alleges that Sport-BLX was harmed by Defendants' siphoning money and opportunities from Sport-BLX and that Plaintiff was in turn harmed because this caused losses to Plaintiff as a stockholder. Because Plaintiff cannot prevail on this claim without showing an injury to Sport-BLX and any recovery would necessarily be owed to Sport-BLX, this claim is properly derivative. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 123 (2d Cir. 2022) (holding a claim was derivative where plaintiff alleged that unfavorable transactions violated a duty to the corporation and "[a]lthough the impact on [corporation's] EBIT, productivity, and indebtedness negatively affected the value of

[plaintiff's] options rights, that effect depends on an injury to [corporation]"); *Bocock v. INNOVATE Corp.*, No. 2021-0224, 2022 WL 15800273, at *16 (Del. Ch. Oct. 28, 2022) (finding claims derivative because they "focus[ed] primarily on the alleged looting of [corporation's] assets and forcing [corporation] into unfavorable agreements that negatively impact[ed] [its] financial position"), *reargument denied sub nom. Bocock v. Innovate Corp.*, No. 2021-0224, 2022 WL 17101448 (Del. Ch. Nov. 22, 2022).

The following two causes of action assert claims that purport to be direct but are in part derivative: (1) that Hall and De Perio breached their implied covenant of good faith and fair dealing with Cypress by stripping Sport-BLX of its assets and business opportunities (Count Two) and (2) that Hall and De Perio breached their fiduciary duties of care and loyalty to Cypress based on diversion of money and opportunities from Sport-BLX (Count Five). Count Two alleges conduct that harmed Cypress's investment because Sport-BLX lost assets and business opportunities, which is an injury to the corporation and thus a derivative claim. The non-derivative portion of Count Two alleges the loss of Cypress's board seat. Count Two includes Sport-BLX as a Defendant, which will be deemed only a nominal defendant on the derivative portion of that claim. Count Five incorporates and relies on the preceding factual allegations, which support both direct and derivative claims. To the extent it is based on allegations supporting the theory of stripping Sport-BLX of money and business opportunities, Count Five must be brought derivatively on behalf of Sport-BLX. The non-derivative portion of the claim in Count Five is based on any alleged misconduct supporting the surviving direct claims that post-date Cypress's investment (i.e., interfering with Cypress's board seat, but not wrongfully inducing the Cypress investment).

Plaintiff argues that the claims it characterized as direct are direct because they are based on Plaintiff's independent contractual rights or are based on misleading statements made to Plaintiff that caused it to invest in Sport-BLX. But under Delaware law, the correct inquiry is whether the harm falls on the corporation. *Tooley*, 845 A.2d at 1039 ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation."). A claim asserting violations of independent contractual rights is direct only if "the plaintiff can prevail without showing an injury to the corporation." *Miller*, 43 F.4th at 123. The Delaware Supreme Court explicitly overruled precedent that had held that "special injury" to certain shareholders could establish a direct claim even where the harm and recovery flowed through the corporation. *Brookfield Asset Mgmt., Inc.*, 261 A.3d at 1274. The causes of action recast as derivative claims do not allege violations of independent contractual rights held by Cypress alone, and each alleges harm to Sport-BLX. Count Nine alleges a violation of the agreement between Cypress, Sport-BLX, Hall and De Perio but alleges that the agreement was violated by Clinton Group's preventing Sport-BLX from realizing certain profits and not by any separate injury to Plaintiff. These claims must be brought derivatively because each of Plaintiff's alleged injuries occurred as a result of injury to Sport-BLX, through lost money, lost opportunities and interference with Sport-BLX's contracts and business.

## B.    Plaintiff's Conflict of Interest

The derivative claims in Counts Two, Five, Six, Seven, Twelve, Thirteen, Seventeen, Eighteen and Nineteen are dismissed against Defendants Hall, De Perio and GlassBridge because they are in direct competition with Cypress's similar direct claims for the same pool of damages, creating an impermissible conflict of interest. The derivative claims against the individual Defendants in Counts Fourteen, Fifteen and Sixteen are dismissed because those Defendants are

indemnified by Sport-BLX and the claims would not inherently trigger the good faith exemption to indemnification.  The derivative claims in Count Eighteen against Defendants Ruchalski, Strauss, Baez and Johnson survive the motion as "the existence of a conflict is unclear." *Tatintsian v. Vorotyntsev*, No. 16 Civ. 7203, 2018 WL 2324998, at *3 (S.D.N.Y. May 22, 2018). However, the Court may later "fashion a proper remedy" -- including dismissal of the Counts -- "if a conflict arises." *Id.*  The same is true for Counts Six, Seven, Nine, Ten, Eleven and Twelve against Defendants Clinton Group and S-BLX Securities, which are subject neither to indemnification nor to direct claims.

