# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
212-880-9410

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

October 8, 2024

**BY ECF**
The Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS)

Dear Judge Schofield:

    We represent Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc. ("Sport-BLX Securities"), Clinton Group, Inc. ("Clinton Group"), George Hall, Cesar Baez, and Christopher Johnson (together the "Sport-BLX Parties") in the above-referenced action. We submit this pre-motion letter pursuant to Section III(A)(1) of Your Honor's Individual Rules and Procedures in anticipation of filing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking summary judgment on the claims brought by Cypress Holdings, III, L.P. ("Cypress") against the Sport-BLX Parties in the Second Amended Complaint ("SAC"). Defendant Joseph De Perio joins this letter with respect to the remaining claims against him in the SAC (the direct claims in Counts 1, 2, 3, 4, and 5).

    The gravamen of the SAC is that the individual and corporate defendants (in different combinations) did essentially two things wrong: first, they allegedly misled Cypress, a sophisticated investor, into investing into Sport-BLX, a start-up company, through promises to perform certain acts in the future; and, second, they allegedly unfairly deprived Cypress and Sport-BLX of money and assets. As fact discovery has demonstrated, these claims lack a basis in fact and law.

    Following this Court's September 23 Opinion and Order, Cypress's remaining claims against the Sport-BLX Parties and De Perio fall into three groups: (1) alleged fraudulent or negligent misrepresentations about future acts that supposedly induced Cypress to invest in Sport-BLX (the "Misrepresentation Claims") (SAC Counts 1, 3 and 4); (2) claims based on defendants allegedly depriving Cypress of its contractual right to a board seat (portions of SAC Counts 2 and 5); and (3) derivative claims against Johnson, Baez, Sport-BLX Securities, and Clinton Group for allegedly depriving Sport-BLX of money or property (SAC Counts 6, 7, 9, 10, 11, 12 and 18). Summary judgment should be granted because all of the claims lack merit.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lorna G. Schofield
October 8, 2024
Page 2

***Misrepresentation Claims.***  Cypress has brought claims for violation of Section 10(b) of the Securities and Exchange Act (Count 1), state law fraudulent inducement (Count 3), and state law negligent misrepresentation (Count 4). Cypress contends that it was falsely promised that, in the future, (1) its "Founders' Round" investment would exclusively be used for technology development, associated legal expenses, and marketing—not for rent; (2) Hall and De Perio would vote their shares for Cypress's manager to have a seat on the board of directors under terms set forth in a contract; and (3) Sport-BLX would serve as the manager of a fund that would invest in sports-related assets, from which Sport-BLX would receive referral fees, success fees, management fees, and advisory fees.

Cypress's Section 10(b) claim is untimely. A plaintiff must bring this claim "not later than the earlier of (i) 2 years after the discovery of the facts constituting the violation; or (ii) 5 years after such violation." 28 U.S.C. § 1658(b).  The two-year statute of limitations begins to run when "a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-CV-7436 (LJL), 2022 WL 3100562, at *5 (S.D.N.Y. Aug. 3, 2022). Here, Cypress was aware of its claims by December 2019 at the latest.  Throughout 2019, Cypress alleged misrepresentations by Hall, De Perio, and others.  In June 2019, a lawyer for Cypress sent a demand letter alleging self-dealing and dishonesty regarding a claimed sports-related fund.  Because Cypress was aware of its claims by December 2019, the Section 10(b) cause of action, filed more than two years later (in January 2022), is untimely.

Turning to the merits, Cypress has failed to put forward a cognizable claim of damages, and cannot establish causation between the alleged misrepresentations and damages.  Cypress has no damages expert, and in its response to Sport-BLX's damages interrogatory, contends (without legal support) that damages for the alleged misrepresentations consist of "the difference between the value of the consideration it paid for its Sport-BLX stock ($1,000,000.00) *and the value of that stock at the time of trial*." Dkt. No. 161-10 at 5 (emphasis added).  This theory fails to account for the myriad intervening acts unrelated to the alleged misrepresentations, and the theory is contrary to the established measure of out-of-pocket damages: "the difference between the price paid for the security and its true value absent the fraud on the date of the transaction." *Panos v. Island Gem Enterprises, Ltd.*, N.V., 880 F. Supp. 169, 176 (S.D.N.Y. 1995).  Cypress has not put forward any basis on which to conclude that the value of Sport-BLX at the time of purchase was less than what Cypress paid as a result of the alleged misrepresentations.

