LAW OFFICES OF
# ALEXANDER M. DUDELSON
26 COURT STREET - SUITE 2306
BROOKLYN, NEW YORK 11242
(718) 855-5100   FAX (718) 624-9552

ALEXANDER M. DUDELSON

OF COUNSEL
LOUIS R. ROSENTHAL
JULIAN K. WHITE
YEHUDA FARKAS

FABIAN G. PALOMINO
(1924 - 2014)

October 15, 2024

The Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

      RE:    *Cypress Holdings, III, L.P. v. Hall*, No. 1:22-cv-1243 (LGS)

Dear Judge Schofield:

      This firm represents Plaintiff Cypress Holdings, III, L.P. ("Cypress") in the above-referenced action. We write in response to the October 8, 2024 pre-motion letter filed by Defendants SportBLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc., Clinton Group, Inc. ("Clinton Group"), George Hall ("Hall"), Cesar Baez ("Baez") and Christopher Johnson ("Johnson") (collectively, the "Sport-BLX Parties") (ECF No. 184) which was joined by Defendant Joseph DePerio as well as the separate letter filed on the same date by Defendants GlassBridge Enterprises, Inc. ("GlassBridge"), Daniel Strauss ("Strauss"), and Francis Ruchalski ("Ruchalski") (collectively, the "GlassBridge Parties") (ECF No. 185) in the above referenced action. For the following reasons, neither the Sport-BLX Parties nor the GlassBridge Parties should be permitted to file a summary judgment motion as to Cypress's claims in this action.

      Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment may only be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Neither the Sport-BLX nor GlassBridge Parties will be able to meet this burden as there is ample evidence of Defendants' self-dealing and misconduct.[1]

### I. Cypress's Misrepresentation Claims

      Cypress's claim pursuant to Section 10(b) of the Securities and Exchange Act is timely. Contrary to the Sport-BLX Parties' contention that "Cypress was aware of its claims by December 2019 at the latest," it was only after being alerted through various public filings and through discovery that Cypress learned of critical facts underpinning its Section 10(b) claim. Specifically, although Cypress had requested information from Defendants in 2019; those requests were denied and Cypress only learned through discovery and public filings in 2020 of, among other things, Defendants' improper self-dealing by way of payments they caused to be made by Sport-BLX to Clinton Group for "rent" (for an illegal sublease on which the Clinton Group had defaulted) for Clinton Group to defray its expenses, notwithstanding the express representation that Cypress' investment would be used solely

---

[1] For the sake of clarity, Cypress will address the points in the order presented by the Sport-BLX Parties' letter and reference the GlassBridge Parties' positions where appropriate.

for technology.[2]  As Cypress's Section 10(b) claim was filed in January 2022, it is timely, as it was pled within two years of discovery of the facts underlying the claim.

Moreover, Cypress has unquestionably demonstrated that it sustained damages as a result of Defendants' misrepresentations. Hall and De Perio induced Cypress to invest in Sport-BLX through a series of fraudulent misrepresentations concerning, among other things, the intended use of its investment, Sport-BLX's business plan, including its purported ability to generate revenue through a relationship with a sports asset management fund that would result in advisory, investment and management fees to Sport-BLX, and promised seat for a Cypress representative on the Sport-BLX Board.  After Cypress invested, the Sport-BLX and GlassBridge Parties frustrated Cypress's expectations as to its investment by engaging in a series of self-interested transactions that resulted in lining their own pockets, stripping Sport-BLX of its assets, and transferring Sport-BLX's business to other entities owned by the Defendants—depriving Cypress of the entire value of its investment.

The Sport-BLX Parties are also not entitled to summary judgment as to the issue of scienter. Scienter is typically a factual question that cannot be resolved on a motion for summary judgment.  *See RMED Intern., Inc. v. Sloan's Supermarkets, Inc.*, 185 F. Supp. 2d 389, 403 (S.D.N.Y. 2002) ("[S]cienter is a question of fact, and therefore 'appropriate for resolution by the trier of fact.'") (quoting *Press v. Chem. Investment Servs. Corp.*, 166 F.3d 529, 537-38 (2d Cir. 1999)).[3]

Contrary to Sport-BLX's contention, an integration clause in the agreement does not automatically preclude Cypress's misrepresentation claims.  *See Alpha Capital Anstalt v. Oxysure Systems, Inc.*, 252 F. Supp. 3d 332, 341 (S.D.N.Y. 2017) (permitting fraudulent inducement claim to proceed notwithstanding existence of integration clause because the agreement did not contain specific disclaimers).  The integration clause of the Stock Purchase Agreements here contained only general representations and warranties which are insufficient to preclude Cypress's specific claims of misrepresentation.  *See, e.g., PetEdge, Inc. v. Garg*, 2234 F. Supp. 3d 477, 488 (S.D.N.Y. 2017); *see also Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993).

