**Sport-BLX, Inc.**
510 Madison Avenue, 9th Floor
New York, NY 10022

February 28, 2019

Cypress Holdings III, L. P.
Michael M. Salerno
121 Monmouth St.
Red Bank, NJ 07701

Re:   Stockholder Agreement

Reference is hereby made in this letter agreement (the "*Agreement*") to that certain (A) Common Stock Purchase Agreement (the "*Founder Agreement*") dated as of February 28, 2019 by and among Sport-BLX, Inc., a Delaware corporation (the "*Company*"), Cypress Holdings III, L. P., a Delaware limited partnership ("*Salerno*"), and, solely for the purposes specified therein, George E. Hall ("*Hall*") and Joseph A. De Perio ("*De Perio*" and, together with Hall, the "*Founders*") and (B) Common Stock Purchase Agreement (the "*Second Agreement*" and, together with the Agreement, the "*Stock Purchase Agreements*") dated as of February 28, 2019 by and among the Company, Salerno and, solely for the purposes specified therein, the Founders. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stock Purchase Agreements.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company, Salerno and the Founders hereby agree as follows:

1. **Salerno Right of First Offer.**

    A. ***General.*** Salerno shall have a right of first offer to purchase his Pro Rata Share (as defined below) of New Securities (as defined below) that the Company may, from time to time following the date of this Agreement, propose to sell and issue. If the Company proposes any offering to sell and issue any shares of New Securities (an "*Offering*"), then the Company shall promptly give written notice (the "*Offering Notice*") simultaneously to Salerno at least 15 days prior to the Offering. The Offering Notice shall describe in reasonable detail the proposed Offering including, without limitation, the number of New Securities to be offered, the nature of such Offering and the price and terms upon which the Offering is to be made. For a period of 10 days (the "*ROFO Period*") following receipt of any Offering Notice, Salerno shall have the right to purchase up to his Pro Rata Share of the New Securities subject to such Offering Notice on the same terms and conditions as set forth therein. Salerno's right of first offer shall be exercised by written notice delivered to the Company within the ROFO Period stating its election to purchase New Securities and the quantity of New Securities Salerno elects to purchase (the "*ROFO Notice*"). Salerno shall effect the purchase of the New Securities, including payment of the purchase price, not more than five business days after delivery of the ROFO Notice, and at such time the Company shall deliver to Salerno the certificate(s)

representing the New Securities to be purchased by Salerno. In the event that Salerno fails to exercise in full its right of first offer under this Section 1 within the time period required as set forth above, then the Company shall have the right, for 120 days thereafter, to sell the New Securities at a price and upon general terms no more favorable to the purchasers thereof than specified in the Offering Notice. In the event that the Company has not sold the New Securities within such 120 day period, the Company shall not thereafter issue or sell any New Securities without again first offering such New Securities pursuant to this Section 1.

B. ***Pro Rata Share.*** For purposes of this Section 1, Purchaser's "***Pro Rata Share***" shall be calculated as of the date of the Offering Notice and shall be the ratio of (1) the total number of shares of Common Stock held by Salerno plus the number of shares of Common Stock issuable upon conversion of all shares of any other class or series of capital stock held by Salerno, *over* (2) the total number of shares of Common Stock then outstanding plus the number of shares of Common Stock issuable upon exercise or conversion of all then outstanding shares of any other class or series of capital stock or other securities exercisable for or convertible into, directly or indirectly, Common Stock.

