## MINUTES OF THE REGULAR QUARTERLY MEETING
## OF THE BOARD OF DIRECTORS
## OF SPORT-BLX, INC.

### November 26, 2019

The Board of Directors (the "***Board***") of Sport-BLX, Inc. (the "***Corporation***") held a regular meeting (the "***Meeting***") on Tuesday, November 26, 2019 commencing at approximately 4:00 pm Eastern Time pursuant to notice provided pursuant to the Company's Bylaws:

All of the members of the Board were present at the Meeting without objection to the calling or convening of the Meeting:

> George E. Hall, Executive Chairman
> Cesar A. Baez
> Joseph A. De Perio
> Christopher Johnson
> Francis A. Ruchalski
> Michael Salerno
> Daniel A. Strauss

John Hall, the Company's Executive Vice President of Operations also participated in the Meeting.

William Mack, Esq. and Kelly Terrible, Esq. of Greenberg Traurig, LLP ("***GT***") the Company's outside counsel participated in the Meeting as described below.

Mr. G. Hall presided at the Meeting.  Mr. J. Hall served as Secretary of the Meeting.

The Executive Chairman reported that notice of the Meeting was not required pursuant to the Bylaws, that a quorum was present and that the Meeting was open.

### Approval of Prior Meetings' Minutes

Mr. G. Hall invited members of the Board to comment on the respective drafts of minutes for the Corporation's special Board meetings dated September 10, 2019 ("**September 10 Minutes**") and November 22, 2019 ("**November 22 Minutes**").  With respect to the November 22 Minutes, the Board discussed several comments, and upon a motion duly made and seconded, the members of the Board present unanimously resolved to adopt the November 22 Minutes subject to the incorporation of comments discussed.

With respect to the September 10 Minutes, Mr. Salerno stated he felt there were inaccuracies in the draft and stated his desire to review the draft with his legal counsel and further stated that, in his opinion, several sections required edit.  Mr. G. Hall encouraged Mr. Salerno to share with the Board what specific sections were in question, and Mr. Salerno stated his desire to present comments at a later date.  Mr. De Perio noted that the members of the Board should present comments in advance of the meeting so that both an effective dialogue and closure could be achieved.  Mr. Salerno stated he had comments to the Sections "FINRA Application" and "Path Forward."  Mr. Salerno stated his desire to add to the September 10 Minutes that

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                          SPORTBLX0265495

Mr. G. Hall stated that in the best interests of the Company, the members of the Board would be prohibited to speaking to FINRA without the consent of the Company.

The aforesaid discussion around the Section of the September 10 Minutes titled "FINRA Application" led to a discussion of the Company's withdrawal of its FINRA application. Mr. Salerno suggested he be allowed to contact FINRA with his own counsel and Company counsel. Mr. De Perio reiterated that as stated in the last meeting, the Company's outside counsel stated firmly that Mr. Salerno and his counsel could not contact FINRA directly, and that this new suggestion of having Company counsel join the call would not be a viable path to a successful FINRA membership application either. It was made clear that without disclosure of the beneficial owners of all the shareholders of the Company that a FINRA registration was not possible and as such, as decided at the Board's last meeting, the Company would pursue an alternate path.

The Board turned its attention to the Section of the September 10 Minutes titled "Path Forward." Mr. Salerno claimed that he did not recall that there was a vote taken at the end of the discussion of the Company's path forward. Mr. Strauss stated that there was, in fact, a vote taken at the end of the Board's last meeting regarding the "Path Forward" discussion. A discussion ensured regarding thoughts on the path forward for the Company and focusing on monetizing the Company's technology.

Mr. G. Hall suggested that the decision to approve the September 10 Minutes would be tabled and that he and Mr. De Perio would work to providing a revised draft to the Board.

## New Board Members

Mr. G. Hall welcomed Messrs. Baez and Johnson to the Board and thanked them for the work they had done to date to get up to speed on the Company. Both Mr. Baez and Mr. Johnson made comments on their desire to assist the Board going forward as required.

