*Execution Version*

# SPORTBLX, INC.

## COMMON STOCK PURCHASE AGREEMENT

This Common Stock Purchase Agreement (the "***Agreement***") is made as of February 1, 2019, by and among Sport-BLX, Inc., a Delaware corporation (the "***Company***"), Michael M. Salerno (the "***Purchaser***") and, solely for the purposes of Section 4(F), the other shareholders of the Company set forth on <u>Schedule A</u> (the "***Founders***").

In consideration of the mutual covenants and representations set forth below, the Company and the Purchaser agree as follows:

1. **Purchase and Sale of the Shares.** Subject to the terms and conditions of this Agreement, the Company hereby issues and sells to the Purchaser and the Purchaser hereby purchases from the Company 2,497 shares of the Company's Common Stock, par value $0.001 per share (the "***Shares***"), at a price of $200.18 per share. No fractional shares will be issued. The Company will issue, as promptly as practicable, a stock certificate, registered in the name of the Purchaser, evidencing the Shares.

2. **Representations of Company.** The Company hereby makes the following representations:

    A. ***Authorization.*** The execution, delivery and performance by the Company of the this Agreement and the consummation of the transactions contemplated hereby (a) are within the power of the Company and (b) have been duly authorized by all necessary actions on the part of the Company. This Agreement constitutes a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms. The Shares, upon issuance will be duly authorized, validly issued, fully paid and nonassessable.

    B. ***No Conflicts.*** The execution, delivery and performance of this Agreement by the Company, and the consummation of the transactions contemplated hereby and thereby, will not (a) result in any material violation of or be in material conflict with or constitute, with or without the passage of time and giving of notice, a material default under or breach of the Certificate of Incorporation or bylaws of the Company or any material provision of any instrument, judgment, order, writ, decree or contract to which the Company is a party or by which it is bound, or (b) result in any material violation of any provision of federal or state statute, rule or regulation applicable to the Company.

    C. ***Capitalization.*** Exhibit A hereto sets forth the authorized and the issued and outstanding capital stock of the Company as of the date hereof. Except as set forth on Exhibit A there are no subscription rights, options, warrants, conversion rights, purchase rights or other agreements that may or would require the Company to issue, sell, transfer or otherwise cause to become outstanding any capital stock of the Company.

NY: 915746-4

Confidential – Subject to Protective Order                                    SPORTBLX0148250

D. *Financial Statements.* The Company has heretofore delivered to Purchaser a copy of the unaudited balance sheet of the Company as of December 31, 2018 (the "**Most Recent Balance Sheet**"), together with the unaudited statement of operations for the Company for the twelve months ended December 31, 2018 (the "**Financial Statements**"). The Financial Statements are in accordance with the books and records of the Company, have been prepared in accordance with U.S. Generally Accepted Accounting Principles consistently applied, and fairly present the financial position of the Company in all material respects as of the date thereof, and the income or loss for the period then ended.

E. *Absence of Undisclosed Liabilities.* Except as (1) reflected or reserved against on the Most Recent Balance Sheet or (2) incurred since the date of the Most Recent Balance Sheet in the ordinary course of business and consistent with past practice, the Company has no liability in excess of $10,000.

F. *Litigation and Claims.* There is no (i) claim or (ii) legal, administrative, arbitration or other proceeding, suit or action, or governmental investigation or enforcement action ("**Proceeding**"), pending, or to the Company's knowledge, threatened against the Company, its employees to the extent involving or relating to the Company, the Company's assets or securities of the Company.

G. *Compliance with Law.* The business of the Company is being conducted, and has been conducted, in compliance with all applicable laws and regulations in all material respects. The Company possesses all authorizations, permits and licenses necessary to permit it to operate its business in the manner in which it presently is conducted.

H. *No Infringement.* The intellectual property used by the Company in its business does not infringe upon the rights of any third party.

3. **Representations of Purchaser.** The Purchaser hereby makes the following representations:

A. *Authorization.* The execution, delivery and performance by the Purchaser of the this Agreement and the consummation of the transactions contemplated hereby (a) are within the power of the Purchaser and (b) have been duly authorized by all necessary actions on the part of the Company. This Agreement constitutes a legal, valid and binding obligation of the Purchaser, enforceable against the Purchaser in accordance with its terms.

B. *Purchase for Own Account.* Purchaser is purchasing the Shares solely for investment purposes for its own account, and not with a view to the resale or distribution of any part thereof. Purchaser is not a party to, and does not presently intend to enter into, any contract or other arrangement with any other person or entity involving the resale, transfer, grant of participation with respect to or other distribution of any of the shares.

