## CONSENT TO SUBLEASE

THIS CONSENT TO SUBLEASE (this "**Consent**") dated as of the 31 day of August, 2015 by and between BP 510 MADISON LLC, a Delaware limited liability company ("**Landlord**"), WORLD GOLD TRUST SERVICES LLC, a Delaware limited liability company ("**Tenant**"), and CLINTON GROUP, INC., a Delaware corporation ("**Subtenant**"), is made with reference to the following:

## RECITALS

A.    By Lease dated April 22, 2011 (the "**Original Lease**") as amended by a letter dated March 21, 2012 from Landlord to Tenant regarding condenser water for Tenant's supplemental air conditioning unit (the "**Condenser Water Letter**; the Original Lease as amended by the Condenser Water Letter being collectively the "**Lease**"), BP 510 Madison Ave LLC, predecessor-in-interest to Landlord, leased to Tenant certain premises on the 9th floor of the building (the "**Building**") located at 510 Madison Avenue, New York, New York, which premises are more particularly described in the Lease (the "**Premises**").

B.    Tenant desires to sublease the entire Premises (the "**Subleased Premises**") to Subtenant upon the terms and conditions contained in a Sublease between Tenant and Subtenant dated as of August 31, 2015 (the "**Sublease**").

C.    Pursuant to the terms of the Lease, Tenant is required to obtain Landlord's prior written consent to the Sublease.

D.    Simultaneously herewith, Landlord is leasing to Subtenant certain premises on the 8th floor of the Building pursuant to a Lease between Landlord and Subtenant of even date herewith (the "**Clinton Direct Lease**"), which premises are more particularly described in the Direct Lease (the "**Clinton Direct Premises**").

E.    Subject to, and in reliance upon, the representations, warranties, covenants, terms and conditions contained in this Consent, Landlord desires to consent to the Sublease.

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, paid by each of the parties hereto to the other, the receipt and sufficiency of which is hereby acknowledged, and in further consideration of the provisions herein, Landlord, Tenant and Subtenant hereby agree as follows:

1.    <u>Consent</u>.  Landlord hereby consents to the Sublease subject to, and in reliance upon, the representations, warranties, covenants, terms and conditions contained in this Consent.

2.    <u>Compliance by Subtenant; Enforcement</u>.

s:\server docs\boston properties\510 madison\world gold council\consent to clinton sublease version 2.docx

(a)    Subtenant (i) shall comply with and perform the terms of the Sublease to be complied with or performed on the part of the subtenant under the Sublease, (ii) shall not violate any of the terms of the Lease and (iii) subject to the terms of the Sublease, shall perform, during the term of the Sublease, the terms of the Lease to be performed on the part of the tenant under the Lease to the extent that such terms are applicable to the Subleased Premises provided that Subtenant's liability for the payment of rent and other amounts shall be limited to amounts set forth in the Sublease and (iv) assumes the indemnity, insurance and waiver of subrogation provisions of the Lease, which shall be applicable to the Subleased Premises as if such Subleased Premises were the Premises for the purposes of said provisions.

(b)    Tenant shall enforce the terms of the Sublease against Subtenant.  If Tenant fails to enforce such terms, Landlord shall have the right, but not the obligation, to proceed directly against Subtenant (in Landlord's name or in Tenant's name, as determined by Landlord in Landlord's sole discretion) in order to (i) enforce compliance with and performance of all of the terms, covenants, agreements, provisions, obligations and conditions to be performed or observed by Subtenant under the Sublease, the Lease (to the extent applicable to the Subleased Premises) or under this Consent or (ii) terminate the Sublease if any action or omission of Subtenant constitutes a default under the Lease.  Tenant shall cooperate with Landlord in connection with any such action or proceeding, and Tenant and Subtenant hereby jointly and severally indemnify and hold Landlord harmless from and against all costs and expenses including, without limitation, reasonable attorneys' fees, incurred by Landlord in connection with any such action or proceeding.

3.    <u>Subordination, Nondisturbance and Attornment</u>.

(a)    The Sublease shall be subject and subordinate at all times to the Lease and this Consent and all other instruments to which any of the foregoing is or may hereafter be subject and subordinate.  Except as otherwise hereafter expressly set forth, the provisions of this Consent and the execution and delivery of the Sublease shall not constitute a recognition by Landlord of the Sublease or the Subtenant thereunder; it being agreed that in the event of termination (whether voluntary or involuntary), rejection (pursuant to 11 U.S.C. §365) or expiration of the Lease, except as otherwise hereafter expressly set forth, the Sublease shall be deemed terminated and Subtenant shall have no further rights (including, without limitation, rights, if any, under 11 U.S.C. §365(h)) with respect to the Subleased Premises.

(b)    Notwithstanding the foregoing provision of this Section 3 or elsewhere in this Consent, if (1) the Lease is terminated for any reason whatsoever or rejected (pursuant to 11 U.S.C. §365) by Tenant prior to its scheduled expiration date(s) or (2) if Landlord shall succeed to Tenant's estate in the Subleased Premises, then, as long as Subtenant is in occupancy of the Clinton Direct Premises under the Clinton Direct Lease and in occupancy of the Subleased Premises under the Sublease and not in default beyond the expiration of any applicable notice and cure period under the Clinton Direct Lease or the Sublease at the time in question (the satisfaction of the foregoing conditions being herein called an "**Attornment Event**"), the Sublease, as amended by this Consent, shall continue in full force and effect as a direct lease

- 2 -

Confidential – Subject to Protective Order

between Landlord and Subtenant; *provided, however*, that upon an Attornment Event, Landlord shall not be (i) liable for any previous act or omission of Tenant; (ii) subject to any offset or defense which theretofore accrued to Subtenant (including, without limitation, any rights under 11 U.S.C. §365(h)); (iii) bound by any rent or other sums paid by Subtenant more than one month in advance; (iv) liable for any security deposit not actually received by Landlord; (v) liable for any work or payments on account of improvements to the Subleased Premises; or (vi) bound by any amendment of the Sublease not consented to in writing by Landlord; *provided, further*, that upon an Attornment Event the Sublease shall be deemed modified such that (A) the fixed rent and additional rent under the Sublease shall be increased (but not decreased), from time to time, so that it is equal on a rentable square foot basis to the Annual Fixed Rent and Additional Rent (as such terms are defined in the Lease) which would have been payable under the Lease with respect to the Subleased Premises had the Attornment Event not occurred, and (B) to the extent that the terms of the Lease or this Consent are more restrictive than the terms of the Sublease, then the more restrictive provision of the Lease or the Consent shall control as between Landlord and Subtenant. Such attornment shall be effective without the execution of any further agreement, but upon the request of either party, Landlord and Subtenant shall promptly execute and deliver an instrument to evidence such attornment and direct lease. In the event of such attornment, Tenant shall transfer to Landlord any security deposit under the Sublease (such obligation to include, without limitation, the transfer and modification of any letter of credit posted as security). Subtenant shall reimburse Landlord for any reasonable costs and expenses that may be incurred by Landlord in connection with such attornment including, without limitation, reasonable attorneys' fees. The terms of this Section 3 supersede any contrary provisions in the Sublease.

