**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
    :
CYPRESS HOLDINGS, III, L.P., individually and  :
derivatively on behalf of SPORT-BLX, INC.,  :
    :
    :  Case No. 22-cv-01243 (LGS)
    Plaintiff,  :
    :
    :
    -against-  :
    :  **DECLARATION OF**
GEORGE HALL, JOSEPH DEPERIO, SPORT-  :  **JOSEPH DE PERIO IN SUPPORT**
BLX, INC. and GLASSBRIDGE ENTERPRISES,  :  **OF DEFENDANTS' MOTION TO**
INC.,  :  **DISQUALIFY**
    :
    Defendants.  :
    :
---------------------------------------------------------------- X

I, Joseph De Perio, declare and state as follows:

1.    I am a Director at GlassBridge Enterprises, Inc. ("GlassBridge"). I am also an individual defendant in this action. I offer this declaration in support of my (along with George Hall's, and Sport-BLX Inc.'s) motion to disqualify Fox Rothschild — our former corporate lawyers — from representing a party suing us.

2.    Unless otherwise indicated, I have personal knowledge of the facts contained herein and, if called as a witness, I could and would testify competently thereto.

3.    In its Amended Complaint, Cypress Holdings, III, L.P. ("Cypress") appears to allege that GlassBridge purchased shares of Sport-BLX in some round about effort to deprive Cypress of a purported contractual right to a seat on the Sport-BLX Board of Directors, and that GlassBridge was somehow unjustly enriched through its business relationship with Cypress and Sport-BLX. Despite the allegations in the Complaint that make it appear as though GlassBridge simply purchased shares of Sport-BLX in December 2019 and then sold its shares in December 2021, GlassBridge's Sport-BLX asset purchases and investments were continuous throughout the

time period it was represented by Fox Rothschild on the Pension Benefit Guaranty Corporation ("PBGC") matter, and were based on GlassBridge's investment strategy during that time.

4.      Thus, Fox Rothschild was privy to all manner of information traditionally kept within the bounds of attorney/client confidences.

5.      Beyond that, and perhaps more personally upsetting, a Fox Rothschild partner — Pamela Thein — when I raised these concerns at the time, made repeated personal assurances that the firm understood it was improper to be adverse to us, and would take swift and definitive action to correct it.   That the firm has apparently attempted to walk back those commitments is particularly troubling.

6.      And finally, Ms. Thein was privy to discussions about what Plaintiff's current counsel, Marc Gross, complained of at that time, by virtue of working with GlassBridge on the whole affair **and** speaking to Mr. Gross about it.   Her testimony on that subject, therefore, will ultimately show that Plaintiff's federal claims are stale.

## BACKGROUND ON GLASSBRIDGE AND RELATED EVENTS

7.      GlassBridge is a publicly traded corporation incorporated in Delaware, with its principal place of business in New York, New York.   GlassBridge owns and operates an asset management business through various subsidiaries.   GlassBridge has less than ten employees, most of whom work on GlassBridge's various investment strategies and projects.

8.      GlassBridge was formerly known as Imation Corp. ("Imation").   Upon information and belief, GlassBridge was formed in 1996 as a spinoff of 3M Co.   At that time, I understand and believe Imation Enterprises Corp. ("IEC"), was a subsidiary of Imation/GlassBridge.

9.      I am informed and believe that Imation manufactured and IEC marketed a wide variety of products and services for the information processing industry, specializing in data storage and imaging applications through several different units.   Imation's business units

included: (1) data storage; (2) printing and publishing systems; (3) medical imaging systems and photo color products; (4) customer service technology; and (5) document imaging. Upon information and belief, Imation developed and manufactured the products for the various business lines and then sold them to the Adara Enterprises Corp. ("Adara") at cost, which Adara, in turn, marketed and sold through commercial and retail channels.

10.     From the beginning, however, I am informed and believe that Imation and its subsidiaries, including Adara, struggled to be profitable. As a result, upon information and belief, Imation began to divest itself of various business lines in 1998 until it became focused solely on data storage by 2005.

11.     I am informed and believe that between 2005 and 2015, Adara made certain strategic acquisitions and attempted to pivot its business to meet rapidly changing data storage market needs and trends. Despite these efforts, I understand that Adara still failed to be profitable.

12.     In the third quarter of 2015, Imation adopted a restructuring plan to begin the termination of all of its data storage business operations, and Adara wound down its distribution business for those products. During this time, Adara sought to ensure that all of its known creditors from its legacy business were paid in full. By the first quarter of 2016, Imation's data storage business was effectively wound-down and all but a handful of small vendor claims had been repaid. The remaining vendors were paid in the following months, leaving Adara with no known unsecured creditors, other than, from time to time, trade payables incurred in the operation of Adara's business that were paid in the ordinary course.

13.     Having completed the wind-down of its data storage business, in 2017 GlassBridge and Adara acquired new management to help pivot its business to asset management. That new

management team included Daniel Strauss, as President of Adara.  At or about that time, Imation announced its name change to GlassBridge and its new focus on asset management.

