UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX,
INC.,

                  Plaintiff,

      v.

GEORGE HALL, JOSEPH DE PERIO,
DANIEL STRAUSS, FRANCIS
RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX,
INC., SPORT-BLX SECURITIES, INC.,
CLINTON GROUP INC., and
GLASSBRIDGE ENTERPRISES, INC.,

                  Defendants.

——————————————————— x

Civil Action No. 1:22-cv-1243-LGS

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 56**

TABLE OF CONTENTS

**Table of Authorities**     iii

**LEGAL STANDARD**     1

**ARGUMENT**     1

I.   **The Court Should Grant Summary Judgment to SportBLX On Its Fraud and Breach of Fiduciary Duty Claims**     1

    A.   Salerno Made A Material Misrepresentation     3

    B.   Salerno Had Knowledge of Falsity and/or Reckless Indifference to the Truth     5

    C.   Salerno Had The Requisite Scienter     6

    D.   Sport-BLX Relied on Salerno's False and Misleading Statements     7

    E.   Sport-BLX Can Easily Establish Economic Harm and Loss Causation     9

II.   **Indisputable Evidence  Proves That Salerno Breached His Fiduciary Duty of Loyalty, And Cypress Has No Contrary Evidence**     10

III.   **All of Cypress' Claims Fail As A Matter of Law And Should Be Dismissed**     15

    A.   Cypress's Misrepresentation Claims Should Be Dismissed     15

       1.   The 10b-5 Claim is Untimely     16

       2.   Cypress' Misrepresentation Claims Fail Pursuant to The Agreements Integration and No-Reliance Clauses     17

       3.   Cypress' Negligent Misrepresentation Claim is Basd on Alleged Future Promises And Thus Fails As A  Matter of Law     19

       4.   Cypress Cannot Establish That Any Alleged Misrepresentation Caused Any Damages     19

       5.   Cypress Cannot Establish Scienter     21

    B.   Cypress's Remaining Direct Claims Should Be Dismissed     22

C.  Cypress's Derivative Claims Should Be Dismissed                    24

  1.  Cypress' Unjust Enrichment Claims Fail                          24

  2.  Cypress' Tortious Interference And Aiding and Abetting Claims Fail    27

## Table of Authorities

*Airborne Health, Inc. v Squid Soap, LP*, 984 A2d 126 [Del Ch 2009]................................23

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334 (S.D.N.Y. 2023).......…......2, 6

*AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000)…....….....................…7

*Beard Research, Inc. v. Kates*, 8 A.3d 573 (Del. Ch. 2010)……...........................…28

*Black Horse Cap., LP v. Xstelos Hldgs., Inc.*, 2014 WL 5025926 (Del. Ch. Sept. 30, 2014)…....19

*Blaustein v. Lord Baltimore Capital Corp.*, 2012 WL 2126111,

    (Del. Ch. Ct. May 31, 2012)..............................................................22

*Boulden v Albiorix, Inc.*, 2013 WL 396254 (Del Ch Jan. 31, 2013)……...................19

*Bos. Consulting Grp., Inc. v. GameStop Corp.*,

    2023 WL 2683629 (D. Del. Mar. 29, 2023)…..................................23

*Burger v. CPC Int'l, Inc.*, 76 F.R.D. 183 (S.D.N.Y. 1977)....….....................................21

*Caiola v. Citibank, N.A.*, N.Y., 295 F.3d 213 (2d Cir.2002)…...............................................2

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,

    129 F. Supp. 3d 48, 67 (S.D.N.Y. 2015)…................................................4

*Cobalt Operating, LLC v. James Crystal Enterprises, LLC*, 2007 WL 2142926,

    (Del. Ch. July 20, 2007), aff'd, 945 A.2d 594 (Del. 2008)...........................8

*D'Amico v. City of N.Y.*, 132 F.3d 145 (2d Cir. 1998)…...................…......…............1

*Diesenhouse v. Soc. Learning & Payments, Inc.*,

    2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022)…...........................................16

*DRR, L.L.C. v. Sears, Roebuck & Co.*, 949 F. Supp. 1132 (D. Del. 1996)….......................2, 5

*Dunn v FastMed Urgent Care, P.C.*, 2019 WL 4131010 [Del Ch Aug. 30, 2019]…...............19

*Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*,

    2018 WL 2727542 (Del. Ch. June 6, 2018)…....................................22

*Gagliardi v. TriFoods Intern.*, 683 A.2d 1049 (Del. Ch. 1996)…….......................11

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*,

    2018 WL 6311829 (Del. Ch. Dec. 3, 2018)…...................................4, 8

*Grunstein v Silva*, 2009 WL 4698541, (Del Ch Dec. 8, 2009)…….....................19

*In re Columbia Pipeline Group, Inc. Merger Litig.*, 299 A3d 393 (Del Ch 2023)................11

*In re Orchard Enterprises, Inc. S'holder Litig.*, 88 A.3d 1 (Del. Ch. 2014)…....................20

*In re Reliance Sec. Litig.*, 2002 WL 35645209 (D. Del. Feb. 8, 2002)….............................21

*In re Tremont*, 703 F. Supp. 2d 362 (S.D.N.Y. 2010)…….....................................6

*In re Viking Pump, Inc.*, 148 A.3d 633 (Del. 2016)…….......................................8

*In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016)…….....................................3

*In re Walt Disney Co. Derivative Litig.*, 907 A2d 693 (Del Ch 2005)…….......................11

*In re Wayport, Inc. Litig.*, 76 A.3d 296 (Del. Ch. 2013)…….....................................2, 6

*LCT Cap., LLC v. NGL Energy Partners LP*, 249 A.3d 77 (Del. 2021)…….......................20

*Lehman v. Garfinkle*, 2009 WL 2973207 (S.D.N.Y. Sept. 16, 2009)...................................2

*Liu v Sec. and Exch. Commn.*, 591 US 71 (2020)...................................................27

*McCabe v. Ernst & Young LLP*, 494 F.3d 418 (3d Cir.2007)..........................................9

*Metro Commc'n Corp. v. Advanced Mobilecomm*, 854 A.2d 121 (Del.Ch.2004)..................2, 6

*Metro Stor. Intl. LLC v Harron*, 275 A3d 810 (Del Ch 2022)......................................11

*Microbot Med., Inc. v. Mona*, 688 F. Supp. 3d 88  (S.D.N.Y. 2023)...............................20

*MidCap Funding X Tr. v. Graebel Companies, Inc.*, 2020 WL 2095899,

    (Del. Ch. Apr. 30, 2020)........................................................................18

*Mills v Polar Molecular Corp.*, 12 F3d 1170 (2d Cir 1993).........................................22

*Nemec v Shrader*, 991 A2d 1120 (Del 2010).......................................................23

*Palmer v Reali*, 211 F Supp 3d 655 (D. Del 2016)............................................10, 24

*Panos v. Island Gem Enterprises, Ltd., N.V.*, 880 F. Supp. 169 (S.D.N.Y. 1995)..................20

*Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35 (Del. Ch. 2015)...............2, 18

*Prime Mover Cap. Partners, L.P. v. Elixir Gaming Techs., Inc.*,

    793 F. Supp. 2d 651 (S.D.N.Y. 2011).......................................................18

*San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104 (S.D.N.Y. 2010)............18

*Schiff v. ZM Equity Partners, LLC*, 2020 WL 5077712 (S.D.N.Y. Aug. 27, 2020)................28

*Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*,

    697 F. Supp. 3d 138 (S.D.N.Y. 2023).........................................................7

*Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*,

    210 F. Supp. 3d 421 (E.D.N.Y. 2016)........................................................6

*Sec. & Exch. Comm'n v. Gallagher*, 2023 WL 6276688 (SDNY Sept. 26, 2023)...................3

