MINUTES OF THE SPECIAL MEETING
OF THE BOARD OF DIRECTORS
OF SPORT-BLX, INC.

**September 10, 2019**

The Board of Directors (the "*Board*") of Sport-BLX, Inc. (the "*Corporation*") held a special meeting (the "*Meeting*") on Tuesday, September 10, 2019 commencing at approximately 3:30 pm Eastern Time pursuant to a call made by the President of the Corporation:

All of the members of the Board were present at the Meeting without objection to the calling or convening of the Meeting:

      George E. Hall, Executive Chairman
      Joseph A. De Perio
      Francis A. Ruchalski
      Michael Salerno
      Daniel A. Strauss

Mr. G. Hall presided at the Meeting.

Mr. De Perio served as Secretary of the Meeting.

The Executive Chairman reported that notice of the Meeting was waived by each director present in accordance with the Bylaws, that a quorum was present and that the Meeting was open.

### Approval of Prior Meeting's Minutes

Mr. G. Hall led a discussion on the draft of minutes for the Corporation's regular quarterly board meeting dated August 14, 2019. The draft minutes were presented to members of the Board on August 30, 2019. All of the members of the Board affirmed their approval of the draft as presented with the exception of Mr. Salerno who stated his desire to review the draft with his legal counsel and further stated that, in his opinion, several sections required edit. Mr. De Perio inquired from Mr. Salerno what specific sections were in question, and Mr. Salerno stated his desire to present comments at a later date. Mr. De Perio also reminded the entire Board that the draft minutes were presented 10 days in advance of the Meeting, and that, as a matter of good corporate governance, members of the Board should comment prior to the meeting of the Board. Upon a motion duly made and seconded, the members of the Board present resolved to adopt the minutes in a vote of four in favor, one against, the one against being the vote cast by Mr. Salerno.

### FINRA Application

Mr. G. Hall led a discussion of the existing application for the registration of the Company's wholly-owned subsidiary, BLX Trading Corp. ("*BLX Trading*"), as a broker-dealer. Mr. De Perio led a discussion of BLX Trading's current activities in furtherance of the existing application for registration as a broker-dealer. Mr. De Perio noted the multiple requests made to Cypress Holdings III, L.P. ("*Cypress*"), an entity which Mr. Salerno has represented that he controls, to identify and disclose the identity of its beneficial owners with unsuccessful results (Exhibit A).

Confidential – Subject to Protective Order      SPORTBLX0264404

Mr. G. Hall informed the Board that he sought the advice from the Company's broker-dealer advisor, Ken Norensburg, CEO of Luxor Financial Group, who had been working with the Company for several months. Mr. G. Hall reported that a failure of Cypress to identify and disclose its beneficial owners would disqualify any broker-dealer application by BLX Trading. Mr. G. Hall cited advice from Ken Norensberg that the topic of Cypress' beneficial ownership was "not a topic that could be avoided," and that FINRA's mandate is to ensure the safety of financial markets for the public and the compliance of its members. Mr. G. Hall reported that Mr. Norensberg also noted that any other response to the FINRA interrogatory of beneficial ownership would be fatal to any BLX Trading broker-dealer application.

Mr. G. Hall noted that prior to the Meeting, there was an email exchange between Mr. Salerno and himself regarding Cypress (Exhibit B). In the email, Mr. Salerno requested that he speak to FINRA directly. Mr. Salerno further stated in the email that the members of the Board "do not have a right to this information at this time." In addition, Mr. Salerno ardently reiterated his position that Cypress was not willing to identify and disclose its beneficial owners, notwithstanding the requirements of any broker-dealer application by BLX Trading. Mr. G. Hall then stated that it was in the best interests of the Company that no board member or his investment entity, if relevant, should contact to FINRA regarding the Company's matters without the expressed consent of the Company.

Mr. G. Hall informed the Board that he sought the advice of the Company's outside counsel, William Mack, Esq., of Greenberg Traurig, LLP ("**GT**"), in these matters. Mr. De Perio noted that Mr. Mack is a co-chair of the Financial Regulatory and Compliance Practice of GT, and prior to his association with GT, was a Principal Counsel for Enforcement at FINRA. Mr. G. Hall reported to the Board that Mr. Mack's view was that it was inappropriate for FINRA to have a conversation or meeting with a shareholder of an applicant, and that such shareholder would have no standing in the matters of an application made by a corporate entity such as BLX Trading. Mr. G. Hall stated that Mr. Mack added that the SEC rules and FINRA regulations permit FINRA to require that an applicant for FINRA membership (*e.g.*, BLX Trading) identify and disclose its beneficial owners, including all entities in the chain of ownership until reaching natural persons. Mr. G. Hall also reported to the Board that Mr. Mack opined that any other response to the FINRA interrogatory of beneficial ownership would be fatal to any BLX Trading broker-dealer application.

Mr. Salerno suggested that a possible solution was for his and Cypress' outside counsel to contact FINRA. Mr. G. Hall responded that his was not a viable solution since BLX Trading was required to submit the identity of its beneficial owners.

**Alternate Path Forward**

Mr. G. Hall led a discussion of the Company's business plan to date and the current requirement to alter that business plan to preserve the pursuit of shareholder value creation. Given that the Company's inability to disclose Cypress' beneficial owners, and therefore, the Company's beneficial owners, would preclude BLX Trading from successfully applying to register as a broker-dealer, it was his view that the best course of action forward was to refocus the business plan of the Company. Mr. G. Hall noted that the Company could focus on technology development and look to monetize its technology in alternate ways. Mr. G. Hall also suggested the Company could enter into a licensing agreement for its platform to a third-party broker-dealer or another broker or dealer formed by stockholders of the Company who are willing and able to identify and disclose their beneficial owners as required for a successful broker-dealer application. A discussion ensued, and several members remarked that the Company potentially could prosper by monetizing its technology in other avenues other than sports.

A discussion ensued. Upon a motion duly made and seconded, the members of the Board present unanimously resolved to take steps to look at alternative ways to monetize the Company's technology and

examine adaptations to the Company's business plan. The executive team pledged to revert with structuring options as soon as possible.

Thereafter, being no further business before the Board. The Meeting adjourned at 4:15 p.m. Eastern Time.

_____
George E. Hall, Executive Chairman

ATTEST:

_____
Joseph A. De Perio, President and Secretary

Confidential – Subject to Protective Order                                        SPORTBLX0264406