MINUTES OF THE REGULAR QUARTERLY MEETING
OF THE BOARD OF DIRECTORS
OF SPORT-BLX, INC.

**November 26, 2019**

The Board of Directors (the "***Board***") of Sport-BLX, Inc. (the "***Corporation***") held a regular meeting (the "***Meeting***") on Tuesday, November 26, 2019 commencing at approximately 4:00 pm Eastern Time pursuant to notice provided pursuant to the Company's Bylaws:

All of the members of the Board were present at the Meeting without objection to the calling or convening of the Meeting:

>George E. Hall, Executive Chairman
>Cesar A. Baez
>Joseph A. De Perio
>Christopher Johnson
>Francis A. Ruchalski
>Michael Salerno
>Daniel A. Strauss

John Hall, the Company's Executive Vice President of Operations also participated in the Meeting.

William Mack, Esq. and Kelly Terrible, Esq. of Greenberg Traurig, LLP ("***GT***") the Company's outside counsel participated in the Meeting as described below.

Mr. G. Hall presided at the Meeting. Mr. J. Hall served as Secretary of the Meeting.

The Executive Chairman reported that notice of the Meeting was not required pursuant to the Bylaws, that a quorum was present and that the Meeting was open.

**Approval of Prior Meetings' Minutes**

Mr. G. Hall invited members of the Board to comment on the respective drafts of minutes for the Corporation's special Board meetings dated September 10, 2019 ("**September 10 Minutes**") and November 22, 2019 ("**November 22 Minutes**"). With respect to the November 22 Minutes, the Board discussed several comments, and upon a motion duly made and seconded, the members of the Board present unanimously resolved to adopt the November 22 Minutes subject to the incorporation of comments discussed.

With respect to the September 10 Minutes, Mr. Salerno stated he felt there were inaccuracies in the draft and stated his desire to review the draft with his legal counsel and further stated that, in his opinion, several sections required edit. Mr. G. Hall encouraged Mr. Salerno to share with the Board what specific sections were in question, and Mr. Salerno stated his desire to present comments at a later date. Mr. De Perio noted that the members of the Board should present comments in advance of the meeting so that both an effective dialogue and closure could be achieved. Mr. Salerno stated he had comments to the Sections "FINRA Application" and "Path Forward." Mr. Salerno stated his desire to add to the September 10 Minutes that

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                          SPORTBLX0265495

Mr. Salerno asked if Stockholders having an interest in a related party transaction that is submitted to the Company's Stockholders were entitled to vote on such transaction. Mr. De Perio stated that the determination would depend upon both the consideration of facts and circumstances and the advice of the Company's counsel. Having concluded a discussion, Mr. De Perio suggested that the resolution designating the RPTC be brought to a vote of the Board. Mr. Salerno suggested that he required until December 10 to review the proposed resolutions with his counsel. Mr. De Perio suggested that a Member of the Board should make informed decisions based on his own merit and opinion and not consistently seek to delay decision making on matters for 10 days and thereby prevent the Company from operating efficiently. Mr. De Perio offered to recess the meeting to give Mr. Salerno time to review the two pages of resolutions. Mr. G. Hall suggested that the Board ask questions to Mr. Mack and Ms. Terribile of Greenberg Traurig, the Company's outside counsel, to better understand the proposed resolution. Mr. De Perio emailed Mr. Mack and Ms. Terribile to join the call.

In the interim, while waiting for members of Greenberg Traurig to join the call, Mr. Salerno led a discussion on the Company's 401k (or lack thereof) and any relationships intertwined with Clinton Group, Inc. ("**Clinton Group**") and GlassBridge Enterprises, Inc. ("**GlassBridge**") related to 401k matters. A discussion ensued. Mr. Ruchalski detailed the Company's plan to deal with such matters, and Mr. Salerno offered his assistance going forward on such matters.

Mr. G. Hall suggested voting on the resolutions designating the RPTC. He further stated that the power and authority delegated to the RPTC could be amended from time to time by the Board. Upon a motion duly made and seconded, the Members of the Board present unanimously resolved to adopt the resolutions designating the RPTC set forth in Exhibit A attached hereto and incorporated herein by reference.

Mr. G. Hall led a discussion of the directors to be appointed to the RPTC. Mr. G. Hall nominated Mr. Baez to the RPTC, and the nomination was seconded. A brief discussion ensued on Mr. Baez's suitability. Upon a motion duly made and seconded, the Members of the Board present unanimously resolved to appoint Mr. Baez to the RPTC. Mr. G. Hall nominated Mr. Johnson to the RPTC. A brief discussion ensued on Mr. Johnson's suitability. Upon a motion duly made and seconded, the Members of the Board present unanimously resolved to appoint Mr. Johnson to the RPTC. Mr. Salerno then nominated himself to the RPTC. This issue was tabled, as Mr. Mack and Ms. Terribile of GT joined the Meeting at that time.

Mr. Mack joined the Meeting first and stated that questions pertaining to Delaware law should be handled by Mr. Terribile. Mr. G. Hall then diverted the discussion at hand to discuss the Company's withdrawn FINRA application. Mr. G. Hall stated Mr. Salerno's suggestion that Company's counsel and the counsel of Mr. Salerno and Cypress should call FINRA together and find a solution. Mr. Mack stated that this was not a viable path and a "highly irregular" solution as (i) FINRA would likely not take such a call to find a "workaround," and (ii) the applicant (*e.g., the Company*) would have to be made aware of the identity of Cypress's stockholders in any event because FINRA would request that the matters discussed on any call about an application be submitted to them in writing and the only party who can make formal submissions as part of a membership application process is the applicant. Mr. Mack further stated that the suggested "workaround" violated the spirit of FINRA's desire to monitor a broker-dealer and any dealings with its stockholders. Mr. Mack continued and said that FINRA would not permit an application to proceed without the applicant being able to identify and disclosure its ultimate beneficial owners. Mr. Salerno suggested that Mr. Mack take a call from Cypress's counsel. Mr. Mack stated that, while there was no pending application to discuss, he would be happy to take a call from Cypress's counsel.

Ms. Terribile joined the Meeting and summarized the proposed resolutions designating the RPTC, the judicial scrutiny applicable to certain related party transactions under the entire fairness standard under Delaware lawm and answered a number of questions from the Board. Mr. Salerno inquired whether