MINUTES OF THE REGULAR MEETING
OF THE BOARD OF DIRECTORS
OF SPORT-BLX, INC.

**December 15, 2021**

The Board of Directors (the "*Board*") of Sport-BLX, Inc. (the "*Corporation*") held a meeting (the "*Meeting*") on Wednesday, December 15, 2021 commencing at approximately 4:30 pm Eastern Time pursuant to notice provided pursuant to the Company's Bylaws:

The entire board was present at the Meeting without objection to the calling or convening of the Meeting

      George E. Hall, Executive Chairman
      Peter Rawlins
      Joseph A. De Perio
      Christopher Johnson
      Francis A. Ruchalski
      Daniel A. Strauss

Mr. Hall presided at the Meeting. Mr. Rawlins recorded the meeting minutes.

Mr. Hall informed the board members that Cesar Baez has resigned from his board position. Mr. Hall opined that given the operations of the company, the board may be larger than necessary, and mentioned that he would likely suggest new CEO take over in the near future, to further the company business.

Mr. Hall reiterated to the board that the Managing Member of an entity that is a shareholder in SportBLX Inc. had made allegations of "syphoning money from the company". Mr. Hall informed the board that he had instructed this individual to present evidence to the board, or to Mr. Hall himself and that anything presented would be thoroughly examined.

Mr. Hall reminded the board that this individual would not confirm the ownership of the entity as required by FINRA. This has prevented SportBLX Inc. from filing for and becoming a broker dealer as per its original business plan. At this time, it is not clear that the technology company alone can be successful.

He went on to explain that although SportBLX Securities had already taken possession of the source code at this time, as acknowledged in the previous board meeting, they would investigate paying some consideration for its sole ownership.

Mr. Hall asked Mr. Ruchalski and Mr. Strauss (Glassbridge Enterprises) to opine on the value of the code based on information from a third party used for the audit. For the 2019 audit Mr. Ruchalski had spoken to Mr. Fisch the CTO, at the time, about what cost could be capitalized, if any. Mr. Fisch wrote a memo stating that there were not any takeaways from what Consensys built. Mr. Fisch spoke about rebuilding most of what Consensys had built and wrote a memo detailing the estimated cost that could be capitalized to be around $200k. The amount was immaterial and not capitalized on the financial statements.

Mr. Ruchalski also mentioned that initially when Glassbridge Enterprises purchased shares from George Hall and Joseph De Perio there was goodwill associated with the company in the $50mm range and at the subsequent filing the goodwill was impaired by $42-43mm leaving the remaining goodwill at $8mm. The Equity value of SportBLX was $4MM and Glassbridge's share of the equity was $2mm. Mr. Ruchalski stated that there was no breakout for the software.

Mr. Hall asked if there was any mention of the value of the software or the cost to replace it. Mr. Ruchalski stated again, according to Mr. Fisch the cost to be capitalized would be roughly 200k.

Mr. Hall asked if Mr. Strauss or Mr. De Perio wanted to opine.

Mr. De Perio explained that there was no money, or time to run an exploration into cost of the source code. He stated that he would lean on Mr. Fisch's estimate.

Mr. De Perio also stated that based off the agreement signed by SportBLX Inc. and SportBLX Securities, the code already belongs to SportBLX Securities. He went on to say that anything that SportBLX Securities pays for the code would be "found money".

Mr. Hall explained that there was still a sizable amount of debt outstanding and anything that SportBLX Inc. received from the purchase of the source code would likely be used to paydown that debt.

Mr. Hall at this time stated that we should make a proposal for SportBLX Securities Inc. to formally purchase the software from SportBLX Inc.

Mr. Hall mentioned that as part of the transaction to benefit SportBLX Inc there would be a cancellation of debt which would reduce the company's debt burden.

He also pointed out that there were additional sources of revenue to SportBLX Inc through common shares of SPORTBLX/PJ Washington and structuring fees that could be preserved if the company could service and move forward. Despite having no paid employees, the company was doing everything it could to preserve value for all stakeholders.

With regard to the allegations of syphoning, Mr. Hall called upon information from Mr. Ruchalski that $2mm was paid to Consensys for technology build fees, he estimated that over $1mm was paid out for legal research.

Mr. Hall then pointed out that the money spent on those two categories alone were more than shareholders put into the company, and in fact the money that Glassbridge injected into the company for business operations was on top of the original capital raise and that debt was now in the hands of the founders. In addition, he reminded the board that neither Joe nor George took a salary for over a year. Again, opining that the shareholder's accusations were unfounded. Mr. Hall highlighted the fact that this individual may have doomed the company by making this accusation at this pivotal time. As the company was looking to raise vital capital through a regulation CrowdFunding offering to continue operations of the company. Once the allegations were made the fund raise had to be immediately terminated.