**MINUTES OF THE REGULAR MEETING
OF THE BOARD OF DIRECTORS
OF SPORT-BLX, INC.**

**October 20, 2021**

The Board of Directors (the "***Board***") of Sport-BLX, Inc. (the "***Corporation***" or ***"Company"*** or ***"SportBLX"***) held a regular meeting (the "***Meeting***") on Wednesday, October 20, 2021, commencing at approximately 10:00 am Eastern Time pursuant to notice provided pursuant to the Company's Bylaws:

All of the members of the board were present at the meeting (via zoom).

      George E. Hall, Executive Chairman
      Cesar A. Baez
      Joseph A. De Perio
      Francis A. Ruchalski
      Daniel A. Strauss
      Peter Rawlins
      Christopher Johnson

Mr. Hall presided at the Meeting. Mr. Rawlins will document the meeting minutes.

Mr. Hall opened the meeting addressing two topics from the prior meeting, the CF offering for SportBLX Inc. and the potential to expand the Board of Directors.

He then explained that an individual that is the managing member of an investors entity has once again asked for books and records. The individual is a former board member that has made a similar demand which despite great efforts on the part of George and Joe to make the material available, he never actually came in to review the material. This individual has taken legal action, arguing that the rent was too high and that there was an asset management business that was receiving money that SportBLX Inc. was entitled to. Mr Hall reminded the board that the rent was discussed and debated with the individual prior to his investment. Mr Hall confirmed for the board that there was not a fund in existence and the claim was always frivolous.

Mr. Hall stated that nothing would be given to this investor without proper purpose. Mr. Hall explained that he offered to speak on the phone with this investor on several occasions, however this investor did not show interest in doing so. It is his judgment that the individual has made frivolous accusations in an attempt to shake down the company for a buyout.

Mr. Hall also explained that because of a recent email from this investor, which made accusation about Mr. Hall and SportBLX Inc. (Email was shared). There would be no way to raise capital in the public market.

He went further to state that at this point with no capital and no ability to do a capital raise and Mr. Rawlins as the only employee there does not appear to be a viable path forward.

Mr. De Perio asked if there was anything other than the email, if there was anything from a lawyer? Mr. Hall said that was all. He also mentions a letter mailed to the office on 57th street. He told Mr. De Perio that it was addressed to him as well.

Mr. Hall reiterated that he has made great efforts to keep the company going. He spoke about the most recent phone call with investors where he explained the company's current financial state and the imminent reg CF offering that was planned. He mentioned to the existing investors that if there was any interest in investing in the campaign the early investments and momentum could help the process. There did not seem to be any interest from current group to invest further. In addition, Mr. Hall mentioned that he had not seen any current investors showing support through the Wefunder campaign webpage.

Mr. Strauss asked if this investor who was sending the email remarks knew what his actions would mean?

Mr. Hall explained that he informed the investor that there was no current capital, no employees and the only thing left was the platform code.

Mr. Hall also explained that he again informed the investor that Consensys came up with a business plan and had a percentage of the old rent in the spreadsheet. He also stated that this investor hired a lawyer to push SportBLX Inc. to move to a WeWork site. Mr. Hall stated that at that time SportBLX Inc. offered to buy this investor out however, the investor was looking for a multiple of what he paid only a short while after his investment.

Mr. Hall then said the "syphon" accusation was baseless and that both he and Mr. De Perio had worked for a long period of time without getting a paycheck.

Mr. Hall reiterated that the company had no capital and no ability to raise capital, and that there was just one current employee. He again said that it would be impossible to raise capital with this current accusation this investor has made.

Mr. De Perio asked if there was a chance that this investor would want to buy the company. Mr. Hall said that the investor would be welcome to purchase the software. However, he did not believe that was what this investor wanted to do.

Mr. De Perio asked if a public auction would be the way to go to give this investor the chance to bid.

Mr. Hall stated that the platform code was the value and that the books and records would not have any input in determining the value.

