# SPORT-BLX INC.

### MINUTES OF MEETING
### OF THE BOARD OF DIRECTORS
### OF SPORT-BLX, INC.
### November 26, 2019

A meeting of the Board of Directors of Sport-BLX, Inc., (the "Company") was held at the offices of the Corporation, 510 Madison Avenue in New York City on November 26, 2019 at 4:00 p.m.

The following members of the Board of Directors, constituting all of the members of the Board of Directors, were present: George Hall (Chairman), Joseph DePerio, Francis Ruchalski, Daniel Strauss, Caesar Baez, Christopher Johnson, and Michael Salerno by phone.

John Hall was present only to take notes of the meeting. He is not a member of the Board.

George Hall, the Chairman of the Board thanked everyone for coming and suggested that we move towards closing outstanding business.

**Adoption of the Minutes of the Board Meeting that took place on November 22, 2019**
- Members of the Board had received a copy of the Minutes prior to the meeting.
- Mr. Hall asked if there were any comments on the Minutes. Michael Salerno had comments.
    - ➢ Mr. Salerno wanted it noted in the Minutes that the new Board members consisting of Mr. Baez and Mr. Johnson were interviewed individually by all of the then Board members.
    - ➢ It was agreed that this change would be added to the Minutes.
    - ➢ There was also a discussion around Board support but this would not be added to the Minutes
    - ➢ At this point it was suggested a vote be taken to adopt the revised Minutes.
- Mr. Hall then made a motion to adopt the Minutes and Mr. Strauss seconded the motion and all approved the motion.
- It was resolved that the Minutes from the November 22, 2019 Board meeting be confirmed and adopted.

**Adoption of the Minutes of the Board Meeting that took place on September 10, 2019**
- Members of the Board had received a copy of the Minutes prior to the meeting.
- Mr. Hall asked if there were any comments on the Minutes. Michael Salerno had comments.
    - ➢ Mr. Salerno stated that he objects to the Minutes because he believes there are mis-representations
    - ➢ Mr. Salerno said that he would provide his objections in writing.
    - ➢ A discussion then ensued regarding BLX Trading's (the "Applicant") broker dealer application to FINRA and Mr. Salerno's unwillingness to provide a list of investors in Cypress to the Company
    - ➢ Mr Salerno stated he wanted to speak to FINRA directly He then stated he wanted his attorney to speak to FINRA.
    - ➢ Mr DePerio stated the Company's outside counsel said that didn't make any sense and FINRA probably would not take the call. He continues saying the Applicant is required by FINRA to know who its investors are.
    - ➢ Mr Hall states that he would not allow Mr. Salerno nor his counsel with or without the Company's counsel to speak directly to FINRA

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER                                                                                          GBE_0014667

- ➢ Mr. Salerno reiterates that he does not want the company to know who his investors are for estate planning reasons.
- ➢ Mr. Salerno then refers to what he believes to be an alternative path forward without Cypress.
- ➢ He states that he would never have voted to re-focusing the Company's ownership of the Applicant and does not recall a vote to do so.
- ➢ Mr Strauss says there was a vote taken at the end of the meeting.
- ➢ Mr Salerno asks for details around the vote including motion and second etc.
- ➢ Mr Deperio states that he could not recall but going forward these will be noted
- ➢ Mr. Hall then expressed his thoughts that the only path forward for the Company at this point would be to monetize the technology
- ➢ Mr Hall suggested tabling this discussion
- It was agreed that September Minutes would not be adopted at this meeting.

At 4:26 Mr Hall introduces the new Board members. He says they will be a good fit.
Mr. DePerio expresses his desire to preserve the business by partnering with other broker dealers allowing them to utilize to Company's platform in exchange for technology fees. It was made clear that these fees would be flat fees and not based on volume.

At this point Mr Deperio discusses the idea around creating a new special committee to deal with:
- Related party transactions – committee responsible for negotiating
- Negotiations regarding potential mergers and acquisitions

A two page resolution to adopt the committee had been presented to the Board prior to the meeting.
Mr Salerno states he is happy about the formation of the new committee. Asks if a shareholder can vote on a related party transaction. Mr DePerio states that it depends on the matter. Mr. Deperio would like to adopt the resolution. Mr Salerno states he would like until December 6th to review. Mr Deperio says the charter is standard and had been prepared by the Company's outside counsel. Mr Hall recommends getting counsel, who is standing by, on the phone to answer questions. Mr. DePerio offers to recess the meeting to give Mr. Salerno time to review the charter. Mr. Salerno states that he would like his personal counsel to review. Mr DePerio suggests taking a vote on the spirit of the charter.

