**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX, INC.,

                                  Plaintiff,

        v.

GEORGE HALL, JOSEPH DE PERIO, DANIEL
STRAUSS, FRANCIS RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX, INC.,
SPORT-BLX SECURITIES, INC., CLINTON
GROUP INC., and GLASSBRIDGE ENTERPRISES,
INC.,

                                  Defendants.

Civil Action No. 1:22-cv-1243-LGS

---

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
# TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN
# SUPPORT OF PLAINTIFF'S MOTION FOR SUMARY JUDGMENT

ALEXANDER M. DUDELSON (AD4809)
26 Court Street – Suite 2306
Brooklyn, New York 11242
(718) 855-5100
(718) 624-9552 FAX

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………………..ii

LEGAL STANDARD………………………………………………………………………….1

ARGUMENT…………………………………………………………………………………...1

I.     The Court Should Grant Cypress' Cross-Motion For Summary Judgment
       And Dismiss The Sport-Blx Claims……………………………………...…….…….1

  A.     Sport-Blx 10b-5 Claims And Common Law Fraud Claims Are Untimely……….…..…..1

        i.     10b-5……………………………………………………………………3
        ii.    Fraud………………………………………………………….………...4

  B.   Sports-Blx  Misrepresentation And Fraud Claims Should Be Dismissed
       On The Merits As Well     …………………………………………….……………..5

        i.     Sport-Blx Own Actions Demonstrated That The
               Information Was Not Material………………………….……………….……6
        ii.     Sport-Blx Is Unable To Show Scienter……………………………………..7
        iii.    Sport-Blx Is Unable To Show Reason
               Or Justifiable Reliance…………………………………….……………..8
        iv.    Sport-Lx Cannot Establish Economic Harm…………………………………9

  C.   Sport-Blx Is Unable To Show A Breach Of Fiduciary Duty………..………………10

  D.   Sport-Blx Cannot Prove Its Claims For Tortious Interference
       With Prospective Economic Advantage………………………………………………11

II.    The Court Should Deny The Motions For Summary Judgment
       On Cypress' Claims………………………………………………………………....12

  A.     Cypress Misrepresentation Claims
        i.    Cypress Claims Are Timely……………………………………………12
        ii.    Cypress Claims Do Not Fail Pursuant To The Standard Integration Clause……...13
        iii.   Cypress Negligent Misrepresentation Claim Were Not Based Solely
               On Future Promises………………………………………………….…..15
        iv.    Cypress Can Establish Damages……………………………………..…16
        v.    Cypress Can Establish Scienter………………………………..……….17

  B.     The Sport-Blx Defendants Breached Of The Covenant Of Good Faith
        And Fair Dealing ………………………………………………...……………18

C.    Cypress Establishes Tortious Interference With Contractual Relations
Against Glassbridge………………………………………………………..……19

D.    Cypress Derivative Claims
    i.    The Sport-Blx Defendants Cannot Demonstrate That
There Is No Genuine Dispute Of Material Fact…………………………20

CONCLUSION……………………………………………………………………..23

# **TABLE OF AUTHORITES**

## **Cases**

*Abry P'rs V, L.P. v. F & W Acq. LLC,* 891 A.2d 1032, 1050 (Del. Ch. 2006)…………………..14

*Acito v. IMCERA Group, Inc.,* 47 F.3d 47 (2d Cir. 1995)………………………………………..7

*Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972)…………………………..16

*Airborne Health v. Squid Soap,* 984 A.2d 126 (Del. Ch. 2009)…………………………………15

*ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member*,
50 A.3d 434, 439 (Del. Ch. 2012)…………………………………………………………………20

*ASDI, Inc. v. Beard Rsch., Inc*., 11 A.3d 749, 751 (Del. 2010)…………………………………20

*Bhole, Inc. v. Shore Invs., Inc.,* 67 A.3d 444, 453 (Del. 2013)…………………………………..21

*Brook Cap. Grp. LLC v. Siddiqui,* 2022 WL 2047589 (S.D.N.Y. 2022)…………………………7

*Chapter 7 Tr. Constantino Flores ex rel. Estate of Esio Beverage Co. v. Strauss Water Ltd.*,
C.A. No. 11141-VCS, 31-32 (Del. Ch. Sep. 22, 2016)……………………………………………11

*Dardashtian v. Gitman,* 2017 WL 6398718 (S.D.N.Y. 2017)…………………………………...12

*Dieckman v. Regency GP LP,* 155 A.3d 358 (Del. 2017)…………………………………………18

*Diesenhouse v. Social Learning and Payments, Inc.,*
2022 WL 3100562 (S.D.N.Y. 2002)………………………………………………………………3

*Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)……………………..18, 19

*Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.,*
2018 WL 2727542 (Del Ch. 2018)……………………………………………………………6, 8, 18

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
837 F. Supp. 2d 162 (S.D.N.Y. 2011)…………………………………………………………...10

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185 (1976)……………………………………………….7

*Esplin v. Hirschi, 402 F.2d 94 (10th Cir 1968)*…………………………………………………16

*Fitzgerald v. Cantor,* 1998 WL 842316 (Del. Ch. Nov. 10, 1998)………………………………20

*Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060 (Del. 1988)……………………………21

*Frost v. N.Y.C. Police Dep't,* 980 F.3d 231, 242 (2d Cir. 2020)……………………….………1

*Ganino v. Citizens Utilities Co.,* 228 F.3d 154 (2d Cir. 2000)………………………………5, 7

*Gradient OC Master, Ltd. v. NBC Universal, Inc.,* 930 A.2d 104 (Del. Ch. 2007)…………..10

*Grunstein v. Silva,* 2009 Del. Ch. LEXIS 206 (Del. Ch. Sep. 5, 2014)…………………………15

*In re Time Warner Inc. Securities Litigation,* 9 F.3d 259 (2d Cir. 1993)……………………….7

*Kronenbeberg v. Katz,* 872 A2d 568, 593 (Del. Ch. 2004)..……………………………………15

*LCT Capital, LLC v. NGL Energy Partners LP*, 249 A.3d 77 (Del. 2021)………………….....15

