UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------  X
                                                              :
CYPRESS HOLDINGS, III, L.P., individually and                 :
derivatively on behalf of SPORT-BLX, INC.,                    :
                                                              :   Case No. 22-cv-01243 (LGS)
                 Plaintiff,                                   :
                                                              :
       -against-                                              :
                                                              :
GEORGE HALL, JOSEPH DE PERIO, DANIEL                          :
STRAUSS, FRANCIS RUCHALSKI, CESAR                             :
BAEZ, CHRISTOPHER JOHNSON, SPORT-                             :
BLX, INC., SPORT-BLX SECURITIES, INC.,                        :
CLINTON GROUP INC. and GLASSBRIDGE                            :
ENTERPRISES, INC.,                                            :
                                                              :
                 Defendants.                                  :
                                                              :
------------------------------------------------------------  X
```

**DEFENDANTS GLASSBRIDGE ENTERPRISES INC., DANIEL STRAUSS AND FRANCIS RUCHALSKI'S SUPPLEMENTAL REPLY BRIEF IN FURTHER SUPPORT <u>OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

LOEB & LOEB LLP
Christian D. Carbone
David A. Forrest
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendants GlassBridge Enterprises, Inc., Daniel Strauss and Francis Ruchalski*

**ARGUMENT**

**I.      Cypress Cannot Establish its Tortious Interference Claim Against GlassBridge**

Cypress concedes, as it must, that "Hall and De Perio voted all shares of Sport-BLX stock that they owned in favor of Salerno being elected to the Board." (ECF 219 ("Counter Stmt.") at ¶ 132). Cypress nonetheless argues that Hall and De Perio somehow breached a non-existent "implied" term in the Side Agreement providing "that Cypress would have board seat as long as [Hall and De Perio] … were in control of [Sport-BLX]." (ECF 218 ("Opp."), 18, 20). This claim fails for a host of reasons.

First, Cypress does not cite a single case holding that a breach of contract necessary to establish a tortious interference claim may be predicated upon a breach of the implied covenant of good faith and fair dealing, likely because none exist. *See Schinella v. Soyer*, No. 19-cv-8931 (NSR), 2021WL 4255055, at *6 (S.D.N.Y. Sept. 16, 2021) ("The Court is not aware of any cause of action for tortious interference with the implied covenant of good faith and fair dealing").

Second, even assuming that the implied covenant were relevant to the tortious interference claim, it is inapplicable here because the Side Agreement authorized Hall and De Perio's actions. Indeed, the "[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right," nor can a claim for breach of the implied covenant of good faith and fair dealing be based upon "conduct authorized by the agreement." *Nemec v. Shrader*, 991 A.2d 1120, 1125-27 (Del. 2010) (citation omitted). "The implied covenant only applies to developments that could not be anticipated, not developments that the parties simply failed to consider." *Id.* at 1126 (citation omitted). Here, as Cypress concedes, Section 2.A. of the Side Agreement already "required the Founders to vote their shares in favor of a Cypress representative being elected to the Board of Directors." (Opp., 18). And, Cypress, with the assistance of experienced counsel, inserted a tag along rights provision authorizing the Founders "to sell shares of the Company's

common stock that represent more than fifty percent (50%) of the aggregate number of shares then outstanding to a third party purchaser" thus contemplating that Hall and De Perio potentially selling some of their shares in the future. (ECF #213 ("SUMF") ¶ 137). Accordingly, Cypress cannot invoke the implied covenant to contradict voting rights that were considered and bargained for in the Side Agreement. *See Nemec*, 991 A.2d at 1127; *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (declining "to apply the implied covenant here because no gap exists concerning the admission of the Small Holders, and because the admission of new Members and their impact on the Exit Sale process could have been anticipated").

