UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────── x

CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX,
INC.,

                      Plaintiff,

    v.                                          Civil Action No. 1:22-cv-1243-LGS

GEORGE HALL, JOSEPH DE PERIO,
DANIEL STRAUSS, FRANCIS
RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX,
INC., SPORT-BLX SECURITIES, INC.,
CLINTON GROUP INC., and
GLASSBRIDGE ENTERPRISES, INC.,

                      Defendants.
───────────────────────────────── x

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## L.R. 56.1 STATEMENT OF MATERIAL FACTS

Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc. ("Sport-BLX Securities"), Clinton Group, Inc. ("Clinton Group"), George Hall, Cesar Baez, Joe De Perio, and Christopher Johnson (together the "Sport-BLX Parties"), Defendants in this Action, and Plaintiff Sport-BLX, Inc. in related case Civil Action No. 1:22-cv-8111, respectfully submit their statement in response and opposition to the Plaintiff's Rule 56.1 Statement in support of their motions for summary judgment.

### Responses to Cypress 56.1 Statements

140. Also for the first time, Sport-BLX alleged "Salerno continued his dishonest conduct the same day by separately revising the Side Letter to define Cypress as "Salerno"; until

then, that defined term referred only to Salerno individually. This revision to the Side Letter made by Salerno himself once more informed Sport-BLX that Cypress and Salerno were alter egos, and that Salerno was Cypress's sole owner. At no time did Salerno convey, directly or indirectly, that Cypress was, in fact, a pooled investment vehicle owned by a diverse array of 18 separate limited partners, including multiple trusts and corporate entities and a convicted felon." 1:22-cv-08111-LGS - ECF 40, ¶ 30.

**140 RESPONSE**: Disputed. Despite its numerous attempts to obtain Cypress' ownership information from Cypress Manager Salerno during the time period giving rise to this litigation, SportBLX did not learn until after January 27, 2023 that Cypress was, in fact, a pooled investment vehicle owned by a diverse array of separate limited partners, including a convicted felon, multiple trusts and various corporate entities, when Cypress disclosed that information pursuant to this Court's Order entered on that date. Please see 21:2-cv-1243 – ECF 77.

141.   From June though October 2019, Sport-BLX was issuing new shares to purchasers at $263.40 per share as part of their third round of financing. See Dudelson Declaration Ex. 10.

**141 RESPONSE**: Undisputed.

142.   In December 2019, Salerno notified Hall that he was willing to disclose the beneficial owners of Cypress directly to the Sport-BLX. See Dudelson Declaration Ex. 9.

**142 RESPONSE**: Disputed. Contrary to Cypress' assertion, Dudelson Exhibit 9 does not state that Salerno "was willing to disclose the beneficial owners of Cypress directly to the Sport-BLX." Exhibit 9 is a December 23, 2019 email in which Salerno offers to "provide the Cypress information to be included in the application <u>as I have communicated prior</u>."

(Dudelson Exh. 9 at 1 [emphasis added].) Those prior communications were made in August 9 and August 16, 2019 emails and at the November 26, 2019 Board Meeting. Salerno first refused the company's disclosure request on August 9, writing, "Let's discuss as my concern is my estate plan structure which I am not inclined to make public." *See* Stecklow Decl. Ex. 17, SPORTBLX00050629. On August 16, Salerno wrote, "I am willing to provide FINRA with ownership information that they want however I am not willing to provide it to you or any other sport-blx directors as you do not have a right to this information at this time. *See* Stecklow Decl. Ex. 21, SPORTBLX140202. At the November 26, 2019 meeting Salerno maintained his refusal, stating █████████████████████████████████████████████ and that "█████████████████████████████████████ █████████████ and "████████████████████████████████ ████████ (Stecklow Decl. Ex. 23, CYPRESS00000002, at 12:08-12:45; Stecklow Decl. Ex. 24, at 14:40-14:55.) In no prior communication did Salerno say that he was willing to disclose the beneficial owners of Cypress directly to Sport-BLX. It is undisputed that Salerno never did disclose

