UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYPRESS HOLDINGS, III, L.P., individually and derivatively on behalf of SPORT-BLX, INC., <br><br> Plaintiff, <br><br> v. <br><br> GEORGE HALL, JOSEPH DE PERIO, DANIEL STRAUSS, FRANCIS RUCHALSKI, CESAR BAEZ, CHRISTOPHER JOHNSON, SPORT-BLX, INC., SPORT-BLX SECURITIES, INC., CLINTON GROUP INC., and GLASSBRIDGE ENTERPRISES, INC., <br><br> Defendants. | Civil Action No. 1:22-cv-1243-LGS <br><br> **Related case:** <br><br> Civil Action No. 1:22-cv-8111-LGS |

# CYPRESS HOLDINGS, III, L.P. AND MICHAEL SALERNO'S REPLY BRIEF IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR SUMARY JUDGMENT

ALEXANDER M. DUDELSON, ESQ.
26 Court Street – Suite 2306
Brooklyn, New York 11242
(718) 855-5100
(718) 624-9552 FAX

*Attorneys for Cypress Holdings, III, L.P.
and Michael Salerno*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..……..ii

LEGAL ARGUMENT………..……………………………………………………………...…..1

I.     CYPRESS COUNTERSTATEMENT OF FACTS CONFORMS TO THE
       REQUIREMENTS OF RULE 56.1……………………………… …..…..….…..…1

II.    SPORTBLX CLAIMS FOR FRAUD AND BREACH OF FIDUCIARY DUTY
      FAIL AS A MATTER OF LAW……………………………………………………..….4

      A. Salerno Had No Duty To Disclose The Investors Of Cypress As A Director………..…4

      B. Cypress Had No Duty To Disclose The Investors Of Cypress As A Shareholder……..4

      C. Sport-BLX Cannot Establish a Breach………………………………………………5

      D. Sport-BLX Cannot Prove Damages………………………………………….………6

III.   SPORT-BLX 10B-5 AND COMMON LAW FRAUD CLAIMS
      ARE UNTIMELY AND MUST BE DISMISSED……………………………….…….7

CONCLUSION……………………………………………………………………...………..…..8

# **TABLE OF AUTHORITES**

## **Cases**

*Case Citations:*

*Basho Techs. Holdco B, LLC v. Georgetown Basho Inv'rs, LLC*,
2018 WL 3326693 (Del. Ch. 2018)……………………………………………….………5

*Diesenhouse v. Social Learning and Payments, Inc.,* .
2022 WL 3100562 (S.D.N.Y. 2002) ……………………………………………………7, 8

*In re Columbia Pipeline Grp,*
299 A.3d 393 (Del. Ch. 2023)……………………………………………………………...4

*In re W. Nat'l Corp. S'holders Litig.,*
2000 WL 710192 (Del. Ch. May 22, 2000)……………………………………………....5

*In re Walt Disney Co. Derivative Litigation*,
907 A.2d 693 (Del. Ch. 2005)……………………………………………………………...4

*McGowan v. Stanley,*
2024 WL 5038633 (2d Cir. Dec. 9, 2024)………………………………………………....1

*Stone v. Ritter,*
911 A.2d 362 (Del. 2006)………………………………………………………………….4

*Terra Sec. Asa Konkursbo v. Citigroup, Inc.,*
740 F.Supp.2d 441, 450 (S.D.N.Y. 2010)…………………………………………………8

*Tornetta v. Musk,*
310 A.3d 430 (Del. Ch. 2024)…………………………………………………………..4, 5

## Statutes

26 CFR § 301.7701-2(a)…………………………………………………………………...7

Cypress Holdings, III, L.P. and Michael Salerno ("The Cypress Parties") respectfully submit this reply memorandum in support of their cross-motion for summary judgment in the related case: Civil Action No. 1:22-cv-8111-LGS.

## **LEGAL ARGUMENT**

**I.  CYPRESS COUNTERSTATEMENT OF FACTS CONFORMS TO THE REQUIREMENTS OF RULE 56.1.**

The Sport-BLX parties argue that the Cypress Counterstatement of Facts fails to cite controverting evidence and grossly misrepresents the evidence it does cite. (Sport-BLX Reply Br. at 2). The contention is untenable. In fact, it is the Sport-BLX parties that state conclusions that do not logically follow from the evidence that is cited in support of their Statement of Facts. Plaintiff's Counterstatement disputes the unwarranted conclusions contained in Sport-BLX Rule 56.1 Statement. Rule 56.1 requires that "[t]he nonmoving party must respond by 'admitting or denying' each statement, and may, 'if necessary,' provide a 'statement of additional material facts as to which it is contended that there exists a genuine issue to be tried," again supported by citation to admissible evidence. *McGowan v. Stanley,* 2024 WL 5038633 at 1 (2d Cir. Dec. 9, 2024).

