UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
CYPRESS HOLDINGS, III, L.P., individually
and derivatively on behalf of SPORT-BLX,
INC.,

                           Plaintiff,

    v.                                        Civil Action No. 1:22-cv-1243-LGS

GEORGE HALL, JOSEPH DE PERIO,
DANIEL STRAUSS, FRANCIS
RUCHALSKI, CESAR BAEZ,
CHRISTOPHER JOHNSON, SPORT-BLX,
INC., SPORT-BLX SECURITIES, INC.,
CLINTON GROUP INC., and
GLASSBRIDGE ENTERPRISES, INC.,

                           Defendants.
---------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION SEEKING SANCTIONS PURSUANT TO FED.R.CIV.PR. R. 11(b)(3-4)

Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc. ("Sport-BLX Securities"), Clinton Group, Inc. ("Clinton Group"), and George Hall ("Defendants") respectfully submit this memorandum of law in support of their Motion Seeking Sanctions against Michael M. Salerno, Cypress Holdings III, L.P. ("Cypress," together with Salerno, "Plaintiffs"), and/or the Law Office of Alexander M. Dudelson.

## PROCEDURAL HISTORY

On December 4, 2024, Defendants filed motions for summary judgment in this case and in related case No. 1:22-cv-8111. Defendants filed a detailed Local Rule 56.1 Statement (Dkt. 208, "Sport-BLX 56.1") and, with the Court's permission, eighty-five Exhibits, including audio recordings of many of the central events at issue in both matters. On January 6, 2025, Plaintiffs filed their Local Rule 56.1 Statement (Dkt. 216, "Cypress/Salerno 56.1") and memorandum of law (Dkt. 218, "Cypress/Salerno Memo of Law") in Opposition to Defendants' motions and in support to their motion for summary judgment seeking dismissal of Sport-BLX's claims ("Cypress/Salerno motion"). Defendants filed their Rule 56.1 Counterstatement (Dkt 233, "Sport-BLX Counter Statement") and memorandum of law in Opposition to the Cypress/Salerno motion and Reply in Further Support of Their Motion (Dkt. 234, "Sport-BLX Reply Memo") on January 25, 2025.

On January 27, 2025, Defendants served on Plaintiffs a detailed 21-day Rule 11 safe harbor letter showing that several of the factual contentions and the denials of Sport-BLX's factual contentions in the Cypress/Salerno Memo of Law and in the Cypress/Salerno 56.1 utterly lacked evidentiary support and were indisputably false. On February 4, 2025, Defendants sent Plaintiffs a draft copy of the present motion for sanctions. On February 5, 2025, Plaintiffs filed their Reply Memorandum of Law (Dkt. 242, "Cypress/Salerno Reply Memo".)

In their Reply Memo, Plaintiffs maintained several of the baseless factual contentions addressed in Sport-BLX's draft motion and prior safe harbor letter. In addition, Plaintiffs made new arguments based on factual misrepresentation of the evidence. On February 14, 2025, Defendants sent a copy of this motion to Plaintiffs' counsel and renewed their 21-day Rule 11 safe harbor notice as of that date. Plaintiffs were therefore required to "withdraw[] or appropriately correct[]" their knowingly false factual contentions by March 7, 2025. Plaintiffs did not do so.

## ARGUMENT

Plaintiffs' Rule 56.1 Statement and the Cypress/Salerno Memo of Law are rife with contentions and denials of fact that are not only unsupported by the evidence but explicitly and definitively disproven by the evidence cited and submitted by Defendants. In plain English, Plaintiffs' papers rely on knowing falsehoods, some of which are disproven by audio recordings secretly made by Michael Salerno. All of the knowing falsehoods made in the Cypress/Salerno submissions and which are addressed here are material to the parties' respective motions. The violations of Rule 11 complained of here are patent and egregious. None are ambiguous. None could possibly have been made by any attorney who conducted a reasonable inquiry. The Court should therefore Order that Plaintiffs and/or the Law Office of Alexander M. Dudelson pay Defendant's fees and costs associated with briefing their Motion for Summary Judgment and this Rule 11 motion.

