UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CYPRESS HOLDINGS, III, L.P., individually and
derivatively on behalf of SPORT-BLX, INC.

                           Plaintiff,

      v.                                     Civil Action No. 1:22-cv-1243-LGS

GEORGE HALL, JOSEPH DE PERIO, DANIEL
STRAUSS, FRANCIS RUCHALSKI, CESAR
BAEZ, CHRISTOPHER JOHNSON, SPORT-
BLX, INC., SPORT-BLX SECURITIES, INC.,
CLINTON GROUP INC., and GLASSBRIDGE
ENTERPRISES, INC.,

                           Defendants.

------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION *IN LIMINE* TO PRECLUDE ARGUMENT OR EVIDENCE
ON THE TERMS OF THE STOCK PURCHASE AGREEMENTS
OR ALLEGED TAG-ALONG RIGHTS (MIL NO. 3)**

Defendants George Hall ("Hall"), Sport-BLX, Inc. ("Sport-BLX"), Sport-BLX Securities, Inc. ("S-BLX Securities") and Clinton Group, Inc. ("Clinton Group" and collectively with Mr. Hall, Sport-BLX, and S-BLX Securities, the "Defendants") respectfully submit the following motion *in limine* to preclude irrelevant and unduly prejudicial evidence under Fed. R. Evid. 401 and 403.[1]

---

[1] This Motion incorporates by reference the factual background and legal argument contained within Defendants' Motion *in Limine* to Preclude Evidence of Dismissed Counts as Proof of Count Two (Def. MIL No. 1) and other motions *in limine*. It also incorporates the factual allegations in Defendants' Answer to the Amended Complaint (Dkt. No. 92) and Memoranda in support of its Motions to Dismiss (Dkt. No. 160) and for Summary Judgment (Dkt. No. 207).

# **TABLE OF AUTHORITIES**

**Cases**

*James J. Gory Mech. Contr., Inc. v. BPG Residential Partners V, LLC*,

   2011 Del. Ch. LEXIS 200 (Del. Ch. Dec. 30, 2011) ................................................................ 4

*Latortue v. The Std. Fire Ins. Co.*,

   2020 Del. Super. LEXIS 335 (Del. July 2, 2020) ..................................................................... 4

*Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*,

   206 A.3d 836 (Del. 2019) ......................................................................................................... 2

**<u>MOTION *IN LIMINE* 3</u>**

Plaintiff should be precluded from arguing at trial that: (1) the Stock Purchase Agreements (SPAs) provided it with any guarantees regarding the board seat or entitle it to damages; (2) tag-along rights were triggered by the sale of Sport-BLX stock by Mr. Hall and Mr. De Perio to GlassBridge; or (3) it is entitled to damages related to provisions of the SPAs or tag-along rights. Per this Court's orders, the only issue left for the jury's determination is whether the sale of Sport-BLX stock by Mr. Hall and Mr. De Perio to GlassBridge was an improper effort to circumvent the Side Agreement, and whether that sale caused any consequential injury to Cypress. Defendants seek an order *in limine* under Fed. R. Evid. 401 and 403 limiting Plaintiff's trial presentation to this issue alone.

    A.    <u>The Side Agreement Governs the Board Seat Dispute.</u>

Mr. Salerno, via Cypress, originally invested in Sport-BLX through purchase agreements for Sport-BLX common stock, outlined in two Stock Purchase Agreements (the "Founder's Agreement" and the "Second Agreement", collectively, the "SPAs"). The Founders Agreement outlined the terms of purchase by Cypress from Sport-BLX for $500,000 worth of stock at a favorable "Founders' Round" price of $95.00 per share, while the Second Agreement outlined the further purchase of $500,000 worth of stock by Cypress from Sport-BLX at a price of $200.18 per share. (*See* Dkt. 217-1 at 1, 11.) The SPAs outlined agreements between Cypress and Sport-BLX regarding Cypress' purchase of shares from Sport-BLX and contained no provisions or obligations related to Cypress' board seat or its rights with respect to transfers by the other stockholders of their shares. (*See id*.)

The Side Agreement (or the "Third Agreement," as it is referred to in the Second Amended Complaint), executed by Messrs. Salerno, Hall, and De Perio, designated Mr. Salerno as the

Cypress representative for election to the Sport-BLX board. Under its relevant terms, Mr. Hall and Mr. De Perio agreed to "vote, or cause to be voted, all shares of the Company's capital stock owned by such Founder, or over which such Founder has voting control, in favor of Salerno being elected to the Board" so long as Cypress held at least 2.5% of the company's capital stock on a fully diluted basis.[2] The Side Agreement did not, however, guarantee Mr. Salerno a board seat against other shareholders' votes or in perpetuity.

The Side Agreement is the only binding instrument governing Cypress' board seat and it does not incorporate the terms of the SPAs. Its terms are unambiguous. Plaintiff should not be permitted to rely on the SPAs to impose additional obligations on Mr. Hall or expand the scope of Plaintiff's rights. *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions, without resort to extrinsic evidence.") (internal citations and quotations omitted). Allowing such argument would mislead the jury about the source of Mr. Hall's duties and risk a verdict based on inaccurate or misleading information. If Plaintiff is permitted to introduce evidence of, elicit testimony on, or make argument referencing matters no longer in the case, there is a high likelihood the jury will confuse the limited issues and allegations remaining with those that have already been dismissed. This sort of confusion could result in the jury giving undue weight to facts that are irrelevant to the limited issues it is being asked to decide and unfairly impose liability on Mr. Hall. Accordingly, this Court should exclude these arguments.

