**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X
                                                               :
CYPRESS HOLDINGS, III, L.P., individually and                 :
derivatively on behalf of SPORT-BLX, INC.,                    :    Case No. 22-cv-01243 (LGS)
                                                               :
              Plaintiff,                                       :
                                                               :
         -against-                                             :
                                                               :
GEORGE HALL, JOSEPH DE PERIO, DANIEL                           :
STRAUSS, FRANCIS RUCHALSKI, CESAR                              :
BAEZ, CHRISTOPHER JOHNSON, SPORT-                              :
BLX, INC., SPORT-BLX SECURITIES, INC.,                        :
CLINTON GROUP INC. and GLASSBRIDGE                            :
ENTERPRISES, INC.,                                            :
                                                               :
              Defendants.                                      :
                                                               :
------------------------------------------------------------- X
                                                               :
SPORT-BLX, INC.,                                              :
                                                               :
                                                               :    Case No. 1:22-cv-8111-LGS
              Plaintiff,                                       :
                                                               :
         -against-                                             :
                                                               :
CYPRESS HOLDINGS, III, L.P., and                             :
MICHAEL M. SALERNO,                                          :
                                                               :
              Defendants.                                      :
                                                               :
------------------------------------------------------------- X

## DEFENDANT GLASSBRIDGE ENTERPRISES INC.'S
## PRETRIAL MEMORANDUM OF LAW

LOEB & LOEB LLP
Christian D. Carbone
David A. Forrest
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendant GlassBridge*
*Enterprises, Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF RELEVANT FACTS ...................................................................... 2

LEGAL STANDARD .................................................................................................... 4

GLASSBRIDGE IS ENTITLED TO JUDGMENT IN ITS FAVOR ........................... 5

I.  Cypress Cannot Establish that GlassBridge Induced a Breach of the Side
Agreement ....................................................................................................... 5

    A.  Cypress Cannot Demonstrate a Breach of any Actual Term of the Side
Agreement ........................................................................................... 5

    B.  Cypress Cannot Demonstrate a Breach of any Implied Term of the Side
Agreement ........................................................................................... 5

    C.  Cypress Cannot Establish that GlassBridge Had Knowledge of the Side
Agreement and its Terms and Intent to Induce a Breach Thereof .......... 7

    D.  Cypress Cannot Establish that GlassBridge Caused a Breach .............. 9

II.  Cypress Cannot Demonstrate that GlassBridge Acted Without Justification ..... 9

    A.  The Evidence Will Show that GlassBridge's Actions Were Privileged ..... 10

    B.  The Evidence Will Show that GlassBridge Acted with Economic
Justification ........................................................................................ 11

III.  Cypress Cannot Establish Actual Damages Stemming From the Loss of its
Board Seat ...................................................................................................... 12

CONCLUSION .......................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.*,
  No. N11C-03-005 MJB, 2013WL 3352672 (Del. Super. Ct. June 27, 2013)..........................7

*Beard Rsch., Inc. v. Kates*,
  8 A.3d 573 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*,
  11 A.3d 749 (Del. 2010) .............................................................................................5

*Bhole, Inc. v. Shore Invs., Inc.*,
  67 A.3d 444 (Del. 2013) .....................................................................................4, 10, 14

*Blaustein v. Lord Baltimore Cap. Corp.*,
  No. 6685–VCN, 2012 WL2l26111 (Del. Ch. May 31, 2012) ...................................5

*In re Cred Inc.*,
  650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024) ...............8

*Del. Exp. Shuttle, Inc. v. Older*,
  No. Civ.A. 19596, 2002 WL 31458243 (Del. Ch. Oct. 23, 2002)......................... 12-13

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
  No. 21-CV-6598 (LAK), 2023 WL 3570017 (S.D.N.Y. May 18, 2023) ............. 6-7

*Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc.*,
  No. N17C-03-1677 MAA, 2021 WL 3280484 (Del. Super. Ct. July 30, 2021)......................9

