# Exhibit A

**JOINT PROPOSED JURY INSTRUCTIONS**

**Proposed Instruction No. 1**

**Introduction to the Claims and Contentions of the Parties**

We are about to begin the trial of the case you heard about during jury selection. Before the trial begins, I will give you instructions to help you understand what you will hear and how you should conduct yourself during the trial. Let me start by explaining a few terms. This is a civil case. A civil case is a non-criminal, legal dispute between two or more parties. It begins when one party – the plaintiff – files a lawsuit against another party – the defendant – and seeks remedies like monetary compensation. In this case, the plaintiff is Cypress Holdings, III, L.P, an investment entity. You will learn that Michael Salerno is the managing partner of Cypress.

The defendants are Sport-BLX, Inc.[1], Sport-BLX Securities, Inc. (which I will call S-BLX Securities), Clinton Group, Inc., GlassBridge Enterprises, Inc., George Hall, and Joseph De Perio. Sport-BLX was formed by Mr. Hall and Mr. De Perio to operate an investment platform that would allow individuals to buy shares of sports-related assets. S-BLX Securities was a separate company also formed by Mr. Hall and Mr. De Perio. Clinton Group is an asset management firm founded by Mr. Hall. GlassBridge is public company of which Mr. Hall and Mr. De Perio are investors.

In a separate lawsuit that has been consolidated with this case, Sport-BLX brought claims against Cypress and Michael Salerno (Cypress' managing partner). For those claims, Sport-BLX is the plaintiff and Cypress and Salerno are the defendants. So in this case, we have claims by Cypress against Sport-BLX, S-BLX Securities, Clinton Group, GlassBridge, Hall, and De Perio and we also have claims by Sport-BLX against Cypress and Mr. Salerno.

---

[1]       Sport-BLX is pronounced "Sport-Blocks".

I am going to briefly state the allegations of the respective parties.  In doing so, I express no opinion about the facts, because you are the sole judges of the facts.  If I state any fact inaccurately or incompletely, you must rely on the evidence you hear and see in court, including testimony, exhibits, and any reasonable inferences you draw from that evidence.

According to defendants Hall and De Perio, they founded Sport-BLX to create a marketplace for investments in sports-related assets.  To operate as intended, Sport-BLX needed to be licensed as a broker-dealer and therefore had to pursue registration with the Financial Industry Regulatory Authority (FINRA).  In early 2019, Michael Salerno became interested in potentially investing in Sport-BLX.  He negotiated and signed two stock purchase agreements (which may be referred to throughout the trial as the SPAs), laying out the terms of his investments in Sport-BLX.  These two SPAs were signed on February 28, 2019.  The investments in Sport-BLX were made on behalf of Cypress in the amount of one million dollars.  Cypress also signed a side letter (which will be referred to throughout the trial as the Side Agreement) as part of its investment in Sport-BLX, which set out certain additional terms regarding the Cypress investment in Sport-BLX.  In the Side Agreement, Cypress, Hall and De Perio agreed that, so long as Cypress held at least 2.5% of Sport-BLX stock, Hall and De Perio would vote the shares of Sport-BLX that they owned to support Cypress having a seat on Sport-BLX's Board of Directors.  The Side Agreement was executed on February 28, 2019.

Cypress' Claims

[Sport-BLX Proposed]: Cypress claims that Sport-BLX, Hall, and De Perio breached the Side Agreement when, in December of 2019, they sold a portion of their stock in Sport-BLX to GlassBridge, which then used those shares to offer to shareholders an alternative slate of directors which did not include Salerno.

2

Cypress further claims that GlassBridge tortiously interfered with the Side Agreement by purchasing shares of Sport-BLX from Hall and De Perio, nominating individuals for consideration as members of Sport-BLX's board of directors, and voting the Sport-BLX shares it owned in favor of its proposed slate of directors.

[Cypress Proposed]: Cypress claims that Hall and De Perio breached the Side Agreement when, in December of 2019, they sold a majority of their stock in Sport-BLX to GlassBridge, which then used those shares to vote Salerno off the Sport-BLX Board. Cypress further claims that GlassBridge had knowledge of the side agreement and was controlled by Hall and De Perio. Cypress claims that GlassBridge tortiously interfered with the Side Agreement by purchasing shares of Sport-BLX from Hall and De Perio, for the purpose of voting Salerno off of the Sport-BLX Board.

Hall and De Perio deny any breach of actual or implied terms in the Side Agreement; state that they sold their shares to GlassBridge in good faith for legitimate business reasons; and argue that Cypress cannot prove damages because the board seat was an uncompensated position and, in any event, that Cypress failed to mitigate any damages. GlassBridge denies that it tortiously interfered with Cypress's contract; states that it did not induce a breach of any actual or implied term in the Side Agreement, did not have knowledge of the Side Agreement and the particular restrictions or intent to interfere with them; states that its actions were economically justified in order to protect its investment in Sport-BLX; and argues that Cypress did not suffer any damages as a direct result of GlassBridge's actions.[2]

---

[2]    The Sport-BLX Parties maintain that Aiding and Abetting a Breach of Fiduciary Duty, as pled in Count 12, cannot be alleged without reviving previously dismissed counts. The Defense therefore defers its proposed instruction pending the Court's decision on our Renewed Motion to Dismiss Count Twelve, at Dkt. 276.

<u>Sport-BLX's Claims Against Cypress and Salerno</u>

Sport-BLX brings three claims against Cypress and Salerno based on the following allegations:

During the negotiations leading to the SPAs and Side Agreement among Sport-BLX, Hall, De Perio, and Salerno, Salerno's personal name initially appeared as the party signing the agreements.  When it came time to sign the final Side Agreement, Salerno changed the signature block to Cypress Holdings, which he described as "my holding company."  [Cypress Proposed]: Hall and De Perio then countersigned the agreements as Founders of Sport-BLX and accepted Cypress' investment. Several months later, as part of pursuing broker-dealer registration, Sport-BLX was required to submit the names of its owners to FINRA and asked Salerno whether he was the sole owner of Cypress.  Sport-BLX claims that Cypress and Salerno refused to provide the identities of Cypress' other owners and that Salerno made false and misleading statements about Cypress' ownership.  Sport-BLX further claims that this refusal prevented it from pursuing broker-dealer registration, forced a change in its business plan, and caused the company substantial financial losses.  Sport-BLX seeks damages from Cypress and Salerno, claiming that because the company was not able to obtain a broker-dealer license and pursue its original business plan, it is now a significantly less valuable company.

Cypress and Salerno deny these allegations. [Cypress Proposed]: Cypress and Salerno deny that they refused to provide the identities of Cypress other owners and that Salerno made misleading statements about Cypress' ownership.  Cypress denies Sport-BLX suffered any financial losses as a result of not pursuing the broker-dealer registration and its change in business plan.

