UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CYPRESS HOLDINGS, III, L.P., individually and derivatively on behalf of SPORT-BLX, INC.

                      Plaintiff,

v.

GEORGE HALL, JOSEPH DE PERIO, SPORT-BLX, INC., SPORT-BLX SECURITIES, INC., CLINTON GROUP INC., and GLASSBRIDGE ENTERPRISES, INC.,

                      Defendants.

Civil Action No. 1:22-cv-1243-LGS

-------------------------------------------------------------x

SPORT-BLX, INC.,

                      Plaintiff,

v.

CYPRESS HOLDINGS, III, L.P., and MICHAEL M. SALERNO,

                      Defendants.

Civil Action No. 1:22-cv-8111-LGS

-------------------------------------------------------------x

## SPORT-BLX PARTIES' PRETRIAL MEMORANDUM OF LAW

Sport-BLX's claims against Cypress and Michael Salerno arise from material misrepresentations Salerno made in connection with his investment in Sport-BLX. The evidence presented at trial will show that Salerno misled Sport-BLX founders George Hall and Joseph De Perio by representing that he was investing personally when, in fact, he was investing on behalf of multiple individuals—including a convicted felon. Salerno executed this deception by negotiating the investment terms in his own name and then, at the last minute, substituting an entity called "Cypress Holdings III, L.P." as the signatory. In doing so, he described Cypress as "my holding company" and kept secret that it was a pooled investment vehicle. These misrepresentations were material. Sport-BLX was designed to operate as a registered broker-dealer and thus subject to

1

heightened regulatory scrutiny and significant disclosure requirements. Had Hall and De Perio known the truth about Cypress, they would not have accepted Salerno's investment.

Salerno's fraudulent conduct quickly became a full-fledged crisis for Sport-BLX. In July 2019, in connection with its efforts to obtain a broker-dealer license, the Financial Industry Regulatory Authority (FINRA) required Sport-BLX to identify its beneficial owners to the level of natural persons. To complete the application, Hall and De Perio sought confirmation that Salerno was Cypress' sole owner. Rather than correct the record, Salerno doubled down. He stalled and refused to answer, putting the application on hold. He advanced false claims and material omissions, invoking purported concerns about disclosing his estate plan. He persisted even after Sport-BLX's outside FINRA counsel warned that failure to provide beneficial-ownership information would be fatal to the application. He advanced proposals that he knew were unworkable and that Sport-BLX's counsel had already rejected. Because of Salerno's nondisclosure, Sport-BLX withdrew its FINRA application and was forced to change its business plan. As a Sport-BLX director, and with Cypress as a Sport-BLX Shareholder with control over this particular transaction, Salerno and Cypress owed fiduciary duties to Sport-BLX. Instead, Salerno placed his personal interests above the company's, compounding his initial lie even at the risk of derailing the business. The withdrawal of the broker-dealer application resulted in millions of dollars in lost value to Sport-BLX.

### Sport-BLX's Affirmative Claims

Sport-BLX brings three affirmative claims against Cypress and Salerno: federal securities fraud, common-law fraud, and breach of fiduciary duty. Sport-BLX will easily sustain its burden on each element of its claims and will be awarded substantial damages.

To prove its fraud claims, Sport-BLX must demonstrate 1) a fraudulent act or material misstatement or omission; 2) reliance by Sport-BLX; 3) knowing or reckless intent to defraud by Salerno; and 4) injury.[1]

***Reliance on a material misstatement or omission***: Sport-BLX will prove that Salerno affirmatively misled Sport-BLX during the investment negotiations by representing Cypress as "**my** holding company," concealing that Cypress was, in fact, a pooled investment vehicle with fifteen limited partners. Sport-BLX's founders Hall and De Perio relied on Salerno's misrepresentations and omissions. Among Cypress' investors was a convicted felon. Had they known of Cypress' limited partners, they would not have accepted Cypress' investment because Sport-BLX needed to satisfy heightened regulatory scrutiny. The jury will hear testimony about the extensive measures that Sport-BLX undertook to ensure compliance with FINRA and the SEC because it intended to be a broker-dealer, and that without that license, Sport-BLX could not pursue the commission-based revenue model central to the founders' plan. Moreover, Salerno and other Cypress investors were embroiled in litigation around the time of their proposed investment, a circumstance that risked creating disclosure complications for Sport-BLX and impairing its capital-raising efforts. This provides an additional, independent basis for Hall and De Perio to decline Cypress' investment. Accordingly, Sport-BLX will establish reliance. which could have created disclosure issues for Sport-BLX and adversely affected its ability to raise capital, providing another reason for Hall and De Perio to reject Cypress' investment. Thus, Sport-BLX will prove reliance.

