UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CYPRESS HOLDINGS, III, L.P.,

        Plaintiff,

            v.

GEORGE HALL and SPORT-BLX, INC.,

        Defendants.

-------------------------------------------------------------x

Civil Action No. 1:22-cv-1243-LGS

## SPORT-BLX'S REPLY IN SUPPORT OF ITS MOTION FOR A NEW TRIAL

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT…………………………………………………………….1

LEGAL ARGUMENT....................................................................................................................2

    I.       Sport-BLX's Motion and Evidentiary Arguments Are Not Procedurally Barred ...........2

    II.     The Speculative Damages Award to Cypress Cannot Stand ...........................................3

        A.   The Damages Award is Speculative and Lacks Support in the Record.......................3

        B.   Sport-BLX Need Not Demonstrate that the Damages Award Shocks the Judicial
            Conscience. ...........................................................................................................7

    III.    The Jury's Improper Consideration of Tag-Along Rights Warrants a New Trial ...........8

    IV.   A New Trial is Also Warranted for Damages on the Fiduciary Duty Claim...................9

TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anderson Group LLC v. City of Saratoga Springs*,
    805 F.3d 34 (2d Cir. 2015)......................................................................................2, 5, 8

*Base Optics Inc. v. Liu*,
    2015 WL 3491495 (Del. Ch. May 29, 2015)...........................................................10

*Beard Rsch., Inc. v. Kates*,
    8 A.3d 573 (Del. Ch. 2010)..........................................................................................5

*Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*,
    34 F.3d 1148 (2d Cir. 1994).........................................................................................3

*In re Dura Medic Holdings, Inc. Consolidated Litigation*,
    333 A.3d 227 (Del. Ch. 2025)......................................................................................5

*Exodus Partners, LLC v. Cooke*,
    2007 WL 120053 (S.D.N.Y. Jan. 17, 2007) .............................................................10

*Giles v. Rhodes*,
    171 F. Supp. 2d 220 (S.D.N.Y. 2001)..........................................................................2

*Kirsch v. Fleet Street, Ltd.*,
    148 F.3d 149 (2d Cir. 1998).........................................................................................8

*Knox v. John Varvatos Enterprises Inc.*,
    512 F. Supp. 3d 470 (S.D.N.Y. 2017)......................................................................6, 7

*Manley v. AmBase Corp.*,
    337 F.3d 237 (2d Cir. 2003).........................................................................................2

*Olaechea v. City of New York*,
    2022 WL 3211424 (S.D.N.Y. Aug. 9, 2022)............................................................2, 3

PRELIMINARY STATEMENT

In its opposition brief, Cypress attempts to offer an alternative explanation for the jury's calculation of $644,080 in damages on the breach of the implied covenant claim. According to Cypress, the jury's award is based not on tag-along rights, but on a purported calculation of the difference in value of Sport-BLX before and after Michael Salerno was removed from the board of directors. But the jury could not have found any diminution resulting from Salerno's removal because no such evidence was presented at trial.

Although Cypress spends the bulk of its brief arguing that the jury's figure was calculated using "contemporaneous data points" (Opp. at 14), it skips the critical first step in any damages inquiry: there must be a direct causal nexus between the alleged wrongdoing and the claimed damages. Here, that means the jury *first* needed to find that Salerno's removal caused a diminution in Sport-BLX's value and—as a result—in Salerno's investment. If no causal nexus is established, there cannot be *any* monetary damages awarded to Cypress.

Cypress largely ignores this point. Its only support for causation is Salerno's testimony "that had he not been removed from the board, he would have fought aggressively against the subsequent fire-sale of the technology platform." (Opp. at 9.) As explained below, this falls woefully short of establishing the nexus required to award monetary damages to Cypress. Having not established *the fact of monetary damages*, no calculation of damages can be proper.

Cypress's damages arguments also fail for several other reasons, including that its proffered figures do not reflect "contemporaneous data points" of the before-and-after values of Sport-BLX. Cypress's remaining arguments rest on faulty procedural claims, inapplicable legal standards, and responses to arguments that Sport-BLX did not make. The fact of the matter is that Cypress pursued a theory at trial that focused heavily on the tag-along rights and, in so doing,

ignored the only path to monetary damages that the Court ruled was permissible. This infected other portions of the trial, including damages on the fiduciary duty claim brought by Sport-BLX— and no attempt by Cypress to reverse-engineer a permissible verdict can change that. A new trial must therefore be granted under Rule 59.