### 1.  Conflict of Interest Applicable Law

Under Federal Rule of Civil Procedure 23.1, a plaintiff may not maintain a derivative action "if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation." Fed. R. Civ. P. 23.1(a).

Adequacy of representation for derivative claims arises under Federal Rule of Civil Procedure 23.1 and is a procedural issue to which federal law applies.  *JFURTI, LLC v. Singal*, No. 17 Civ. 7206, 2018 WL 6332907, at *10 (S.D.N.Y. Nov. 12, 2018) ("[A]dequacy of representation is a procedural issue governed squarely by Rule 23.1" so courts in the Second Circuit are "bound by Second Circuit law interpreting and applying Rule 23.1."); *see Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021) (noting federal law applies to procedural issue and state law to substantive issues).

"Although the Second Circuit has not held that there is a *per se* rule against bringing derivative and direct claims simultaneously, courts in this District have applied a strict standard in scrutinizing direct and derivative actions for signs of conflict."  *Prophet Mortg. Opportunities*

*v. Christiana Trust*, No. 22 Civ. 9771, 2024 WL 708774, at *5 (S.D.N.Y. Feb. 21, 2024). "An adequate representative must have the capacity to prosecute a derivate suit vigorously and need be free from interests that are antagonistic to the interests of the class." *JFURTI, LLC*, 2018 WL 6332907, at *11. "While there is always a theoretical conflict of interest in situations where a plaintiff in a single lawsuit seeks redress on behalf of the corporation and from the corporation, it is indisputable that the existence of an actual conflict disqualifies a plaintiff from acting as representative in these dual capacities." *Tatintsian*, 2018 WL 2324998, at *2. "An actual conflict may exist where substantial recovery on the [direct] claim may reduce the potential recovery on behalf of the corporation on the derivative claim." *Prophet Mortg. Opportunities*, 2024 WL 708774, at *5. "When the potential for such a conflict is presented, both types of claims can only survive in one action if specific circumstances exist." *Tatintsian*, 2018 WL 2324998, at *3. Direct and derivative claims may be brought in the same action, for example, when the company at issue in the litigation has been dissolved, or is otherwise no longer in existence, or where the plaintiffs and defendants are the only shareholders of the company, such that recovery on either the direct or derivative claim would inure to the benefit of the same individuals. *See id.*; *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 794 (S.D.N.Y. 2011); *Grgurev v. Licul*, 229 F. Supp. 3d 267, 296 (S.D.N.Y. 2017).

Courts consider a number of factors bearing on the adequacy of representation. These include: (1) economic antagonism between the representative and class; (2) the remedy sought by the plaintiff in the derivative action; (3) other litigation pending between the plaintiff and the defendants; (4) the relative magnitude of the plaintiff's personal interest in matters beyond the scope of the derivative action, as compared to his or her interest in the derivative action; (5) the plaintiff's vindictiveness towards the defendants and (6) the degree of support the plaintiff

receives from other shareholders that he or she purports to represent. *See* 5 Moore's Federal Practice, Civil § 23.1.09(5) (Matthew Bender 3d ed. 2024); *accord Binn v. Bernstein*, No. 19 Civ. 6122, 2020 WL 4550312, at *20 (S.D.N.Y. July 13, 2020), *report and recommendation adopted,* 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020); *JFURTI, LLC*, 2018 WL 6332907, at *11.

In deciding a motion to dismiss pursuant to Rule 23.1, the court accepts all facts in the complaint as true. *F5 Cap. v. Pappas*, 856 F.3d 61, 71 (2d Cir. 2017). "[T]he defendant bears the burden of showing that the plaintiff is an inadequate representative." *JFURTI, LLC*, 2018 WL 6332907, at *11.