Next, Cypress cannot establish *scienter*.  Because the alleged misrepresentations relate to purported promises *to perform in the future*—as opposed to false or misleading statements about present facts—Cypress must come forward with evidence that "at the time the promise was made, the speaker *had no intention of keeping it*." *MicroStrategy Inc. v. Acacia Rsch. Corp.*, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010) (emphasis added).  Fact discovery was complete in July 2023, and no evidence has been (or can be) put forward to establish that, at the time the alleged misrepresentations were made, Hall, De Perio or Sport-BLX did not intend to perform the alleged promised acts.  No contemporaneous emails, no testimony, and no other form of evidence establishes or even suggests such intent—not even the hours of recordings secretly made by Salerno beginning three

Morvillo Abramowitz Grand Iason & Anello P.C.

Hon. Lorna G. Schofield
October 8, 2024
Page 3

days after Cypress's investment.[1]

Cypress's misrepresentation claims are also defeated by a contract integration clause. In the Stock Purchase Agreements ("SPAs"), signed by Cypress in February 2019, which Cypress negotiated with the aid of counsel, Cypress agreed that any representations "regarding the subject matter of this Agreement" were superseded by the SPAs.[2] The SPAs contain seller representations that Cypress reviewed with its counsel, modified, and then expanded during negotiations, but Cypress did not include the representations it now claims to have relied upon. Under Delaware and federal law, an integration clause that clearly disclaims reliance and was negotiated by counsel for sophisticated parties, like the clause and parties here, precludes a claim of reliance on purported extra-contractual misrepresentations.[3] *See, e.g.*, *MidCap Funding X Tr. v. Graebel Companies, Inc.*, No. CV 2018-0312-MTZ, 2020 WL 2095899, at *19 (Del. Ch. Apr. 30, 2020) ("Delaware's enforcement of clear anti-reliance provisions is implemented in a long line of cases"); *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 120 (S.D.N.Y. 2010) (finding plaintiff's reliance unreasonable as a matter of law where clear integration clause was negotiated between sophisticated parties). Simply put, "a party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim." *Black Horse Cap., LP v. Xstelos Holdings, Inc.*, No. CIV.A. 8642-VCP, 2014 WL 5025926, at *24 (Del. Ch. Sept. 30, 2014).[4]

Finally, Cypress cannot establish the representations at issue were false:

---

[1] "Negligent misrepresentation, however, 'cannot lie where the underlying representations take the form of promises [to perform in the future]' because promissory fraud requires an intentional or knowing act. That is because the promise to honor an agreement is only a misrepresentation if the promisor knows at the time of the promise that he will ultimately breach; such a misrepresentation cannot occur unknowingly or negligently." *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, at *14 (Del. Ch. Dec. 8, 2009). Cypress's negligent misrepresentation claim (Count 4) is therefore foreclosed.

[2] The integration clause of the SPAs reads as follows: "This Agreement, including all exhibits hereto, represents the entire agreement between the parties with respect to the purchase of the Shares by the Purchaser and **supersedes and replaces any and all prior written or oral agreements regarding the subject matter of this Agreement** including, but not limited to, any representations made during any interviews, relocation discussions or negotiations whether written or oral." (Emphasis added).

[3] Delaware law governs the state law claims. Sport-BLX is a Delaware corporation, and Sport-BLX and Cypress chose Delaware law to govern the parties' relationship in the SPAs' choice of law provision.

[4] Because the alleged misrepresentations all relate to promises to perform in the future, Delaware law does not require "anti-reliance language," and even a basic integration clause without such language is "sufficient to bar a fraud claim based on expressions of future intent or future promises." *S'holder Representative Servs. LLC v. Albertsons Companies, Inc.*, No. CV 2020-0710-JRS, 2021 WL 2311455, at *12 (Del. Ch. June 7, 2021).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lorna G. Schofield
October 8, 2024
Page 4

- *Sport-BLX board seat*: Hall and De Perio abided by the terms of the agreement with Cypress; they voted their shares in favor of Salerno's board position. No false statement was made.[5]

- *Alleged sports-related fund*: the idea of a fund (which would not have been managed by Sport-BLX) was no more than a concept or "prospect," accompanied by multiple disclaimers; and Sport-BLX, Hall, and De Perio never raised or managed such a fund. Salerno acknowledged in his deposition testimony that he knew creation of a fund was not certain and certainly not guaranteed. Forward-looking, at best aspirational, statements are not actionable for fraud. *See In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998); *Mooney v. E. I. du Pont de Nemours & Co.*, No. CV N17C-01-374 AML, 2017 WL 5713308, at *6 (Del. Super. Ct. Nov. 28, 2017), *aff'd*, 192 A.3d 557 (Del. 2018).