Finally, the Sport-BLX Parties will be unable to establish the absence of a genuine issue as to any material facts regarding the falsity of the representations made to Cypress.  Cypress disputes the Sport-BLX Parties' version of events as set forth on pages 3-4 of their pre-motion letter. For example, the evidence (including an Excel spreadsheet prepared by Defendants) shows that Hall and De Perio sold their personal shares in Sport-BLX stock was to facilitate the removal of Salerno from the Sport-BLX Board while at the same time, lining their own pockets.  If the Court permits the Sport-BLX Parties to file their motion, Cypress will present evidence demonstrating the existence of a substantial factual dispute as to these issues.

---

[2] Similarly, it was only learned through discovery that Defendants never made any efforts to establish the fund as represented and instead steered advisory and management fees to Clinton Group.

[3] Hall and De Perio sold a large portion of their personal shares to GlassBridge for $355 per share days before the SportBLX annual shareholder meeting. A spreadsheet prepared by De Perio in connection with the transaction contains a calculation of those "for" and "against" Salerno, demonstrating that one of the intended purposes of the transaction was to remove him from the Board.

**II.     Cypress's Other Direct Claims**

The Sport-BLX Parties contend that Cypress' direct claims (Counts 2 and 5 of the Second Amended Complaint) fail because the February 2019 contract contemplated the Founders potentially selling some of their shares in the future and that Hall and Deperio merely sold some of their shares which had the indirect result of Salerno being voted off of the Board. In fact, the evidence shows (in the form of Defendants' excel spreadsheet calculating the exact number of shares needed to vote off Salerno) that Hall and Deperio devised the sale of the shares specifically to remove Salerno from the Board. The evidence is clear that, after Defendants told Salerno that they would "work around him," they took steps to do just that. After calculating the number of shares needed to vote Salerno off of the Board, Hall and Deperio sold that exact number to Glassbridge, a company whose Board consisted of Defendant De Perio and other associates of the Defendants. The factual evidence clearly demonstrates that Defendant's actions were designed to circumvent and frustrate the explicit purpose of February 2019 contract.

Defendants Hall, De Perio and Sport-BLX owed a fiduciary duty to Plaintiff based on their written agreements regarding Cypress investment, as well as being the Founders and majority shareholders in control of the company. The dispute is not directly addressed by contract as demonstrated by their aforementioned actions to circumvent their contractual obligations. Their removal of a Cypress representative of the Board allowed Defendants to siphon Sport-BLX assets unfettered to themselves as well as other entities that they controlled.

The GlassBridge Parties' arguments regarding Cypress's direct claims fail for the same reasons (*See* ECF No. 142), including the parties' dispute regarding critical facts demonstrating GlassBridge Parties' role and involvement (through its CEO, Strauss, and CFO, Ruchalski, also members of Sport-BLX's Board) in frustrating Cypress's reasonable expectations regarding its investment in SportBLX. GlassBridge played a key role in removing Salerno from the Sport-BLX Board and in the series of self-serving transactions that left Hall and De Perio with the vast majority of Sport-BLX Stock and its technology, and Cypress and the other shareholders with nothing. Those transactions began with GlassBridge's purchase of Hall and De Perio's shares at $355 per share (which they later sold back to their affiliate at $2 per share) just days before the Sport-BLX annual shareholder meeting as a means to vote Salerno off the Board. Accordingly, neither the Sport-BLX Parties nor the GlassBridge Parties will ultimately succeed on a summary judgment motion as to Cypress's direct claims.

**III.    Cypress's Derivative Claims**

The Sport-BLX Parties claim that Cypress's derivative claims lack merit, for various reasons. (*See* ECF No. 140 at 5). However, the fact-sensitive discussion of the issues in the Sport-BLX Parties' letter only highlight that they cannot show that there is no genuine issue as to any material fact. The claims by the Sport-BLX Parties that there is no evidence to support Cypress's claims is simply not true. There is ample evidence in the record that: (i) the fees paid by Orix to the Clinton Group was for the first successful capital raise to purchase sports related assets, something which the promised Sport-BLX "fund" was expected to do; (ii) the rent paid to the Clinton Group was excessive, not paid to the landlord and part of an illegal sublease; and (iii) Defendants sold Sport-BLX's sole remaining asset, its technology platform, which the company had paid over $2 million to develop, to their affiliate, Sport-BLX Securities, for $225,000 without justification in a self-interested transaction that left Sport-BLX an empty shell. Thus, Defendants' factual contentions in its letter are hotly disputed.

*      *      *

Plaintiff concurs with the proposed briefing schedule proposed by Defendants.

Thank you for your consideration.

        Very truly yours,

        /s/ Alexander M. Dudelson
        _____
        Alexander M. Dudelson