C. ***New Securities***. For purposes of this Section 1, "***New Securities***" shall mean any shares of capital stock of the Company, including Common Stock and any other series or class of capital stock, whether now authorized or not, and rights, options or warrants to purchase said shares of capital stock, and securities of any type whatsoever that are, or may become, convertible into or exchangeable for said shares of capital stock. Notwithstanding the foregoing, "New Securities" does not include: (i) securities issued and issuable upon conversion of shares of capital stock; (ii) securities issued and issuable to employees, consultants, or directors pursuant to stock option, stock grant, stock purchase, or similar plans and arrangements approved by the Company's board of directors (the "**Board**"), including without limitation securities issuable upon the exercise of such securities; (iii) securities issued and issuable to equipment lessors, banks, financial institutions or similar entities in a debt financing or commercial transaction approved by the Board, the principle purpose of which is other than the raising of capital; (iv) securities issued and issuable as a dividend or other distribution; (v) securities issued in connection with an underwritten public offering under the Securities Act, (vi) securities issued and issuable in a merger or acquisition that is approved by the Board; (vii) securities issued and issuable pursuant to any transactions approved by the Board primarily for the purpose of (A) joint ventures, technology licensing or development, marketing or other commercial activities or (B) any other transactions involving corporate partners that are primarily for purposes other than raising capital; (viii) securities issued and issuable pursuant to a registration statement filed under the Securities Act; and (ix) securities issued or issuable upon the exercise or conversion of rights, options or warrants to subscribe for, purchase or otherwise acquire either Common Stock or securities convertible, either directly or indirectly, into or exchangeable for Common Stock outstanding as of the date hereof.

D. ***Termination.*** The provisions of this Section 1 will terminate and be of no further force or effect (i) with respect to any Shares Transferred to another person by Salerno, (ii) upon a change of control of the Company, (iii) upon the closing of an underwritten public offering under the Securities Act or (iv) if, and for so long as, Salerno (A) is deemed to be a Covered Person under Rule 506(d)(1) of the Securities Act and (B) is subject to any Bad Actor

Disqualification (except as set forth in Rule 506(d)(2)(ii) or (iii) or (d)(3) under the Securities Act). The term "*Bad Actor Disqualification*" means any "bad actor" disqualification described in Rule 506(d)(1)(i) through (viii) under the Securities Act.

**2. Board Composition.**

      **A.** *Salerno Board Seat*. For so long as Salerno continues to hold, in the aggregate, at least 2.5% of the capital stock of the Company on a fully diluted basis (the "**Ownership Threshold**") (which Ownership Threshold may be waived by the Board in its sole discretion and shall be subject to equitable adjustment in the event of a stock dividend, stock split, reverse stock split or similar event), each Founder agrees, from time to time and at all times, at each annual or special meeting of stockholders at which an election of directors is held or pursuant to any written consent of the stockholders, to vote, or cause to be voted, all shares of the Company's capital stock owned by such Founder, or over which such Founder has voting control, in favor of Salerno being elected to the Board.

      **B.** *Founder Board Seats*. Salerno agrees, from time to time and at all times, at each annual or special meeting of stockholders at which an election of directors is held or pursuant to any written consent of the stockholders, to vote, or cause to be voted, all shares of the Company's capital stock owned by Salerno, or over which Salerno has voting control, in favor of each of the Founders being elected to the Board.

    **3. Anti-Dilution Protection.** If the Company shall at any time during the Anti-Dilution Period (as defined below) issue shares of Common Stock or preferred stock of the Company to an investor(s) (excluding the transactions between the Company and Salerno contemplated by the Second Agreement) (a "*Subsequent Financing*") and the price per share at which shares of Common Stock or preferred stock of the Company are sold in such Subsequent Financing is less than the Per Share Price, then, concurrently with the consummation of such Subsequent Financing, the Company shall issue to Salerno, for no additional consideration, an additional number of shares of Common Stock such that the aggregate number of shares of Common Stock issued to Salerno pursuant to this Section 3 and the Second Agreement shall equal the quotient of (a) $499,849.46, divided by (b) lowest price per share paid by an investor participating in such Subsequent Financing. The "*Anti-Dilution Period*" means the period commencing on the date hereof and ending on the earlier of (i) May 15, 2019 and (ii) immediately following the consummation of the first Subsequent Financing consummated by the Company after the date hereof.

In witness whereof, the parties have executed this Agreement as of the date first written above.

**SPORT-BLX, INC.**

By: _____
Name:   George E. Hall
Title:   Executive Chairman


**Cypress Holdings III, L. P.**

By: Cypress Property Holdings, LLC

By:   _/s/ Michael M. Salerno_____
Name:   Michael M. Salerno
Title:   Manager


**Founders:**

_____
George E. Hall


_____
Joseph De Perio