## Related Party Transaction Committee

Mr. De Perio led a discussion on the designation of a potential new committee of the Board which would take the lead on related party transactions between the Company, on the one hand, and any related party, on the other hand, going forward ("**Related Party Transaction Committee**" or "**RPTC**"). Mr. Salerno stated that, in principle, he thought the formation of the RPTC was a good idea. Mr. De Perio then walked through a draft resolution designating the Related Party Transactions Committee. By sway of summary of the draft resolutions, Mr. De Perio stated there were two types of potential related party transactions as follows:

(I)     One type of transaction would require a stockholder vote under prevailing Delaware law, and the RPTC would be charged with making recommendations to the Board and stockholders and negotiating such a transaction.

(II)    The other type of transaction would not require a stockholder vote under prevailing Delaware law, and the RPTC would be charged with negotiating and adopting such a transaction.

Mr. De Perio stated that, in order to give maximum effect to the RPTC, the RPTC should be empaneled with Members of the Board were independent in relation to the related party transactions submitted to the RPTC by the Board.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    SPORTBLX0265496

Mr. Salerno asked if Stockholders having an interest in a related party transaction that is submitted to the Company's Stockholders were entitled to vote on such transaction. Mr. De Perio stated that the determination would depend upon both the consideration of facts and circumstances and the advice of the Company's counsel. Having concluded a discussion, Mr. De Perio suggested that the resolution designating the RPTC be brought to a vote of the Board. Mr. Salerno suggested that he required until December 10 to review the proposed resolutions with his counsel. Mr. De Perio suggested that a Member of the Board should make informed decisions based on his own merit and opinion and not consistently seek to delay decision making on matters for 10 days and thereby prevent the Company from operating efficiently. Mr. De Perio offered to recess the meeting to give Mr. Salerno time to review the two pages of resolutions. Mr. G. Hall suggested that the Board ask questions to Mr. Mack and Ms. Terribile of Greenberg Traurig, the Company's outside counsel, to better understand the proposed resolution. Mr. De Perio emailed Mr. Mack and Ms. Terribile to join the call.

In the interim, while waiting for members of Greenberg Traurig to join the call, Mr. Salerno led a discussion on the Company's 401k (or lack thereof) and any relationships intertwined with Clinton Group, Inc. ("**Clinton Group**") and GlassBridge Enterprises, Inc. ("**GlassBridge**") related to 401k matters. A discussion ensued. Mr. Ruchalski detailed the Company's plan to deal with such matters, and Mr. Salerno offered his assistance going forward on such matters.

Mr. G. Hall suggested voting on the resolutions designating the RPTC. He further stated that the power and authority delegated to the RPTC could be amended from time to time by the Board. Upon a motion duly made and seconded, the Members of the Board present unanimously resolved to adopt the resolutions designating the RPTC set forth in Exhibit A attached hereto and incorporated herein by reference.

Mr. G. Hall led a discussion of the directors to be appointed to the RPTC. Mr. G. Hall nominated Mr. Baez to the RPTC, and the nomination was seconded. A brief discussion ensued on Mr. Baez's suitability. Upon a motion duly made and seconded, the Members of the Board present unanimously resolved to appoint Mr. Baez to the RPTC. Mr. G. Hall nominated Mr. Johnson to the RPTC. A brief discussion ensued on Mr. Johnson's suitability. Upon a motion duly made and seconded, the Members of the Board present unanimously resolved to appoint Mr. Johnson to the RPTC. Mr. Salerno then nominated himself to the RPTC. This issue was tabled, as Mr. Mack and Ms. Terribile of GT joined the Meeting at that time.