C. *Access to Information.* Purchaser has had opportunity to discuss the plans, operations and financial condition of the Company with its officers, directors or controlling persons, and has received all information Purchaser deems appropriate for assessing the risk of an investment in the Shares.

Confidential – Subject to Protective Order                    SPORTBLX0148251

D. ***Restricted Securities.*** Purchaser understands that the shares are "restricted securities" under applicable US federal and state securities laws and that Purchaser must hold the shares indefinitely, unless any subsequent proposed resale by Purchaser is registered under the Securities Act or an exemption from registration is otherwise available, and that the Company is under no obligation to register any subsequent proposed resale of the Shares.

E. ***No Public Market***. The Purchaser understands that no public market now exists for the Shares, and that the Company has made no assurances that a public market will ever exist for the Shares.

F. ***Accredited Investor.*** The Purchaser is an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

G. ***Foreign Investors.*** If the Purchaser is not a United States person (as defined by Section 7701(a)(30) of the Code) (a "***Foreign Investor***"), the Purchaser hereby represents that it has satisfied itself as to the full observance of the laws of its jurisdiction in connection with any invitation to subscribe for the Shares or any use of this Agreement, including (i) the legal requirements within its jurisdiction for the purchase of the Shares, (ii) any foreign exchange restrictions applicable to such purchase, (iii) any governmental or other consents that may need to be obtained, and (iv) the income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale, or transfer of the Shares. The Purchaser's subscription and payment for and continued beneficial ownership of the Shares will not violate any applicable securities or other laws of the Purchaser's jurisdiction.

4. **Restrictions on Transfer.**

A. ***Investment Representations and Legend Requirements.*** The Purchaser understands and agrees that the Company shall cause the legends set forth below, or substantially equivalent legends, to be placed upon any certificate(s) evidencing ownership of the Shares, together with any other legends that may be required by the Company or by applicable state or federal securities laws:

> THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "***ACT***") AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL REGISTERED UNDER THE ACT OR, IN THE OPINION OF COUNSEL SATISFACTORY TO THE ISSUER OF THESE SECURITIES, SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION OTHERWISE COMPLIES WITH THE ACT.
>
> THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO A LOCK-UP PERIOD IN THE EVENT OF A PUBLIC OFFERING AS SET FORTH IN THE COMMON STOCK PURCHASE AGREEMENT BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THESE SHARES, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE

Confidential – Subject to Protective Order                    SPORTBLX0148252

ISSUER. SUCH TRANSFER RESTRICTIONS, RIGHT OF FIRST REFUSAL AND LOCK-UP PERIOD ARE BINDING ON TRANSFEREES OF THESE SHARES.

B. ***Stop-Transfer Notices.*** The Purchaser agrees that to ensure compliance with the restrictions referred to herein, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

C. ***Refusal to Transfer.*** The Company shall not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of this Agreement or (ii) to treat as owner of such Shares or to accord the right to vote or pay dividends to any purchaser or other transferee to whom such Shares shall have been so transferred.

D. ***Lock-Up Period.*** The Purchaser hereby agrees that the Purchaser shall not sell, offer, pledge, contract to sell, grant any option or contract to purchase, purchase any option or contract to sell, grant any right or warrant to purchase, lend or otherwise transfer or encumber, directly or indirectly, any Shares or other securities of the Company, nor shall the Purchaser enter into any swap, hedging or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any Shares or other securities of the Company, during the period from the filing of the first registration statement of the Company filed under the Securities Act of 1933, as amended (the "Securities Act"), that includes securities to be sold on behalf of the Company to the public in an underwritten public offering under the Securities Act through the end of the 180-day period following the effective date of such registration statement (or such other period as may be requested by the Company or the underwriters to accommodate regulatory restrictions on (i) the publication or other distribution of research reports and (ii) analyst recommendations and opinions, including, but not limited to, the restrictions contained in NASD Rule 2711(f)(4) or NYSE Rule 472(f)(4), or any successor provisions or amendments thereto). The Purchaser further agrees, if so requested by the Company or any representative of its underwriters, to enter into such underwriter's standard form of "lockup" or "market standoff" agreement in a form satisfactory to the Company and such underwriter. The Company may impose stop-transfer instructions with respect to securities subject to the foregoing restrictions until the end of any such restriction period.