(c) Upon receipt from Landlord of written notice stating that an Attornment Event has occurred and requesting direct payment of rent, Subtenant shall thereafter pay to Landlord all rent (as modified pursuant to Section 3(b) hereof) and other charges coming due under the Sublease. Tenant agrees that Subtenant shall have the right to rely upon such notice and request from Landlord without any obligation to inquire as whether an Attornment Event actually has occurred and notwithstanding any notice from or claim of Tenant to the contrary, and Tenant shall have no right or claim against Subtenant for any such amounts so paid by Subtenant to Landlord after such notice to Subtenant.

4.    Representations and Warranties. Tenant and Subtenant represent, warrant and covenant to Landlord that (a) no rent, fees or other consideration has been or will be paid to Tenant by Subtenant for the right to use or occupy the Subleased Premises or for the use, sale or rental of Tenant's fixtures, leasehold improvements, equipment, furniture or other personal property other than as set forth in the Sublease, and (b) attached hereto as Exhibit A is a true, correct and complete copy of the Sublease that embodies the complete and entire agreement between Tenant and Subtenant. Upon Landlord's request from time to time, Subtenant shall deliver to Landlord a copy of Subtenant's most recent financial statements certified by an officer of Subtenant.

- 3 -

Confidential – Subject to Protective Order

CLINTON00034107

5.    Amendment or Termination of Sublease.    Tenant and Subtenant agree that they shall not change, modify, amend, cancel or terminate the Sublease or enter into any additional agreements relating to or affecting the use or occupancy of the Subleased Premises or the use, sale or rental of Tenant's fixtures, leasehold improvements, equipment, furniture or other personal property, without first obtaining Landlord's prior written consent thereto.

6.    No Waiver or Release.    Except as explicitly set forth herein, neither this Consent, the Sublease, nor any acceptance of rent or other consideration from Subtenant by Landlord (whether before or after the occurrence of any default by Tenant under the Lease) shall operate to waive, modify, impair, release or in any manner affect any of the covenants, agreements, terms, provisions, obligations or conditions contained in the Lease, or to waive any breach thereof, or any rights of Landlord against any person, firm, association or corporation liable or responsible for the performance thereof, or to increase the obligations or diminish the rights of Landlord under the Lease, or to increase the rights or diminish the obligations of Tenant thereunder, or to, in any way, be construed as giving Subtenant any greater rights than those to which the original tenant named in the Lease would be entitled or any longer time period to perform than is provided to the original tenant under the Lease.  Tenant hereby agrees that the obligations of Tenant as tenant under the Lease and this Consent shall not be discharged or otherwise affected by reason of the giving or withholding of any consent or approval for which provision is made in the Lease.  All terms, covenants, agreements, provisions and conditions of the Lease are hereby ratified and declared by Tenant to be in full force and effect, and Tenant hereby unconditionally reaffirms its primary, direct and ongoing liability to Landlord for the performance of all obligations to be performed by the Tenant as tenant under the Lease, including, without limitation, the obligations to pay all rent and all other charges in the full amount, in the manner and at the times provided for in the Lease.

7.    No Further Assignment or Subletting.    Tenant and Subtenant hereby agree that the terms, conditions, restrictions and prohibitions set forth in the Lease regarding subletting and assignment shall, notwithstanding this Consent, (a) apply to the Sublease and the Subleased Premises, (b) continue to be binding upon Tenant and Subtenant with respect to all future assignments and transfers of the Lease or the Sublease, and all future sublettings of the Premises or the Subleased Premises, and (c) apply to Subtenant with the same effect as if Subtenant had been the original tenant named in the Lease.  The giving of this Consent shall not be construed either as a consent by Landlord to, or as permitting, any other or further assignment or transfer of the Lease or the Sublease, whether in whole or in part, or any subletting or licensing of the Premises or the Subleased Premises or any part thereof, or as a waiver of the restrictions and prohibitions set forth in the Lease regarding subletting, assignment or other transfer of any interest in the Lease or the Premises. Subtenant shall not assign the Sublease or sublet or license all or any part of the Subleased Premises, voluntarily or by operation of law, or permit the use or occupancy thereof by others, without the prior written consent of Landlord in accordance with the terms of the Lease.

8.    No Ratification of Sublease.    Tenant and Subtenant acknowledge that Landlord is not a party to the Sublease and is not bound by the provisions thereof, and recognize that,

- 4 -

Confidential – Subject to Protective Order

accordingly, Landlord has not, and will not, review or pass upon any of the provisions of the Sublease. Nothing contained herein shall be construed as an approval of, or ratification by Landlord of, any of the particular provisions of the Sublease or a modification or waiver of any of the terms, covenants and conditions of the Lease or as a representation or warranty by Landlord.

9. <u>Default: Remedies</u>. Any breach or violation of any provisions of the Lease by Subtenant shall be deemed to be and shall constitute a default by Tenant under the Lease. Without limiting any right of Landlord under the Lease, or any other right of Landlord under this Consent, in the event (a) of any default by Tenant or Subtenant in the full performance and observance of any of their respective obligations under this Consent or (b) any representation or warranty of Tenant or Subtenant made in this Consent shall prove to be false or misleading in any material respect, then if such violation shall not be discontinued or corrected within thirty (30) days after the giving of notice by Landlord to the defaulting or violating party (with copies of such notice to the other parties to this Consent), such default or violation may, at Landlord's option, be considered an Event of Default under the Lease. Subject to Landlord's and Subtenant's rights as to attornment under Section 3 hereof, if Subtenant shall fail to vacate and surrender the Subleased Premises upon the expiration, rejection or earlier termination (whether voluntary or involuntary) of the Lease, then (x) Landlord shall be entitled to all of the rights and remedies which are available to a landlord against a tenant holding over after the expiration of a term and (y) without limiting Landlord's rights against Tenant under the Lease or Tenant's rights against Subtenant under the Sublease, Subtenant shall be directly liable to Landlord under the holdover provisions of the Lease with respect to the Premises; provided, however, that in no event shall Subtenant be obligated to make any duplicate payment to both Landlord and to Tenant. Subtenant expressly waives for itself and for any person claiming through or under Subtenant, any rights which Subtenant or any such person may have under 11 U.S.C. §365(h), including, without limitation, any right to remain in possession of the Premises under §365(h)(1)(A)(ii) and any right of offset under §365(h)(1)(B) against any amounts due and owing to Landlord. Further, Subtenant expressly waives for itself and for any person claiming through or under Subtenant, any rights which Subtenant or any such person may have under the provisions of Section 2201 of the New York Civil Practice Law and Rules and of any successor law of like import then in force, in connection with any holdover summary proceedings which Landlord may institute to enforce the foregoing.

10. <u>Notices</u>.

(a) Any notices given under this Consent shall be effective only if in writing and given in the manner notices are required to be given under the Lease, addressed to the respective party at the address set forth in the Lease with respect to Landlord and Tenant, and at the Subleased Premises with respect to Subtenant, or at such other address for such purpose designated by notice in accordance with the provisions hereof.

(b) Tenant and Subtenant shall promptly deliver to Landlord a copy of any default or termination notice sent or received by either party with respect to the Sublease.