14.     As part of the Adara and GlassBridge pivot, Daniel Strauss along with the new management team sought to resolve certain outstanding debts owed by GlassBridge.  Prior to this restructuring, GlassBridge had become delinquent on its pension obligations.  The PBGC, a U.S. Government agency that protects retirement incomes in private sector defined benefit pension plans, threatened to foreclose on GlassBridge to recoup the monies owed to GlassBridge's pension plan.

15.     GlassBridge's new management team worked to resolve GlassBridge's prior pension liabilities with the PBGC.  GlassBridge's pension plan was terminated on April 30, 2019, when GlassBridge's application for termination of the GlassBridge Enterprises Cash Balance Pension Plan was approved by the PBGC.  Following the termination of GlassBridge's pension plan, GlassBridge worked and negotiated with the PBGC to resolve its outstanding pension liabilities.

## GLASSBRIDGE'S DECISION TO PURCHASE AND SELL SPORT-BLX COMMON STOCK WHILE REPRESENTED BY FOX ROTHSCHILD

16.     Beginning in early 2019, when Fox Rothschild was GlassBridge's — along with, as set out in the accompanying declaration of George Hall, a company called Clinton Group's — counsel, we began acquiring shares of Sport-BLX.  Through a variety of transfers beginning in January 2019 through December 2019, GlassBridge owned approximately 50% of the outstanding shares of Sport-BLX.

17.     On January 4, 2019, GlassBridge was issued 10,526 common shares of Sport-BLX, and made a commitment to invest $1,000,000 in Sport-BLX.  This commitment allowed

GlassBridge to acquire an estimated 10% of Sport-BLX, and GlassBridge funded its $1,000,000 investment in installments over the course of 2019.

18.     In addition to GlassBridge's initial stock purchase and $1,000,000 investment, GlassBridge made additional purchases and investments in Sport-BLX stock throughout 2019.

19.     On September 16, 2019, GlassBridge purchased 679 shares of Sport-BLX common stock, for $178,854.

20.     October 18, 2019, Adara Enterprises Corporation (a subsidiary of GlassBridge) purchased 2,314 shares of Sport-BLX common stock for $609,524.72.  These investments were publicly disclosed in GlassBridge's 10-Q filing, dated November 8, 2019.

21.     On December 12, 2019, GlassBridge purchased from me, 17,076 shares of Sport-BLX common stock in exchange for $606,198 in cash and a $5,455,782 principal amount promissory note.

22.     On December 12, 2019, GlassBridge purchased from George Hall, 37,924 shares of Sport-BLX common stock in exchange for $1,346,302 in cash and a $12,116,718 principal amount promissory note.

23.     Given these stock purchases in 2019, as of December 31, 2019, GlassBridge owned 50.67% of Sport-BLX.

24.     GlassBridge also made loans to Sport-BLX, and on October 1, 2019, GlassBridge made a loan to Sport-BLX for $1,750,000.  This loan publicly was disclosed in GlassBridge's 10-Q filing, dated November 8, 2019.

25.     In mid-July 2021, GlassBridge wanted to divest itself of its investment in Sport-BLX.  On July 31, 2021, GlassBridge assigned obligations owed to it from Sport-BLX, totaling $4,176,102, to Fintech Debt Corporation ("FDC"), for $400,000, and on December 30, 2021,

GlassBridge sold its remaining 68,519 shares of Sport-BLX common stock to FDC for $137,038. GlassBridge's sales of its interests in Sport-BLX common stock was at a significant loss.

26.     Fox Rothschild was counsel starting in, at the latest, March 2016, and was our llegal counsel for almost the entirety of the viable life of investment in Sport-BLX,[1] with the exclusion of GlassBridge's final December 30, 2021 share sale to FDC.  During this time Fox Rothschild had confidential and sensitive information pertaining to our intentions to make additional investments in Sport-BLX.

27.     Additionally, given the allegations in the Complaint, I have deep concerns about the legal advice we received from Fox Rothschild.

28.     Fox Rothschild was responsible for evaluating the value of Sport-BLX as an investment.

29.     As set out above, Fox Rothschild's work in representing GlassBridge to the PBGC involved a detailed evaluation of the Sport-BLX investment, its business model — along with having access to the data room used for various diligence — and ultimately represented successfully to the PBGC that the investment was so valuable that essentially standing alone, it outweighed significant liabilities.

30.     If there was some kind of fraud involved in that process (and there was not), particularly when it comes to personal liability, I was largely listening to the advice of my counsel — Fox Rothschild.

31.     That also means that, should I need to defend my decisions during this period, I intend to call Ms. Thein and have her explain exactly what she explained to me at the time.  I

---

[1] After the filing of this lawsuit, the value of Sport-BLX has plummeted essentially to nothing.

expect she will testify that she did not see anything untoward about any of the things the Complaint identifies — because she evaluated all of them at the time, and used those same facts to convince the PBGC that Sport-BLX was extraordinarily valuable.