*S'holder Representative Servs. LLC v. Albertsons Companies, Inc.*,

    2021 WL 2311455, (Del. Ch. June 7, 2021).................................................19

*Siga Tech., Inc. v PharmAthene, Inc.*, 132 A3d 1108 [Del 2015].................................23

*Smartmatic Int'l Corp. v. Dominion Voting Sys. Int'l Corp.*,

    2013 WL 1821608 (Del. Ch. May 1, 2013)...................................................8

*Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, 739 F. Supp. 2d 686 (D. Del. 2010)...1

*Stewart v. BF Bolthouse Holdco, LLC*, 2013 WL 5210220 (Del. Ch. Aug. 30, 2013)............24

*Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del.2006).......................10

*Trabucco v. Intesa Sanpaolo, S.p.A.*, 695 F. Supp. 2d 98 (S.D.N.Y. 2010).........................2

*Trifecta Multimedia Holdings Inc. v WCG Clinical Services LLC*,

    318 A3d 450 (Del. Ch. 2024)..............................................................21-22

*Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725 (Del. Ch. 2014)................2, 6, 7, 9, 20

*Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000) cert. denied, 540 U.S. 811 (2003)......1

*Yookel, Inc. v. United States Steel Corp.*, 2022 WL 542379 (E.D.N.Y. Feb. 23, 2022..............2

Defendants[1] respectfully submit this memorandum of law in support of Defendants' motion for summary judgment: (i) dismissing all remaining claims asserted against them in this action; and (ii) finding Michael M. Salerno and Cypress Holdings III, L.P. ("Cypress,"), defendants in related case No. 1:22-cv-8111, liable on all claims asserted therein. Defendants cite herein to their contemporaneously filed Statement of Undisputed Facts ("SoF").

## LEGAL STANDARD

"[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998). Indeed, at summary judgment, "the time has come . . . to put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) cert. denied, 540 U.S. 811 (2003).

## ARGUMENT

### I.   The Court Should Grant Summary Judgment to SportBLX On Its Fraud and Breach of Fiduciary Duty Claims.

To establish fraud, a plaintiff must establish ": "(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." *Snowstorm Acquisition*

---

[1] Defendants shall mean Sport-BLX, Inc. ("SportBLX"), Sport-BLX Securities, Inc. ("SportBLX Securities"), Clinton Group, Inc. ("Clinton Group"), George Hall, Cesar Baez, Joseph De Perio, and Christopher Johnson.

*Corp. v. Tecumseh Products Co.*, 739 F. Supp. 2d 686, 708 (D. Del. 2010).[2] Claims under § 10(b)

of the Securities and Exchange Act require proof of the same elements. *See Altimeo Asset Mgmt.*

*v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 352 (S.D.N.Y. 2023) (citations omitted).

There are three types of fraud in Delaware: "(1) false statements represented as truth; (2)

active concealment of facts which prevents the other party from discovering them; and (3) silence

in the face of a duty to speak," each of which is at issue here. *DRR, L.L.C. v. Sears, Roebuck &*

*Co.*, 949 F. Supp. 1132, 1137 (D. Del. 1996). Liability for active concealment requires that a

plaintiff prove "an intentional deception of the plaintiff by the defendant, which the plaintiff relies

upon to his detriment." *Metro Commc'n Corp. v. Advanced Mobilecomm*, 854 A.2d 121, 143

(Del.Ch.2004).

"[I]f a party in an arms' length negotiation chooses to speak, then it cannot lie," and "it

also cannot do so partially or obliquely such that what the party conveys becomes misleading."

*Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015). "[I]f a

party chooses to speak, and his words are materially misleading," a continuing "duty to speak

arises" pursuant to which the party must ensure his statements do not remain misleading. *Vichi v.*

*Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 809 (Del. Ch. 2014); *In re Wayport, Inc. Litig.*, 76

A.3d 296, 323 (Del. Ch. 2013) (same). "[T]he lack of an independent duty is not, under such

---

[2] Delaware law governs the State law claims in both actions. Sport-BLX and Cypress selected Delaware law in the SPAs' choice of law provision. Moreover, Delaware has a greater interest than New York in resolving the issues here given that Sport-BLX is a Delaware corporation and Cypress is a Delaware limited partnership, and Cypress's claims allege breaches by Delaware corporate Directors of Delaware State law fiduciary duties. Any harm that Cypress suffered as a result of the alleged misrepresentations occurred in Delaware, where it was formed, also supporting application of Delaware law. *Cf. Yookel, Inc. v. United States Steel Corp.*, 2022 WL 542379, at *4 (E.D.N.Y. Feb. 23, 2022), *aff'd*, 2023 WL 3033512 (2d Cir. Apr. 21, 2023) (locus of the tort was where the company was incorporated and had its principal place of business, and applying that state's law). In all instances, New York law closely mirrors Delaware law. For example, in both States, a fraudulent inducement claim premised on a future promise to perform requires the plaintiff to "show that 'the defendants had no intention of carrying out [the promise] at the time the promise was made'," *Trabucco v. Intesa Sanpaolo, S.p.A.*, 695 F. Supp. 2d 98, 108 (S.D.N.Y. 2010), and a claim for negligent misrepresentation fails if premised on a future promise to perform, *Lehman v. Garfinkle*, 2009 WL 2973207, at *8 (S.D.N.Y. Sept. 16, 2009).

circumstances, a defense to Rule 10b–5 liability." *Caiola v. Citibank, N.A.*, N.Y., 295 F.3d 213, 331 (2d Cir.2002) ("Once [defendant] chose to discuss" material facts, "it had a duty to be both accurate and complete"); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016) ("at the moment [defendant] chooses to speak, it takes upon itself the obligation to speak truthfully, and it is the breach of *that* obligation which forms the basis for the § 10(b) claim") [emphasis in original]; *Sec. & Exch. Comm'n v. Gallagher*, 2023 WL 6276688, at *9 (SDNY Sept. 26, 2023) (same).

### A.   Salerno Made A Material Misrepresentation.

It is indisputable that, from January 14, 2019, until February 28, 2019, Salerno held himself out as an individual investor. On January 14, 2019, Sport-BLX sent Salerno "an overall proposal to work together," stating that it would "re-open the Founder's Round for Mr. Salerno for $200K" and that "Mr. Salerno will be granted capacity" again in a subsequent round. (SoF ¶ 7.) Through the next six weeks, through multiple communications and revisions to the Side Agreement and the Stock Purchase Agreements, the parties' discussions and the drafts they exchanged contemplated that the purchaser was to be "Michael M. Salerno" (not Cypress), and Salerno represented that he: (a) was purchasing for his own account; and (ii) that he was an accredited investor. (SoF ¶ 7.)

On February 6, 2019, Sport-BLX sent a round of revised documents to Salerno based on his requests for edits, and on February 19, 2019, he responded with further edits and by forwarding email correspondence with his counsel. In another email to his own attorney, Salerno stated: "I [(not, Cypress)] am investing." (SoF ¶ 37.) After six weeks of back-and-forth negotiations, with multiple reviews and revisions to the governing documents, Salerno misrepresented to Sport-BLX that Cypress was "my holding company" as opposed to the truth, which is that Cypress was a pooled investment vehicle.[3] As explained by Salerno at his deposition:

---

[3] According to the SEC, a pooled investment vehicle is an entity—often referred to as a fund—that an adviser creates to pool money from multiple investors. Each investor makes an investment in the

"[a]s a registered investment advisor my understanding of a pooled investment fund would be a grouping of multiple investments under one omnibus account" and that Cypress was an investment vehicle for multiple investors, that "accepted cash from multiple investors and today holds assets of investments" which he managed of behalf of those other investors. (SoF ¶ 5.)