Mr. Hall then address the conversation about the two director candidates that he mentioned on the October 6th board call. He stated that the two candidates were not officially offered board seats at that time. Though they had each spent some time looking into the company and helping prepare to do a capital raise. It no longer made sense to add directors with the investor making accusations about the company.

Mr. De Perio asked Mr. Hall if we should send a letter to the current group of investors explaining why we can't go forward. Mr. Hall agreed.

Mr. Hall went on to address the topic of the SportBLX Inc. and SportBLX Securites Inc. technology subscription agreement. He reminded the board that there were fees paid to SportBLX Inc. from SportBLX Securities Inc. and that shortly after the agreement was signed, Mr Fisch the CTO at the time had quit. Mr. Hall also stated that more recently the lead engineer Robert Maguire has left the firm. Mr. Hall then went on to state that SportBLX Inc. has become insolvent and this likely triggers a default event. In the event of insolvency, the SportBLX inc. Platform Code would be given to SportBLX Securites Inc. for continued use.

Confidential – Subject to Protective Order

Mr. De Perio stated that as he reads the agreement "insolvency" would trigger the default. He also stated that fees would need to be returned to SportBLX Securities Inc.

Mr. Hall discussed that in this event, SportBLX Securities Inc. could likely do the capital raise.

Mr. Hall also said the current SportBLX Securities Inc. investors would be contacted to speak about a plan moving forward.

Mr. De Perio also made a comment that if there was a claim on past fees paid to SportBLX Inc. They would be an unsecured creditor and stand behind the debt holders.

Mr. Hall asked if any of the board members had any good ideas about how to raise capital for SportBLX Inc? Mr. Baez said "maybe in the private market, however the investor would need to retract his comments"

Mr. Hall asked Mr. Strauss if as the head of the company that owned the majority of SportBLX Inc., if he ever saw any sign of syphoning? Mr. Strauss answered, "No he did not have any reason to believe that to be true."

Mr. Baez asked if Glassbridge Enterprises could assure this investor that was the case and if that would satisfy the investor.

Mr. Hall stated that in his opinion, that would not satisfy this investor.

Mr. Hall then went on to explain that shortly after the investor came on board he launched complaints about expenses, at that time Mr. De Perio set up a lengthy data room for this investor to come to the office and go through. Despite giving the investor a two-week window to come in to examine the expenses he decided not to come in.

Mr. Hall explained that shareholders cannot continuously burden the company by demanding to see books and records.

Mr. Baez restated that the investor was given the opportunity to examine the data room that was set up by Mr. De Perio and chose not to come into the office.

Mr. Baez stated that this investor seems to be acting in bad faith and as a result he has harmed the other investors. Mr. Baez asked if the investor was reminded about the opportunities that he chose not to take advantage of with the data room that Mr. De Perio set up.

Mr. Hall repeated that he offered to speak with the investor over the phone and the investor repeated that he only wanted to see books and records.

Mr. Baez stated that he does not think that a call from board members would help and warned that no board member should be on the phone with this investor by themselves. If there were to be a call, there should be at least two board members on the call for back up in order to avoid any manipulation by the investor.

Mr. Hall asked if there was any argument that the platform code could be transferred to SportBLX Securities based off SportBLX Inc's insolvency.

Confidential – Subject to Protective Order                                                                                          JOHNSON00000023

There were no arguments at this time.

Mr. Hall asked Mr. Rawlins if he was familiar with the default. Mr. Rawlins stated that he was familiar with the insolvency trigger and that he would re-read the default language.

Mr. Hall thanked everyone for their time. He stated that this meeting was for information only and that at this time there would not be anything to vote on.

Mr. Hall informed the board that he would update the investor that his complaint was brought to the board's attention.

Thereafter, being no further business before the Board. The Meeting adjourned at 10:50 a.m. Eastern Time.

_____
George E. Hall, Executive Chairman

ATTEST:

                                 _____
                                 Joseph De Perio, President

Confidential – Subject to Protective Order                                          JOHNSON00000024