Mr. Salerno then mentions his concerns about the relationship between Glassbridge, Clinton Group and the Company specifically around 401k plans and states that Glassbridge has not filed form 5500 and that the Company's employees need to be invited to Clinton's 401k plan because he believes there is a control group relationship. Mr Ruchalski states that the Company had no employees in 2018. He also mentioned we incorporated a cafeteria plan. Mr Strauss points out that Glassbridge's 401k plan has been dealt with. Mr Hall asks how this has any relationship to adopting the Charter. Mr. DePerio states that 401k plans are a management issue. Mr Salerno again states he is not prepared to vote on then resolution to adopt the Related Party committee.

Mr Hall suggests voting on the resolution to form the Related Party committee. He states the Charter will be subject to change to incorporate reasonable comments. Mr. Hall makes a motion to adopt this suggestion. Mr DePerio seconds and all agree 7-0

Mr. Hall makes a motion to nominate Mr. Baez to the Committee. Mr Salerno seconds and all agree. 7-0
Mr Strauss nominates Mr Johnson. Mr DePerio seconds, all agree 7-0
Mr Salerno nominates himself.

Mr Mack from Greenburg calls in to answer questions about the Committee. Mr Baez asks what matters should Committee be addressing under the DGCC? Mr Mack states that the members are Fiduciary's of the Company. Mr DePerio states that the Committee can action or recommend.

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER                                                                                                          GBE_0014668

Mr Hall asks Mr. Mack about FINRA application. Mr Mack says it is highly irregular for a call between a shareholder of the Applicant and FINRA and stated explicitly that FINRA will never permit an applicant to not know who their shareholders are and that the application will never move forward if Applicant doesn't know who its owners are. Mr Salerno wants Mr Mack to speak to his personal attorney. Mr Mack agrees as Company's attorney.

Kelly from Greenburg joins the call. She says that:
- Committee cannot alter by-laws
- Cannot disolve Company
- Cannot authorize a substantial sale of the Company
- Cannot authorize a merger
- Cannot amend Certificate of Incorporation

Mr Salerno asks if a related party who is a shareholder can vote its shares. Kelly states that Rule 144 was adopted to allow shareholders to vote based on parameters. She also states Committee is independent of the Board.

Kelly and Mr Mack leave the meeting. Mr DePerio asks if anyone would like to change their vote. No one does

Prior to attorneys joining the meeting Mr Salerno had nominated himself to the Committee. Mr Strauss asks if he can move quickly and be agile. Mr Salerno says he can move quicklyMr DePerio claims that Mr Salerno cannot be if he has to always consult counsel. Mr Hall agrees and is concerned Mr Salerno is not willing to rely on Company counsel. Mr Hall also states that he does not think Mr Salerno is independent. He continues saying that Mr Salerno may be a plaintiff against the Company and that he wants to be bought out. Mr Salerno says he wants to protect shareholders. Mr DePerio refers to Discovery document and potential litigation brought on by Mr Salerno. Mr Salerno states he wants maximum value for all shareholders and thinks he has been excluded and not informed. Mr DePerio explains that Mr Salerno has been invited to all meetings. Mr Hall mentions that Mr Salerno continually refers to a fund managed by the Company and states that he has told Mr Salerno repeatedly that there is no fund. Mr Ruchalski states that he doesn't think it is appropriate for Mr Salerno to be on the committee.

The motion to nominate Mr Salerno to the Committee is not seconded. The vote is 1-6 against.

Mr Salerno continues that Mr Hall represented there would be a fund that would generate revenues for the Company. Mr Hall explains that the effort to raise capital for a fund was unsuccessful.

Mr Salerno asks if Glassbridge has invested in Athlete contracts. Answer is No

Mr Salerno acknowledges that there is no fund and no vehicle outside of the Company.