*Levine v. Seilon, Inc.,* 439 F.2d 328, 334 (1971)…………………………………………....16

*Lock v. Schreppler,* 426 A.2d 856, 862 (Del. Super. 1981)……………………………………8

*Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.,*
854 A.2d 121 (Del Ch. 2004)………………………………………………………………………7

*Metro. Life Ins. Co. v. Tremont Gp. Hldgs., Inc.*
2012 Del. Ch. LEXIS 287, 2012 WL 6632681 (Del. Ch. Dec. 20, 2012)…………………………17

*MidCap Business Credit, LLC v. MidCap Financial Trust,*
655 F.Supp.3d 193 (S.D.N.Y. 2023)……………………………………………………………14

*Miller v. Brightstar Asia, Ltd.,* 43 F.4th 112 (2d Cir. 2022)…………………………………...18

*Nemec v. Shrader,* 991 A.2d 1120 (Del. 2010)…………………………………………………21

*Osofsky v. Zipf,* 645 F.2d 107 (2d Cir. 1981)……………………………………………………16

*Panos v. Island Gem Enterprises, Ltd., N.V.,* 880 F.Supp. 169 (S.D.N.Y. 1995)………………16

*Prairie Capital III, L.P. v. Double E Holding Corp.,* 132 A.3d 35 (Del. Ch. 2015)……………14

*Press v. Chem. Investment Servs. Corp.,* 166 F.3d 529, 537-38 (2d Cir. 1999)…………………17

*RMED Intern., Inc. v. Sloan's Supermarkets, Inc.,*
185 F. Supp. 2d 389, 403 (S.D.N.Y. 2002)………………………………………………………...17

*Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38 (2d Cir. 1978)…………………………16

*S.E.C. v. Monarch Funding Corp.* 192 F.3d 295 (2d Cir. 1995)…………………………………5

*S.E.C. v. Gallagher, 2023 WL 6276688 (S.D.N.Y. 2023)*…………………………………………5

*S.E.C. v. Pentagon Capital Management PLC,* 725 F.3d 279 (2d Cir. 2013)……………………5

*S.E.C. v. Riel,* 282 F. Supp. 3d 499, 520 (S.D.N.Y. 2017)………………………………………..5

*S'holder Representative Servs. LLC v. Albertsons Cos., Inc.,
2021 WL 2311455 (Del. Ch. June 7, 2021)*………………………………………………………...14

*Schiavone v. Fortune,* 477 U.S. 21 (1986)………………………………………………………..2

*Schwebel v. Crandall,* 967 F.3d 96, 102 (2d Cir. 2020)……………………………….…………1

*Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir. 1999)…………………………………7

*Stewart v. Wilmington Trust SP Servs., Inc.,* 112 A.3d 271, 302–03 (Del. Ch. 2015)…………21

*Stevelman v. Alias Research Inc.* 174 F.3d 79 (2d Cir. 1999)…………...……………………...2

*Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23* (2d Cir. 2002)……………………………2

*Trifecta Multimedia Holdings Inc. v. WCG Clinical Services LLC,
318 A.3d 450  (Del. Ch. 2024)*…………………………………………..…………………..14, 15

*Universal Enter. Grp., L.P. v. Duncan Petroleum Corp.,
2013 WL 3353743 (Del. Ch. 2014)*………………………………………………………………8

*Vichi v. Koninklijke Philips Elecs.,* 85 A.3d 725 (Del. Ch. 2014)…………………………..…4, 7

*Wal-Mart Stores, Inc. v. AIG Life Insurance,* 860 A.2d 312 (Del. 2004)…………………………4

*Ward v. Hildebrand,* 1996 WL 422336 (Del. Ch. July 8, 1996)…………………………………8

*WaveDivision Hldgs., LLC v. Highland Cap. Mgmt., L.P.,
49 A.3d 1168, 1174 (Del. 2012)*…………………………………………………………………20

*Whitestone REIT Operating P'ship v. Pillarstone Capital REIT,
C. A. 2022-0607-LWW (Del. Ch. Jan. 25, 2024)*………………….…………………….…………20

Plaintiff respectfully submit this memorandum of law in opposition to Defendants' Motion for Summary Judgment and in support of support of Plaintiff's Cross-Motion for Summary Judgment in related case No. 1:22-cv-8111. Plaintiff cites herein to its contemporaneously filed Counter Statement of Facts and Declaration of Alexander M. Dudelson.

## LEGAL STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020).

I.    **The Court Should Grant Cypress' Cross-Motion For Summary Judgment And Dismiss The Sport-BLX Claims**

A.    **Sport-BLX 10b-5 And Common Law Fraud Claims Are Untimely:**

Sport-BLX's Rule 10(b)(5) and common law fraud claims are untimely. Sport-BLX's initial Complaint was filed on August 3, 2022 in the Supreme Court of New York ("Pltfs.' Counter 56.1") ¶ 138. . . and subsequently removed to federal court. On March 1, 2023, Sport-BLX filed an Amended Complaint, asserting Rule 10b-5 violations and common-law fraud for

the first time. (ECF 40). Also for the first time, Sport-BLX added the factual allegations to support its 10b-5 and fraud claims. Specifically, Sport-BLX added the allegations that Cypress and Salerno committed fraud by Salerno's reference to Cypress as "my holding company" and his request to change the name on the agreements in February 2019. ("Pltfs.' Counter 56.1") ¶ 139, 140. Those allegations were wholly absent in its original state court complaint which contained only allegations of breach of fiduciary duty and related claims. ("Pltfs.' Counter 56.1") ¶138. Federal Rule of Civil Procedure 15(c)(2) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." "For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading . . .'" *Tho Dinh Tran v. Alphonse Hotel Corp.,* 281 F.3d 23 at 36 (2d Cir. 2002) (quoting *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S. Ct. 2379, 91 L.Ed.2d 18 [1986]). Under *Rule 15*, the "central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Stevelman v. Alias Research Inc.* 174 F.3d 79, 86 (2d Cir. 1999). The conduct set forth in the original pleading did not provide notice to Cypress and Salerno that Sport-BLX would be raising the dubious claim that he was perpetrating a fraud by a single reference to Cypress as his holding company in an informal email communication. Since the claims for fraud and the underlying factual allegations were added in their entirety to the Amended Complaint, the applicable date for determining whether the claims are timely is March 1, 2023, the date of the filing of Sport-BLX amended complaint.