Finally, even if Cypress could establish a breach of the Side Agreement, it cannot establish proximate causation or lack of justification. As detailed in the GlassBridge Parties' moving papers, GlassBridge did not unilaterally cause Salerno's removal from Sport-BLX's board—the overwhelming majority of Sport-BLX's shares were not voted in Salerno's favor (Counter Stmt. ¶¶ 126-27, 132-36)— and GlassBridge acted in order to protect its own economic interests at all times. *See* Counter Stmt. ¶¶ 113-19, 121-124. Cypress does not dispute these facts in opposition with any evidence—much less offer any facts showing that GlassBridge acted with malice or illegality—and therefore concedes that GlassBridge acted with economic justification. *See WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

## II.    Cypress's Corporate Waste Claim Fails as a Matter of Fact and Law

Cypress contends that the sale of Sport-BLX's software for "[t]he price of $225,000, far below the development costs, was without justification." (Opp., 22). But, as detailed in the GlassBridge Parties' moving papers, Cypress failed to produce any evidence of the software's value, which is fatal to its claim of inadequate consideration. *See McCrae Assocs., LLC v. Universal Capital Mgmt., Inc.*, 746 F. Supp. 2d 389, 401 (D. Conn. 2010); Counter Stmt. ¶ 87.

2

In any event, Cypress's argument misses the point. Under Delaware law, if "there is *any substantial* consideration received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude *ex post* that the transaction was unreasonably risky." *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (citations omitted). The only evidence in the record shows that Sport-BLX received a total of $1,599,000, including $225,000 cash and $1,374,000 in debt forgiveness, in exchange for the software. (Counter Stmt. ¶ 77; SUMF ¶¶ 79-81.) [1] That Sport-BLX received "any substantial consideration" is confirmed by the only expert valuation of the software in the record—from Defendants' software engineering and computer science expert Dr. Eslamimehr—which determined that the software was sold for a fair price given the software code quality and the wide availability of free platforms. (SUMF ¶¶ 84, 86). Furthermore, the Sport-BLX board agreed to the sale price after extensive deliberation, demonstrating that they acted in good faith. SUMF ¶¶ 62-63, 72-74, 76-77, 79-84, 86-87.[2] Simply put, because Sport-BLX received "substantial consideration" and Cypress failed to adduce any evidence casting doubt on the "good faith judgment" by the Sport-BLX board "that in the circumstances the transaction [was] worthwhile," Cypress's waste claim fails. *Brehm*, 746 A.2d at 263.

---

[1] Cypress's contention that Sport-BLX did not receive "additional debt forgiveness as consideration for the transaction" because "Sport-BLX had been receiving monthly subscription payments" similarly fails. (Opp., 22). Sport-BLX had become unable to provide design, development, professional or other project services related to the platform, and had thus stopped performing its obligations under the subscription agreement. (SUMF ¶¶ 73-74.) Sport-BLX Securities was thus entitled to take the software from Sport-BLX without further payment. (SUMF ¶¶ 72-74.). And, as reflected in GlassBridge's 2021 10-K, Sport-BLX Securities sold $1,500,00 of Sport-BLX's debt for $126,000 (a benefit to Sport-BLX of $1,374,000). (SUMF ¶ 79). Sport-BLX's board considered this "debt cancelation" as a benefit before the sale. (SUMF ¶ 80).

[2] Strauss and Ruchalski properly relied upon the Sport-BLX board's exercise of its business judgment. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 122 (Del. 2006).

3

**CONCLUSION**

Accordingly, the GlassBridge Parties' motion should be granted in the entirety.

Dated: New York, New York
       January 24, 2025         Respectfully Submitted,

                               LOEB & LOEB LLP

                               By: */s/ Christian D. Carbone*
                                   Christian D. Carbone (ccarbone@loeb.com)
                                   David A. Forrest (dforrest@loeb.com)
                                   345 Park Avenue
                                   New York, New York 10154
                                   (212) 407-4000

                              *Attorneys for Defendants GlassBridge Enterprises Inc., Daniel Strauss and Francis Ruchalski*

**Certificate of Compliance with Local Civil Rule 7.1(c)**

I hereby certify that the number of words in the foregoing memorandum of law, according to the word count of the word processing computer program utilized, inclusive of material contained in footnotes and endnotes, and exclusive of the caption, any index, table of contents, table of authorities, signature block, and this certificate of compliance, is 1,055.

Dated: New York, New York
January 24, 2025

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Christian D. Carbone*
　　　　　　　　　　　　　　　　　　　　　　　CHRISTIAN D. CARBONE

240677178