Approximately a year and a half after his first refusal in August 2019, Salerno himself confirmed that in December 2019 he was unwilling to provide the information directly to SportBLX, and that he remained unwilling to provide the information directly to SportBLX. In a January 2021 telephone conversation Salerno recorded, Mr. Hall asked, ██████████████████████████████████████████████████ Salerno replied: ████████████████████████████████████████████████ ██████████████████████████████ He further stated ████████████████

3

███████████████████████████████████████

███████████████████ Mr. Hall concluded, █████████████

█████████████████ (Stecklow Exh. 86, CYPRESS00000004, at 16:00-17:50.)

[emphasis added.]

143. In December 2019, Salerno notified Deperio that he was willing to disclose the beneficial owners of Cypress directly to the Sport-BLX. See Dudelson Declaration Ex. 10

**143 RESPONSE**: Disputed. Contrary to Cypress' assertion, Dudelson Exhibit 10 does not state that Salerno "was willing to disclose the beneficial owners of Cypress directly to the Sport-BLX." Exhibit 10 is a December 27, 2019 email in which Salerno states "Per our Board call in November, George agreed to have my counsel speak to BLX counsel, Mr. Mack. When they spoke, my counsel communicated to Mr. Mack that I am willing to provide the information for the FINRA application. Mr. Mack directed us to communicate same to George, which I did," (Dudelson Exh. 10 at p. 1), referring to Salerno's December 23, 2019 email, Dudelson Exhibit 9, in which he repeated the offer he "communicated prior." (*See supra* ¶ 142 Response.)

At that same November 26, 2019 meeting Salerno asked Mr. Mack to speak with his counsel to attempt ████████████████████████████████████ ██████████████████████████ Mr. Mack replied directly to Mr. Salerno ████████████████████████████████

████████████████████████████████████████

4

██████████████████████████ (Stecklow Decl. Ex. 23, CYPRESS00000002, at 1:06:45 - 1:07:21.)

Approximately a year after that meeting, Salerno himself confirmed that in December 2019 he was unwilling to provide the information directly to SportBLX, and that he remained unwilling to provide the information directly to SportBLX. In a conversation Salerno recorded, Mr. Hall asked, ████████████████████ ████████████ Salerno replied: ████████████ ████████████████████████████████████████ He further stated ████████████████████████████████ ████████████████████████████ Mr. Hall concluded, ████████████████████████ (Stecklow Exh. 86, CYPRESS00000004, at 16:00-17:50.) [emphasis added.]

144. Deperio prepared a spreadsheet to calculate the number of shares needed to be sold to Glassbridge to get Salerno voted off of the Sport-BLX Board. See Dudelson Declaration Ex. 4.

**144 RESPONSE**: Disputed. Dudelson Exhibit 4 is a calculation of expected votes made in advance of an election for Board seats in which Salerno was the only Director up for re-election and does not show that the purpose of the sale was to get Salerno voted off the Sport-BLX board. The spreadsheet does not reflect the final vote, in which Salerno was voted off the Sport-BLX board of directors on December 23, 2019 by the vast majority of Sport-BLX's <u>unaffiliated</u> shareholders, See Stecklow Decl. Ex.32, SPORTBLX0284469, (Deperio, Hall, and Glassbridge are affiliated). Further Hall testified that having

5

Glassbridge as a majority shareholder provided several advantages to Sport-BLX, including that it would be a "consolidated affiliate and take care of all the accounting and the public company documents, public company reporting." (*See* Stecklow. Ex. 63-A, Hall Dep. Tr. Day 2, at 543:18 -544:13.)

145. Hall conceded that a sports related fund was part of Sport-BLX business plan. In response to "Mr. Salerno stating that Mr. Hall represented there would be a fund that would generate revenues for the Company," Hall "explains that the effort to raise capital for a fund was unsuccessful." See Dudelson Dec. Ex. 16 at GBE_0014669.