Sport-BLX contends that in response to Paragraph 81, Cypress "grossly" misrepresents the cited evidence which consists of the Glassbridge FY 2021 Form 10-K. (Sport-BLX Reply Br. at 2) In its Counterstatement, Cypress disputes Sport-BLX assertion that the Company received consideration of $1,599,999 in exchange for the transfer of sole ownership of all rights to the Platform to SportBLX Securities in December 2021. ("Pltfs.' Counter 56.1" ¶81). The cited evidence (2021 10-K) states explicitly that the proprietary code was sold for $225,000. The relevant portion of the 10-K states:

1

> On December 30, 2021, the Company completed a series of transactions for the purpose of disposing of its interest in SportBLX, described below:
>
> ● On December 21, 2021, SportBLX sold proprietary code to S-BLX Securities, a related party, for $225,000.
>
> ● On December 24, 2021, SportBLX repurchased $1,500,000 of its debt from FDC for $126,000.  FDC is controlled by George Hall and Joseph A. DePerio, who are beneficial owners of the Company.
>
> ● Finally, on December 30, 2021, the Company completed the disposition of its entire interest in SportBLX, selling all of its shares to FDC for $137,038.

(Stecklow Decl. Ex. 57).

Sport-BLX argues that Cypress ignores the two other transactions cited in the 10-K. Sport-BLX appears to be arguing that all three transactions are part of the sale of the proprietary code. However, the cited 10-K simply does not state that the latter two transactions are part of the sale of the code.   Further, S-BLX Securities is not even a party to the December 24, 2021 transaction between SportBLX and Fintech Debt Group ("FDC").  Confusingly, even Sport-BLX does not argue that the third transaction, "selling all of its shares to FDC for $137,038" was part of the sale of the code thereby refuting its own reasoning.  Cypress dispute of Paragraph 81 was reasonable and logically follows from the cited evidence.

Sport-BLX contends that in response to Paragraph 103, Cypress cites only to a statement made <u>by</u> Salerno at a Board Meeting.  (Sport-BLX Reply Br. at 3).   This contention is inaccurate as the cited minutes of the Board meeting also contain a response by defendant Hall: "Mr Salerno continues that Mr Hall represented there would be a fund that would generate revenues for the Company.  Mr Hall explains that the effort to raise capital for a fund was unsuccessful." ("Pltfs.' Counter 56.1" ¶81 *citing* Dudelson Decl. Ex. 16 at p. 3).  Hall's response was not a

denial that the representation was made. In fact, his response that an effort was made to raise capital for a fund indicates that a fund was, in fact, part of the Sport-BLX business plan.

Sport-BLX maintains that Cypress response to Paragraph 11 that the due diligence materials do not state that revenue would be generated exclusively by broker dealer operations was somehow improper. However, the spreadsheet cited by Sport-BLX as evidence shows several categories of revenue in addition to broker dealer revenue. In the tab labeled "Detailed P&L," broker dealer revenue is specifically categorized as "BD Revenue" and "BD." The detailed P&L also lists additional categories of revenue such as "SportBLX," "Partner Revenue" and "Other Revenue," demonstrating that the revenue was not exclusively broker dealer. See Stecklow Decl. Ex. 31, SPORTBLX00023177, Tab: Detailed P&L, rows 14-24.

Sport-BLX argues that Cypress responds with a non-sequitur to Paragraph 34 with respect to Salerno's disclosure of Cypress' beneficial owners. (Sport-BLX Reply Br. at 4). In Paragraph 34, Sport-BLX quotes a recording of a November 26, 2019 Board Meeting, but then concludes that "Salerno did not agree to disclose the beneficial ownership information required of the Company to apply for and obtain for a FINRA license." Sport-BLX did not limit its assertion of Salerno's non-disclosure to the meeting or to a specific timeframe. Cypress response is: "Disputed. Salerno did agree to disclose the beneficial ownership information in December 2019. See Dudelson Decl. Ex. 9." Cypress is not disputing the cited evidence of the audio and recording statements of August and September 2019. Instead, Cypress is disputing Sport-BLX's unjustified conclusion from those statements that Salerno never agreed to disclose Cypress owners directly to Sport-BLX. Since Salerno did agree to disclose the beneficial owners of Cypress directly to the company in December of 2019, Sport-BLX Statements 24, 28, 31 and 34 were disputed.