### I.  Legal Standard

Federal Rule of Civil Procedure R. 11 mandates that an attorney who presents to the Court a written motion conduct an inquiry reasonable under the circumstances and that, based upon on that inquiry, the "the factual contentions have evidentiary support" and "the denials of factual contentions are warranted on the evidence." FRCP R. 11(b)(3-4). Indeed, an attorney presenting a summary judgment motion or opposition certifies to the Court that he or she has in fact conducted

2

such an inquiry and that the factual contentions and denials presented to the Court are supported by evidence. The Second Circuit has repeatedly emphasized that Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *AJ Energy LLC v Woori Bank*, 829 Fed Appx 533, 535 [2d Cir 2020] citing *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (quotation marks omitted) (affirming sanctions requiring plaintiff and its attorney to pay defendant's "fees and costs associated with briefing its Rule 12(b)(6) and Rule 11 motions").

A false certification violates Rule 11(b). "The standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir.2012) (internal quotation marks omitted). Where factual contentions are "utterly lacking in support," sanctions are warranted. *StreetEasy, Inc. v Chertok*, 752 F3d 298, 307 [2d Cir 2014] quoting *Storey v. Cello Holdings, L.L.C*, 347 F.3d 370, 388 (2d Cir.2003) (remanding for consideration of the appropriate amount of monetary sanctions). A Court may also impose sanctions to "deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* 11(c)(4).

## II. The Cypress/Salerno Submissions Are Rife With Factual Contentions That Have No Support And Which The Evidence Conclusively Shows Are False

### A. The Cypress/Salerno Moving and Opposition Brief

The Cypress/Salerno submissions to the Court plainly violate Rule 11(b)(3) and (b)(4). In the January 27, 2025 21-day safe harbor letter served on Plaintiffs, Defendants made five of the ten points below; in the draft motion served on Plaintffs on February 4, 2025, Defendants made all of the ten points below. In their Reply Memo, the Cypress/Salerno parties entirely failed to address, much less to appropriately correct or withdraw, the factual contentions which have no

evidentiary support that are addressed in the Second, Third, Fifth through Seventh, Ninth and Tenth in the draft sanctions motion served on them prior to their filing and which are set out below.

**First**, the Cypress/Salerno 56.1 represents to the Court that "Salerno did agree to disclose the beneficial ownership information in December 2019." [Dkt. 216, at ¶¶ 24, 28, 31, 34, and 76.] The Cypress/Salerno Memo of Law represents to the Court that Cypress agreed to disclose that information "directly to Sport-BLX in December 2019." [Dkt. 218 at 11.] **However**, Salerno's audio-recorded statements in 2021 specifically confirm that he ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬ (CYPRESS00000004, at 16:00-17:50). As shown in Sport-BLX's Reply Memo and Reply 56.1 Statement, the Cypress/Salerno parties submitted no evidence at all that actually supports their factual contention that Cypress agreed to disclose that information "directly to Sport-BLX in December 2019" (Dkt. 234, p.6; Dkt. 233, ¶¶ 142, 143), and the ten-second portion of the November 26, 2019 recording they cited to provides no support for their contention. (Dkt. 216, at ¶ 30) The unsupported factual contention in the Cypress/Salerno 56.1 Statement that Salerno agreed in December 2019 to disclose "directly to Sport-BLX" (Dkt. 216, ¶¶ 30, 31) and again in the Cypress/Salerno Reply Memo "directly to the company" (Dkt. 242, at p. 3), is the grounds on which Plaintiffs deny that Salerno spoke words in 2021 that he can be heard on audio recordings speaking. It is the grounds on which they deny that Salerno breached his fiduciary duty of loyalty. (Dkt. 218, at p. 11; Dkt. 242, at pp. 5-6.) Defendants submitted the audio evidence recorded by Salerno in 2021 in their Rule 56.1 Counterstatement and discussed it in their Reply Memo of Law. Plaintiffs nonetheless continued to attempt to mislead the Court on this factual issue.

**Second**, the Cypress/Salerno Memo of Law represents to the Court that "Cypress learned of the success fee paid to Clinton Group rather than Sport-BLX for the Orix transaction" in or after April 2020 "from the 2020 10-K" published on April 20, 2020. [Dkt. 218 at 12.] **However**, Salerno