---

[2]   "Fully diluted basis" means a calculation that assumes all potential shares are issued, including those from convertible securities, giving a more complete picture of the company's total ownership.

      B.      <u>The Tag-Along Rights in the SPAs Do Not Afford Plaintiff Any Claims or Damages</u>

Included in the SPAs are provisions regarding "tag-along"[3] rights, which required Mr. Hall and Mr. De Perio to (1) notify minority shareholders if they elected to sell, to a third party, shares of their stock that represented <u>*more than 50%*</u> of the company's shares, and (2) permit the minority shareholder to transfer his shares to the third party under the same terms, for a proportional amount of the minority shareholder's own shares. (Dkt. 217-1 at 5, 15). In addition to these provisions, Plaintiff alleges that Mr. Hall informally offered tag-along rights through an offhand comment he made during a November 26, 2019 Board Meeting. (*See* SAC at ¶ 69.)

On December 12, 2019, GlassBridge agreed to purchase from the Founders 37,924 shares from Mr. Hall, and 17,076 shares from Mr. De Perio, for a combined total of 55,000 shares, representing 40.7% of Sport-BLX's outstanding stock. The GlassBridge sale did not implicate any tag-along rights to Cypress, because the Founders sold less than 50% of the outstanding shares.

As an initial matter, the Court has already dismissed all claims relating to potential rights or obligations under the SPAs. (*See* MIL 1 at 2-3.) As discussed more fully in Defendants' MIL 1, there is only a single triable issue left remaining against the Defendants: whether Mr. Hall and Mr. De Perio used the transfer of their stock to GlassBridge to evade the Side Agreement and eliminate Cypress' board seat. (*See* MIL 1 at 4.) The question of whether the Side Agreement was violated by the sale of Mr. Hall's and Mr. De Perio's shares does not implicate in any way the terms of the SPAs. And, as explained above, the sale of shares to Glassbridge could not possibly implicate the SPAs because the tag-along rights found in the SPAs were triggered only if the

---

[3]     A "tag-along" right is a contract provision designed to protect minority shareholders. If a controlling founder decides to sell a controlling block of the company to a third party, a "tag-along" lets the minority investor "tag-along" in the same sale, at the same price and on the same terms, for a proportional amount of their own shares, provided certain conditions are met.

3

founders sold more than 50% of the company's outstanding shares to a third-party purchaser. The GlassBridge transaction involved a transfer of 40.7% of Sport-BLX shares—below the contractual 50% threshold—rendering the tag-along provision inapplicable. Cypress therefore cannot present argument or evidence about an inability to exercise the tag-along rights of the SPAs.

The Court should also preclude Plaintiff from arguing breach or damages based on Mr. Hall's offhand comment during the November Board Meeting because this statement is unenforceable against Mr. Hall. Indeed, under Delaware law, "[i]t is the blackest of black-letter law that an enforceable contract requires an offer, acceptance, and consideration"—none of which occurred here. *James J. Gory Mech. Contr., Inc. v. BPG Residential Partners V, LLC*, 2011 Del. Ch. LEXIS 200, at *6 (Del. Ch. Dec. 30, 2011). Moreover, the circumstances—that Mr. Salerno secretly recorded Mr. Hall during the meeting without his knowledge or permission—do not support an intent to be bound. *See Latortue v. The Std. Fire Ins. Co.*, 2020 Del. Super. LEXIS 335, at *2 (Del. July 2, 2020) ("Intent to be bound is based on the 'objective manifestations of assent and the surrounding circumstances….") (internal quotations and citations omitted). Plaintiff cannot claim breach or seek damages based on Mr. Hall's offhand remark and the Court should preclude him from doing so.

Moreover, even if the tag-along right had been triggered and exercised, Cypress would not be entitled to any damages. Had Mr. Salerno sold his shares to GlassBridge—under the terms outlined in the tag-along provisions—he still would have lost the board seat because GlassBridge would have had even more shares to vote against Mr. Salerno. Indeed, under Mr. Salerno's proposed counterfactual, he would have received even fewer votes to retain his board position, confirming that any supposed impairment of the tag-along right is unrelated to—and does not remedy—the voting-support breach alleged in Count Two.

Thus, Plaintiff should be precluded from arguing or presenting evidence any evidence regarding the terms of the SPAs including that the SPAs provided it with any guarantees regarding the board seat, that tag-along rights were triggered by the sale of Sport-BLX stock by Mr. Hall and Mr. De Perio to GlassBridge, or that Plaintiff is entitled to damages related to provisions of the SPAs or tag-along rights.

Dated:  November 19, 2025                                         Respectfully submitted,

/s/ *Michael S. Schachter*
WILLKIE FARR & GALLAGHER LLP
Michael S. Schachter (MS0326)
Shaimaa M. Hussein (SH9276)
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000
mschacter@willkie.com
shussein@willkie.com

*Counsel for Defendants*

5