*Grand Ventures, Inc. v. Paoli's Rest., Inc.*,
  No. 95C-03-013, 1996 WL 30022 (Del. Super. Ct. Jan. 4, 1996) ............................4

*Grunstein v. Silva*,
  No. CIV.A. 3932-VCN, 2009 WL 4698541 (Del. Ch. Dec. 8, 2009) .......................7

*In re HealthSouth Corp. S'holders Litig.*,
  845 A.2d 1096 (Del. Ch. 2003), *aff'd*, 847 A.2d 1121 (Del. 2004)...........................8

*Hemostemix Inc. v. Accudata Sols., Inc.*,
  No. 20-881-RGA, 2022 WL 609106 (D. Del. Feb. 28, 2022) .................................. 4, 9-10, 12

*Jardel Co. v. Hughes*,
  523 A.2d 518 (Del. 1987) .........................................................................................14

*Merck & Co. v. SmithKline Beecham Pharms. Co.*,
 No. 15443-NC, 1999 WL 669354 (Del. Ch. Aug. 5, 1999),
 *aff'd sub nom. SmithKline Beecham Pharms. Co., v. Merck & Co.*,
 746 A.2d 277 (Del.2000) .................................................................................9

*Nemec v. Shrader*,
 991 A.2d 1120 (Del. 2010) ...........................................................................5, 6

*Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*,
 202 A.3d 482 (Del. 2019) .................................................................................6

*In re P3 Health Grp. Holdings, LLC*,
 No. 2021-0518-JTL, 2022 WL 16548567 (Del. Ch. Oct. 31, 2022) .....................................13

*In re P3 Health Grp. Holdings, LLC*,
 No. 2021-0518-JTL, 2022 WL 16834483 (Del. Ch. Nov. 9, 2022) .........................................9

*Schiff v. ZM Equity Partners, LLC*,
 No. 19cv4735, 2020 WL 5077712 (S.D.N.Y. Aug. 27, 2020) .................................................4

*Shearin v. E.F. Hutton Grp.*,
 652 A.2d 578 (Del. Ch. 1994).......................................................................9, 10

*Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*,
 No. N19C-11-092 PRW ................................................................................10

*Urb. 2004 Holding Co. v. Nationwide Affordable Hous. Fund 27, LLC*,
 No. 20-CV-02243, 2022 WL 767229 (N.D. Ill. Mar. 14, 2022)............................................10

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*,
 49 A.3d 1168 (Del. 2012) ........................................................................ 11-12

## Other Authorities

Restatement (Second) of Torts; § 8A............................................................................7

Pursuant to the Court's October 15, 2025 and December 12, 2025 Orders (ECF #254, 279) and Rule I.A.4 of the Court's Individual Trial Rules and Procedures, Defendant GlassBridge Enterprises, Inc. ("GlassBridge") respectfully submits this Pretrial Memorandum of Law in advance of the jury trial of this action, currently scheduled to begin on February 2, 2026.

## PRELIMINARY STATEMENT

This Court has already dismissed Plaintiff Cypress Holdings, III, L.P.'s ("Cypress") scattershot claims against GlassBridge and its officers for breach of fiduciary duty, minority shareholder oppression, and unjust enrichment. In its sole remaining claim against GlassBridge (Count 8), Cypress desperately asserts that GlassBridge tortiously interfered with the implied covenant of good faith and fair dealing of the Side Agreement dated February 28, 2019 (the "Side Agreement") between Cypress, Defendants Sport-BLX, Inc. ("Sport-BLX"), George Hall and Joseph De Perio. The evidence shows that this claim is baseless. While a plaintiff's inability to prove a single element of its claim is fatal, here Cypress will be unable to adduce evidence to support any necessary elements supporting its claim for tortious interference.

Cypress cannot establish that GlassBridge induced a breach because there was no breach of any actual or implied term of the Side Agreement. The uncontroverted evidence shows that Hall and De Perio complied with their obligations under the Side Agreement by voting the shares they owned in Cypress's favor. And, because the Side Agreement does not restrict Hall and De Perio's rights to sell shares in Sport-BLX, Cypress's attempt to imply a perpetual right to a seat on Sport-BLX's board of directors will also fail.