**<u>Sport-BLX Parties' Objections to Cypress' Proposed Added Language</u>**

The Sport-BLX Parties object to Cypress' proposed language because it exceeds the concise, neutral statements of law contemplated by the Court's standing order. Cypress' additions read as advocacy–effectively instructing the jury how to apply the law to disputed facts–rather than objective legal guidance. Argument of that nature belongs in counsel's summation, not in the Court's charge to the jury.


Given: _____

Given as modified:_____

Denied:_____

## Proposed Instruction No. 2

**CYPRESS CLAIM 1:**     **Breach of the Implied Covenant of Good Faith and Fair Dealing against Hall, De Perio, and Sport-BLX - Generally**

Plaintiff Cypress seeks to recover damages against defendants George Hall, Joseph De Perio, and Sport-BLX for breach of the implied covenant of good faith and fair dealing. Breach of the implied covenant of good faith and fair dealing is a breach of contract claim. A contract is a legally binding agreement between two or more parties. Each party to a contract must perform according to the terms of the agreement.

The elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of a contractual obligation by one party; and (3) a resulting damage to another party. Thus, a party's failure to perform a contractual duty may constitute a breach of contract. If a party breaches the contract and that breach causes injury, or loss, to another party, then the party sustaining the loss may claim damages. Breach of contract must be proven by a preponderance of the evidence.

The law imposes a duty of good faith and fair dealing in every contract. It ensures that parties do not act arbitrarily or unreasonably to prevent the other party from receiving the "fruits of the bargain." A plaintiff may not use this rule to rewrite a contract, nor can it be used to create new obligations. The implied duty is a limited and extraordinary legal remedy and does not apply to address issues that could have been anticipated when the contract was signed.

The implied covenant only applies if it is evident from the contract that the parties would have forbidden the conduct had they considered it. It does not apply when the contract speaks directly to the matter.

[Sport-BLX Proposed]: Cypress alleges that Hall, De Perio, and Sport-BLX breached the implied covenant of good faith and fair dealing by using the transfer of Sport-BLX stock held by Hall and De Perio to evade the Side Agreement and eliminate Cypress' board seat.

[Cypress Proposed]: Cypress alleges that Hall, De Perio, and Sport-BLX breached the implied covenant of good faith and fair dealing. Cypress alleges that the contract between them contained a clear intent that Cypress would hold a seat on the Board of Directors as long as the Founders were in control of the company. Cypress contends that the defendants acted arbitrarily and unreasonably by transferring their stock to GlassBridge Enterprises, Inc., a company they controlled, specifically to evade their voting obligations and frustrate Cypress's right to that Board seat. Cypress further alleges that GlassBridge was affiliated with Sport-BLX and controlled by Hall and De Perio as Hall was GlassBridge's largest shareholder and DePerio was on the GlassBridge Board of Directors at the time of the transfer.

Sport-BLX, Hall, and De Perio deny these allegations. They assert that the Side Agreement did not limit their ability to sell their shares, that Cypress was not promised a permanent board seat, that they never would have agreed to such terms had Cypress raised them before the contract was signed, and that they had legitimate business reasons for selling to GlassBridge. They therefore maintain the sales were not in bad faith and not a breach of the implied covenant.

To prove a breach of the implied covenant of good faith and fair dealing, Cypress must prove, by a preponderance of the evidence

(1) a specific implied contractual obligation that is not already addressed by the express terms of the written contract;

(2) a breach of that obligation; and

(3) resulting damages.

Sources:    Adapted from DEL. P.J.I. CIV. § 19.20; § 19.1 "Contract Formation" and § 19.17, "Performance", Delaware Pattern Jury Instructions, 2000 edition (rev. 08/15/ 2006).; *Katz v. Oak Industries, Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005); accord *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 124 (2d Cir. 2022) (Delaware law); SJ Order at 28 (citing *Glaxco Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 921 (Del. 2021) ("The implied covenant is a 'limited and extraordinary legal remedy…not for economic interests that could have been anticipated.'")); *Chamison v. HealthTrust, Inc. - Hosp. Co.*, 735 A.2d 912, 920 (Del. Ch. 1999) (a*ff'd sub nom. Healthtrust, Inc.- Hosp. Co. v. Chamison*, 748 A.2d 407 (Del. 2000) (finding that the implied covenant does not override express contractual terms or create new obligations)); *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45 (N.Y. Ct. App. 1972) ("[I]n every contract there exists an implied covenant of good faith and fair dealing.") (internal quotations and citations omitted); *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010) (A plaintiff "cannot base a claim…on conduct authorized by the agreement.); *Lesh v. Ev3 Inc.*, 2013 Del. Super. LEXIS, at *10-11 (Del. Apr. 15, 2013) ("The express agreement must clearly show that the parties "would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith—had they thought to negotiate with respect to that matter.")

## Sport-BLX Parties' Objections to Cypress' Proposed Language

Sport-BLX objects to Cypress' language which suggests that Hall and De Perio controlled GlassBridge because it is factually inaccurate – they did not control GlassBridge. Sport-BLX restates its prior objection to the language proposed here. Sport-BLX objects to Cypress' proposed language because it exceeds the concise, neutral statements of law contemplated by the Court's standing order. Cypress' additions read as advocacy–effectively instructing the jury how to apply the law to disputed facts–rather than objective legal guidance. Argument of that nature belongs in counsel's summation, not in the Court's charge to the jury.

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 3**

**CYPRESS CLAIM 2:**                     **Tortious    Interference    with    Contract    Against
                                          GlassBridge**

As you have heard, Plaintiff Cypress Holdings, III, L.P. seeks to recover damages against Defendant GlassBridge Enterprises Inc. for tortious interference with contract.  If you find that George Hall, Joseph De Perio and Sport-BLX did not breach the covenant of good faith and fair dealing (Count Two), you do not need to consider whether GlassBridge is liable for tortious interference with contract.

Plaintiff claims that GlassBridge tortiously interfered with a Side Agreement dated February 28, 2019 between Cypress, one the one hand, and Defendants Sport-BLX, Inc., George Hall and Joseph De Perio, on the other hand.

[Sport-BLX Proposed]: Plaintiff claims that GlassBridge tortiously interfered with implied terms of the Side Agreement by purchasing shares of Sport-BLX, Inc. from George Hall and Joseph De Perio, nominating individuals for consideration as members of Sport-BLX, Inc.'s board of directors, and voting the Sport-BLX, Inc. shares it owned in favor of its proposed slate of directors.

[Cypress Proposed]: Plaintiff alleges that GlassBridge was an affiliate of Sport-BLX and knew of the Side Agreement.  Plaintiff alleges further that GlassBridge was controlled by defendants in that and was controlled by Hall was the largest Shareholder of GlassBridge and De Perio was not the GlassBridge board of directors and the time of the sale of the shares.  Plaintiff claims that GlassBridge intentionally interfered with the Side Agreement by purchasing the shares of Sport-BLX from Hall and De Perio and subsequently voting Cypress off of the Board.