---

[1] A fulsome recitation of the elements is provided in defendant's Proposed Jury Instructions at Dkt. 283. While not discussed herein, Sport-BLX will also meet its burden to show that Salerno and Cypress used a means and instrumentality of interstate commerce (the internet) in carrying out the fraudulent scheme and that the fraud was related to the purchase of a security (Sport-BLX stock).

*Scienter:* Sport-BLX will establish the requisite scienter because Salerno acted knowingly or, at minimum, recklessly with the intent to deceive. At the time of the investment, Salerno knew that Hall and De Perio understood him to be Cypress' sole owner, and the evidence will show that his words and conduct perpetuated that misimpression. For example, Hall and De Perio insisted that Salerno execute a non-disclosure agreement before receiving sensitive company information and provided a blank form to be used if additional investors were involved. Salerno nevertheless executed the NDA only in his own name, thereby reinforcing Hall and De Perio's reasonable belief that he alone was the investor.

*Breach of Fiduciary Duties:* Salerno's fraudulent scheme continued after his initial investment and resulted in a breach of the fiduciary duties he and Cypress owed to Sport-BLX. Salerno refused to disclose Cypress' ownership when he knew nondisclosure would be fatal to the company's business plan. In August of 2019, when he was asked directly whether he was the sole owner of Cypress, he gave false and misleading information aimed at shutting down additional inquiry. Specifically, after repeated requests in August 2019 to confirm whether he was Cypress' sole owner and to identify Cypress' beneficial owners for the company's FINRA application, Salerno stonewalled, first ignoring emails and then invoking vague privacy concerns related to his "estate plan" rather than answering the straightforward question. He then asserted that his fellow directors did not have a right to know Cypress' owners and insisted that any disclosure—if at all—should be made privately to FINRA and not to the company. And, Salerno persisted in that refusal even after outside counsel advised the Board that FINRA required the information to come through Sport-BLX and be known by Sport-BLX. Despite being told unequivocally that broker-dealer registration could not proceed without disclosure of Cypress' beneficial owners, he refused to provide that information. As a direct result, Sport-BLX withdrew its FINRA application and

4

pivoted away from its core broker-dealer model, causing the company substantial financial harm attributable to Salerno's conduct.

Finally, the jury will further learn that Salerno's misrepresentations and omissions were not inadvertent. His later, adamant refusal to disclose Cypress' owners indicates that he intended to keep that information secret at the time of his initial investment. His after-the-fact assertions that he was willing to disclose will be easily recognized by the jury as disingenuous. Salerno did not identify Cypress' owners until he was court-ordered to do so in this litigation. What's more, his credibility will be severely impeached by evidence that, almost immediately after investing, he began secretly recording his calls and meetings with Hall and De Perio, and even board meetings – without informing the participants and regardless of the sensitivity of the information being discussed. In at least one recording, the jury will hear others expressly state that information is confidential, and hear Salerno acknowledge that fact, even as he continued recording without the knowledge or consent of the other participants.

***Damages:*** Sport-BLX will prove damages through a diminution-in-value analysis anchored to the company's pivot away from the broker dealer model after Salerno and Cypress refused to provide beneficial ownership information. Sport-BLX's damages expert calculates approximately $29 million in losses as of December of 2019.

At bottom, Sport-BLX will prevail at trial on each of its claims against Cypress and be awarded substantial monetary damages.

### Cypress' Claims

As to Cypress' claims, nearly all have been rejected by this Court. Only three survive: (1) breach of the implied covenant of good faith and fair dealing against Hall, De Perio, and Sport-BLX, limited to whether the use of stock transfers to GlassBridge evaded the Side

Agreement and eliminated Cypress's board seat and to damages, if any, that consequentially injured Cypress's investment from the loss of that seat; (2) tortious interference with contract against GlassBridge; and (3) aiding and abetting breach of fiduciary duty against S-BLX Securities and Clinton Group.

As to the implied-covenant claim, the Court identified a single triable issue of liability—whether Hall, De Perio, and Sport-BLX used a nominally permitted sale of shares to evade the Side Agreement to eliminate Cypress's board seat—and confined any damages to consequential injury to Cypress's investment resulting from that loss. The Court dismissed Cypress's tortious interference claims against Clinton Group and S-BLX Securities but allowed Cypress's tortious interference claim against GlassBridge to proceed, and it dismissed Cypress's unjust enrichment theories. The aiding-and-abetting claim against S-BLX Securities and Clinton Group also survives.