## LEGAL ARGUMENT

I.      Sport-BLX's Motion and Evidentiary Arguments Are Not Procedurally Barred.

Cypress's opposition rests on a series of mischaracterizations of the legal standards governing Sport-BLX's motion and repeatedly invokes principles that apply only to motions under Rule 50(b). Rule 59(a) permits a new trial where the jury reached a "seriously erroneous result" or the verdict is "against the weight of the evidence." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (internal citations omitted). The standard is less stringent than for judgment as a matter of law: a new trial may be granted even where substantial evidence supports the verdict, and the court may weigh the evidence itself without viewing it in the light most favorable to the verdict winner. *Id*. Cypress contends that Sport-BLX's motion is procedurally barred absent a showing of "manifest injustice" because Sport-BLX did not move for a directed verdict. (Opp. at 1, 15-16.) But Rule 59 imposes no procedural prerequisites. Instead, "[a] party may request a new trial under Rule 59 even if the party failed to move for judgment as a matter of law…." *Giles v. Rhodes*, 171 F. Supp. 2d 220, 224 (S.D.N.Y. 2001). Cypress's claim should be rejected.

Cypress also maintains that Sport-BLX cannot support its motion by identifying evidentiary deficiencies, including that the award is speculative and unsupported. (*See* Opp. at 15.) But Sport-BLX's arguments are well within Rule 59's scope and the authorities it cites demonstrate that courts routinely assess, pursuant to Rule 59, whether a damages award is adequately supported by the evidentiary record. *See*, *e.g.*, *Anderson Group LLC v. City of Saratoga Springs*, 805 F.3d 34, 52 (2d Cir. 2015) (ordering a new trial under Rule 59 where a damages

2

award was "impermissibly speculative"); *Olaechea v. City of New York*, 2022 WL 3211424, at \*9 (S.D.N.Y. Aug. 9, 2022) (finding the jury "did not have sufficient evidence" to award damages where no evidence was presented regarding the plaintiff's prospects of finding, or efforts to find, alternative employment).

Cypress's reliance on *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148 (2d Cir. 1994) is therefore misplaced. *Cruz* addressed whether the trial court properly set aside a verdict under a Rule 50 motion for judgment as a matter of law, including whether the movant had preserved a challenge to damages and what constraints Rule 50(b) places on post-verdict arguments. *Cruz* therefore does not analyze or apply the standards governing Sport-BLX's request. Sport-BLX seeks a new trial, not judgment in its favor. Nor is a remittitur of the damages award equivalent to a directed verdict. If the Court gave Cypress the option of accepting the reduction, the jury's liability finding would stand and Cypress could be awarded nominal damages—as the Court previously ruled *in limine* was permissible. (ECF 300 at 5.)

II.    The Speculative Damages Award to Cypress Cannot Stand.

    A.    *The Damages Award is Speculative and Lacks Support in the Record.*

The Court permitted Cypress to attempt to prove damages through "consequential injury to its investment" by calculating the value of Cypress's stock prior to Salerno's removal from the Sport-BLX board, less any remaining value of the stock at the time of trial. (ECF 300 at 5-6.) Cypress claims the jury did that, arriving at its award by comparing the approximately $85 per share Hall received when he sold his Sport-BLX stock to GlassBridge in December 2019 (while Salerno was still on the board) against the $2 per share Hall later paid in 2021 (when Salerno was no longer on the board) to reacquire the shares. This argument fails for at least three reasons:

**First**, there was **no** evidence presented at trial establishing the necessary causal nexus between Salerno's removal and any change in value of the company's stock. Cypress's opposition

3

offers no substantive response to this fundamental deficiency. Instead, it urges the Court to sidestep the merits by finding the argument procedurally barred. As outlined above, that argument is unavailing.

Cypress's only attempt to demonstrate the required causal link is a single line in its facts section referring to Salerno's testimony that, as an independent director, he would have fought against the sale of Sport-BLX's technology platform. (Opp. at 14.) But there is **no** evidence that the sale of the technology platform harmed the company. To the contrary, the Court granted summary judgment on Cypress's unjust enrichment claims, finding no evidence that the technology platform was sold for less than fair value. (ECF 252 at 31.)[1] And even if there was such evidence, Salerno, as one director out of seven, could not have single-handedly prevented the board from approving the technology sale. (ECF 327 at 14-15.) So there was no basis upon which the jury could have rationally concluded that Salerno's sole opposition could have actually prevented the software sale or resulted in Sport-BLX achieving a greater value. Cypress's purported rationale for the jury's verdict is thus speculation layered upon speculation.