### 2. Similar Direct and Derivative Claims Against the Same Defendants

Plaintiff is conflicted from bringing certain derivative claims on behalf of Sport-BLX and its shareholders because these derivative claims and Plaintiff's similar direct claims against the same Defendants compete for the same pool of damages. The direct claims in Counts One, Two, Three, Four, Five, and Eight are against one or more of Defendants Hall, De Perio, Sport-BLX and GlassBridge. Each of these Defendants is also the subject of at least one derivative claim in Counts Two, Five, Six, Seven, Twelve, Thirteen, Seventeen, Eighteen and Nineteen Both the direct and derivative claims against these Defendants arise out of the same alleged circumstances: excessive rental payments from Sport-BLX to Clinton Group; the sale of Sport-BLX's proprietary trading platform to Sport-BLX Securities for less than fair market value; a success fee paid to Clinton Group to which S-BLX was otherwise entitled; the prevention of Cypress from obtaining a board seat and Ruchalski's and Strauss's approval of GlassBridge's purchase of Hall and De Perio's majority stake in Sport-BLX. The derivative portions of Counts Two and Five also arise from alleged misrepresentations made by Hall and De Perio that are also the subject of the direct claims in Counts One, Two, Three, Four and Five. Any recovery on

Plaintiff's direct claims against these Defendants "might reduce the recovery for the company and its shareholders on the derivative claims." *Tatintsian*, 2018 WL 2324998, at *3.

Because Cypress is a minority shareholder in Sport-BLX, it stands to recover a significantly greater amount if it succeeds on its direct claims than if it succeeds on its derivative claims, the damages of which would be split among the shareholders. This fact creates an impermissible incentive for Cypress to prioritize its direct claims at the expense of its derivative claims and violates Rule 23.1's requirement that the plaintiff in a derivative action "fairly and adequately represent the interests of shareholders or members who are similarly situated." Fed. R. Civ. P. 23.1. Therefore, Counts Six, Seven, Twelve, Thirteen, Seventeen, Eighteen and Nineteen, which are all derivative claims, and the derivative portions of Counts Two and Five, are dismissed as to Defendants Hall, De Perio and Glassbridge.

### 3.  Claims against Indemnified Defendants

Plaintiff is conflicted from bringing certain derivative claims on behalf of Sport-BLX because the individual Defendants are to some degree indemnified by Sport-BLX on those claims, and to a greater degree are indemnified by Sport-BLX on Plaintiff's direct claims. The conflict exists because Plaintiff's prevailing on its direct claims would reduce the amount of money available to Sport-BLX and its shareholders on the derivative claims. *See Tatintsian*, 2018 WL 2324998, at *3 (finding an actual conflict because the individual defendant was indemnified by the corporation).

All of the individual Defendants -- Hall, De Perio, Baez, Johnson, Ruchalski and Strauss -- are indemnified by Sport-BLX as former officers and directors. The indemnification applies to both direct and derivative claims. For direct claims, it applies to both judgments and expenses. For derivative claims, only expenses are indemnified. Indemnification of defendants

by the corporation on both direct and derivative claims, particularly with the greater

indemnification on direct claims, creates a conflict because "recovery for the direct and

derivative claims could ultimately come from the same pool of money." *Id.*

Plaintiff argues that it is not conflicted from bringing the derivative claims because the

individual Defendants cannot satisfy the good faith requirement for indemnification for direct or

derivative claims. Pursuant to the Sport-BLX bylaws, an individual is indemnified only if he is

found to have "acted in good faith and in a manner he reasonably believed to be in or not

opposed to the best interests of the Corporation." Under Delaware law,[1] the failure of a fiduciary

to act in good faith includes "conduct motivated by an actual intent to do harm" and "intentional

dereliction of duty, [or] a conscious disregard for one's responsibilities," but does not include

gross negligence alone. *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 64, 68 (Del.

2006); *accord In re McDonald's Corp. S'holder Derivative Litig.*, 291 A.3d 652, 687-88 (Del.