- *Use of Founders' Round money*: the document on which Salerno purports to rely (a set of FAQs given to him before investing) stated that "the proceeds raised through the currently contemplated Founders' Round . . . will [be] used solely for technology development, associated legal expenses and marketing." On March 12, 2019, Cypress invested $500,000 in the Founders' Round and $500,000 at a post-Founders' Round price. Consistent with the statement in the FAQs, through March 12 Sport-BLX spent money on technology, marketing, and legal expenses; after March 12, as non-Founders' Round money was raised (from Cypress and others), money was spent on varied expenses, including technology, marketing and legal expenses. By June 30, 2019, Sport-BLX had spent in excess of the amount of the Founders' Round ($2 million) on technology, legal and marketing expenses, and more thereafter. In its damages interrogatory response (Dkt. No. 161-10 at 5), Cypress now contends that in 2019 Sport-BLX spent more than $2 million on technology alone—flatly contradicting Cypress's claims about a misuse of Founders' Round money. The representation was not false.

**Remaining Direct Claims.** Counts Two and Five allege that Salerno was deprived of a contractually granted board seat as a result of Hall and De Perio's breach of certain duties owed to Cypress (when they sold some of their shares to defendant GlassBridge). For both claims, Cypress has not alleged (because it cannot) that Hall or De Perio breached the February 2019 contract that governs Salerno's right to a board seat, as at all times Hall and De Perio voted their shares in favor of Salerno. Regarding Count Two, which alleges a breach of the covenant of good faith and fair dealing against Hall, De Perio, and Sport-BLX, Cypress, through the assistance of experienced counsel, inserted contractual provisions that clearly contemplated Hall and De Perio potentially selling some of their shares in the future, and both Hall and De Perio complied with the February 2019 agreement's board seat provision. Count Two thus fails, as the "implied covenant will not infer language that contradicts a clear exercise of an express contractual right." *Bos. Consulting Grp., Inc. v. GameStop Corp.*, No. CV 22-363-CJB, 2023 WL 2683629, at *13 (D. Del. Mar. 29, 2023).[6] Regarding Count Five, which alleges a vague breach of fiduciary duty claim, "[i]t is a

---

[5] According to the SAC, Hall and De Perio began a campaign to deprive Salerno of a board seat only after Cypress invested in February 2019 and started to complain about management's actions. *See* SAC ¶¶ 66, 67, 78. These allegations further undermine any claim of scienter or falsity.

[6] Cypress also cannot establish any damages for loss of a board seat.

Morvillo Abramowitz Grand Iason & Anello P.C.

Hon. Lorna G. Schofield
October 8, 2024
Page 5

well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim," not a breach of fiduciary duty. *Stewart v. BF Bolthouse Holdco*, LLC, No. CV 8119-VCP, 2013 WL 5210220, at *12 (Del. Ch. Aug. 30, 2013). Because, here, Cypress's claim is entirely dependent on contractual terms, Cypress cannot prop up a non-viable breach of contract claim by simply cloaking it with the title, "breach of fiduciary duty." This claim must also fail.

*Derivative Claims*. The remaining derivative claims are based on the following four contentions, none of which has merit.

*First*, Cypress claims that a transaction between an entity named Orix and GlassBridge resulted in a success fee going to Clinton Group that should have gone to Sport-BLX.[7] *See* SAC Derivative Counts 9, 11, and 12. The fee in question related to consulting work that Clinton Group did for GlassBridge pursuant to an agreement entirely separate from Sport-BLX. The fee had nothing to do with sports or Sport-BLX, and the record is devoid of evidence supporting Cypress's contentions. Cypress seems to have abandoned the claim as it does not include the Clinton Group fee as a basis for damages in its response to Sport-BLX's damages interrogatory. Dkt. No. 161-10.

*Second*, Cypress claims that Hall and De Perio "siphon[ed] off" Sport-BLX's assets to benefit a newly founded entity, I Got It Holdings Corp. d/b/a Metabilia ("Metabilia"), which Cypress claimed was engaged in the exact same business as Sport-BLX. *See* SAC Derivative Count 10. Like the claim relating to the fee paid to Clinton Group, this claim also appears to have been abandoned by Cypress as it does not include such "siphon[ing]" as a basis for damages in Cypress's damages interrogatory response. Dkt. No. 161-10. In all events, the claim is meritless: as reflected in voluminous documentation provided to Cypress's counsel prior to the filing of the SAC, Metabilia developed its business plan and the software that it is using long before Sport-BLX was conceived of by Hall and De Perio; and the two companies are not in the same business or otherwise competitors. Nor does the record have any evidence supporting Cypress's Metabilia-related contentions.