Mr. Mack joined the Meeting first and stated that questions pertaining to Delaware law should be handled by Mr. Terribile. Mr. G. Hall then diverted the discussion at hand to discuss the Company's withdrawn FINRA application. Mr. G. Hall stated Mr. Salerno's suggestion that Company's counsel and the counsel of Mr. Salerno and Cypress should call FINRA together and find a solution. Mr. Mack stated that this was not a viable path and a "highly irregular" solution as (i) FINRA would likely not take such a call to find a "workaround," and (ii) the applicant (*e.g., the Company*) would have to be made aware of the identity of Cypress's stockholders in any event because FINRA would request that the matters discussed on any call about an application be submitted to them in writing and the only party who can make formal submissions as part of a membership application process is the applicant. Mr. Mack further stated that the suggested "workaround" violated the spirit of FINRA's desire to monitor a broker-dealer and any dealings with its stockholders. Mr. Mack continued and said that FINRA would not permit an application to proceed without the applicant being able to identify and disclosure its ultimate beneficial owners. Mr. Salerno suggested that Mr. Mack take a call from Cypress's counsel. Mr. Mack stated that, while there was no pending application to discuss, he would be happy to take a call from Cypress's counsel.

Ms. Terribile joined the Meeting and summarized the proposed resolutions designating the RPTC, the judicial scrutiny applicable to certain related party transactions under the entire fairness standard under Delaware lawm and answered a number of questions from the Board. Mr. Salerno inquired whether

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    SPORTBLX0265497

stockholders having an interest in a related party transaction that is submitted to the Company's stockholders were entitled to vote on such transactions. Ms. Terrible explained the rights of the stockholders to vote under Delaware law and the effect of certain stockholder votes on the standard of Judicial applicable to certain transactions presented or to a vote of stockholders. Ms. Terrible also indicated that the proposed resolutions, assumed that the members of the RPTC should be independent. Mr. Mack and Ms. Terrible left the Meeting. Having voted on the resolutions designating the RPTC prior to the discussion with Mr. Mack and Ms. Terribile, Mr. De Perio asked if anyone desired to change their vote.

Mr. G. Hall then led the Board to return to the discussion on the nomination of Mr. Salerno to the RPTC. Mr. Strauss asked Mr. Salerno if he could act quickly given historical delays in the production of comments for minutes and the unavailability for calls on short notice, Mr. Salerno said he could move quickly. Mr. Strauss suggested given the fractious relationship between Mr. Salerno and the Board, he felt like that his appointment was not a good idea. Mr. Ruchalski noted that letters had been received in the past from the two counsels of Mr. Salerno and Cypress, and specifically, the most recent inspection demand. Mr. G. Hall stated that he was also a stockholder, like Cypress, and that he did not think it was appropriate for him (Mr. G. Hall) to be appointed to the RPTC. Mr. G. Hall also stated that (i) as recently as a few months ago, Mr. Salerno suggested that the Company buy back Cypress's shares at a 100% profit to its cost basis and (ii) at the last meeting of the Board, Mr. Salerno stated he was considering bringing a suit against the Company and its officers and directors. Mr. G. Hall stated that given that Mr. Salerno was a potential seller of stock and/or plaintiff adverse to the Company, Mr. Salerno did not appear independent to him. Mr. Salerno urged the Board to vote on his proposed appointment to the RPTC. Despite no second being offered to the original motion, the Board recorded a vote of 1 in favor, 6 against, with the one vote in favor being cast by Mr. Salerno.

## General Summary Update on the Company

Mr. De Perio led a discussion on the work over the past few months and several initiatives the Company was working on to employ its technology to generate revenue. Mr. De Perio described ongoing discussions between the Company and the European Tour regarding building the European Tour an online platform to list offerings of its members and provide a user interface for entertainment. Mr. De Perio described the revenue opportunity of an upfront build and ongoing maintenance/hosting. A discussion ensued.

Mr. De Perio then described ongoing discussions with a college admissions startup company that showed interest in working with the Company. Mr. De Perio described the revenue opportunity of an upfront build and ongoing maintenance/hosting. A discussion ensued.