E. ***Company ROFR.*** If the Purchaser proposes any assignment, sale, offer to sell, pledge, mortgage, hypothecation, encumbrance, disposition of or any other like transfer or encumbering ("***Transfer***") of any Shares, then the Purchaser shall promptly give written notice (the "***Notice***") simultaneously to the Company at least thirty (30) days prior to the closing of such Transfer. The Notice shall describe in reasonable detail the proposed Transfer including, without limitation, the number of Shares to be transferred, the nature of such Transfer, the consideration to be paid, and the name and address of each prospective purchaser or transferee. If such prospective purchaser or transferee is a Foreign Investor, the Purchaser shall notify the Company of Purchaser's intent to transfer or sell to such Foreign Investor. For a period of fifteen (15) days (the "***Company ROFR Period***") following receipt of any Notice, the Company shall have the right to purchase all or a portion of the Shares subject to such Notice on the same terms and conditions as set forth therein. The Company's purchase right shall be exercised by written notice signed by an officer of the Company (the "***Company Notice***") and delivered to the Purchaser within the

Confidential – Subject to Protective Order					SPORTBLX0148253

Company ROFR Period. The Company shall effect the purchase of the Shares, including payment of the purchase price, not more than ten (10) business days after delivery of the Company Notice, and at such time the Purchaser shall deliver to the Company the certificate(s) representing the Shares to be purchased by the Company, each certificate to be properly endorsed for transfer. The Shares so purchased shall thereupon be cancelled and cease to be issued and outstanding shares.

   F. *Founder ROFR.* In the event that the Company does not elect to purchase all of the Shares available pursuant to its rights under Section 4(E) within the Company ROFR Period, the Purchaser shall give written notice within twenty (20) days following the earlier to occur of (i) any waiver by the Company of its rights under Section 4(E) or (ii) the expiration of Company ROFR Period (the "*Second Notice*") to each of the Founders, which shall set forth the number of Shares not purchased by the Company and which shall include the terms of Notice set forth in Section 4(E). Each Founder shall then have the right, exercisable upon written notice to the Purchaser (the "*Founder Notice*") within fifteen (15) days after the receipt of the Second Notice (the "*Founder ROFR Period*"), to purchase its pro rata share of the Shares subject to the Second Notice and on the same terms and conditions as set forth therein. Except as set forth in this section, the Founders who so exercise their rights (the "*Participating Founders*") shall effect the purchase of the Shares, including payment of the purchase price, not more than five (5) days after delivery of the Founder Notice, and at such time the Purchaser shall deliver to the Participating Founders the certificate(s) representing the Shares to be purchased by the Participating Founders, each certificate to be properly endorsed for transfer. Each Founder's pro rata share shall be equal to the product obtained by multiplying (i) the aggregate number of Shares covered by the Second Notice and (ii) a fraction, the numerator of which is the number of Shares held by the Participating Founder at the time of the First Notice, and the denominator of which is the total number of shares of Shares issued or issuable or other rights to acquire Shares at the time of the First Notice held by all Founders. In the event that not all of the Founders elect to purchase their pro rata share of the Shares available pursuant to their rights under this Section within the Founder ROFR Period, then the Purchaser shall give written notice to each of the Participating Founders within twenty (20) days following the expiration of the Founder ROFR Period, which shall set forth the number of Shares not purchased by the other Founders, and shall offer such Participating Founders the right to acquire such unsubscribed shares (the "*Unsubscribed Share Notice*"). Each Participating Founder shall have five (5) days after receipt of the Unsubscribed Share Notice to deliver a written notice to the Purchaser (the "*Participating Founders Additional Subscription Notice*") indicating the number of unsubscribed shares that such Participating Founder desires to purchase, and each such Participating Founder shall be entitled to purchase such number of unsubscribed shares on the same terms and conditions as set forth in the Second Notice. In the event that the Participating Founders desire, in the aggregate, to purchase in excess of the total number of available unsubscribed shares, then the number of unsubscribed shares that each Participating Founder may purchase shall be reduced on a pro rata basis. The Participating Founders shall then effect the purchase of the Shares, including payment of the purchase price, not more than five (5) days after delivery of the Participating Founders Additional Subscription Notice, and at such time, the Purchaser shall deliver to the Founders the certificates representing the Shares to be purchased by the Participating Founders, each certificate to be properly endorsed for transfer.

   G. *Termination of ROFRS.* The rights of first refusal granted by Purchaser pursuant to Section 4.E and 4.F above shall terminate at such time as a registration statement filed with

Confidential – Subject to Protective Order  SPORTBLX0148254

respect to securities of the Company with the Securities and Exchange Commission becomes effective under the Securities Act of 1933, as amended.