- 5 -

Confidential – Subject to Protective Order

(c)     Except as otherwise provided herein, all such notices shall be effective when received; provided, that (i) if receipt is refused, notice shall be effective upon the first occasion that such receipt is refused, or (ii) if the notice is unable to be delivered due to a change of address of which no notice was given, notice shall be effective upon the date such delivery was attempted.

11.    Brokerage.

(a)     Tenant represents, warrants and covenants to Landlord that Tenant has dealt with no broker in connection with the Sublease other than Wharton Property Advisors. In the event any claim is made against Landlord relative to dealings by Tenant with any broker in connection with the Sublease, Tenant shall defend the claim against Landlord with counsel of Tenant's selection first approved by Landlord and save harmless and indemnify Landlord on account of loss, cost or damage which may arise by reason of such claim. Tenant agrees that it shall be solely responsible for the payment of brokerage commissions to Wharton Property Advisors.

(b)     Subtenant represents, warrants and covenants to Landlord that Subtenant has dealt with no broker in connection with the Sublease other than Wharton Property Advisors. In the event any claim is made against Landlord relative to dealings by Subtenant with any broker in connection with the Sublease, Subtenant shall defend the claim against Landlord with counsel of Subtenant's selection first approved by Landlord and save harmless and indemnify Landlord on account of loss, cost or damage which may arise by reason of such claim.

12.    Assignment of Sublease Rents.

(a)     Subject to the license granted in this paragraph, Tenant hereby unconditionally and irrevocably grants, transfers, assigns and sets over to Landlord all of Tenant's interest in the rents, issues and profits of the Sublease (collectively, the "**Sublease Rents**"), together with full power and authority, in the name of Tenant, or otherwise, to demand, receive, enforce, collect or receipt for any or all of the foregoing, to endorse or execute any checks or other instruments or orders, to file any claims and to take any other action which Landlord may deem necessary or advisable in connection therewith; provided, that no exercise of such rights by Landlord shall release Tenant from any of its obligations under the Lease or the Sublease. The parties intend that the assignment described in this Paragraph 12 shall be a present, actual, absolute and unconditional assignment; provided, however, that except to the extent specified by Landlord in a notice or demand given to Tenant and Subtenant exercising Landlord's right to collect the Sublease Rents directly from Subtenant, Tenant shall have a license to collect the Sublease Rents, but neither prior to accrual nor more than one month in advance (except for security deposits and escalations provided for in the Sublease). Tenant hereby irrevocably authorizes Subtenant to rely upon and comply with any such notice or demand by Landlord for the payment to Landlord of any Sublease Rents due or to become due; provided, however, that in no event shall Subtenant be obligated to make any duplicate payment

- 6 -

Confidential – Subject to Protective Order

CLINTON00034110

to both Landlord and to Tenant. Landlord shall be accountable only for the Sublease Rents actually collected hereunder and not for the rental value of the Subleased Premises.

(b)     Neither this Consent nor the assignment described in this Paragraph 12 nor any action or inaction on the part of Landlord shall constitute an assumption on the part of Landlord of any duty or obligation under the Sublease, nor shall Landlord have any duty or obligation to make any payment to be made by Tenant under the Sublease or the Lease, or to present or file any claim, or to take any other action to collect or enforce the payment of any amounts which have been assigned to Landlord or to which it may be entitled hereunder at any time or times. The collection and application of the Sublease Rents or other charges, or any other action taken by Landlord in connection therewith, shall not (i) cure or waive any default under the Lease, (ii) waive or modify any notice thereof theretofore given by Landlord, (iii) subject to Section 3 hereof, create any direct tenancy between Landlord and Subtenant, or (iv) otherwise limit in any way the rights of Landlord hereunder or under the Lease.

(c)     Tenant, at its expense, will execute and deliver all such instruments and take all such action as Landlord, from time to time, may reasonably request in order to obtain the full benefits of the assignment provided for in this Paragraph 12.

(d)     All Sublease Rents collected by Landlord (less the cost of collection reasonably incurred, including, without limitation, reasonable attorneys' fees) under this Paragraph 12 will be applied against Tenant's obligations under the Lease.

13.     Estoppel Certificates.  Tenant and Subtenant each agree, at any time and from time to time, as reasonably requested by Landlord, upon not less than ten (10) days' prior notice, to execute and deliver to Landlord a written certified statement executed and acknowledged by an appropriate individual representing such party (a) stating that the Sublease is then in full force and effect and has not been modified (or if modified, setting forth all modifications), (b) setting forth the then base rent and additional rent and other charges, if any, (c) setting forth the date to which the base rent and additional rent and other charges, if any, have been paid, (d) stating whether or not, to the best knowledge of the signatory, the other party is in default under the Sublease, and if so, setting forth the specific nature of all such defaults, (e) stating the amount of the security deposit, if any, held by Tenant under the Sublease, (f) stating whether there are any other subleases affecting the Subleased Premises, (g) stating the address of the person to which all notices and communication under the Sublease shall be sent, (h) stating the commencement date, the rent commencement date and the expiration date of the Sublease, (i) if applicable, stating whether or not there are any amounts of contribution by Tenant towards the cost of work to be performed by Subtenant not yet advanced to Subtenant, (j) stating what portion of the Subleased Premises Subtenant is in possession and occupancy of pursuant to the Sublease, (k) if applicable, all work required to be completed by Tenant in connection with preparing the Subleased Premises for Subtenant's initial occupancy has been completed by Tenant, and (l) as to any other matters reasonably requested by Landlord. The parties acknowledge that any statement delivered pursuant to this Section 13 may be relied upon by others with whom Landlord may be dealing, which may include, without limitation, any purchaser or owner of the

- 7 -

Confidential – Subject to Protective Order

CLINTON00034111

Land or the Building, or of Landlord's interest (directly or indirectly) in the Land or the Building or any Underlying Lease, or by any Mortgagee or Overlandlord, or by any purchaser of the interest of any Mortgagee or Overlandlord (directly or indirectly) in the Land or the Building.

14.    _Fitness Facility_.  Landlord confirms that Subtenant shall be entitled to the rights of Tenant with respect to the Fitness Facility under Section 20.27 of the Lease including, without limitation, the right to purchase Additional Memberships thereunder subject to the terms and conditions thereof and the payment of Joining Fees and Annual Membership Fees; provided, however, that the initial Annual Membership Fee shall be $4,000.00 per Additional Membership (subject to annual increase by CPI after the date of this Consent in accordance with said Section 20.27).

15.    _Miscellaneous_.

(a)    _Remedies Cumulative_.  Each right and remedy of Landlord provided for in this Consent or in the Lease shall be cumulative and shall be in addition to every other right and remedy provided for herein and therein or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise by Landlord of any one or more of the rights or remedies so provided for or existing shall not preclude the simultaneous or subsequent exercise by Landlord of any or all other rights or remedies so provided for or so existing.

(b)    _Landlord's Liability_.  Landlord's liability under this Consent shall be limited to the same extent Landlord's liability is limited under the Lease.