## FOX ROTHSCHILD'S ASSURANCES THAT THEY WOULD CEASE ADVERSE REPRESENTATIONS

32.     With the exception of GlassBridge's initial Sport-BLX investment, all of GlassBridge's investments and loans to Sport-BLX during 2019 occurred after GlassBridge was assured by Fox Rothschild, on September 3, 2019, that it would not represent Cypress in bringing claims adverse to GlassBridge related Sport-BLX.

33.     Attached as **Exhibit 1** is a true and correct copy of an email thread, with the most recent email dated September 3, 2019.

34.     Attached as **Exhibit 2** is a true and correct copy of a letter,[2] dated June 10, 2019, addressed to George Hall, from Marc Gross (a partner at Fox Rothschild), which is the document that was attached to the first email in Exhibit 1.  *See* Ex. 1 at 13 ("It was distressing to receive the enclosed correspondence from one of your partners on behalf of Cypress Holdings III, LP").

35.     During the period I was exchanging the emails in Exhibit 1, I also had frequent phone conversations with Ms. Thein.

36.     Exhibit 1 is, and I understood it to be, a threat to sue us (that is, myself, George Hall, Clinton Group, and Sport-BLX), sent to us by our own lawyers.

37.     Obviously, that was distressing.  At this time, GlassBridge was an investor in Sport-BLX – a fact that Fox Rothschild was clearly aware of because of its existing representation of

---

[2] The letter appears to follow Fox Rothschild formatting and document numbering — both of which I am familiar with from my time as their client — but omits the letterhead itself, listing Mr. Gross as a partner in an unknown firm.

GlassBridge. Given all of our investment in Sport-BLX and the effect any potential lawsuit would have on all of us, I reached out to Ms. Thein, expressing that, "It was distressing to receive the enclosed correspondence from one of your partners on behalf of Cypress Holdings III, LP. As background, Cypress, a 4% shareholder of SportBLX, has made a number of unsubstantiated statements and has communicated 'potential claims' to be asserted under law. Further, Cypress has suggested a buyout of his shares at 2x the purchase price from this past February. It is frustrating since all the matters in the letter were also diligenced and discussed in advance of the investment and recorded in our data room." Ex. 1 at 12-13.

38.    Ms. Thein apparently shared my shock: after an immediate response saying she would look into it, she said she was "pleased to report that our law firm is withdrawing from representation of Cypress in the Sports-BLX matter" and "sorry you were put in the position of having to contact us, but sincerely appreciate your thoughtfulness in doing so," concluding that "GlassBridge and the Clinton Group are important to us and we value our relationship." Ex. 1 at 10.

39.    However, that did not stop the matter. Just a month later, Marc Gross's name appeared again on correspondence from Plaintiff, in which he was being unnecessarily antagonistic on routine matters. *See, id.,* at 7-8. So, once again, I reached out to Ms. Thein — and once again she shared my shock.

40.    Her response was apologetic: "I'm sorry to read this message. As I wrote to you earlier, I was told Marc withdrew. I have asked about Marc's name on that e-mail. The person I need to speak with is apparently out of the office today (he is in our Philadelphia office), but please know I am asking and will get back to you as soon as I confirm why Marc was copied on that message to you. Again, my apologies you had to contact us about this matter. Thank you for your

patience, it is greatly appreciated." *Id.* at 6.  She followed up in kind:  "I am as confused as you must be, Joe. I am sorry and will forward your message to our firm's general counsel. Thank you. I really do appreciate your patience. And my apology is sincere." *Id.* at 4.

41.     In short, her messaging left no ambiguity that (1) she understood that Fox Rothschild could not ethically be adverse to us relative to the Sport-BLX investment and (2) she found it hard to understand how Mr. Gross could think such a representation was appropriate.

42.     Even then, however, Plaintiff continued to receive advice from Mr. Gross — and Plaintiff continued to include Mr. Gross on adversarial communications.  *See, id.* at 3.  I once again raised this with Ms. Thein.  *Id.*  Her response again reiterated that Mr. Gross's role — if it involved giving advice to Plaintiff — was completely inappropriate.  *Id.* at 2 ("I am as disappointed and surprised by all this as you are and I just called our firm's general counsel office to ask – again - why Marc is being copied on these e-mails to you. (Our general counsel is out of the office this week but I spoke with another attorney in our general counsel's office who said she would handle this right away.)").

43.     That final instance appeared to end the affair.  Ms. Thein assured us (capitalization in original):  "Marc Gross confirmed this afternoon that he is NOT representing Michael Salerno on this matter and referred Mr. Salerno to other legal counsel." *Id.* at 1.

44.     Throughout this period, I spoke with some frequency on the phone with Ms. Thein as well.  The sum and substance of those calls was that she assured us, without using these words, that Mr. Gross's behavior here was him "going rogue" and he was on a frolic of his own.  Thus, I understood Ms. Thein's references in the emails to the firm's general counsel's office to be about controlling and undoing unauthorized behavior by Mr. Gross.

45.     She and I also spoke about Fox Rothchild's conflict check process — essentially trying to figure out how Mr. Gross could have believed it was okay to represent Plaintiff against GlassBridge, Clinton Group, Sport-BLX, George Hall, and myself — given our status as current Fox Rothschild clients.  Necessarily implicit in that conversation was an obvious assumption: there *was* a conflict of interest.