In an effort to mislead, Salerno waited until Sport-BLX had already sent him its executed copies of the Agreements containing all of the negotiated and agreed terms before informing it:

> Joe, thanks for clarity … We are good … I am going to need wiring instructions. I saw that *my attorney didn't update agreements with my holding company name… I will do that and send over signed docs.* See you later… [SoF ¶ 1.] [italics added]

Importantly, Salerno did not indicate that he was "updating" the agreement with an investment vehicle ███████ ███████ ██████ ██ ████████ █ ████ ███████ ███████ ██. ██████ ████████████████████. (SoF ¶¶ 1, 2.) Instead, in a very short note after six weeks of negotiations, he claimed that he was updating the agreement with "*my* holding company name" (emphasis added), misrepresenting that he had personal or sole ownership when, in reality, Cypress had sixteen owners.

Salerno's statement was unequivocally false. "A false representation is not only an 'overt misrepresentation'—that is, a lie—but can also be a 'deliberate concealment of material facts, or [ ] silence in the face of a duty to speak'." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *32 (Del. Ch. Dec. 3, 2018). The same standard applies to the 10(b) claim and, particularly relevant here, "statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead …." *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 67 (S.D.N.Y. 2015) (a

---

fund by purchasing an interest in the fund entity, and the adviser uses that money to make investments on behalf of the fund. Investors generally share in the profits and losses in proportion to their interest in the fund. https://www.sec.gov/resources-small-businesses/cutting-through-jargon-z#P

statement under the "securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead"). By making a material misrepresentation concerning ███████████ so that he could change the buying party at the last moment, Salerno was under, and violated, a duty not to speak "partially or obliquely such that what [he] conveys becomes misleading." *Prairie Capital*, 132 A.3d at 52. If, somehow, the phrase "*my holding company*" could mean ██ ███████████████, obviously that description would remain a partial and oblique description of that fact, violating the standard articulated in *City of Westmoreland*, because it had little ability to inform but a high probability of misleading Sport-BLX, which in fact it did.

## B. Salerno Had Knowledge of Falsity and/or Reckless Indifference to the Truth

As Salerno admitted at his deposition, when he represented to the Company that he would simply insert "*my* holding company name" in the three agreements, Cypress was not a holding company but was in fact a pooled investment fund. (SoF ¶¶ 3, 4) Indeed, Salerno certified to the SEC that Cypress was actually a pooled investment fund just two months before he made that false representation. (SoF ¶¶ 3, 4.)

No reasonable jury could find that Salerno did not know his statement concerning "his holding company" was false and misleading when it was made. Even applying the reckless indifference standard, "[r]eckless indifference requires a 'conscious indifference to the decision's foreseeable results.'" *DRR, L.L.C. v. Sears, Roebuck & Co.*, 949 F. Supp. 1132, 1138 (D. Del. 1996) (citations omitted). It is indisputable that on the investment date, February 28, 2019, Salerno knew that ███████ ███████████ ████ ████████████████████ ███ █

██ █ ████ ████████████████ ███ █████ ██████ ;█ ████████ ████████ ;

███████ ███████ [SoF ¶6.]    Therefore, the evidence indisputably shows that Salerno had

knowledge that his representation that Cypress was "*my* holding company" was false when made, or at a bare minimum, that Salerno was reckless with the truth about Cypress when he spoke on it.

### C.    Salerno Had The Requisite Scienter

Scienter is established when the defendant knows a representation to be false or is recklessly indifferent to its truth. *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004). A "plaintiff in a common law fraud case 'must show that the . . . statements were made with contemporaneous knowledge or reckless disregard of the information which rendered misleading the statements actually made'." *Vichi* 85 A.3d at 810; *In re Wayport*, 76 A.3d at 326 (same).

In the context of a 10(b) claim, scienter is established where there is evidence that a defendant "[r]epresent[s] information as true while knowing it is not [or] recklessly misstat[es] information." *Altimeo*, 663 F. Supp. at 352; *Sec. & Exch. Comm'n v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 446 (E.D.N.Y. 2016) (granting summary judgment; finding scienter because defendant, "[m]ore than anyone, [] knew those misrepresentations were false"). Salerno knew that Cypress was not "his" holding company but in fact had sixteen owners.

Scienter can also be established in a 10(b) claim through "circumstantial evidence of conscious misbehavior or recklessness." *In re Tremont*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010) (citations omitted). On December 13, 2018, Salerno filed an SEC Form D Notice of Exempt Offering of Securities stating that Cypress had only three investors.[4] ██ ██ ██ █ ██
█████ ██ ██████ █ █████ █ ██████.

[SoF ¶ 6.] Salerno's was reckless with the truth when he failed to inform Sport-BLX that Cypress

---

[4] The Court may take judicial notice of Cypress' Form D pursuant to Federal Rule of Evidence 201(b)(2) and *Kramer v Time Warner Inc.*, 937 F2d 767, 774 [2d Cir 1991] (courts may take judicial notice of "public disclosure documents required by law to be filed, and actually filed, with the SEC"); *See also Wang v Cloopen Group Holding Ltd.*, 661 F Supp 3d 208, 235, n.8 [SDNY 2023] (judicial notice of documents on official government websites proper).

III ███ █ █████ █ █████████ ███ ██████, all while its Form D SEC filing showed only 3 investors. [SoF ¶ 6.] Salerno's efforts to hide the truth with a paper trail of misinformation further establishes scienter. *See United States Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*, 697 F. Supp. 3d 138, 169 (S.D.N.Y. 2023) ("The use of fabricated documents by itself shows that defendants acted with scienter."). Salerno only disclosed ████ █████████ in this litigation pursuant to this Court's Order of January 26, 2023, (Docket 77). [SoF ¶ 6.]

Salerno's continued concealment of the truth is further evidence establishing the required intent to deceive. *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 221 (2d Cir. 2000) ("it is sufficient to show that the defendant intentionally engaged in manipulative conduct." (internal quotations omitted)). Salerno not only refused to disclose Cypress' ownership until ordered by this Court to do so in discovery, he repeatedly stated, at various Board meetings over a period of months, that he would not do so because, "████ ██ ████ ██ ██ ████████ ██

██ ████ ███ ████████ ██ ████ ████ ██ ████ ████ █████

████████ [SoF ¶¶ 30, 31 (Nov. 26, 2019), *see also* ¶ 20 (Aug. 9, 2019).] Had Salerno disclosed

████ █████ █ █ ████ ██ █ █████, █████ █ ████████ ███ ████████

████████ ████ ██ █ ████████ ██ ████ ██ ██ ██ ███,

Sport-BLX would not have accepted his investment and would not have given him a Board Seat. Salerno knowingly made a false and misleading statement about Cypress by calling it "*my* holding company." The Court should find scienter proven as a matter of law.

**D.    Sport-BLX Relied On Salerno's False and Misleading Statements**

"In a non-disclosure claim arising from a duty to speak," such as here, the reliance analysis focusses on "whether the plaintiff justifiably relied on the statements that gave rise to the duty to speak and, if so, whether the omitted information would have been material to the plaintiff and affected the plaintiff's decision." *Vichi*, 85 A.3d at 814. Here, because he chose to represent,

unbidden and at the last minute, that Cypress was "*my* holding company," Salerno had a duty to speak truthfully about the nature of Cypress and its ownership, *Prairie Capital*, 132 A.3d at 52; *Vichi*, 85 A.3d 809, and "a duty to be both accurate and complete." *Caiola*, 295 F.3d at 331.

Sport-BLX's reliance was indisputably reasonable. As expected in connection with any such investment, Sport-BLX conducted due diligence on Mr. Salerno as the buyer and relied on Salerno's false and misleading statements in agreeing to accept his investment. Where a defendant's "own efforts at deception prevented the fraud from being detected during due diligence" a plaintiff who performed due diligence "satisfies its burden as a fraud plaintiff to show justifiable reliance." *Cobalt Operating, LLC v. James Crystal Enterprises, LLC*, 2007 WL 2142926, at *28 (Del. Ch. July 20, 2007), *aff'd*, 945 A.2d 594 (Del. 2008). The "fact that a plaintiff's diligence efforts do not uncover fraud does not render such efforts unreasonable, especially when the fraud was intentionally hidden." *Great Hill Equity Partners*, 2018 WL 6311829, at *33. Here, no amount of investigation could have uncovered the falsity of Salerno's representation given how persistently and intentionally he hid the truth. Salerno thus made it impossible for Sport-BLX to learn that his representations were false.