Mr DePerio provides an update on the technology matters of the Company and two initiatives to generate revenues
- Partnering in some capacity with European golf tour by leveraging our technology and creating a platform for the players. Either collect fees or enter into joint venture. Tour has wide viewership and generous sponsors in the Middle East. Tour is reviewing Company's proposal.
    - ➤ Mr Salerno asks if we would be competing with Instagram or TDePeriowitter
    - ➤ Mr DePerio states this is not intended to be a social media platform
    - ➤ Again Mr DePerio states that the platform can generate tech fees but not fees based on trading volume
- Potential opportunity to build a college admissions Application connecting prospective students to current students at a college they are interested in. It is basically a matching engine. Company could earn a spread above cost. Potentially $1.5 - $2 million for sprint arrangement.

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER

GBE_0014669

Mr Hall mentions one other opportunity which is that we are in discussions with a third party to make an investment in an Athlete contract through a securitized investment and then have an independent broker dealer sell the contract using our platform. Mr Salerno asks who the third party is and Mr Hall says Orix.

Mr Hall then goes on to say that since the Company was forced to withdraw Applicant's broker dealer application, it will have to rely on independent broker dealers to sell athlete contracts and we can receive a technology fee. Mr Hall claims that this is a successful pivot for the Company to a tech Company. He goes on to say that this was really the only option considering the Company does not have the ability to become a broker dealer as was its initial business plan. Mr Baez surmises that the Company is worse off because of the pivot and Mr Salerno agrees.

Mr Ruchalski goes through financials stating
- Company has liabilities of $1,450,000
- $170,000 in sunk costs related to broker dealer application
- $725,000 paid to Consensys and no longer a liability
- $500,000 in Legal
- Company has a deficiency of $1,250,000

Discussion about line of credit provided by Glassbridge of $1,750,000. $1,500,000 has already been drawn down.
Glassbridge made an additional investment of $610,000 at a $35,000,000 pre money valuation

Mr Salerno asks about a $4,000,000 demand note on Glassbridge 8K
Mr Hall reminds everyone that Glassbridge is a public company and certain information might be materially non public.

Mr Strauss as CEO of Glassbridge states that Glassbridge has pledged its shares of the Company for a $4 million dollar loan. There is no related party transaction.

Mr Salerno asks about a difference between August and September capitalization. Mr Deperio says it is related to Consensys buyout.

Mr Hall and Mr DePerio then discuss strategic alternatives including sale of the Company. Will consider offers, debt. Mr Salerno asks Mr Hall what company is worth and Mr Hall says he does not know and that he may be interested in selling his shares. Mr DePerio states that a sale would be tough without proof of concept. Mr Hall says other options are to reduce price of company to raise equity, raise long term debt. He also would like to hear ideas from the Board.

The Board then discussed office space lease and Mr Salerno's desire to have a formal lease. Mr Hall asked Mr Salerno to share the benefits. He states costs would be transparent. Mr Hall states that the Company would not have been able to secure its own lease. Mr Baez states from his own experience that there are many benefits to not having a lease obligation. Mr Salerno would prefer to lock in a rate. Mr Hall states that the Company is using more space than it is being charged for. He continues saying that the space has been used for unpaid interns, consultants, athletes, their families in response to Mr Salerno's claim that the Company does not have that many employees. Mr Salerno says he will provide a letter addressing concerns about not having a formal lease agreement. He is concerned about 2020 model which indicates the rent might be increased.
Mr Hall then mentions again the pivot to a technology company based on the broker dealer application being withdrawn.

Mr DePerio suggests having a shareholder meeting prior to December 21, 2019. Management will present dates to the Board.

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER

GBE_0014670

Mr DePerio then proposed re-ratifying Board meetings.

July 4th items:
- Appointing Daniel Strauss to the Board. Mr Salerno objects. Vote is 6-1

July 26th ???

Mr DePerio makes motion. Mr Hall seconds. Vote is 6-0-1

Mr Salerno asks about compensation to new Board members. Mr DePerio states that the new members have agreed to table compensation. Agree to be paid as balance sheet allows. Directors agreed to table compensation.

Mr Salerno then proposes adding a new Board member and he nominates hall of fame jockey Gary Stevens. The Board agrees to conduct interviews.

Mr Hall thanks the Board for a spirited meeting

There being no further business before the Board, the meeting was adjourned at 7:01 p.m.

IN WITNESS WHEREOF, the undersigned secretary of the company has hereunto set his hand as of this day of November 29, 2019.

_____
Joseph DePerio
Secretary

9595127.1                                    5

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER

GBE_0014671