### i.     <u>10b-5:</u>

Sport-BLX's securities fraud claims are barred by the applicable two-year statute of limitations, namely "not later than the earlier of: (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation."  28 U.S.C. § 1658(b)(2).  "The two-year statute of limitations begins to run when a plaintiff's claim has accrued, i.e., until after the plaintiff both purchased the securities and the date when a reasonably diligent investor conducting an investigation would have discovered the violation or should have known of the violation."  *Diesenhouse v. Social Learning and Payments, Inc.,* 2022 WL 3100562 at 5 (S.D.N.Y. 2002).

Sport-BLX's 10b-5 claims are untimely because their claims accrued in February 2019, outside the two-year statute of limitations.  Sport-BLX alleges that Mr. Salerno made the following materially false and misleading statements in February 2019: (1) Mr. Salerno's February 2019 statement that Cypress was his "holding company;" and (2) Mr. Salerno's February 2019 edits to the Side Letter Agreement that labeled Cypress as "Salerno."  ("Pltfs.' Counter 56.1") ¶ 139, 140

As of February 28, 2019, the date that the SPAs and Side Letter Agreement were signed, Sport-BLX was aware that Cypress was a limited partnership which, <u>by definition</u>, requires additional limited partners.  26 CFR § 301.7701-2(a).  Additionally, as Sport-BLX argues, there were public records available showing that Cypress was a pooled investment fund with multiple owners.  As reasonably diligent investors, the Founders knew or should have known (had they conducted any due diligence), as of that date, that Cypress consisted of investors other than Mr. Salerno.  <u>See</u> *Diesenhouse.*

Salerno's initial refusal to disclose Cypress' beneficial owners in August of 2019 (after being asked by the Founders for the first time) occurred months after Cypress' March 2019 investment in Sport-BLX and therefore Sport-BLX cannot claim to have relied upon this statement in connection with the purchase or sale of a security.  Additionally, Mr. Salerno's August 2019 statement regarding his concerns about disclosing the beneficial ownership structure of Cypress was not a false statement.  Moreover, the August 2019 statements lack any connection to the purchase and/or sale of a security which occurred over six months prior.  Even if the August 2019 allegations are somehow relevant to Sport-BLX 10b-5 claim, they, nonetheless, fall outside of the statute of limitations period and the claim must be dismissed.

### ii.    **Fraud:**

Sport-BLX's common law fraud claim are barred by the applicable three-year statute of limitations 10 Del. C. §8106.[1]  "[A] cause of action 'accrues' under <u>Section 8106</u> at the time of the wrongful act, even if the plaintiff is ignorant of that cause of action."  *Vichi v. Koninklijke Philips Elecs.*, 85 A.3d 725, 788 n.391 (Del. Ch. 2014) quoting *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del.2004).  Sport-BLX argues that Cypress and Salerno's wrongful act was the reference to Cypress as Salerno's holding company made in February of 2019 and the insertion of Salerno in the Side Agreement.  Since the amended Complaint was filed over four years afterwards, the claim, on its face, falls outside of Delaware's statute of limitations and must be dismissed. [2]  Even if Salerno's initial refusal of the disclosure of Cypress ownership in August of 2019 is accepted as part of the alleged fraud (which it is not since it was not a

---

[2] When the Complaint falls outside of the limitations period on its face, the burden shifts to Plaintiff to demonstrate tolling.  Delaware allows for the tolling of the statute where (i) discovery of a harm would be "practically impossible" at the time it occurred; (ii) defendants "fraudulently concealed from a plaintiff the facts necessary to put him on notice of the truth"; or (iii) plaintiff "reasonably relied upon the competence and good faith of a fiduciary." *In re Tyson Foods, Inc.,* 919 A.2d at 584-85.  None of which apply to the case at bar as discussed infra.

misrepresentation), the amended complaint was still filed over three years afterwards and must be dismissed.

 **B. Sports-Blx  Misrepresentation And Fraud Claims Should Be Dismissed On The Merits As Well:**

 Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of [SEC] rules and regulations." 15 U.S.C. § 78j(b).  Rule 10b-5, promulgated under section 10(b), makes it unlawful, in connection with the purchase or sale of any security:

 (a) To employ any device, scheme, or artifice to defraud,

 (b) To make any untrue statement of a material fact or to omit to state a material **[\*22]** fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. § 240.10b-5.   *S.E.C. v. Gallagher,* 2023 WL 6276688 at 7-8 (SDNY 2023).

 To prove a violation of Section 10(b) and Rule 10b-5, Sport-BLX must show that defendants "(1) made a material misrepresentation or a material omission as to which [they] had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *S.E.C. v. Pentagon Cap. Mgmt. PLC,* 725 F.3d 279, 285 (2d Cir. 2013) (quoting *S.E.C. v. Monarch Funding Corp.,* 192 F.3d 295, 308 [2d Cir. 1999]). A misrepresentation or omission is material where "a reasonable investor would have considered [it] significant in making investment decisions." *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir. 2000); accord *S.E.C. v. Riel,* 282 F. Supp. 3d 499, 520 [S.D.N.Y. 2017]).

Common law fraud in Delaware requires similar elements:  (1) the defendants falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendants knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendants intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.  *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.,* 2018 WL 2727542 (Del. Ch. 2018).

Sport-BLX's fraud claims are premised on the same three statements made in February and August 2019.  Sport-BLX makes the farfetched argument that by referring to Cypress as "my holding company" in an informal communication, that Cypress and Salerno succeeded in committing fraud by somehow tricking extremely sophisticated investors and business persons to accept his one million dollar investment into their company.