**145 RESPONSE**: Disputed. Hall did not "concede" that a sports related fund was part of Sport-BLX's business plan. The quoted minutes indicate only that Salerno alleged, without support, that he had been told that in the past. Salerno testified about representations made to him regarding the existence of a fund prior to investing: "I wouldn't say it was guaranteed, no," and that the only representation made that if a fund were established, it would be part of Sport-BLX. (Stecklow Exh. 87 Salerno Depo. Day 2, at 105:3-6.) He further testified as follows: "Q: So you understood when you invested, there was no fund, but as part of the company's business model, it would seek to create a fund and get revenue from it, is that a fair statement? A: Yes, I believe so." (*Id.*, at 105:11-15.)

146. In its meeting on August 14, 2019, the Sport-BLX Board discussed the need to lower its valuation or convertible preferred stock to raise capital. Stecklow Decl. Ex. 19.

**146 RESPONSE**: Disputed. The SportBLX Board did not discuss a "need" to lower its valuation or convertible preferred stock in order to raise capital, contains no language to support the assertion that the Company would be unable to raise capital without lowering

6

its valuation or offering convertible preferred stock, and contains no discussion regarding solvency.

Stecklow Decl. Ex. 19 is the minutes of the August 14, 2019 Board meeting. They state: "Mr. Hall led a discussion of the Company's capital requirements in the near future. A discussion ensued about potential structures to make a fundraising attractive to more potential shareholders, including a lower pre-money valuation or adding a convertible preferred stock tranche to the Company's capital stock. A discussion ensued, and no members of the Board objected to this recommended course of action." Stecklow Decl. Ex. 19, at 2. Salerno attended the Board meeting as a Director, and did not object to this course of action. *Id.*, at 1, 2.

147. In a Special Meeting of the Sport-BLX Board held on December 9, 2019, Hall led a discussion on the need to raise capital for the Company. See Dudelson Decl. 5.

**147 RESPONSE**: Undisputed. At the December 9, 2019 Board meeting, all of the Board members except Salerno agreed that $50-$60 per share was an appropriate price at which to issue new shares as a means to convert an outstanding demand note to capital. (Stecklow Exh. 88, CYPRESSS0000007 at 21:18 to 22:08; 22:45 to 23:30; 25:15-25:34; 28:27 to 29:10; 30:30 to 31:18; 34:54 to 35:30; 46:05 to 46:35; 1:00:00 to 1:00:52; 1:01:04 to 1:02:00; 1:02:10 to 1:02:55; 1:03:55 to 1:06:30.) Dudelson Exhibit 5 states: "Mr. Salerno opined that the Company should do nothing until . . . another financing source is evidenced." (Dudelson Exh. 5, at 3.) The $50-$60 per share price for the conversion discussed in December took place after the November meeting in which it became clear that Salerno would not disclose Cypress' ownership information and the Company as a result would not be able to obtain a broker/dealer license.

7

148. In an email to Salerno on July 20, 2019, Hall informed Salerno that they would "work around you". See Dudelson Decl. Ex. 3.

**148 RESPONSE**: Disputed. The email states in full "This is why we can't put a high-class board together with your idiotic behavior. So we will have to work around you. It will not be as good for the company but we'll manage." The email does not support the assertion that the Founders intended to remove Salerno from the Board. Hall explained further in a Board meeting on August 4, 2019, ▇▇▇▇▇▇



▇▇▇ [Stecklow Exh. 89, CYPRESS0000016, at 50:50-51:25; 36:10-36:54].

Dated: New York, New York
January 24, 2025

WYLIE STECKLOW PLLC

Wylie Stecklow, Esq.
Jon Avins, Esq.
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
New York, NY 10019
(212) 566 8000
ECF@WylieLAW.com