3

## II.   SPORTBLX CLAIMS FOR FRAUD AND BREACH OF FIDUCIARY DUTY FAIL AS A MATTER OF LAW.

### A. Salerno Had No Duty To Disclose The Investors Of Cypress As A Director.

Sport-BLX argues that Salerno breached his fiduciary duty as a board member by failing to disclose the beneficial owners of Cypress. However, Salerno, as director, had no duty to disclose the investors of Cypress. The disclosure at issue was completely unrelated to any actions of the Board of Directors and their management of the company.

The cases cited by Sport-BLX are inapplicable as they all pertain to actions taken by the Board of Directors in their management of the company. In *Stone v. Ritter,* 911 A.2d 362 (Del. 2006), the claim was that the Board breached their duty of care by causing the company to commit violations of the law. *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693 (Del. Ch. 2005), the alleged breach involved the Board's approval of a compensation package. In re Columbia Pipeline Grp, 299 A.3d 393 (Del. Ch. 2023)*,* the alleged breached involved a Board decision to sell corporate assets.

The decision whether to disclose the entity's beneficial owners was not a decision that the Board was making in their management of the company, but rather an individual shareholder disclosure. Since the decision to disclose Cypress' beneficial owners was not related to any actions of the Board, Salerno did not have a duty to disclose as a Board member.

### B. Cypress Had No Duty To Disclose The Investors Of Cypress As A Shareholder.

Sport-BLX argues that Cypress had a duty to disclose its beneficial owners, because it had "transaction-specific" control. Again, the cases cited by Sport-BLX are inapplicable to the facts at hand and cannot establish a duty. In *Tornetta v. Musk,* 310 A.3d 430 (Del. Ch. 2024), the Court found that Musk had both general control and transaction specific control because despite

not having a mathematical majority of shares, he exercised "boardroom and managerial supremacy." *Id.* at 500-511.

"To establish transaction-specific control, a plaintiff must show that the stockholder 'exercise[d] actual control over the board of directors during the course of a particular transaction[.]'" *Id.* at 500 *quoting In re W. Nat'l Corp. S'holders Litig.,* 2000 WL 710192, at *20 (Del. Ch. May 22, 2000). "One means of establishing that a defendant wields control sufficient to impose fiduciary duties is for the plaintiff to show that the defendant has the ability to exercise a majority of the corporation's voting power." *Basho Techs. Holdco B, LLC v. Georgetown Basho Inv'rs, LLC*, 2018 WL 3326693 at 25 (Del. Ch. 2018). "A defendant without majority voting power can be found to owe fiduciary duties if the plaintiff proves that the defendant in fact "*exercises control* over the business and affairs of the corporation." *Id.* at 25. "To show that the requisite degree of control exists generally, a plaintiff may establish that a defendant or group of defendants exercised sufficient influence 'that they, as a practical matter, are no differently situated than if they had majority voting control.'" *Id.*

Sport-BLX does not argue that Cypress or Salerno were able to exercise a majority of the corporation's voting power or that they had any influence that would equate to majority voting control.  Since Cypress did not exercise actual control over the Board during the course of the transaction or at any other time, Cypress did not have "transaction specific control" and consequently had no fiduciary duty to the company.

C. **Sport-BLX Cannot Establish a Breach.**

Even if a duty can be established, it was not breached in that Salerno agreed to provide the requested information in the form as required by FINRA directly to Sport-BLX in December 2019.  In Salerno's 12/23/19 email to Hall, he states:  "As for the finra application, I am more

5

than happy to provide the Cypress ownership information to be included in the application as I have communicated prior. That said, I would just like to be assured that such information will be maintained on a confidential basis, within the company."  Given that Salerno is requesting that the information be kept confidential within the company, he is clearly stating that he is willing to provide the information directly to the company. (Dudelson Decl. Exhibit 9, SPORTBLX00052396).  Salerno's reference to his prior communication of his willingness to disclose directly to Sport-BLX was made through his counsel to counsel for Sport-BLX. (See Dudelson Decl. Ex. 10, SPORTBLX00052409.)  It was ultimately the Founder's decision to not pursue the broker dealer license from FINRA.