4

is heard on the audio-recorded statement he made on November 26, 2019 questioning Mr. Hall closely on ███████████████████████████████████████████ ███████████████████████████████████. (CYPRESS00000002, at 1:29:15 to 1:29:33; 1:31:20 to 1:31:39; 1:35:15 to 1:35:40; 2:07:06 to 2:08:06). Moreover, the 8-K to which Salerno referred at the November 26, 2019 board meeting specifies, under the bold header "Transaction Fee to Clinton Group," that Clinton Group received "a success fee . . . equal to 15% of the Cash Consideration for its work on the Orix Transaction." (Stecklow Exh. 61-A.) Defendants submitted no evidence at all to support their factual contention that Cypress learned in or after April 2020 of the success fee for the Orix transaction. This unsupported factual contention is the grounds on which Plaintiffs argue that their Rule 10-b5 fraud claim should not be dismissed as untimely. Plaintiffs deliberate attempt to mislead the Court on this factual issue was addressed in Defendants' Reply Memo of Law, with evidentiary support in the form of Salerno's recorded statements submitted to the Court.

**Third**, the Cypress/Salerno Memo of Law represents to the Court that Plaintiffs' damages include "the diversion of the "$3,983,000 success fee to Hall's Clinton Group." [Dkt. 218 at 16.] **However**, while Plaintiffs submitted no evidence at all to support their factual contention, the Glassbridge's 2019 10-K they cited to specifies that $1,348,385 of that fee was for Clinton Group's work negotiating a settlement agreement with PBGC on behalf of Glassbridge. Plaintiffs claim that $1,348,385 as damages despite their explicit admission that "Negotiation of Settlement Agreements with PBGC on behalf of third parties had no relation to Sport-BLX, Inc.'s business plan or operations." [Dkt. 216, ¶ 98.] Plaintiffs submitted only a partial copy of the relevant evidence (as their Exhibit 12), omitting the page that shows this contention to be false. Defendants submitted the page intentionally omitted from Plaintiffs' Exhibit in their Reply 56.1 Statement.

5

**Fourth**, the Cypress/Salerno R. 56.1 Counterstatement represents to the Court that "The due diligence materials do not state [Sport-BLX's] revenue would be generated <u>exclusively</u> from its activities as a broker dealer." [Dkt 219, ¶ 12 (Plaintiffs' emphasis).] Again, Plaintiffs submit no evidence supporting this contention, nor could they. **However**, the due diligence materials cited, quoted, and submitted as an Exhibit in Defendants' Rule 56.1 Statement show 100% of the Company's *pro forma* projected revenue was to be generated by the broker dealer operation - specifically from "Issuing Revenue" and "Trading Revenue." Defendants' moving 56.1 Statement directed Plaintiffs' to the specific Excel spreadsheet cells in which the *pro forma* financials show 100% of revenue was to be earned from broker/dealer operations. Plaintiffs use this unsupported factual contention to oppose Defendants breach of fiduciary duty claim.

**Fifth**, the Cypress/Salerno R. 56.1 Counterstatement represents to the Court that "Salerno did not testify that he printed out the Company's revenue sources." [Dkt 219, ¶ 11.] **However**, Defendants' 56.1 Statement directed Plaintiffs' to the specific deposition page and lines in which Salerno specifically admitted that "I went into the data room, I downloaded the information and I reviewed it in my office." [Dkt. 208, ¶ 11.]

**Sixth**, the Cypress/Salerno Memo of Law represents to the Court that Sport-BLX "paid for an illegal sublease to Hall's Clinton Group." [Dkt. 218 at p. 21.] Plaintiffs submitted no evidence to support this libelous contention. **However**, Defendants submitted the relevant lease in their 56.1 Statement, and Plaintiffs make their unsupported contention despite admitting that "Overlease provision 13.1(b) specifies that no consent by the Landlord is required for the Tenant to sublet the space at 510 Madison Avenue to an Affiliate provided that the sublet does not result in a physical demise of separate space" [Dkt. 216, ¶ 111.] Plaintiffs rely on this false assertion to argue that their derivative claims should survive [Dkt. 218 at p. 21], and as an item of damages on their direct claims. [Dkt. 218 at p. 16.]

6

**Seventh**, Plaintiffs deny that "Salerno did not provide any support for his allegations to the Board or any of its members." [Dkt. 216, ¶ 61.] **However**, they cite only to the letter and email in which Salerno made allegations. Defendants submitted the letter and email as Exhibits 8 and 27 to the Sport-BLX 56.1 Statement. Neither the letter or email contain any support for the allegations.