Even if Cypress could establish a breach, it cannot prove that GlassBridge had knowledge of the contract, knowledge of the fact that it was interfering with the performance of the contract, and intent to interfere with the contract. For this reason alone, Cypress's claim fails.

1

Cypress also cannot establish that GlassBridge's actions were the but-for cause of any breach because the uncontroverted evidence shows that the overwhelming majority of Sport-BLX's shareholders (other than Hall and De Perio) voted against Cypress's representative, Michael Salerno.  Cypress similarly cannot show that GlassBridge acted without justification.  To the contrary, the evidence will show that GlassBridge acted in good faith in order to advance its own economic interest, and the common economic interest it shared with Sport-BLX by acquiring a majority stake in Sport-BLX, nominating an alternative slate of directors for consideration by Sport-BLX's shareholders, and voting its shares in favor of its proposed slate.  As evidenced by Cypress's destruction of Sport-BLX's business model, and the counterclaims for federal securities fraud, common-law fraud, and breach of fiduciary duty asserted against Cypress herein, GlassBridge (along with the other Sport-BLX shareholders who voted against Cypress) was fully justified in nominating an alternative slate of directors that did not include Cypress's representative.

Finally, Cypress cannot establish actual damages because Cypress's board seat was an uncompensated position that had no monetary value.  As will be shown at trial, GlassBridge is entitled to judgment in its favor.

## STATEMENT OF RELEVANT FACTS

GlassBridge is a public company that owns and operates an asset management business. In early 2019, GlassBridge invested $1,000,000 in Sport-BLX, a startup created to operate an online marketplace for investing in sports-related tokenized assets, and funded its initial investment between May and August 2019.  (SUMF ¶¶ 113-14.)[1]  GlassBridge purchased

---

[1] Citations to "SUMF" herein refer to Defendants' Local Rule 56.1 Statement of Material Undisputed Facts (ECF #213).

additional shares of Sport-BLX stock directly and through its subsidiary (Adara Enterprises Corp.). (SUMF ¶¶ 115, 117.)  By the end of October 2019, GlassBridge had invested over $1.78 million in Sport-BLX.  (SUMF ¶¶ 113-17.)  To further protect its investment in Sport-BLX, GlassBridge made a $1,750,000 demand loan to Sport-BLX.  (SUMF ¶ 116.)

While GlassBridge increased its investment in Sport-BLX, Cypress (by its principal, Michael Salerno) obstructed Sport-BLX's progress.  Salerno began secretly recording conversations with Hall and De Perio only three days after making his investment, and secretly recorded board meetings throughout 2019 (a fact learned only in discovery); accused Hall of "self-dealing" in connection with payments to Hall's company, Clinton Group, Inc., for the use of office space and equipment; and sent a demand letter through counsel in 2019 threatening litigation against Hall and De Perio.  (SUMF ¶¶ 39-41.)  When Sport-BLX was applying for FINRA registration as a broker-dealer—essential to executing the original business plan of the company— Salerno refused to disclose Cypress's beneficial owners, maintaining it would disclose sensitive information about this estate plan. He remained steadfast in his refusal even after Sport-BLX's outside FINRA counsel advised Salerno that his failure to provide the beneficial-ownership information would be fatal to the broker-dealer application.  (SUMF ¶¶ 14-34.)  By December 2019, Sport-BLX had withdrawn its FINRA broker-dealer application.  (SUMF ¶ 36.)

At the same time, members of GlassBridge's independent board of directors determined that obtaining a majority stake (and voting control) of Sport-BLX would be beneficial to GlassBridge.  (SUMF ¶ 122.) The disinterested members of GlassBridge's board subsequently authorized GlassBridge to purchase Hall and De Perio's shares of Sport-BLX.  (SUMF ¶¶ 122-23.)  After GlassBridge nominated a new slate of Sport-BLX directors for consideration by Sport-BLX's shareholders at the December 23, 2019 Annual Meeting of Stockholders of Sport-BLX,

Sport-BLX's stockholders approved the new slate of directors that did not include Mr. Salerno. (SUMF ¶¶ 124, 126-27, 134-36.)