GlassBridge claims that it did not tortiously interfere with Cypress's contract because GlassBridge did not cause a breach of any actual or implied term in the Side Agreement;

9

GlassBridge did not have knowledge of the Side Agreement and the particular restrictions or intent to interfere with them; GlassBridge's actions were economically justified in order to protect its investment in Sport-BLX; and Cypress did not suffer any damages as a direct result of GlassBridge's actions.

Cypress has the burden of proving, by a preponderance of the evidence:

(1) That a valid contractual relationship existed;

(2) That GlassBridge had knowledge of the contract and of the fact that it was interfering with the performance of the contract;

(3) That GlassBridge intentionally caused George Hall, Joseph De Perio, or Sport-BLX to breach their contract with Cypress;

(4) That GlassBridge acted without justification; and that Cypress suffered actual damages as a direct result of GlassBridge's actions.

Sources:     Adapted from Del. P.J.I. Civ. § 12.7 and *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012); *see also Grand Ventures, Inc. v. Paoli's Rest., Inc.*, No. 95C-03-013, 1996 WL 30022, at *5 (Del. Super. Ct. Jan. 4, 1996); *Int'l Ass'n of Heat & Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Env't Servs., Inc.*, 814 F. Supp. 392, 401 (D. Del. 1993)); *Hemostemix Inc. v. Accudata Sols., Inc.*, No. 20-881-RGA, 2022 WL 609106, at *2 (D. Del. Feb. 28, 2022).

## Sport-BLX Parties' Objections to Cypress' Proposed Language

The Sport-BLX Parties object to Cypress' proposed language because it exceeds the concise, neutral statements of law contemplated by the Court's standing order. Cypress' additions read as advocacy–effectively instructing the jury how to apply the law to disputed facts–rather than objective legal guidance. Argument of that nature belongs in counsel's summation, not in the Court's charge to the jury.

**CYPRESS CLAIM 2:**     **Tortious Interference with Contract Against GlassBridge – Contractual Relationship, Knowledge, and Intent**

For Cypress to recover, it must prove, by a preponderance of the evidence, that it had a contract with George Hall, Joseph De Perio, and Sport-BLX.  Cypress must also prove, by a preponderance of the evidence, that GlassBridge had knowledge of the contract and of the specific contractual provisions that Cypress claims were breached.  In other words, Cypress must prove, by a preponderance of the evidence, that GlassBridge had knowledge of the existence of the contract and of the fact that it was interfering with the performance of the contract.

GlassBridge is a corporation.  A corporation is considered a person within the meaning of the law. However, as an artificial person, a corporation can only act through its agents and officers.

Generally, knowledge that an officer or director of a corporation acquired while acting within the scope of his authority is imputed, or attributed, to the corporation.  An exception to the general rule that the knowledge of an officer or agent will be imputed to the corporation arises when an officer is acting in a transaction in which he is personally or adversely interested, where the knowledge relates to such transaction and it would be to his interest to conceal it.

If Cypress proves that GlassBridge had knowledge of the existence of the contract and of the fact that it was interfering with the performance of the contract, Cypress must also prove, by a preponderance of the evidence, that

[Sport-BLX Proposed]: GlassBridge intentionally induced George Hall, Joseph De Perio, or Sport-BLX to breach the contract.

[Cypress Proposed]: GlassBridge intentionally induced or otherwise prevented George Hall, Joseph De Perio, or Sport-BLX from performing the contract.

A defendant intentionally induces a breach of contract if it desires that its actions result in a breach of contract, or if the defendant knew that the breach of contract was substantially certain to result from its actions.

Sources:     Adapted from Del. P.J.I. Civ. § 12.7, DE-JICIV 18.8, Restatement (Second) of Torts § 766, cmt. I; *see WaveDivision Holdings, LLC v. Highland Capital Management, L.P.*, 49 A.3d 1168, 1176 (Del.Supr., 2012); *Lincoln Nat. Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 555 (D. Del. 2010); *In re Live Well Fin., Inc.*, No. 19-11317 (LSS), 2025 WL 2078717, at *5 (Bankr. D. Del. July 23, 2025); *Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.*, No. N11C-03-005 MJB, 2013 WL 3352672, at *5 (Super. Ct. June 27, 2013) (quoting Restatement (Second) of Torts § 766, cmt. i); Restatement (Second) of Torts, § 766, cmt. j (citing Restatement (Second) of Torts § 8A (intent element requires proof that defendant desired that his act result in the breach, or that the defendant knew that the breach was substantially certain to result from the acts)).

## Sport-BLX Parties' Objection to Cypress' Proposed Language

The Sport-BLX Parties object to Cypress' proposed language because it frames scienter as satisfied by the fact of prevention itself, rather than by the actor's intent to bring about that result through inducement of a breach.

**CYPRESS CLAIM 2:**  **Tortious Interference with Contract Against GlassBridge – Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing**

For Cypress to recover, it must prove, by a preponderance of the evidence, that George Hall, Joseph De Perio, or Sport-BLX breached their contract with Cypress. A contract is breached when one of the parties fails to do what he promised to do under the contract.

Consistent with my instructions on Claim I, the law imposes a duty of good faith and fair dealing in every contract. The implied covenant requires all parties in a contractual relationship to refrain from arbitrary or unreasonable conduct that has the effect of preventing the other party to the contract from receiving the fruits of the bargain. Good faith means honesty of purpose without any intention to mislead or take unfair advantage of another. Generally speaking it means being faithful to one's duty or obligation. However, the implied covenant of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. Instead, the implied covenant only applies when the express terms of the agreement can be reasonably read to imply certain other conditions that would prohibit certain conduct. The implied duty is a limited and extraordinary legal remedy and does not apply to address issues that could have been anticipated when the contract was signed.

Cypress alleges that Hall, De Perio, and Sport-BLX breached the implied covenant of good faith and fair dealing by using the transfer of Sport-BLX stock held by Hall and De Perio to evade the Side Agreement and eliminate Cypress' board seat. Sport-BLX, Hall, and De Perio deny these allegations. They assert that the Side Agreement did not limit their ability to sell their shares, that Cypress was not promised a permanent board seat, and that they had legitimate business reasons for selling to GlassBridge. They therefore maintain the sales were not in bad faith and not a breach of the implied covenant.

13

To prove a breach of the implied covenant of good faith and fair dealing, Cypress must prove, by a preponderance of the evidence

(1) a specific implied contractual obligation that is not already addressed by the terms of the written contract;

(2) a breach of that obligation; and

(3) resulting damages.