1. **Cypress' Claim Against Sport-BLX, Hall, and De Perio for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Cypress alleges breach of the implied covenant of good faith and fair dealing based on Hall and De Perio's alleged use of stock transfers to GlassBridge to evade the Side Agreement and eliminate Cypress' board seat. Cypress' claim is based on the following facts:

On February 28, 2019, Cypress signed three agreements related to its approximately $1 million investment in Sport-BLX – a company founded by defendants George E. Hall and Joseph De Perio. The agreements included two Stock Purchase Agreements[2] and a Side Agreement. The Side Agreement, among other terms, obliged Mr. Hall and Mr. De Perio "to vote, or cause to be voted, all shares of [Sport-BLX] capital stock owned by [them], or over which [they had] voting

---

[2] The parties executed two separate Common Stock Purchase Agreements on February 28, 2019: one for 5,263 shares at $95.00 per share and another for 2,497 shares at $200.18 per share. Though the agreements were executed on February 28, Cypress did not fund the investment until March 8, 2019.

control, in favor of Salerno being elected" to the Sport-BLX Board of Directors, so long as Cypress held at least 2.5% of the outstanding stock. At the December 23, 2019, annual shareholder meeting, Sport-BLX shareholders elected directors to the Board for 2020. Hall and De Perio voted all of their Sport-BLX shares in favor of Salerno. Other stockholders voted against Salerno, and he was not elected to the Board. Despite Hall's and De Perio's compliance with the terms and spirit of the Side Agreement, Cypress claims they breached the implied covenant of good faith and fair dealing because, prior to the Board vote, they sold shares to GlassBridge Enterprises, Inc., another investor, which voted for its own slate of directors to the Sport-BLX board rather than Salerno. To prevail on its claim, Cypress must prove: 1) a specific, implied contractual obligation not addressed by the contract's express terms; 2) a breach of that obligation; and 3) resulting damages. The contract in question is the Side Agreement.

     Cypress cannot meet its burden on any element of its claim. As the jury will be instructed, a plaintiff may not use the implied covenant to rewrite a contract, nor can it be used to create new obligations. *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 117 (Del. 2022) (finding that Delaware courts do not use the implied covenant as a backstop to imply terms that parties failed to include but which could have been drafted). And, the implied covenant is a "limited and extraordinary" remedy that cannot contradict express rights or fill gaps that could have been—or were—anticipated. *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010). Rather, the implied covenant applies only if it is evident from the contract that the parties would have forbidden the conduct had they considered it. *Ross v. Institutional Longevity Assets LLC*, 2019 Del. Ch. LEXIS 74, at *8 (Del. Ch. Feb. 26, 2019) ("It must be clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter.") (internal

7

citations omitted)  It does not apply when the contract speaks directly to the matter. *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009) ("The implied covenant does not apply when the subject at issue is expressly covered by the contract" and "[c]ourts should be most chary about implying a contractual protection when the contract easily could have been drafted to expressly provide for it." (internal quotation marks omitted)). Finally, Cypress will be unable to prove damages because it has no admissible damages theory and cannot articulate monetary damages resulting from the loss of its board seat. Accordingly, Cypress' claim fails.

**Cypress cannot demonstrate a breach of any implied term of the Side Agreement**. There was no implied obligation in the side agreement preventing Hall or De Perio from selling their shares or guaranteeing Salerno a permanent board seat. The evidence presented at trial will show the opposite. Sport-BLX will present evidence that, before investing, Salerno exchanged numerous drafts of the agreements with Sport-BLX and had the opportunity to review them with counsel, propose revisions, and submit comments. Despite spending a month negotiating the agreements' terms, Salerno never sought restrictions on Hall's or De Perio's ability to sell their shares. To the contrary, Salerno specifically requested—and received—tag-along rights, in the event that majority shareholders—including Hall or De Perio—sold their stock, as well as anti-dilution protections. Moreover, Salerno and his counsel drafted these provisions themselves. These negotiated protections confirm that Salerno understood that control-shifting sales were possible and sought certain targeted safeguards for himself if they occurred.

Cypress' claim fails because the law does not permit a plaintiff to use the implied covenant of good faith and fair dealing to rewrite a contract or create new obligations. *See Baldwin,* 283 A.3d at 117, above. Instead, the implied covenant applies only when it is evident from the contract that the parties would have prohibited the challenged conduct had they considered it. *Id*. Cypress

8

will not be able to establish that Hall and De Perio would have agreed to limit their ability to transfer shares, had that term been proposed. Indeed, Hall and De Perio rejected similar proposals when negotiating terms with Salerno. Email correspondence presented at trial will show that, prior to signing, Salerno proposed language in the Side Agreement to preserve his board seat in the event that his ownership fell below 2.5%. Sport-BLX rejected that proposal, expressly stating that it "[could not] accept the proposal on maintaining the board seat with dilution below 2.5%," while noting that if Salerno were diluted but continued making meaningful contributions, it would "gladly keep [him] on the board." Salerno nonetheless accepted the Side Agreement despite being denied the board-seat protections he sought. He cannot now claim the agreement barred Hall and De Perio from selling their shares or guaranteed him a board seat in perpetuity. The negotiation history confirms that Sport-BLX, Hall, and De Perio would not have agreed to such terms. Accordingly, Cypress cannot prove the existence of any specific implied contractual obligation not already addressed in the written agreements.