Notably, in defending the $99,750 damages award to Sport-BLX, Cypress relies on the very evidence that renders its own award speculative. Cypress argues that the jury assessed the "'mountain' of *alternative causes*" for Sport-BLX's failure to succeed (Opp. at 27), including "outstanding FINRA deficiencies…COVID-19 [and]…its capital position." (Opp. at 8) (emphasis added). But Cypress does not explain why these "alternative causes" for the company's decline do

---

[1]    Moreover, Sport-BLX Board Minutes from the months leading up to the December 2021 technology sale confirm that the company was insolvent well before then. This further undercuts Cypress's claim that the sale decreased the value of Sport-BLX and that Salerno's opposition to it would have prevented financial harm to the company. *See* Ex. A. Separately, the $2 per share purchase in December 2021 represented only one component of a multistep transaction and therefore did not reflect the company's true stock price. (*See* Trial Ex. PP (2021 GlassBridge 10K)).

4

not apply with equal force to Cypress's own claim. Even if Cypress had presented evidence that Sport-BLX was harmed by Salerno's removal—which it did not—Cypress has not distinguished between harm resulting from Salerno's removal and harm attributable to these conceded "alternative causes."[2]

Put simply, Cypress asks this Court to assume that the jury found a nexus between Salerno's removal from the board and the company's decline—but no such evidence was ever presented. The Second Circuit has held that this type of speculative proof cannot sustain a damages verdict. *See Anderson Group*, 805 F.3d at 53-54 (rejecting as unduly speculative plaintiff's claim that it lost a $900,000 developer fee where (1) receipt of the fee depended on plaintiff being awarded tax credits through a competitive bidding process, (2) plaintiff had never applied for those tax credits or actually purchased or contracted to purchase the land on which the project would be built, and (3) no evidence was presented regarding the percentage of applicants who succeeded in obtaining tax credits). Here, the record is similarly devoid of proof that Salerno's presence on the board would have prevented the company's decline—or, if so, to what degree.

**Second**, Cypress failed to show that its proffered data points support a reliable damages calculation. Cypress contends the jury's award reflects a permissible damages theory because it corresponds to a Sport-BLX stock price of $85 per share while Salerno served on the board and $2 per share following his removal. Yet neither figure withstands scrutiny. The $85 amount is composed predominantly of interest payments that Hall received over time on his original

---

[2]    Cypress also attempts to defend its calculation by invoking the Wrongdoer Rule, which states that uncertainty about the extent of damages is generally resolved against the party in breach. *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010). But this rule does not change the requirement that damages flow from the breach at issue. *In re Dura Medic Holdings, Inc. Consolidated Litigation*, 333 A.3d 227, 256 (Del. Ch. 2025). Here, the calculation reflects an award for breach of tag-along rights, not the implied covenant, and the evidence is thus insufficient to support the award.

purchase—payments that accrued independently of any assessment of Sport-BLX's per-share value as of 2019. Because that figure was derived not from an independent valuation of the company's shares but rather from the total consideration Hall personally received, it cannot credibly serve as a reliable measure of Sport-BLX's value at the relevant time. To the contrary, the methodology underlying the $85 calculation—which looks exclusively to what Hall received from the GlassBridge sale—is entirely consistent with a damages theory rooted in tag-along rights.

The $2 figure is equally infirm. Cypress introduced evidence that Hall repurchased his shares from GlassBridge in December 2021 at $2 per share—but it did so not to establish fair value. Rather, Cypress elicited this evidence to support its contention that Hall was orchestrating transactions for his own benefit, and invoked the $2 price to accuse Hall of self-dealing, thereby casting doubt on the legitimacy of the transaction—including the stock price itself. (*See, e.g.*, Tr. 29:19-30:4 (Hall was "able to buy back [his] shares…at the price of $2 per share" and "[was] able to cash out millions of dollars…while the remaining investors were left with zero."); *see also* Tr. 102:6-21; 353:5-354:8; 606:16-19.) Cypress cannot now recharacterize that same figure as a reliable measure of Sport-BLX's value. Moreover, the December 2021 transaction occurred more than four years before the February 2026 trial, and Cypress introduced no other evidence whatsoever establishing the value of Cypress's Sport-BLX shares as of February 2026. Absent any foundation tying either figure to Sport-BLX's value at the relevant times, the resulting calculation is inherently speculative, and Cypress's attempt to recast the basis for the jury's award should be rejected.