Ch. 2023) ("A failure to act in good faith may be shown, for instance, where the fiduciary

intentionally acts with a purpose other than that of advancing the best interests of the

corporation."). Plaintiff argues that the individual Defendants are not entitled to indemnification

---

[1] The parties have not briefed the issue of what law governs the questions to be determined by state law. Since Sport-BLX is a Delaware corporation, Delaware law would likely govern many of these issues. However, "under New York choice-of-law rules, the first step in any choice-of-law inquiry is to determine whether there is an actual conflict between the rules of the relevant jurisdictions." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). If a conflict exists, the court should then "apply New York choice-of-law rules to decide which jurisdiction's substantive law controls." *Id.* "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012); *accord CBF Industria De Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 256 (S.D.N.Y. 2023). Here, New York and Delaware law appear not to conflict on the issues relevant to this motion. Because the parties have not briefed the choice-of-law questions, they are not resolved at this stage, and both New York and Delaware law are cited below.

because they are alleged to have acted with bad faith or not in a manner they could have reasonably believed was consistent with the best interests of Sport-BLX.

Plaintiff's reliance on the good faith requirement for indemnification is largely unavailing.  As explained below, at least some of Plaintiff's direct claims are subject to indemnification.  Plaintiff is therefore conflicted from bringing any derivative claims also subject to indemnification because the direct and derivative claims would compete for the same limited pool of damages.

First, at least some of Plaintiff's direct claims are subject to indemnification.  Count Four, alleging negligent misrepresentation against Hall and De Perio, does not require a showing of bad faith or that the defendants did not reasonably believe they were acting in the corporation's best interests.  "[I]n Delaware, a claim of negligent misrepresentation requires proof of all of the elements of common law fraud except that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly."  *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 762 (Del. Ch. 2014); *Blueacorn PPP, LLC v. Pay Nerd LLC*, 310 A.3d 590, 594 (Del. Ch. 2024) ("[A] plaintiff must plead four elements: (1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information."); *see also Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) ("[A] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the

13

information[.]"); *accord Cordaro v. AdvantageCare Physicians, P.C.*, 176 N.Y.S.3d 1, 5 (1st

Dep't 2022) (noting scienter is not a required element of negligent misrepresentation).

Because at least one direct claim is subject to indemnification, Plaintiff is conflicted from

bringing derivative claims that also are subject to indemnification.  The derivative claims

pleaded in Counts Fourteen, Fifteen, Sixteen and Nineteen are subject to indemnification because

they do not require a showing of bad faith or that Defendants did not reasonably believe they

were acting in the corporation's best interests.  These counts allege that individual Defendants

breached their fiduciary duties of care and loyalty through their actions that diverted money and

opportunities from Sport-BLX to other entities.  A violation of the duty of care under Delaware

law does not require a showing that a defendant acted in bad faith.  *See In re Walt Disney Co.*

*Derivative Litig.*, 906 A.2d at 65 (observing that Delaware's legislative history and "common

law jurisprudence distinguish sharply between the duties to exercise due care and to act in good

faith" and that "[t]o adopt a definition of bad faith that would cause a violation of the duty of

care automatically to become an act or omission not in good faith, would eviscerate the

protections accorded to directors" available under Delaware law); *see also Higgins v. N.Y. Stock*

*Exch., Inc.*, 806 N.Y.S.2d 339, 361 (N.Y. Sup. Ct. 2005) ("The fiduciary duty of due care, in

turn, obligates directors to act in an informed and reasonably diligent basis in considering

material information.").  In contrast, the duty of loyalty requires that the "fiduciary subjectively

act[s] in the best interests of the entity."  *In re McDonald's Corp. S'holder Derivative Litig.*, 289

A.3d 343, 351 (Del. Ch. 2023); *see also Higgins*, 806 N.Y.S.2d at 357 ("The fiduciary duty of

loyalty imposes . . . an obligation not to assume and engage in the promotion of personal

interests which are incompatible with the superior interests of their corporation as [directors]

owe the corporation their undivided and unqualified loyalty."); *accord Owen v. Hurlbut*, 197

N.Y.S.3d 926, at *4 (N.Y. Sup. Ct. 2023).  A violation of the duty would trigger the exception to indemnification.  However, Counts Fourteen, Fifteen and Sixteen allege violations of both the duty of care and loyalty.  These derivative claims each may be proven without a showing of bad faith by demonstrating a violation of the duty of care and therefore are subject to indemnification.  Plaintiff is conflicted from bringing each claim.