*Third*, in the SAC, Cypress claims that Sport-BLX made excessive rent payments to Clinton Group, and that the excess rent deprived Sport-BLX of money that should have been spent on technology. *See* SAC Derivative Counts 9, 11, and 12. Yet Cypress has abandoned these claims as well. In its damages interrogatory response (Dkt. No. 161-10), Cypress no longer seeks damages for excessive rent (or for diverting funds from technology to rent). Rather, Cypress makes new allegations, not in the SAC, that the rent paid to Clinton Group was improper *in toto* because Clinton Group's lease with its landlord, World Gold, forbade subletting without World Gold's consent, and that Clinton Group stopped paying rent to World Gold while simultaneously collecting rent from Sport-BLX.

In addition to not having been properly alleged, this new claim fails for multiple reasons. First, under black-letter law, because Cypress is not a party to the lease between Clinton Group and World

---

[7] The Clinton Group was a registered investment adviser owned by George Hall.

Gold, Cypress has no standing to insert itself into the landlord-tenant relationship; only World Gold may claim that a sublet relationship was improper and seek damages therefrom. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009). Second, Clinton Group allowed Sport-BLX to use some of its space, but Clinton Group did not have a sublease with Sport-BLX. Third, Clinton Group did not stop paying rent to World Gold; rent was paid directly out of Clinton Group's accounts or from the security deposit Clinton Group provided when entering the lease. Fourth, the overlease for the property permitted Clinton Group to have Sport-BLX make use of its space.[8]

*Fourth*, Cypress claims that Sport-BLX sold the technology platform to Sport-BLX Securities, an affiliated entity, in late 2021 for below market value, that this harmed Sport-BLX, and that the decision was wrongfully approved by certain Sport-BLX directors.[9] *See* SAC Derivative Counts 6, 7, 10, 12, and 18. This claim fails for three principal reasons. First, in its damages interrogatory response (Dkt. No. 161-10 at 8), Cypress contends that damages should be based on the difference between the cost of building the technology in 2019 and the sale price in late 2021. Yet Cypress has failed to produce any expert testimony supporting this computation of inadequate consideration and injury, and this approach is contrary to the established method of valuing a product's fair market value: "what a willing buyer would pay in cash to a willing seller" on the open market. *United States v. 215.7 Acres of Land, More or Less, Situate in Kent Cnty., State of Del.*, 719 F. Supp. 273, 276 (D. Del. 1989). Moreover, Cypress's damage claim is premised on an incorrect statement of the consideration that was given to Sport-BLX in exchange for the technology. It was $225,000, *plus the cancellation of $1.35 million in debt owed* by Sport-BLX. The record is devoid of evidence that the technology was worth more than the consideration given for it in late 2021; and the Sport-BLX Parties' expert (Dr. Eslamimehr) has determined that it was sold for fair market value. Finally, given that the sale was for fair market value, there is no legitimate basis for Cypress to establish individual director liability for this transaction.

\* \* \*

In response to the Court's Order of September 24 and in anticipation of the October 23 pre-motion conference, the parties have conferred and propose the following briefing schedule for each side's summary judgment motions: movants submit their motions by November 22, 2024; respondents submit their opposition by December 23, 2024; and movants submit their replies, if any, by January 15, 2025.

---

[8] Though Cypress no longer seeks damages for "excessive" rent, we note that the record does not support that claim in the SAC. The money paid by Sport-BLX for use of Clinton Group's space was reasonable and consistent with the business model created by a third-party consultant (and reviewed by Cypress before investing). Nor is there evidence that money was spent on rent to the detriment of technology.

[9] Sport-BLX Securities was founded in 2020 to serve as the broker-dealer that the founders originally envisioned but were prevented from realizing because of Cypress's refusal to provide beneficial owner information in 2019. Sport-BLX Securities licensed technology from Sport-BLX, Inc. After paying substantial fees to Sport-BLX Inc., Sport-BLX Securities bought the platform technology in December 2021.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lorna G. Schofield
October 8, 2024
Page 7

                                Respectfully submitted,

                                */s/ Jonathan S. Sack*
                                Jonathan S. Sack

cc: Counsel of record (by ECF)