Mr. G. Hall then led a discussion on the current LOIs with NBA players. Mr. G. Hall described a potential investment from a third party to buy the revenue share interest with the first athlete, P.J. Washington, and the Company's intent to use its technology in the future to partner with an entity to sell the revenue share interest. Mr. G. Hall described the revenue opportunity as a technology fee-based model. Mr. Salerno inquired how the technology fee could be tied to the size of the offering or amount sold. Mr. De Perio stated that the Company could not and would not structure a technology fee tied to any volume amounts, consistent with FINRA regulations. Mr. G. Hall reiterated this point as well. Each of Mr. Baez and Mr. Salerno expressed concern about the Company's [current business prospects].

## Update on Financial Condition

Mr. Ruchalski thereafter led a discussion on the Company's financial results on the Company's balance sheet accounts payable financing pro forma for recent transactions. A discussion ensued on the equity

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                SPORTBLX0265498

capital raised to date and the demand note outstanding with GlassBridge. The Board agreed that it was a good first transaction to be submitted to the RPTC. Mr. Salerno then led a discussion on several internal financing matters of GlassBridge. Mr. G. Hall stated that (i) it was not in the purview of the Board to comment on matters of another company, (ii) from time to time, Members of the Board may have material non-public information which would be inappropriate to share with the rest of the Board, and (iii) Members of the Board should only provide publicly available information only on those matters specific to a relationship with the Company.

Mr. Salerno then asked about the existence of a $4 million debt item on the balance sheet of a subsidiary of GlassBridge. Mr. Strauss stated that this information was in the GlassBridge 8-K and, thus, a matter of public record, and confirmed to Mr. Salerno that the $4 million debt item was the liability of a subsidiary of GlassBridge and had no effect on the Company. Mr. Salerno then inquired about a hypothecation of common stock of the Company for such a loan, and Mr. Strauss reiterated that the debt item was a liability of a subsidiary of GlassBridge. Mr. De Perio reiterated that the demand note in favor of GlassBridge was the only outstanding financial debt of the Company.

Mr. De Perio led a discussion on budget versus actual results as of September 30, 2019. A discussion ensued on further details. Mr. De Perio highlighted the matters that were both under budget (capital expenditures and marketing expense) and over budget (legal expense). Mr. De Perio stated that this was the last meeting such a presentation against a dated plan would be made and stated that a new financial model was being formulated.

### Capital Plan

Mr. G. Hall led a discussion on the need for the Company to raise capital. A discussion ensued on the capital raising options available to the Company. Mr. De Perio stated that the outstanding demand note was attractive in terms, but not a long-term solution for the Company's financial needs. Mr. Salerno suggested the Company contact financing partners of GlassBridge. Mr. G. Hall confirmed that initial conversations were already in the works. Mr. G. Hall suggested that the Company may need to raise equity at lower valuations then previous rounds given the Company's need for capital and revised business plan.

### Strategic Alternatives

Mr. G. Hall led a discussion on the possibility that the Company may sell itself or enter into a merger transaction. Mr. De Perio suggested that given the Company was relying on demand note financing that it was prudent for the Board to consider all options to maximize stockholder value. Mr. Hall suggested the Company should pursue raising primary capital, and as a secondary initiative, pursue a partial sale or outright sale of the Company. Mr. Hall also suggested he would be willing to sell some of his shares if it advanced the goals of the Company and assisted in the consummation of a transaction.

Mr. Salerno asked Mr. Hall what his thoughts were on the Company's value. Mr. G. Hall stated that the valuation of the Company could be ascertained by finding a third party bid and declined to provide his thoughts on what he thought the Company was worth. A discussion ensued. Mr. G. Hall concluded that the management team should advance initial conversations on a sale or merger, and that it was prudent to do so to preserve stockholder value.