H. ***Tag-Along Rights*.** In the event that the Founders elect to sell shares of the Company's common stock that represent more than fifty percent (50%) of the aggregate number of shares then outstanding to a third party purchaser, the Founders shall give notice (a "Tag-Along Notice") to the Purchaser not less than fifteen (15) days prior to the consummation of the proposed sale. The notice shall identify the consideration per share and the other material terms of the proposed transfer. The Purchaser shall have the right to transfer to the third party the percentage of the Shares then owned by such Shareholder that is equal to the percentage of the total outstanding shares of the Company desired to be acquired by such third party purchaser. The rights of the Founder under this Section 4.G may be exercised by giving notice to the Founders within ten (10) days of the delivery to such Shareholder of the Tag-Along Notice. The failure by the Purchaser to so notify the Founders within such ten (10) day period shall be deemed an election by the Purchaser not to exercise his rights under this Section 4.G.

5. **General Provisions.**

   A. ***Choice of Law.*** This Agreement shall be governed by the internal substantive laws, but not the choice of law rules, of Delaware.

   B. ***Integration.*** This Agreement, including all exhibits hereto, represents the entire agreement between the parties with respect to the purchase of the Shares by the Purchaser and supersedes and replaces any and all prior written or oral agreements regarding the subject matter of this Agreement including, but not limited to, any representations made during any interviews, relocation discussions or negotiations whether written or oral.

   C. ***Notices.*** Any notice, demand, offer, request or other communication required or permitted to be given by either the Company or the Purchaser pursuant to the terms of this Agreement shall be in writing and shall be deemed effectively given the earlier of (i) when received, (ii) when delivered personally, (iii) one business day after being delivered by facsimile (with receipt of appropriate confirmation), (iv) one business day after being deposited with an overnight courier service or (v) four days after being deposited in the U.S. mail, First Class with postage prepaid and return receipt requested, and addressed to the parties at the addresses provided to the Company (which the Company agrees to disclose to the other parties upon request) or such other address as a party may request by notifying the other in writing.

   D. ***Successors.*** Any successor to the Company (whether direct or indirect and whether by purchase, merger, consolidation, liquidation or otherwise) to all or substantially all of the Company's business and/or assets shall assume the obligations under this Agreement and agree expressly to perform the obligations under this Agreement in the same manner and to the same extent as the Company would be required to perform such obligations in the absence of a succession. For all purposes under this Agreement, the term "Company" shall include any successor to the Company's business and/or assets which executes and delivers the assumption agreement described in this section or which becomes bound by the terms of this Agreement by operation of law. Subject to the restrictions on transfer set forth in this Agreement, this Agreement

Confidential – Subject to Protective Order    SPORTBLX0148255

shall be binding upon the Purchaser and his or her heirs, executors, administrators, successors and assigns.

E. *Assignment; Transfers.* Except as set forth in this Agreement, this Agreement, and any and all rights, duties and obligations hereunder, shall not be assigned, transferred, delegated or sublicensed by either party without the prior written consent of the other party. Any attempt without such consent to assign, transfer, delegate or sublicense any rights, duties or obligations that arise under this Agreement shall be void. Except as set forth in this Agreement, any transfers in violation of any restriction upon transfer contained in any section of this Agreement shall be void, unless such restriction is waived in accordance with the terms of this Agreement.

F. *Waiver.* Either party's failure to enforce any provision of this Agreement shall not in any way be construed as a waiver of any such provision, nor prevent that party from thereafter enforcing any other provision of this Agreement. The rights granted both parties hereunder are cumulative and shall not constitute a waiver of either party's right to assert any other legal remedy available to it.

G. *Severability.* Should any provision of this Agreement be found to be illegal or unenforceable, the other provisions shall nevertheless remain effective and shall remain enforceable to the greatest extent permitted by law.

H. *Reliance on Counsel and Advisors.* The Purchaser acknowledges that he or she has had the opportunity to review this Agreement, including all attachments hereto, and the transactions contemplated by this Agreement with his or her own legal counsel, tax advisors and other advisors. The Purchaser is relying solely on his or her own counsel and advisors and not on any statements or representations of the Company or its agents for legal or other advice with respect to this investment or the transactions contemplated by this Agreement.

I. *Counterparts.* This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

(*signature page follows*)

Confidential – Subject to Protective Order

SPORTBLX0148256

In Witness Whereof, the parties have executed this Agreement as of the date first written above.

**Company:**                                               **Purchaser:**

**SPORT-BLX, INC.**

By: _____          _____
Name:   George E. Hall                                     Michael M. Salerno
Title:    Executive Chairman

**Founders:**

**GEORGE E. HALL**                                         **JOSEPH A. DE PERIO**

By: _____          By: _____

*[Signature Page to Common Stock Purchase Agreement]*

Confidential – Subject to Protective Order                                SPORTBLX0148257

## Schedule A
Founders

George E. Hall
Joseph A. De Perio

Docs #3620213-v1

Confidential – Subject to Protective Order                                        SPORTBLX0148258