(c)    _Successors and Assigns_.  The terms and provisions of this Consent shall bind and inure to the benefit of the parties hereto and their respective successors and assigns, except that no violation of the provisions of this Consent shall operate to vest any rights in any successor or assignee of Tenant or Subtenant.

(d)    _Captions_.  The captions contained in this Consent are for convenience only and shall in no way define, limit or extend the scope or intent of this Consent, nor shall such captions affect the construction hereof.

(e)    _Counterparts_.  This Consent may be executed in one or more counterparts, and by different parties hereto on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(f)    _No Privity of Estate_.  It is expressly understood and agreed that, except with respect to Landlord's and Subtenant's rights as to attornment under Section 3 hereof, neither this Consent nor any direct dealings between Landlord and Subtenant (other than regarding the Clinton Direct Lease) during the term of the Sublease (including, without limitation, the direct billing by Landlord to Subtenant of work order, or other charges relating to Subtenant's occupancy) shall create or constitute, or shall be deemed to create or constitute,

- 8 -

Confidential – Subject to Protective Order

CLINTON00034112

privity of estate, any landlord-tenant relationship, or occupancy or tenancy agreement between Landlord and Subtenant.

(g)  Binding Effect. This Consent is offered to Tenant and Subtenant for signature and it is understood that this Consent shall be of no force and effect and shall not be binding upon Landlord unless and until Landlord shall have executed and delivered a copy of this Consent to both Tenant and Subtenant.

(h)  Review of Sublease. To the extent permitted by the terms of the Lease, Tenant shall reimburse Landlord for any reasonable and customary fees which may be charged by Landlord and for any reasonable out-of-pocket costs incurred by Landlord in connection with the Sublease, including, without limitation, the legal costs incurred in connection with the granting of this Consent. Such amounts, if any, shall be paid on demand.

(i)  Conflict. If there shall be any conflict or inconsistency between the terms, covenants and conditions of this Consent or the Lease and the terms, covenants and conditions of the Sublease, then the terms, covenants and conditions of this Consent and the Lease shall prevail.

(j)  Consent Limited. This Consent shall be deemed limited solely to the Sublease, and Landlord reserves the right to consent or withhold consent and all other rights as set forth in and in accordance with the Lease with respect to any other matters.

(k)  Alterations. Tenant and Subtenant acknowledge that any additions, alterations, demolitions or improvements to be performed in connection with the Sublease shall be first approved by Landlord in accordance with the Lease and subject to all of the terms and conditions of the Lease.

(l)  Terms. Terms defined in the Lease and used, but not defined, herein shall have the meanings ascribed to them in the Lease.

(m)  Entire Agreement. This Consent contains the entire agreement of the parties with respect to the matters contained herein and may not be modified, amended or otherwise changed except by written instrument signed by the parties sought to be bound.

(n)  Partial Invalidity. If any term, provision or condition contained in this Consent shall, to any extent, be invalid or unenforceable, the remainder of this Consent, or the application of such term, provision or condition to persons or circumstances other than those with respect to which it is invalid or unenforceable, shall not be affected thereby, and each and every other term, provision and condition of this Consent shall be valid and enforceable to the fullest extent possible permitted by law.

(o)  Attorneys' Fees. If any party commences litigation for the specific performance of this Consent, for damages for the breach hereof or otherwise for enforcement of

-9-

Confidential – Subject to Protective Order

any remedy hereunder, the parties hereto agree to and hereby do waive any right to a trial by jury and, in the event of any such commencement of litigation, the prevailing party shall be entitled to recover from the other party such costs and reasonable attorneys' fees as may have been incurred.

(p)     Authority.  Tenant and Subtenant each respectively represent, warrant and covenant to Landlord that (i) each is a duly formed and existing entity qualified to do business in the jurisdiction in which the Building is located and (ii) each has full right, power and authority to enter into this Consent and that the persons or person executing this Consent on behalf of Tenant and Subtenant, as the case may be, are duly authorized to do so.

(q)     Governing Law.  This Consent shall for all purposes be construed in accordance with, and governed by, the laws of the jurisdiction in which the Building is located.

(r)     OFAC.  As an inducement to Landlord to enter into this Consent, Subtenant hereby represents and warrants that:  (i) Subtenant is not, nor is it owned or controlled directly or indirectly by, any person, group, entity or nation named on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Assets Control of the United States Treasury (**"OFAC"**) (any such person, group, entity or nation being hereinafter referred to as a **"Prohibited Person"**); (ii) Subtenant is not (nor is it owned or controlled, directly or indirectly, by any person, group, entity or nation which is) acting directly or indirectly for or on behalf of any Prohibited Person; and (iii) Subtenant (and any person, group, or entity which Subtenant controls, directly or indirectly) has not conducted nor will conduct business nor has engaged nor will engage in any transaction or dealing with any Prohibited Person that either may cause or causes Landlord to be in violation of any OFAC rule or regulation, including without limitation any assignment of the Lease or any subletting of all or any portion of the Premises. In connection with the foregoing, it is expressly understood and agreed that (x) any breach by Subtenant of the foregoing representations and warranties shall be deemed a default by Subtenant under Paragraph 9 above, and shall be covered by the indemnity provisions of the Lease, and (y) the representations and warranties contained in this subsection shall be continuing in nature and shall survive the expiration or earlier termination of the Sublease.

(s)     Condenser Water.  In addition to the condenser water available under the Lease for the existing supplemental air conditioning unit (i.e., 3.5 tons), Landlord shall make available for Subtenant's use up to four (4) tons of condenser water for additional supplemental air-conditioning equipment to be installed as part of the work to prepare the Subleased Premises for Subtenant's initial occupancy (so that an aggregate of 7.5 tons shall be available to the Subleased Premises).  Subtenant shall pay to Landlord a charge for such additional condenser water at the rate set forth in the Condenser Water Letter with respect to the existing condenser water.  The installation and operation of such additional supplemental air-conditioning equipment shall be subject to and in accordance with all applicable provisions of the Lease including without, limitation, Article 8.

(t)     Electronic Signatures.  The parties acknowledge and agree that, subject to the terms of this paragraph, this Consent may be executed by electronic signature, which shall be

– 10 –

considered as an original signature for all purposes and shall have the same force and effect as an original signature. **"Electronic signature"** shall mean faxed versions of an original signature or electronically scanned and transmitted versions (i.e., email of a pdf) of an original signature and, absent contrary written instructions by the transmitting party, the transmission of such an electronic signature by fax or email by one party hereto to the other party(ies) hereto shall constitute execution and delivery of this Consent by the transmitting party. Any party hereto executing this Consent by electronic signature shall promptly thereafter deliver such transmitting party's original signature to this Consent to the recipient party(ies), but the failure to do so shall not affect the validity of this Consent.

[Signatures on next page.]

Confidential – Subject to Protective Order    CLINTON00034115

EXECUTED as of the date and year first above written.

LANDLORD:

BP 510 MADISON LLC

By:_____

Name:

Title:            John Powers
                 Vice President

TENANT:

WORLD GOLD TRUST SERVICES LLC

By: _Samantha McDonald_

Name: Samantha McDonald

Title: CFO

SUBTENANT:

CLINTON GROUP, INC.