46.     Finally, Ms. Thein's representations at the end of the that email chain induced us to continue to use Fox Rothschild's services.  That is, it was the clarity and definitiveness of her action faced with Mr. Gross's behavior that allowed us to feel comfortable spending a significant amount more money on the firm's services.  Had we known that the firm intended to fire us as a client and sue us, we would have likely sought some remedy for the inappropriate, conflicted conduct back in 2019 — but would have never paid the firm anything more.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 31st day of May 2022.

_____
            JOSEPH DE PERIO

 Gmail

**remy green <remy@femmelaw.com>**

---

## Fwd: [EXT] GlassBridge <>Fox Rothschild

**George Hall** <george.hall@sportblx.com>                    Thu, May 12, 2022 at 7:27 PM
To: remy green <remy@femmelaw.com>, Wylie Stecklow <wylie@wylielaw.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Daniel Strauss <dstrauss@glassbridge.com>
> **Date:** May 12, 2022 at 6:29:11 PM EDT
> **To:** George Hall <george.hall@sportblx.com>
> **Subject: Fwd: [EXT]  GlassBridge <>Fox Rothschild**
>
>
>
> **From:** "Thein, Pamela A." <pthein@foxrothschild.com>
> **Date:** September 3, 2019 at 5:00:58 PM EDT
> **To:** Joseph De Perio <joseph.deperio@sportblx.com>
> **Cc:** "Schneebeck, Mark P." <mschneebeck@foxrothschild.com>, "Nath, Archana"
> <anath@foxrothschild.com>, "Meyer, Steven W." <smeyer@foxrothschild.com>, George Hall
> <GEH@clinton.com>, Daniel Strauss <dstrauss@glassbridge.com>
> **Subject: RE: [EXT]  GlassBridge <>Fox Rothschild**
>
>
>
> Joe:
>
>
> Marc Gross confirmed this afternoon that he is NOT representing Michael
> Salerno on this matter and referred Mr. Salerno to other legal counsel.
>
>
> Marc was out of the country when the last e-mail was sent (I expect that is
> why I did not receive a response earlier) and said this afternoon that he was
> not consulted on this matter.
>
>
> Marc should not be copied on any future e-mails you receive from Mr.
> Salerno on this matter.
>
>
> Again, my apologies this took so long to sort out on our end.

Thank you.


Pam


**Pam Thein**
Partner
**Fox Rothschild LLP**
Campbell Mithun Tower - Suite 2000
222 South Ninth St.
Minneapolis, MN 55402-3338
(612) 607-7408 - direct
(612) 607-7100- fax
pthein@foxrothschild.com
www.foxrothschild.com

---

**From:** Thein, Pamela A.
**Sent:** Tuesday, September 03, 2019 3:21 PM
**To:** 'Joseph De Perio' <joseph.deperio@sportblx.com>
**Cc:** Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana <anath@foxrothschild.com>; Meyer, Steven W. <smeyer@foxrothschild.com>; George Hall <geh@clinton.com>; Daniel Strauss <dstrauss@glassbridge.com>
**Subject:** RE: [EXT] RE: GlassBridge <>Fox Rothschild


Joe:


I just left a message for you with your assistant. I am as disappointed and surprised by all this as you are and I just called our firm's general counsel office to ask – again - why Marc is being copied on these e-mails to you. (Our general counsel is out of the office this week but I spoke with another attorney in our general counsel's office who said she would handle this right away.)


I am sorry this was not already resolved.


Thank you.


Pam


**Pam Thein**
Partner
**Fox Rothschild LLP**
Campbell Mithun Tower - Suite 2000
222 South Ninth St.
Minneapolis, MN 55402-3338

(612) 607-7408 - direct
(612) 607-7100- fax
pthein@foxrothschild.com
www.foxrothschild.com

---

**From:** Joseph De Perio <joseph.deperio@sportblx.com>
**Sent:** Tuesday, September 03, 2019 3:06 PM
**To:** Thein, Pamela A. <pthein@foxrothschild.com>
**Cc:** Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana <anath@foxrothschild.com>; Meyer, Steven W. <smeyer@foxrothschild.com>; George Hall <geh@clinton.com>; Daniel Strauss <dstrauss@glassbridge.com>
**Subject:** RE: [EXT] RE: GlassBridge <>Fox Rothschild


Pam – As I send my check-in email to you, the following is sent to me cc'ing your partner. What's going on here?


Salerno is being extremely antagonistic to mundane matters at hand and appears to continue to get legal advice from your firm.


Joe


**From:** Michael Salerno <msalerno@nppg.com>
**Sent:** Tuesday, September 03, 2019 3:59 PM
**To:** Joseph De Perio <joseph.deperio@sportblx.com>; George Hall <geh@clinton.com>; franruch@clinton.com; Daniel Strauss <dstrauss@glassbridge.com>
**Cc:** 'Marc Gross' <Mgross@foxrothschild.com>
**Subject:** RE: Board Meeting 8/27
**Importance:** High


Joe,

The minutes you attached are a gross misrepresentation of what actually occurred during the meeting on August 14, 2019 where the board blatantly refused to answer questions and provide information on the Sport-blx business at hand.  I will move forward to correct these misstatements.