In addition, "a word in a contract is to be read in light of the words around it." *Smartmatic Int'l Corp. v. Dominion Voting Sys. Int'l Corp.*, 2013 WL 1821608, at *10 (Del. Ch. May 1, 2013); *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (contract interpretation must "constru[e] the agreement as a whole and giv[e] effect to all its provisions"). Salerno was shown as Purchaser throughout the Stockholder Agreement. At the eleventh hour, Salerno changed the name of the purchaser in one place but left his own name as purchaser everywhere else in the document. [SoF ¶ 7.] That Stockholder Agreement grants tag along, first refusal, and Board seat *rights to Salerno*, not to Cypress. [SoF ¶ 8.] Indeed, the Stockholder Agreement specifies conditions under which Mr. Hall and Mr. De Perio were obligated to vote their stock "in favor *of Salerno* being elected to

8

the Board." [SoF ¶ 8 (emphasis supplied).]  While an entity's representative may be elected to a Board, an entity itself cannot be.  The Stockholder Agreement side letter uses the word "Salerno" as a defined term for "Cypress," and Salerno argues that it did not grant rights to him personally. Conversely, Cypress complains that it was Salerno, not Cypress, who was wrongfully deprived of his Board Seat.  Yet, he induced Sport-BLX to believe those rights did belong to him, personally, and he later invoked them on his own behalf when he sought to exercise the side letter's contractual right of first refusal to purchase securities for himself.  On April 11, 2019, Salerno wrote Sport-BLX, "I would like to exercise *my right* to purchase *my Pro Rata Share* of the New Securities per paragraph 1.a of the side letter." [SoF ¶ 9 (emphasis supplied).].

The indisputable record evidence establishes that Salerno intentionally concealed material information from Sport-BLX, and continued to intentionally conceal that information until the Court ordered it to be produced in discovery

### E.   Sport-BLX Can Easily Establish Economic Harm and Loss Causation

The plaintiff in a fraud action must also "point to sufficient record evidence to show that the very facts misrepresented or omitted by [defendant] were a substantial factor in causing the [plaintiff's] economic loss." *McCabe v. Ernst & Young LLP*, 494 F.3d 418, 425–39 (3d Cir.2007). "In cases of fraud based on omission or nondisclosure, many courts have interpreted legal or proximate causation as including a 'loss causation' requirement, meaning that the loss ultimately must be caused by 'the materialization of the concealed risk'." *Vichi* at 816, quoting *McCabe*, 494 F.3d at 438–39 (element is comparable "to the common law's proximate causation requirement and extended to common law fraud claims").

Here, the indisputable record evidence establishes that the decline of the Company's value resulted from its inability to obtain a broker/dealer license. The inability to obtain that license was a direct result of "the materialization of the concealed risk" Salerno created when he became an

9

investor in the Company after making his false representation about Cypress' ownership.  Salerno



[SoF ¶ 6].

despite his knowledge that if Sport-BLX itself were unable to publicly identify and report Cypress'

individual beneficial owners it would be unable to proceed with a FINRA application.  At the

September 10, 2019 Board meeting, Mr. De Perio told Salerno: " Mr. Hall

similarly stated:

[SoF ¶ 10.] The risk Salerno

created through his affirmative misrepresentations and silence as to the truth concerning Cypress's

materialized when Sport-BLX was unable to obtain a FINRA license to pursue its

business plan.

As shown above, Plaintiff has established with indisputable evidence each element it would

have to prove at trial, and there is not a scintilla of competent record evidence to support any

argument otherwise.  Accordingly,  Sport-BLX is entitled to judgment as a matter of law on its

fraud and § 10(b) claims.

## II.    Indisputable Evidence Proves That Salerno Breached His Fiduciary Duty of Loyalty, And Cypress Has No Contrary Evidence

When Salerno took his seat on the Board, he knew that the Company's business plan was

that 100% of its revenue to be earned by its broker/dealer operations.  (SoF ¶ 12.)

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary

duty existed and (2) that the defendant breached that duty." *Palmer v Reali*, 211 F Supp 3d 655,

666 (D. Del 2016) (citations omitted).  Directors of Delaware corporations owe a fiduciary duty

of loyalty to the corporations they serve.  *See, e.g., Stone ex rel. AmSouth Bancorporation v. Ritter*,

10

911 A.2d 362, 370 (Del.2006). It is undisputed that Salerno was a corporate director. The first element is therefore satisfied.

The second element – breach – requires an examination of the fiduciary duty alleged to have been violated. "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Metro Stor. Intl. LLC v Harron*, 275 A3d 810, 842 (Del Ch 2022) quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). Loyalty requires directors "to promote the value of the corporation for the benefit of its stockholders." *In re Columbia Pipeline Group, Inc. Merger Litig.*, 299 A3d 393, 454 [Del Ch 2023] (internal quote omitted). This imposes an affirmative obligation, "[a]s a practical matter . . . to promote the value of the corporation for the benefit of the common stockholders in the aggregate," and a corporate director who "intentionally acts with a purpose other than that of advancing the best interests of the corporation" violates the fiduciary duty of loyalty owed to the corporation. *Id.* at 455 (cleaned up).

A "requirement to act in good faith," is "a subsidiary element, i.e., a condition, of the fundamental duty of loyalty." *Metro Stor. Intl*, 275 A3d at 842 quoting *Stone*, 911 A.2d at 370. Conduct taken "for some purpose other than a genuine attempt to advance corporate welfare or [which] is known to constitute a violation of applicable positive law" is bad faith conduct. *Gagliardi v. TriFoods Intern.*, 683 A.2d 1049, 1051 n.2 (Del. Ch. 1996) (examining bad faith in transaction context).

The rule is inflexible; there is no balancing between a director's interest and the corporation's. "There is no safe-harbor for divided loyalties in Delaware." *In re Walt Disney Co. Derivative Litig.*, 907 A2d 693, 751, 754 (Del Ch 2005), *aff'd*, 906 A2d 27 (Del 2006) ("It makes

no difference the reason why the director intentionally fails to pursue the best interests of the corporation.")

Following his investment, Salerno plainly violated his duty of loyalty by destroying the Company's ability to become a broker dealer, the centerpiece of its business plan. As he insisted to the Board at the time, and later again in testimony, Salerno decided not to cooperate in obtaining a FINRA license because to do so would not have been in Cypress's best interest. Salerno testified that not disclosing Cypress' ownership despite the destructive impact that would have on Sport-BLX's business, "at the end of the day was, it was my discretion *as a Cypress III manager*," and "I don't believe that I would have been doing the right thing by disclosing their names as partners of Cypress." [SoF ¶ 13] [emphasis added].

As part of the broker/dealer license application, on July 30, 2019, FINRA sent Sport-BLX Interrogatories requesting a list of all beneficial owners of its shareholders. (SoF ¶ 14.) On August 5, 2019, Mr. De Perio wrote Salerno asking him to provide that information for Cypress: "Mike … [FINRA] have asked us to note who the beneficial owners are of Cypress Holdings, the shareholder of record. Can you please advise so we can complete their interrogatories?" (SoF ¶ 15.) Salerno did not respond. Mr. De Perio followed up on August 8 with the same request: "We require this information for ongoing FINRA compliance and to advance our business," and again on August 9, 2019: "We would like your cooperation here to push forward the FINRA compliance to advance our business." (Sof ¶¶ 16, 17.) By August 9, 2019, Sport-BLX had the required information for all shareholders except Cypress (SoF ¶ 17) and Mr. Hall again wrote Salerno that the Company was '███ ██ ████                          ██y" and '██ ██ ████   ████ █ ███ ██ ███   █████   ████       ██████' (SoF ¶ 18.)