Sport-BLX attempts to buttress its argument with the timing of the requested change of the investor from Salerno to Cypress at the "ninth hour."  ("Pltfs.' Counter 56.1") ¶140.  However, it is what Sport-BLX neglects to declare that is fatal to its claim.  Sport-BLX provides no explanation to support its contention that the change was made at the "ninth hour."  The record is devoid of any evidence that there was any deadline for Cypress' investment.  The was no bar or deadline preventing Sport-BLX from conducting due diligence on Cypress.  Sport-BLX provides no explanation why the Founders neglected to perform reasonable due diligence on Cypress (or any whatsoever).  Sport-BLX cannot establish the essential elements of materiality, intent to defraud or scienter, causation or damages to assert a fraud claim.

### i.    <u>Sport-BLX Own Actions Demonstrated That The Information Was Not Material</u>

To begin, Sport-BLX has no evidence showing that any of the statements were material.  Sport-BLX, as the company seeking and accepting investments, was the party deciding what

information or disclosures were required to make the investment.  Sport-BLX founders were sophisticated investors and business persons with a duty to make independent inquiry into the available information.  See *Brook Cap. Grp. LLC v. Siddiqui*, 2022 WL 2047589 (S.D.N.Y. 2022).  Sport-BLX chose not to distribute investor questionnaires or otherwise perform any due diligence whatsoever prior to accepting Cypress' investment.  Even after "discovering" that Cypress was a limited partnership, Sport-BLX chose to counter-sign the SPAs and side agreement and accept its money without further inquiry.  Sport-BLX decision to make not even the most basic inquiry into Sport-BLX ownership structure demonstrates that the information was not material.  See *Ganino.*

### ii.    <u>Sport-BLX Is Unable To Show Scienter</u>

Sport-BLX will be unable to show the requisite intent to defraud or scienter.  The requisite state of mind in a Rule 10b-5 action is "an intent to deceive, manipulate or defraud." *Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12 (1976).  Such intent can be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1999), <u>see</u> *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995); *In re Time Warner Inc. Securities Litigation,* 9 F.3d 259, 268-269 (2d Cir. 1993); *Ganino, supra at 168-69 (2d Cir. 2000).*
For common law fraud scienter requires a showing "that the [defendant's] statements were made with contemporaneous knowledge or reckless disregard of the information which rendered misleading the statements actually made." *Vichi v. Koninklijke Philips Elecs., supra* at 809 quoting *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.* 854 A.2d 121, 154 (Del. Ch. 2004).

Since the record is devoid of any requirements or prohibitions for an entity to invest in Sport-BLX that either existed or were communicated to Salerno, Sport-BLX cannot show that Salerno had motive or conscious misbehavior to misrepresent Cypress.  There was simply no reason to misrepresent Cypress ownership in February 2019 because there was no indication that it was relevant.  Moreover, Salerno did not make any misrepresentation.  In an email sent to De Perio and Hall on February 28, 2019, Mr. Salerno stated that, "I saw my attorney didn't update agreements with my holding company name…I will do that and send over signed docs." ("Pltfs.' Counter 56.1") ¶1.  If Salerno intended to defraud Sport-BLX, he would not have alerted Hall nor De Perio to this revision.  In addition, the Side Letter Agreement between Cypress, Sport-BLX, Mr. Hall and Mr. De Perio clearly lists Cypress as a "Delaware limited partnership" with Mr. Salerno noted as the "Manager."  <u>See</u> Dudelson Decl. Ex. 1.   By definition, a limited partnership is an entity consisting of 2 or more persons and having 1 or more general partners and 1 or more limited partners. 26 CFR § 301.7701-2(a).

Yet no one from Sport-BLX ever asked Mr. Salerno about the identity of the Cypress partners until the fall of 2019 in connection with the FINRA application. Sport-BLX had every opportunity to perform due diligence into the identity of Cypress' partners, prior to the investment—but chose not to. There is no evidence of any intent to defraud.

### iii.  <u>Sport-BLX Is Unable To Show Reasonable Or Justifiable Reliance</u>

Under Delaware law, a plaintiff cannot reasonably rely on a false representation if the plaintiff could have discovered the truth in an investigation (<u>see</u> *Universal Enter. Grp., L.P. v. Duncan Petroleum Corp.,* 2013 WL 3353743, at *14 (Del. Ch. July 1, 2013)*; Ward v. Hildebrand,* 1996 WL 422336, at *4 (Del. Ch. July 8, 1996)*; Lock v. Schreppler*, 426 A.2d 856, 862 (Del. Super. 1981) (superseded by statute on other grounds).  "Justifiable reliance requires

that the representation relied upon involve a matter which a reasonable person would consider important in determining his choice of action in the transaction in question,' *i.e.*, that the matter misrepresented is material." "To establish justifiable reliance, [a plaintiff] must demonstrate he did not have either the awareness or opportunity to discover the accurate information." *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.,* supra at 33.

Assessing reliance requires a context-dependent inquiry that takes into account the plaintiff's knowledge and experience. Any purported reliance on Salerno's informal communication is neither justifiable nor reasonable. Sport-BLX, run by sophisticated investors, had every opportunity to either discover the information or they could have simply declined Cypress investment.

### iv.   Sport-LX Cannot Establish Economic Harm

Sport-BLX claims, <u>without support</u>, that the reason for the decline of the Company's value resulted from its inability to obtain a broker/dealer license. They contend further that the inability to obtain said license was due to Salerno. Both claims fail as they are factually inaccurate. The value of Sport-BLX <u>after</u> the company decided not to pursue the broker/dealer license did not decline but, instead, increased. Additionally, Salerno did agree to provide the requested information for the broker/dealer license directly to FINRA in August 2019 and directly to Sport-BLX in December 2019. ("Pltfs.' Counter 56.1") ¶24, 142, 143. Nothing prevented Sport-BLX from submitting the FINRA application at that time. It was the Founders, not Salerno, that made the final decision to not pursue the FINRA application.