### D. **Sport-BLX Cannot Prove Damages**.

The value of Sport-BLX did increase after the Founder's decision to pivot to a technology venture. Regardless of how Sport-BLX attempts to spin the transaction, on December 12, 2019, the value of the Sport-BLX was $355.00 per share. This value is demonstrated by Hall's and Deperio's sale of a substantial amount of their own shares representing of 40% of all shares outstanding to GlassBridge, a public company. . ." ("Pltfs.' Counter 56.1" ¶118, 199, 144). This sale of 55,000 shares of Sport-BLX for $355 per share on December 12, 2019 establishes the value of Sport-BLX on that date. It was over a year and half later, on July 31, 2021, that the notes used as part of the purchase price were renegotiated between GlassBridge, Hall and Deperio. (See Dudelson Decl. Ex. 14, at p. 17 of 19). The eventual renegotiation of the notes over a year and a half after the sale is irrelevant to the value at the time of the sale but likely reflects ensuing events after the Founders December 2019 sale [1].

---

[1] While Hall and Deperio agreed to accept less than face value on their notes, part of the renegotiation included the purchase of Sport-BLX notes from Glassbridge with a face value at $4,176,102.11 at the deeply discounted price of $400,000. (Dudelson Decl. Ex. 14, at p. 17 of 19).

### III. SPORT-BLX 10B-5 AND COMMON LAW FRAUD CLAIMS ARE UNTIMELY AND MUST BE DISMISSED.

Sport-BLX causes of action for 10b-5 violations and common law fraud are untimely and should be dismissed. Sport-BLX concedes that their claims were first made in their Amended Complaint filed on August 3, 2022. (Sport-BLX Reply Br. at 12). Sport-BLX claims that Salerno made misrepresentations to induce the Founders to allow Cypress investment in Sport-BLX on February 28. 2019. ("Pltfs.' Counter 56.1" ¶ 139, 140). Specifically, Sport-BLX alleges that Salerno made misrepresentations that Cypress was wholly owned by Salerno. ("Pltfs.' Counter 56.1" ¶ 140).

Sport-BLX argues that it could not have known of Salerno's alleged misrepresentation until the pendency of this action when the beneficial owners of Cypress were disclosed. (Sport-BLX Br. at 12). However, the specific identities of the Cypress investors are immaterial to Sport-BLX claim.   The central question is when Sport-BLX should have known whether or not Cypress was wholly owned by Salerno. See *Diesenhouse v. Social Learning and Payments, Inc.,* 2022 WL 3100562 at 5 (S.D.N.Y. 2002) ("…the date when a reasonably diligent investor conducting an investigation would have discovered the violation or should have known of the violation.")

As Sport-BLX argues and relies on in their opening brief, public records were available at the time of Cypress' February 28, 2019 stock purchase showing that Cypress had more than one investor. (Stecklow Decl. Ex. 4; Pltfs.' Counter 56.1 ¶ 6).  Additionally, as sophisticated investors, Hall and Deperio should have known that, by law, a Delaware Limited Partnership requires more than one owner. 26 CFR § 301.7701-2(a).  See *Brock Capital Grp. v. Siddiqui,* 2022 WL 2047589  at 13  (S.D.N.Y. Jun. 7, 2022) ("This failure is particularly significant considering that Brock is a sophisticated party and thus is held to a higher standard.")

7

Most importantly, however, the Founders could have simply asked Salerno before accepting Cypress' investment. Instead, they conducted no due diligence whatsoever when they had every opportunity to do so. See *Terra Sec. Asa Konkursbo v. Citigroup, Inc.,* 740 F.Supp.2d 441, 450 (S.D.N.Y. 2010) (finding no reasonable reliance where a sophisticated plaintiff failed to conduct minimal diligence regarding information presented in an investment presentation).

Since Sport-BLX fraud claims accrued on February 28, 2019, the date of the sale and when Sport-BLX should have known that Cypress was not wholly owned by Salerno, both the 10b-5 claim and common law fraud claim should be dismissed as untimely. *Diesenhouse,* supra at 5.

## CONCLUSION

Accordingly, the Cypress' Parties cross-motion for summary judgement should be granted in its entirety.

Dated: Brooklyn, New York
   February 5, 2025

*Alexander Dudelson*
ALEXANDER M. DUDELSON, ESQ.
*Attorney for Cypress Holdings, III, L.P.*
*and Michael Salerno*
26 Court Street – Suite 2306
Brooklyn, New York 11242
(718) 855-5100

8