**Eighth**, Plaintiffs assert that there is "no support" to show that debt forgiveness by FDC was part of the consideration for the sale of the Company's technology platform. [Dkt. 216, ¶ 79-83.] **However**, Plaintiffs ignore the deposition testimony submitted by Defendants in regard to the debt forgiveness, specifically that on December 24, 2021, Mr. Hall caused a third party, FDC, which he and Mr. De Perio controlled, to sell back to the Company $1,500,00 of its debt for $126,000, a benefit of $1,374,000 as part of the consideration for sale of the technology platform. Plaintiffs also ignore minutes of a Company Board Meeting at which the debt forgiveness is discussed as part of the consideration for the Company's technology platform. [*Id.*, at ¶¶ 79-80] As with their false assertion of an "illegal sublet," Plaintiffs rely on this false assertion to argue that their derivative claims should survive [Dkt. 218 at p. 21], and as an item of damages on their direct claims. [Dkt. 218 at p. 16.]

**Ninth**, Plaintiffs assert that "It was represented to Salerno that transactions such as the Orix transaction would lead to success fees for Sport-BLX." [Dkt. 216, ¶ 103.] **However**, Plaintiffs cite only to Salerno's own statement at a Board Meeting regarding a possible fund, they do not cite to any evidence of any representation: (i) made to rather than by Salerno, (ii) any success fee, or (iii) Orix. They ignore the four Exhibits submitted by Defendants – due diligence materials provided to Salerno prior to his investment concerning Sport-BLX's business plans and operations - which disprove their contention.

**Tenth**, Plaintiffs assert that "At the time of Cypress' investment, it had 14 investors," in order to deny that it had 16 investors at that time. [Dkt. 216, ¶ 2.] **However**, Plaintiffs submit no

evidence to support this contention, and they ignore the Exhibit submitted by Defendants which shows that as of the date of the investment, there were 16 investors. *Id.* The same Exhibit shows that Cypress continued to recruit new investors after buying Sport-BLX stock, violating the Stock Purchase Agreements' Purchaser Representation that it did not intend to enter into any arrangement with any person or entity involving a grant of participation in the Sport-BLX investment.

**B.    The Cypress/Salerno Reply Brief**

In their Reply Memo, the Cypres/Salerno parties did not correct or withdraw any of their numerous factual contentions lacking evidentiary support, which were contained in the draft motion served on Plaintiffs on February 4, 2025. They addressed only the First, Fourth, Seventh and Eighth of the ten points it contained. [Dkt. 242, pp. 1-3.] The Cypress/Salerno parties seem to pretend that some of the record evidence, specifically Salerno's own audio-recorded statements, simply does not exist – they do not address or even admit that he made them. Plaintiffs' insistence on ignoring audio evidence is contradictory to Saleno's own testimony regarding, for example, the crucial November 26, 2019 Board Meeting, about which he testified, "the recording will stand for itself." (Stecklow Exh. 87 Salerno Depo. Day 2, at 81:7-21.)

Worse, in addressing the *pro forma* spreadsheet that is a central piece of evidence on both Sport-BLX's fiduciary duty claim and Cypress' fraud claim, the Cypress/Salerno parties make an argument that is a clear, unmistakable attempt to affirmatively mislead the Court. Rather than correcting any of their Rule 11 violations, Plaintiffs' Reply Memo maintains those violations and only makes them worse. The Cypress/Salerno parties should be sanctioned and Sport-BLX awarded its attorneys' fees and costs.

**First**, the Cypress/Salerno Reply Memo continues to ignore evidence in maintaining their dispute of Sport-BLX's 56.1 Statement Paragraph 81, regarding the debt forgiveness component

8

of the consideration received by Sport-BLX in the sale of its technology platform. The Cypress/Salerno Responsive 56.1 Statement contends that "No support has been provided to show that FDC transaction is consideration for the Platform transaction." (Dkt. 216, ¶ 79.) **However**, in making that representation to the Court, Plaintiffs continue to pretend that the evidence cited regarding the debt forgiveness component and showing that it was consideration for the Platform transaction – *i.e.*, Hall's deposition testimony and Company Board Minutes – does not exist. (Dkt. 242, pp. 1-2; Dkt. 216, ¶¶ 77-81; Dkt. 234, p. 2)

**Second**, to argue that their fraud claim is not untimely, the Cypress/Salerno Reply Memo continues to argue that "public records were available at the time" that could have put Defendants on notice that Cypress was not, as Salerno claimed at the time, his personal holding company. (Dkt. 242, p. 7.) **However**, as Defendants have already shown, the public filing to which Cypress alludes (but does not cite) is a fraudulent SEC Form D Notice of Exempt Offering of Securities Salerno filed on December 13, 2018. (Dkt. 216, ¶ 6; Dkt. 234, p. 12.) That Form D shows three investors, which is perfectly consistent with Salerno's insistence to the Sport-BLX Board that Cypress was his personal estate plan vehicle structured as a limited partnership. Salerno maintained that insistence until ordered by this Court to reveal Cypress' true ownership.