## LEGAL STANDARD

In order to recover for tortious interference with contract, Cypress must prove: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (citation omitted); *accord Schiff v. ZM Equity Partners, LLC*, No. 19cv4735, 2020 WL 5077712, at *11 (S.D.N.Y. Aug. 27, 2020).[2]

Cypress's sole remaining claim against GlassBridge (Count 8) asserts that GlassBridge tortiously interfered with the Side Agreement by purchasing shares of Sport-BLX from George Hall and Joseph De Perio, nominating individuals for consideration as members of Sport-BLX's board of directors, and voting the Sport-BLX shares it owned in favor of its proposed slate of directors. (ECF #252 at 36.) As detailed below, Cypress cannot establish any element of its claim because the evidence will show that (i) GlassBridge did not cause a breach of any actual or implied term in the Side Agreement; (ii) there is no evidence in the record that GlassBridge had knowledge of the Side Agreement and the particular restrictions or intent to interfere with them; (iii) GlassBridge's actions were economically justified for independent business reasons and also in order to protect its investment in Sport-BLX; and (iv) Cypress did not suffer any damages as a direct result of GlassBridge's actions.

---

[2] Cypress bears the burden of proof on each element. *Grand Ventures, Inc. v. Paoli's Rest., Inc.*, No. 95C-03-013, 1996 WL 30022, at *5 (Del. Super. Ct. Jan. 4, 1996) (quoting *Int'l Ass'n of Heat & Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Env't Servs., Inc.*, 814 F. Supp. 392, 401 (D. Del. 1993)); *Hemostemix Inc. v. Accudata Sols., Inc.*, No. 20-881-RGA, 2022 WL 609106, at *2 (D. Del. Feb. 28, 2022).

## GLASSBRIDGE IS ENTITLED TO JUDGMENT IN ITS FAVOR

**I.     Cypress Cannot Establish that GlassBridge Induced a Breach of the Side Agreement**

**A.     Cypress Cannot Demonstrate a Breach of any Actual Term of the Side Agreement**

Section 2.A. of the Side Agreement required Hall and De Perio "to vote, or cause to be voted, all shares of [Sport-BLX]'s capital stock owned by [them], or over which [they had] voting control, in favor of Salerno being elected to the Board," for as long as Cypress held at least 2.5% of the outstanding Sport-BLX stock.  (SUMF ¶ 128.) Cypress does not dispute that Hall and De Perio did so.  (SUMF ¶¶ 132-33.)  Because there was no "actual breach of contract," GlassBridge cannot be liable for tortious interference with the Side Agreement.  *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 607 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

**B.     Cypress Cannot Demonstrate a Breach of any Implied Term of the Side Agreement**

To establish a claim for breach of the covenant of good faith and fair dealing, Cypress must prove (1) a specific implied contractual obligation, (2) a breach of that obligation by the defendant, and (3) resulting damages.  *Blaustein v. Lord Baltimore Cap. Corp.*, No. 6685–VCN, 2012 WL2l26111, at *5 (Del. Ch. May 31, 2012).  However, the "[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right," nor can a claim for breach of the implied covenant of good faith and fair dealing be based upon "conduct authorized by the agreement." *Nemec v. Shrader*, 991 A.2d 1120, 1125-27 (Del. 2010) (citation omitted). Instead, "[t]he implied covenant only applies to developments that could not be anticipated, not developments that the parties simply failed to consider[.]" *Id.* at 1126 (citation omitted).

Cypress argues that Hall and De Perio breached a non-existent "implied" term in the Side Agreement providing "that Cypress would have [a] board seat as long as [Hall and De Perio] … were in control of [Sport-BLX]." (ECF #218 at 18).