Sources:      Adapted from DEL. P.J.I. CIV. § 19.20; § 19.1 "Contract Formation" and § 19.17, "Performance", Delaware Pattern Jury Instructions, 2000 edition (rev. 08/15/ 2006).; *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005); accord *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 124 (2d Cir. 2022) (Delaware law); SJ Order at 28 (citing *Glaxco Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 921 (Del. 2021)); *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45 (N.Y. Ct. App. 1972) ("[I]n every contract there exists an implied covenant of good faith and fair dealing.") (internal quotations and citations omitted).

**CYPRESS CLAIM 2:**                    **Tortious Interference with Contract Against GlassBridge – Causation**

For Cypress to recover, it must prove by a preponderance of the evidence that GlassBridge proximately caused George Hall, Joseph De Perio, or Sport-BLX to breach their contract with Cypress.

Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred. A proximate cause brings about, or helps to bring about, the harm, and it must have been necessary to the result.

Sources:          Adapted from DEL. P.J.I. CIV. § 21.1; *Merck & Co. v. SmithKline Beecham Pharms. Co.*, No. C.A. 15443-NC, 1999 WL 669354, at *51 (Del. Ch. Aug. 5, 1999) ("tortious interference also requires a showing that the alleged interference proximately caused a breach of the contract or termination of the prospective contractual relationship and resulting damage."),  *aff'd*, 746 A.2d 277 (Del. 2000), and *aff'd*, 766 A.2d 442 (Del. 2000).

**CYPRESS CLAIM 2:**         **Tortious Interference with Contract Against GlassBridge  - Privilege and Justification**

For Cypress to recover, it must prove by a preponderance of the evidence that GlassBridge's intentional interference with Cypress's contract was improper.

The law provides for an affiliate privilege, which immunizes business organizations from liability for breaches of contracts involving their affiliates in certain instances.  Specifically, a qualified privilege exists where non-parties to the contract share a commonality of economic interests with one of the parties and act in good faith and in furtherance of their shared legitimate business interests. Under the law, parent corporations have a common economic interest with their subsidiaries.  Accordingly, where the alleged interference comes from individuals or entities that share common economic interests with a party to the contract, the privilege applies unless plaintiff can overcome the privilege by proving that the non-party defendant was not pursuing, in good faith, the legitimate profit seeking activities of its affiliated enterprise or was motivated by some malicious or other bad faith purpose to injure the plaintiff.

If Cypress overcomes the affiliate privilege, Cypress must demonstrate that GlassBridge acted without justification. In considering whether GlassBridge acted with justification, you may consider the following factors:

(1) the nature of GlassBridge's conduct;

(2) GlassBridge's motive;

(3) Cypress's interests;

(4) the expectations of the parties involved;

(5) the relations between the parties involved;

(6) the interest that GlassBridge's sought to advance;

16

(7) whether GlassBridge's act was done for the purpose of causing the interference or whether it was merely incidental to another purpose;

(8) the proximity or remoteness of GlassBridge's conduct to the interference; and

(9) society's interest in protecting business competition as well as its interest in protecting the individual against interference with the pursuit of gain.

Sources:    Adapted from DE-JI CIV 12.7; Restatement (Second) of Torts § 767; *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012); *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (regarding affiliate privilege); *Grand Ventures, Inc. v. Paoli's Rest. Inc.*, No. 95C-03-013, 1996 WL 30022, at *5 (Del. Super. Ct. Jan. 4, 1996); *In't Ass'n of Heat & Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Env't Sers., Inc.*, 814 F. Supp. 392, 401 n.10 (D. Del. 1993) ("burden of proof should be imposed on the plaintiff to establish all the necessary elements of the tort"); *Hemostemix Inc. v. Accudata Sols., Inc.*, No. 20-881-RGA, 2022 WL 609106, at *2 (D. Del. Feb. 28, 2022).

**CYPRESS CLAIM 2:**                    **Tortious    Interference    with    Contract    Against GlassBridge – Damages**

My charge to you on the law of damages must not be taken as a suggestion that you should find for the plaintiff. It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant. If you decide it is not entitled to recover, you need not consider damages. Only if you decide that the plaintiff is entitled to recover will you consider damages.

If you find that GlassBridge tortiously interfered with Cypress's contract, you may award Cypress damages resulting from the loss of its board seat, unless the other rules of law on which I will instruct you limit or reduce the amount that Plaintiff is entitled to recover. You may award compensatory damages only for injuries that Cypress proves were proximately caused by GlassBridge's allegedly wrongful conduct. To this end, damages may not be merely speculative, possible and imaginary, but must be reasonably certain and directly traceable to the breach, and not remote or the result of other intervening causes. The damages that you award must be fair and reasonable, and neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered.

Sources:    Adapted from Del. P.J.I. Civ. § 22.18; *Little Peoples, Inc. v. Robin's Nest Child Care, Inc.*, No. 95A-12-002-CG, 1996 WL 453350, at *5 (Del. Super. Ct., July 18, 1996) ("if an intentional interference with contract was proven, the appropriate measure of damages would have been the lost income suffered"); *Delaware Exp. Shuttle, Inc. v. Older*, No. Civ. A. 19596, 2002 WL 31458243, at *23 (Del. Ch. ,Oct. 23, 2002) (summary judgment dismissal of tortious interference claims "because no damages were proved"); *Hemostemix Inc. v. Accudata Solutions, Inc*., No. 20-881-RGA, 2022 WL 609106, at *4 (D. Del. Feb. 28, 2022) (dismissing tortious interference claim where "sole injury was a contractual breach absent compensatory damages").

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 4**

**CYPRESS CLAIM 3:**          **Aiding and Abetting a Breach of Fiduciary Duty**

[Sport-BLX Proposed]:

In order to prove its derivative claim against S-BLX Securities or Clinton Group for aiding and abetting a breach of fiduciary duty, Cypress must establish by a preponderance of the evidence:

(1)  The existence of a fiduciary relationship;

(2) A breach of the fiduciary's duty;

(3) Knowing participation in that breach by Clinton Group and S-BLX Securities;

(4) Damages to Sport-BLX proximately caused by the breach.

A fiduciary duty is a duty that exists where an individual is reliant upon the judgment of another or where a special duty exists on the part of one person to protect the interests of another. According to Delaware corporate law, directors and officers of a company owe fiduciary loyalties to both each other and the company.

To establish knowing participation, the plaintiff must demonstrate that the aider and abettor had actual or constructive knowledge that their conduct was legally improper.

Source:          *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015).

[Cypress Proposed]:

Count Twelve is a derivative claim that Plaintiff has brought on behalf of Sport-BLX Inc. Under Delaware law, directors and officers of a corporation owe "fiduciary duties" of loyalty and care to the corporation and its shareholders. Specifically, such fiduciary duties include the duty not to cause the corporation to effect a transaction that would benefit defendants, at the expense of the corporation.  A third party, like another company, can be held liable if it knowingly participates

in a director's breach of those duties.  This means the Defendant not only helped the fiduciary but acted with the knowledge that the conduct was a breach of duty.