***Cypress cannot demonstrate a breach in bad faith***. Nor can Cypress show that Sport-BLX, Hall, or De Perio acted unreasonably or in bad faith by selling some of their shares to GlassBridge. Instead, the evidence at trial will establish legitimate business reasons for all parties to engage in the transaction, independent of Salerno's board seat. And, Cypress will be unable to substantiate its baseless claims that Hall or De Perio controlled GlassBridge. To the contrary, the evidence will demonstrate that non-interested members of GlassBridge's board considered and approved the acquisition of Sport-BLX stock. The jury will further learn that GlassBridge proposed a new, highly qualified director, with extensive experience in related industries.

Notably, before the shareholder vote, Salerno advocated for Sport-BLX to leave a $1.75 million demand note from GlassBridge outstanding and to take no steps to address it. And, Salerno

voted against seating a GlassBridge representative on the Sport-BLX board. These actions—together with Salerno's overall conduct toward Sport-BLX and its board members throughout 2019, among others observed by GlassBridge—provided legitimate reasons for GlassBridge to prefer a new candidate to Salerno. On this record, Cypress' implied covenant theory fails as a matter of both fact and law.

***Cypress cannot prove damages.*** Even if Cypress could identify a breach—which it cannot—it has no cognizable damages. The jury will hear uncontroverted evidence that Sport-BLX board seats were uncompensated. And, when director compensation was raised shortly before the shareholder vote, the company tabled the issue because it lacked the means to pay directors at that time. Further, the suggestion that the loss of Salerno's board seat somehow diminished the value of his investment in Sport-BLX is untenable. GlassBridge's purchase did not alter Salerno's ownership interest, and he retained all of the investor protections he bargained for at the time of his investment, including tag-along rights and anti-dilution protections. In fact, evidence at trial will establish that Salerno was the *only* Sport-BLX director who had these additional protections. Moreover, the notion that Salerno could have enhanced the value of his investment by taking self-interested actions as a Sport-BLX director is incompatible with his fiduciary duties to the company and therefore cannot constitute a cognizable source of loss. Finally, as outlined in our Motion *in Limine* to Preclude Monetary Damages Evidence (Dkt. No. 266), Cypress has not identified any admissible computation or evidence of monetary damages. It has designated no expert, and cannot rely on lay testimony to prove damages.

### 2. Cypress' Claims against S-BLX Securities and Clinton Group for Aiding and Abetting a Breach of Fiduciary Duty

The Sport-BLX Parties maintain that Aiding and Abetting a Breach of Fiduciary Duty, as pled in Count 12, cannot be alleged without reviving previously dismissed counts. *See, e.g.*,

10

*Feldman v. AS Roma SPV GP, LLC*, 2021 Del. Ch. LEXIS 155, at *33 (Del. Ch. July 22, 2021) ("It is axiomatic that to state a claim for aiding and abetting a breach of fiduciary [duty], a plaintiff must allege an underlying breach of fiduciary duty."); *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1039 (Del. Ch. 2005) ("[H]aving failed to state an underlying claim for breach of fiduciary duty…[the] aiding and abetting claim… necessarily fails."), *aff'd*, 894 A.2d 407 (Del. 2005). If the Court allows the claim to go forward on the ground that prior counsel failed to expressly move for its dismissal at summary judgment, that procedural posture does not insulate Plaintiff from judgment as a matter of law. And, Cypress will be unable to offer supporting evidence. Cypress' proposed jury instructions make plain that it intends to pursue Count 12 based on allegations that Hall and De Perio "siphon[ed] off the company's assets and opportunities" through excessive rent payments and sale of its trading platform for less than market value. (Dkt. 283-1 at 21.) But – when the Court considered these very allegations at summary judgment it entered judgment *against* Cypress as a matter of law. Nor will Cypress fare any better before a jury, where the record will not be construed in Cypress' favor.

Accordingly, Defendants anticipate that the jury will find that Hall, De Perio, and Sport-BLX did not breach the implied covenant of good faith and fair dealing and that S-BLX Securities and Clinton Group did not aid and abet a breach of fiduciary duty. And even if the jury does find for Cypress on liability, it should award no damages.

Dated:  December 30, 2025

Respectfully submitted,

/s/ *Michael S. Schachter*
WILLKIE FARR & GALLAGHER LLP
Michael S. Schachter (MS0326)
Shaimaa M. Hussein (SH9276)
Meredith E. Mayer-Dempsey (5213202)
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000
mschacter@willkie.com
shussein@willkie.com
mmayer-dempsey@willkie.com

*Counsel for Defendants*