Cypress ignores this critical failure, asserting that the calculation is supported merely because it can be tied to figures the jury heard during trial. (*See* Opp. at 14-15.) That alone, however, is not sufficient to sustain the verdict. *Knox v. John Varvatos Enterprises, Inc.*, 512 F.

Supp. 3d 470 (S.D.N.Y. 2017) is instructive. There, a class of female sales associates alleged sex-based pay discrimination against menswear retailer John Varvatos Enterprises, Inc. *Id*. at 478-79. The claims arose from Varvatos's "Clothing Allowance" policy, which allowed male sales professionals to retain $3,000 worth of Varvatos-branded clothing four times per year, while female sales professionals received only a 50% discount at a sister brand and no clothing allowance at all. *Id*. After trial, the jury awarded compensatory damages of $3,000 per quarterly clothing "pull." *Id*. The court, however, recognized that mere numerical correspondence between the jury's $3,000 per-pull damages award and clothing allowance was insufficient to sustain the verdict. *Id*. at 488-89. Because $3,000 per pull did not reflect the female associates' actual losses, the court ordered a new trial. *Id*. So too here: the Court must ensure that the amount awarded is commensurate with Cypress's proven losses. Because Cypress failed to prove its losses, the award lacks an evidentiary foundation and a new trial should be ordered.

*Third*, Cypress failed to prove that Salerno had "personal knowledge" of the value of Sport-BLX stock at the time of trial, as the Court mandated would be required in order to prove damages. (ECF 300 at 6.) By the time of trial, Salerno had been off the Sport-BLX board for over six years. He did not establish any basis upon which to testify to its present value. Tellingly, when Salerno was asked why he believed Sport-BLX was "basically worthless," he made no mention of the $2 purchase price and instead referred vaguely to "communications" and "conversations with Mr. Hall." (Tr. 106:10-21.) The jury therefore had no basis upon which to conclude that Salerno had any personal knowledge of the company's value at the time of trial.

      B.      *Sport-BLX Need Not Demonstrate that the Damages Award Shocks the Judicial Conscience.*

Cypress claims Sport-BLX's motion should be denied because the verdict does not "shock[] the judicial conscience." (Opp. at 2, 12.) But the Court can vacate the damages award

absent such a showing—and indeed must vacate in this situation, in light of the lack of evidence to support the award.

As the Second Circuit explained in *Kirsch v. Fleet Street, Ltd*., 148 F.3d 149 (2d Cir. 1998), there are two distinct bases for ordering a new trial on damages. The first is identifiable error, where the court can point to a specific error that caused the jury to include a quantifiable amount in its verdict that should be stricken. *Id*. at 165-66. The second is an intrinsically excessive award, where the damages exceed what any reasonable jury could have rendered, even though the surplus cannot be traced to a particular, quantifiable error. The "shocks the judicial conscience" standard applies only to the second category. *Id*. at 165. Where, as here, a specific error is identified— namely, that the jury awarded damages based on tag-along rights and, even if it did not, the award is unsupported—the Court "may set aside the resulting award" even if the amount alone does not "shock the conscience." *Id*. Indeed, the inclusion of speculative damages constitutes an identifiable error. *See, e.g.*, *Anderson Group*, 805 F.3d at 52 ("[A] plaintiff may not recover when it is uncertain whether…damages resulted necessarily and immediately from the breach complained of.")

III.    The Jury's Improper Consideration of Tag-Along Rights Warrants a New Trial

Despite Cypress's efforts to reverse-engineer a permissible damages award, the jury's verdict was infected by the improper injection of tag-along rights into the trial. The Court's instructions were clear: Cypress "may not argue that the Sport-BLX Parties are liable because tag-along rights…were triggered or breached." (ECF 300 at 4.) But Cypress did just that: it characterized the tag-along rights as "part and parcel" with the board seat agreement (Tr. 159:22-160:1-2) and described the agreement as "provid[ing] tag-along rights to the seat of the board of directors." (Tr. 55:4-6). Cypress also elicited testimony from Salerno that the tag-along rights "kind of" guaranteed him a permanent board seat because "the intent" of the agreement was that Hall "would always vote his 100,000 shares" in Salerno's favor (Tr. 157:16-159:10). In summation,

8

Cypress argued that Hall's sale of shares to GlassBridge was "self-dealing" and that Hall had "promise[d] tag-along rights" to Salerno but then "secretly" sold his shares to GlassBridge without "offer[ing] Cypress or other shareholders" the opportunity to participate. (*See* ECF 327 at 9; Mot. Ex. D, Excerpt from Cypress's Summation Slide Deck.)