Count Nineteen alleges minority shareholder oppression, a type of fiduciary duty claim subject to the entire fairness standard.  *See Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, No. Civ. 2020-0194, 2020 WL 5951368, at *5 (Del. Ch. Oct. 8, 2020); *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 714 n.140 (Del. Ch. 2023) (noting that entire fairness can apply where "the propriety of a board decision is in doubt because the majority of the directors who approved it were grossly negligent, acting in bad faith, or tainted by conflicts of interest; or . . . a transaction involved a controlling stockholder"); *see also 21st Century Diamond, LLC v. Allfield Trading, LLC*, 974 N.Y.S.2d 359, 361 (1st Dep't 2013) (noting that a majority shareholder can oppress a minority shareholder "by freezing the latter out of the business and depriving it of the benefit of its interest"); *In re Kemp & Beatley, Inc.*, 473 N.E.2d 1173, 1179 (N.Y. 1984) ("Oppression should be deemed to arise only when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances, and were central to the petitioner's decision to join the venture.").  Fiduciary duty claims such as this do not necessitate a finding of bad faith.

The SAC's derivative claim of corporate waste, Count Eighteen, by its nature alleges bad faith or conduct reasonably viewed as not in the best interests of the Sport-BLX.  The SAC alleges that the below-market sale of the Sport-BLX trading platform to S-BLX Securities, which was facilitated by the individual defendants, constitutes corporate waste.  "The Delaware

Supreme Court has implicitly held that committing waste is an act of bad faith." *In re McDonald's Corp. S'holder Derivative Litig.*, 291 A.3d at 694; *see also SantiEsteban v. Crowder*, 939 N.Y.S.2d 28, 30 (1st Dep't 2012) ("The essence of a waste claim is the diversion of corporate assets for improper or unnecessary purposes"); *accord Pagoulatos v. Trahanas*, 206 N.Y.S.3d 922, at *3 (N.Y. Sup. Ct. 2024) ("To prevail on a claim for corporate waste, an objecting owner must establish that no person of ordinary sound business judgment would say that the corporation received fair benefit from a given transaction."). Thus, Defendants are not entitled to indemnification on this claim. Without indemnification, and because Ruchalski, Strauss, Baez and Johnson are not named in any direct claim, it appears that Plaintiff is not conflicted from bringing this claim against them (though is conflicted from bringing it against Hall and De Perio because of similar direct claims as discussed above). *See Tatintsian*, 2018 WL 2324998, at *3. Cypress does not seek to recover by asserting a direct claim against these Defendants, so there is no apparent risk that Sport-BLX's potential recovery against them will be undermined by a simultaneous victory on Count Eighteen. If a conflict arises, the Court retains its "power[] to fashion a proper remedy," including dismissal of the derivative claims against Ruchalski, Strauss, Baez and Johnson. *See id.*

Plaintiff also is not conflicted from bringing the following derivative claims because they are asserted only against Defendants who are not indemnified and not subject to similar claims as discussed above -- unjust enrichment (Counts Six and Seven) against S-BLX Securities; tortious interference (Count Nine) against Clinton Group; tortious interference (Count Ten) against S-BLX Securities; unjust enrichment (Count Eleven) against Clinton Group and aiding and abetting breach of fiduciary duty (Count Twelve) against S-BLX Securities and Clinton Group (but not against GlassBridge because Plaintiff is conflicted).

### 4. Special Circumstances

None of the circumstances exist here in which courts have allowed both direct and derivative claims to proceed in tandem despite an actual conflict. "[W]hen a company has ceased to exist, the plaintiff no longer has an equity interest in the corporation that he is suing, so his direct and derivative claims do not present a conflict of interest. This reasoning has not been extended, however, to situations in which both sets of claims are brought against a company that is merely facing financial difficulties or appears on the verge of collapsing." *Tatintsian*, 2018 WL 2324998, at *3. Sport-BLX has not ceased to exist. Plaintiff's contention that it is "now an empty shell, essentially insolvent with virtually no assets" merely speaks to the company's financial difficulties. Nor are Cypress and Defendants "the only shareholders of the company, such that recovery on either the direct or the derivate claim would inure to the benefit of the same individuals." *Id.* Accordingly, Counts Thirteen, Fourteen, Fifteen, Sixteen, Seventeen and Nineteen are dismissed. Count Six is dismissed as against Hall, De Perio and GlassBridge, against whom Cypress asserts direct claims, but not as against S-BLX Securities, against whom Cypress asserts no direct claims. Count Seven is dismissed as against Hall and De Perio but not as against S-BLX Securities for the same reasons. Count Twelve is dismissed as against GlassBridge, against whom Cypress asserts a direct claim, but not as against Clinton Group or S-BLX Securities. Count Eighteen is dismissed as against Defendants Hall and De Perio, against whom Cypress asserts direct claims, but not against Defendants Ruchalski, Strauss, Baez and Johnson, against whom Cypress asserts no direct claim and who would not be indemnified for this claim. Counts Two and Five are dismissed as to the derivative portion of the claims alleging conduct that harmed Cypress's investment, but not as to the direct portion of the claims alleging