### The Company's Office Space

Mr. G. Hall led a discussion on the Company's office space. He noted that the Company's office space expenditure was consistent with the Company's financial model presented to stockholders and also noted

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    SPORTBLX0265499

that the Company would likely be under plan for 2020 as far as expenditure given its requirements. Mr. G. Hall requested that Mr. Salerno make comments regarding the Company's office space. Mr. Salerno suggested that the Company should have a written agreement with Clinton Group regarding the office space the Company was sharing with Clinton Group for a monthly fee. A discussion ensued on the positives and negatives of having a written agreement. Mr. Salerno stated that a written document would allow for better transparency on costs and effectively ensure a "locked in" rate. The Board agreed that a potential course of action would be for Mr. Salerno and his counsel to articulate a number of considerations to the RPTC regarding a written agreement for the Company's office space, and the RPTC would be charged with evaluating such an agreement.

## Stockholder Meeting

Mr. G. Hall led a discussion on the Company's need to have a stockholder meeting. The Board agreed to move forward with the annual stockholder meeting. Mr. De Perio suggested that the executive team put together and present to the Board requirements for a shareholder communication and potential voting matters for the stockholders to consider at the annual meeting.

## Other Business

Mr. De Perio proposed the ratification of items from two previous Board meetings held on July 13, 2019 and July 26, 2019. One item was the nomination of Daniel A. Strauss to the Board. Upon a motion duly made and seconded for the ratification of Mr. Strauss' appointment to the Board effect, to the fullest extent permitted by applicable law, as of July 13, 2019, the Board recorded a vote of 5 in favor, 1 against, with the one vote against being cast by Mr. Salerno and Mr. Strauss abstaining. The other item is indemnification provisions for the executive officers of the Company. Upon a motion duly made and seconded for the ratification of indemnification agreements for the Company's executive officers effective, to the fullest extent permitted by applicable law, as of July 26, 2019, the Board recorded a vote of 6 in favor, 1 abstention, with the one abstaining vote being cast by Mr. Salerno.

Mr. Salerno led a discussion regarding Board compensation. Mr. De Perio stated that the new members of the Board, Mr. Baez and Mr. Johnson, had agreed to table compensation matters for now given financial considerations of the overall Company.

Mr. Salerno suggested that the Board consider the appointment of Gary Stevens, a prominent, retired thoroughbred racing jockey to the Board. The Board agreed that Mr. Salerno should obtain Mr. Stevens' availability for director interviews and set a date in the near future to consider such an appointment.

Thereafter, being no further business before the Board. The Meeting adjourned at 6:50 p.m. Eastern Time.

_____
George E. Hall, Executive Chairman


ATTEST:

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                      SPORTBLX0265500

_____

Joseph A. De Perio, President and Secretary

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    SPORTBLX0265501

**Formation of Related Party Transactions Committee:**

WHEREAS, pursuant to Section 141(c)(2) of the General Corporation Law of the State of Delaware (the "**DGCL**") and Section 9 of Article III of the bylaws of Sport-BLX, Inc., a Delaware corporation (the "**Corporation**"), adopted on November 20, 2018 (the "**Bylaws**"), the Board of Directors of the Corporation (the "**Board**" or the "**Board of Directors**") may designate one or more committees of the Board, each committee to consist of one or more directors of the Corporation; and

WHEREAS, the Board desires to designate a committee of the Board having and exercising the full power and authority of the Board with respect to the investigation, analysis, evaluation, review, consideration, determination, negotiation, authorization, approval and adoption of one or more related party transactions submitted from time to time to such committee by the Board, other than the Stockholder Actions (as defined below).

WHEREAS, the Board desires to designate a committee of the Board having and exercising the full power and authority of the Board with respect to the investigation, analysis, evaluation, review, consideration, determination, negotiation, reporting the committee's conclusions to the full Board and making a recommendation to the full Board of one or more related party transactions submitted from time to time to such committee by the Board which related party transaction is expressly required by the DGCL to be submitted to stockholders of the Corporation or adopting, amending or repealing the Bylaws (collectively, the "**Stockholder Actions**").