By:_____

Name:

Title:

- 12 -

Confidential – Subject to Protective Order                    CLINTON00034116

EXECUTED as of the date and year first above written.

LANDLORD:

BP 510 MADISON LLC

By:_____
Name:
Title:

TENANT:

WORLD GOLD TRUST SERVICES LLC

By:_____
Name:
Title:

SUBTENANT:

CLINTON GROUP, INC.

By:_____
Name:  John Hull
Title:  Director

- 12 -

Confidential – Subject to Protective Order

CLINTON00034117

Exhibit A

The Sublease

Confidential – Subject to Protective Order

CLINTON00034118

## SUBLEASE

**THIS SUBLEASE** is made as of the 31 day of August, 2015, by and between WORLD GOLD TRUST SERVICES LLC a Delaware limited liability company, having an address at 510 Madison Avenue, 9th Floor, New York, New York 10022 (hereinafter called "Overtenant"), and, CLINTON GROUP, INC., a Delaware corporation having an office at 601 Lexington Ave, New York, New York 10022 (hereinafter called "Subtenant").

## W I T N E S S E T H :

By lease dated as of April 22, 2011, (the "Overlease"), BP 510 Madison AVE LLC. ("Landlord"), leased to World Gold Services LLC, as tenant, the 9th Floor known (the "Demised Premises") in the building located at 510 Madison Avenue, New York, New York (the "Building").

Subtenant desires to sublease from Overtenant the Demised Premises, and Overtenant desires to sublet to Subtenant the same, all on the terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    **Term**. Overtenant hereby subleases to Subtenant and Subtenant hereby hires from Overtenant the Demised Premises for a term commencing on the date that Landlord consents to this Sublease and Subtenant has met all other requirements hereunder, but no earlier than September 1, 2015 (the "Commencement Date"), and expiring, unless such term shall sooner cease or expire as hereinafter provided, on December 30, 2021 ("the Expiration Date"), on all of the terms, covenants and conditions hereinafter contained.

2.    **Rent Amount**. Subtenant covenants to pay Overtenant, at the above address, or at such other address as Overtenant shall designate a fixed rental ("Fixed Rental") at a rate of:

(a)    $83,854.17 per month from the Commencement Date through December 31, 2016;

(b)    $85,531.25 per month from January 1, 2017 through December 31, 2017.

(c)    $87,241.88 per month from January 1, 2018 through December 31, 2018.

DOC ID - 23369228.1

Confidential – Subject to Protective Order

CLINTON00034119

    (d)    $88,986.72 per month plus from January 1, 2019 through December 31, 2019.

    (e)    $90,766.45 per month plus from January 1, 2020 through December 31, 2020.

    (f)    $92,581.78 per month plus from January 1, 2021 through December 30, 2021.

Fixed Rental shall be payable by Subtenant in equal monthly installments in advance without previous demand therefor and without any setoff or deduction whatsoever, on the first day of each calendar month during the term of this Sublease.

Notwithstanding the foregoing, if no Event of Default exists, Subtenant shall receive a rent abatement for the first 2 months' Fixed Rental amount.

3.    **Additional Rent**    Subtenant covenants to pay Overtenant, at the above address, or at such other address as Overtenant shall designate any and all amounts billed by the Landlord as additional rent (specifically excluding Operating Expenses (as defined in the OverLease)), including but not limited to submetered electric charges; water and sprinkler fees; Fitness Facility Operating Expenses (as defined in the OverLease); cleaning services and Subtenant's proportionate share of real estate taxes over and above the base year of 2015/2016.

All costs, charges and expenses which Subtenant assumes or agrees to pay to Overtenant pursuant to this Sublease shall be deemed additional rent and, in the event of nonpayment, Overtenant shall have the rights and remedies provided for in the Overlease in the case of nonpayment of rent.

4.    **Permitted Use**.    Subtenant shall use and occupy the Demised Premises for general, administrative, executive and offices purposes only and for no other purpose. Subject to any of the terms and conditions of the Overlease, Subtenant shall have 24/7 access to the Demised Premises.

DOC ID - 23369228.1

- 2 -

Confidential – Subject to Protective Order

CLINTON00034120

5.    **Overlease.** Notwithstanding anything contained in this Sublease to the contrary, it is specifically understood that this is a sublease of the Demised Premises and is subject and subordinate, in all respects, to all of the terms, covenants and conditions of the Overlease as it relates to the Demised Premised, and that, except as otherwise expressly provided in this Sublease, all of such terms, covenants and conditions, insofar as they relate to the Demised Premises, are hereby incorporated by reference in this Sublease and made a part hereof as if herein set forth at length and shall, as between Overtenant and Subtenant (as if they were the Landlord and Tenant, respectively, under the Overlease), constitute the terms of this Sublease, except (i) the grace periods for defaults, if any, shall be two (2) days less than provided for Overtenant, as tenant, under the Overlease, (ii) Subtenant is not entitled to any rent abatement, credits, or other rent reductions provided for in the Overlease; (iii) all applicable dates referenced in the Overlease shall all have a commencement date commensurate with the Commencement Date of this Sublease; and (iv) the following provisions of the Overlease do not apply to Subtenant of this Sublease: Article 1.2 (except for the definitions of CPI, GAAP and Tenant's Share with respect to Taxes; Article 3.1, 3.2, 3.3; Article 4.3; Article 5.1, 5.2, 5.4, 5.5; Article 6.1(c) (solely with respect to the definition of Base Tax Year), 6.2; Article 20.5, 20.22, 20.23(a); Article 21; Exhibit C; and (v) such other terms of the Overlease as do not relate to the Subleased Premises or are specifically modified by the terms of this Sublease. In the event of any default under any of the terms, provisions or conditions of the Overlease or this Sublease, the non-defaulting party shall have the same rights and remedies against other under this Sublease as are available to Landlord and Overtenant under any of the provisions of the Overlease, such rights not being exclusive of each other but inclusive at the option of the non-defaulting party. Subtenant acknowledges that prior to executing this Sublease it has received and read a copy of the Overlease and that it is familiar with the contents hereof.

(a)    Subtenant covenants and agrees that it will perform and observe all of the terms, covenants and conditions contained in the Overlease, except as otherwise provided in this Sublease. Subtenant will and hereby does indemnify and hold Overtenant harmless from and against any and all actions, claims, demands, damages, liabilities and expenses (including, without limitation, reasonable attorneys' fees) based upon or incurred on account of any violation caused, suffered or permitted by Subtenant, its agents, servants, employees or invitees, of any of the terms, covenants or conditions of the Overlease, including the costs of enforcing this indemnity. Overtenant covenants and agrees it will perform and observe all of the terms, covenants and conditions in the Overlease except (i) for services to be provided by Landlord and (ii) as otherwise provided in this Sublease.

(b)    It is understood and agreed that whenever in the Overlease it is provided that Landlord's consent is required for any action on the part of Subtenant, for the purposes of this Sublease the consent of both Overtenant and the Landlord shall be required. Overtenant agrees to promptly forward to the Landlord any such request for consent by Subtenant.