Also, I have not received the minutes from the meetings you held without me subsequent to Aug. 14th.

Cordially,


Michael M. Salerno

Founder & CEO


NORTHEAST PROFESSIONAL PLANNING GROUP, Inc.

- *Employee Benefits & Retirement Planning*
- *Actuarial & Retirement Plan Administration*
- *Administrative Fiduciary & Consulting Services*


121 Monmouth Street

Red Bank, NJ 07701

Phone: (732) 758-1577 ext. 239  |  Fax: (732) 758-1582




Joseph A. De Perio
Sport-BLX, Inc.
510 Madison Avenue, 9th Floor
New York, NY 10022
jad@sportblx.com
(212) 377-4252

---

**From:** Thein, Pamela A. <pthein@foxrothschild.com>
**Sent:** Tuesday, August 20, 2019 8:24 PM
**To:** Joseph De Perio <joseph.deperio@sportblx.com>
**Cc:** Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana <anath@foxrothschild.com>; Meyer, Steven W. <smeyer@foxrothschild.com>; George Hall <geh@clinton.com>; Daniel Strauss <dstrauss@glassbridge.com>
**Subject:** Re: [EXT] RE: GlassBridge <>Fox Rothschild



I am as confused as you must be, Joe. I am sorry and will forward your message to our firm's general counsel.


Thank you. I really do appreciate your patience. And my apology is sincere.


Pam

Pam Thein

## Fox Rothschild  LLP

612-607-7408

On Aug 20, 2019, at 5:53 PM, Joseph De Perio <joseph.deperio@sportblx.com> wrote:

Pam – I won't speculate whether or not it was an error, but I would note that (i) the cc'ing happened a number of times in the past week and (ii) Mr. Salerno mentioned in person at our board meeting last week that he required ongoing consultation with his counsel before addressing a number of matters, which coincided with the cc'ing on emails.

Either way, I would expect that Fox Rothschild directs Marc Gross not to advise going forward or cooperate on transferring the file to another firm.

Joe

Joseph A. De Perio
Sport-BLX, Inc.
510 Madison Avenue, 9th Floor
New York, NY 10022
jad@sportblx.com
(212) 377-4252

---

**From:** Thein, Pamela A. <pthein@foxrothschild.com>
**Sent:** Tuesday, August 20, 2019 6:30 PM
**To:** Joseph De Perio <joseph.deperio@sportblx.com>
**Cc:** Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana <anath@foxrothschild.com>; Meyer, Steven W. <smeyer@foxrothschild.com>; George Hall <geh@clinton.com>; Daniel Strauss <dstrauss@glassbridge.com>
**Subject:** Re: [EXT] RE: GlassBridge <>Fox Rothschild

Hi Joe-

Sorry for not writing to you yesterday. I contacted our firm's general counsel last week. He was out of the office and called me yesterday. He reached out to Mark but received an out of office message - apparently Mark is on vacation this week.

I wonder if they copied Mark by mistake but, in any event, we were told Mark withdrew from that matter. I will let you know as soon as I hear from him.

Thank you.


Pam


Pam Thein

## Fox Rothschild  LLP

612-607-7408

On Aug 20, 2019, at 4:53 PM, Joseph De Perio
<joseph.deperio@sportblx.com> wrote:

> Pam – Following up here please.  There was communication to
> George by email as recent as Sunday which CC'd your partner.
>
>
> Joe
>
>
> ---
>
> **From:** Thein, Pamela A. <pthein@foxrothschild.com>
> **Sent:** Friday, August 16, 2019 2:23 PM
> **To:** Joseph De Perio <joseph.deperio@sportblx.com>;
> Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath,
> Archana <anath@foxrothschild.com>; Meyer, Steven W.
> <smeyer@foxrothschild.com>
> **Cc:** George Hall <geh@clinton.com>; Daniel Strauss
> <dstrauss@glassbridge.com>
> **Subject:** RE: GlassBridge <>Fox Rothschild
>
>
>
> Joe:
>
>
> I'm sorry to read this message. As I wrote to you
> earlier,  I was told Marc withdrew.  I have asked about
> Marc's name on that e-mail.  The person I need to
> speak with is apparently out of the office today (he is
> in our Philadelphia office), but please know I am
> asking and will get back to you as soon as I confirm
> why Marc  was copied on that message to you.
>
>
> Again, my apologies you had to contact us about this
> matter. Thank you for your patience, it is greatly
> appreciated.

Regards,


Pam



**Pam Thein**
Partner
**Fox Rothschild LLP**
Campbell Mithun Tower - Suite 2000
222 South Ninth St.
Minneapolis, MN 55402-3338
(612) 607-7408 - direct
(612) 607-7100- fax
pthein@foxrothschild.com
www.foxrothschild.com

---

**From:** Joseph De Perio <joseph.deperio@sportblx.com>
**Sent:** Friday, August 16, 2019 11:10 AM
**To:** Thein, Pamela A. <pthein@foxrothschild.com>; Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana <anath@foxrothschild.com>; Meyer, Steven W. <smeyer@foxrothschild.com>
**Cc:** George Hall <geh@clinton.com>; Daniel Strauss <dstrauss@glassbridge.com>
**Subject:** [EXT] RE: GlassBridge <>Fox Rothschild


Pam:  Mark Gross's name has again resurfaced in correspondence antagonistic to our company.