12

In plain, stark violation of his fiduciary duty, Salerno refused to provide this required information, responding instead: "we can discuss at the board meeting" and "[l]et's discuss as my concern is my estate plan structure which I am not inclined to make public." (SoF ¶¶ 19, 20.)

Salerno continued to prioritize his personal interest over that of Sport-BLX, and in doing so sabotaged Sport-BLX's entire business. On August 14, 2019, the Board, including Salerno, were informed that FINRA "registration requires, among other things," Sport-BLX to identify and disclose "its beneficial owners to FINRA, which includes . . . its indirect beneficial owners (e.g., the Company's stockholders) until the natural person owners of all entities in the chain of ownership have been identified and disclosed to FINRA." (SoF ¶ 22.) Salerno simply stated that he "did not intend to provide such beneficial ownership information to the Company." (SoF ¶ 24.)

On August 16, 2019, Salerno wrote that he would be willing to provide the required beneficial ownership information directly to FINRA, but not in such a way that the Company would be aware of it, stating "I am not willing to provide it to you or any other sport-blx directors as you do not have a right to this information at this time." (SoF ¶ 25.) At the September 10, 2019, meeting of the Sport-BLX Board, Mr. De Perio reported that



(SoF ¶¶ 26-27.) In addition, ██████

██████. (SoF ¶ 27.) Salerno again refused, and also rejected this advice from corporate counsel, stating that his own counsel would contact FINRA. (SoF ¶ 28.)

The Board discussed the issue again at the November 26, 2019, Board meeting. Mr. De Perio informed Salerno that ██████

██ Salerno retorted, "████████ ██ ██████ ███ ██ ████ █████ and "██ ████

██ ██ ██████ ███ ██████ ██ ███ ████ ██ ██ Mr. Hall

inquired: ██ ██ ██ █████ and Salerno replied: █████ ███ ████

██████ ██ ██ █████ ███ █████ (SoF ¶¶, 30, 31.)  Corporate directors

"ha[ve] an 'unremitting obligation' to deal candidly with their fellow directors." *HMG/Courtland*

*Properties, Inc. v. Gray*, 749 A.2d 94, 119 (Del. Ch. 1999).  Salerno breached his.

At the same meeting, the Company's outside counsel directly informed Salerno that

FINRA would require all information to be provided by Sport-BLX directly.  (SoF ¶ 32-33.)

███████ ████ ████ ███████ ██ █ ██ █████████

██ █ █ ███ ████ ███ ██ ███ █ █ ███

███ ████ █████ ███ ██ ██ ███ ███ ██ ██

██ ██ █████ ███ ██████ █████ ███ █ █ ████████

██ █████████ ███ (SoF ¶ 34.)

At the same meeting, Salerno acknowledged the truth of Mr. Hall's statement that failure

to obtain a broker/dealer license would harm the company, and that ██ ██ █████ ██ █

██████ ██ ██ ██ █ █ ██ ██ █ ███ ██ ████████ "

Salerno commented ████ █████ ███ ██ █ ███ ████████ ███ ██

████ ██ ██ █████ ███████ ██████ ' ███ (SoF ¶ 35). Yet,

he still would not disclose, ensuring Sport-BLX would not obtain the license.  (SoF ¶¶ 33, 34.)

In December 2019, Salerno teased the idea of disclosure but ultimately pulled back.

Specifically, on December 16, 2019, Salerno wrote: "I think [it] would make sense" to hold a

Board meeting to discuss the required disclosures. (SoF ¶¶ 36, 37.)  Salerno quickly reneged when

Mr. De Perio attempted to schedule that meeting, writing: "What are the topics for discussion?"

and that he was "no[t] sure what you are referring to."  (SoF ¶ 38.)

None of the above facts are in dispute. Indeed, Salerno himself admits to, secretly recorded, and testified to the evidence Plaintiff relies on here. This is a textbook example of a breach of the fiduciary duty of loyalty. Salerno knew that Sport-BLX's business plan was to become a broker dealer, indeed the pro forma financials he reviewed before investing shoed that 100% of Sport-BLX revenue was projected to come from broker/dealer operations. (SoF ¶ 12.) Salerno knew that if he did not disclose the identity of Cypress' owners to Sport-BLX, that plan was "███████████" he opined that ███████████████████████ ███████████████████████████████████████' ██████ and; he refused to disclose Cypress' ownership to the Company for the sole reason that ████████ ████████████████████████ Salerno placed Cypress and Cypress' limited partners over Sport-BLX, making his decision in "my discretion *as a Cypress III manager*," not as a Sport-BLX Director, and because "I don't believe that I would have been doing the right thing" to his partners in Cypress "by disclosing their names." (SoF 13) [emphasis added]. "There is no safe-harbor for divided loyalties in Delaware." *In re Walt Disney*, 907 A2d at 751. Sport-BLX is entitled to summary judgment on its claim for breach of the fiduciary duty of loyalty.

### III.    All Of Cypress' Claims Fail As A Matter Of Law And Should Be Dismissed

#### A.    Cypress's Misrepresentation Claims Should Be Dismissed

Cypress' Misrepresentation Claims at issue on this motion are for alleged violation of Section 10(b) (and Rule 10b-5) of the Securities and Exchange Act (Count 1) and State law fraudulent inducement and negligent misrepresentation claims (Counts 3 and 4). Cypress asserts that Defendants falsely promised that (1) its "Founders' Round" investment would be used for technology development, associated legal expenses, and marketing; (2) Salerno would maintain his seat on the board of directors so long as Cypress held a certain percentage of Sport-BLX stock;

15

and (3) Sport-BLX would serve as the manager of a fund that would invest in sports-related assets from which Sport-BLX would receive substantial fee revenue. Each of these claims fail.

### 1.  The 10b-5 Claim is Untimely

Cypress's 10b-5 claim is untimely. A plaintiff who discovers "the facts constituting the violation" must bring this claim no more than two years after its discovery. 28 U.S.C. § 1658(b). "The two-year statute of limitations begins to run when 'a reasonably diligent plaintiff would have discovered the facts constituting the violation.'" *Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-CV-7436 (LJL), 2022 WL 3100562, at *5 (S.D.N.Y. Aug. 3, 2022).

Cypress brought this action on January 11, 2022. Its 10(b) claim is untimely because it discovered all facts it relies well before January 11, 2020. It is undisputed that within three days of Cypress's investment, Salerno began secretly recording conversations with Hall and De Perio and Sport-BLX board meetings. [SoF ¶ 39.] In April 2019, Salerno accused Hall of "self-dealing" because Sport-BLX paid rent to Clinton Group for office space and equipment. [SoF ¶ 40]. In June 2019, Salerno threatened litigation and had a lawyer send a demand letter describing at least two potential claims: the (previously raised) rent allegation and a claim based on the existence of an alleged investment fund in which Sport-BLX would have a "partnership interest." [SoF ¶ 41].

Cypress also had access to a data room with ample financial information regarding Sport-BLX prior to investing, including Sport-BLX's January 2019 agreement with Consensys to spend over $2 million in technology expenses alone, as well as pro forma financials detailing the company's projected technology, legal, and marketing expenses in February 2019, and the exact amount of annual projected rent expense per year ($500,000) from 2019 onward. [SoF ¶¶ 41-45.] Several months later, in August 2019, Sport-BLX provided Salerno its June 30, 2019 financials, which confirmed that it had spent more than $2 million on technology, marketing, and legal expenses, and showed the amount of money spent on other expenses, including rent. [SoF ¶ 46.]