Sport-BLX made the decision to not submit the FINRA application and to pivot to a technology company on or about September 2019. ("Pltfs.' Counter 56.1") ¶36. Subsequent to that change, the value of the company was $355 per share as evidence by the Founder's sale of their shares to Glassbridge, a purported third-party. ("Pltfs.' Counter 56.1") ¶118, 119. Prior to

the Founders Sale, the highest priced sale of Sport-BLX shares was $263.40 per share. ("Pltfs.'
Counter 56.1") ¶141.   Sport-BLX cannot claim to be damaged when the value of the company
increased <u>after it</u> made the decision to not pursue a broker dealer license.

Even if it can be demonstrated that the value of the company declined as a result of not
pursuing the broker/dealer license, that decline would be caused by the Founders decisions, not
Cypress.  Sport-BLX was not prevented from pursuing the broker/dealer license as Cypress
agreed to provide the requested information to FINRA in August 2019 and to the Company in
December 2019.  ("Pltfs.' Counter 56.1") ¶24, 142, 143.

### C.    Sport-Blx Is Unable To Show A Breach Of Fiduciary Duty

To state a claim for a breach of fiduciary duties, a plaintiff must establish: (1) a fiduciary
duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages
suffered by the plaintiff which were proximately caused by the breach. *Ellington Credit Fund,
Ltd. v. Select Portfolio Servicing, Inc.,* 837 F. Supp. 2d 162 (S.D.N.Y. 2011). As a matter of law,
a shareholder owes a fiduciary duty to a corporation only if the shareholder: (a) owns a majority
interest in or (b) exercises control over the business affairs of the corporation. *Gradient OC
Master, Ltd. v. NBC Universal, Inc.,* 930 A.2d 104 (Del. Ch. 2007).  It is undisputed that Cypress
did not own a majority interest of shares in Sport-BLX and therefore could not exercise control
over the corporation's affairs.  As a result, Cypress owed no fiduciary duty to Sport-BLX and
therefore the breach of fiduciary duty claim against Cypress must be dismissed as a matter of
law. (See ECF 40 ¶¶ 108, 109, 110).

Sport-BLX alleges that Mr. Salerno breached his fiduciary duty to Sport-BLX in his
capacity as a director, by refusing to disclose Cypress' beneficial owners and by failing to
exercise informed judgment.  However, it is Cypress, as shareholder, not Salerno as director, that

initially refused to make the disclosure directly to Sport-BLX.   Salerno did not put any personal interests above the interests of Sport-BLX in his individual capacity as a director.

Even if Salerno owed a duty, it was not breached as Cypress agreed to disclose its beneficial ownership directly to Sport-BLX in December 2019.  Sport-BLX was not prevented from pursuing the broker-dealer license at that time.  It was the Founder's decision to convert Sport-BLX solely to a technology company, and for that reason, the FINRA application was never filed.

Finally, as discussed above, Sport-BLX cannot show damages.  After the Company made the decision to abandon the broker/dealer license, the value of the Company increased.

### D.    Sport-BLX cannot prove its claims for Tortious Interference with Prospective Economic Advantage

"To plead a claim for tortious interference with prospective business relations, Esio was required to allege facts that demonstrate "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation and (d) damages."" *Chapter 7 Tr. Constantino Flores ex rel. Estate of Esio Beverage Co. v. Strauss Water Ltd.*, C.A. No. 11141-VCS, 31-32 (Del. Ch. Sep. 22, 2016).

As to its claim for tortious interference, Sport-BLX points to Mr. Salerno's "refus[al] to provide ownership information in response to Sport-BLX's FINRA application" as the purported interference with Sport-BLX's ability to enter into unspecified contracts.  Sport-BLX's claim for tortious interference fails for two reasons. First, Sport-BLX has put forth absolutely no evidence establishing it had any protectable business expectations, a required element of the claim.

In discovery, Sport-BLX failed to identify any specific business relationships with any athletes or firms with which Mr. Salerno or Cypress wrongfully interfered. Second, Sport-BLX cannot identify any wrongful purpose, or dishonest, unfair, or improper means used by Cypress

11

or Mr. Salerno. As referenced above, Mr. Salerno offered to disclose Cypress' beneficial owners to FINRA and/or Sport-BLX in December. ("Pltfs.' Counter 56.1") ¶24, 142, 143. Mr. Salerno noted his concern was maintaining the confidentiality of that information as it involved his "estate plan structure." ("Pltfs.' Counter 56.1") ¶20. Accordingly, Sport-BLX's tortious interference claim must be dismissed as there was no improper purpose. See *Dardashtian v. Gitman,* 2017 WL 6398718, at *8 (S.D.N.Y. 2017) (identifying requisite elements of tortious interference claim, including interference with business relations and action undertaken for an improper purpose or with dishonest means).

**II.    The Court Should Deny the Motions for Summary Judgment On Cypress' Claims**

    **A. Cypress Misrepresentations Claims**

        **i.    Cypress Claims Are Timely:**

Cypress's claim pursuant to Section 10(b) of the Securities and Exchange Act is timely. Cypress complaint was filed in the Supreme Court of New York, New York County on January 11, 2022. Contrary to the Sport-BLX Parties' contention that "Cypress was aware of its claims by December 2019 at the latest," it was only after being alerted through various public filings and through discovery that Cypress learned of critical facts underpinning its Section 10(b) claim. Specifically, although Cypress had requested information from Defendants in 2019; those requests were denied and Cypress only learned through discovery and public filings in 2020 and 2021.

Specifically, from the 2020 10K, Cypress learned of the success fee paid to Clinton Group rather than Sport-BLX for the Orix transaction. ("Pltfs.' Counter 56.1") ¶99. Cypress learned through Glassbridge's 2019 10K filed on April 3, 2020 that Deperio sold … shares to Glassbridge at a price of $355 per share. Dudelson Decl. Ex. 12 at p. 9. It was only through

discovery in this action that Cypress learned from an excel sheet produced by DePerio that the purpose of the Hall and Deprio's share sale to GlassBridge was to violate the Third Agreement and deprive Salerno of his board seat. ("Pltfs.' Counter 56.1") ¶144.   None of the above misrepresentations were referenced in Cypress June 10, 2019 demand letter.[3] ("Pltfs.' Counter 56.1") ¶41.