**Third,** the Cypress/Salerno parties pretend that recorded statements do not exist in order to dispute the central factual issue on Sport-BLX's breach of loyalty claim, *i.e.*, Salerno's refusal to "to disclose Cypress owners directly to Sport-BLX." (Dkt. 242, p. 3). The Cypress/Salerno parties argue that they are "not disputing the cited evidence of the audio and recording statements of August and September 2019." *Id.* They argue that the "August and September 2019" recordings are the only evidence Defendants presented on this point. *Id.* They maintain their factual assertion that "Salerno did agree to disclose the beneficial owners of Cypress directly to the company in December of 2019." *Id.*

9

**However**, Defendants in fact do not rely only on recordings from August and September 2019. As shown in Sport-BLX's 56.1 Statement and Reply 56.1 Statement, Defendants rely on recordings Salerno made of a November 26, 2019 Board Meeting and of a January 2021 telephone call with Mr. Hall. (Dkt. 216, ¶¶ 30-35; Dkt. 233, ¶¶ 142, 143.) The Court can hear for itself Michael Salerno state in January 2021 that " ██████████████████████████ ██████████████████████████████████████████ ██████████████████████████ (Dkt. 233, ¶¶ 142, 143, citing Stecklow Exh. 86, CYPRESS00000004, at 16:00-17:50.) The Court can hear Salerno continue to insist in 2021 that " ██████████████████████████████████████████ *Id.* The Cypress/Salerno parties' continued contention that "Salerno did agree to disclose the beneficial owners of Cypress directly to the company in December of 2019" in the face of this patently dispositive evidence is frivolous under Rule 11 and should be sanctioned.

**Fourth**, the Cypress/Salerno parties affirmatively attempt to mislead the Court as to the specific content of crucial evidence in this case, the *pro forma* financials Excel spreadsheet provided to Salerno prior to his investment. (*See* Stecklow Decl. Exh. 31.) The Cypress/Salerno parties affirmatively state that "the spreadsheet cited by Sport-BLX as evidence shows several categories of revenue in addition to broker dealer revenue' and that "[t]he detailed P&L also lists additional categories of revenue such as "SportBLX," "Partner Revenue" and "Other Revenue," demonstrating that the revenue was not exclusively broker dealer." (Dkt. 242, at 3.)

**However**, the Cypress/Salerno parties do not tell the Court that Total Revenue as shown in the pro forma spreadsheet (Line 25) is the sum of three lines (14, 18, and 20), that Total Revenue does not include the sub-categories "Partner Revenue" and "BD Revenue." The Cypress/Salerno parties do not tell the Court that "BD Revenue" is zero beginning in Year 2 (2020) and thereafter, or that "Total Revenue" in the detailed P&L ties directly to and is identical to "Total Revenue"

10

shown in the Investor P&L Tab. (Stecklow Decl. Exh. 31: *Compare* TAB Detailed P&L, Rows 14-26 *with* TAB Investor P&L, Rows 10-14.) The Cypress/Salerno parties do not tell the Court that the category "SportBLX Revenue" ties directly to and is identical to "Sport BLX Total Issuing Revenue" shown in the P&L Builds TAB, all of which is shown in the spreadsheet to be composed of trading operations which require a broker dealer license. (*Id. Compare* TAB Detailed P&L, Row 14 *with* TAB P&L Builds, Rows 49.)

Worse still is the Cypress/Salerno parties representation to the Court that the category "'Other Revenue,' demonstrat[es] that the revenue was not exclusively broker dealer." This is a clear, unmistakable attempt to affirmatively mislead the Court. The Cypress/Salerno parties are aware – as the Court can see for itself – that the category "Other Revenue" is projected to be *Zero Dollars* for the life of the Company. (*Id.*, TAB Detailed P&L, Rows 21-24.) That category does not provide an objectively reasonable basis on which to argue that Company revenue was not projected to be earned through broker dealer trading operations.