But Cypress cannot argue that the Side Agreement contained an implied contractual term that guaranteed Cypress a seat on the board of directors.  Section 2.A. of the Side Agreement already required Hall and De Perio to vote their shares in favor of a Cypress representative being elected to the Board of Directors, but does not obligate the Founders to maintain ownership of their shares.  (SUMF ¶ 128.)  Nor could it, as neither Hall, De Perio, nor any shareholder of any corporation could guarantee a seat on a board of directors in perpetuity.  As will be detailed by the Sport-BLX parties at trial, Cypress's claim fails because the Side Agreement did not limit Hall and De Perio's ability to sell their shares; Cypress was not promised a permanent board seat (and Hall and De Perio never would have agreed to such terms had Cypress raised them before the contract was signed); and Hall and De Perio had legitimate business reasons for selling to GlassBridge.

Accordingly, Cypress cannot invoke the implied covenant to contradict voting rights that were considered, bargained for, and authorized by the Side Agreement.  *See Nemec*, 991 A.2d at 1127; *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 507 (Del. 2019) (declining "to apply the implied covenant here because no gap exists concerning the admission of the Small Holders, and because the admission of new Members and their impact on the Exit Sale process could have been anticipated").  Because Cypress cannot establish a breach of any actual or implied term of the Side Agreement, its tortious interference claim fails.  *See Edmar Fin. Co., LLC v. Currenex, Inc.*, No. 21-CV-6598 (LAK), 2023 WL 3570017, at *18 (S.D.N.Y. May 18, 2023) ("The Court already has held that plaintiffs have not

pleaded a plausible claim for breach of the implied covenant of good faith and fair dealing.  It is uncontested that plaintiffs do not allege any other breach of their contracts with Currenex. Plaintiffs thus fail to allege an actual breach of contract that could support their claims for tortious interference").

### C.    Cypress Cannot Establish that GlassBridge Had Knowledge of the Side Agreement and its Terms and Intent to Induce a Breach Thereof

In order to establish the second prong of its tortious interference claim, Cypress must prove, by a preponderance of the evidence, that GlassBridge "knew of the contract generally and knew of the particular restriction."  *Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.*, No. N11C-03-005 MJB, 2013WL 3352672, at *5 (Del. Super. Ct. June 27, 2013).  In other words, Cypress must establish that GlassBridge had "knowledge of the contract" *and* knowledge "*of the fact that [it] is interfering with the performance of the contract.*" *Id.* (quoting Restatement (Second) of Torts § 766 cmt. i) (emphasis added).

Cypress must also prove that GlassBridge "intentionally" induced a breach of contract—*i.e.*, that GlassBridge desired that its actions result in a breach of contract, or knew "that the interference is certain or substantially certain to occur as a result of [its] action."  *Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2009 WL 4698541, at *16 (Del. Ch. Dec. 8, 2009) (quoting Restatement (Second) of Torts § 766 cmt. j); *see also* Restatement (Second) of Torts § 8A.

Cypress will not be able to establish these elements at trial because there is nothing in the record demonstrating GlassBridge's actual knowledge of the existence of the Side Agreement and its terms—much less that GlassBridge had knowledge of the fact that it was interfering with the performance of the Side Agreement and intended to do so.  (SUMF ¶¶ 130-31.)  Conceding the complete lack of record evidence in support of its claim, Cypress claims that "Deperio was

Chairman of the GlassBridge Board and his knowledge of the Side Agreement is imputed to GlassBridge." (ECF #218 at 21.).  Cypress's argument fails.

Although Delaware law does recognize that a "director's knowledge may be imputed to the corporation they serve, application of the rule is not automatic, but is dependent upon the circumstances."  *In re Cred Inc.*, 650 B.R. 803, 825 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024).  "An exception to the general rule that the knowledge of an officer or agent will be imputed to the corporation arises when an officer ... is acting in a transaction in which he is personally or adversely interested or is engaged in the perpetration of an independent fraudulent transaction, where the knowledge relates to such transaction and it would be to his interest to conceal it."  *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1108 n.22 (Del. Ch. 2003) (quoting 18B Am.Jur.2d Corporations § 1680 (2003), *aff'd*, 847 A.2d 1121 (Del. 2004)); *see also In re Cred Inc.*, 650 B.R. at 826 (no imputation where director was not "acting on Uphold's behalf during the CredEarn negotiations").