Plaintiff claims that the defendants Hall and De Perio, as directors and officers, breached their fiduciary duties to Sport-BLX by siphoning off the company's assets and opportunities to other companies that they owned and controlled. Plaintiff alleges that Clinton Group Inc., and Sport-BLX Securities, Inc. aided and abetted this conduct.

Specifically, Plaintiff alleges that Clinton Group, knowingly accepted excess rent payments from Sport -BLX and accepted fees that were should have been paid to Sport-BLX. Plaintiff alleges further that Sport-BLX Securities acquired a proprietary software platform from Sport-BLX for less than market value.

You must evaluate the specific assistance provided by each entity:

- Clinton Group: Did it knowingly accept excess "rent" payments or fees that belonged to Sport-BLX, understanding this was a breach of the Founders' duties?

- Sport-BLX Securities: Did it knowingly acquire the trading platform for less than market value, knowing that the sale was a breach of the Founder's fiduciary duties?

If these entities knew they were helping the Founders violate their duties of loyalty, they are liable for aiding and abetting.

*Source:  Malpiede v. Townson, 780 A.2d 1075, 1096 (Del. 2001).*

Damages: Because this claim is brought derivatively on behalf of the company, any damages you award must be for the harm suffered by Sport-BLX, not the plaintiff Cypress directly.

Sport-BLX Securities: If you find Sport-BLX Securities liable regarding the purchase of the trading platform, you must determine the loss to Sport-BLX caused by that transaction. This is

typically calculated as the difference between the fair market value of the platform at the time of the sale and the price actually paid.

Clinton Group: If you find Clinton Group liable regarding the receipt of fees or excess rent, you must determine the amount of Sport-BLX funds or opportunities that were improperly diverted to Clinton Group (such as "success fees" or "rent" payments that were unfair to the company).

**Sport-BLX Parties' Objections to Cypress' Proposed Language**

The Sport-BLX Parties maintain that Aiding and Abetting a Breach of Fiduciary Duty, as pled in Count 12, cannot be alleged without reviving previously dismissed counts. *See*, *e.g.*, *Feldman v. AS Roma SPV GP, LLC*, 2021 Del. Ch. LEXIS 155, at *33 (Del. Ch. July 22, 2021) ("It is axiomatic that to state a claim for aiding and abetting a breach of fiduciary [duty], a plaintiff must allege an underlying breach of fiduciary duty."); *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1039 (Del. Ch. 2005) ("[H]aving failed to state an underlying claim for breach of fiduciary duty…[the] aiding and abetting claim… necessarily fails."), *aff'd*, 894 A.2d 407 (Del. 2005).

Sport-BLX further objects to Cypress' proposed language regarding the sale of the trading platform, success fees, and excess rent because the Court dismissed Cypress' claims related to these allegations. (SJ Order at 31-32, 34-35.)

Sport-BLX further objects to Cypress' proposed language because it exceeds the concise, neutral statements of law contemplated by the Court's standing order. Cypress' additions read as advocacy–effectively instructing the jury how to apply the law to disputed facts–rather than objective legal guidance. Argument of that nature belongs in counsel's summation, not in the Court's charge to the jury.

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 5**

**SPORT-BLX CLAIM 1:    Federal Securities Fraud – Overview**

Counterclaimant Sport-BLX alleges that counter-defendants Cypress and Michael Salerno engaged in fraud and deceit in connection with the sale or purchase of Sport-BLX stock in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (Title 17 of the Code of Federal Regulations Section 240.10b-5). Stock is a "security" within the meaning of the Securities Exchange Act.

The relevant statute on this subject is section 78j(b) of Title 15 of the United States Code. It provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any security-based swap agreement, … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 as promulgated by the Securities and Exchange Commission reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Sources:    Sand et al., Modern Federal Jury Instructions—Civil, § 82-1, 82-2; *SEC v. Thompson*, 732 F.3d 1151, 1160 (10th Cir. 2013) ("[I]n the context of a civil suit, the ultimate question of whether an instrument is a security is "a question of law and not of fact…").

**SPORT-BLX CLAIM 1:    Federal Securities Fraud – Elements**

Sport-BLX has asserted this claim against both Cypress and Salerno.  You do not need to find that both Cypress and Salerno committed federal securities fraud.  You may find that only one, or both, of these parties committed conduct that amounts to federal securities fraud.

In order to meet its burden of proof, Sport-BLX must establish by a preponderance of the evidence each of the following elements:

(1)    Cypress and/or Salerno did any one of the following three things, directly or indirectly, in connection with the purchase or sale of a security:

       a.  employed a device, scheme, or artifice to defraud; or

       b.  made an untrue statement of material fact or omitted to state a material fact, which made what was said, under the circumstances, misleading; or

       c.  engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

(2)    Sport-BLX, justifiably relied on Cypress' and/or Salerno's statement (or conduct);

(3)    Cypress and/or Salerno acted knowingly and with intent to defraud;

(4)    Cypress' and/or Salerno's conduct was the proximate cause of the injury to Sport-BLX; and

(5)    Cypress and/or Salerno used, or caused to be used, means and instrumentalities of interstate commerce.

I will now explain each of these elements in more detail.

Source:        Sand et al., Modern Federal Jury Instructions—Civil, § 82-2, 82-3.

**SPORT-BLX CLAIM 1:    Federal Securities Fraud – Fraudulent Act**

With respect to the first element that Sport-BLX must prove, a device, scheme, or artifice to defraud is merely a plan for the accomplishment of any objective. Fraud is a general term that embraces all ingenious efforts and means that individuals devise to take advantage of others. The law which Cypress and/or Salerno is alleged to have violated prohibits all kinds of manipulative and deceptive acts.

Although Sport-BLX must be either a purchaser or seller of the securities in question, you need not find that Cypress and/or Salerno actually participated in any securities transaction if Cypress and/or Salerno was engaged in fraudulent conduct that was "in connection with" a purchase or sale. The "in connection with" aspect of this element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

Source:    Sand et al., Modern Federal Jury Instructions—Civil, § 82-4.

**SPORT-BLX CLAIM 1:    Federal Securities Fraud – Justifiable Reliance**

The second element that Sport-BLX must prove by a preponderance of the evidence is that it justifiably relied on Cypress' and/or Salerno's statements (or conduct). If you find that Sport-BLX would have engaged in the transaction anyway, such that the misrepresentation or omission had no effect on its decision, then there was no reliance, and this element is not satisfied.

In addition, Sport-BLX's reliance must be justified.  Sport-BLX cannot satisfy this element if it acted unjustifiably in that it knew the truth, or it knew that the statement was false and traded anyway.  [Cypress Proposed]: Reliance is not justifiable if Sport-BLX had the opportunity to discover the truth but failed to do so, or if it ignored obvious risks. In this regard, you may consider Sport-BLX's agents' and officers' sophistication as investors in determining whether its reliance on the defendant was justified.