Cypress's opposition ignores this problem entirely. Instead of separating the distinct issues of the board seat promise and tag-along rights, Cypress continues to conflate them, maintaining that it was somehow harmed by its inability to tag-along with the GlassBridge sale. (Opp. at 3, 8.) Indeed, the opposition brief continues to claim that there was something improper about Hall's failure to allow Salerno to tag-along in the GlassBridge sale and that Hall "reap[ed] a windfall" for himself when he sold his personal shares to GlassBridge instead of issuing shares from Sport-BLX. (Opp. at 8.)

The effect of this conflation on the jury is plain from the damage award, which demonstrates that the jury heeded Cypress's call, resulting in a verdict improperly influenced by rights that were never at issue in this case. (ECF 327 at 11-13.) The jury was convinced that Hall acted improperly in selling his shares to GlassBridge without permitting Salerno to do the same, and calculated damages based on what Salerno would have received if he had also participated in that sale.

IV.     A New Trial is Also Warranted for Damages on the Fiduciary Duty Claim.

The emphasis on the tag-along rights also extended to the jury's consideration of Sport-BLX's fiduciary duty claim. The jury awarded Sport-BLX only $99,750 in damages—a figure wholly unsupported by the record. The evidence at trial demonstrated far greater harm: expert testimony established that Sport-BLX sustained approximately $29 million in damages based on the loss of its broker-dealer potential, and factual testimony showed the company spent $5.5 million attempting to obtain its license, none of which it was able to recover. However, because

9

the jury heard repeatedly throughout the trial about the purported "windfall" to Hall from the sale of stock to GlassBridge, their consideration of the potential harm to Sport-BLX was prejudiced by impermissible testimony about the GlassBridge transaction and tag-along rights. The result was a damages award to Cypress untethered to any actual loss from the removal from the board, and a damages award to Sport-BLX decreased to reflect a supposed "windfall" to Hall stemming from a claim not at issue during trial.

Cypress speculates that because there were "alternative causes" of Sport-BLX's struggles, the jury must have concluded that Salerno's failure to provide the required information for the broker-dealer license was not the predominant cause of the company's decline and therefore discounted the award from the $29 million requested. (Opp. at 26-27.) Cypress then claims that any uncertainty regarding the actual degree of loss constitutes a "fair approximation" falling "within the range of permissibility established by the trial record." (Opp. at 16-17.) That is not the law. Cypress's damages must be proven "to a reasonable certainty" and must "flow[] from [Sport-BLX's] violation of the contract." *Base Optics Inc. v. Liu*, 2015 WL 3491495, at *16 (Del. Ch. May 29, 2015). Though mathematical certainty is not required, "courts will not award damages which require speculation…." *Id*.

Cypress's argument asks the Court to sanction precisely the type of guesswork that *Exodus Partners* prohibits. There, Judge Lynch found an award unduly speculative where the defendants sought $500,000, the jury awarded $330,000, and there was "a complete absence of evidence that would provide a jury with any reasonable basis to set the damages award…above zero dollars but below $500,000." *Exodus Partners, LLC v. Cooke*, 2007 WL 120053, at *14 (S.D.N.Y. Jan. 17, 2007). As Judge Lynch observed, "to award any amount in between zero and $500,000 would require the jury to…engage in pure guesswork…." *Id.* Accordingly, *Exodus Partners* dictates that

this Court cannot approve a damage amount between zero and the $2,754,800 Cypress requested simply because the verdict falls within that range. (*See* Ex. A (Summation Slide Deck Excerpt), listing damages request.) Cypress's claim that "the award reflects a rational apportionment of proximate cause" is therefore meritless. Cypress offered the jury no basis on which to calculate a reduction in damages, and the verdict accordingly remains unsupported. The prejudice from Cypress's impermissible arguments cannot be separated, and a new trial on damages for the fiduciary duty claim is warranted.

Dated: April 17, 2026                    Respectfully submitted,

                                         /s/ *Michael S. Schachter*
                                         WILLKIE FARR & GALLAGHER LLP
                                         Michael S. Schachter (MS0326)
                                         Shaimaa M. Hussein (SH9276)
                                         Meredith E. Mayer-Dempsey (5213202)
                                         787 Seventh Avenue
                                         New York, NY 10019-6099
                                         (212) 728-8000
                                         mschachter@willkie.com
                                         shussein@willkie.com
                                         mmayer-dempsey@willkie.com
                                         *Counsel for Defendants*