deprivation of separate contractual rights held only by Cypress.  Counts Nine, Ten and Eleven are not dismissed, as there are no direct claims against Clinton Group or S-BLX Securities.

Plaintiff cites *Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 21 Civ. 38, 2022 WL 4072935 (S.D.N.Y. Sept. 2, 2022), for the proposition that "at the pleading stage, the fact that [p]laintiffs bring both direct and derivative claims simultaneously is not a basis for dismissal." *Id.* at *6.  But the *Hodnett* court did not reach this conclusion in a vacuum. It first determined that the plaintiffs and defendants in that case were "the only owners of a closely-held entity" and that therefore no conflict of interest was present.  *Id.*  That is not the case here.  As Plaintiff acknowledges, it is the third-largest shareholder of Sport-BLX, with a number of other minority shareholders.  Though characterizing the ownership interests of these minority shareholders as "nominal," Plaintiff points to no caselaw to support the proposition that these shareholders' interests may be ignored simply because their stakes are smaller.

Defendants argue that Cypress's Count Nineteen -- a derivative claim alleging minority shareholder oppression against Hall, De Perio and GlassBridge -- deprives Cypress of standing to bring any derivative claim because the relief it seeks on Count Nineteen is to have its investment bought out.  As an initial observation, the SAC makes no mention of a buyout as the demanded relief on Count Nineteen or any other count.  The SAC explicitly seeks damages -- compensatory, incidental and consequential.  This fact readily distinguishes this case from the two out-of-circuit cases Defendants cite in support of their standing argument.  *See Argiropoulos v. Kopp*, No. 6 Civ. 769, 2007 WL 954747, at *7 (D. Md. Mar. 26, 2007); *Eshelman v. Orthoclear Holdings, Inc.*, No. 7 Civ. 1429, 2009 WL 506864, at *9 (N.D. Cal. Feb. 27, 2009). Count Three, which seeks recission of Cypress's stock-purchase contract, also does not deprive the Court of jurisdiction under Second Circuit law.  *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs.,*

*Inc.*, 906 F.3d 215, 225 (2d Cir. 2018) (allowing substitution of company as plaintiff after derivative plaintiff's stock was bought out, as "a federal court maintains its jurisdiction at least long enough to determine whether the represented parties maintain an interest and whether a substitution could avoid mootness.").

### C.    Cypress's Adequacy of Representation

Defendants' contention that Cypress is ineligible under Rule 23.1 to bring *any* derivative claim on Sport-BLX's behalf -- including the claims against the individual defendants that survive conflict-of-interest scrutiny -- is unavailing.  The motion to dismiss is denied with respect to the derivative claims against Strauss, Ruchalski, Johnson and Baez for which indemnity would not be available, Count Eighteen, and the derivative claims against Clinton Group and S-BLX Securities in Counts Nine, Ten, Eleven and Twelve.  The brunt of Defendants' argument that Cypress is an inadequate representative relies on the arguments it made that Cypress's derivative claims pose a conflict of interest given its simultaneous direct claims.  As discussed above, those conflicts do not infect the derivative claim against Clinton Group, S-BLX Securities, Strauss, Ruchalski, Johnson and Baez, none of whom are subject to a direct claim.  Cypress's interests in prevailing on its direct claims are not "antagonistic to those [Cypress] is seeking to represent" against Clinton Group, S-BLX Securities, Strauss, Ruchalski, Johnson and Baez because a judgment against those Defendants will not compete for monetary damages with any judgment on a direct claim.  *See* 7C Wright & Miller, Federal Practice and Procedure § 1833 (3d ed. 2024).  Defendants' argument that "Cypress has little to no economic incentive to pursue its derivative claims" is effectively rebutted by the fact that the surviving derivative claims offer Cypress the chance to recover against Defendants who will not otherwise be the source of any recovery.