NOW, THEREFORE, BE IT RESOLVED, that the Related Party Transactions Committee of the Board (the "**Committee**") be, and hereby is, designated and established;

RESOLVED, FURTHER, that Cesar A. Baez and Christopher Johnson be, and each hereby is, designated and appointed as the sole members of the Committee;

RESOLVED, FURTHER, that the Committee be, and hereby is, delegated and shall have and may exercise all of the power and authority of the Board with respect to the following, and the following be, and hereby is, authorized, approved and adopted as the Charter of the Related Party Transaction Committee:

A.      Purpose.  The Committee is appointed to investigate, analyze, evaluate, review, consider, determine, negotiate and/or, with respect to any action or transaction other than the Stockholder Actions, authorize, approve and/or adopt, or, with respect to any of the Stockholder Actions, report the Committee's conclusions to the full Board of Directors and/or make a recommendation to the full Board of Directors, in each case, as to one or more related party actions or transactions submitted to the Committee from time to time by the Board of Directors (each, a "**Related Party Transaction**").

B.      Committee Membership.  The Committee's membership shall be fixed by the Board and be comprised solely of members of the Board of Directors who satisfy the independence requirements as set forth under Delaware law with respect to each Related Party Transaction under consideration by the Committee.  These individuals shall continue to serve on the Committee until their death, resignation or removal from the Committee, the disbandment of the Committee or in the event that such individual is not re-elected to the Board at any annual meeting of the stockholders of the Corporation.  In the event of any of the foregoing, the Board may appoint a replacement to serve on the Committee who shall satisfy the independence requirements as set

forth under Delaware law with respect to each Related Party Transaction under consideration by the Committee.

The Committee shall continue in existence until either (1) disbanded by a vote of the Board of Directors or (2) the members of the Committee determine by majority vote to disband the Committee after concluding that there is no further action to be taken by the Committee.

C.      Meetings; Procedure.  The Committee shall act by the affirmative vote of a majority of its members present at any meeting at which there is a quorum.  The presence of a majority of the members of the Committee shall constitute a quorum for the transaction of business. The Committee shall elect one of its members to serve as Chairperson of the Committee for purposes of administering the meetings.  The Chairperson of the Committee shall have no other rights, privileges or authority. The Committee shall meet as often as determined necessary by the Chairperson or a majority of the members of the Committee.  The Committee may hold its meetings in person or telephonically and may invite any guests to participate in its meetings as the Committee determines appropriate.

D.      Duties and Responsibilities. In furtherance of the foregoing purposes, the powers, authority, duties and responsibilities of the Committee are to:

(1)    Investigate, analyze, evaluate, review, consider, determine, negotiate and/or, with respect to any action or transaction other than the Stockholder Actions, authorize, approve and/or adopt, or, with respect to any of the Stockholder Actions, report the Committee's conclusions to the full Board of Directors and/or make a recommendation to the full Board of Directors, in each case, with respect to each Related Party Transaction;

(2)    Pursuant to Section 10 of Article III of the Bylaws, the Committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required; and

(3)    Possess such other power and authority and perform such other duties and responsibilities as are consistent with the purpose of the Committee and as the Board may delegate to the Committee from time to time.

E.      Stockholder Actions.  The Board of Directors shall not authorize, approve, adopt or declare advisable any Related Party Transaction constituting a Stockholder Action without a prior favorable recommendation of the Committee.

F.      Outside Advisors.  The Committee shall have the authority to obtain the advice and assistance of management, internal or external legal, accounting or other professional advisers selected by the Committee as the Committee deems appropriate to assist it in the full performance of its powers, authority, duties and responsibilities.  The Committee shall have the power and authority to engage and retain such advisors on terms deemed reasonable and appropriate to the Committee, which terms shall be binding on the Corporation. All fees, costs and expenses incurred by the Committee shall be paid by the Corporation.

G.      Indemnification.  The members of the Committee shall be entitled to indemnification and the advancement of expenses from the Corporation for actions taken as a member of the Committee to the full extent permitted by Article V of the Bylaws of the Corporation, applicable law or any

contractual agreements that may exist between such members and the Corporation as a result of their serving as a member of the Board.

ACTIVE 47329865v3
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    SPORTBLX0265504