6.    **Overtenant's Obligation.**

DOC ID - 23369228.1

- 3 -

Confidential – Subject to Protective Order                                    CLINTON00034121

(a)     Notwithstanding anything in this Sublease to the contrary, Subtenant agrees that Overtenant shall not be obligated to perform any services of any nature whatsoever (including, without limitation, the furnishing of heat, air conditioning, ventilation, elevator service, electricity, hot and cold water, cleaning, window washing or rubbish removal services), nor shall Overtenant be obligated to make any repairs, alterations or improvements on or about the Demised Premises or to comply with any violation of law with respect thereto, nor shall Overtenant be required to restore the Demised Premises following the occurrence of a fire or other casualty, it being understood and Subtenant hereby so agrees, that the only services and rights to which Subtenant is entitled hereunder are those to which Overtenant is entitled under the Overlease and Subtenant shall look solely to Landlord for the performance of any and all such services, the making of repairs, alterations or improvements and the compliance with violations of law, and restoration of the Demised Premises following fire or other casualty, subject in each case to the terms of the Overlease and this Sublease. Notwithstanding the foregoing provisions of this Section 6(a) to the contrary, upon reasonable written request by Subtenant, Overtenant shall use commercially reasonable efforts to cause Landlord to perform its obligations under the Overlease with respect to the Demised Premises for the benefit of Subtenant, provided that Overtenant shall not be required to initiate any litigation or take other legal action against Landlord as a part of such efforts.

(b)     Subtenant shall not make any claim upon Overtenant for any damages which may arise by reason of Landlord's default under the Overlease or Landlord's negligence, whether by omission or commission. In furtherance of the foregoing, Subtenant does, to the extent permitted by law, and except for the negligence of Overtenant or default by Overtenant under the Overlease or this Sublease, hereby waive any cause of action and any right to bring any action against Overtenant by reason of any act or omission of Landlord under the Overlease.

(c)     Subtenant shall neither do nor permit anything to be done which would cause the Overlease to be terminated or forfeited by reason of any right of termination or forfeiture reserved or vested in the lessor under the Overlease, and Subtenant shall indemnify and hold Overtenant harmless from and against all claims of any kind whatsoever by reason of any breach or default on the part of Subtenant by reason of which the Overlease may be terminated or forfeited.

(d)     Provided that Subtenant is not in default hereunder beyond the expiration of any applicable notice and grace period, Overtenant shall (i) comply with all of the terms, covenants, conditions and obligations of the Overlease to be kept and performed on the part of the tenant thereunder except as to be performed by Subtenant under this Sublease, (ii) not modify the terms of the Overlease in a manner which would have an materially adverse effect on Subtenant's rights or obligations under this Sublease, and (iii) not voluntarily cancel or surrender the Overlease insofar as it relates to the Demised Premises unless Landlord in connection with any such cancellation or surrender agrees to enter into a direct lease with Subtenant on the same terms and conditions as those of this Sublease.

DOC ID - 23369228.1

- 4 -

Confidential – Subject to Protective Order                                                 CLINTON00034122

7.    **No Assignment/Sublet**.

(a)    Except as expressly permitted in the Overlease, Subtenant shall not, by operation of law or otherwise, assign, sublet, mortgage, encumber or in any manner transfer this Sublease or any part thereof, nor sublet or permit the Demised Premises, or any part thereof, to be used by others without prior written consent of Overtenant (not to be unreasonably withheld) and of Landlord's prior written consent to be given or withheld in accordance to the Overlease.

(b)    If the Demised Premise or any part thereof be sublet or occupied by any person or persons other than Subtenant, whether or not in violation of the provisions of this Sublease, Overtenant may, after default by Subtenant, collect rent from the Subtenant or occupant and apply the net amount collected to the curing of any default hereunder in any order or priority Overtenant may elect, any unexpended balance to be applied by Overtenant against any rental or other obligations subsequently becoming due, but no such subletting, occupancy or collection of rent shall be deemed a waiver of the covenants in this paragraph, nor shall it be deemed acceptance of the subtenant or occupant as a Subtenant or a release of Subtenant from the full performance by Subtenant of all of the terms, conditions and covenants of this Sublease.

(c)    Each and every assignee or transferee, whether as assignee or as successor-in-interest of Subtenant or as assignee or successor-in-interest of any assignee, shall immediately be and remain liable, jointly and severally, with Subtenant and with each other, for the payment of the rent, additional rent and other charges payable under this Sublease and for the due performance of all covenants, agreements, terms and provisions of this Sublease on the part of Subtenant to be paid and performed to the full end of the term of this Sublease.

(d)    Any consent by Overtenant or Landlord that may hereafter be given to any act of assignment or subletting shall be held to apply only to the specific transaction thereby approved. Such consent shall not be construed as a waiver of the duty of Subtenant or its successors or assigns to obtain from the Overtenant and Landlord consent to any other subsequent assignment or subletting, or as a modification or limitation of the rights of Overtenant with respect to the foregoing covenants by Subtenant.

8.    **Notices**. Any notice or demand which, under the terms of this Sublease or under any statute, must or may be given or made by the parties hereto, shall be in writing, and shall be given or made by mailing the same by registered, certified, or express mail, return receipt requested, addressed to the parties at their respective addresses first above set forth, except that after the Commencement Date notices to Subtenant shall be at the Demised Premises. Either party, however, may designate in writing such new or other address to which such notice or demand shall thereafter be so given, made or mailed. Any notice given hereunder shall be deemed delivered when deposited in a United States General branch post office, maintained by

DOC ID - 23369228.1

Confidential – Subject to Protective Order

CLINTON00034123

the United States Government in the City of New York, enclosed in a registered or certified, prepaid wrapper addressed as hereinbefore provided.

9.    **Condition of Demised Premises.**    Subtenant has thoroughly examined the Demised Premises and is fully familiar with the condition thereof. Subtenant agrees to accept the Demised Premises "as is" and in such condition as the same may be in at the Commencement Date and Overtenant shall not be obligated or required to do any work or to make any alterations or install any fixtures, equipment or improvements, or make any repairs or replacements to or in the Demised Premises to fit the same for Subtenant's use or for any other reason whatsoever. All fixtures and furniture currently in the Demised Premises (except for the gold safe) shall remain in the space for Subtenant's use throughout the term of the Sublease. Ownership of said fixtures and furniture shall remain with Overtenant. Overtenant makes no representation as to the condition of such furniture.

10.    **Insurance.**    Subtenant shall maintain throughout the term of this Sublease, at Subtenant's sole cost and expense, comprehensive public liability insurance, including property damage, insuring Landlord, Overtenant and Subtenant against liability for injury to persons or property occurring in or about the Demised Premises or arising out of the ownership, maintenance, use, or occupancy thereof, having a single limit of not less than the amount as set forth by the Landlord.

Such policy shall contain agreements by the insurance company to the effect that no act or omission of any named assured will invalidate the policy as to the other named assured. Such policy shall contain a provision requiring at least ten (10) days' prior written notice to Overtenant as a condition to cancellation of same. Such policy or a certificate thereof, with evidence of payment of premium thereon, shall be delivered to Overtenant on or before the Commencement Date, and evidence of renewals thereof shall be delivered to Overtenant not later than thirty (30) days prior to the expiration of any policy. On Subtenant's default in obtaining or delivering any such policy or renewals thereof, or failure to pay the premiums therefor, Overtenant may secure or pay the Charges for any such policy or renewals thereof and charge for any such policy or renewals thereof and charge the Subtenant as additional rent therefor or pursue its other remedies arising out of Subtenant's aforesaid default.