By way of background, we require a look through to the beneficial owners of our shareholders of record.  We also require this for our FINRA application to register as a new broker dealer..  I think we can all agree that an issuer of stock should have visibility on who its beneficial owners are.  I would further assert that Salerno is potentially in violation of representations made to us at the time of his purchase agreement.  And his refusal to cooperate in ordinary course is damaging to advancing our process with FINRA.


I thought this was resolved in our last email exchange, but it appears he continues to get advice from Fox Rothchild to our detriment.


I am happy to chat about this at your earliest convenience.


Best regards, Joe

**From:** George Hall <george.hall@clinton.com>
**Sent:** Friday, August 16, 2019 12:02 PM
**To:** Joseph De Perio <joseph.deperio@sportblx.com>
**Subject:** FW:

**From:** Michael Salerno [mailto:msalerno@nppg.com]
**Sent:** Friday, August 16, 2019 10:51 AM
**To:** George Hall
**Cc:** 'Marc Gross'
**Subject:**

> This message was sent securely using Zix®

George,  I am willing to provide FINRA with ownership information
that they want however I am not willing to provide it to you or any
other sport-blx directors as you do not have a right to this
information at this time.

Once you provide me with the FINRA representative we will
promptly reach out to them to expedite.

Cordially,

Michael M. Salerno

Founder & CEO

NORTHEAST PROFESSIONAL PLANNING GROUP, Inc.

- *Employee Benefits & Retirement Planning*
- *Actuarial & Retirement Plan Administration*
- *Administrative Fiduciary & Consulting Services*

121 Monmouth Street

Red Bank, NJ 07701

Phone: (732) 758-1577 ext. 239  |  Fax: (732) 758-1582

www.nppg.com

<image001.jpg><image002.png>

You are hereby advised that any tax **or other professional guidance** contained in this communication or any attachments is not intended or written to be used, nor can it be used for the purpose of (i) avoiding any tax-related penalties under the internal revenue code or (ii) supporting, marketing or recommending any tax-related matters contained in this communication. **You are further advised that any e-mail communications from Northeast Professional Planning Group, Inc. ("NPPG") or its affiliates may originate from an electronic mailing address associated with any of NPPG or its affiliates, and the electronic mailing address used for any specific communication is not indicative of the entity whose services have been retained.** Confidentiality notice: the document accompanying this communication contains information from NPPG, including its members and affiliates, which is confidential and/or legally privileged. If you are not the intended recipient named above, you are hereby notified that any disclosure, copying, or distribution of the information is strictly prohibited, and the documents should be returned to this firm immediately. If you have received this communication in error, please notify us by telephone immediately **and before accessing or distributing this communication or any accompanying documents or attachments.**

This message was secured by **Zix**®.

Disclaimer

Clinton Group makes every effort to use reliable information, but cannot make any representation to the accuracy or completeness of the information in this email or items attached to this email. The recipient should note that any disclaimers presented in the attachments are construed to be part of the content transmitted in the body of the email. Do not expect us to inform you if the information contained herein changes or is updated. We do not accept any liability relating to this information, its completeness or timeliness. This email and the information contained in it and attached to it is not an offer to buy or sell (nor a solicitation of a proposal to buy or sell) securities, funds or any financial instrument. Any such offer or solicitation may be made only by delivery of a private placement memorandum and other offering documents. Clinton Group and/or its employees may have an investment in, and may effect transactions in, securities and derivatives of securities of companies mentioned in this email. We do not provide tax, legal, regulatory or other advice; we recommend that investors seek advice from independent advisers. Past performance is not necessarily indicative of future performance. The information herein may not be redistributed without the prior written consent of Clinton Group and is not intended for non-professional investors.

DISCLAIMER: Sport-BLX, Inc. makes every effort to use reliable information, but cannot make any representation to the accuracy or completeness of the information in this email or items attached to this email. The recipient should note that any disclaimers presented in the attachments are construed to be part of the content transmitted in the body of the email. Do not expect us to

inform you if the information contained herein changes or is updated. We do not accept any liability relating to this information, its completeness or timeliness. This email and the information contained in it and attached to it is not an offer to buy or sell (nor a solicitation of a proposal to buy or sell) securities, funds or any financial instrument. Any such offer or solicitation may be made only by delivery of a private placement memorandum and other offering documents. Sport-BLX, Inc. and/or its employees may have an investment in, and may effect transactions in, securities and derivatives of securities of companies mentioned in this email. We do not provide tax, legal, regulatory or other advice; we recommend that investors seek advice from independent advisers. Past performance is not necessarily indicative of future performance. The information herein may not be redistributed without the prior written consent of Sport-BLX, Inc. and is not intended for non-professional investors.