16

Cypress cannot assert that it did not have sufficient information regarding the loss of Salerno's board seat, the last aspect of Cypress's 10(b) claim, before January 11, 2020. Salerno was voted off the Sport-BLX board of directors on December 23, 2019 by the vast majority of Sport-BLX's unaffiliated shareholders, and the company sent his attorney the inspector's report detailing the votes for and against the various board nominees. [SoF ¶ 47.] Cypress had sufficient information to bring a timely claim based on the board seat but failed to do so.

Cypress had discovered all facts constituting its alleged 10b-5 claim before January 11, 2020, two years before filing suit. The facts are indisputable – in June of 2019 Cypress sent a demand letter alleging many of the same facts it alleges here. Summary judgment dismissing the claim as untimely should be granted.

### 2.   Cypress' Misrepresentation Claims Fail Pursuant To The Agreements' Integration and No-Reliance Clauses

Cypress's Misrepresentation Claims are defeated by the parties' clear contractual integration clause. Both of the SPAs agreed to by the parties contain an integration clause stating, "This Agreement . . . supersedes and replaces any and all prior written or oral agreements regarding the subject matter of this Agreement including, but not limited to, any representations made during any interviews, relocation discussions or negotiations whether written or oral." [SoF ¶ 48.] In addition, the SPAs also contain a clear anti-reliance provision stating, "The Purchaser is relying solely on his or her own counsel and advisors and not on any statements or representations of the Company or its agents for legal or other advice with respect to this investment or the transactions contemplated by this Agreement." [SoF ¶ 49.]

Salerno, a highly experienced investor, entered into the SPAs on behalf of Cypress with the aid of experienced counsel. Multiple drafts of the SPAs were exchanged before the parties reached a final agreement, with Salerno forwarding directly to Sport-BLX his attorney's requested

17

changes to the Agreements. [SoF ¶ 50.] Salerno reviewed with counsel, modified, and then expanded during negotiations the seller representations in the SPAs. [SoF ¶ 50.] Cypress alleges that Hall and De Perio made representations at various meetings in January 2019, before Cypress invested (*See* SAC ¶106), but even so it did not seek to include in the SPA's seller representations any of the statements in the FAQs which it now seeks to rely upon. Further, the FAQs contain entirely aspirational forward-looking statements and the slide decks Salerno reviewed in due diligence contain explicit disclaimers covering the "document and the verbal or written comments of any person presenting it," and stating that the information "is not complete and does not contain certain material information about Sport-BLX, Inc. and Clinton Group, Inc., including important disclosures and risk factors." [SoF ¶ 51] In any event, Cypress agreed after extensive negotiation that the SPAs specifically "superseded" any and all other representations.

An integration clause that clearly disclaims reliance and was negotiated by counsel for sophisticated parties, like the clause and parties here, precludes a claim of reliance on purported extra-contractual misrepresentations. *See, e.g.*, *Prairie Capital III, L.P. v Double E Holding Corp.*, 132 A3d 35, 50 [Del Ch 2015] (where "a clear integration clause of a negotiated agreement," disclaims reliance "on promises and representations outside of the agreement" party cannot allege that it "did rely on those other representations' [in a] fraudulent inducement claim."); *MidCap Funding X Tr. v. Graebel Companies, Inc.*, 2020 WL 2095899, at \*19 (Del. Ch. Apr. 30, 2020) ("Delaware's enforcement of clear anti-reliance provisions is implemented in a long line of cases"); *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 120 (S.D.N.Y. 2010) (finding plaintiff's reliance unreasonable as a matter of law where clear integration clause was negotiated between sophisticated parties); *Prime Mover Cap. Partners, L.P. v. Elixir Gaming Techs., Inc.*, 793 F. Supp. 2d 651, 667 (S.D.N.Y. 2011) (PSLRA safe harbor provision in 10b-5 claim protects forward-looking statements "accompanied by meaningful cautionary language.").

Furthermore, a fraud claim based on a promise of future performance, as the claims are here, is foreclosed even by an integration clause that lacks explicit anti-reliance language. *S'holder Representative Servs. LLC v. Albertsons Companies, Inc.*, 2021 WL 2311455, at *12 (Del. Ch. June 7, 2021) (integration clause without such language is "sufficient to bar a fraud claim based on expressions of future intent or future promises."); *Black Horse Cap., LP v. Xstelos Hldgs., Inc.*, 2014 WL 5025926, at *24 (Del. Ch. Sept. 30, 2014) (dismissing fraud claim because it was "clear that [plaintiffs] promised, in several clear integration clauses of negotiated agreements, that they would not rely on promises and agreements outside of those writings").

The SPAs here do include both clear anti-reliance and integration clauses. These contractual terms preclude Cypress from showing reasonable reliance as a matter of law, and its Misrepresentation Claims should therefore be dismissed.

### 3.    Cypress' Negligent Misrepresentation Claim Is Based On Alleged Future Promises And Thus Fails As a Matter of Law

Cypress's negligent misrepresentation claim fails as a matter of law. "Negligent misrepresentation . . . 'cannot lie where the underlying representations take the form of promises'" and like the other claims, this claim is also premised on Hall and De Perio's alleged promises of future acts. *Grunstein v Silva*, 2009 WL 4698541, at *14 [Del Ch Dec. 8, 2009] (a defendant "cannot . . . unknowingly or negligently" know in the present that it will breach in the future); *Dunn v FastMed Urgent Care, P.C.*, 2019 WL 4131010, at *12 [Del Ch Aug. 30, 2019] (dismissing negligent misrepresentation claim based on "promise to redraft [a document] at a later time"); *Boulden v Albiorix, Inc.*, 2013 WL 396254, at *16 [Del Ch Jan. 31, 2013], as rev (Feb. 7, 2013) ("because [plaintiff]'s negligent misrepresentation claim is based solely on a future promise, that claim is dismissed.") The three "promises" Cypress alleges all relate solely to a future act, and so its negligent misrepresentation claim fails as a matter of law.

19

### 4.   Cypress Cannot Establish That Any Alleged Misrepresentation Caused Any Damages

Cypress cannot establish damages, or that any claimed damages were caused by the alleged misrepresentations at issue, as its claims require. *See, e.g.*, *Vichi,* , 85 A.3d 762762 (Del. Ch. 2014) (under Delaware law, both fraud and negligent misrepresentation claims require a showing of causally related damages to the plaintiff); *Microbot Med., Inc. v. Mona*, 688 F. Supp. 3d 88, 104 (S.D.N.Y. 2023) (economic loss and loss causation are elements of a 10b-5 claim).

Cypress has outlined its theory of damages for each of its claims. On its fraud claims, Cypress asserts that it seeks out-of-pocket damages, which it claims consist of "the difference between the value of the consideration it paid for its Sport-BLX stock ($1,000,000.00) *and the value of that stock at the time of trial*." (Dkt. No. 161-10 at 5, 6 (emphasis added.).)[5] This damages theory is invalid as a matter of law, as it fails to account for the myriad intervening acts unrelated to the alleged misrepresentations that could have affected the stock's value, and is contrary to the established measure of out-of-pocket damages for such claims: "the difference between the price paid for the security and its true value absent the fraud *on the date of the transaction*." Instead, Salerno's rejection of a $1.6 million buy-out offer is indisputable evidence that in late May 2019, he valued Cypress' investment at price substantially higher than the $1,000,000 he had paid. [SoF ¶ 52.] *Panos v. Island Gem Enterprises, Ltd.*, N.V., 880 F. Supp. 169, 176 (S.D.N.Y. 1995) (regarding federal fraud claim) (emphasis added); *LCT Cap., LLC v. NGL Energy Partners LP*, 249 A.3d 77, 91 (Del. 2021), *corrected* (Mar. 4, 2021) (under Delaware law, "[o]ut-of-pocket damages are equal to 'the difference between what [the plaintiff] paid and the actual value of the item' that the plaintiff received"); *see also In re Orchard Enterprises, Inc. S'holder Litig.*, 88 A.3d

---

[5] Cypress asserted the same measure of damages for Count Four, negligent misrepresentation, but referred to its measure of damages simply as compensatory damages.