The Glassbridge's 10K filings were rife with related party transactions benefitting the Founders over Sport-BLX providing overwhelming evidence of the Founder's continuous breach of their fiduciary duties created as signatories of the SPAs and side agreement.  It was in the 2021 Glassbride 10K, that it was discovered that the Founders bought back their shares from Glassbridge through an entity they owned and controlled for the nominal price of $2 per share. Dudelson Decl. Ex. 14 at p. 74.

As Cypress's Section 10(b) claim was filed in January 2022, it is timely, as it was plead within two years of discovery of the facts underlying the claim.

ii.    **Cypress claims do not fail pursuant to the standard integration and no-reliance clauses.**

An integration clause standing alone, is not sufficient to bar a fraud claim; the agreement must contain explicit anti-reliance language. Trifecta  "Stated summarily, for a contract to bar a fraud in the inducement claim, the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract. The presence of a standard integration clause alone, which does not contain explicit anti-reliance representations and which is not accompanied by other contractual provisions

---

[3] Similarly, it was only learned through discovery that defendants never made any efforts to establish the fund as represented and instead steered advisory and management fees to Clinton Group.  CITATION

demonstrating with clarity that the plaintiff had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims." *Kronenbeberg v. Katz,* 872 A2d 568, 593 (Del. Ch. 2004). "An anti-reliance clause must be explicit." *Airborne Health v. Squid Soap,* 984 A.2d 126 (Del. Ch. 2009).

The integration clause at issue is standard in that it contains no language specific to the transaction nor was there any negotiation regarding the terms of the clause itself. ("Pltfs.' Counter 56.1") ¶42.    <u>See</u> *Trifecta Multimedia Holdings Inc. v. WCG Clinical Services LLC,* 318 A.3d 450 (Del. Ch. 2024). Moreover, the reliance clause does not contain the required language demonstrating that the parties were not relying on representations and facts outside the contract. <u>See</u> *MidCap Business Credit, LLC v. MidCap Financial Trust,* 655 F.Supp.3d 193 (S.D.N.Y. 2023) quoting *Prairie Capital III, L.P. v. Double E Holding Corp.,* 132 A.3d 35, 51 (Del. Ch. 2015). "To be effective, a contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract." Such provisions "identify the specific information on which a party has relied and which foreclose reliance on other information…." The reliance clause in the SPAs does not identify any specific (or even general) information not to be relied on. Moreover, it specifically states that it applies only to "legal or other advice." Moreover, the parties confirmed their intent not to be bound by the four corners of the contract by signing the side agreement, a separate document, simultaneously with the SPAs. ("Pltfs.' Counter 56.1") ¶ 7.

Finally, a fraud claim based on a promise of future performance is not foreclosed by an integration clause. Sport-BLX misstates the current caselaw. "The *Albertsons* and *Black Horse* decisions thus relied on *Abry Partners* for a proposition that *Abry Partners* rejects. The assertion that an integration clause standing alone bars a fraud claim is also contrary to the *Kronenberg* decision,

also written by then-Vice Chancellor Strine, where he observed that "many learned authorities state that typical integration clauses do not operate to bar fraud claims based on factual statements not made in the written agreement."[55] Although a minority of decisions distinguish between misrepresentations of fact (fraud in the factum) and other types of misrepresentation (fraudulent inducement), the prevailing majority rule does not draw that distinction."  See *Trifecta Holdings, supra.*  "Delaware otherwise does not distinguish between fraud and fraudulent inducement. The absence of an anti-reliance clause is therefore dispositive. The integration clause standing alone is not sufficient."  See *id..*

### iii.   Cypress Negligent Misrepresentation Claim Were Not Based Solely On Future Promises.

Plaintiff disputes Sport-BLX claims that the underlying claims allege only future acts. A claim for negligent representation requires (1) a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) failure to exercise reasonable care in obtaining or communicating the information, and (4) a pecuniary loss caused by justifiable reliance upon the false information.  See *Grunstein v. Silva,* 2009 Del. Ch. LEXIS 206 (Del. Ch. Sep. 5, 2014).  The Founders induced to Cypress to make its investment with representations that included a business plan that included management of a sport related fund that earn success fees and a Board seat for a Cypress representative.  ("Pltfs.' Counter 56.1") ¶145.   Cypress can show that the Founders  failed to exercise reasonable care in communicating this false information.

### iv.   Cypress Can Establish Damages

Under Delaware law, the scope of fraud damages is broad, allowing a plaintiff to recover for any injury resulting from the direct and natural consequences of the plaintiff acting on the strength of the defendant's statements, provided that such injuries were within the defendant's contemplation when the fraud was committed.  See *LCT Capital, LLC v. NGL Energy Partners*

*LP*, 249 A.3d 77 (Del. 2021)*.*  Possibly due to the wide variety of factual predicates to § 10(b)

claims, courts have utilized their discretion to endorse several different compensatory damage

theories.  *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 154-55, 92 S. Ct. 1456,

31 L. Ed. 2d 741 (1972) (disgorgement); *Levine v. Seilon, Inc.,* 439 F.2d 328, 334 (1971) (out-of-

pocket damages); *Osofsky v. Zipf*, 645 F.2d 107 at 114 (2d Cir. 1981) (benefit-of-the-bargain

damages); *Esplin v. Hirschi*, 402 F.2d 94, 105 (10th Cir 1968), *cert. denied,* 394 U.S. 928, 89 S.

Ct. 1194, 22 L. Ed. 2d 459 (1969) (consequential damages); *Rolf v. Blyth, Eastman Dillon & Co.,*

*Inc.,* 570 F.2d 38, 49 & n.21 (2d Cir. 1978*) cert. denied,* 439 U.S. 1039, 58 L. Ed. 2d 698, 99 S.