### C. The Court Should Order The Cypress/Salerno Parties To Pay Defendants' Attorneys' Fees

The fourteen specific examples above show that Plaintiffs intentionally made and maintained numerous material factual contentions and denials which have no evidentiary support. They show that Plaintiffs factual contentions and denials are conclusively disproven by evidence which Plaintiffs simply ignore. At best, they show that Plaintiffs conducted no inquiry reasonable under the circumstances before making their submissions to the Court and certifying that the factual contentions submitted were supported by evidence. "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir.2000) Plaintiffs submissions were patently objectively unreasonable and made in blatant, intentional violation of Rule 11(b).

Rule 11(c)(1) provides that if the Court "determines that Rule 11(b) has been violated," it "may impose appropriate sanctions on any attorney, law firm, or party that violated the rule or is responsible for the violation." Rule 11(c)(4) provides that sanctions imposed may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Rule 11(c)(2) provides that such sanctions may include "the reasonable expenses, including attorney's fees," incurred on the motion seeking sanctions.

As demonstrated above, the factual contentions the Cypress/Salerno parties and counsel make in their submissions are objectively unreasonable and patently not the product of an investigation reasonable under the circumstances, as demanded by Rule 11. Contrary to Salerno's repeated assertions that, for example, "we can rely on the facts in the recordings," and "there are recordings of [Board discussions regarding FINRA] and I will rely on that" and "there are recordings of that, so the facts will be the facts," (Stecklow Exh. 87 Salerno Depo. Day 2, at 21:8-15, 67:3-7, 75:4-6; *see also Id.*, at 27:10-16; 29:2-8; 35:7-14; 55:9-12; 81:7-21; 84:23-85:1, 176:12-18), he also acknowledged under oath that he did not even seek to verify the allegations in Cypress' Complaint by listening to those authoritative and dispositive recordings. (*Id.*, at 209:10-20.) Asked why not, he testified, "I just didn't." (*Id.*) Despite an extensive and clear record, the veracity of the factual contentions which the Cypress/Salerno parties and their counsel make in their submissions has not improved through the course of this litigation.

The Cypress/Salerno parties' and counsel's conduct here does not present a close question. Plaintiffs and their attorney have pressed upon this Court numerous blatant fictions that are flatly disproven by conclusive evidence. "Plaintiffs' lead counsel's allegations . . . violated Rule 11(b)(3), because those allegations utterly lacked evidentiary support." *In re Star Gas Sec. Litig.*, 745 F Supp 2d 26, 34 (D Conn 2010) (at 39: sanctions appropriate where "Rule 11 violations were

not *de minimis*. The [submission] did not suffer from a minor procedural flaw. Nor were the Rule 11 violations limited to one of many claims for relief.") *See also Historical Truth Prods., Inc. v. Sony Pictures Entm't, Inc.*, 1995 WL 693189, at *15 (S.D.N.Y. Nov. 22, 1995) (Rule 11 sanctions imposed where plaintiff misrepresented the content of evidence because such misrepresentations appeared to be an attempt to deceive the court).

Making matters worse, the Cypress/Salerno parties' unsupported and false factual contentions and denials were made after, and in response to, Defendants' submission of evidence that conclusively disproves those false contentions. Sanctions are warranted where a party "reaffirm[s] to the court and advocat[es] positions contained in . . . motions after learning that they cease to have any merit." *Bunnell v. Haghighi*, 183 F.Supp.3d 364, 373 (EDNY 2016). As shown above, Plaintiffs and their counsel have done exactly that in both their Moving and Reply submissions here. Worse yet, they have attempted to affirmatively mislead the Court as to the content of crucial evidence, asserting as matter of fact that the Company expected to earn non-trading revenue while misleadingly relying on an "Other Revenue" category projected to be $0.

Based on all of the above facts and arguments, Defendants respectfully submit that this Court enter an order requiring Plaintiff and their attorney to pay all of Defendants' legal fees and expenses incurred as a result of the numerous Rule 11 violations in the Cypress/Salerno submissions.

Dated: New York, New York
February __, 2025

WYLIE STECKLOW PLLC

*/s/ Jon Avins*

Jon Avins, Esq.
Wylie Stecklow, Esq.
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
New York, NY 10019
(212) 566 8000
ECF@WylieLAW.com