Cypress cannot impute to GlassBridge any knowledge that De Perio may have had regarding implied terms of the Side Agreement because there is no evidence that De Perio ever shared any such knowledge with GlassBridge.  In fact, because De Perio's own shares were at issue, De Perio abstained from the GlassBridge board's deliberation of the specific terms of the transaction and vote approving the transaction.  (SUMF ¶¶ 122-23.)[3]  Because De Perio was interested in the transaction, and abstained from deliberations of the transaction by GlassBridge's disinterested directors, any knowledge that De Perio may have had regarding implied terms of the Side Agreement cannot be imputed to GlassBridge.

---

[3] Even though he was not a member of GlassBridge's board of directors, Hall physically left the GlassBridge board meeting where the transaction was discussed.  (SUMF ¶¶ 122-23.)

### D.    Cypress Cannot Establish that GlassBridge Caused a Breach

"The third requirement has two parts: an intentional act and evidence that the act was a significant factor, *i.e.*, the proximate cause of the claimed damage." *Merck & Co. v. SmithKline Beecham Pharms. Co.*, No. 15443-NC, 1999 WL 669354, at *46 (Del. Ch. Aug. 5, 1999), *aff'd sub nom. SmithKline Beecham Pharms. Co., v. Merck & Co.*, 746 A.2d 277 (Del.2000); *Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc.*, No. N17C-03-1677 MAA, 2021 WL 3280484, at *4 (Del. Super. Ct. July 30, 2021) (summary judgment dismissal where, as here, "*nothing* direct or circumstantial that shows that any of the moving defendants' actions resulted in a breach of contract[.]").

Cypress cannot make this showing because, even if Hall and De Perio somehow breached an implied term of the Side Agreement (which they did not), GlassBridge's actions were certainly not the proximate cause of any such breach.  In fact, the overwhelming majority of Sport-BLX's shares (except those owned by Hall and De Perio) were not voted in Salerno's favor.  (SUMF ¶¶ 47, 126-27, 132-36.)  Because Cypress cannot establish any breach of the Side Agreement—much less that GlassBridge proximately caused any such breach—judgment should be granted in GlassBridge's favor.

## II.    Cypress Cannot Demonstrate that GlassBridge Acted Without Justification

"The tort of interference with contractual relations is intended to protect a promisee's economic interest in the performance of a contract by making actionable 'improper' intentional interference with the promisor's performance." *Shearin v. E.F. Hutton Grp.*, 652 A.2d 578, 589 (Del. Ch. 1994).  "The adjective 'improper' is critical.  For participants in a competitive capitalist economy, some types of intentional interference with contractual relations are a legitimate part of doing business." *In re P3 Health Grp. Holdings, LLC*, No. 2021-0518-JTL, 2022 WL 16834483, at *1 (Del. Ch. Nov. 9, 2022) (citations omitted).  Thus, "[t]ortious interference requires that the

interference be without justification." *Hemostemix Inc. v. Accudata Sols., Inc.*, No. CV 20-881-RGA, 2022 WL 609106, at *2 (D. Del. Feb. 28, 2022).   As detailed below, Cypress cannot demonstrate that GlassBridge's alleged interference was "without justification" because the evidence will show that GlassBridge's actions were privileged and otherwise economically justified.