[Cypress Proposed]: If you find that Sport-BLX, through the exercise of reasonable diligence, could have discovered the true facts regarding Cypress's structure, or if you find that Sport-BLX failed to make reasonable inquiries despite having the opportunity to do so before selling the stock, then its reliance was not justifiable. If Sport-BLX's reliance was not justifiable, you must find in favor of Salerno and Cypress on the fraud claims.

Source**:**        Sand et al., Modern Federal Jury Instructions—Civil, § 82-7.

**<u>Sport-BLX Parties' Objections to Cypress' Proposed Language</u>**

The Sport-BLX Parties object to Cypress' proposed language because it improperly heightens the standard of "justifiable reliance" and contravenes relevant authority. As articulated in § 82-7, the Court may instruct the jury using the following bracketed language:

"The plaintiff cannot satisfy this element if he acted unjustifiably in that he knew the truth, or he knew that the statement was false **(if applicable: or he failed to act with due diligence)** and traded anyway. In this regard, you may consider the plaintiff's

sophistication as an investor in determining whether his reliance on the defendant was justified." *Id*. (emphasis added).

And, "[t]he standard for determining due diligence is whether the plaintiff 'refused to investigate in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.'" Modern Federal Jury Instructions – Civil § 82-7 (quoting *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997)).  Thus, Cypress' proposed language misstates the law.

**SPORT-BLX CLAIM 1: Federal Securities Fraud – Intent**

The third element that Sport-BLX must establish by a preponderance of the evidence is that Cypress and/or Salerno knowingly participated in the scheme to defraud with intent to defraud.

To act "knowingly" means to act intentionally and deliberately, with actual knowledge or with reckless disregard for the truth, rather than mistakenly or inadvertently.

To act with "intent to defraud" in the context of securities law means to act with the intent to deceive.

To act with "reckless disregard for the truth" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts in reckless disregard if the risk is known to him or her, or it is obvious that an ordinary person under the circumstances would have realized the danger and taken care to avert the harm likely to follow. Recklessness is more than mere negligence. Reckless conduct represents grossly unreasonable, rash or intemperate behavior.

In the context of securities law, a person acts recklessly if he or she makes a false statement with a reckless disregard for whether it is true or false.

The question of whether a person acted with intent to defraud, with actual knowledge or with reckless disregard, is a question of fact for you to determine, like any other fact question. It is a question involving one's state of mind. Direct proof of state of mind is almost never available, and is not required. Circumstantial evidence, if believed, is of no less value than direct evidence. In either case it is Sport-BLX's burden to prove all of the elements by a preponderance of the evidence.

Because an essential element of Sport-BLX's case is intent to defraud or recklessness, it follows that good faith on the part of Cypress and/or Salerno is a complete defense to a charge of

securities fraud. Cypress and/or Salerno, however, have no burden to establish a defense of good faith. The burden is on Sport-BLX to prove fraudulent intent and a consequent lack of good faith by a preponderance of the evidence.

Under the antifraud statutes, even false representations or statements or omissions of material facts do not amount to a fraud unless done recklessly or with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.

In considering whether or not a Cypress and/or Salerno acted in good faith, you are instructed that a belief by Cypress and/or Salerno, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he/it acted in good faith. No amount of honest belief on the part of Cypress and/or Salerno that the scheme will  ultimately make a profit for the investors will excuse fraudulent actions or false representations by him to obtain money.

As a practical matter, then, in order to sustain the charges against Cypress and/or Salerno, Sport-BLX must establish by a preponderance of the evidence that Cypress and/or Salerno knew or should have known that his conduct as a participant in the scheme was calculated to deceive and nonetheless, he associated himself with the alleged fraudulent scheme.

To conclude on this element, if you find that Cypress and/or Salerno was not a knowing participant in the scheme or lacked the intent to deceive or did not act recklessly you should return a verdict in favor of Cypress and/or Salerno. On the other hand, if you find that Sport-BLX has established that Cypress and/or Salerno was a knowing participant and acted recklessly or with intent to defraud, you should consider the fourth element.

Consistent with my instructions in Claim III, Sport-BLX and Cypress are corporations. A corporation is considered a person within the meaning of the law. However, as an artificial person, a corporation can only act through its agents and officers.

Generally, knowledge that an officer of a corporation acquired while acting within the scope of his authority is imputed, or attributed, to the corporation. An exception to the general rule that the knowledge of an officer or agent will be imputed to the corporation arises when an officer is acting in a transaction in which he or she is personally or adversely interested, where the knowledge relates to such transaction and it would be to his interest to conceal it.

Sources:      Sand et al., Modern Federal Jury Instructions—Civil, § 82-8; Instructions on Claim III (Tortious Interference with Contract).


Given: _____

Given as modified:_____

Denied:_____

**SPORT-BLX CLAIM 1:     Federal Securities Fraud – Causation**

The fourth element that Sport-BLX must establish by a preponderance of the evidence is that Cypress' and/or Salerno's conduct was the proximate cause of the injury to Cypress.

In order for an act or omission to be considered a proximate cause of the injury, it must be a substantial factor in causing the damage, and the injury must have been either a direct result or a reasonably probable consequence of the act or omission.

In order to satisfy this element, Sport-BLX need not prove that Cypress's and/or Salerno's conduct was the only cause of the Sport-BLX's injury. It is sufficient if you find that the actions of Cypress and/or Salerno were a substantial and significant contributing cause to the injury which Sport-BLX suffered. On the other hand, it is not enough for Sport-BLX to recover if it merely shows that Cypress and/or Salerno's actions caused it to engage in a particular securities transaction, or that Sport-BLX would have acted differently had it known the truth.

**Source**:          Sand et al., Modern Federal Jury Instructions—Civil, § 82-9.

**SPORT-BLX CLAIM 1:     Federal Securities Fraud – Instrumentality of Interstate Commerce**

The fifth and final element that Sport-BLX must prove by a preponderance of the evidence is that Cypress and/or Salerno knowingly used, or caused to be used, an instrumentality of interstate communication, such as the telephone, internet, or mail, in furtherance of the scheme to defraud or fraudulent conduct.

It is not necessary that Cypress and/or Salerno be directly or personally involved in the interstate communication.  If Cypress and/or Salerno was an active participant in the scheme and took steps or engaged in conduct which he or it knew or could reasonably foresee would naturally and probably result in the use of an instrumentality of interstate communication, then you may find that he or it caused a facility of interstate communication to be used.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he or she causes such means to be used.

Nor is it necessary that the items sent through an instrumentality of interstate communication contain the fraudulent material, or anything objectionable. The matter sent may be entirely innocent.