Nor is Defendants' argument of Cypress's "vindictiveness towards the defendants" a sufficient reason to question the adequacy of its representation in the derivative actions. Defendants point to the fact that Salerno secretly recorded phone calls with Sport-BLX, accused Hall of self-dealing and threatened Hall with litigation as evidence that the derivative claims further ulterior motives unrelated to representing the best interests of Sport-BLX. Construed in the non-moving party's favor, however, these activities are reasonably those of a concerned investor. Defendants point to the fact that no other minority shareholder has joined Cypress's suit as further evidence that Cypress is an insufficient representative. But that fact is legally irrelevant, particularly if, as Cypress asserts, the other minority shareholders have only a nominal stake in the company and therefore no economic incentive to pursue this action.

Defendants' claim is also unpersuasive that Cypress is an inadequate representative for the unconflicted derivative claims because it is a defendant in other litigation brought by Sport-BLX. "A plaintiff is an inadequate representative under Rule 23.1, if his stake in the derivative suit pales in comparison to his interest in an outside entanglement . . . ." *JFURTI, LLC*, 2018 WL 6332907, at *12 (citing *Blum v. Morgan Guaranty Trust Co. of N.Y.*, 539 F.2d 1388, 1390 (5th Cir. 1976)). Other litigation between the parties may create an impermissible entanglement, especially if the relative value of damages sought in the other litigation is significantly higher than the amount available to the derivative plaintiff and it appears the derivative suit is intended as a means to create leverage for settlement of the second suit. *See id.* ("It is perfectly clear, from the parties' litigation history, that [p]laintiffs are using this derivative suit as a device to obtain leverage over the [d]efendants"); *Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 n.7 (11th Cir. 1982) (noting that derivative suits can be used as weapons for "obtaining a favorable settlement in other actions" because board member defendants "can be held personally liable for

a judgment rendered in the derivative suit" and therefore "may be tempted to settle other suits" to avoid personal liability). Here, Cypress is a defendant in *Sport-BLX, Inc. v. Salerno*, No. 22 Civ. 8111 (S.D.N.Y. filed Sept. 22, 2022) (hereinafter *Salerno*), in which Sport-BLX alleges business-related torts against Cypress and seeks damages of approximately $29 million. In contrast, this action, filed on January 11, 2022, and removed to this Court on February 14, 2022, would result in approximately several million in damages to Cypress should it prevail on the derivative claims. The timing of *Salerno* -- which was filed after the instant action -- does not support an inference that this action is being used by Cypress mainly as a tool to effectuate settlement of the other litigation. The SAC also seeks substantial damages, and while the relative value of the damages that Cypress may obtain derivatively is less than those sought by Sport-BLX in its suit, Cypress's stake in the derivative claims does not "pale in comparison" to its economic interest in *Salerno*.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the derivative claims is **GRANTED** in part and **DENIED** in part. The following are correctly alleged as derivative claims: Counts Eleven, Twelve, Thirteen, Fourteen, Sixteen, Seventeen and Eighteen. The following are recast as additional derivative claims: Counts Six, Nine, Ten, Fifteen and Nineteen in their entirety and the portions of Counts Two and Five that allege claims based on stripping Sport-BLX of assets and opportunities. The following derivative claims are dismissed: Counts Two, Five, Six, Seven, Twelve, Thirteen, Seventeen, Eighteen and Nineteen are dismissed against Defendants Hall, De Perio and GlassBridge; Counts Fourteen, Fifteen and Sixteen against Defendants Strauss, Ruchalski, Baez and Johnson.

For clarity, the surviving direct claims are: the direct clams against Hall, De Perio and Sport-BLX contained in Counts One, Two, Three, Four and Five; and the direct claim against GlassBridge in Count Eight.  Also surviving are the following derivative claims: the claims against S-BLX Securities and Clinton Group in Counts Six, Seven, Nine, Ten, Eleven and Twelve; and the derivative claim against Baez, Johnson, Strauss and Ruchalski in Count Eighteen.  However, the Court may later "fashion a proper remedy" -- including dismissal of the Counts -- "if a conflict arises" or if it becomes clear that any of the remaining direct claims should be recast as derivative.  *Tatintsian*, 2018 WL 2324998, at *3.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 159.

Dated:  September 23, 2024
          New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

22