11.    **Landlord's Consent.**    This Sublease is subject to and conditioned upon Overtenant's obtaining the written consent hereto of Landlord. Overtenant agrees that upon the execution of this Sublease it will proceed with reasonable diligence to attempt to obtain such consent. If Overtenant fails to obtain such consent of Landlord within forty-five (45) days, then Subtenant shall have the option thereafter to cancel and terminate this Sublease by giving notice to Overtenant. If Subtenant chooses to exercise such option to cancel and terminate this Sublease pursuant to this Section 11, then: (i) Overtenant shall not be obligated to take any further action to obtain such consent; (ii) Overtenant shall return the Security Deposit to Subtenant; and (iii) this Sublease shall thereupon be deemed null and void and of no further force and effect, and neither of the parties hereto shall have any further obligations hereunder.

DOC ID - 23369228.1

- 6 -

Confidential – Subject to Protective Order

CLINTON00034124

12.    **Broker**. Each party hereunder represents to the other that it has dealt with no broker in connection with this transaction except Wharton Property Advisors ("**Broker**"). Each party shall indemnify and hold the other party and Landlord harmless from all costs, liabilities and expenses (including, without limitation, reasonable attorneys fees and disbursements) arising from any claim for brokerage commission made by any party other than Broker claiming to act for or on behalf of either party in this transaction. Subtenant shall not be liable for payment of the commission due to Broker in connection with this transaction which commission shall be payable by Overtenant pursuant to a separate agreement. Each party's obligations under this Article 11 shall survive the termination of this Sublease.

13.    **Security**. Upon execution of this Sublease, Subtenant shall deliver to Overtenant a clean, irrevocable, non-documentary and unconditional letter of credit (the "Letter of Credit") issued by and drawn upon any commercial bank (the "Issuing Bank") with offices for banking purposes in the City of New York and having an S&P rating of not less than "A", which Letter of Credit shall be in the amount of $754,687.53, and serve as security for the faithful performance and observance by Subtenant of the terms, provisions and conditions of this sublease, including but not limited to the payment of Monthly Base Rent and additional rent (the "Security Deposit"). The Letter of Credit shall (a) have an initial term one year from the date of issuance, (b) be in substantially the same form as annexed hereto as **Exhibit A**, (c) be for the account of Overtenant, (d) be in the amount of the Security Deposit, (e) be fully transferable by Overtenant without any fees or charges therefor, (f) have an expiration date which is not earlier than ninety (90) days after the Expiration Date, (g) provide that it shall be deemed automatically renewed, without amendment, for consecutive periods of one (1) year each thereafter during the term of this Sublease, unless the Issuing Bank sends notice (the "Non-Renewal Notice") to Overtenant by certified mail, return receipt requested, not less than ninety (90) days next preceding the then expiration date of the Letter of Credit that it elects not to have such Letter of Credit renewed. The Letter of Credit shall provide that Overtenant shall have the right, exercisable upon receipt of the Non-Renewal Notice, by sight draft on the Issuing Bank, to receive the monies represented by the existing Letter of Credit and to hold such proceeds pursuant to the terms of this Article as a cash security pending the replacement of such Letter of Credit. In the event that the Security Deposit being held by Overtenant shall be less than the amount required to be held hereunder, Subtenant shall immediately provide Overtenant with additional funds in an amount equal to the deficiency; and Subtenant's failure to do so shall be deemed a material default hereunder.

If the financial institution which issues the Letter of Credit issues a Non-Renewal Letter, becomes insolvent, or is declared insolvent by the FDIC, or is closed or threatened to be closed for any reason, Subtenant, at its sole cost and expense, shall immediately provide a substitute Letter of Credit from a financial institution acceptable to Overtenant, in Overtenant's commercially reasonable discretion. The failure of Subtenant to comply with the terms of this paragraph shall constitute a monetary default under the Overlease.

Notwithstanding the foregoing, Subtenant shall have the option to initially provide a cash Security Deposit in the amount of $754,687.53 to be replaced with a Letter of Credit as provided herein within thirty (30) days from the date of this Sublease.

DOC ID - 23369228.1

- 7 -

Confidential – Subject to Protective Order    CLINTON00034125

14. **Signage.** Subtenant may, at its own cost and expense, install identification signage on the entrance door to the Demised Premises and shall be listed in the main lobby directory of the Building, subject to the terms and conditions of the Landlord.

15. **Entire Agreement.** This Sublease contains the entire agreement and undertaking between the parties. There are no oral understandings, terms or other conditions, and neither party has relied upon any representation, express or implied, not contained in this Sublease. All prior undertakings, terms, representations or conditions are deemed merged in this Sublease. This Sublease cannot be changed or supplemented orally but only by an agreement in writing and signed by both parties hereto.

16. **No Waiver.** No waiver by Overtenant or Subtenant of any breach of any agreement or provisions herein contained shall be deemed a waiver of any preceding or succeeding breach thereof or of any other agreement or provision herein contained. No extension by Overtenant of time for performance of any obligations or acts shall be deemed an extension of time for performance of any other obligations or acts.

17. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

18. **Successor and Assigns.** The provisions of this Sublease shall be binding upon and inure to the benefit of the parties hereto and, subject to the restrictions above set forth in respect of Subtenant, their respective heirs, executors, legal representatives and assigns.

19. Miscellaneous.

(a) Each of Overtenant and Subtenant represents to the other that it has full power and authority to enter into this Sublease and to perform its obligations hereunder and the persons executing this Sublease on its behalf are duly authorized to do so.

(b) This Sublease may be executed in two or more counterparts and by facsimile, each of which shall be deemed an original, but all such counterparts together shall constitute one and the same instrument.

DOC ID - 23369228.1

- 8 -

Confidential – Subject to Protective Order

CLINTON00034126

**IN WITNESS WHEREOF**, the parties hereto have executed this Sublease as of the day and year fist above written.

OVERTENANT:                    SUBTENANT:    CLINTON GROUP, INC.

By: _Samantha McDonald_    By: _____

                                            JOHN L. HALL

Consented and Approved:

By: _____

- 9 -

Confidential – Subject to Protective Order

CLINTON00034127

## EXHIBIT A

## FORM OF LETTER OF CREDIT

[Letterhead of the Bank]

_____, 2015

World Gold Services LLC
c/o Cindy L. Horesh, PLLC
1725 York Avenue Avenue, Suite 35HG
New York, NY  10128

### Irrevocable Letter of Credit No. _____

Gentlemen:

We hereby issue, effective immediately, our Irrevocable Letter of Credit No. _____ ("Letter of Credit") in your favor, for the account of [NAME OF SUBTENANT] ("Subtenant") for the amount of [AMOUNT OF SECURITY DEPOSIT], available from time to time on or after the date hereof and not later than the close of business on [INSERT A DATE WHICH IS NO SOONER THAN THE FIRST ANNIVERSARY OF THE DATE OF THE LEASE] or such later date through which this credit may be automatically extended and renewed as set forth below.  Drawings under this Letter of Credit shall be by one or more sight drafts presented at our office, bearing this Letter of Credit number and accompanied by the original of this Letter of Credit.