Joseph A. De Perio
Sport-BLX, Inc.
510 Madison Avenue, 9th Floor
New York, NY 10022
jad@sportblx.com
(212) 377-4252

---

**From:** Thein, Pamela A. <pthein@foxrothschild.com>
**Sent:** Thursday, July 11, 2019 8:51 AM
**To:** Joseph De Perio <joseph.deperio@sportblx.com>; Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana <anath@foxrothschild.com>; Meyer, Steven W. <smeyer@foxrothschild.com>
**Cc:** George Hall <geh@clinton.com>; Daniel Strauss <dstrauss@glassbridge.com>
**Subject:** RE: GlassBridge <>Fox Rothschild

Good morning, Joe:

I am pleased to report that our law firm is withdrawing  from representation of Cypress in the Sports-BLX matter.

I am sorry you were put in the position of having to contact us, but sincerely appreciate your thoughtfulness in doing so.  GlassBridge and the Clinton Group are important to us and we value our relationship.

Thank you, again.

Regards,


Pam


**Pam Thein**
Partner
**Fox Rothschild LLP**
Campbell Mithun Tower - Suite 2000
222 South Ninth St.
Minneapolis, MN 55402-3338
(612) 607-7408 - direct
(612) 607-7100- fax
pthein@foxrothschild.com
www.foxrothschild.com

---

**From:** Joseph De Perio <joseph.deperio@sportblx.com>
**Sent:** Wednesday, July 10, 2019 3:31 PM
**To:** Thein, Pamela A. <pthein@foxrothschild.com>; Schneebeck,
Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana
<anath@foxrothschild.com>; Meyer, Steven W.
<smeyer@foxrothschild.com>
**Cc:** George Hall <geh@clinton.com>; Daniel Strauss
<dstrauss@glassbridge.com>
**Subject:** [EXT] RE: GlassBridge <>Fox Rothschild


Thanks Pam.  Please let us know.  It's also worth mentioning that
GlassBridge is a shareholder of Sport-BLX as well.


Joe


Joseph A. De Perio
Sport-BLX, Inc.
510 Madison Avenue, 9th Floor
New York, NY 10022
jad@sportblx.com
(212) 377-4252

---

**From:** Thein, Pamela A. <pthein@foxrothschild.com>
**Sent:** Wednesday, July 10, 2019 4:24 PM
**To:** Joseph De Perio <joseph.deperio@sportblx.com>;
Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath,
Archana <anath@foxrothschild.com>; Meyer, Steven W.
<smeyer@foxrothschild.com>
**Cc:** George Hall <geh@clinton.com>; Daniel Strauss
<dstrauss@glassbridge.com>
**Subject:** RE: GlassBridge <>Fox Rothschild

Dear Joe:

Thank you for contacting us about this matter.  We will look into it on our end and get back to you.

We do value our long-term relationship with GlassBridge and I appreciate you contacting us about the letter you received from our colleague.

Thanks, again.

Pam

**Pam Thein**
Partner
**Fox Rothschild LLP**
Campbell Mithun Tower - Suite 2000
222 South Ninth St.
Minneapolis, MN 55402-3338
(612) 607-7408 - direct
(612) 607-7100- fax
pthein@foxrothschild.com
www.foxrothschild.com

---

**From:** Joseph De Perio <joseph.deperio@sportblx.com>
**Sent:** Wednesday, July 10, 2019 2:20 PM
**To:** Schneebeck, Mark P. <mschneebeck@foxrothschild.com>; Nath, Archana <anath@foxrothschild.com>; Thein, Pamela A. <pthein@foxrothschild.com>; Meyer, Steven W. <smeyer@foxrothschild.com>
**Cc:** George Hall <geh@clinton.com>; Daniel Strauss <dstrauss@glassbridge.com>
**Subject:** [EXT] GlassBridge <>Fox Rothschild

Hello:

I write you as the Chairman of GlassBridge Enterprises, Inc.   You may or may not recall that George Hall and I won 26% and 2.5% of GlassBridge's stock, respectively.

I am also the President of Sport-BLX, Inc., and George Hall is its Executive Chairman.  He and I are founders and own 75% of the Stock of SportBLX.

It was distressing to receive the enclosed correspondence from one of your partners on behalf of Cypress Holdings III, LP.   As background, Cypress, a 4% shareholder of SportBLX, has made a number of unsubstantiated statements and has communicated 'potential claims' to be asserted under law.  Further, Cypress has suggested a buyout of his shares at 2x the purchase price from this past February.  It is frustrating since all the matters in the letter were also diligenced and discussed in advance of the investment and recorded in our data room.

Obviously, we would like our relationship at GlassBridge to continue as it has done so for multiple years.  Please let me know when you are available to discuss.