1, 42 (Del. Ch. 2014) ("'out-of-pocket' damages . . . are generally measured by the harm inflicted on the plaintiff at the time of the wrong.").

In opposition to this motion, Cypress will not be able to show any evidence suggesting that its investment decreased in value due to the alleged misrepresentations. Cypress does not have an expert who will opine as to how Defendants' alleged misrepresentations caused a diminution in value of Cypress's Sport-BLX investment and, if so, by how much. It is well-established that when, as here, a plaintiff claims that certain misrepresentations lowered the value of its investment, "expert testimony is almost always necessary to establish the amount of and the existence of actual damages." *In re Reliance Sec. Litig.*, 2002 WL 35645209, at \*10 (D. Del. Feb. 8, 2002), *opinion corrected*, 2002 WL 35645207 (D. Del. Mar. 20, 2002) (discussing 10b-5 claim). That is because of "the difficulties inherent in determining" the value of the stock and the difference in value that was "caused by the misleading statements and omissions." *Id.*; *see also Burger v. CPC Int'l, Inc.*, 76 F.R.D. 183, 187–88 (S.D.N.Y. 1977) ("plaintiff . . . [must] prove damages caused by the alleged omissions. Such proof would involve a very complex set of facts and require expert testimony.") This is especially true in the case of an early-stage business, *i.e.*, a startup like Sport-BLX, which lacked an established track record, and for which a lay jury would be unable to determine any amount of harm absent the assistance of expert witnesses.

Accordingly, because Cypress' damages theory is legally incorrect and it has no damages expert who can opine on the difference between what it paid for Sport-BLX stock and the alleged depreciation in value caused by Defendants' misrepresentations, summary judgment should be granted in Defendants' favor on all of Cypress's Misrepresentation Claims.

### 5.    Cypress Cannot Establish Scienter

Finally, Cypress's Misrepresentation Claims fail because Cypress cannot establish scienter, an element of each. Scienter requires "that the alleged misrepresentations were known to

be false when made." *Trifecta Multimedia Holdings Inc. v WCG Clinical Services LLC,* 318 A3d 450, 464 [Del Ch 2024] ("failure to perform under a contract does not support an inference of fraud" without facts showing that "at the time the promise was made the speaker had no intention of performing"); *Mills v Polar Molecular Corp.*, 12 F3d 1170, 1176 [2d Cir 1993] (Dismissing fraud claim because "no fact probative of [defendant's] intent at the time he made the promises".) Cypress cannot meet its burden on this motion because it cannot come forward with specific evidence supporting an inference that when Hall or De Perio made any promise, they "*had no intention performing*." *See Trifecta*, 318 A3d at 464 (emphasis added) *see also Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *12-13 (Del. Ch. June 6, 2018) (dismissing fraud claim based on "representations regarding revenue projections" because no evidence defendants "*knew* or *believed* the representations were false.").

## B.     Cypress's Remaining Direct Claims Should Be Dismissed

The Court has ordered that Counts Two and Five are now based solely on Salerno having been denied reelection to the Sport-BLX Board. *See* Dkt. No. 180. Count Two alleges a breach of the covenant of good faith and fair dealing against Hall, De Perio, and Sport-BLX, and Count Five alleges a breach of fiduciary duty against Hall and De Perio.

To establish a claim for breach of the covenant of good faith and fair dealing, Cypress must identify (1) a specific implied contractual obligation, (2) a breach of that obligation by the defendant, and (3) resulting damages. *Blaustein v. Lord Baltimore Capital Corp.*, 2012 WL 2126111, at *5 (Del. Ch. Ct. May 31, 2012).[6] Cypress cannot meet any of these elements. Summary judgment should be granted and its claim dismissed.

---

[6] Choice-of-law clauses "that govern a contract also govern related claims for breach of the implied covenant of good faith and fair dealing." *ARS Kabirwala, LP v. El Paso Kabirwala Cayman Co.*, No. 1:16-CV-6430-GHW, 2017 WL 3396422, at *3 (S.D.N.Y. Aug. 8, 2017). The Side Agreement on which Cypress bases this claim states that its terms are controlled by the SPAs, which are governed by Delaware law. Thus, Delaware law governs this claim.

22

The Side Agreement states that Hall and De Perio would vote their shares in favor of Cypress so long as Cypress held at least 2.5% of the outstanding Sport-BLX stock. [SoF ¶ 53.] Cypress cannot argue that the Side Agreement contained an implied contractual term that guaranteed Cypress a seat on the board of directors. A plaintiff "cannot base a claim for breach of the implied covenant on conduct authorized by the agreement." *Nemec v Shrader*, 991 A2d 1120, 1125-26 (Del 2010). Here, Cypress' bargained-for tag along rights provision authorizes the Founders "to sell shares of the Company's common stock that represent more than fifty percent (50%) of the aggregate number of shares then outstanding to a third party purchaser." [SoF ¶ 137.] "The test for the implied covenant" focuses on whether "what was expressly agreed upon makes it clear that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of." *Airborne Health, Inc. v Squid Soap, LP*, 984 A2d 126, 146 [Del Ch 2009] [quote omitted]; *Bos. Consulting Grp., Inc. v. GameStop Corp.*, 2023 WL 2683629, at *13 (D. Del. Mar. 29, 2023) ("implied covenant will not infer language that contradicts a clear exercise of an express contractual right"). Cypress cannot defeat this motion by arguing that it would have sought to negotiate such a term – it must show that Hall and De Perio would have obligated themselves to forever hold the stock, and that it cannot do. The implied term Cypress seeks would also be nonsensical, because neither Hall, De Perio, nor any shareholder of any corporation would be able to guarantee a seat on a board of directors in perpetuity, and the claim can apply only "where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer." *Airborne* Health, 984 A2d at 146. Count Two should be dismissed.

Cypress also cannot establish any non-speculative damages from the loss of a board seat. Placing a monetary value on the Sport-BLX board seat, which was not a compensated position, is an inherently speculative endeavor, and its claim should be dismissed on this basis as well. *Siga Tech.,*

*Inc. v PharmAthene, Inc.*, 132 A3d 1108, 1152 [Del 2015], as corrected (Dec. 28, 2015) (damages may not be "based on mere 'speculation or conjecture'" when a plaintiff fails to prove them)

Count Five alleges a breach of fiduciary duty against Hall and De Perio. To establish breach of a fiduciary duty, Cypress must demonstrate that "(1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Palmer v Reali*, 211 F Supp 3d 655, 666 (D. Del 2016) quoting *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).[7]

It is well-settled "that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim." *Nemec*, 991 A2d at 1129; *Stewart v. BF Bolthouse Holdco*, LLC, 2013 WL 5210220, at *12 (Del. Ch. Aug. 30, 2013) ("Delaware law recognizes the primacy of contract law over fiduciary law"). Fiduciary duty claims based on "the same facts that underlie the contract obligations" are foreclosed as superfluous. *Id.*

Here, Cypress's breach of fiduciary duty claim is foreclosed because Hall and De Perio's contractual obligation to vote in favor of seating Salerno on the board is a contractual obligation negotiated and memorialized in the Side Agreement, and that contractual obligation governs all aspects of Cypress's alleged right to a board seat. Indeed, Cypress's breach of the covenant of good faith and fair dealing claim, sounding in contract, is based on the factually identical premise. The Court should rule that Cypress' claims based on Salerno's loss of a board seat are disputes that will be treated as claims based in contract and should dismiss its fiduciary duty claim.