Ct. 642 (1978) (gross economic loss/rescissionary damages).  <u>See</u> *Panos v. Island Gem*

*Enterprises, Ltd., N.V.,* 880 F.Supp. 169, 176 (S.D.N.Y. 1995)

The Board Minutes of the Company reflect a constant lack of capital which eventually

caused the company to become insolvent.  ("Pltfs.' Counter 56.1") ¶145, 146   This lack of

Capital would not exist but for the Founders bad acts in contravention to their representations

and agreements with Cypress. Namely, the siphon of purported excess "rent payments" to their

wholly owned entity Clinton Group as well as the diversion of the $3,983,000 success fee to

Hall's Clinton Group.  Nor would the Company have issues with Capital if the Founders did not

conspire to remove Salerno from the Board.  The Company could have issued new shares for

GlassBridge to purchase rather than sell their own to reap their personal windfall.  It was the

Founder's misrepresentations to Cypress by consistently siphoning Sport-BLX assets into their

own pockets or other entities that they owned and controlled that destroyed the value of the

company and deprived it of all of its assets.  Cypress can establish damages on the numerous

damages theories that the Courts allow.

  **v.**     **<u>Cypress Can Establish Scienter</u>**

The Sport-BLX Parties are also not entitled to summary judgment as to the issue of scienter. Scienter is typically a factual question that cannot be resolved on a motion for summary judgment. See *RMED Intern., Inc. v. Sloan's Supermarkets, Inc.*, 185 F. Supp. 2d 389, 403 (S.D.N.Y. 2002) ("[S]cienter is a question of fact, and therefore 'appropriate for resolution by the trier of fact.'") (quoting *Press v. Chem. Investment Servs. Corp.*, 166 F.3d 529, 537-38 [2d Cir. 1999]). Second Circuit has been lement in allowing scienter issues to withstand summary judgment, even when the inferences are fairly tenuous. <u>See</u> *Id.* at 538

A plaintiff may prove scienter by showing that (1) the defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. <u>See</u> *Id.* Hall and De Perio sold a large portion of their personal shares to GlassBridge for $355 per share just one day before the Sport-BLX annual shareholder meeting. ("Pltfs.' Counter 56.1") ¶118, 119. A spreadsheet prepared by De Perio in connection with the transaction contains a calculation of those "for" and "against" Salerno, demonstrating that one of the intended purposes of the transaction was to remove him from the Board. ("Pltfs.' Counter 56.1") ¶144. Cypress can establish Scienter because of the timing of the defendants bad acts. They occurred directly after the misrepresentations and the signing of the SPAs. <u>See</u> *Trifecta Holdings, supra.*

## B. The Sport-BLX Defendants Breached of the Covenant of Good Faith and Fair Dealing

Under Delaware law, "the implied covenant of good faith and fair dealing attaches to every contract by operation of law." <u>See</u> *Metro. Life Ins. Co. v. Tremont Gp. Hldgs., Inc.*, 2012 Del. Ch. LEXIS 287, 2012 WL 6632681, at *15 (Del. Ch. Dec. 20, 2012). In essence, the implied covenant "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from

17

receiving the fruits of the bargain." <u>See</u> *Edinburgh* quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).  The covenant applies when "the express terms of the agreement can be reasonably read to imply certain other conditions, or leave a gap, that would prescribe certain conduct, because it is necessary to vindicate the apparent intentions and reasonable expectations of the parties." *Miller v. Brightstar Asia, Ltd.,* 43 F.3d 112, 124 (2d Cir. 2022) quoting *Dieckman v. Regency GP LP,* 155 A.3d 358 at 367 (Del. 2017).  "[P]arties are liable for breaching the covenant when their conduct frustrates the overarching purpose of the contract by taking advantage of their position to control implementation of the agreement's terms." *Miller, supra* quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).

The Side Agreement, made specifically to induce Cypress investment, required the Founders to vote their shares in favor of a Cypress representative being elected to the Board of Directors.  The clear intent was that Cypress would have board seat as long as the Founders (who owned approximately 83% of the outstanding shares at the time) were in control of the company.

The breach of the covenant of good faith and fair dealing could not be more clear.   Hall informed Salerno that they would simply "go around" him.  ("Pltfs.' Counter 56.1") ¶148.  DePerio then prepared a spreadsheet calculating the exact amount of shares that they would need to transfer to successfully vote Salerno off of the Board.  ("Pltfs.' Counter 56.1") ¶144.  Although Hall had just informed the Board members that there was little interest in the market for new investments into the company, the Founders nonetheless arranged a sale of their own shares in the precise quantity needed to successfully remove Salerno from the Board.  ("Pltfs.' Counter 56.1") ¶144, 146, 147.   The sale was completed just day before the vote for the Board of Directors.  ("Pltfs.' Counter 56.1") ¶135.   The Founders' transfer of shares to a separate entity

that they own and control exploits a gap in the terms of the Side Agreement that needs to be filled by the implied covenant.  See *Trifecta*, *supra.*

Glassbridge, despite being a publicly traded company was controlled by the Founders. Hall owned 31.1% of Glassbridge.  Deperio was the Chairman of the Glassbridge Board. Strauss, the CEO of Glassbridge, was the portfolio manager at Hall's Clinton Group from 2010-2018.  Strauss was also on the Board of Sport-BLX.  Ruchalski was the CFO of Glassbridge and was also an employee of Hall's Clinton Group since 1997 and was also the CFO of Sport-BLX and on the Sport-BLX board.  Clinton Group paid the salaries of Strauss and Ruchalski through December 15, 2019.  In fact, this transaction, as well all as all transactions between Glassbridge and Hall and the information in this paragraph are listed as related party transactions in the Glassbridge 10Ks.  See Dudelson Decl. Ex. 12, 13, 14.

At the time of the sale, Sport-BLX was in dire need of capital.  ("Pltfs.' Counter 56.1") ¶ 146, 147.  Additionally, Sport-BLX already owed Glassbridge $1,750,000 through a demand note. ("Pltfs.' Counter 56.1") ¶116.   However, instead of issuing new shares to sell to Glassbridge which would satisfy its debt and inject much needed capital into the company, Hall and Deperio breached their duty of fiduciary care to the company by instead selling their own shares as this was the scheme to strip Cypress of its board seat.