### A.    The Evidence Will Show that GlassBridge's Actions Were Privileged

The affiliate exception is a qualified privilege which protects a parent corporation that "pursues lawful action in the good faith pursuit of [the subsidiary's] profit making activities," provided that parent was pursuing in good faith the legitimate profit seeking activities of the affiliated enterprise that was a party to contract. *Shearin,* 652 A.2d at 590.  "Parent companies are affiliated with their subsidiaries" and "two commonly-owned entities are [also] affiliates."  *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, No. N19C-11-092 PRW CCLD, 2021 WL 117036, at *7 (Del. Super. Ct. Jan. 13, 2021).  To overcome the privilege, "the non-breaching party must show that the corporate defendant was not pursuing in good faith the legitimate profit seeking activities of [its] affiliated enterprise[] that was a party to the contract." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (citations omitted).  "Moreover, there can be no non-contractual liability of the affiliated corporation ... unless the plaintiff pleads and proves that the affiliate sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure plaintiff." *Id.* (citation omitted); *see Urb. 2004 Holding Co. v. Nationwide Affordable Hous. Fund 27, LLC*, No. 20-CV-02243, 2022 WL 767229, at *8 (N.D. Ill. Mar. 14, 2022) (quoting *Bhole, Inc.*, 67 A.3d at 453 (applying Delaware law; granting summary judgment dismissal of tortious interference claim where "evidence, even viewed in [plaintiff]'s favor, does not demonstrate that [defendant] 'sought maliciously or in bad faith to injure [Urban 2004]'")).

GlassBridge unquestionably shared a common economic interest with its subsidiary, Sport-BLX based upon its $1.78 million investment and $1.75 million demand loan to Sport-BLX. (SUMF ¶¶ 113-17.)  As demonstrated by the host of claims that Salerno and Cypress are facing in this action, Cypress's actions were—at a minimum—questionable.  Among other things, Salerno accused Hall of "self-dealing," sent a demand letter through counsel in 2019 threatening litigation against Hall and De Perio, and prevented Sport-BLX from proceeding with its original business plan in obtaining its FINRA broker-dealer license based upon Cypress's refusal to disclose its beneficial owners (which included a convicted felon).  (SUMF ¶¶ 14-38.)  The evidence will therefore show that GlassBridge acted in good faith in order to protect the economic interest it shared with Sport-BLX by acquiring a majority stake in Sport-BLX, nominating an alternative slate of directors for consideration, and voting its shares in favor of replacing Michael Salerno. Because GlassBridge was acting in furtherance of the common economic interest it shared with its subsidiary, Sport-BLX, its actions were privileged.  Therefore, Cypress's claim that GlassBridge interfered with the Side Agreement so as to ensure that Cypress's representative would not be elected to the Sport-BLX board of directors fails.

**B.    The Evidence Will Show that GlassBridge Acted with Economic Justification**

If Cypress overcomes the affiliate privilege, Cypress must otherwise demonstrate that GlassBridge acted without justification.  Delaware courts consider the following factors in determining if interference with another's contract "is improper or without justification:"

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (citing Section 767 of the Restatement (Second) of Torts).

Cypress cannot meet its burden because GlassBridge acted with economic justification at all times. GlassBridge was justified in purchasing Hall and De Perio's shares in Sport-BLX because it relied on its disinterested board's business judgment that (1) obtaining voting control of Sport-BLX would be beneficial to GlassBridge; and (2) GlassBridge could obtain such voting control by purchasing Sport-BLX shares from Hall and De Perio. (SUMF ¶¶ 118-23.)

As a majority shareholder, GlassBridge was separately justified in proposing a slate of directors for consideration by Sport-BLX's shareholders and voting its own shares in favor of the directors that it proposed. (SUMF ¶¶ 118-27.) The fact that GlassBridge's proposed slate of directors did not include Michael Salerno was also economically justified given Cypress's substantial destruction of Sport-BLX's business model. (SUMF ¶¶ 14-34, 36, 126.)

None of GlassBridge's actions breached the Side Agreement (because there was no breach). Instead, GlassBridge acted in accordance with the business judgment of its disinterested board members to protect its multi-million dollar investment in Sport-BLX (individually and through its subsidiary Adara). Because GlassBridge acted with economic justification at all times, Cypress's claim fails.