The use of an instrumentality of interstate communication need not be central to the execution of the scheme, and may even be incidental to it.  All that is required is that the use of the facility of interstate communication bear some relation to the object of the scheme or fraudulent conduct.

In fact, the actual purchase or sale need not be accompanied or accomplished by the use of the instrumentality of interstate communication, so long as the defendants is still engaged in actions that are a part of a fraudulent scheme.

34

**Source**:    Sand et al., Modern Federal Jury Instructions—Civil, § 82-10 (modified for internet communications); 15 U.S.C. § 78(c)(17) (defining "interstate commerce" for the purposes of the Securities Exchange Act of 1934 and including interstate means of communication or instrumentality.

**Proposed Instruction No. 6**

**SPORT-BLX CLAIM 2:     Common Law Fraud – Generally**

Sport-BLX's second claim is that Cypress and Salerno committed fraud through false and misleading representations about the nature of Cypress' structure and Cypress' and/or Salerno's failure to disclose Cypress' limited partners. Sport-BLX has asserted this claim against both Cypress and Salerno. You do not need to find that both Cypress and Salerno committed conduct that amounts to common law fraud.

This claim has five elements, each of which Sport-BLX must prove by a preponderance of the evidence:

(1) Cypress/Salerno falsely represented or omitted facts that it had a duty to disclose;

(2) Cypress/Salerno knew or believed that the representation or omission was false or misleading, or made the representation or omission with a reckless indifference to the truth or its misleading nature;

(3) Cypress/Salerno intended to induce Sport-BLX to act or refrain from acting;

(4) Sport-BLX acted, or declined to act, in justifiable reliance on the false representation or omission; and

(5) Sport-BLX was injured as a result of its reliance.

Fraud may take the form of an overt misrepresentation, active concealment of material facts, or silence in the face of a duty to speak. Generally, there is no duty to disclose a material fact or opinion, unless the defendant has a duty to speak.  However, where one actively conceals a material fact, such person is liable for damages caused by such conduct.  Directors and officers of a company owe fiduciary loyalties to both each other and the company, including the duty to disclose material facts.

[Cypress Proposed]: For Sport-BLX to prevail on its claims for Common Law Fraud, it must prove that it "justifiably relied" on the alleged misrepresentations or omissions by Salerno and Cypress regarding Cypress's ownership structure.

Reliance is not justifiable if Sport-BLX had the opportunity to discover the truth but failed to do so, or if it ignored obvious risks. In determining whether Sport-BLX's reliance was justifiable, you may consider that Sport-BLX is a sophisticated commercial entity managed by experienced officers (Messrs. Hall and De Perio).

If you find that Sport-BLX, through the exercise of reasonable diligence, could have discovered the true facts regarding Cypress's structure, or if you find that Sport-BLX failed to make reasonable inquiries despite having the opportunity to do so before selling the stock, then its reliance was not justifiable. If Sport-BLX's reliance was not justifiable, you must find in favor of Salerno and Cypress on the fraud claims.

Sources:    Del. P.J.I. Civ. § 16.1; *Facchina Constr. Litigs*, 2020 Del. Super. LEXIS 2865, at *35 (Del. Oct. 29, 2020) (articulating elements); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987); *Getzler v. River Run Foods (DE)*, LLC, 2024 Del. Super. LEXIS 492, at *9-10 (Del. 2024); *In re Wayport, Inc. Litig.*, 76 A.3d 296, 316 (Del. Ch. 2013) (duty to disclose).

## Sport-BLX Parties' Objections to Cypress' Proposed Language

The Sport-BLX Parties object to Cypress' proposed language because it improperly heightens the standard of "justifiable reliance" and contravenes relevant authority. Courts in Delaware define justifiable reliance in the common-law fraud context as requiring "that the representations relied upon involve matters which a reasonable person would consider important in determining his choice of action in the transaction in question." *Craft v. Bariglio*, 1984 Del. Ch. LEXIS 421,, at *23-24 (Del. Ch. Mar. 1, 1984). Cypress' proposed language misstates the law and impermissible expands Sport-BLX's burden.

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 7**

**SPORT-BLX CLAIM 3:    Breach of Fiduciary Duty - Generally**

Sport-BLX contends that Salerno – as a board member – and Cypress – as a shareholder with actual control over the FINRA approval process – breached their fiduciary duties of loyalty by withholding information about Cypress' beneficial owners, and, in doing so, advanced Salerno's and Cypress' own interest over Sport-BLX's.  Sport-BLX further alleges that this conduct led Sport-BLX to abandon its broker-dealer application and change its business model. [3] Sport-BLX contends it is entitled to damages caused by these fiduciary breaches because the company lost a business opportunity when it was forced to abandon its broker-dealer license.

In order to prove its claim for breach of fiduciary duty, Sport-BLX must establish by a preponderance of the evidence that

(1)  A fiduciary duty existed;

(2) Cypress and/or Salerno breached that duty; and

(3) The breach resulted in damages to Sport-BLX.

A fiduciary duty is a duty that exists where an individual is reliant upon the judgment of another or where a special duty exists on the part of one person to protect the interests of another. According to Delaware corporate law, directors and officers of a company owe fiduciary loyalties to both each other and the company.  Therefore, Salerno owed a fiduciary duty to Sport-BLX.

Cypress was a minority shareholder of Sport-BLX.  As a general rule under Delaware law, a minority shareholder, a shareholder who owns less than 50% of the voting stock, owes no fiduciary duty to the corporation or other shareholders.  An exception exists only if the minority

---

[3]     SJ Decision at 15-16.

shareholder has either general control of the company or transaction specific control.  A plaintiff establishes that a minority-shareholder had general control by showing that the shareholder exercised sufficient influence that they, as a practical matter, were no differently situated than if they had majority voting control.  A plaintiff establishes that a minority-shareholder had transaction-specific control where the defendant-shareholder "exercised actual control over the board of directors during the course of a particular transaction." Either showing can establish fiduciary status.

Sport-BLX's breach of fiduciary duty theory is that Salerno and Cypress refused to provide the identities of Cypress' investors and made false and misleading statements about Cypress' ownership.  Sport-BLX claims that breach prevented it from pursuing broker-dealer registration, forced a change in its business plan, and caused the company substantial financial losses.

**Sources**:    Del. P.J.I. Civ. § 16.3; *See Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *Tornetta v. Musk*, 310 A.3d 430, 500 (Del. Ch. 2024).

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 8**

**Corporations and Corporate Responsibility**

In this case, Cypress, the plaintiff, and four of the defendants (Sport-BLX, S-BLX Securities, GlassBridge, and Clinton Group) are corporations. The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

Source:      1 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil § 72-1 (Matthew Bender, rev. ed. 2025).


Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 9**

**Consideration of Damages**

If a plaintiff has proven by a preponderance of the credible evidence that a defendant is liable on the plaintiff's claim, then you must determine the damages to which the plaintiff is entitled. Thus, you should only consider whether damages are appropriate on Claim 1, 2, or 3 if you found for Cypress on those claims. If you find damages are appropriate on Claims 1, 2, or 3, you may award Cypress damages resulting from the loss of its board seat, unless the other rules of law on which I will instruct you limit or reduce the amount that Plaintiff is entitled to recover Likewise, you should only consider whether damages are appropriate on Counterclaims 1, 2, or 3 if you found for Sport-BLX on those claims.

You should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

Source:        Sand et al., Modern Federal Jury Instructions—Civil, § 77-1; SJ Order at 29-30.

Given: _____

Given as modified:_____

Denied:_____

### Proposed Instruction No. 10

### Mitigation of Damages

You are instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages. The law imposes on an injured person the duty to take advantage of reasonable opportunities he or she may have to prevent the aggravation of his injuries, so as to reduce or minimize the loss or damage.

If you find the defendant is liable and that the plaintiff has suffered damages, the plaintiff may not recover for any item of damage he or she could have avoided through such reasonable effort. If the plaintiff unreasonably failed to take advantage of an opportunity to lessen his or her damages, you should deny recovery for those damages which he or she would have avoided had he or she taken advantage of the opportunity.

Bear in mind that the question whether the plaintiff acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert himself unreasonably or incur unreasonable expense in an effort to mitigate, and it is defendant's burden of proving that the damages reasonably could have been avoided. In deciding whether to reduce plaintiff's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

Source:        Sand et al., Modern Federal Jury Instructions—Civil, § 77-7.

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 11**

**Damages Where There Are Multiple Claims and Multiple Defendants**

I have two more cautionary instructions before I define the types of damages you may award, if you find that the plaintiff has proved liability according to the standards I have enumerated.

First, you should not award compensatory damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award him/her one dollar compensatory damages on each claim—he or she is only entitled to be made whole again, not to recover more than he or she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate him/her fully for all of the injuries.

Second, you must be careful to impose any damages that you may award on a claim solely upon the defendant or defendants who you find to be liable on that claim. Although there are six defendants in this case, it does not follow that if one is liable, all or any one of the others are liable as well. Each defendant is entitled to fair, separate and individual consideration of the case without regard to your decision as to the other defendants. If you find that only one defendant is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.

Nevertheless, you might find that more than one defendant is liable for a particular injury. If two or more persons unite in an intentional act that violates another person's right, then all of those persons are jointly liable for the acts of each of them; the law does not require the injured party to establish how much of the injury was done by each particular defendant that you find liable. Thus, if you find that the defendants who you find to be liable acted jointly, then you may treat them jointly for purposes of deciding damages. If you decide that two or more (both) of the

defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages.

**Source**:        Sand et al., Modern Federal Jury Instructions—Civil, § 77-2.

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 12**

**Compensatory Damages**

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendant's violation of the plaintiff's rights or the defendants' violation of the Sport-BLX's rights.  If you find that the defendant or defendants is liable on the claims, as I have explained them, then you must award the plaintiff or counterclaimant sufficient damages to compensate him or her for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole—that is, to compensate him or her for the damage suffered.  Damages for a breach of contract should place the wronged party in as good a position as that party would have been if the breaching party had fully performed its obligations under the contract.

I remind you that you may award compensatory damages only for injuries that a plaintiff or counterclaimant proves were proximately caused by a defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff or counterclaimant has actually suffered or which he or she or she is reasonably likely to suffer in the near future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff or counterclaimant to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

Source:        Sand et al., Modern Federal Jury Instructions—Civil, § 77-3.


Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 13**

**Nominal Damages**

If you find, after considering all the evidence presented, that the defendant violated the plaintiff's rights or breached a duty owed to the plaintiff, but that the plaintiff suffered no injury as a result of this violation or breach, you may award the plaintiff "nominal damages." "Nominal damages" are awarded as recognition that the plaintiff's rights have been violated. You would award nominal damages if you conclude that the only injury that a plaintiff suffered was the deprivation of his contractual rights, without any resulting financial damage.

You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing.

You may not award both nominal and compensatory damages to a plaintiff; either he or she was measurably injured, in which case you must award compensatory damages, or else he or she was not, in which case you may award nominal damages.

Nominal damages may not be awarded for more than a token sum.

Source:        Sand et al., Modern Federal Jury Instructions—Civil, § 77-6.

Given: _____

Given as modified:_____

Denied:_____

**Proposed Instruction No. 14**

**Punitive Damages**

[Cypress Proposed]: SPECIAL INSTRUCTION — PUNITIVE DAMAGES

(Applicable only to Count 8 and Count 12)

If you found that Defendant GlassBridge is liable for Tortious Interference (Count 8), or that Defendants Clinton Group or Sport-BLX Securities are liable for Aiding and Abetting a Breach of Fiduciary Duty (Count 12), you may consider whether to award punitive damages.

Punitive damages are distinct from compensatory damages. While compensatory damages are intended to make the Plaintiff whole, punitive damages are intended to punish a defendant for outrageous conduct and to deter the defendant and others from similar conduct in the future.

To award punitive damages, you must find by a preponderance of the evidence that the Defendant's conduct was not merely a mistake or negligence, but was "outrageous."

Conduct is outrageous when it involves malice such as acting with an "evil motive" or a specific intent to cause harm; or reckless indifference such as acting with a "conscious indifference" to the rights of others. This means the Defendant knew their actions would likely cause harm but proceeded anyway, without regard for the consequences.

For Count 8 (GlassBridge): You may award punitive damages if you find that GlassBridge interfered with the contract not just for business reasons, but with the malicious intent to harm Cypress or with reckless indifference to Cypress's contractual rights.

For Count 12 (Clinton Group / Sport-BLX Securities): You may award punitive damages if you find that these Defendants aided the breach of fiduciary duty willfully or maliciously, demonstrating a conscious disregard for the interests of Sport-BLX and its shareholders.

**<u>Sport-BLX Parties' Objections to Cypress' Proposed Language</u>**

The Sport-BLX Parties object to Cypress' proposed instruction because Cypress has not established punitive damages are warranted by the facts of this case. Delaware law reserves the imposition of punitive damages for conduct that is "egregious" and "of an intentional or reckless nature." *Jardel Co. v. Hughes*, 523 A.2d 518, 529 (Del. 1987) ("even when construed most favorably for plaintiff, the evidence permitted no reasonable inference that Jardel's conduct was sufficiently outrageous to warrant the imposition of punitive damages"). Cypress has not adequately pled that the Defendant's conduct, if unlawful, was intentional or malicious and punitive damages are inappropriate. *Id*. at 530. If the Court disagrees and concludes the jury should be instructed on punitive damages, we request that the jury be instructed that punitive damages may also be awarded to Sport-BLX on its claims.

Given: _____

Given as modified:_____

Denied:_____