Partial and multiple drawings are permitted drawings under this Letter of Credit are permitted.  We shall, immediately after each presentation of this Letter of Credit, return the same to you, marking this Letter of Credit to show the amount paid by us and the date of such payment.

This Letter of Credit may be transferred or assigned one or more times without our consent and without cost to you and each and every subsequent beneficiary upon presentation to us of a duly completed written transfer instruction.  No other documents or presentations shall be required by us in connection with any such transfer or assignment of this Letter of Credit.  Any failure to pay the transfer charges shall not affect the beneficiary's ability to transfer this letter of credit.

WE HEREBY AGREE WITH EACH DRAWER, ENDORSER AND BONA FIDE HOLDER OF ANY DRAFT DRAWN UNDER AND IN COMPLIANCE WITH THE TERMS OF THIS LETTER OF CREDIT THAT SUCH DRAFT SHALL BE DULY HONORED ON DUE PRESENTATION TO US.  WE HEREBY FURTHER AGREE THAT ALL DRAFTS

DOC ID - 23369228 1

- 10 -

Confidential – Subject to Protective Order

CLINTON00034128

PRESENTED UNDER THIS LETTER OF CREDIT SHALL BE PAID NOTWITHSTANDING ANY CLAIM BY ANY PERSON THAT THE SUM DEMANDED IS NOT DUE OR FOR ANY OTHER REASON THE SAID DRAFT(S) ARE NOT TO BE HONORED. DRAFT(S) DRAWN UNDER THIS CREDIT MUST SPECIFICALLY REFERENCE OUR CREDIT NUMBER AND WILL BE HONORED BY US AND PAID TO BENEFICIARY IN IMMEDIATELY AVAILABLE FUNDS BEFORE 2:00 P.M. EASTERN TIME ON THE BANKING DAY AFTER THE DAY ON WHICH SUCH DRAFT (S) IS/ARE SO PRESENTED TO US. "BANKING DAY" MEANS A DAY ON WHICH COMMERCIAL BANKS ARE OPEN FOR BUSINESS IN NEW YORK, NEW YORK.

It is a condition of this Letter of Credit that it shall automatically be extended and renewed for additional periods of one year from the then current expiration date hereof. However, this Letter of Credit shall not be automatically extended and renewed if, at least ninety (90) days prior to any such expiration date, we notify you in writing at your address set forth above (or in any transfer instruction, if applicable), by certified mail, return receipt requested, that we elect not to so extend and renew this Letter of Credit. In the event we shall have so notified you of our election not to so extend and renew this Letter of Credit, then the entire face or principal amount of this Letter of Credit (as the same may have been reduced as set forth above) may be drawn upon at any time during the ten (10) days immediately preceding the then current expiration date of this Letter of Credit upon the presentation by you of only a sight draft bearing this Letter of Credit number and the original of this Letter of Credit. This Letter of Credit, if automatically extended and renewed, shall continue as set forth herein, except that the expiration date hereof shall be the first anniversary of the then current expiration date of this Letter of Credit.

BENEFICIARY'S RIGHTS AND ABILITY TO DRAW ON THIS LETTER OF CREDIT, TO RECEIVE ALL OR PORTIONS OF THE PROCEEDS HEREOF AND TO USE, APPLY, OR RETAIN THE WHOLE OR ANY PART OF SUCH PROCEEDS, SHALL NOT TAKE INTO ACCOUNT, OR OTHERWISE BE AFFECTED BY, ANY OF THE MODIFICATIONS, REDUCTIONS OR OTHER LIMITATIONS OF OR ON THE APPLICANT'S OBLIGATIONS OR LIABILITIES RESULTING FROM THE VOLUNTARY OR INVOLUNTARY LIQUIDATION, DISSOLUTION, SALE OR OTHER DISPOSITION OF ALL OR SUBSTANTIALLY ALL THE ASSETS, MARSHALING OF ASSETS AND LIABILITIES, RECEIVERSHIP, INSOLVENCY, BANKRUPTCY, ASSIGNMENT FOR THE BENEFIT OF CREDITORS, REORGANIZATION, ARRANGEMENT OR READJUSTMENT OF, OR OTHER SIMILAR PROCEEDING AFFECTING THE APPLICANT, OR THE APPLICANT'S PREDECESSORS, OR THE APPLICANT'S SUCCESSORS OR ASSIGNS, OR ANY OF THEIR ASSETS OR THE DISAFFIRMANCE, REJECTION OR POSTPONEMENT IN ANY SUCH PROCEEDING OF ANY OF APPLICANT'S OBLIGATIONS OR UNDERTAKINGS.

Subject to the last paragraph of this Letter of Credit, this Letter of Credit sets forth the full terms of our undertaking, and such undertaking shall not in any way be modified, amended

DOC ID - 23369228 1

~ 11 ~

Confidential – Subject to Protective Order

CLINTON00034129

or amplified by reference to any document, instrument or agreement referred to in this Letter of Credit or in which this Letter of Credit is referred to or to which this Letter of Credit relates; and any such reference shall not be deemed to incorporate herein the terms of any such referenced document, instrument or agreement.

This Letter of Credit shall expire on [INSERT A DATE WHICH IS NO SOONER THAN 90 DAYS AFTER THE LEASE EXPIRATION DATE] or such later date through which this Letter of Credit may be automatically extended and renewed as set forth above.

All drafts, documents, instructions and communications pertinent to this Letter of Credit must be presented to our office located at _____, New York, New York _____, Attention: Letter of Credit Department, or at any other office in New York, New York which may be designated by our written notice delivered to you.

This Letter of Credit is issued subject to International Standby Practices, International Chamber of Commerce Publication No. 590 (ISP98). This Letter of Credit shall be deemed to be a contract made under the laws of the State of New York and shall, as to matters not governed by said Uniform Customs and Practice for Documentary Credits, be governed by and construed in accordance with the laws of said State.

Yours very truly,

[Name of Issuing Bank]


By: _____
          Authorized Signature

DOC ID - 23369228.1

Confidential – Subject to Protective Order

CLINTON00034130

## FORM LETTER OF CREDIT SIGHT DRAFT

Amount:     $
Date:

       At sight of this bill of exchange, pay to the order of <<BENEFICIARY>> the amount of
_____ ($_____ ) DOLLARS for value received, and charge the account of
<<APPLICANT>> drawn under <<BANK NAME>> (the "Lender") letter of credit
#_____.

       Payment by the Lender pursuant to this drawing shall be made to <<BENEFICIARY>>,
ABA _____, Routing # _____, Account Number _____.

<<APPLICANT>>

By:    _____
      Name:
      Title:


To: <<BANK NAME>>

DOC ID - 23369228.1

- 13 -

CLINTON00034131

DOC ID - 23369228.1

Confidential – Subject to Protective Order

CLINTON00034132