Thank you, Joe

Joseph A. De Perio
Sport-BLX, Inc.
510 Madison Avenue, 9th Floor
New York, NY 10022
jad@sportblx.com
(212) 377-4252

DISCLAIMER: Sport-BLX, Inc. makes every effort to use reliable information, but cannot make any representation to the accuracy or completeness of the information in this email or items attached to this email. The recipient should note that any disclaimers presented in the attachments are construed to be part of the content transmitted in the body of the email. Do not expect us to inform you if the information contained herein changes or is updated. We do not accept any liability relating to this information, its completeness or timeliness. This email and the information contained in it and attached to it is not an offer to buy or sell (nor a solicitation of a proposal to buy or sell) securities, funds or any financial instrument. Any such offer or solicitation may be made only by delivery of a private placement memorandum and other offering documents. Sport-BLX, Inc. and/or its employees may have an investment in, and may effect transactions in, securities and derivatives of securities of companies mentioned in this email. We do not provide tax, legal, regulatory or other advice; we recommend that investors seek advice from independent advisers. Past performance is not necessarily indicative of future performance. The information herein may not be redistributed without the

prior written consent of Sport-BLX, Inc. and is not
intended for non-professional investors.

This email contains information that may be confidential and/or
privileged. If you are not the intended recipient, or the employee
or agent authorized to receive for the intended recipient, you may
not copy, disclose or use any contents in this email. If you have
received this email in error, please immediately notify the sender
at Fox Rothschild LLP by replying to this email and delete the
original and reply emails. Thank you.

This email contains information that may be confidential and/or
privileged. If you are not the intended recipient, or the employee
or agent authorized to receive for the intended recipient, you may
not copy, disclose or use any contents in this email. If you have
received this email in error, please immediately notify the sender
at Fox Rothschild LLP by replying to this email and delete the
original and reply emails. Thank you.

This email contains information that may be confidential and/or
privileged. If you are not the intended recipient, or the employee
or agent authorized to receive for the intended recipient, you may
not copy, disclose or use any contents in this email. If you have
received this email in error, please immediately notify the sender
at Fox Rothschild LLP by replying to this email and delete the
original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you
are not the intended recipient, or the employee or agent authorized to receive
for the intended recipient, you may not copy, disclose or use any contents in
this email. If you have received this email in error, please immediately notify the
sender at Fox Rothschild LLP by replying to this email and delete the original
and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the
intended recipient, or the employee or agent authorized to receive for the intended recipient,
you may not copy, disclose or use any contents in this email. If you have received this email
in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email
and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the
intended recipient, or the employee or agent authorized to receive for the intended recipient,
you may not copy, disclose or use any contents in this email. If you have received this email
in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email
and delete the original and reply emails. Thank you.

DISCLAIMER: GlassBridge Enterprises, Inc., its affiliates and the directors, officers, employees, and
consultants of each of the company (collectively, "GlassBridge") endeavor to use reliable information, but
cannot make any representation to the accuracy or completeness of the information in this email or items
attached to this email. The recipient should note that any disclaimers presented in the attachments are

construed to be part of the content transmitted in the body of the email. Do not expect GlassBridge to inform you if the information contained herein changes or is updated. GlassBridge does not accept any liability relating to this information, its completeness or timeliness. This email and the information contained in it and attached to it is not an offer to buy or sell (nor a solicitation of a proposal to buy or sell) securities, funds or any financial instrument. Any such offer or solicitation may be made only by delivery of a private placement memorandum and other offering documents. GlassBridge may have an investment in, and may effect transactions in, securities and derivatives of securities of companies mentioned in this email. GlassBridge does not provide tax, legal, regulatory or other advice; GlassBridge cautions investors to seek advice from independent advisers. Past performance is not necessarily indicative of future performance. The information herein may not be redistributed without the prior written consent of GlassBridge and is not intended for non-professional investors.

**MARC J. GROSS**
**PARTNER**
Direct Dial: 973-548-3301

June 10, 2019

**VIA REGULAR & CERT. MAIL, R.R.R.**

George Hall, Executive Chairman
Sport-BLX, Inc.
510 Madison Avenue, 9th Floor
New York, NY 10022

   **Re: Cypress Holdings III, L.P.**

Dear Mr. Hall:

   This office serves as counsel for Cypress Holdings III, L.P. and Michael M. Salerno (collectively "Cypress").  I write in connection with certain potential claims of Cypress in connection with its investment in an ownership interest in Sport-BLX, Inc. ("Sport-BLX").  In this regard, Cypress and Salerno were advised of Sport-BLX's "partnership interest" in an investment fund as well as a management fee which would generate income.  Unfortunately, it now seems as though Sport-BLX is representing that Cypress's ownership in Sport-BLX is entirely unrelated to and that it is unable to obtain any benefit from any partnership interest in any investment fund.

   Additionally, apparently Sport-BLX has entered into a lease for certain commercial office space, expending approximately $500,000 per annum for an occupancy for less than five (5) employees.  Not only does this sum seem excessively suspect, but we understand that the lessor, Clinton Group, Inc., is an entity to which you have an interest.  Thus, absent additional information, Cypress and Salerno have potential claims that may be asserted under law or in equity. Prior to advancing such claims, we ask that your counsel contact my office so that we may discuss these issues and arrive at a mutually agreeable solution.

   I look forward to your prompt response and attention.

       Very truly yours,

       MARC J. GROSS

MJG/mav

96188419