## C.    Cypress's Derivative Claims Should Be Dismissed

In Counts 6, 7 and 9 through 12, Cypress alleges unjust enrichment, tortious interference, and aiding and abetting breach of fiduciary duty claims derivatively against Sport-BLX Securities and

---

[7] "Under New York's choice-of-law rules, the law of the state of incorporation governs an allegation of breach of fiduciary duty owed a corporation." *McGowan v. Stanley*, No. 22CV6971 (DLC), 2023 WL 6694504, at *5 (S.D.N.Y. Oct. 12, 2023). Because Sport-BLX is a Delaware corporation, Delaware law governs the fiduciary duty claim.

Clinton Group. These claims are based on common allegations, which all of the evidence shows to be indisputably false, and each fails for this reason.

### 1.    Cypress' Unjust Enrichment Claims Fail

Counts Six and Seven allege claims for unjust enrichment, specifically that Sport-BLX Securities was unjustly enriched when it purchased the Company's software.  (Compl. ¶ 146.) This Court has ruled that Count Six is a derivative, not a direct, claim. (Dkt. 180, pp. 17, 22)

An unjust enrichment claim requires a plaintiff to prove "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v Schrader*, 991 A.2d 1120, 1130 (Del.2010) ("Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.")

Cypress cannot show that Sport-BLX Securities was enriched or that Sport-BLX Inc. was impoverished by the sale of the Platform, and it cannot show that Sport-BLX Securities' retention of the Platform offend equity and good conscience, and it does not have a viable damages claim.

Defendants' software engineering and computer science expert analyzed the Platform in detail and compared it to other open source centralized and decentralized online trading platforms from 2019 to 2021. (SoF ¶ 84.)  He found that the Platform was of "average quality" and that, combined with the wide availability in 2021 of similar, higher-quality and freely available open-source platforms, this rendered $225,000 a fair price for the Platform at the time of the sale. (SoF ¶¶ 84, 86.)  This undisputed evidence forecloses any question of fact for trial: Cypress has submitted no evidence for a jury to consider regarding the Platform's value at the time of the sale.

In addition, when it paid $225,000 cash for the Platform, Sport-BLX Securities was entitled under the Subscription Agreement to take it without payment of further consideration, because the

25

Company had become unable to provide design, development, customization, implementation, professional or other project services related to the Platform, and had thus stopped performing its obligations under the Agreement. (SoF ¶ 72.) The Company's inability to perform resulted from its loss of technology personnel, such that "the only real ongoing development was people at Sport-BLX Securities because Sport-BLX, Incorporated couldn't fulfill any of its obligations." (*Id.*) There is no contravening evidence for Cypress to present to a jury. The first element indisputably fails because Sport-BLX Securities was not enriched by the sale,.

Cypress also cannot meet the second element because as the undisputed evidence shows, Sport-BLX, Inc. received far more than it could have in a sale to an unrelated party. While Cypress falsely alleges that "Sport-BLX sold its most valuable asset, the code for its proprietary trading platform, to S-BLX Securities for a total of $225,000" (SAC at ¶ 89), the publicly filed 10-K on which Cypress relies shows that the Company received a total of $1,599,000, including $225,000 cash and $1,374,000 in debt forgiveness. (SoF ¶¶ 79-81.) Compared to the only valuation evidence in the record, the Company thus received a benefit of at least $1,374,000 *more* than fair market value from the sale of the Platform to Sport-BLX Securities. Sport BLX Inc. was not impoverished by the sale of its technology (and had paid for significant development through the subscription agreement). The second element fails.

Third, Cypress cannot show that Sport-BLX Securities' retention of the Platform offended equity or good conscience. "[U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when . . . circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 NY3d at 790. Here, there can be no such equitable obligation because Salerno had made the sale necessary in the first place by sabotaging the Company's efforts to raise capital through baseless allegations of self-dealing (SoF ¶¶ 56-59; 74-75), for which he refused to provide support despite repeated requests. (SoF ¶¶

26

55-56, 59-61.) After Salerno rebuffed repeated requests to discuss the impact of his allegations on the capital raise, Mr. Hall wrote Salerno that if he continued to refuse, "the fate of the company is sealed." Mr. Hall explained to the Board on October 20, 2021 that as a result of a "recent email from [Salerno], which made accusation about Mr. Hall and SportBLX Inc. . . . [t]here would be no way to raise capital in the public market," and the Company was in fact forced to abandon its capital raise. (SoF ¶¶ 56, 58.) Following the Board meeting and on the same day, Mr. Hall wrote to Salerno: "In the meantime the company is out of cash and only one employee remains temporarily. If you have interest in the software please express it to the board." (SoF ¶ 59.) Sport-BLX then obtained $1,599,000 in consideration for the rights to software which it had already turned over to Sport-BLX Securities, and to which Sport-BLX Securities was entitled *without payment of any further consideration at all*. (SoF ¶ 72.) The third element, which is not relevant here in any event, also fails. The claim should be dismissed.

Finally, Cypress argues that damages should be based on the difference between the cost of building the technology in 2019 and the sale price in late 2021 [Dkt. No. 161-10.], which is legally incorrect. "[R]estitutionary recovery" is the proper measure of compensation in unjust enrichment and "not, as in damages, the harm to the plaintiff, but rather the benefit received by the defendant." *Garfield*, 277 A.3d at 344. This is because "[a] profit-based measure of unjust enrichment reflects the foundational principle that it would be inequitable that a wrongdoer should make a profit out of his own wrong." *Liu v Sec. and Exch. Commn.*, 591 US 71, 79-80 (2020). There is no evidence that SportBLX Securities profited by purchasing software which it already possessed and to which it had full usage rights.

### 2.    **Cypress' Tortious Interference And Aiding and Abetting Claims Fail**

A cause of action for tortious interference requires proof of: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such

27

contract, (4) without justification, (5) which causes injury." *Schiff v. ZM Equity Partners, LLC*, No. 19cv4735, 2020 WL 5077712, at *11 (S.D.N.Y. Aug. 27, 2020) (quoting *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013)).   In Count Nine, Cypress alleges that Clinton Group interfered with the Side Agreement by "facilitat[ing] an investment by Orix" into GlassBridge and thereby diverting fees that should have gone to Sport-BLX, and that by accepting rent payments it somehow violated an agreement that Cypress' investment would be used for technology development.   In Count Ten, Cypress alleges that Sport-BLX Securities interfered with Sport-BLX's "business plan" and an un-named "Agreement" by selling Sport-BLX's software for below market value.   Both claims fail for a host of reasons.

First, Cypress cannot identify a specific contractual provision that was breached.   Neither the Side Agreement, nor any of Cypress's agreements with Sport-BLX or the Founders mention success fees.   Because there was no "actual breach of contract," Clinton Group and Sport-BLX Securities cannot be liable for tortious interference. *Beard Research, Inc. v. Kates*, 8 A.3d 573, 607 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010).

In any event, the success fee paid to Clinton Group was not a lost opportunity of Sport-BLX because GlassBridge's transaction with non-party Orix PTP Holdings, LLC ("Orix") had nothing to do with sports, tokenization, or trading platforms. Instead, GlassBridge merely sold a minority stake of its former subsidiary Adara, together with two promissory notes, to Orix, before unwinding the transaction and re-purchasing the Adara shares in 2020. (SoF ¶ 99.) And the "success fee" in question related to consulting work that Clinton Group did to resolve an un-related dispute with the Pension Benefit Guaranty Corporation pursuant to an agreement entirely separate from Sport-BLX. (SoF ¶¶ 96, 98).

      Dated: New York, New York
          December 3, 2024

WYLIE STECKLOW PLLC


Wylie Stecklow, Esq.
Jon Avins, Esq.
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
New York, NY 10019
(212) 566 8000
ECF@WylieLAW.com