Hall and Deperio continued to run Sport-BLX as CEO and board members until they bought back their shares from Glassbridge for the nominal price of $2 per share through another entity that they owned (though not personally as they would then have to vote again in favor of Cypress).  But for the Side Agreement, Cypress would not have invested in Sport-BLX.  Cypress is entitled to made whole due to the Founders breach.

### C.  Cypress Establishes Tortious Interference with Contractual Relations Against GlassBridge.

Cypress has brought claims for tortious interference with contractual relations against Glassbridge for its role in undermining the Side Agreement.  Under Delaware law, "the implied covenant attaches to every contract." *Dunlap, supra* at 442. A claim for breach of the implied covenant "is contractual." *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member*, 50 A.3d 434, 439 (Del. Ch. 2012), *rev'd on other grounds*, 68 A.3d 665 (Del. 2013). As such, the elements of an implied covenant claim are those of a breach of contract claim: "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Fitzgerald v. Cantor*, 1998 WL 842316, at 1 (Del. Ch. Nov. 10, 1998); see also *Whitestone REIT Operating P'ship v. Pillarstone Capital REIT*, C. A. 2022-0607-LWW (Del. Ch. Jan. 25, 2024) ("Because a claim for breach of the implied covenant is contractual, the elements are those of a breach of contract claim.").  Consequently, a breach of an implied covenant is a breach of the contract.[4]

Delaware has adopted the formulation of a claim for tortious interference with contract that appears in the Restatement (Second) of Torts.  *WaveDivision Hldgs., LLC v. Highland Cap. Mgmt., L.P.,* 49 A.3d 1168, 1174 (Del. 2012);   Generally speaking, "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other." Restatement (Second) of Torts § 766 (Am. L. Inst. 1979), Westlaw, (database updated Oct. 2022). Reframed as elements, a plaintiff must plead "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the

---

[4] In fact, Delaware Courts have found that claims of breach of contract and claims for breach of the implied covenant are duplicative.  *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, C.A. No. 2017-0500-JRS (Del. Ch. Jun. 6, 2018).

breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal quotation marks omitted).

As discussed above, Cypress can show that the Founders breached the Side Letter Agreement by their conduct in transferring their shares to an affiliated entity that they control to vote Salerno off of the Board thereby violating the Side Agreement. Further, Glassbridge "knew" about the agreement as Deperio was the Chairman of Glassbridge's Board of Directors. "(A) basic tenet of [Delaware] corporate law, derived from principles of agency law, is that the knowledge and actions of the corporation's officers and directors, acting within the scope of their authority, are imputed to the corporation itself." *Stewart v. Wilmington Trust SP Servs., Inc.*, 112 A.3d 271, 302–03 (Del. Ch. 2015). Deperio was Chairman of the GlassBridge Board and his knowledge of the Side Agreement is imputed to GlassBridge. Dudelson Decl. Ex. 12.

### D. Cypress Derivative Claims

#### i. <u>SPORT-BLX Cannot Demonstrate that there is no Genuine Dispute of a Material Fact.</u>

Cypress has derivative claims for Unjust Enrichment and Tortious interference with Contract claims regarding the sale of the Software Platform, the success fee from the ORIX transaction and the excessive rent paid for an illegal sublease to Hall's Clinton Group. Additionally, Cypress has a derivative claim for Corporate Waste.

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Nemec v. Shrader,* 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 [Del. 1988]). The enrichment of Clinton Group and Securities offend equity and good conscience as it is part of a scheme to siphon assets

out of Sport-BLX.  Likewise, Cypress will be able to show damages in its claim for Corporate Waste.

As discussed above, Cypress can show Tortious Interference with Sport-BLX contractual relations by Clintons and Securities knowledge of the SPAs and business plan of Sport-BLX and their interference.  Cypress disputes defendants factual allegations regarding the relevant transactions.

**The Software Platform**

Defendants sold Sport-BLX's sole remaining asset, its technology platform, which the company had paid over $2 million to develop, <u>not too an independent, unaffiliated entity</u> but to an affiliate, Sport-BLX Securities, owned and controlled by the same Founders in a self-interested transaction.  The price of $225,000, far below the development costs, was without justification.  Contrary to defendant's contention, the record does not demonstrate that Sport-BLX received additional debt forgiveness as consideration for the transaction.  ("Pltfs.' Counter 56.1") ¶79   Sport-BLX had been receiving monthly subscription payments  from Securities equal to $1,650,000.00 per year just before the sale.  ("Pltfs.' Counter 56.1") ¶69.   Securities was enriched in that it obtained the platform for less than two times the amount it was paying monthly to rent the platform and millions less than the cost to develop.

 The transfer was against the fundamental principles of justice in that it was another step in siphoning the remaining assets of Sport-BLX into a new entity created and controlled by the same Founders to carry out the same business plan.  Any inability to operate the platform was intentionally caused by the bad acts of the Founders.  Had the Founders not sold their personal shares in the Glassbridge transaction, and instead sold newly issued shares, the Company would not have the alleged lack of Capital to support the software Platform.

22

**The Orix Transaction**

Defendants contentions are contradicted by the Glassbridge 10K which specifically states that it involved the transfer a "partnership interest in The Sports & Entertainment Fund, L.P." that was part of an entity "sold to GEH Sport LLC, wholly owned by George Hall for $1.00…" ("Pltfs.' Counter 56.1") ¶99.   The Founders had represented to Cypress that this type of transaction and corresponding success, management and advisory fees steered to Sport-BLX. Instead, the Founder's usurped the transaction by funneling it through Clinton Group, wholly owned by George Hall.

**Conclusion**

Accordingly, the Defendants' motion should be denied and the Cypress' Parties cross-motion for summary judgement should be granted in its entirety.

Dated: Brooklyn, New York
        January 6, 2025

*Alexander Dudelson*
_____
ALEXANDER M. DUDELSON (AD4809)
*Attorney for Plaintiffs*
26 Court Street – Suite 2306
Brooklyn, New York 11242
(718) 855-5100