## III.    Cypress Cannot Establish Actual Damages Stemming From the Loss of its Board Seat

A tortious interference claim requires proof of *actual* damages; nominal damages will not suffice. *See Hemostemix Inc.*, 2022 WL 609106, at *4 (dismissing tortious interference claim where "sole injury was a contractual breach absent compensatory damages"); *Del. Exp. Shuttle,*

*Inc. v. Older*, No. Civ.A. 19596, 2002 WL 31458243, at \*23 (Del. Ch. Oct. 23, 2002) (summary judgment dismissal of tortious interference claims "because no damages were proved").[4]

In its order on summary judgment, the Court limited Cypress's damages for breach of the implied covenant and good faith and fair dealing (Count Two) to any "consequential injury to [Cypress'] investment" that resulted from the loss of the board seat. (ECF #252 at 30.) Cypress cannot establish any such damages. Fatal to Cypress's claim, Cypress's board seat (which was an uncompensated position) had no value. (*Id.* at 29.)

Even if there were some value to Cypress in maintaining an un-compensated board seat (there is not), the record is devoid of any evidence of what that valuation may be. Cypress has never provided a damages computation related to the loss of its board seat. Cypress's most recent damages computation asserts:

> "With respect to Count Eight, Cypress seeks compensatory damages equating to the value of Cypress' Sport-BLX stock (at the $355.00 per share price at which the Founders sold their personal shares in Sport-BLX – in a purported arms'-length transaction - to GlassBridge) less any remaining value of the acquired stock at the time of trial."

(ECF #161-10 at 8.) But this figure is not based on its loss of the board seat. Cypress has not updated or supplemented its damages theory following the Court's rulings limiting its claims. Nor

---

[4] The cases cited by the Court on summary judgment holding that nominal damages for breach of the implied covenant of good faith and fair dealing are inapplicable in the context of Cypress's tortious interference claim against GlassBridge. ECF #252 at 30 (citing *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 454 (Del. Ch. 2023) (holding that "a court can vindicate *a breach of contract* through an award of nominal damages") (emphasis added)); *In re P3 Health Grp. Holdings, LLC*, No. 2021-0518-JTL, 2022 WL 16548567, at \*9 n.2 (Del. Ch. Oct. 31, 2022) (same).

could it, as there are no monetary damages from the loss of a board seat that carried no fixed compensation.[5]

Because Cypress cannot establish actual damages caused by GlassBridge's actions, its tortious interference claim fails.

## **CONCLUSION**

Accordingly, judgment should be entered in favor of GlassBridge.

Dated: New York, New York
      December 15, 2025

Respectfully Submitted,

LOEB & LOEB LLP

By: */s/ Christian D. Carbone*
    Christian D. Carbone (ccarbone@loeb.com)
    David A. Forrest (dforrest@loeb.com)
    345 Park Avenue
    New York, New York 10154
    (212) 407-4000

*Attorneys for Defendant GlassBridge Enterprises Inc.*

---

[5] Because Cypress cannot establish liability for compensatory damages, it cannot recover punitive damages. *See Bhole, Inc.*, 67 A.3d at 454 ("no legal basis to award punitive damages" absent liability for tortious interference.). In any event, because GlassBridge's actions were privileged and economically justified, Cypress cannot demonstrate outrageous conduct, an evil motive, or reckless indifference sufficient to warrant an award of punitive damages. *Jardel Co. v. Hughes*, 523 A.2d 518, 529-30 (Del. 1987) ("even when construed most favorably for plaintiff, the evidence permitted no reasonable inference that Jardel's conduct was sufficiently outrageous to warrant the imposition of punitive damages").

<u>**Certificate of Compliance with Local Civil Rule 7.1(c)**</u>

I hereby certify that the number of words in the foregoing memorandum of law, according to the word count of the word processing computer program utilized, inclusive of material contained in footnotes and endnotes, and exclusive of the caption, any index, table of contents, table of authorities, signature block, and this certificate of compliance, is 4,149.

Dated: New York, New York
      December 15, 2025

                                   */s/ Christian D. Carbone*
                                  CHRISTIAN D. CARBONE

242560704.4
233797-10018

15